William Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone   714-966-1000
Facsimile   714-966-1002

Proposed Attorneys for
Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>FREEDOM COMMUNICATIONS, INC., a Delaware corporation, *et al.*,[1]<br><br>Debtors and Debtors-in-Possession.<br><br>Affects:<br><br>☒ All Debtors<br><br>☐ Freedom Communications, Inc., a Delaware corporation, ONLY | Case No. 8:15-bk-15311-MW<br>Chapter 11<br><br>(Jointly Administered With Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036). The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

1041364.3                                                                                    MOTION TO MAINTAIN BANK ACCOUNTS

| | | |
|---|---|---|
| 1 | ☐ Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | **EMERGENCY MOTION FOR AN ORDER AUTHORIZING: (1) MAINTENANCE OF EXISTING BANK ACCOUNTS, (2) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM FOR A LIMITED PERIOD PURSUANT TO 11 U.S.C. §§ 105, 345, AND 363; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Declaration of Chris D. Dahl, Chief Financial Officer, in Support of Emergency First-Day Motions Filed Concurrently Herewith]** |
| 2 | | |
| 3 | ☐ Freedom Services, Inc., a Delaware corporation, ONLY | |
| 4 | ☐ 2100 Freedom, Inc., a Delaware corporation, ONLY | |
| 5 | | |
| 6 | ☐ OCR Community Publications, Inc., a California corporation, ONLY | |
| 7 | ☐ Daily Press, LLC, a California limited liability company, ONLY | |
| 8 | | |
| 9 | ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY | |
| 10 | ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY | |
| 11 | | |
| 12 | ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY | |
| 13 | | |
| 14 | ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY | |
| 15 | ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY | |
| 16 | | |
| 17 | ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY | |
| 18 | ☐ Freedom Newspapers, a Texas general partnership, ONLY | |
| 19 | | |
| 20 | ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY | |
| 21 | ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY | |
| 22 | | |
| 23 | ☐ OCR Information Marketing, Inc., a California corporation, ONLY | |
| 24 | | |
| 25 | ☐ Odessa American, a Texas general partnership, ONLY | |
| 26 | ☐ Orange County Register Communications, Inc., a California corporation, ONLY | |
| 27 | | |
| 28 | | |

**Lobel Weiland Golden Friedman LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  ☐ Victor Valley Publishing Company, a California corporation, ONLY

2  ☐ Victorville Publishing Company, a California limited partnership, ONLY

3

4  ☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

5

6  ☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

7  ☐ Freedom SPV I, LLC, a Delaware limited liability company, ONLY

8

9  ☐ Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

10  ☐ Freedom SPV V, LLC, a Delaware limited liability company, ONLY

**Lobel Weiland Golden Friedman LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1041364.3

MOTION TO MAINTAIN BANK ACCOUNTS

**TABLE OF CONTENTS**

**Page**

I. STATEMENT OF FACTS ................................................................................... 4

    A. Jurisdiction and Venue ............................................................................. 4

    B. The Debtors and the Chapter 11 Filings .................................................. 4

II. BASIS FOR RELIEF ........................................................................................... 5

    A. The Cash Management System and the Bank Accounts .......................... 5

        1. Main Corporate Accounts ............................................................... 6

        2. Disbursement and Collateral Accounts .......................................... 6

    B. The Court Should Authorize the Debtors to Maintain Their Existing Bank Accounts and Use Their Existing Cash Management System For an Additional Thirty Days as Well as to Allow the Debtors to Permanently Maintain the Two Lockbox Accounts ................................................................................................... 8

    C. Payment of Outstanding Routine Expenses Relating to the Operation of the Cash Management System ............................................ 12

    D. Necessity for Immediate Relief and Effectiveness of Order .................... 13

III. NOTICE ............................................................................................................ 14

IV. CONCLUSION .................................................................................................. 14

**Weiland Golden LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.)*,
 778 F.2d 617, 621 (11th Cir. 1985) ............................................................................ 10

*In re Baldwin-United Corp.*,
 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987) ................................................................ 11

*In re Columbia Gas Sys., Inc.*,
 136 B.R. 930, 934 (Bankr. D. Del. 1992) .................................................................. 11

*In re Empire Land, LLC*,
 6:08-14592-MJ (Bankr. C.D. Cal. 2008) ................................................................... 12

*In re Gordian Medical, Inc.*,
 8:12-bk-12339-MW (Bankr. C.D. Cal. 2012) ............................................................ 12

*In re People's Choice Home Loans, Inc.*,
 8:07-10765-RK (Bankr. C.D. Cal. 2007) ................................................................... 12

*In re Victor Valley Community Hospital*,
 6:10-39537-CB (Bankr. C.D. Cal. 2010) ................................................................... 12

*In re Z Galleries*,
 2:09-18400-VZ (Bankr. C.D. Cal. 2009) ................................................................... 12

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
 147 B.R. 650, 656 (S.D.N.Y. 1992) ........................................................................... 11

*Smith v. Van Gorkom*,
 488 A.2d 858, 872 (Del. 1985) .................................................................................. 11

## STATUTES

11 U.S.C. § 105(a) ............................................................................................. 1, 5, 11, 13

11 U.S.C. § 345 ............................................................................................................... 1

11 U.S.C. § 345(b) ...................................................................................................... 2, 5

11 U.S.C. § 363 ............................................................................................................... 1

11 U.S.C. § 363(b) ........................................................................................................ 13

11 U.S.C. § 363(b)(1) .................................................................................................... 11

11 U.S.C. § 363(c) .......................................................................................................... 5

11 U.S.C. § 363(c)(1) .............................................................................................. 10, 11

**Weiland Golden LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

11 U.S.C. § 503(b) .................................................................................................... 13

11 U.S.C. § 1107(a) .................................................................................................... 4

11 U.S.C. § 1108 ........................................................................................................ 4

28 U.S.C. § 157 .......................................................................................................... 4

28 U.S.C. § 157(b)(2) ................................................................................................. 4

28 U.S.C. § 1334 ........................................................................................................ 4

28 U.S.C. § 1408 ........................................................................................................ 4

28 U.S.C. § 1409 ........................................................................................................ 4

**OTHER AUTHORITIES**

*Notice of Requirements for Chapter 11 Debtors in Possession*
   http://www.justice.gov/ust/r16/reg_info.htm ........................................................... 8

**RULES**

Fed. R. Bankr. P. 6004(h) ......................................................................................... 13

Fed. R. Bankr. P. 6004(a) ......................................................................................... 13

Fed. R. Bankr. P. 6003 ............................................................................................. 13

Local Bankruptcy Rule 2081-1(a) ............................................................................... 1

Local Bankruptcy Rule 9075-1 ................................................................................. 14

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

**TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

The jointly administered debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby move (the "Motion") on an emergency basis for an order authorizing the Debtors to maintain and utilize their cash management system, including their 10 existing bank accounts (the "Bank Accounts") located at the banks (the "Banks") listed on Exhibit "5" to the First Day Declaration for a period of approximately 30 days pursuant to 11 U.S.C. §§ 105(a), 345, and 363. The Debtors are also seeking authorization to permanently maintain two of their main capital depository accounts. In support of the Motion, the Debtors submit the following Memorandum of Points and Authorities and the concurrently filed Declaration of Chris D. Dahl, Chief Financial Officer, in Support of First-Day Motions (the "First Day Declaration").

The Debtor cannot set the matter on regular notice as they are otherwise required to close all of the Bank Accounts on the petition dates, however, the Debtors require the uninterrupted use of the Bank Accounts and cash management system for an addition thirty (30) days as it is essential to the Debtors' ability to seamlessly operate under chapter 11. Therefore, pursuant to Local Bankruptcy Rule 2081-1(a), the Debtors request that this Motion be heard on an emergency basis.

Given the size of these chapter 11 cases (the "Cases") and the complexity of the Debtors' cash management system, requiring the Debtors to close the Bank Accounts and open new ones immediately upon the filing of the petitions will disrupt the Debtors' operations because (a) depositors will not respond quickly to the change and will likely continue to send deposits to the original deposit accounts, and (b) any changes to the disbursement accounts will slow down the payment to crucial vendors as they are paid through electronic fund transfers. This would severely disrupt the Debtors' business operations.

The additional thirty (30) days will allow the Debtors time to (i) redirect incoming receipts into a new cash concentration account, which will aggregate all incoming receipts and provide for cash outflows to disbursement accounts and a VEBA trust, (ii) establish a new depository account for incoming ACH and credit card transactions and (iii) establish two (2) new disbursement accounts for accounts payable and payroll (collectively, the "DIP Accounts").[2]  Upon completion of this transition time frame, the Debtor will immediately close its prepetition Bank Accounts, except for the lock boxes maintained at Bank of New York Mellon ("BONY Mellon") and City National Bank ("CNB").  Allowing these two accounts to remain open will not create a risk of honoring unauthorized prepetition payments as the two accounts are deposit-only accounts and are not used for disbursements including checks, wire transfers, or ACH transfers.  Further, the Debtors will sweep the two accounts on a daily basis.

In connection with keeping the Bank Accounts open for an additional thirty (30) days, the Debtors seek an order authorizing and directing the Banks to honor postpetition checks drawn, if any, and transfers from the Bank Accounts.  Further, in the event that a Bank refuses to honor a check drawn or a transfer made on a Bank Account maintained by the Debtors (provided there are sufficient good funds in the Bank Account to complete the transfer), the Bank must immediately turn over the deposits held in the applicable Bank Account upon the Debtors' request.  In addition, the order will grant the Banks limited relief from the automatic stay to continue to offset standard monthly or periodic bank fees against the Bank Accounts in the same manner as such fees were offset prepetition.

Wherefore, the Debtors request that the Court waive the requirements of 11 U.S.C. § 345(b) (i) on an interim basis for approximately 30 days until the Debtors are able to set up fully operational DIP Accounts that will allow for the seamless transfer of their cash

---

[2] Any and all liens on the Bank Accounts will attach to the DIP Accounts to the same extent, priority, and validity and the Debtors will agree to execute control agreements in connection therewith.

management system and (ii) to permit the Debtors to permanently maintain the two lockboxes referenced above (and in more detail below).

Respectfully submitted,

Dated: November 2, 2015

LOBEL WEILAND GOLDEN FRIEDMAN LLP

By: /s/ Beth Gaschen
WILLIAM N. LOBEL
ALAN J. FRIEDMAN
BETH E. GASCHEN
CHRISTOPHER J. GREEN
Proposed Attorneys for
Debtors and Debtors-in-Possession

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1041364.3    3    MOTION TO MAINTAIN BANK ACOUNTS

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    STATEMENT OF FACTS**

### **A.    Jurisdiction and Venue**

This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### **B.    The Debtors and the Chapter 11 Filings**

On November 1, 2015 and November 2, 2015 (the "Petition Dates"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Court"). The Court authorized the joint administration of the Cases by order entered on November 2, 2015. The Debtors continue to operate and manage their affairs as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner and no committee has yet been appointed or designated in the Cases, although the Debtors anticipate that one or more official committees of unsecured creditors may be appointed.

2100 Freedom, Inc. is the direct or indirect parent company of each of the other Debtors. The Debtors, headquartered in Santa Ana, California, are collectively a privately owned information and entertainment company consisting of print publications and interactive businesses. The Debtors' portfolio includes daily and weekly newspapers, magazines and other specialty publications. In addition, the Debtors operate an interactive business which offers website complements, as well as digital and mobile products, to their print publications. The Orange County Register is the Debtors' flagship

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

newspaper.  The Debtors also operate the Press-Enterprise and Unidos (a Spanish language newspaper), and own real property in Santa Ana and Riverside, California.

Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the Cases is set forth in the First Day Declaration, which is incorporated herein by reference and filed contemporaneously herewith.

## II.     BASIS FOR RELIEF

### A.     The Cash Management System and the Bank Accounts

Pursuant to Bankruptcy Code sections 105(a), 345(b), and 363(c), the Debtors seek authorization to maintain their existing bank accounts and continue using their existing cash management system (the "Cash Management System") for a period of thirty (30) days while the Debtors transition their Cash Management System to new DIP Accounts.  The Cash Management System was implemented to facilitate the timely and efficient collection, management, and disbursement of funds used in the Debtors' day-to-day businesses.  The Cash Management System facilitates reporting, monitors collection, and disbursement of funds, reduces administrative expenses by facilitating the movement of funds and the development of more timely and accurate balance and presentment information, and administers the various Bank Accounts required to effectuate the collection, disbursement, and movement of cash.  Diagrams showing the flow of funds, into, through, and out of each Bank Account are attached as Exhibit "6" to the First Day Declaration.  Because of the nature of the Debtors' businesses and the disruption that would result if they were forced to close their existing Bank Accounts and establish a new cash management system, it is critical that the existing Cash Management System remain in place for approximately thirty (30) days.

Prior to the commencement of the Cases, and in the ordinary course of their businesses, the Debtors maintained 10 bank accounts.  A description of each Bank Account appears in Exhibit "5" to the First Day Declaration and below:

### 1. Main Corporate Accounts

The Cash Management System consists of two depository accounts at City National Bank (#2465 (lockbox) and #2473) and one depository account at BNY Mellon (#6350 (lockbox)) (the "Depository Accounts") as well as a main concentration account (#9602) (the "Concentration Account") maintained at City National Bank. In the ordinary course of business, the Debtors receive cash from advertisers, subscribers and other sources. The cash from these sources is deposited in the Depository Accounts and transferred to the Concentration Account where it is used to fund the disbursement accounts noted below, as well as make disbursements to the Debtors' VEBA trust. The Debtors are seeking to permanently maintain Depository Account #2465 (CNB) and #6350 (BONY Mellon).

### 2. Disbursement and Collateral Accounts

The Debtors use the Bank Accounts listed below as disbursement accounts to: (1) satisfy various obligations they incur in the ordinary course of business (the "Disbursement Accounts"), and (2) serve as collateral to secure certain of the Debtors' repayment obligations (the "Collateral Accounts"). The Debtors propose to continue using the Disbursement and Collateral Accounts for a period of thirty (30) days after the Petition Dates while they establish new DIP Accounts. A brief description of the Disbursement and Collateral Accounts is provided below.[3]

| Bank Account | Description |
|---|---|
| City National Bank | This Disbursement Account is the Debtors' main accounts payable disbursement account. This Disbursement |

---

[3] The following additional Bank Accounts maintained by the Debtors are not part of the Cash Management System (although the Debtors seek authority to continue to maintain and operate these Bank Accounts in the ordinary course of business for an additional thirty (30) days): (a) Health and Welfare Plan Trust Bank Account, (b) Workers Compensation Bank Accounts (CDs #2132, 2115, 2107 for Colorado Workers' compensation - these accounts hold $300,000), (c) Flexible Spending Bank account, and (d) a deposit account maintained for the benefit of Southern California Edison, and worker's compensation (#2387 - the Debtors issued letters of credit that were collateralized with lines of credit. There is approximately $840,000 in this account). In addition, the Bank Accounts do not include three Bank Accounts at Wells Fargo Bank (#3721, #3734 and #3747) that are pending closure.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| Bank Account | Description |
|---|---|
| (#5925) | Account is funded by transfers from the Concentration Account. |
| City National Bank (#5933) | This Disbursement Account is the Debtors' EFT accounts payable disbursement account. This Disbursement Account is funded by transfers from the Concentration Account. |
| City National Bank (#5941) | This Disbursement Account is used to fund payments to ADP, the Debtors' payroll processor, and payroll related disbursements. This Disbursement Account is funded by transfers from the Concentration Account. |
| City National Bank (#0033) | This Collateral Account is used to secure the Debtors' obligations to Silver Point Finance, LLC ("Silver Point"). The Debtor maintains a balance of approximately $300 in this account and it is currently blocked.[4] |
| City National Bank (#7181) | This Collateral Account is used to secure the Debtors' obligations for potential credit card chargebacks. The Debtor maintains a balance of approximately $500,000.00 in this account and it is currently blocked by CNB. |
| City National Bank (#5151) | This Collateral Account is used to secure the Debtors' obligations to Silver Point. The Debtor maintains a balance of approximately $300 in this account and it is currently blocked.[5] |

The Bank Accounts and Cash Management System facilitate the timely and efficient collection, management, and disbursement of funds used in the Debtors' business. Because of the disruption to the business that would result if the Debtors were forced to close these Bank Accounts as of the Petition Dates, it is critical that the Debtors

---

[4] In 2013, FCI and FCHI as borrowers, and SPV II and SPV VI (as well as 15 others), as guarantors, entered into a credit agreement with Silver Point. The Silver Point Loans are secured by, among other things, the Santa Ana Property and the Riverside Property. This Collateral Account was established at the time of the Silver Point Loans. If the Debtors sold any assets that were/are the collateral of the Silver Point Loans, the sale proceeds were/are to be placed into this Collateral Account and no disbursements may be made without Silver Point's authorization. Certain amounts have been released from this Collateral Account overtime and it currently has a balance of $300.

[5] This Collateral Account was established prior to the time of the Silver Point Loans, but was used to hold the original reserves. No disbursements can be made without Silver Point's authorization.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1041364.3    7    MOTION TO MAINTAIN BANK ACOUNTS

maintain their Cash Management System and the Bank Accounts for an additional 30 days while the Debtors establish the DIP Accounts.

The Debtors maintain blank check stock and will imprint their "Debtor-in-Possession" designation as well as the lead bankruptcy case number on the checks until such time as the DIP Accounts are opened.

### B. The Court Should Authorize the Debtors to Maintain Their Existing Bank Accounts and Use Their Existing Cash Management System For an Additional Thirty Days as Well as to Allow the Debtors to Permanently Maintain the Two Lockbox Accounts

The U.S. Trustee Guidelines require a chapter 11 debtor-in-possession to close all existing accounts immediately upon filing and open a minimum of three new bank accounts: general, payroll, and tax. The U.S. Trustee Guidelines also require that new bank accounts be opened in certain financial institutions designated as authorized depositories by the U.S. Trustee. *See Notice of Requirements for Chapter 11 Debtors in Possession* at http://www.justice.gov/ust/r16/reg_info.htm. As described in the U.S. Trustee Guidelines, the requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims. The Debtors submit, however, that a waiver of certain requirements is warranted.

The Debtors hereby seek a waiver of the U.S. Trustee's requirements that they close the existing Bank Accounts as of the Petition Dates. Instead, the Debtors request that they be allowed an additional thirty (30) days to close the Bank Accounts, which are at depositories authorized by the U.S. Trustee, and establish the DIP Accounts, during which time the Debtors can continue to utilize the Bank Accounts as necessary to best serve their business needs under their current Cash Management System. The Bank Accounts are (a) covered by FDIC insurance or (b) located at the Banks that have standing agreements with the Office of the United States Trustee. To protect against the unauthorized payment of prepetition obligations during the thirty day period, the Debtors

represent that, if they are authorized to continue to use the Bank Accounts, they will not pay, and the Banks will be directed not to pay, any debts incurred before the Petition Dates, other than as authorized by this Court.

In addition, the Bank Accounts cover the three accounts the Debtors would otherwise have to open pursuant to the U.S. Trustee Guidelines. Given the size of the Cases and the complexity of the Cash Management System, requiring the Debtors to close the Bank Accounts and to open new accounts as of the Petition Dates will disrupt the Debtors' operations. It will disrupt operations because (a) depositors will not respond quickly to the change and will likely continue to send deposits to the original deposit accounts, and (b) any changes to the disbursement accounts will slow down the payment to crucial vendors as they are paid through electronic fund transfers.

Further, the Debtors request that the Banks be permitted to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for all checks drawn on the Bank Accounts which are cashed at the Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Dates. The Debtors further request that the Banks be restrained from honoring any check, draft, wire, or electronic funds transfer presented, issued, or drawn on the Bank Accounts on account of a prepetition claim unless (a) authorized in an order of this Court, as represented to the Banks by the Debtors as set forth below; (b) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtors; and (c) supported by sufficient funds in the Bank Account in question.[6]

---

[6] Both in this Motion and in other motions that have been concurrently filed, the Debtors are requesting authority to pay, in their sole discretion, certain prepetition obligations. With respect to some of these obligations, the Debtors issued checks prior to the Petition Date that have yet to clear the banking system. In other instances, the Debtors will issue the relevant check once the Court enters an order permitting the Debtors to do so. The Debtors intend to inform the Banks which such checks should be so honored. Therefore, the Debtors request that the Banks be authorized and directed to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Dates should be honored. The Debtors further request that the Order specify that the Banks shall not have any liability to any party for relying on such representations. This relief is reasonable and

(Continued...)

1041364.3    9    MOTION TO MAINTAIN BANK ACOUNTS

As stated above, the Debtors are seeking to permanently maintain Depository Account #2465 (CNB) and #6350 (BONY Mellon). The CNB lockbox receives the Debtors' advertising receipts. The BONY Mellon lockbox receives the circulation revenue from subscribers. It would be nearly impossible and extremely disruptive to the Debtors' business operations to try and inform advertisers and customers of a new depository account. The funds in these accounts are transferred to the Disbursement Accounts listed below and are used to fund accounts payables and payroll. If there was a disruption in the monies being received by the Debtors then the Debtors would in turn not be able to pay its employees and vendors. There should be no risk of the Banks honoring unauthorized prepetition payments since the two accounts are deposit-only accounts and are not used for disbursements including checks, wire transfers, or ACH transfers. The only transfers out of the accounts are done at the direction of the Debtors and are made into other Bank Accounts held by the Debtors. The Debtors will continue to sweep these accounts on a daily basis.

Allowing the Debtors to utilize their prepetition Cash Management System for an additional thirty (30) days and engage in related "routine transactions" is entirely consistent with applicable provisions of the Bankruptcy Code. In particular, Bankruptcy Code section 363(c)(1) authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The authority granted by section 363(c)(1) extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested. *See, e.g., Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management

---

(...Continued)

appropriate because the Banks are not in a position to independently verify or audit whether a particular prepetition check may be honored in accordance with an order by the Court or otherwise.

system that was "usual and customary in the past" was "entirely consistent" with section 363(c)(1)) (internal quotation omitted).

To the extent that use of the existing Cash Management System is beyond the ordinary course of the Debtors' business, such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).

Where there is a valid business justification for using property outside of the ordinary course of business, the law presumes that, "in making a business decision the directors of a corporation acted on an informed basis, in good faith[,] and in the honest belief that the action was taken in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (internal quotation marks omitted) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Indeed, bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management system, generally treating requests for such relief as a relatively simple matter. *See In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992) (recognizing that an integrated cash system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash).

The continued use of existing cash management systems (which includes the authority to continue using prepetition bank accounts) has been approved in unreported

orders in a number of chapter 11 cases in the Central District of California.[7]  The Debtors respectfully submit that continued use of the Bank Accounts and the Cash Management System for an additional thirty (30) days from the Petition Dates should be approved in these Cases as well.

### C. Payment of Outstanding Routine Expenses Relating to the Operation of the Cash Management System

In the ordinary course of the operation and maintenance of the Cash Management System, the Debtors have and will continue to incur fees and other charges (collectively, all such fees and charges, the "Cash Management Claims") in connection with (a) Bank services (the "Service Charges"), (b) checks deposited with the Banks which have been dishonored or returned for insufficient funds in the applicable amount, (c) any reimbursement or other payment obligations, such as overdrafts, arising under agreements governing the Bank Accounts, including, without limitation, any prepetition cash management agreements or treasury services agreements (the "Bank Account Agreements"), and (d) the collection and deposit of cash and check receipts by armored car services.  The Debtors seek authority, in their sole discretion (subject to the provisions of any order approving the Debtors' use of cash collateral), to pay: (a) all undisputed prepetition Cash Management Claims; and (b) any such routine Cash Management Claims that accrue to the Banks during the thirty (30) day period, not to exceed $45,000 (excluding merchant/credit card fees).

As with the Cash Management System, payment of the Cash Management Claims will minimize disruption to the Debtors' operations and is therefore in the best interests of the estates.  Absent payment of the Cash Management Claims, the Banks might assert

---

[7] *See, e.g., In re Gordian Medical, Inc.*, 8:12-bk-12339-MW (Bankr. C.D. Cal. 2012) [Docket No. 49]; *In re Victor Valley Community Hospital*, 6:10-39537-CB (Bankr. C.D. Cal. 2010) [Docket No. 32]; *In re Z Galleries*, 2:09-18400-VZ (Bankr. C.D. Cal. 2009) [Docket No. 46]; *In re Empire Land, LLC*, 6:08-14592-MJ (Bankr. C.D. Cal. 2008) [Docket No. 86]; *In re People's Choice Home Loans, Inc.*, 8:07-10765-RK (Bankr. C.D. Cal. 2007) [Docket No. 179].

setoff rights against the funds in the Bank Accounts on account of the Cash Management Claims or freeze the Bank Accounts, and the Banks or armored car services may refuse to provide services to the Debtors. The payment of Cash Management Claims will not prejudice unsecured creditors given that, as noted above, the Banks may have setoff rights with respect to the Cash Management Claims.

Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their sole discretion, to pay and/or reimburse the Banks and service providers in the ordinary course of business for any Cash Management Claims arising prior to or after the Petition Dates. The Debtors further request that the Cash Management Claims be granted administrative priority status pursuant to section 503(b) of the Bankruptcy Code.

### D. **Necessity for Immediate Relief and Effectiveness of Order**

Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." For the reasons discussed herein, if the Debtors are not able to continue their Cash Management System for an additional thirty (30) days postpetition, it would cause immediate and irreparable harm to the Debtors and their business operations. Accordingly, the interim relief requested herein is consistent with Bankruptcy Rule 6003.

Further, to implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

### III. NOTICE

The Motion has been served on: (a) the Office of the United States Trustee, (b) the twenty largest unsecured creditors in each of the Debtors' estates; (c) counsel to Silver Point Finance, LLC ; and (d) other secured creditors and counsel, if any. To the extent necessary, the Debtors request that the Court waive compliance with Local Rule 9075-1 and approve service (in addition to the means of service set forth in such Local Rule) by overnight or electronic delivery. In the event that the Court grants the relief requested by the Motion, the Debtors shall provide notice of the entry of the order granting such relief upon each of the foregoing parties and any other parties-in-interest as the Court directs. The Debtors submit that such notice is sufficient and that no other or further notice be given.

### IV. CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court enter an order authorizing: (1) the Debtors to continue using its existing Cash Management system for a period of thirty (30) days; (2) the Debtors to continuing using the Bank Accounts for a period of thirty (30) days; and (3) the Debtor to permanently maintain the above-referenced lockboxes.

Respectfully submitted,

Dated: November 2, 2015

LOBEL WEILAND GOLDEN FRIEDMAN LLP

By: *Beth Gaschen*
WILLIAM N. LOBEL
ALAN J. FRIEDMAN
BETH E. GASCHEN
CHRISTOPHER J. GREEN
Proposed Attorneys for
Debtors and Debtors-in-Possession