William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Proposed Attorneys for
Debtors and Debtors-in-Possession

**FILED & ENTERED**

**NOV 05 2015**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** bolte    **DEPUTY CLERK**

**CHANGES MADE BY COURT**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>FREEDOM COMMUNICATIONS, INC., a Delaware corporation, *et al.*,[1]<br><br>      Debtors and<br>      Debtors-in-Possession.<br><br>Affects:<br><br>☒  All Debtors<br><br>☐  Freedom Communications, Inc., a Delaware corporation, ONLY<br><br>☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | Case No.:  8:15-bk-15311-MW<br>Chapter 11<br><br>(Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036).  The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

28702058.1 1044277.1                                1                                INTERIM ORDER

| | | |
|---|---|---|
| 1 | ☐ Freedom Services, Inc., a Delaware corporation, ONLY | **INTERIM ORDER (A) AUTHORIZING DEBTORS TO (1) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (2) PROVIDE ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (3) GRANT RELATED RELIEF, AND (B) SETTING FINAL HEARING** |
| 2 | | |
| 3 | ☐ 2100 Freedom, Inc., a Delaware corporation, ONLY | |
| 4 | ☐ OCR Community Publications, Inc., a California corporation, ONLY | |
| 5 | | |
| 6 | ☐ Daily Press, LLC, a California limited liability company, ONLY | |
| 7 | ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY | |
| 8 | | |
| 9 | ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY | |
| 10 | | |
| 11 | ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY | |
| 12 | ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY | |
| 13 | | |
| 14 | ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY | |
| 15 | ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY | |
| 16 | | |
| 17 | ☐ Freedom Newspapers, a Texas general partnership, ONLY | |
| 18 | ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY | |
| 19 | | |
| 20 | ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY | |
| 21 | | |
| 22 | ☐ OCR Information Marketing, Inc., a California corporation, ONLY | |
| 23 | ☐ Odessa American, a Texas general partnership, ONLY | |
| 24 | | |
| 25 | ☐ Orange County Register Communications, Inc., a California corporation, ONLY | |
| 26 | | |
| 27 | ☐ Victor Valley Publishing Company, a California corporation, ONLY | |
| 28 | | |

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  ☐ Victorville Publishing Company, a California limited partnership, ONLY

2  ☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

3

4  ☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

5  ☐ Freedom SPV I, LLC, a Delaware limited liability company, ONLY

6

7  ☐ Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

8  ☐ Freedom SPV V, LLC, a Delaware limited liability company, ONLY

9

10

11   Upon the motion (the "Motion")² of the above-captioned debtors and debtors in

12  possession (each, a "Debtor" and collectively, the "the Debtors") in the above-captioned

13  chapter 11 cases (the "Cases" or "Chapter 11 Cases"), pursuant to sections 105, 361, 362

14  and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the

15  "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

16  Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of

17  Bankruptcy Procedure of the United States Bankruptcy Court for the Central District of

18  California (the "Local Rules"), seeking entry of an Interim Order agreed to by and among

19  the Debtors, Silver Point Finance, LLC, as agent (the "Prepetition Agent"), and SPCP

20  Group, LLC and SPCP Group VI, LLC (the "Prepetition Lenders" and, together with the

21  Prepetition Agent, the "Prepetition Loan Parties"), and the Pension Benefit Guaranty

22  Corporation (the "PBGC"), on behalf of the Pension Plan, (a) pursuant to which the

23  Debtors are authorized to utilize, for a period ending on December 14, 2015 (unless

24  further extended pursuant to the terms hereof), Cash Collateral (as defined herein), upon

25  the terms and conditions set forth herein, (b) granting adequate protection to the

---

26  ² Capitalized terms utilized in this Interim Order that are not otherwise defined, shall have the meanings ascribed to such terms in the Motion.

27

28

1 Prepetition Loan Parties and to the PBGC with respect to such use of Cash Collateral; (c) modifying the automatic stay as necessary to effectuate all of the terms and provisions of this Interim Order; (d) prescribing the form and manner of notice and setting the time for the Final Hearing on the Motion; and (e) granting related relief.

A preliminary expedited hearing (the "Preliminary Hearing") on the Motion having being held by this Court on November 4, 2015, and based upon all of the pleadings filed with this Court in respect of the Motion; and based upon the record made by the Debtors at the Preliminary Hearing; and it appearing that the relief granted in this Interim Order is in the best interests of the Debtors and the Debtors' estates and creditors; the Debtors having given notice of the Motion and it appearing that no further notice need be given; and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1. Jurisdiction. This Court has core jurisdiction over these chapter 11 cases, the Motion, and the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Notice. The notice given by the Debtors of the Motion and the Preliminary Hearing was given to: (a) the Office of the United States Trustee for the Central District of California – Santa Ana Division, (b) counsel to the DIP Agent and the DIP Lenders; (c) counsel to the Prepetition Lenders and the Prepetition Agent; (d) the PBGC; (e) United States Securities and Exchange Commission; (f) the Internal Revenue Service; (g) the Office of the United States Attorney for the Central District of California; (h) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (i) all other known parties asserting a lien against the Debtors' assets; and (j) any parties that have filed with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002. To the extent necessary, the Court waives compliance with Local Bankruptcy Rule 9075-1 and approves service (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight or electronic delivery. Such notice constitutes due

and appropriate notice under the circumstances and complies with Bankruptcy Rules 4001(b) and applicable Local Rules. No further notice of the relief sought at the Preliminary Hearing is necessary or required.

3. <u>Final Hearing</u>. A Final Hearing on the Motion shall be held before this Court on December 14, 2015, at 2:00 p.m. Notice of the Final Hearing shall be given by the Debtors, within 2 business days of the entry of this Interim Order, to the parties set forth in Paragraph 2 hereof and any other parties directed by the Court. Such parties shall also be served with a copy of this Interim Order. Any objection to the relief sought by the Motion at the Final Hearing shall be filed and served by no later than December 2, 2015, and served on counsel to the Debtors, counsel to the Prepetition Agent and Prepetition Lenders, counsel to the DIP Agent and the DIP Lenders, the PBGC, the Office of the United States Trustee, and any other parties directed by the Court. Any replies to any objections shall be filed and served on any objecting party by no later than December 9, 2015.

4. <u>Creditors' Committee Formation</u>. No statutory committee of unsecured creditors has yet been appointed in the chapter 11 cases (a "<u>Committee</u>").

5. <u>Cash Collateral</u>. For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and have the same definition as given to it by Bankruptcy Code § 363(a).

6. <u>Use of Cash Collateral.</u> In order to facilitate the orderly continuation of the Debtors' business operations, the Debtors are hereby authorized, with the agreement of the Prepetition Agent and the PBGC, and pursuant to the terms and conditions set forth herein, to use Cash Collateral, to and through December 14, 2015 (or such later date as agreed to in writing by Prepetition Agent), to pay only those ordinary course expenses set forth on the Budget attached hereto as Exhibit "A" (the "<u>Budget</u>") and incorporated herein by this reference on the terms set forth herein; provided, however, that, pending further Court order upon adequate notice to all parties who have liens on property owned by Freedom SPV II, which shall, in no circumstance, be less than ten (10) business days, the

Debtors shall not utilize any Cash Collateral generated by Freedom SPV II (the "Freedom SPV II Cash Collateral"). The Freedom SPV II Cash Collateral shall be segregated and held in a separate DIP Account (as defined herein) from all other Cash Collateral with any prepetition liens attaching to the funds in such DIP Account with the same validity, priority and extent as existed as of the Petition Date.

7. <u>Findings Regarding Use of Cash Collateral</u>.

(a) Good cause has been shown for the entry of this Interim Order.

(b) The Debtors have a need to have access to Cash Collateral pending the Final Hearing and entry of the Final Order for the operation of their businesses, to preserve their going concern value, to pay vendors, suppliers and customers, to satisfy payroll obligations, to pay for certain costs and expenses related to the chapter 11 cases and to satisfy the Debtors' other working capital and operational needs. Use of Cash Collateral as provided hereunder is vital to the preservation and maintenance of the Debtors' going concern value and to the Debtors' successful reorganization. Without the use of the Prepetition Loan Parties' and the Pension Plan's Cash Collateral, the Debtors would have great difficulty in continuing their respective business operations.

(c) The use of Cash Collateral and the provision of adequate protection, as authorized hereunder, have been negotiated at arm's-length and in good faith among the Debtors, the Prepetition Loan Parties, and the PBGC, and are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the Debtors, their estates and creditors.

(d) This Court concludes that entry of this Interim Order is in the best interests of the Debtors and their estates and creditors as its implementation will, among other things, allow the Debtors to facilitate their chapter 11 goals and maximize the value of their assets.

8. <u>Use of DIP Accounts; Accounting</u>.  Starting on the Petition Date and continuing through the term of this Interim Order, the Debtors, and each of them, shall continue to deposit all revenue, receipts, income and cash into their existing bank accounts (the "Existing Accounts"), except to the extent that new bank accounts are required to be opened pursuant to the Bankruptcy Court's cash management order to be obtained by the Debtors, which shall be reasonably acceptable to the Prepetition Agent and the PBGC (the "New Accounts," and together with the Existing Accounts, the "<u>DIP Accounts</u>").  The Prepetition Loan Parties and any holder of a Prepetition Junior Lien shall have and are hereby granted (without the need for any further action) liens in the New Accounts with the same validity, priority and extent as such liens in the Existing Accounts.  The Debtors shall enter into account control agreements with the Prepetition Loan Parties with respect to the New Accounts.  All parties, including PBGC, are hereby barred from asserting that the Prepetition Loan Parties' liens on the New Accounts are of a lesser priority than their liens in the Existing Accounts or that the PBGC Prior Lien or PBGC Lien Amount has any different or additional priority in the New Accounts than it has in the Existing Accounts.  The Debtors shall deposit all post-petition money, revenue, receipts, cash and income earned or obtained by the Debtors, and each of them, and their affiliates, together with any funds on deposit as of the Petition Date in any pre-petition bank accounts of the Debtors, and each of them, and their affiliates (collectively, the "<u>Deposits</u>") in the DIP Accounts.  The DIP Accounts shall contain funds for the general operating expenses of the Debtors as expressly permitted under this Interim Order.  The Debtors may continue to use any payroll accounts, tax accounts and such other accounts as approved by the Bankruptcy Court's cash management order.  The Prepetition Agent and the PBGC shall have the right to object to any motion related to the Debtors' cash management to the extent that said motion and request for a cash management order is inconsistent with this Interim Order or seeks to impair any rights and interests of the Prepetition Loan Parties or the PBGC.  The Debtors shall at all times maintain the ability

to trace all monies entering and removed from the DIP Accounts and all other accounts in use that are approved by the cash management order. The Debtors shall provide and deliver to the Prepetition Agent an accounting of all money deposited and withdrawn from the DIP Accounts and the relevant documents which show and track the tracing of all money and funds deposited and withdrawn from the DIP Accounts.

9. <u>Terms and Conditions of Use of Cash Collateral; Budget; Reporting; Carve-Out</u>. Commencing as of the Petition Date and continuing to and through and including the earlier of an Event of Default or the Termination Date (as described below), each of the Debtors is authorized to use the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) subject to each and every Debtor's compliance at all times with each of the following express terms and conditions:

(i) So long as there is no Event of Default under the terms of the Interim Order and commencing on the date of entry of the Interim Order (the "<u>Effective Date</u>"), the Debtors, and each of them, are authorized to use the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) only in accordance with the line items and line item amounts set forth in the Budget, which, with respect to any "professional" other than a PLP Professional (as defined below), must separately itemize and identify, by line item and line item amount, each and every professional. Notwithstanding anything contained in this Interim Order to the contrary, the Debtors, and each of them, shall, before using any of the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) to pay any "professional", including the Debtors' Court approved general reorganization counsel, Lobel Weiland Golden Friedman, LLP, and financial advisor, GlassRatner Advisory & Capital Group, LLC, and tax advisor/accountant, Squar Milner, and noticing/claims agent, Donlin Recano & Company, Inc., first use any available "unencumbered" funds or cash which is not subject to the Prepetition Loan Parties' security interest to pay such "professionals."

     (ii)   Absent further Court order or stipulation signed by the Debtors, and each of them, and the Prepetition Agent and the PBGC, the Debtors' collective actual expenditures of the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) are expressly limited, on a line-item by line-item basis, to the specific dollar amounts and exclusively for the categories set forth in the Budget, subject to the remainder of this subparagraph (ii). Other than with respect to amounts budgeted for PLP Professionals (as defined below), the Debtors are in violation of the Interim Order if for any four week period: (a) on a line-item by line-item basis, the actual expenditures exceed the budgeted expenditures for such period on the Budget by fifteen percent (15%) or more, or (b) the entire Budget total for such period is exceeded by ten percent (10%) or more. Unused line-item budgeted amounts in any given period cannot be carried over to any future period.

     (iii)   During the term of the Interim Order, none of the Debtors shall sell or otherwise transfer any Pre-Petition Collateral or any assets related to or connected with the Pre-Petition Collateral outside of the ordinary course of the Debtors', or any of their, business without the express prior written consent of the Prepetition Agent and the PBGC (except such consent is not required if such sale or transfer would result in the Prepetition Loan Parties or the PBGC (as applicable) being indefeasibly paid in full in cash on account of its claim or after the Prepetition Loan Parties or the PBGC (as applicable) has been indefeasibly paid in full in cash on account of its claim).

     (iv)   During the entire term of this Interim Order, on the Wednesday of every other calendar week during which the Debtors are permitted to use the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) hereunder, the Debtors shall deliver to the Prepetition Agent and the PBGC the following: (a) a written Budget Reconciliation Report in form and detail acceptable

to the Prepetition Agent, which report shall compare and show on a line-item by line-item basis the Debtors' actual cash, revenue, receipts, income, expenditures and cash flow versus the amounts for such cash, revenue, receipts, income, expenditures and cash flow projected by and in the Budget; and (b) any other financial reports reasonably requested by the Prepetition Agent or the PBGC.

(v)    There shall exist no Event of Default under this Interim Order or any other post-petition agreement entered into between any of the Debtors and the Prepetition Loan Parties.

10.    <u>Adequate Protection to Prepetition Loan Parties</u>.  As adequate protection for, *inter alia*, the Debtors' use of the Prepetition Loan Parties' Cash Collateral during the term of the Interim Order,

(i)    The Debtors collectively shall (a) on December 1, 2015, pay Prepetition Agent, as beneficiary and collateral agent of the Prepetition Lenders, the sum of interest due pursuant to Sections 2.7 and 2.8 of the Credit Agreement, (b) reimburse the Prepetition Agent, within three days after receipt of notice from the Prepetition Agent of the amount of fees incurred by the Prepetition Loan Parties' legal and financial advisors and consultants (the "<u>PLP Professionals</u>") in these cases, the professional fees of the PLP Professionals.  Notwithstanding anything herein to the contrary, PLP Professional fees shall not be capped by the amount set forth in the Budget.  The Office of the United States Trustee shall be provided with the monthly invoices of the PLP Professionals and shall have an opportunity to object within ten (10) days of service thereof.

The automatic stay contained in Bankruptcy Code Section 362 is hereby modified to permit the Prepetition Loan Parties to: (a) implement and enforce the terms of this Interim Order; (b) receive and apply any amounts agreed to be paid by, and paid by, the Debtors to the Prepetition Loan Parties; (c) file any financing statements or other instruments and documents necessary to maintain

and/or continue their pre-petition security interests in, rights to, and liens on the Pre-Petition Collateral; and (d) file any financing statements or other instruments and documents, if any, evidencing the Prepetition Loan Parties' security interests in, rights to, and liens on the Post-Petition Collateral (as defined below).

(ii) During the term of this Interim Order and as additional adequate protection for the Prepetition Loan Parties' interests in the Pre-Petition Collateral and Debtors' use of the same and the Prepetition Loan Parties' Cash Collateral, the Prepetition Loan Parties shall have and are hereby granted (without the necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise), in accordance with sections 361(2), 363(e) and 507(b) of the Bankruptcy Code, valid, choate, binding, enforceable, unavoidable and perfected first priority replacement mortgages, liens and security interests (collectively, "PLP Post-Petition Liens") in and to any and all assets first acquired after the Petition Date by the Debtors' other than causes of action arising under sections 105, 506(c), 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code (collectively, the "Post-Petition Collateral").

11. <u>Adequate Protection to PBGC</u>. During the term of this Interim Order and as additional adequate protection for the PBGC Liens on the Pre-Petition Collateral and Debtors' use of the same and the Pension Plan's Cash Collateral (if any), the Pension Plan shall have and is hereby granted (without the necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise), in accordance with sections 361(2), 363(e) and 507(b) of the Bankruptcy Code, valid, choate, binding, enforceable, unavoidable and perfected replacement mortgages, liens and security interests (the "PBGC Post-Petition Liens") in and to the Post-Petition Collateral.

12. **No Impairment of Rights**. Nothing contained in this Interim Order shall limit, impair or in any way affect (i) the Prepetition Loan Parties' rights at any time to seek relief from the automatic stay to enforce any of their remedies under the Loan Agreement, the Collateral Documents or applicable law; and (ii) the Debtors' right to seek additional use of Cash Collateral. Nothing herein is meant to, does, will, or shall be construed to, alter the priority of the PBGC Liens, the PBGC Prior Lien and the Prepetition Loan Parties' liens. The Prepetition Loan Parties and the PBGC reserve all rights with respect to the relative priority of their prepetition liens and the extent and amount of any PBGC Prior Lien.

13. **Events of Default**. Notwithstanding any other provision contained in this Interim Order, the Debtors', and each of their, rights to use the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) pursuant to the terms and conditions of this Interim Order shall immediately (subject to the three (3) business day period referred to in the next to last sentence of this Paragraph 13) cease and terminate if any one of the following events occurs (the date of any such events set forth above is referred to in this Interim Order as an "Event of Default"):

(i) Non-compliance by any of the Debtors with any of the terms or provisions of this Interim Order, and such non-compliance remains uncured for a period of five (5) calendar days following the date of written notice of such default provided to the Debtors (however, such written notice and cure period does not apply to the deadlines set forth in Paragraph 15 below); and

(ii) (a) provision to affected parties of a notice of intent to terminate the Pension Plan under 29 U.S.C. § 1341(c) or (b) termination of the Pension Plan under 29 U.S.C. § 1342.

The Debtors authorization to use the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) hereunder shall terminate upon the Prepetition Loan Parties' filing of a declaration setting forth the facts evidencing the occurrence of one of the above described Events of Default, unless the Debtors, or any of

them, have, no later than three (3) business days from the filing of the Prepetition Agent's declaration, filed an evidentiary declaration(s) containing admissible evidence that rebuts that an Event of Default has occurred. Nothing herein shall preclude the Debtors from seeking to obtain continued use of Cash Collateral provided that all rights, remedies, and objections available to the Prepetition Loan Parties and the PBGC are fully preserved.

14. <u>Remedies</u>. Upon the occurrence of any of the events described in paragraph 13, the Prepetition Loan Parties may also seek relief from the automatic stay.

15. <u>Termination Date</u>. Notwithstanding any other provision contained herein, each of the Debtor's right to use the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any), pursuant to the terms and conditions of this Interim Order, shall expire and terminate on December 14, 2015 (the "<u>Termination Date</u>"), unless (i) further extended by one or more written agreements between the Debtors, on the one hand, and the Prepetition Agent and the PBGC, on the other hand, in accordance with Paragraph  below or (ii) superseded and replaced by the Final Order (as defined below). This Interim Order does not prohibit the Debtors from filing any motion to use cash collateral after this Interim Order expires, or prohibit the Prepetition Loan Parties or the PBGC, at any time, from seeking additional adequate protection of their interests in the Pre-Petition Collateral or relief from or modification of the automatic stay under section 362 of the Bankruptcy Code.

16. <u>Occurrence of Event of Default or Termination Date</u>. Upon the occurrence of either an Event of Default or the Termination Date:

(i) The Debtors', and each of their, rights to continue to use the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) shall cease and terminate, pursuant to the terms and conditions of this Interim Order, unless such use of the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) is expressly consented to by the Prepetition Agent or the PBGC (as applicable) in writing or the Court orders otherwise;

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

      (ii)    Each of the Prepetition Loan Parties and the PBGC may seek to enforce their rights hereunder including by obtaining termination of the automatic stay in the Debtors' cases, and each of them, to exercise their rights and remedies;

      (iii)    The Prepetition Loan Parties, upon obtaining relief from the automatic stay, may provide written notice by email, facsimile or overnight mail to the Debtors, the Debtors' counsel, and any Committee counsel and upon the fifth (5th) business day following the date of such notice, which notice shall be deemed sufficient notice by the Prepetition Loan Parties to exercise their rights and pursue their remedies under Article 9 of the Uniform Commercial Code, the Freedom SPV II Deed of Trust, the Freedom SPV VI Deed of Trust and applicable California law with respect to the foreclosure (whether judicial or nonjudicial) of real property and personal property, the automatic stay shall be immediately vacated without any further order of the Bankruptcy Court to allow the Prepetition Loan Parties to pursue their remedies with respect to the Pre-Petition Collateral, including, without limitation, the Freedom SPV II Property and the Freedom SPV VI Property, and the Post-Petition Collateral;

17.    <u>Final Order</u>.  The Debtors, and each of them shall have filed a motion to approve debtor-in-possession financing provided by and on terms acceptable to the Prepetition Agent on or about the Petition Date and to obtain a final order (the "<u>Final Order</u>") approving same by the Bankruptcy Court by no later than December 14, 2015 unless further extended by one or more written agreements between the Debtors, on the one hand, and the Prepetition Agent, on the other hand.  Notwithstanding anything to the contrary contained herein, in the event that any of the deadlines set forth in this paragraph are not complied with, the Debtors' right to use the Prepetition Loan Parties' Cash Collateral and the Pension Plan's Cash Collateral (if any) shall terminate upon the filing of a declaration by the Prepetition Agent setting forth the facts proving noncompliance with the deadlines of this paragraph unless the Debtors, or any of them, have, no later than

three (3) business days from the filing of the Prepetition Agent's declaration, filed an evidentiary declaration(s) containing admissible evidence that rebuts the facts evidencing the noncompliance with the deadlines of this paragraph. Nothing herein shall preclude the Debtors from seeking to obtain the continued use of Cash Collateral provided that all rights, remedies, and objections available to the Prepetition Loan Parties and the PBGC are fully preserved.

18. **Restriction on Payments**. Except as authorized by this Interim Order and the Budget or any other order of the Bankruptcy Court, no payments of any kind to any person or entity holding a lien, security interest or encumbrance on the Pre-Petition Collateral or the Post-Petition Collateral which is junior to the interests, liens, security interests or encumbrances of the Prepetition Loan Parties, or to any pre-petition unsecured creditors of the Debtors, or any of them, shall be made.

19. **Reporting Requirements**.

(i) No later than ten (10) calendar days following a written request from the Prepetition Agent or the PBGC, the Debtors, and each of them, shall provide access to and deliver to the Prepetition Agent and the PBGC such financial and operating information as representatives of the Prepetition Agent and the PBGC shall reasonably request from time to time including, without limitation, all books and records relating to business operations and dealings of the Debtors, and each of them, and their subsidiaries, the Freedom SPV II Property and the Freedom SPV VI Property, which requests shall be made no more frequently than once every thirty (30) calendar days. Further, the Prepetition Agent, and its representatives and agents, shall, within ten (10) calendar days following a written request from the Prepetition Agent, be allowed to visit, during normal business hours, and inspect the Freedom SPV II Property and the Freedom SPV VI Property; however, if any such real property leased to a tenant other than one of the Debtors or any of their subsidiaries, such visit and inspection shall be made

and conducted at the reasonable convenience of said tenant within fifteen (15) days from the Prepetition Agent's above referenced written notice to the Debtors. In connection with any such visit or inspection, the Prepetition Agent shall be entitled to have its appraiser, environmental inspector, or any third party inspector visit the Freedom SPV II Property and the Freedom SPV VI Property to appraise and inspect such property, and the Debtors, and each of them, shall reasonably cooperate in providing said appraiser, environmental inspector or other inspector full access to such property, and copies of any leases or other financial data concerning such property as the Prepetition Agent may reasonably request.

(ii)    During the term of this Interim Order, each of the Debtors shall provide to the Prepetition Agent and the PBGC, concurrently with their delivery/filing to the Office of the United States Trustee and/or the United States Bankruptcy Court, copies of each the Debtors' operating reports and all other papers and documents delivered to or filed with the Office of the United States Trustee and/or the United States Bankruptcy Court, including the Debtors' respective "7 Day Package."  Each of the Debtors also shall use reasonable efforts to deliver to Prepetition Agent and the PBGC as soon as available but no later than one (1) business day prior to filing, copies of all proposed pleadings, motions, applications, orders, financial information, and other documents to be filed by or on behalf of any Debtor with the United States Bankruptcy Court, or distributed by or on behalf of any Debtor to any official or unofficial committee appointed or appearing in these cases or any other party in interest.

20.    <u>Cooperation; Allowance of Fees and Expenses of Prepetition Loan Parties</u>. The Debtors' officers and employees shall each cooperate with the Prepetition Agent and the PBGC in all reasonable respects regarding any inquiry into any transactions occurring at any time.  All actual and reasonable fees and expenses of the Prepetition Loan Parties' representatives, auditors, financial consultants, accountants, appraisers and attorneys

shall constitute part of the Prepetition Loan Parties' allowed secured claim in the Debtors' estates. Nothing contained herein shall constitute a waiver by any of the Debtors or any other party to challenge the reasonableness of said fees and expenses.

21. <u>Credit Bid Rights</u>. Except to the extent of the PBGC Prior Lien, if any, the Prepetition Loan Parties shall have the right to credit bid a portion of or all of their respective claims in connection with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under a plan of reorganization, to the extent permitted by applicable law.

22. <u>Notices</u>. All notices required to or permitted to be given to the Prepetition Loan Parties under this Int erim Order shall be addressed as follows:

>Silver Point Finance, LLC
>Attention: Taylor Montague and Andrew Scott
>Two Greenwich Plaza
>Greenwich, CT 06830
>Fax: (203) 542-4124
>ascott@silverpointcapital.com and tmontague@silverpointcapital.com

>and

>Munger, Tolles & Olson LLP
>355 South Grand Avenue
>Los Angeles, CA 90071
>Fax: (213) 687-3702
>thomas.walper@mto.com and seth.goldman@mto.com

All notices required to or permitted to be given to the Debtors under the Interim Order shall be addressed as follows:

>Freedom Communications, Inc., *et al.*
>Attn: Rich Mirman
>625 Grand Avenue
>Santa Ana, CA 92701
>Email: rmirman@freedom.com

>and

Lobel Weiland Golden Friedman LLP
Attn:   William N. Lobel and Alan J. Friedman
650 Town Center Drive, Suite 950
Costa Mesa, CA  92626
Fax No.:  (714) 966-1002
Email: wlobel@wgllp.com and afriedman@wgllp.com

All notices required to or permitted to be given to the PBGC under the Interim Order shall be addressed as follows:

Pension Benefit Guaranty Corporation
Office of the Chief Counsel
Attn: Marc S. Pfeuffer
1200 K Street, N.W., Suite 340
Washington, D.C. 20005-4026

With a copy to:

Pension Benefit Guaranty Corporation
Corporate Restructuring & Finance Department
1200 K Street, N.W., Suite 270
Washington, D.C. 20005-4026

The above addresses may be changed effective upon receipt of a notice of a new address.  Except as expressly set forth otherwise herein, any notice required herein or permitted to be given shall be in writing and be personally served or sent by facsimile (upon confirmation of receipt) or email.  All notices and reports required to be given/delivered hereunder shall also be sent to counsel for any Official Committee, if one is appointed.

23.    <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Interim Order.

Date: November 5, 2015

*[signature]*
Mark S. Wallace
United States Bankruptcy Judge

# EXHIBIT "A"

2100/Freedom Communications Holdings, Inc.
Weekly Cash Flows Projection - 2015

[Back To INDEX]

|  | Fcst 11/06/15 | Fcst 11/13/15 | Fcst 11/20/15 | Fcst 11/27/15 | Fcst 12/04/15 | Fcst 12/11/15 | Fcst 12/18/15 | Fcst 12/25/15 | Fcst 01/01/16 | Fcst 01/08/16 | Fcst 01/15/16 | Fcst 01/22/16 | Fcst 01/29/16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Accounts** | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | |
| Operating | 3,395,554 | 3,316,414 | 3,341,414 | 3,393,054 | 3,519,976 | 3,427,596 | 3,285,217 | 3,285,217 | 3,537,476 | 3,522,712 | 3,361,724 | 3,361,724 | 3,465,212 |
| Other (including Inter Account Transfers In) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Receipts | 3,395,554 | 3,316,414 | 3,341,414 | 3,393,054 | 3,519,976 | 3,427,596 | 3,285,217 | 3,285,217 | 3,537,476 | 3,522,712 | 3,361,724 | 3,361,724 | 3,465,212 |
| **Operating Disbursements** | | | | | | | | | | | | | |
| Payroll & Benefits | 340,200 | 2,035,000 | 305,700 | 2,520,000 | 655,200 | 2,035,000 | 305,700 | 2,520,000 | 655,200 | 2,075,700 | 555,000 | 2,325,700 | 272,500 |
| Paper & Ink | 574,500 | 582,500 | 574,500 | 642,500 | 574,500 | 582,500 | 574,500 | 642,500 | 642,000 | 526,000 | 531,000 | 526,000 | 541,000 |
| Purchased Content | 33,011 | 32,911 | 32,911 | 32,911 | 32,911 | 33,030 | 33,050 | 33,050 | 33,050 | 32,137 | 31,984 | 31,984 | 31,984 |
| Outside Services | 756,000 | 987,000 | 851,000 | 969,000 | 756,000 | 987,000 | 804,000 | 1,016,000 | 736,000 | 731,000 | 1,036,000 | 731,000 | 1,036,000 |
| Operating Supplies & Materials | 88,242 | 75,454 | 75,454 | 75,454 | 75,454 | 79,805 | 80,530 | 80,530 | 80,530 | 82,075 | 82,333 | 82,333 | 82,333 |
| Repairs & Maintenance | 51,982 | 49,188 | 49,188 | 49,188 | 49,188 | 51,543 | 51,936 | 51,936 | 51,936 | 49,977 | 49,651 | 49,651 | 49,651 |
| Promotion and Marketing | 42,291 | 46,206 | 46,206 | 46,206 | 46,206 | 41,317 | 40,502 | 40,502 | 40,502 | 40,376 | 40,355 | 40,355 | 40,355 |
| Postage, Office Supplies, Dues, and Subscriptions | 22,083 | 20,495 | 20,495 | 20,495 | 20,495 | 26,536 | 27,543 | 27,543 | 27,543 | 19,697 | 18,390 | 18,390 | 18,390 |
| Travel, Meals, and Entertainment | 13,198 | 14,187 | 14,187 | 14,187 | 14,187 | 18,719 | 19,475 | 19,475 | 19,475 | 31,138 | 31,416 | 31,416 | 31,416 |
| Training, Seminars, Events, and Communications | 1,514 | 1,441 | 1,441 | 1,441 | 1,441 | 1,288 | 1,263 | 1,263 | 1,263 | 1,131 | 1,109 | 1,109 | 1,109 |
| Insurance | 0 | 0 | 0 | 0 | 130,500 | 0 | 0 | 0 | 130,500 | 0 | 0 | 0 | 0 |
| Utilities, Rent, and Lease | 157,000 | 29,000 | 607,100 | 180,000 | 32,000 | 29,000 | 557,100 | 180,000 | 36,000 | 25,000 | 10,000 | 682,100 | 77,000 |
| Taxes (non-income) | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 626,974 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Total Operating Disbursements | 2,155,020 | 3,948,381 | 2,628,181 | 4,601,381 | 2,438,080 | 4,512,714 | 2,545,599 | 4,662,799 | 2,503,999 | 3,664,232 | 2,437,237 | 4,570,037 | 2,231,737 |
| **Capital Expenditures and Income Taxes** | | | | | | | | | | | | | |
| Capital Expenditures | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Capital Expenditures and Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Debt, Financing & Other Disbursements** | | | | | | | | | | | | | |
| Interest Payments | 0 | 0 | 0 | 193,750 | 0 | 0 | 0 | 0 | 193,750 | 0 | 0 | 0 | 187,500 |
| Principal Payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Bank Fees and Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Debt related disbursements | 0 | 0 | 0 | 193,750 | 0 | 0 | 0 | 0 | 193,750 | 0 | 0 | 0 | 187,500 |
| Other Misc Disbursements | 0 | 0 | 0 | 0 | 500,000 | 500,000 | 500,000 | 500,000 | 0 | 0 | 0 | 0 | 0 |
| Restructuring Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Lobel, Weiland & Golden, LLP | 0 | 0 | 0 | 0 | 300,000 | 0 | 0 | 0 | 275,000 | 0 | 0 | 0 | 375,000 |
| GlassRatner Advisory & Capital Group | 0 | 0 | 0 | 65,000 | 0 | 65,000 | 0 | 0 | 0 | 0 | 65,000 | 0 | 0 |
| Donlin Recano | 0 | 0 | 15,000 | 0 | 0 | 0 | 15,000 | 0 | 0 | 0 | 0 | 15,000 | 0 |
| Squar Milner | 0 | 0 | 10,000 | 0 | 0 | 0 | 10,000 | 0 | 0 | 0 | 0 | 10,000 | 0 |
| Silver Point Counsel | 0 | 0 | 0 | 250,000 | 0 | 0 | 0 | 0 | 250,000 | 0 | 0 | 0 | 250,000 |
| Rutan | 0 | 0 | 0 | 25,000 | 0 | 0 | 0 | 25,000 | 0 | 0 | 0 | 0 | 25,000 |
| US Trustee Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 48,000 |
| Counsel - Creditors Committee | 0 | 0 | 0 | 0 | 0 | 0 | 50,000 | 0 | 0 | 0 | 50,000 | 0 | 0 |
| InterAccount Transfers Out | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Disbursements - Total** | 2,155,020 | 3,948,381 | 2,653,181 | 5,135,131 | 3,238,080 | 5,077,714 | 3,120,599 | 5,187,799 | 3,222,749 | 3,664,232 | 2,552,237 | 4,595,037 | 3,117,237 |
| Cash - Beginning | 1,043,733 | 2,284,267 | 1,652,301 | 2,340,535 | 598,457 | 3,880,353 | 2,230,236 | 2,394,853 | 492,271 | 806,998 | 665,478 | 1,474,965 | 241,651 |
| DIP Facility (single draw) | | | | | 3,000,000 | | | | | | | | |
| Change in Cash | 1,240,534 | (631,966) | 688,234 | (1,742,077) | 281,896 | (1,650,117) | 164,617 | (1,902,583) | 314,727 | (141,520) | 809,486 | (1,233,314) | 347,975 |
| **Operating Cash - Ending** | 2,284,267 | 1,652,301 | 2,340,535 | 598,457 | 3,880,353 | 2,230,236 | 2,394,853 | 492,271 | 806,998 | 665,478 | 1,474,965 | 241,651 | 589,626 |

>>> 2016 >>>

EXHIBIT "A"