William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Proposed Attorneys for
Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| In re | Case No. 8:15-bk-15311-MW |
|---|---|
| FREEDOM COMMUNICATIONS, INC., *et al.*,[1] | Chapter 11 |
| Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| Affects: | |
| ☒  All Debtors | |
| ☐  Freedom Communications, Inc., a Delaware corporation, ONLY | |
| ☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | |

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036). The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

| | | |
|---|---|---|
| 1 | ☐ Freedom Services, Inc., a Delaware corporation, ONLY | **EMERGENCY MOTION FOR AN ORDER AUTHORIZING PAYMENT OF LIMITED PREPETITION COMMISSION OBLIGATIONS THAT EXCEED $12,475 PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 1107(a), and 1108 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6003; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF CHRIS D. DAHL IN SUPPORT** |
| 2 | | |
| 3 | ☐ 2100 Freedom, Inc., a Delaware corporation, ONLY | |
| 4 | ☐ OCR Community Publications, Inc., a California corporation, ONLY | |
| 5 | | |
| 6 | ☐ Daily Press, LLC, a California limited liability company, ONLY | |
| 7 | ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY | **DATE:** TBD<br>**TIME:** TBD<br>**PLACE:** **Courtroom 6C** |
| 8 | | |
| 9 | ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY | |
| 10 | | |
| 11 | ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY | |
| 12 | ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY | |
| 13 | | |
| 14 | ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY | |
| 15 | ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY | |
| 16 | | |
| 17 | ☐ Freedom Newspapers, a Texas general partnership, ONLY | |
| 18 | ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY | |
| 19 | | |
| 20 | ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY | |
| 21 | | |
| 22 | ☐ OCR Information Marketing, Inc., a California corporation, ONLY | |
| 23 | ☐ Odessa American, a Texas general partnership, ONLY | |
| 24 | | |
| 25 | ☐ Orange County Register Communications, Inc., a California corporation, ONLY | |
| 26 | | |
| 27 | ☐ Victor Valley Publishing Company, a California corporation, ONLY | |
| 28 | | |

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1046590.2        2        EMERGENCY WAGE MOTION

1  ☐ Victorville Publishing Company, a California limited partnership, ONLY

2

3  ☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

4  ☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

5

6  ☐ Freedom SPV I, LLC, a Delaware limited liability company, ONLY

7  ☐ Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

8

9  ☐ Freedom SPV V, LLC, a Delaware limited liability company, ONLY

10

11 **TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE,**

12 **OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED**

13 **PARTIES:**

14      The above jointly administered debtors and debtors-in-possession (the "Debtors")

15 hereby move (the "Motion") on an emergency basis for an order authorizing the payment

16 of limited prepetition commission obligations that exceed $12,475 (the "Commission

17 Obligations") pursuant to sections 105(a), 363(b), 1107(a) and 1108 of the title 11 of the

18 United States Code ("Bankruptcy Code") and Rule 6003 of the Federal Rules of

19 Bankruptcy Procedure ("Bankruptcy Rules").  On November 4, 2015, the Debtors filed

20 their *Emergency Motion for Order (i) Authorizing Payment of Prepetition Obligations,*

21 *Including Wages, Compensation, Benefits, Expense Reimbursements, and Related*

22 *Obligations, (ii) Confirming Rights to Continue Employee Programs Postpetition, (iii)*

23 *Confirming Right to Pay Withholding and Payroll-Related Taxes, (iv) Authorizing Payment*

24 *of Prepetition Claims Owing to Administrators of, or Third Party Providers Under,*

25 *Employee Programs, (v) Directing Banks to Honor Prepetition Checks and Fund Transfers*

26 *for Payment of Prepetition Obligations Pursuant to 11 U.S.C. §§ 105(a), 363(b), 507(a),*

27 *541, 1107(a), and 1108 and Federal Rule of Bankruptcy Procedure 6003* (the "Employee

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Wage Motion") that was granted by the Court by order on November 5, 2015 (Docket No. 43) (the "Employee Wage Order").

Pursuant to the Employee Wage Motion and the corresponding Employee Wage Order the Debtors are already authorized (1) to continue to honor existing practices, programs, and polices ("Employee Programs") with respect to their current employees ("Employees") that were in effect as of the commencement of these chapter 11 cases (the "Cases") and (2) to make all payments with respect to prepetition Employee Programs. However, the Debtors are limited to paying Employees the statutory priority cap of $12,475 set forth in section 507(a)(4) of the Bankruptcy Code. At the time the Employee Wage Motion was filed, the Debtors had not fully calculated all commissions owed under their Commission Programs (defined below) and were not aware that any particular Employee would be owed more than the statutory cap. In the week that has followed, the Debtors have calculated payroll that is due tomorrow and according to the Debtors' books and records, have determined that and there are five (5) Employees that are owed amounts exceeding $12,475, which by this Motion, the Debtors are requesting authorization to pay in full.[2] The Debtors filed the Motion as soon as possible after determining that the Commission Obligations were owed as part of this payroll.

These Employees are critical to the Debtors' ongoing operations. Four of the Employees play a significant role in the sale of advertising and commercial print, two of the Debtors' three main sources of revenue. Indeed, one of the Employees is the sole sales representative for commercial print. The fifth Employee is the Vice-President of Operations, who is owed a pre-petition commission for bringing in a significant account for the Debtors and who currently oversees the Debtors' print and distribution operations. The Debtors understand that these Employees, particularly the sales associates, are

---

[2] Pre-petition, the payment of the Commission Obligations were made in the ordinary course of the Debtors' businesses and the payment of the Commission Obligations will continue post-petition in the ordinary course of the Debtors' business. It is only because of the statutory cap that the Debtors cannot fulfill the Commission Obligations and pay the Employees for the services that they have performed.

concerned about the transition of the Debtors into bankruptcy and their job security as the Cases progress. While the Employees are owed varying amounts over the statutory cap, all of the Employees drive a substantial amount of the Debtors' income and the loss of their services would disrupt revenue generation for a period of months. In order to have business operations continue without suffering any further losses, and to ensure these Employees focus on sales on a going forward basis, the Debtors need to pay the Employees the Commission Obligations that they are owed.

The Debtors are seeking to have this Motion heard on an emergency basis pursuant to Local Bankruptcy Rule 9075-1(a). Paychecks are going to be sent to employees in one day. To the extent that the relief requested in this Motion is not granted, the Employees will receive significantly less than the Employees would otherwise have anticipated and this has a strong likelihood of impacting their morale and confidence in the Debtors. Indeed, the Debtors have already lost their only other commercial print sales representative who started working for one of the Debtors' largest competitors, Trend Printing, and the Debtors need to ensure that these Employees feel confident that their compensation will not be impacted by the filings. As stated above, the Debtors filed the Motion as soon as possible after determining that the Commission Obligations were owed as part of this payroll.

Wherefore, the Debtors respectfully request that the Court enter an order authorizing the payment of the Commission Obligations for the Employees set forth in the Motion.

Respectfully submitted,

Dated: November 12, 2015        LOBEL WEILAND GOLDEN FRIEDMAN LLP

By: */s/ Beth E. Gaschen*
   WILLIAM N. LOBEL
   ALAN J. FRIEDMAN
   BETH E. GASCHEN
   CHRISTOPHER J. GREEN
   Proposed Attorneys for
   Debtors and Debtors-in-Possession

1046590.2                              5                    EMERGENCY WAGE MOTION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

#### A. The Bankruptcy Filings

On November 1, 2015 and November 2, 2015 (the "Petition Dates"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Court"). The Court authorized the joint administration of the Cases by order entered on November 2, 2015. The Debtors continue to operate and manage their affairs as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Official Committee of Unsecured Creditors was appointed on November 10, 2015.

#### B. The Commission Programs and Effected Employees

One of the categories of employee programs included within the Employee Wage Motion was "Commission Programs." As stated therein:

> In addition to fixed compensation, in the ordinary course of business, the Debtors offer certain Employees commissions for performance based on a percentage of sale or other performance goals (the "Commission Programs"). The Commission Programs are an integral component of compensation for sales and marketing Employees. The Commission Programs provide for (a) a percent of revenue dollars achieved as a commission for acquiring business and (b) flat dollar payment for achieving a specified sales goal typically related to a specific product, number of accounts, or a line of business, for example interactive or online products, ads in special sections, classified advertising, and local search advertising. Certain Employees are owed payments under the Commission Programs on account of prepetition sales or other prepetition performance . . . Commissions are paid through payroll once a month.

(Employee Wage Motion, Docket No. 13 at Page 10.) It has come to the attention of the Debtors that five (5) Employees are owed commissions that exceed the $12,475 statutory priority cap and, the additional amounts are due and payable this payroll. The relief requested in the Motion relates to three sales representatives and one sales manager: (1) Estella Martinez, (2) Eric Caron, (3) Jennifer Davis, and (4) Dan Walker (collectively, the "Sales Associates"), and the Vice-President of Operations, Richard Sant.

As for the Sales Associates, the majority of the additional commission is owed to Estella Martinez who is now the sole sales representative for the entire commercial print business. As of the Petition Dates, Ms. Martinez was owed earnings of $1,306.71 in salary, third quarter 2015 commissions (July through September) of $38,622.58, and $12,874.19 for commissions earned in October 2015. Thus, the Debtors are seeking to pay Ms. Martinez a total of $52,803.49, with $40,328.49 representing the amount over the statutory cap. Ms. Martinez is an integral Employee to the Debtors' businesses. Her accounts alone have generated $9 million of revenue year-to-date through September 2015. In addition, the commercial print business is very competitive. The Debtors fully expect that if Ms. Martinez is adversely impacted by the bankruptcy filing, by way of non-payment of her commission, she will leave to join one of the Debtors' competitors.

The remaining Sales Associates are owed much smaller amounts for commissions and salary earned pre-petition. These Employees are part of the Debtors' advertising sales group. Mr. Caron, an account executive focusing on advertising sales in the automotive industry, is owed salary of $1,318.68, sales commissions of $15,002.07 earned in October 2015, and a bi-weekly bonus of $500. As such, the total amount owed to Mr. Caron is $16,802.75, with $4,345.75 being over the statutory cap. Ms. Davis, national accounts manager, who focuses on selling advertising space for larger national retailers, is owed $1,551.38 in salary and $12,782.40 in sales commissions earned in October 2015. Ms. Davis is, therefore, owed $14,333.78 and $1,858.78 would exceed the statutory cap. Mr. Walker is the manager of the real estate section, and is owed $1,903.85 in salary, $9,095.63 in third quarter 2015 bonus, and $3,031.88 in fourth quarter 2015 bonus. The total amount the Debtors seek to pay Mr. Walker is $14,031.35, which is only $1,556.35 over the statutory cap.

Richard Sant is the Vice-President of Operations. He oversees all of the Debtors' print operations and he recently took over responsibility for the distribution of newspapers, for which he received no additional compensation. Pre-petition, Mr. Sant brought in a large account for the Debtors, California Newspaper Partnership (aka Los Angeles

Newspaper Group or LANG), for which the Debtors are now responsible for printing six of LANG's nine publications and the Debtors are in negotiations for the last three publications. Mr. Sant's accounts generate over $4 million in annual commercial print revenue and he was awarded a one-time commission for procuring this revenue source. Mr. Sant is owed salary in the amount of $3,738.46 and a commission in the amount of $76,153.84. The total owed to Mr. Sant is $79,892.30, of which $67,417.30 exceeds the statutory cap.

## II. PAYMENT OF THE PREPETITION COMMISSION OBLIGATIONS ABOVE THE STATUTORY CAP SHOULD BE AUTHORIZED

### A. Payment of the Prepetition Commission Obligations Above the Statutory Cap is Authorized Under Bankruptcy Code Sections 1107(a) and 1108

The Debtors, operating their businesses as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

At least one court has noted that there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *See id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic

advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

Payment of the Commission Obligations meets each element of the *CoServ* court's standard. Any failure by the Debtors to pay the commission obligations would have a severe negative impact on the Employees at a critical time for the Debtors and their businesses. The Debtors strongly believe that if the Commission Obligations are not paid, these Employees will terminate their employment with the Debtors. The Debtors understand that the Sales Associates, in particular, are concerned about the transition of the Debtors into bankruptcy and their job security as the Cases progress. In fact, the Debtors have lost their only other commercial sales representative to one of the their largest competitors. Moreover, all of the Employees drive a substantial amount of the Debtors' income and replacing them would risk the loss of the business that they have developed both before and after coming to work for the Debtors as well as the ability to replace the revenue they generate for several months. In order to have the business operations continue to run smoothly without suffering any further losses, and to ensure these Employees focus on sales on a going forward basis, the Debtors need to pay the Employees the total commissions that they are owed.

Second, the potential harm and economic disadvantage that would stem from the failure to pay the Commission Obligations is grossly disproportionate to the amount of the Debtors seek to pay. The Sales Associates are responsible for producing revenues in the advertising and commercial print categories for the Debtors which combined represent approximately 70% of total company revenues, and if they decide to leave their jobs because of the severe cut in pay that the pre-petition commissions represent, the Debtors could risk the loss of millions of dollars in revenue. It would also be nearly impossible to replace Mr. Sant without a severe disruption to the Debtors' operations and it would be costly as well. Mr. Sant is both a source of revenue for the Debtors by bringing in

commercial print contracts but he is also responsible for two key operational functions, the print operations and distributions of newspapers, for much less than any replacement would seek. Without these Employees there would be a severe disruption of the Debtors' businesses costing far in excess of the $115,560.67 in Commission Obligations the Debtors seek to pay. Third, the Debtors have determined that, to avoid significant disruption of the Debtors' business operations, there exists no practical or legal alternative to payment of such obligations.

Therefore, the Debtors can only meet their fiduciary duties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code by payment of the Commission Obligations.

**B.**    **Bankruptcy Code Section 105 and the Doctrine of Necessity Support Payment of the Commission Obligations**

The proposed payments of the Commission Obligations should be authorized pursuant to Bankruptcy Code section 105 and under the "doctrine of necessity." Bankruptcy Code section 105 authorizes this Court "to issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105. For the reasons set forth herein, and in light of the critical need for the Debtors to preserve the going concern value of their businesses in order to effect a successful reorganization through, among other things, preservation of the Debtors' workforce and their morale, payment of the Commission Obligations as requested herein is proper in accordance with Bankruptcy Code section 105.

Payment of the Commission Obligations is further supported by the doctrine of necessity. The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that

1046590.2                                    10                         EMERGENCY WAGE MOTION

where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment);[3] *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S. D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. *See Just For Feet*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); *Ionosphere Clubs*, 98 B.R. at 175-76. In this district, courts have routinely granted such relief. *See e.g., In re Gordian Medical, Inc.*, 8:12-12399-MW (Bankr. C.D. Cal. March 5, 2012) [Docket No. 57], *In re Ocean Park Hotels – Toy, LLC, et. al.*, 1:10-bk-15358 GM (Bankr. C.D. Cal. May 11, 2010) [Docket No. 25]; *In re Victor Valley Community Hospital*, 6:10-39537-CB (Bankr. C.D. Cal. Sept. 17, 2010) [Docket No. 30].

---

[3] The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport C & Sw. Ry. Co.*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger. See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious, jeopardy.")

1046590.2                                11                           EMERGENCY WAGE MOTION

For the reasons discussed herein, it is evident that payment of the Commission Obligations is necessary to a successful chapter 11 process.  In particular, without payment of the Commission Obligations, the Debtors' businesses and operations will be detrimentally impacted through the loss of these key Employees during a critical time for the Debtors and their businesses.  Hence, this Court should exercise its equitable powers to grant the relief requested in the Motion.

### III.  NECESSITY FOR IMMEDIATE RELIEF AND EFFECTIVENESS OF ORDER

Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ."   For the reasons discussed herein, it would cause immediate and irreparable harm to the Debtors and their business operations unless they are authorized to pay the Commission Obligations and grounds exist to waive the requirements of Rule 6003.

The Debtors are also seeking to have this Motion heard on an emergency basis pursuant to Local Bankruptcy Rule 9075-1(a).  Paychecks are going to be sent to employees in one day.  To the extent that the relief requested in this Motion is not granted, the Employees will receive significantly less than the Employees would otherwise have anticipated and this has a strong likelihood of impacting their morale and confidence in the Debtors.  The Debtors have already lost their only other commercial sales representative to start working for one of the Debtors' largest competitors and the Debtors need be make ensure that these Employees feel confident that their compensation will not be impacted by the filings.  Accordingly, there is cause to hear this Motion on less than 48 hours notice.

Further, to implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order

authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## IV. CONCLUSION

Based on the foregoing, the Debtors respectfully request that this Court enter an order authorizing the Debtors to pay the Commission Obligations; (b) authorizing and directing the applicable banks and other financial institutions to receive, process, honor and pay all checks presented for payment and to honor all electronic payment requests made by the Debtors related to the foregoing; and (c) granting such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

Dated: November 12, 2015            LOBEL WEILAND GOLDEN FRIEDMAN LLP

By: */s/ Beth E. Gaschen*
    WILLIAM N. LOBEL
    ALAN J. FRIEDMAN
    BETH E. GASCHEN
    CHRISTOPHER J. GREEN
    Proposed Attorneys for
    Debtors and Debtors-in-Possession

## **DECLARATION OF CHRIS D. DAHL**

I, Chris D. Dahl, declare as follows:

1.  I am the Chief Financial Officer ("CFO") of the debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"). I have served as Chief Financial Officer since March, 2015, but have been employed by the Debtors since 1998. In my role as CFO, I am responsible for: (i) financial planning and analysis; (ii) budgeting and forecasting; (iii) treasury and cash management (collections); (iv) payroll and accounts payable; and (v) general accounting.

2.  As a result of my tenure with the Debtors, my extensive day to day experience with the financial matters impacting the Debtors' operations, my review of relevant documents, and my discussions with other members of the Debtors' management teams in the ordinary course of business, I am familiar with the Debtors' day-to-day operations, business affairs, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, could testify competently thereto. Except as otherwise stated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of the Debtors' senior management, my review of relevant documents, or my opinion, based on my experience and knowledge of the Debtors' operations and financial conditions. I am submitting this declaration in support of the Emergency Motion for an Order Authorizing Payment of Limited Prepetition Commission Obligations that Exceed $12,475 Pursuant to 11 U.S.C. §§ 105(a), 363(b), 1107(a), and 1108 and Federal Rule of Bankruptcy Procedure 6003 (the "Motion"). All terms not defined herein shall have the meanings ascribed to them in the Motion.

3.  On November 4, 2015, the Debtors filed the Employee Wage Motion that was granted by the Court by order on November 5, 2015 (the "Employee Wage Order"). Pursuant to the Employee Wage Motion and the corresponding Employee Wage Order the Debtors are already authorized (1) to continue to honor existing Employee Programs

1 with respect to their current Employees that were in effect as of the commencement of the
2 Cases and (2) to make all payments with respect to prepetition Employee Programs.
3 However, the Debtors are limited to paying Employees the statutory priority cap.

4     4.    At the time the Employee Wage Motion was filed, the Debtors had not fully
5 calculated all commissions owed under their Commission Programs and were not aware
6 that any particular Employee would be owed more than the statutory cap. In the week
7 that has followed, the Debtors have calculated payroll that is due tomorrow and according
8 to the Debtors' books and records, I have determined that and there are five (5)
9 Employees that are owed amounts exceeding $12,475. The additional amounts are due
10 and payable this payroll. Pre-petition, the payment of the Commission Obligations were
11 made in the ordinary course of the Debtors' businesses and the payment of the
12 Commission Obligations will continue post-petition in the ordinary course of the Debtors'
13 business.

14     5.    Estella Martinez is now the sole sales representative for the Debtor's entire
15 commercial print business. As of the Petition Dates, Ms. Martinez was owed earnings of
16 $1,306.71 in salary, third quarter 2015 commissions (July through September) of
17 $38,622.58, and $12,874.19 for commissions earned in October 2015. Thus, the Debtors
18 are seeking to pay Ms. Martinez a total of $52,803.49, with $40,328.49 representing the
19 amount over the statutory cap. Ms. Martinez is an integral Employee to the Debtors'
20 businesses. Her accounts alone have generated $9 million of revenue year-to-date
21 through September 2015. In addition, the commercial print business is very competitive. I
22 fully expect that if Ms. Martinez is adversely impacted by the bankruptcy filing, by way of
23 non-payment of her commission, she will leave to join one of the Debtors' competitors.

24     6.    The remaining Sales Associates are part of the Debtors' advertising sales
25 group. Mr. Caron, an account executive focusing on advertising sales in the automotive
26 industry, is owed salary of $1,318.68, sales commissions of $15,002.07 earned in October
27 2015, and a bi-weekly bonus of $500. As such, the total amount owed to Mr. Caron is
28 $16,802.75, with $4,345.75 being over the statutory cap.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

7.    Ms. Davis, national accounts manager, who focuses on selling advertising space for larger national retailers, is owed $1,551.38 in salary and $12,782.40 in sales commissions earned in October 2015. Ms. Davis is, therefore, owed $14,333.78 and $1,858.78 would exceed the statutory cap.

8.    Mr. Walker is the manager of the real estate section, and is owed $1,903.85 in salary, $9,095.63 in third quarter 2015 bonus, and $3,031.88 in fourth quarter 2015 bonus. The total amount the Debtors seek to pay Mr. Walker is $14,031.35, which is only $1,556.35 over the statutory cap.

9.    Richard Sant is the Vice-President of Operations. He oversees all of the Debtors' print operations and he recently took over responsibility for the distribution of newspapers, for which he received no additional compensation. Pre-petition, Mr. Sant brought in a large account for the Debtors, California Newspaper Partnership (aka Los Angeles Newspaper Group or LANG), for which the Debtors are now responsible for printing six of LANG's nine publications and the Debtors are in negotiations for the last three publications. Mr. Sant's accounts generate over $4 million in annual commercial print revenue and he was awarded a one-time commission for procuring this revenue source. Mr. Sant is owed salary in the amount of $3,738.46 and a commission in the amount of $76,153.84. The total owed to Mr. Sant is $79,892.30, of which $67,417.30 exceeds the statutory cap.

10.    These Employees are critical to the Debtors' ongoing operations. Any failure by the Debtors to pay the Commission Obligations would have a severe negative impact on the Employees at a critical time for the Debtors and their businesses. I strongly believe that if the Commission Obligations are not paid, these Employees will terminate their employment with the Debtors. It is my understand that the Sales Associates, in particular, are concerned about the transition of the Debtors into bankruptcy and their job security as the Cases progress.

11.    The Sales Associates play a significant role in the sale of advertising and commercial print, two of the Debtors' three main sources of revenue. The Sales

Associates are responsible for producing revenues in the advertising and commercial print categories for the Debtors, which combined represent approximately 70% of total company revenues, and if they decide to leave their jobs because of the severe cut in pay that the pre-petition commissions represent, the Debtors could risk the loss of millions of dollars in revenue. It would also be nearly impossible to replace Mr. Sant without a severe disruption to the Debtors' operations and it would be costly as well. Mr. Sant is both a source of revenue for the Debtors by bringing in commercial print contracts but he is also responsible for two key operational functions, the print operations and distributions of newspapers, for much less than any replacement would seek. Without these Employees there would be a severe disruption of the Debtors' businesses costing far in excess of the $115,560.67 in Commission Obligations the Debtors seek to pay. In order to avoid significant disruption of the Debtor's business operations, I do not believe there exists another alternative to payment of the Commission Obligations.

12. All of the Employees drive a substantial amount of the Debtors' income and replacing them would risk the loss of the business that they have developed both before and after coming to work for the Debtors as well as the ability to replace the revenue they generate. In order to have the business operations continue to run smoothly without suffering any further losses, and to ensure these Employees focus on sales on a going forward basis, the Debtors need to pay the Employees the Commission Obligations that they are owed.

13. The Debtors are seeking to have this Motion heard on an emergency basis pursuant to Local Bankruptcy Rule 9075-1(a). Paychecks are going to be sent to employees in one day. To the extent that the relief requested in this Motion is not granted, the Employees will receive significantly less than the Employees would otherwise have anticipated and this has a strong likelihood of impacting their morale and confidence in the Debtors. The Debtors have already lost their only other commercial print sales representative who started working for one of the Debtors' largest competitors, Trend

1046590.2    17    DECLARATION

Printing, and the Debtors need to ensure that these Employees feel confident that their compensation will not be impacted by the filings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of November, 2015, at Santa Ana, California.

_____
Chris D. Dahl

| In re: | CHAPTER: **11** |
|---|---|
| **Freedom Communications, Inc., a Delaware corporation, Inc., et al.**      Debtor(s). | CASE NUMBER: **8:15-bk-15311-MW** **(Jointly Adminstered)** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

650 Town Center Drive, Suite 950
Costa Mesa, CA  92626

A true and correct copy of the foregoing document entitled **EMERGENCY MOTION FOR AN ORDER AUTHORIZING PAYMENT OF LIMITED PREPETITION COMMISSION OBLIGATIONS THAT EXCEED $12,475 PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 1107(a), and 1108 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6003; MEMORANDUM OF POINTS AND AUTHORITIES; AND DELCARATION OF CHRIS D. DAHL IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 12, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On ____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 12, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

(Attorney Service)
The Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Courtesy Bin
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 11/12/2015 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                                **9013-3.1.PROOF.SERVICE**

| In re: | | CHAPTER **11** |
|---|---|---|
| **Freedom Communications, Inc., a Delaware corporation, Inc., et al.** | Debtor(s). | CASE NUMBER **8:15-bk-15311-MW** **(Jointly Administered)** |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- James C Behrens    jbehrens@greenbergglusker.com, kwoodson@ggfirm.com;calendar@ggfirm.com
- Ron Bender    rb@lnbyb.com
- Frank Cadigan    frank.cadigan@usdoj.gov
- Brian L Davidoff    bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
- Alan J Friedman    afriedman@wgllp.com, nlockwood@wgllp.com;jokeefe@wgllp.com;banavim@wgllp.com
- Beth Gaschen    bgaschen@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- Seth Goldman    seth.goldman@mto.com
- Christopher J Green    cgreen@wgllp.com, chrisgreen@ucla.com;kadele@wgllp.com
- M Jonathan Hayes    jhayes@srhlawfirm.com, roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;staci@srhlawfirm.com;jhayesecf@gmail.com;sevan@srhlawfirm.com;carolyn@srhlawfirm.com;mike@s
- James O Johnston    jjohnston@jonesday.com
- Elan S Levey    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- William N Lobel    wlobel@lwgfllp.com, nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- Aaron J Malo    amalo@sheppardmullin.com, jsummers@sheppardmullin.com
- Ashley M McDow    amcdow@bakerlaw.com, mdelaney@bakerlaw.com;lhua@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com
- David W. Meadows    david@davidwmeadowslaw.com
- Courtney E Pozmantier    cpozmantier@greenbergglusker.com, kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- Christopher E Prince    cprince@lesnickprince.com
- Jeremy E Rosenthal    jrosenthal@sidley.com
- Peter J Rudinskas    pjr.legal@gmail.com
- Leonard M Shulman    lshulman@shbllp.com
- David P Simonds    dsimonds@akingump.com, tsouthwell@akingump.com
- Helena Tseregounis    htseregounis@sidley.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Monika S Wiener    mwiener@jonesday.com, kfloyd@jonesday.com
- Beth Ann R Young    bry@lnbyb.com

This form is mandatory.    It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**