William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Proposed Attorneys for
Debtors and Debtors-in-Possession

FILED & ENTERED

DEC 16 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:15-bk-15311-MW |
| FREEDOM COMMUNICATIONS, INC., *et al.*,[1] | Chapter 11 |
| Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| Affects: | |
| ☒ All Debtors | |
| ☐ Freedom Communications, Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | |

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036).  The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  ☐ Freedom Services, Inc., a Delaware corporation, ONLY

2

3  ☐ 2100 Freedom, Inc., a Delaware corporation, ONLY

4  ☐ OCR Community Publications, Inc., a California corporation, ONLY

5

6  ☐ Daily Press, LLC, a California limited liability company, ONLY

7  ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY

8

9  ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

10

11  ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

12  ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

13

14  ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

15  ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

16

17  ☐ Freedom Newspapers, a Texas general partnership, ONLY

18  ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

19

20  ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

21

22  ☐ OCR Information Marketing, Inc., a California corporation, ONLY

23  ☐ Odessa American, a Texas general partnership, ONLY

24

25  ☐ Orange County Register Communications, Inc., a California corporation, ONLY

26

27  ☐ Victor Valley Publishing Company, a California corporation, ONLY

28

**FINAL ORDER AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 364, (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (C) PROVIDE ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (D) REPAY CERTAIN PREPETITION SECURED DEBT, AND (E) GRANT RELATED RELIEF**

1050138.1

FINAL ORDER

☐  Victorville Publishing Company, a California limited partnership, ONLY

☐  Freedom SPV II, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV I, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV V, LLC, a Delaware limited liability company, ONLY

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "the Debtors") in the above-captioned chapter 11 cases (the "Cases" or "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C.  §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), seeking:

(I)      authorization for Debtor Freedom Communications Holdings, Inc. ("Freedom Holdings") and Debtor Freedom Communications, Inc., ("Freedom Communications", and together with Freedom Holdings, the "Borrowers") to obtain postpetition financing consisting of a senior secured term loan credit facility in the aggregate principal amount not to exceed $4.5 million, plus the amount necessary to consummate the Refinancing in full in accordance with the terms of this Order and the DIP Documents (the "DIP Facility" and together with all agreements,

---

[2] Capitalized terms utilized in this Final Order that are not otherwise defined, shall have the meanings ascribed to such terms in the Motion.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

documents, guarantees, certificates and instruments delivered or executed from time to time in connection therewith, as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "DIP Documents") from Silver Point Finance, LLC, as agent (in such capacity, the "DIP Agent"), and the lenders party thereto from time to time (the "DIP Lenders");

(II)    authorization for Debtor 2100 Freedom Holdings, Inc.  ("2100 Holdings") and the other Debtors (collectively with 2100 Holdings, the "Guarantors") to unconditionally guarantee on a joint and several basis the Borrowers' obligations arising under the DIP Facility;

(III)    authorization for the Debtors to execute and enter into the DIP Documents to which they are a party and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(IV)    authorization for the Borrowers to use proceeds of the DIP Facility (a) for working capital and general corporate purposes in accordance with the Approved Budget (as defined below) and (b) subject to the terms of this Order, to refinance in full all obligations outstanding under the Prepetition Credit Agreement (as defined below), including all principal, interest, fees, make-whole amounts, expenses and other charges accrued through the date of payment (the "Refinancing");

(V)    authorization for the Debtors to use Cash Collateral (as defined below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code as provided herein;

(VI)    authorization for the Debtors to provide adequate protection to the Prepetition Secured Parties (as defined below) on the terms set forth herein;

(VII)    authorization to grant first priority superpriority claims to the DIP Agent and the DIP Lenders and first priority liens in favor of the DIP Agent for the benefit of the DIP Lenders on all prepetition and postpetition property of the

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Debtors' estates and all proceeds thereof, excluding a lien on Avoidance Actions (as defined below) and Avoidance Proceeds (as defined below);

(VIII)   a waiver by the Debtors of any right to surcharge against the DIP Collateral or Prepetition Collateral (as each are defined below) pursuant to section 506(c) of the Bankruptcy Code or otherwise;

(IX)   modification of the automatic stay set forth in section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Documents and this Order;

(X)   a waiver of any applicable stay with respect to the effectiveness and enforceability of this Order (including under Bankruptcy Rule 6004); and

(XI)   the granting of related relief.

The hearing on the Motion (the "Hearing") having been held by this Court (the "Bankruptcy Court") on December 14, 2015, and based upon all of the pleadings filed with the Bankruptcy Court in respect of the Motion; and based upon the record made by the Debtors at the Hearing; and it appearing that the relief granted in this Final Order is in the best interests of the Debtors and the Debtors' estates and creditors; the Debtors having given notice of the Motion and it appearing that no further notice need be given; and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS ORDERED** that:

1.   <u>Jurisdiction</u>.  The Bankruptcy Court has core jurisdiction over these chapter 11 cases, the Motion, and the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.   <u>Notice</u>.  The notice given by the Debtors of the Motion and the Hearing was given to:  (a) the Office of the United States Trustee for the Central District of California – Santa Ana Division, (b) counsel to the DIP Agent and the DIP Lenders; (c) counsel to the Prepetition Lenders and the Prepetition Agent (as defined below); (d) the Pension Benefit Guaranty Corporation; (e) United States Securities and Exchange Commission; (f) the

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   Internal Revenue Service; (g) the Office of the United States Attorney for the Central

2   District of California; (h) the parties included on the Debtors' consolidated list of thirty

3   (30) largest unsecured creditors; (i) all other known parties asserting a lien against the

4   Debtors' assets; and (j) any parties that have filed with the Bankruptcy Court requests for

5   notice of all matters in accordance with Bankruptcy Rule 2002.  To the extent necessary,

6   the Bankruptcy Court waives compliance with Local Bankruptcy Rule 9075-1 and

7   approves service (in addition to the means of service set forth in such Local Bankruptcy

8   Rule) by overnight or electronic delivery.  Such notice constitutes appropriate notice under

9   the circumstances and complies with Bankruptcy Rules 4001(b) and applicable Local

10   Rules.  No further notice of the relief sought at the Hearing is necessary or required.

11        3.   <u>Creditors' Committee Formation</u>.  Pursuant to section 1102 of the

12   Bankruptcy Code, an official committee of unsecured creditors in these chapter 11 cases

13   was appointed on November 10, 2015 (the "<u>Committee</u>").

14        4.   <u>Interim Order</u>.  On November 5, 2015, the Bankruptcy Court entered an

15   Interim Order (A) Authorizing Debtors To (1) Utilize Cash Collateral Pursuant To 11

16   U.S.C. § 363, (2) Provide Adequate Protection To Prepetition Secured Parties, And

17   (3) Grant Related Relief, And (B) Setting Final Hearing (the "<u>Interim Order</u>").

18        5.   <u>The Debtors' Stipulations</u>.  Subject to the rights of other parties in interest as

19   set forth in paragraph 27 below, the Debtors for themselves only admit, stipulate and

20   agree that:

21        a.   <u>The Debtors' Businesses</u>.  The Debtors, headquartered in Santa Ana,

22   California, are a privately owned information and entertainment company consisting of

23   print publications and interactive businesses.  The Debtors' portfolio includes daily and

24   weekly newspapers, magazines and other specialty publications.  In addition, the Debtors

25   operate an interactive business which offers website complements, as well as digital and

26   mobile products, to their print publications.  The Orange County Register is the Debtors'

27   flagship newspaper.  The Debtors also operate the Riverside Press-Enterprise and Unidos

28   (a Spanish language newspaper), and own real property in Santa Ana and Riverside,

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

California.  The Debtors filed voluntary petitions pursuant to chapter 11 of the Bankruptcy Code on November 1, 2015 (the "Petition Date") and November 2, 2015.  The Debtors are operating their businesses as debtors-in-possession in accordance with sections 1107(b) and 1108 of the Bankruptcy Code.

　　　　b.　　The Prepetition Loan Parties.

　　　　　　i.　　As of November 21, 2013, (i) Freedom Communications Holdings, Inc.  ("Freedom Holdings") and Freedom Communications, Inc.  ("Freedom Communications"), as borrowers (the "Prepetition Borrowers"), (ii) Freedom SPV II, LLC ("Freedom SPV II"), Freedom SPV VI, LLC ("Freedom SPV VI") and others, as guarantors (the "Prepetition Guarantors"), (iii) the lenders parties thereto (the "Prepetition Lenders"), and (iv) Silver Point Finance, LLC, as administrative agent and collateral agent (the "Prepetition Agent," and together with the Prepetition Lenders, the "Prepetition Loan Parties"), entered into that *Credit Guaranty Agreement*, dated as of November 21, 2013 (the "Original Credit Agreement").

　　　　　　ii.　　The Original Credit Agreement, and the terms thereof, were amended pursuant to: (i) *Amendment to Credit and Guaranty Agreement*, dated as of December 10, 2013, (ii) *Second Amendment and Waiver to Credit and Guaranty Agreement*, dated as of January 24, 2014, (iii) *Third Amendment and Waiver to Credit and Guaranty Agreement*, dated as of February 28, 2014, (iv) *Fourth Amendment and Waiver to Credit and Guaranty Agreement*, dated as of April 21, 2014, and (v) *Fifth Amendment and Waiver to Credit and Guaranty Agreement*, dated as of May 28, 2014.  Pursuant to the Original Credit Agreement, as amended, supplemented or otherwise modified from time to time (the "Prepetition Credit Agreement"), and the Prepetition Credit Agreement, together with the Security Agreement, the Freedom SPV II Deed of Trust, the Freedom SPV VI Deed of Trust, and the UCC 1 (all as defined below), and all agreements, documents, certificates, and instruments delivered or executed from time to time in connection therewith, as amended, restated, amended and restated,

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

FINAL ORDER

supplemented, or otherwise modified from time to time in accordance with the terms thereof (collectively, the "Prepetition Loan Documents"), the Prepetition Lenders made loans and other extensions of credit available to the Borrowers.

iii.   Concurrently with the execution of the Original Credit Agreement, (i) Freedom Holdings, Freedom Communications, Freedom SPV II, Freedom SPV VI and other related and affiliated entities, as grantors, and (ii) Prepetition Agent, as collateral agent for the Prepetition Lenders, entered into that *Pledge and Security Agreement*, dated as of November 21, 2013 (the "Security Agreement").  Pursuant to the Security Agreement, Freedom Holdings, Freedom Communications, Freedom SPV II, Freedom SPV VI and the other grantors set forth therein granted to Prepetition Agent, as agent, and for the benefit, of the Prepetition Lenders, a first priority security interest in all of Freedom Holdings', Freedom Communications', Freedom SPV II's, Freedom SPV VI's and the other grantor parties' personal property assets, including those personal property assets itemized therein, including without limitation all of their equipment, inventory, accounts, contract rights, chattel paper, instruments, tax refunds, general intangibles and all proceeds of the foregoing, and the proceeds thereof, to secure all of the obligations of such parties to the Prepetition Loan Parties.

iv.   On November 22, 2013, in accordance with the Prepetition Credit Agreement and Security Agreement, the Prepetition Agent, as (i) beneficiary and collateral agent of the Prepetition Lenders and (ii) "Secured Party," recorded, in the Delaware Department of State, UCC 1 Financing Statements against Freedom Communications, Freedom Holdings, Freedom SPV II and Freedom SPV VI, as debtors, designated as filing numbers 2013 4616570, 2013 4616620, 2013 4617107 and 2013 4617271 (collectively, the "UCC 1"), which identified the collateral as "all assets, whether now owned or hereafter acquired."  The UCC 1 was recorded as a first priority position lien and is superior to and has priority over all other UCC 1 financing statements and liens with respect to the property

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

identified in the UCC 1, except to the extent (and only to the extent) that the statutory liens of The Retirement Plan of Freedom Communications, Inc. (the "Pension Plan"), as perfected on the Pension Plan's behalf by the Pension Benefit Guaranty Corporation (the "PBGC") under 26 U.S.C. § 430(k), if any, have priority over the Prepetition Agent's liens pursuant to 26 U.S.C. § 6321, 6323, et. seq. and applicable law (to such extent, the "PBGC Prior Lien").

v.     Concurrently with the execution of the Prepetition Credit Agreement, Freedom SPV II, as trustor, made, executed and delivered to the Prepetition Agent, as beneficiary and collateral agent of the Prepetition Lenders, that *Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing*, dated as of November 19, 2013 (as amended, the "Freedom SPV II Deed of Trust"), with respect to the vacant real property of approximately 16 acres in Santa Ana, California described therein (the "Freedom SPV II Property").  The Freedom SPV II Deed of Trust was recorded on November 25, 2013, in the Orange County Recorder's Office as document no. 2013000644091.  The Freedom SPV II Deed of Trust is a first priority lien against the Freedom SPV II Property and secures all "obligations and liabilities" of the borrowers and guarantors under the Prepetition Loan Documents, including the obligations of Freedom Holdings, Freedom Communications, Freedom SPV II, Freedom SPV VI.  The Freedom SPV II Property is the sole material asset of Freedom SPV II and generates the gross income of Freedom SPV II.

vi.     As of May 28, 2014, Freedom SPV II and the Prepetition Agent, as beneficiary and collateral agent of the Prepetition Lenders, entered into that *Modification Agreement to Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing* (the "Freedom SPV II Amendment to Deed of Trust").  The Freedom SPV II Amendment to Deed of Trust was recorded on May 29, 2014, in the Orange County Recorder's Office as document no. 2014000208267.

vii.      Concurrently with the execution of the Prepetition Credit Agreement,

Freedom SPV VI, as trustor, made, executed and delivered to the Prepetition

Agent, as beneficiary and collateral agent of the Prepetition Lenders, that *Deed of*

*Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing*,

dated as of November 19, 2013 (as amended, the "Freedom SPV VI Deed of

Trust"), with respect to the real property commonly known as 3512 14th Street,

Riverside, California (the "Freedom SPV VI Property").  The Freedom SPV VI Deed

of Trust was recorded on November 27, 2013, in the Riverside County Recorder's

Office as document no. 2013-0558068.  The Freedom SPV VI Deed of Trust is a

first priority lien against the Freedom SPV VI Property and secures all "obligations

and liabilities" of the borrowers and guarantors under the Prepetition Loan

Documents, including the obligations of Freedom Holdings, Freedom

Communications, Freedom SPV II, Freedom SPV VI.  The Freedom SPV VI

Property is the sole material asset of Freedom SPV VI and generates the gross

income of Freedom SPV VI.

viii.      As of May 28, 2014, Freedom SPV VI and the Prepetition Agent, as

beneficiary and collateral agent of the Prepetition Lenders, entered into that

*Modification Agreement to Deed of Trust, Security Agreement, Assignment of*

*Rents and Leases and Fixture Filing* (the "Freedom SPV VI Amendment to Deed of

Trust").  The Freedom SPV VI Amendment to Deed of Trust was recorded on

May 29, 2014, in the Riverside County Recorder's Office as document no. 2014-

0196911.

ix.      Pursuant to the Prepetition Loan Documents, the Borrowers and the

other obligors thereunder, including the other Debtors, granted to the Prepetition

Agent, for the benefit of the Prepetition Lenders, valid, binding, perfected, first-

priority liens and security interests (the "Prepetition Senior Liens") in substantially

all of their assets, including, without limitation, the following (each as defined in the

Prepetition Loan Documents):  (a) Accounts; (b) Books; (c) Chattel Paper;

(d) Commercial Tort Claims; (e) Deposit Accounts; (f) Documents; (g) Equipment; (h) Farm Products; (i) Fixtures; (j) General Intangibles; (k) Goods (including, without limitation, Inventory and Equipment); (l) Inventory; (m) Instruments; (n) Insurance; (o) Intellectual Property; (p) Investment Related Property; (q) Letter of Credit Rights; (r) Money; (s) Receivables and Receivables Records; (t) Securities Accounts; (u) to the extent not otherwise included above, all Collateral Records, Collateral Support and Supporting Obligations relating to any of the foregoing; and (v) to the extent not otherwise included above, all Proceeds, products, accessions, rents and profits of or in respect of any of the foregoing.  In addition, to secure the Prepetition Debt, the applicable Debtors executed and delivered to the Prepetition Agent, for the benefit of the Prepetition Lenders, deeds of trust on certain real property assets owned by them.  The foregoing is collectively referred to as the "Prepetition Collateral".

x.      On July 11, 2014, the Prepetition Agent, as beneficiary and collateral agent of the Prepetition Lenders, provided and delivered to Freedom Holdings and Freedom Communications a "Notice of Default" which, among other things, set forth therein certain of the defaults of Freedom Holdings and Freedom Communications under the Prepetition Loan Documents and thereafter accelerated all sums outstanding plus all fees, costs and charges due under the Prepetition Loan Documents.

xi.      On September 16, 2014, as a result of the default of Freedom Holdings and Freedom Communications under the Prepetition Loan Documents, the Prepetition Agent, as beneficiary and collateral agent of the Prepetition Lenders, caused to be recorded in the Orange County Recorder's Office, with respect to the Freedom SPV II Deed of Trust and Freedom SPV II Property, that *Notice of Default and Election to Sell Under Deed of Trust* (the "Freedom SPV II NOD") thereby commencing a non-judicial foreclosure proceeding against the

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  Freedom SPV II Property.  The Freedom SPV II NOD was recorded in the Orange

2  County Recorder's Office as document no. 2014000373433.

3         xii.    On September 16, 2014, as a result of the default of Freedom

4  Holdings and Freedom Communications under the Prepetition Loan Documents,

5  the Prepetition Agent, as beneficiary and collateral agent of the Prepetition

6  Lenders, caused to be recorded in the Riverside County Recorder's Office, with

7  respect to the Freedom SPV VI Deed of Trust and Freedom SPV VI Property, that

8  *Notice of Default and Election to Sell Under Deed of Trust* (the "Freedom SPV VI

9  NOD") thereby commencing a non-judicial foreclosure proceeding against the

10  Freedom SPV VI Property.  The Freedom SPV VI NOD was recorded in the

11  Riverside County Recorder's Office as document no. 2014-0349859.

12         xiii.    On April 16, 2015, the Prepetition Agent, as beneficiary and collateral

13  agent of the Prepetition Lenders, caused to be recorded in the Orange County

14  Recorder's Office, with respect to the Freedom SPV II Deed of Trust, Freedom

15  SPV II Property, and Freedom SPV II NOD, that *Notice of Trustee's Sale*

16  ("Freedom SPV II NOS") setting and scheduling the non-judicial foreclosure sale of

17  the Freedom SPV II Property for May 15, 2015.  The Freedom SPV II NOS was

18  recorded in the Orange County Recorder's Office as document no.

19  2015000194160.  Prior to the Petition Date, the foreclosure sale of the Freedom

20  SPV II Property was postponed to November 3, 2015.

21         xiv.    On April 16, 2015, the Prepetition Agent, as beneficiary and collateral

22  agent of the Prepetition Lenders, caused to be recorded in the Riverside County

23  Recorder's Office, with respect to the Freedom SPV VI Deed of Trust, Freedom

24  SPV VI Property, and Freedom SPV VI NOD, that *Notice of Trustee's Sale*

25  ("Freedom SPV VI NOS") setting and scheduling the non-judicial foreclosure sale

26  of the Freedom SPV VI Property for May 15, 2015.  The Freedom SPV VI NOS

27  was recorded in the Riverside County Recorder's Office as document no. 2015-

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

0152616.  Prior to the Petition Date, the foreclosure sale of the Freedom SPV VI Property was postponed to November 3, 2015.

xv.    On June 10, 2015, the Prepetition Agent, through counsel, and as beneficiary and collateral agent of the Prepetition Lenders, sent a letter to the Debtors advising the Debtors that various defaults still existed under the Prepetition Loan Documents, that all previous "notices of default" and/or "events of default" and/or acceleration of the debts and obligations under and pursuant to the Prepetition Loan Documents were still in effect and effective, and that the debts and obligations of the Debtors, and each of them, under the Prepetition Loan Documents were accelerated and immediately due and payable.

xvi.    As of the Petition Date, the outstanding aggregate amount due by the Debtors under the Prepetition Credit Agreement was (i) not less than $12,007,790 in principal (the "Principal Amount"), (ii) not less than $5,284,907 in make-whole obligations due under Section 2.14(g) of the Prepetition Credit Agreement (the "Make-Whole Amount"), and (ii) the amount of all other outstanding Obligations, as defined in the Prepetition Credit Agreement (including interest, fees, expenses, make-whole amounts, and other charges) (collectively, the "Prepetition Debt").  The Prepetition Debt, including the Make-Whole Amount, is immediately due and payable.  The Make-Whole Amount is a valid and unavoidable debt that is now due and cannot be cured and/or decelerated.

xvii.    The Prepetition Senior Liens are valid, binding, enforceable, non-avoidable and perfected first priority liens in (and attach to) the Prepetition Collateral (subject only to the PBGC Prior Lien, if any) and the Prepetition Debt constitutes the legal, valid, binding, enforceable and non-avoidable obligations of the applicable Debtors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).  The Freedom SPV II Deed of Trust recorded against the Freedom SPV II Property and the Freedom SPV VI Deed of Trust

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

recorded against the Freedom SPV VI Property and each of their rents, issues, product, and proceeds, are in a first priority position, valid, perfected, and unavoidable, and attach to all of the Debtors' interest in said properties.  No portion of the Prepetition Senior Liens or Prepetition Debt is subject to any challenge or defense, including avoidance, reduction, offset, attachment, disallowance, disgorgement, recharacterization, surcharge, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

xviii.    The Prepetition Debt and the Prepetition Collateral are not and shall not be subject to any attachment, contest, attack, rejection, recoupment, reduction, defense, counterclaim, setoff, offset, recharacterization, avoidance or other claim (as "claim" is defined by section 101(5) of the Bankruptcy Code), impairment, disallowance, counterclaim, subordination (whether equitable, contractual, or otherwise), cause of action or any other challenge of any nature under the Bankruptcy Code (including, without limitation, under chapter 5 of the Bankruptcy Code), under applicable non-bankruptcy law or otherwise (including, without limitation, any applicable state Uniform Fraudulent Transfer Act or Uniform Fraudulent Conveyance Act).

xix.    Subject to the reservation of rights set forth in paragraph 27 below, including the expiration of the Challenge Period, the Debtors and their estates hereby absolutely and unconditionally forever waive, discharge, and release each of the Prepetition Loan Parties and each of their respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, agents, attorneys, financial advisors, consultants, officers, directors, employees, and other representatives thereof (all of the foregoing, solely in their respective capacities as such, collectively, the "Prepetition Loan Party Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, actions, causes of action (including, without limitation, causes of action in the nature of "lender liability"), defenses, demands,

debts, accounts, contracts, liabilities, setoff, recoupment, or other offset rights against any and all of the Prepetition Loan Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition Debt, the Prepetition Senior Liens, and/or the Prepetition Collateral, from the beginning of time until immediately preceding the entry of this Order, including, without limitation, (i) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law, and (ii) any right or basis to challenge or object to the amount, validity, or enforceability of the applicable Prepetition Debt or any payments made on account of the applicable Prepetition Debt, or the validity, enforceability, priority, or non-avoidability of the applicable Prepetition Senior Liens or the Prepetition Collateral securing the applicable Prepetition Debt.

c.    The PBGC Liens.

i.    Pursuant to § 430(k)(5), the PBGC filed lien notices against each Debtor on August 13, 2014 perfecting statutory liens on the Pension Plan's behalf (the "PBGC Liens").  As of September 15, 2015, the amount of the PBGC Liens against each Debtor totaled $15,458,715 (such amount, including all prepetition accruals after September 15, 2015 (to the extent included by applicable non-bankruptcy law), the "PBGC Lien Amount").

ii.    The PBGC Liens are valid, perfected, and unavoidable, and attach to all of the Debtors', and each of their personal property.

iii.    The PBGC Liens recorded against Freedom II Property and the PBGC Liens recorded against Freedom VI Property, and each of their rents, issues, product , and proceeds are valid, perfected, and unavoidable, and attach to all of the Debtors' interest in said properties.

iv.    The PBGC Lien Amount is valid, unavoidable, and presently and immediately due and payable.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

d.    Other Secured Debt.  As of the Petition Date, the Debtors had obligations

outstanding to each of the creditors identified on Schedule 1 hereto, including the Pension

Plan (collectively, the "Other Prepetition Creditors," and, together with the Prepetition

Loan Parties, the "Prepetition Secured Parties"), in the amounts set forth therein (the

"Other Secured Debt"), and such Other Secured Debt was secured by the Prepetition

Collateral as described on said schedule (the "Prepetition Junior Liens").  The Debtors

acknowledge and agree that the Prepetition Junior Liens (other than the PBGC Prior Lien,

if any) and the Other Secured Debt are junior and subordinate to the Prepetition Senior

Liens and the Prepetition Debt to the extent provided by applicable law and/or as reflected

in certain intercreditor and subordination agreements executed by the applicable Other

Prepetition Creditor in favor of the Prepetition Loan Parties prior to the Petition Date.

6.    Cash Collateral.  For purposes of this Order, the term "Cash Collateral,"

including, without limitation, all cash proceeds of Prepetition Collateral, shall have the

meaning ascribed to it in section 363(a) of the Bankruptcy Code.  The Prepetition Loan

Parties, the PBGC, and the Debtors agree that all revenue, rents, issues, profits,

proceeds, refunds and collections of and with respect to the Prepetition Collateral (which

includes, without limitation, all personal property of the Debtors, the Freedom SPV II

Property and the Freedom SPV VI Property), including all cash, negotiable instruments,

documents of title, securities, deposit accounts, tax refunds of any of the Debtors and all

other cash equivalents, constitute and are the Prepetition Loan Parties' Cash Collateral

pursuant to 11 U.S.C.  § 363(a); provided that to the extent (and only to that extent, if at

all) that there is a PBGC Prior Lien on any of such Cash Collateral, the Prepetition Loan

Parties, the PBGC, and the Debtors agree that such collateral constitutes and is the

Pension Plan's Cash Collateral pursuant to 11 U.S.C.  § 363(a).

7.    Use of Cash Collateral.  The Debtors are hereby authorized, subject to the

terms and conditions of the DIP Documents and this Order, and in accordance with the

Approved Budget (as defined below), to use Cash Collateral, during the period from the

entry of this Order until the Termination Date (as defined below) for working capital and

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  general corporate and other permitted purposes.  For the avoidance of doubt, from and

2  after the date of entry of this Order, the Debtors' use of Cash Collateral shall be governed

3  solely by the terms of this Order, and this Order shall supersede the terms of the Interim

4  Order.  The Debtors' right to use the Cash Collateral shall terminate automatically on the

5  earlier of:  (i) the Term Loan Maturity Date, as defined in the DIP Credit Agreement; and

6  (ii) the Termination Date.

7      8.   <u>The DIP Financing and Use of Cash Collateral</u>.

8      a.   Good cause has been shown for the entry of this Order.

9      b.   The Debtors have a need to obtain the financing provided under the DIP

10  Facility and to have continuous access to Cash Collateral for the operation of their

11  businesses, to preserve their going concern value, to pay vendors, suppliers and

12  customers, to satisfy payroll obligations, to consummate the Refinancing, to pay for

13  certain costs and expenses related to the Chapter 11 Cases and to satisfy the Debtors'

14  other working capital and operational needs.  Access to sufficient working capital and

15  liquidity made available through the DIP Facility and the use of Cash Collateral as

16  provided hereunder is vital to the preservation and maintenance of the Debtors' going

17  concern value and to the Debtors' successful reorganization.

18      c.   The Debtors are unable to obtain sufficient financing on more favorable

19  terms from sources other than the DIP Lenders under the DIP Documents and are unable

20  to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy

21  Code as an administrative expense.  The Debtors are also unable to obtain secured credit

22  allowable solely under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy

23  Code, without the Debtors (i) granting first priority priming liens on the DIP Collateral and

24  the Superpriority Claims (as defined below) and (ii) refinancing the Prepetition Debt in full

25  upon entry of this Order.

26      d.   The DIP Agent and the DIP Lenders are willing to provide the DIP Facility,

27  subject to the terms and conditions set forth in the DIP Documents and the provisions of

28  this Order, so long as the DIP Liens (as defined below), the Superpriority Claims and

1    other protections granted by this Order and the DIP Documents will not be affected by any

2    subsequent reversal or modification of this Order or any other order, as provided in

3    section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility approved by

4    this Order.  The DIP Agent and the DIP Lenders have acted in good faith in agreeing to

5    provide the DIP Facility approved by this Order and to be further evidenced by the DIP

6    Documents and their reliance on the assurances referred to above is in good faith.

7         e.      Among other things, entry of this Order will minimize disruption of the

8    Debtors' businesses and operations by enabling them to meet payroll and satisfy other

9    critical expenses, including paying vendors and professional fees.  The DIP Facility as set

10   forth herein is vital to avoid irreparable loss or harm to the Debtors' estates, which will

11   otherwise occur if access to the DIP Facility is not obtained.  Consummation of the DIP

12   Facility pursuant to the terms of this Order therefore is in the best interests of the Debtors'

13   estates.

14        f.      Based upon the record before the Bankruptcy Court, the DIP Documents,

15   the DIP Facility, the use of Cash Collateral and the Adequate Protection Provisions (as

16   defined below), each as authorized hereunder, have been negotiated at arm's length and

17   in good faith among the Debtors, the DIP Agent and the DIP Lenders, and the terms of the

18   DIP Facility, the use of Cash Collateral and the Adequate Protection Provisions authorized

19   pursuant to this Order are fair and reasonable under the circumstances, reflect the

20   Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are

21   supported by reasonably equivalent value and fair consideration, and are in the best

22   interests of the Debtors, their estates and creditors.  All of the Debtors' obligations and

23   indebtedness arising under, in respect of or in connection with the DIP Facility and the

24   DIP Documents, including the Obligations (as defined in the DIP Documents, collectively,

25   the "DIP Obligations"), the use of Cash Collateral and the Adequate Protection Provisions,

26   shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their

27   affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and

28   in express reliance upon the protections offered by section 364(e) of the Bankruptcy

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code

2  in the event that this Order or any provision hereof is vacated, reversed or modified on

3  appeal or otherwise.

4     g.  The Bankruptcy Court concludes that entry of this Order is in the best

5  interests of the Debtors and their estates and creditors as its implementation will, among

6  other things, allow the Debtors to facilitate their chapter 11 goals and maximize the value

7  of their assets.

8     9.  <u>Authorization of the DIP Facility and the DIP Documents</u>.

9     a.  The Borrowers are hereby authorized to borrow under the DIP Facility, and

10 the other Debtors are hereby authorized to guarantee such borrowings as well as the

11 other DIP Obligations, up to an aggregate principal amount of $4.5 million, plus the

12 amount necessary to consummate the Refinancing in full in accordance with the terms of

13 this Order and the DIP Documents.

14    b.  The Debtors are hereby authorized and directed to execute, issue, deliver,

15 enter into and adopt, as the case may be, the DIP Documents to be delivered pursuant

16 hereto or thereto or in connection herewith or therewith, including, without limitation, the

17 Approved Budget.

18    c.  In furtherance of the foregoing and without further approval of the

19 Bankruptcy Court, each Debtor is authorized and directed to perform all acts, to make,

20 execute and deliver all instruments and documents (including, without limitation, the

21 execution or recordation of security agreements, mortgages and financing statements),

22 and, without further application to the Bankruptcy Court, to pay all fees and expenses

23 required to be paid under this Order and the DIP Documents, including, without limitation,

24 the reasonable fees and out-of-pocket expenses of the DIP Agent and the DIP Lenders,

25 including their professional fees and expenses (the "<u>DIP Professional Fees</u>").  The

26 Debtors shall provide to the Office of the United States Trustee and the Committee a copy

27 of any invoices for DIP Professional Fees provided to the Debtors during the pendency of

28 the Chapter 11 Cases.  The U.S. Trustee and the Committee shall have ten (10) days

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  after receipt of a copy of each invoice to assert a specific written objection as to the

2  reasonableness of the amounts contained in the subject invoice.  In the absence of a

3  written objection or dispute as to an invoice, the Debtors shall pay and/or reimburse the

4  DIP Agent for all DIP Professional Fees within ten (10) days of receipt of the invoice in

5  question.  In the event any amount stated in any invoice is disputed, the Debtors shall be

6  required to pay and/or reimburse the DIP Agent for any undisputed DIP Professional Fees

7  in expenses not later than ten (10) days after delivery of the aforementioned invoice.

8          d.         The Debtors are further hereby authorized to execute, deliver and perform

9  one or more amendments, waivers, consents or other modifications to and under the DIP

10  Documents, in such form as the Debtors and the DIP Agent may agree (subject to the

11  consent of the Committee, which shall not be unreasonably withheld, or with the approval

12  of the Bankruptcy Court over the Committee's objection), and no further approval of the

13  Bankruptcy Court shall be required for amendments, waivers, consents or other

14  modifications to and under the DIP Documents (and any reasonable fees paid in

15  connection therewith) that do not (i) shorten the maturity or the scheduled termination date

16  thereunder, or (ii) increase the commitments or the rate of interest (other than invoking the

17  default rate upon an Event of Default) payable thereunder.

18          e.         The Debtors are further hereby authorized and directed to (i) make the non-

19  refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of any fees

20  and other amounts due, including (subject to the requirements of paragraph 37 herein)

21  any reimbursement of indemnified obligations referred to in the DIP Documents (and in

22  any separate letter agreements between such applicable parties and the Debtors in

23  connection with the DIP Facility) and reasonable costs and expenses as may be due from

24  time to time, including, without limitation, the DIP Professional Fees as provided for in the

25  DIP Documents (whether incurred pre-or post-petition), without the need to file retention

26  motions or fee applications or to obtain Bankruptcy Court approval; (ii) perform all other

27  acts required under or in connection with the DIP Documents, including the granting and

28  perfection of the DIP Liens and the Superpriority Claims as provided herein and therein;

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  and (iii) cause the execution and delivery of and performance under the DIP Facility's

2  guarantees.

3          f.        Upon execution and delivery of the DIP Documents, the DIP Documents

4  shall constitute valid and binding obligations of the Debtors, enforceable against each

5  Debtor party thereto in accordance with the terms of the DIP Documents and this Order.

6  No obligation, payment, transfer or grant of a security or other interest under the DIP

7  Documents or this Order shall be stayed, restrained, voidable, or recoverable under the

8  Bankruptcy Code or any applicable law (including, without limitation, under section 502(d)

9  of the Bankruptcy Code), or subject to any defense, reduction, set-off, recoupment or

10  counterclaim.

11          g.        The Debtors' borrowings from the DIP Lenders under the DIP Facility and

12  this Order will be used in a manner consistent with the terms and conditions of the

13  applicable DIP Documents, this Order and in accordance with and to the extent set forth in

14  the Approved Budget, solely (i) for working capital and other general corporate purposes,

15  including the payment of fees and expenses of the Debtors, the Committee, the DIP Agent

16  and the DIP Lenders, and the Prepetition Loan Parties, in connection with the Chapter 11

17  Cases and as provided herein and (ii) to consummate the Refinancing, except that (A) if

18  any Prepetition Debt is subsequently reinstated after the payment thereof because such

19  payment (or any portion thereof) is required to be returned or repaid to the Debtors or the

20  DIP Lenders then such Prepetition Senior Liens shall be reinstated (and shall be valid and

21  perfected notwithstanding any termination statements, releases, and/or assignments, and

22  without the necessity of the execution, recordation or filings by the Debtors of mortgages,

23  security agreements, control agreements, pledge agreements, financing statements or

24  other similar documents, or the possession or control by the Prepetition Loan Parties of,

25  or over, any Prepetition Collateral) and (B) such reinstated Prepetition Senior Liens shall

26  be junior and subordinate in all respects to the DIP Liens (such junior liens and security

27  interests of the Prepetition Loan Parties are hereinafter referred to as the "Contingent

28  Liens," and any such reinstated Prepetition Debt described in clause (A) of this sentence

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1050138.1                                    21                                    FINAL ORDER

is hereinafter referred to as the "Contingent Prepetition Debt").  The Prepetition Loan Parties shall deliver or cause to be delivered, at the Debtors' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent and the DIP Lenders or other documents, in each case as reasonably requested by the Debtors or the DIP Agent in order to effectuate and/or evidence the repayment of the Prepetition Debt.

h.    In the event that the Prepetition Loan Parties (in their capacities as such) are ordered by the Bankruptcy Court, and such order is not stayed pending an appeal, to disgorge, refund or in any manner repay to the Debtors or their estates any amounts (the "Disgorged Amounts") leading to Contingent Prepetition Debt, (i) the validity, enforceability, or priority of the DIP Obligations or the DIP Liens shall not be affected unless otherwise ordered by the Bankruptcy Court, and (ii) the rights of the Prepetition Loan Parties under section 502(h) of the Bankruptcy Code are preserved.

i.    Neither the proceeds from the DIP Facility nor any Cash Collateral shall be loaned or advanced to, or invested in (in each case, directly or indirectly), any entity that is not a Debtor, and any amounts loaned or advanced to, or invested in, any Guarantor shall be evidenced by an intercompany note, in form and substance reasonably satisfactory to the DIP Agent, for the full amount of the proceeds so loaned, advanced or invested, which intercompany note shall be pledged to the DIP Agent for the benefit of the DIP Lenders, to secure the DIP Obligations (as defined herein).

j.    In no event shall the DIP Lenders or the Prepetition Loan Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable.

10.    Superpriority Claims.

a.    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority senior administrative expense claims against the Debtors with priority over any and all administrative expense claims, adequate protection claims and all other claims against the Debtors, now existing or hereafter

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

arising, of any kind whatsoever, including, without limitation, all administrative expense

claims of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and

over any and all administrative expenses or other claims arising under sections 105, 326,

328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code

(the "Superpriority Claims"), whether or not such expenses or claims may become

secured by a judgment lien or other non-consensual lien, levy or attachment, which

allowed claims shall be payable from and have recourse to all pre-petition and post-

petition property of the Debtors and their estates and all proceeds thereof, subject only to

the payment of the Carve-Out (as defined below) to the extent specifically provided for

herein; provided, however that the Superpriority Claims shall not be payable from or have

recourse to Avoidance Actions or Avoidance Proceeds.  Any payments, distributions or

other proceeds received on account of such Superpriority Claims shall be promptly

delivered to the DIP Agent to be applied or further distributed by the DIP Agent on account

of the DIP Obligations in such order as is specified in this Order and the DIP Documents.

The Superpriority Claims shall be entitled to the full protection of section 364(e) of the

Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed

or modified, on appeal or otherwise.

b.     For purposes hereof, the "Carve-Out" means (i) all fees required to be paid

to the Clerk of the Bankruptcy Court and to the U.S. Trustee under 28 U.S.C. § 1930(a)

and 31 U.S.C. § 3717 (as to the U.S. Trustee, in such amount as agreed to by the

U.S. Trustee or Order of the Bankruptcy Court); (ii) all reasonable fees and expenses

incurred by a trustee appointed under section 701 of the Bankruptcy Code in an amount

not to exceed $25,000; and (iii) to the extent allowed at any time, but subject in all

respects to the Approved Budget and the terms of this Order, all accrued and unpaid fees,

disbursements, costs and expenses ("Professional Fees") (other than any monthly fee,

restructuring fee, sale fee or other success fee of any investment bankers or financial

advisors of the Debtors), incurred by professionals or professional firms retained by either

the Debtors or the Committee, whose retention has been approved by the Bankruptcy

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Court during these Cases pursuant to sections 327 or 1103 of the Bankruptcy Code

(collectively, "Professional Persons"), at any time before or on the first business day

following delivery by any DIP Agent of a Carve-Out Trigger Notice (as defined below), to

the extent such Professional Fees are provided for in the Approved Budget (during the

period before or on the first business day following delivery of a Carve-Out Trigger Notice)

and are allowed by the Bankruptcy Court whether prior to or after delivery of a Carve-Out

Trigger Notice (the foregoing being the "Carve-Out Cap").  The Debtors shall deposit into

a segregated escrow account (the "Fee Escrow") on a weekly basis the amounts

necessary to satisfy the Professional Fees and the DIP Professional Fees provided for in

the Approved Budget to secure payment of allowed Professional Fee claims and DIP

Professional Fees.  For purposes of the foregoing, the term "Carve-Out Trigger Notice"

shall mean a written notice delivered by the DIP Agent to the Debtors and their lead

counsel, the U.S. Trustee, counsel to the Prepetition Agent, and counsel to the

Committee, which notice may be delivered following the occurrence and during the

continuation of an Event of Default under the applicable DIP Documents, expressly stating

that the Carve-Out Cap is invoked and the Event of Default that is alleged to have

occurred and be continuing.  For the avoidance of doubt and notwithstanding anything to

the contrary herein or elsewhere, the Carve-Out shall be senior to all DIP Obligations.

Nothing herein shall be construed to impair the ability of any party to object to the

allowance by the Bankruptcy Court of any of the fees, expenses, reimbursement or

compensation described in clauses (i), (ii), and (iii) above.

c.   The DIP Agent and DIP Lenders shall not be responsible for the direct

payment or reimbursement of any fees or disbursements of any Professional Persons

incurred in connection with these Chapter 11 Cases or any successor cases under any

chapter of the Bankruptcy Code or to fund the Carve-Out.

11.   DIP Liens.  As security for the DIP Obligations, effective and perfected upon

the date of this Order and without the necessity of the execution, recordation of filings by

the Debtors of mortgages, security agreements, control agreements, pledge agreements,

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

financing statements or other similar documents, or the possession or control by the DIP

Agent or any DIP Lender of, or over, any DIP Collateral, the security interests and liens

identified below are granted to the DIP Agent for its own benefit and the benefit of the DIP

Lenders (all property identified in clauses (a), (b), (c), (d) and (e) below, together with all

other property to which the DIP Agent is granted a lien under the applicable DIP

Documents (other than as expressly excluded pursuant to this Order), being collectively

referred to as the "DIP Collateral"), subject to (i) the terms of the DIP Facility and (ii) the

Carve-Out as provided herein (all such liens and security interests granted to the DIP

Agent, for its benefits and for the benefit of the DIP Lenders, pursuant to this Order and

the DIP Documents, the "DIP Liens").  Notwithstanding the foregoing, the DIP Agent may

take any action (and is, to the extent necessary in connection therewith, hereby granted

relief from the automatic stay), to evidence, confirm, validate or perfect, or to ensure the

contemplated priority of, such liens, and the Debtors shall execute and deliver to the DIP

Agent all such financing statements, notices and other documents as the DIP Agent may

reasonably request in connection therewith, including account control agreements or other

documentation in respect of and evidencing perfection of all collection and deposit

accounts to the extent required by the DIP Documents.

   a.    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the

Bankruptcy Code, the DIP Agent, for the benefit of the DIP Lenders, shall have a valid,

binding, continuing, enforceable, fully-perfected first priority senior security interest in and

lien upon all pre- and postpetition tangible and intangible property of the Debtors and the

Debtors' estates, whether now existing or hereafter acquired or arising, that, on or as of

the Petition Date, is not subject to valid, perfected and non-avoidable liens (or to valid

liens in existence as of the Petition Date that are subsequently perfected as permitted by

section 546(b) of the Bankruptcy Code) (collectively, "Unencumbered Property"), including

without limitation, all inventory, accounts, accounts receivable, general intangibles, chattel

paper, contracts, owned real estate, real and personal property leaseholds, property,

plants, fixtures, machinery, equipment, as-extracted collateral, vehicles, vessels, deposit

accounts, commercial tort claims, tax refunds, insurance proceeds, documents, equity

interests, books and records, cash and cash collateral of the Debtors (whether maintained

with the DIP Agent or otherwise) and any investment of such cash and cash collateral,

letter of credit rights, patents, copyrights, trademarks, trade names, rights under license

agreements and other intellectual property and stock of subsidiaries, and the proceeds,

products, offspring and profits of all of the foregoing.

b.      Priming Liens on Prepetition Collateral.  Pursuant to section 364(d)(1) of the

Bankruptcy Code, the DIP Agent, for the benefit of the DIP Lenders, shall have a valid,

binding, continuing, enforceable, fully-perfected first-priority senior priming lien on and

security interest upon all property of the Debtors whether acquired before or after the

Petition Date, including, without limitation, all Prepetition Collateral, all inventory,

accounts, accounts receivable, general intangibles, chattel paper, contracts, owned real

estate, real and personal property leaseholds, property, plants, fixtures, machinery,

equipment, as-extracted collateral, vehicles, vessels, deposit accounts, commercial tort

claims, tax refunds, insurance proceeds, documents, equity interests, books and records,

cash and cash collateral of the Debtors (whether maintained with the DIP Agent or

otherwise) and any investment of such cash and cash collateral, letter of credit rights,

patents, copyrights, trademarks, trade names, rights under license agreements and other

intellectual property and stock of subsidiaries, and the proceeds, products, offspring and

profits of all of the foregoing, whether now existing or hereafter acquired, that is subject to

the existing liens (i) presently securing the Prepetition Debt and/or the Other Secured

Debt or (ii) that will secure the Contingent Prepetition Debt in accordance with this Order.

Such DIP Liens shall be senior in all respects to the interests in such property of the

Prepetition Secured Parties arising from current and future liens of the Prepetition

Secured Parties (including, without limitation, the Contingent Liens, the Prepetition Senior

Liens, the Prepetition Junior Liens, the PBGC Prior Lien, and the Adequate Protection

Liens (as defined below)).

c.     <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Agent, for the benefit of the DIP Lenders, shall have a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all pre- and postpetition tangible and intangible property of the Debtors and the Debtors' estates (other than property described in clauses (a), (b), or (d) of this paragraph 11, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date, or to any valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (in each case, other than the Prepetition Senior Liens, the Prepetition Junior Liens, the Contingent Liens, and the Adequate Protection Liens), to the extent such liens were permitted to be incurred under the Prepetition Loan Documents on a senior secured basis (in any event not including any PBGC Prior Lien) (collectively, the "<u>Permitted Priority Liens</u>").

d.     <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) unless otherwise expressly permitted under the DIP Documents, any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors.

e.     Notwithstanding the foregoing clauses (a), (b), (c) and (d), the DIP Collateral shall exclude the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state law (collectively, "<u>Avoidance Actions</u>") and any proceeds or property recovered, unencumbered or otherwise the subject of

Lobel Weiland Golden Friedman LLP
850 Town Center Drive, Suite 850
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  successful Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance

2  Proceeds").

3              **ADEQUATE PROTECTION OF PREPETITION SECURED PARTIES**

4          12.    Adequate Protection of Prepetition Loan Parties.  Until (i) the Refinancing

5  has been consummated and (ii) the Challenge Period has expired with no challenge

6  having been brought or, if such a challenge is brought, upon the entry of a final judgment

7  resolving such challenge in favor of the Prepetition Loan Parties, the Prepetition Loan

8  Parties are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy

9  Code, to adequate protection of their interest in the Prepetition Collateral, including the

10  Cash Collateral, for the aggregate diminution in the value of the Prepetition Loan Parties'

11  interest in the Prepetition Collateral, whether on account of the Prepetition Debt or the

12  Contingent Prepetition Debt, or both, including, without limitation, any such diminution

13  resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash

14  Collateral and any other Prepetition Collateral, the priming of the Prepetition Loan Parties'

15  security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP

16  Lenders pursuant to the DIP Documents and this Order, and the imposition of the

17  automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection,

18  the Prepetition Loan Parties are hereby granted the following (collectively, the "Senior

19  Adequate Protection Provisions"):

20          a.    Senior Adequate Protection Liens.  The Prepetition Loan Parties are hereby

21  granted (effective and perfected as of the Petition Date and without the necessity of the

22  execution by the Debtors of mortgages, security agreements, pledge agreements,

23  financing statements or other agreements) (i) a replacement security interest in and lien

24  upon all the DIP Collateral (such liens, the "Senior Adequate Protection Liens") and (ii) the

25  Contingent Liens to secure any Contingent Prepetition Debt.  Without limiting the

26  generality of the foregoing, (A) the Senior Adequate Protection Liens and the Contingent

27  Liens granted to the Prepetition Loan Parties hereunder shall be junior and subordinate in

28  all respects to the DIP Liens, the Permitted Priority Liens, the PBGC Prior Lien and the

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Carve-Out; (B) the Contingent Prepetition Debt shall be junior and subordinate in right of payment to all DIP Obligations and the Carve-Out; (C) until such time as all of the DIP Obligations are indefeasibly paid in full in cash in accordance with the DIP Documents and this Order, the Prepetition Loan Parties shall have no right to seek or exercise any enforcement rights or remedies in connection with the Contingent Prepetition Debt, the Contingent Liens or the Senior Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the Prepetition Credit Agreement); (D) the Prepetition Loan Parties shall be deemed to have consented to any sale or disposition of DIP Collateral permitted under the DIP Facility or approved, arranged for or by the DIP Agent or the Requisite Lenders (as defined in the DIP Documents), and shall terminate and release upon any such sale or disposition all of its liens on and security interests in such DIP Collateral (where the DIP Agent also releases any DIP Liens as necessary); (E) the Prepetition Loan Parties shall deliver or cause to be delivered, at the Debtors' costs and expense (for which the Prepetition Loan Parties shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases or other documents necessary to effectuate and/or evidence the release and termination of any Prepetition Loan Parties' liens on or security interests in any portion of the DIP Collateral subject to any sale or disposition permitted under the DIP Facility or approved or arranged for by the DIP Agent or any of the DIP Lenders (where the DIP Agent also releases any DIP Liens as necessary); and (F) upon (i) the consummation of the Refinancing and (ii) the expiration of the Challenge Period (as defined below), so long as no challenge has been asserted or, if asserted, has been resolved in favor of the Prepetition Loan Parties, and the payment to the Prepetition Loan Parties of all amounts owed by the Debtors under the Prepetition Loan Documents and this Order, the Contingent Liens and the Senior Adequate Protection Liens shall terminate and be released (automatically and without further action of the parties), and the Prepetition Loan Parties shall execute and deliver such agreements to evidence and effectuate such termination and release as the Debtors or

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  the DIP Agent may request, and the Debtors and the DIP Agent shall be authorized to file

2  on behalf of the Prepetition Loan Parties such UCC termination statements or such other

3  filings as may be applicable to the extent such authorization is required under the Uniform

4  Commercial Code of the applicable jurisdiction.

5         b.    Sections 503(b) and 507(b) Claim.  The Prepetition Loan Parties are hereby

6  granted, subject to the Carve-Out, a superpriority claim (the "Senior Adequate Protection

7  Claim"), as provided for in sections 503(b) and 507(b) of the Bankruptcy Code,

8  immediately junior to the Superpriority Claims and any other claims under section

9  364(c)(1) of the Bankruptcy Code held by the DIP Agent and the DIP Lenders, and

10  payable from and having recourse to all DIP Collateral; provided, however, that the Senior

11  Adequate Protection Claim shall not be payable from or have recourse to Avoidance

12  Actions or Avoidance Proceeds; provided, further, that the Prepetition Loan Parties shall

13  not receive or retain any payments, property or other amounts in respect of the

14  superpriority claims under sections 503(b) and 507(b) of the Bankruptcy Code granted

15  hereunder or under the Prepetition Loan Documents unless and until the DIP Obligations

16  have indefeasibly been paid in full in cash in accordance with the DIP Documents; and

17  provided, further, that the Prepetition Loan Parties hereby irrevocably waive the section

18  503(b) claim granted to them by this Order upon the expiration of the Challenge Period

19  with no challenge having been brought or, if such a challenge is brought, upon the entry of

20  a final judgment resolving such challenge in favor of the Prepetition Loan Parties.

21         c.    Interest on Contingent Prepetition Debt.  In the event that any Contingent

22  Prepetition Debt arises, the Debtors shall pay the Prepetition Agent, on the first day of

23  each calendar month, the sum of interest due on the Contingent Prepetition Debt pursuant

24  to Sections 2.7 and 2.8 of the Prepetition Credit Agreement.

25         d.    Fees and Expenses.  The Debtors are authorized and directed under

26  sections 361, 363 and 364 of the Bankruptcy Code to pay all reasonable fees, costs,

27  expenses and disbursements (whether incurred pre-or post-petition) of the Prepetition

28  Loan Parties' legal and financial advisors, and any other consultants retained in

1  accordance with the Prepetition Loan Documents, promptly upon receipt of invoices

2  therefor without the need to file retention motions or fee applications (collectively with the

3  payments provided for in paragraph 12(c) above, the "Adequate Protection Payments").

4      13.    Adequate Protection of Other Prepetition Creditors.  On account of their

5  respective Other Secured Debt, the Other Prepetition Creditors are entitled, pursuant to

6  sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of

7  their respective interests in the Prepetition Collateral for the aggregate diminution in the

8  value thereof resulting from the sale, lease or use by the Debtors thereof, the priming of

9  their respective Prepetition Junior Liens pursuant to the DIP Facility, and the imposition of

10  the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate

11  protection, the Other Prepetition Creditors are hereby granted the following (collectively,

12  the "Junior Adequate Protection Provisions" and, collectively with the Senior Adequate

13  Protection Provisions, the "Adequate Protection Provisions"):

14      a.    Junior Adequate Protection Liens.  The Other Prepetition Creditors are

15  hereby granted in the same order of priority as their Prepetition Junior Liens (effective and

16  perfected as of the Petition Date and without the necessity of the execution by the Debtors

17  of mortgages, security agreements, pledge agreements, financing statements or other

18  agreements), a replacement security interest in and lien upon all the DIP Collateral (such

19  liens, the "Junior Adequate Protection Liens" and, together with the Senior Adequate

20  Protection Liens, the "Adequate Protection Liens"), subject and subordinate to (v) the

21  Prepetition Senior Liens and the Contingent Liens, if necessary, (w) the DIP Liens, (x) the

22  Carve-Out, (y) any Permitted Priority Liens and the PBGC Prior Lien, and (z) the Senior

23  Adequate Protection Liens.  Without limiting the generality of the foregoing, (A) until such

24  time as all of the DIP Obligations are indefeasibly paid in full in cash in accordance with

25  the DIP Documents and this Order and the Refinancing has occurred and is no longer

26  subject to challenge, the Other Prepetition Creditors shall have no right to seek or

27  exercise any enforcement rights or remedies in connection with the Junior Adequate

28  Protection Liens or their Prepetition Junior Liens; (B) the Other Prepetition Creditors shall

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  be deemed to have consented to any sale or disposition of DIP Collateral permitted under

2  the DIP Facility or approved and shall terminate and release upon any such sale or

3  disposition all of the Prepetition Junior Liens in any Prepetition Collateral or DIP Collateral

4  (where the DIP Agent also releases any DIP Liens as necessary); and (C) the Other

5  Prepetition Creditors shall deliver or cause to be delivered, any termination statements,

6  releases or other documents necessary to effectuate and/or evidence the release and

7  termination of any Prepetition Junior Liens in any portion of the Prepetition Collateral or

8  the DIP Collateral subject to any sale or disposition permitted under the DIP Facility or

9  approved or arranged for by the DIP Agent (where the DIP Agent also releases any DIP

10  Liens as necessary).

11          b.      Sections 503(b) and 507(b) Claim.  In the same order of priority as the

12  Junior Adequate Protection Liens, the Other Prepetition Creditors are hereby granted a

13  superpriority claim (the "Junior Adequate Protection Claim" and, together with the Senior

14  Adequate Protection Claim, the "Adequate Protection Claims"), as provided for in sections

15  503(b) and 507(b) of the Bankruptcy Code, that is subject to or subordinate to the

16  Superpriority Claims, the DIP Obligations, the Prepetition Debt, any other claims under

17  section 364(c)(1) of the Bankruptcy Code held by the DIP Agent and the DIP Lenders, the

18  Senior Adequate Protection Claim and the Contingent Prepetition Debt; provided,

19  however, that the Junior Adequate Protection Claim shall not be payable from or have

20  recourse to Avoidance Actions or Avoidance Proceeds; provided, further that the Other

21  Prepetition Creditors shall not receive or retain any payments, property or other amounts

22  in respect of the superpriority claims under sections 503(b) and 507(b) of the Bankruptcy

23  Code granted hereunder unless and until the DIP Obligations have indefeasibly been paid

24  in full in cash in accordance with the DIP Documents and the Refinancing has occurred

25  and is no longer subject to challenge.

26          14.     Sufficiency of Adequate Protection.

27          a.      Under the circumstances and given that the Adequate Protection Provisions

28  are consistent with the Bankruptcy Code, the Bankruptcy Court finds that such adequate

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  protection is reasonable and sufficient to protect the interests of the Prepetition Secured

2  Parties.  Except as expressly provided herein, nothing contained in this Order (including,

3  without limitation, the authorization of the use of any Cash Collateral) shall impair or

4  modify any rights, claims or defenses available in law or equity to any Prepetition Loan

5  Party, the DIP Agent or any DIP Lenders.

6        b.     Except to the extent of the Carve Out, no expenses of administration of

7  these Chapter 11 Cases or any future proceeding that may result therefrom, including a

8  case under Chapter 7 of the Bankruptcy Code, shall be charged against or recovered from

9  the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the

10  Bankruptcy Code, the enhancement of collateral provisions of section 552 of the

11  Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation,

12  unjust enrichment) or any similar principle of law, without the prior written consent of the

13  DIP Agent or the Prepetition Agent, as the case may be with respect to their respective

14  interests, and no consent shall be implied from any action, inaction or acquiescence by

15  the DIP Agent or the Prepetition Agent.  The Senior Adequate Protection Provisions

16  (A) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or

17  section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section

18  552 of the Bankruptcy Code, (B) shall not be subordinate to, or pari passu with, (x) any

19  lien that is avoided and preserved for the benefit of the Debtors and their estates under

20  section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens

21  or claims of the Debtors, and (C) shall be valid and enforceable against any trustee, any

22  other estate representative or litigation trust appointed in these Cases or any successor

23  cases, and/or upon the dismissal of any of these Cases.

24        15.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any

25  examiner with enlarged powers, any responsible officer or any other estate representative

26  subsequently appointed in these Chapter 11 Cases or any successor cases, shall obtain

27  credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in

28  violation of the DIP Documents at any time prior to the indefeasible repayment in full in

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  cash of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders'

2  obligation to extend credit under the DIP Facility, including subsequent to the confirmation

3  of any plan with respect to the Debtors and the Debtors' estates, and such financing is

4  secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt

5  shall immediately be turned over to the DIP Agent to be applied as set forth the DIP

6  Documents.

7     16. <u>Refinancing of the Prepetition Debt</u>.  Following the entry of this Order and as

8  part of the borrowing under the DIP Facility, the Debtors shall use a portion of the

9  proceeds from the DIP Facility to consummate the Refinancing (which shall be deemed to

10  have occurred upon the expiration of the Challenge Period (as defined below) with no

11  challenge having been brought or, if such a challenge is brought, upon the entry of a final

12  judgment resolving such challenge in favor of the Prepetition Loan Parties).

13     17. <u>Disposition of DIP Collateral</u>.

14     a. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of

15  any portion of the DIP Collateral without the prior written consent of the DIP Agent (and no

16  such consent shall be implied, from any other action, inaction or acquiescence), except as

17  expressly permitted in the DIP Documents.  The Debtors will consult with the DIP Agent in

18  good faith with respect to any material asset sales, including with respect to any bid and

19  sale procedures.

20     b. [Intentionally omitted].

21     18. <u>Protection of DIP Lenders' Rights</u>.

22     a. The automatic stay provisions of section 362 of the Bankruptcy Code shall

23  be vacated and modified (and any stay of such vacation or modification under Bankruptcy

24  Rule 4001(a)(3) is waived) without further order of the Bankruptcy Court to the extent

25  necessary to permit the DIP Agent and the DIP Lenders to exercise all rights and

26  remedies provided for in the DIP Documents and this Order without further order of or

27  application or motion to the Bankruptcy Court, <u>provided</u> that such rights and remedies that

28  are exercisable only upon the occurrence of an Event of Default (as defined in the DIP

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Documents and as set forth in this Order) and following the delivery by the DIP Agent of five (5) days' prior written notice (following the expiration of such five days' notice period, such date, the "Termination Date"), which notice period shall run concurrently with any notice provided under the DIP Documents, to the U.S. Trustee, counsel to the Debtors, and counsel to the Committee, if any, of such DIP Agent's intent to exercise such rights and remedies; provided, further, the Debtors shall not have the right to contest the enforcement of the remedies set forth in this Order and the DIP Documents on any basis other than an assertion that an Event of Default has not occurred or has been cured within the cure periods expressly set forth herein or in the applicable DIP Documents.  Upon the Termination Date, the DIP Agent may terminate the DIP Facility, declare the DIP Obligations to be immediately due and payable, and subject to the preceding sentence, exercise all rights and remedies available to it hereunder, under the DIP Documents, or under applicable law.  In addition, the Debtors' authority to use Cash Collateral hereunder shall cease except that notwithstanding the occurrence of a Termination Date, the Debtors shall be allowed to use cash collateral to pay payroll and associated costs incurred prior to the Termination Date up to the amount for payroll and associated costs set forth in the Approved Budget through the date of the Termination Date.  The Debtors waive any right to seek relief under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Agent and the DIP Lenders set forth in this Order and in the DIP Documents.

b.    The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the applicable DIP Documents or this Order shall not constitute a waiver of such DIP Agent's or such DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

c.    Except as otherwise expressly set forth in this Order or in the DIP Documents, the Debtors irrevocably waive any right, without the prior written consent of the DIP Agent, (a) to grant or impose, under section 364 of the Bankruptcy Code or

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  otherwise, liens or security interests in any DIP Collateral, whether senior, equal or

2  subordinate to the DIP Agent's liens and security interests; or (b) to modify or affect any of

3  the rights of the DIP Agent or the DIP Lenders under this Order or the DIP Documents by

4  any plan of reorganization proposed or confirmed in these Chapter 11 Cases or

5  subsequent order entered in these Chapter 11 Cases.

6       d.    If the Debtors' right to use Cash Collateral terminates pursuant to this

7  paragraph 18 following the occurrence of an Event of Default, the Debtors may move the

8  Bankruptcy Court for authorization to use Cash Collateral under Bankruptcy Code section

9  363(c)(2), but only (i) to the extent necessary to avoid immediate and irreparable harm,

10  and (ii) to the extent that the DIP Lender and the Prepetition Senior Loan Parties are

11  adequately protected; provided that as to both (i) and (ii), the Debtors shall bear the

12  burden of proof and the DIP Lenders and the Prepetition Loan Parties reserve their rights

13  to oppose any such relief.  In prosecuting such a motion, the Debtors must first use assets

14  other than (i) the DIP Collateral, (ii) the Prepetition Collateral or (iii) assets subject to the

15  Contingent Liens, unless otherwise ordered by the Bankruptcy Court.

16       19.    Approved Budget.

17       a.    For purposes of this Order, the term "Approved Budget" means the

18  following:  (a) the budget, attached hereto as Exhibit A, the "Initial Budget," which is an

19  initial 13-week budget commencing with the week during which the Petition Date occurs,

20  containing line items of sufficient detail to reflect the Debtors' consolidated projected

21  receipts and disbursements for such 13-week period, including, without limitation, the

22  anticipated weekly uses of the DIP Facility and cash collateral for such period, and which

23  provides, among other things, for the payment of the fees and expenses, including

24  professional fees relating to the DIP Facility (whether incurred pre-or post-petition),

25  ordinary course expenses, fees and expenses related to the Chapter 11 Cases, and

26  working capital and other general corporate needs; and (b) on or before 5:00 p.m.

27  prevailing Eastern Time on the first Business Day (as defined in the DIP Facility) of the

28  second month following the Petition Date, and on or before the third business day of each

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

calendar month thereafter, the Debtors shall furnish to the DIP Agent and the Committee

a supplement to the Initial Budget (or a previously supplemented Approved Budget, as the

case may be), covering a 13-week period that commences with the week such

supplement is delivered, together with a variance analysis from the Initial Budget (or the

previously supplemented Approved Budget, as the case may be).  Such monthly

supplements shall become the Approved Budget upon written acknowledgement from the

DIP Agent that the proposed supplement is in form and substance reasonably acceptable

to the DIP Agent (any determination of reasonable shall be by reference to the Initial

Budget or then Approved Budget), provided that if the DIP Agent has not provided a

written acceptance or objection to the proposed supplement, the Initial Budget (or the

previously supplemented Approved Budget, as the case may be) shall remain the

Approved Budget until such time as the DIP Agent and the Debtors reach agreement with

respect to a proposed supplement.

      b.      No later than 5:00 p.m. the third business day following the end of each

calendar month, the Debtors shall deliver to the DIP Agent and the Committee a variance

report (the "Budget Variance Report") setting forth (1) actual cash receipts and

disbursements for the month then ended and (2) all variances, on an individual line item

basis and an aggregate basis, as compared to the previously delivered Approved Budget

on a monthly and cumulative basis, and an explanation, in reasonable detail, for any

material variance, certified by a senior officer of the Borrowers, provided that (A) on a line-

item by line-item basis (including a line item for Lobel Weiland Golden Friedman, LLP, the

Debtors' primary counsel, and Glass Ratner, the Debtors' financial advisors, but excluding

any line items for the DIP Professional Fees) the Debtors' actual expenditures from the

Petition Date through the end of the calendar month just ended as set forth in the Budget

Variance Report shall not be greater than 15% of the amount specified in the

corresponding applicable Approved Budget through the end of such period (including the

carryover of amounts not used up to the Approved Budget for the relevant line-item in

prior months net of amounts that exceeded the Approved Budget for the relevant line-item

1  in prior months); and (B) the Debtors' aggregate expenditures (excluding expenditures for

2  the DIP Professional Fees) from the Petition Date through the end of the calendar month

3  just ended as set forth in the Budget Variance Report shall not be greater than 10% of the

4  aggregate amount (excluding any amount provided for the DIP Professional Fees)

5  specified in the corresponding applicable Approved Budget through the end of such period

6  (including the carryover of amounts not used up to the Approved Budget in prior months

7  net of amounts that exceeded the Approved Budget in prior months).  Notwithstanding

8  anything herein to the contrary, DIP Professional Fees shall not be capped by the amount

9  set forth in the Budget.

10       20.    Limitation on Charging Expenses Against Collateral.  Except to the extent of

11  the Carve-Out, no expenses of administration of the Chapter 11 Cases or any future

12  proceeding that may result therefrom, including a case under chapter 7 of the Bankruptcy

13  Code, shall be charged against or recovered from the Prepetition Collateral or the DIP

14  Collateral pursuant to section 506(c) of the Bankruptcy Code, the enhancement of

15  collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable

16  doctrine (including, without limitation, unjust enrichment) or any similar principle of law,

17  without the prior written consent of the DIP Agent and the DIP Lenders, as the case may

18  be with respect to their respective interests, and no consent shall be implied from any

19  action, inaction or acquiescence by the DIP Agent or the DIP Lenders.  In no event shall

20  the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders be

21  subject to (i) the "equities of the case" exception contained in section 552(b) of the

22  Bankruptcy Code or (ii) the equitable doctrine of "marshaling" or any other similar doctrine

23  with respect to the Prepetition Collateral or the DIP Collateral.

24       21.    Payment of Fees and Expenses.  No payments (including professional fees

25  and expenses) with respect to the DIP Obligations or the Senior Adequate Protection

26  Provisions shall be subject to further Bankruptcy Court approval, nor shall any such

27  professional fees and expenses be required to be maintained in accordance with the

28  U.S. Trustee Guidelines, and no recipient of any such payments shall be required to file

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1   any interim or final fee applications with the Bankruptcy Court or otherwise seek

2   Bankruptcy Court's approval of any such payments.

3         22.    All amounts due to the DIP Agent, DIP Lenders, Prepetition Agent, or

4   Prepetition Lenders hereunder shall be distributed free and clear of any cost, claim,

5   charge, assessment or liability including, without limitation, any such cost, claim or charge

6   arising out of or based on, directly or indirectly, California Code of Civil Procedure

7   sections 726, 580(a) and/or 580(d).  The receipt and application of any money or benefits

8   by the DIP Agent, DIP Lenders, Prepetition Agent, or Prepetition Lenders as a result of

9   this Order shall not be considered an "action" for purposes of California Code of Civil

10  Procedure sections 726, 580(a) and/or 580(d).

11        23.    Credit Bid.  The DIP Agent and the DIP Lenders shall have the right to credit

12  bid all or a portion of their respective claims in connection with a sale of the Debtors'

13  assets under section 363 of the Bankruptcy Code or under a plan of reorganization to the

14  extent permitted by applicable non-bankruptcy law.  The Prepetition Loan Parties shall

15  also have the right to credit bid a portion of or all of their respective claims in connection

16  with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under a

17  plan of reorganization to the extent permitted by applicable non-bankruptcy law.  The

18  Committee's right to object to credit bidding of the Make Whole Amount is preserved to

19  the extent provided in paragraph 27(b) herein.

20        24.    Perfection of DIP Liens.

21        a.    The DIP Agent and the DIP Lenders are hereby authorized, but not required,

22  to file or record (and to execute in the name of the Debtors, as its true and lawful attorney,

23  with full power of substitution, to the maximum extent permitted by law) financing

24  statements, trademark filings, copyright filings, mortgages, notices of lien or similar

25  instruments in any jurisdiction, or take possession of or control over deposit accounts and

26  securities accounts or any other asset, in each case, to validate and perfect the liens and

27  security interests granted to them in the DIP Documents and this Order.  Whether or not

28  the DIP Agent on behalf of the DIP Lenders, or the DIP Lenders, each in its discretion,

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1 chooses to file such financing statements, trademark filings, copyright filings, mortgages,

2 notices of lien or similar instruments, or take possession of or control over deposit

3 accounts and securities accounts or any other assets, such liens and security interests

4 shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to

5 challenge dispute or subordination, at the time and on the date of entry of this Order.

6 Upon the reasonable request of the DIP Agent, without any further consent of any party,

7 the DIP Agent, the Debtors, each DIP Lender and the Prepetition Secured Parties are

8 authorized and directed to take, execute, deliver and file such instruments (in each case,

9 without representation or warranty of any kind) to enable the DIP Agent to further perfect

10 the DIP Liens.  The Adequate Protection Liens granted hereunder shall be automatically

11 perfected upon entry of this Order without further action by the Debtors or any Prepetition

12 Secured Party.

13       b.    A certified copy of this Order may, in the discretion of the DIP Agent, be filed

14 with or recorded in filing or recording offices in addition to or in lieu of such financing

15 statements, mortgages, notices of lien or similar instruments, and all filing offices are

16 hereby authorized to accept such certified copy of this Order for filing and recording.  For

17 the avoidance of doubt, the automatic stay provisions of section 362(a) of the Bankruptcy

18 Code shall be modified (and any stay of such modification under Bankruptcy Rule

19 4001(a)(3) is waived) to the extent necessary to permit the DIP Agent to take all actions,

20 as applicable, referenced in this subparagraph (b) and in the immediately preceding

21 subparagraph (a).

22       c.    Any provision of any lease or other license, contract or other agreement that

23 requires (i) the consent or approval of one or more landlords or other parties or (ii) the

24 payment of any fees or obligations to any governmental entity, in order for any Debtor to

25 pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the

26 proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent

27 with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no

28 force and effect with respect to the granting of post-petition liens on such leasehold

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of

2  the DIP Lenders in accordance with the terms of the DIP Documents or this Order.

3       25.  <u>Preservation of Rights Granted Under this Order</u>.

4       a.  Except as expressly provided herein or in the DIP Documents, no claim or

5  lien having a priority senior to or pari passu with those granted by this Order and the DIP

6  Documents to the DIP Agent, the DIP Lenders and the Prepetition Loan Parties shall be

7  granted or allowed while any portion of the DIP Obligations or the Senior Adequate

8  Protection Provisions (with respect to the Prepetition Debt, until the consummation of the

9  Refinancing and the expiration of the Challenge Period with no challenge having been

10  brought or, if such a challenge is brought, upon the entry of a final judgment resolving

11  such challenge in favor of the Prepetition Loan Parties) remain outstanding, and the DIP

12  Liens and the Senior Adequate Protection Liens (until the consummation of the

13  Refinancing and the expiration of the Challenge Period with no challenge having been

14  brought or, if such a challenge is brought, upon the entry of a final judgment resolving

15  such challenge in favor of the Prepetition Loan Parties) shall not (i) be subject to or junior

16  to (A) any lien or security interest that is avoided and preserved for the benefit of the

17  Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens

18  arising after the Petition Date, including, without limitation, any liens or security interests

19  granted in favor of any federal, state, municipal or other domestic or foreign governmental

20  unit (including any regulatory body), commission, board or court for any liability of the

21  Debtors, or (ii) subordinate to or made pari passu with any other lien or security interest,

22  whether under sections 363 or 364 of the Bankruptcy Code or otherwise.

23       b.  In addition to the Events of Default set forth in the DIP Documents, unless all

24  DIP Obligations and all Senior Adequate Protection Provisions shall have been

25  indefeasibly paid or satisfied in full in cash, the Debtors shall not seek, and it shall

26  constitute an Event of Default under the DIP Documents and terminate the right of the

27  Debtors to use Cash Collateral hereunder if any of the Debtors seek, or if there is entered,

28  unless the DIP Agent has otherwise consented:  (i) any modification or extension of this

Lobel Weiland Golden Friedman LLP
840 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent, (ii) an order converting or dismissing these Chapter 11 Cases; (iii) an order appointing a Chapter 11 trustee in these Chapter 11 Cases or any other representative or other similar appointment, (iv) an order appointing an examiner with enlarged powers in these Chapter 11 Cases, (v) an order providing for a change of venue with respect to these Chapter 11 Cases and such order shall not have been reversed or vacated within ten (10) days; (vi) an order approving a plan of reorganization or the sale of all or substantially all of the DIP Collateral or the Prepetition Collateral which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent obligations not yet due and payable) and all Contingent Prepetition Debt and Senior Adequate Protection Provisions (until the expiration of the Challenge Period with no challenge having been brought or, if such a challenge is brought, upon the entry of a final judgment resolving such challenge in favor of the Prepetition Loan Parties) upon the consummation thereof.  If an order dismissing these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agent, the DIP Lenders and the Prepetition Loan Parties, including, without limitation, the DIP Liens, the Senior Adequate Protection Provisions, the 507(b) claims, and the other administrative expense claims granted pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order (and that such Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agent, the DIP Lenders and the Prepetition Loan Parties, including, without limitation, the DIP Liens, the Senior Adequate Protection Provisions, the 507(b) claims, and the other administrative expense claims, liens and security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest, including the priorities set forth herein and in the DIP Documents) until all DIP

1   Obligations and all Senior Adequate Protection Provisions (until the consummation of the

2   Refinancing and the expiration of the Challenge Period with no challenge having been

3   brought or, if such a challenge is brought, upon the entry of a final judgment resolving

4   such challenge in favor of the Prepetition Loan Parties) shall have been paid and satisfied

5   in full and (y) the Bankruptcy Court shall retain jurisdiction, notwithstanding such

6   dismissal, for the purposes of enforcing the claims, liens and security interests referred to

7   in clause (x) above; provided that, subject to consummation of the Refinancing, the

8   Prepetition Loan Parties shall not otherwise receive or retain any payments, property or

9   other amounts in respect of the Prepetition Debt or under the Prepetition Loan Documents

10  (other than the Adequate Protection Payments) unless and until the DIP Obligations have

11  indefeasibly been paid in cash in full in accordance with the DIP Documents.

12          c.      If any or all of the provisions of this Order are hereafter reversed, modified,

13  vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the

14  validity, priority or enforceability of any DIP Obligations or the Senior Adequate Protection

15  Provisions incurred prior to the actual receipt of written notice by the DIP Agent or the

16  Prepetition Agent, as applicable, of the effective date of such reversal, modification,

17  vacation or stay or (ii) the validity, priority or enforceability of any lien or priority authorized

18  or created hereby or pursuant to the DIP Documents with respect to any DIP Obligations

19  or the Senior Adequate Protection Provisions.  Notwithstanding any such reversal,

20  modification, vacation or stay, any use of Cash Collateral, the DIP Obligations or the

21  Senior Adequate Protection Provisions incurred by the Debtors to the DIP Agent, the DIP

22  Lenders, or the Prepetition Loan Parties, as the case may be, prior to the actual receipt of

23  written notice by the DIP Agent or the Prepetition Agent of the effective date of such

24  reversal, modification, vacation or stay shall be governed in all respects by the original

25  provisions of this Order, and the DIP Agent, the DIP Lenders, and the Prepetition Loan

26  Parties shall be entitled to all the rights, remedies, privileges and benefits granted in

27  section 364(e) of the Bankruptcy Code (including, without limitation, with respect to any

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  payments received in connection with the Refinancing), this Order and pursuant to the

2  DIP Documents.

3         d.    Except as expressly provided in this Order or in the DIP Documents, the DIP

4  Obligations and the Senior Adequate Protection Provisions, including the DIP Liens, the

5  Superpriority Claims, the 507(b) claims, the Adequate Protection Liens, the Adequate

6  Protection Claims, the Adequate Protection Payments and all other rights and remedies of

7  the DIP Agent, the DIP Lenders and the Prepetition Loan Parties granted by the

8  provisions of this Order and the DIP Documents shall survive, and shall not be modified,

9  impaired or discharged by (i) the entry of an order converting any of these Chapter 11

10 Cases to a case under Chapter 7, dismissing these Chapter 11 Cases, approving the sale

11 of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the

12 extent permitted by the DIP Documents) or by any other act or omission or (ii) the entry of

13 an order confirming a plan of reorganization in these Chapter 11 Cases (except a plan

14 that is acceptable to the DIP Agent and Requisite Lenders (as defined in the DIP

15 Documents)) and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors

16 have waived any discharge as to any remaining DIP Obligations or Senior Adequate

17 Protection Provisions.  The terms and provisions of this Order and the DIP Documents

18 shall continue in the Chapter 11 Cases, in any successor cases, or in any superseding

19 Chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the Contingent

20 Prepetition Debt, and the Senior Adequate Protection Provisions, including the DIP Liens,

21 the Superpriority Claims, the Contingent Liens, the Senior Adequate Protection Liens, the

22 Senior Adequate Protection Claims, the Adequate Protection Payments, the other

23 administrative expense claims granted pursuant to this Order and all other rights and

24 remedies of the DIP Agent, the DIP Lenders and the Prepetition Loan Parties granted

25 under the DIP Documents and this Order shall continue in full force and effect and shall

26 be binding on any Chapter 7 trustee, Chapter 11 trustee, any litigation trust

27 representative, other or similar party hereinafter appointed or elected for the Debtors'

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    estates until all DIP Obligations and all Senior Adequate Protection Provisions are

2    indefeasibly paid in full in cash as set forth herein and in the DIP Documents.

3         26.    <u>Exculpation</u>.  Nothing in this Order, the DIP Documents, or any other

4    documents related to the transactions contemplated hereby shall in any way be construed

5    or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender, or

6    upon the Prepetition Agent or any Prepetition Lender, of any liability for any claims arising

7    from the prepetition or postpetition activities of the Debtors in the operation of their

8    businesses, or in connection with their restructuring efforts.  In addition, (a) neither the

9    DIP Agent, any DIP Lender, nor any Prepetition Loan Party shall be, in any way or

10   manner, liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or

11   damage thereto occurring or arising in any manner or fashion from any cause, (iii) any

12   diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee,

13   custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or

14   destruction of the Collateral shall be borne by the Debtors; <u>provided</u> that the foregoing

15   shall not apply to any act or omission by the DIP Agent, any DIP Lender, or any

16   Prepetition Loan Party that constitutes gross negligence or willful misconduct by such

17   party as finally determined by a court of competent jurisdiction.

18         27.    <u>Effect of Stipulations on Third Parties</u>.

19         a.    The stipulations and admissions contained in paragraph 5 of, and elsewhere

20   in, this Order shall be binding upon each Debtor and their subsidiaries and any of their

21   respective successors and assigns (including, without limitation, any Chapter 7 or Chapter

22   11 trustee appointed or elected for a Debtor), and each person or entity party to the DIP

23   Documents in accordance with their respective terms and the terms of this Order, in all

24   circumstances.

25         b.    The stipulations and admissions contained in this Order, including without

26   limitation, in paragraph 5 of this Order, shall be binding on a permanent basis upon all

27   other parties in interest, including the Committee and any other person or entity acting on

28   behalf of the Debtors' estates, unless (a) any party-in-interest with requisite standing

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  granted by the Bankruptcy Court, or the Committee, which is hereby granted automatic

2  standing, has timely and properly filed an adversary proceeding or contested matter

3  (subject to the limitations contained herein, including, inter alia, in paragraph 28) by no

4  later than the date that is the later of (i) in the case of any such adversary proceeding or

5  contested matter filed by a party-in-interest with requisite standing other than the

6  Committee, 60 days after the Petition Date, (ii) in the case of any such adversary

7  proceeding or contested matter filed by the Committee, 60 days after the appointment of

8  the Committee or a later date ordered by the Bankruptcy Court for good cause shown, or

9  (iii) any such later date agreed to in writing by the Prepetition Agent (the "Challenge

10  Period"), (1) challenging the validity, enforceability, priority, extent, or amount of the

11  Prepetition Debt or the Prepetition Senior Liens, subject to valuation under section 506 of

12  the Bankruptcy Code, on the Prepetition Collateral securing the Prepetition Debt or

13  (2) otherwise asserting or prosecuting any avoidance actions or any other claims,

14  counterclaims or causes of action, objections, contests or defenses (collectively, the

15  "Claims and Defenses") against the Prepetition Loan Parties or their respective agents,

16  affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in

17  connection with any matter related to the Prepetition Debt, the Prepetition Collateral, or

18  the Prepetition Loan Documents, and (b) an order is entered by a court of competent

19  jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any

20  such challenge or claim in any such duly filed adversary proceeding or contested matter;

21  provided that (i) as to the Debtors, all such Claims and Defenses are hereby irrevocably

22  waived and relinquished as of the Petition Date and (ii) any challenge or claim shall set

23  forth with specificity the basis for such challenge or claim and any challenges or claims

24  not so specified prior to the expiration of the Challenge Period shall be forever deemed

25  waived, released and barred.  If no such adversary proceeding or contested matter is

26  timely and properly filed in respect of the Prepetition Debt, (x) the Prepetition Debt, to the

27  extent not repaid pursuant to the Refinancing, and the other Prepetition Debt shall

28  constitute allowed claims, not subject to counterclaim, setoff, subordination,

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  recharacterization, subordination, defense or avoidance, for all purposes in the Chapter

2  11 Cases and any subsequent Chapter 7 cases, (y) the liens on the Prepetition Collateral

3  securing the Prepetition Debt, as the case may be, shall be deemed to have been, as of

4  the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in

5  paragraph 5, not subject to defense, counterclaim, recharacterization, subordination or

6  avoidance, and (z) the Prepetition Debt, the Prepetition Loan Parties, and the Prepetition

7  Senior Liens, as the case may be, shall not be subject to any other or further challenge by

8  any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or

9  any other party-in-interest, and such committees and parties-in-interest shall be enjoined

10  from seeking to exercise the rights of the Debtors' estates, including without limitation, any

11  successor thereto (including, without limitation, any estate representative or a Chapter 7

12  or 11 trustee appointed or elected for any of the Debtors) with respect thereto.  If any such

13  adversary proceeding or contested matter is timely and properly filed, the stipulations and

14  admissions contained in paragraph 5 of this Order shall nonetheless remain binding and

15  preclusive (as provided in the second sentence of this subparagraph) on any statutory or

16  non-statutory committees appointed or formed in the Chapter 11 Cases and any other

17  party-in-interest, except as to any such findings and admissions that were expressly and

18  successfully challenged in such adversary proceeding as set forth in a final, non-

19  appealable order of a court of competent jurisdiction.  In the event that there is a timely

20  successful challenge, pursuant and subject to the limitations contained in this

21  paragraph 27, to the validity, enforceability, extent, perfection or priority of the Prepetition

22  Debt or the Prepetition Senior Liens that occurs after the Refinancing, the Bankruptcy

23  Court shall have the power to unwind or otherwise modify the Refinancing or a portion

24  thereof as the Bankruptcy Court shall determine.  Except as to the Committee, nothing in

25  this Order vests or confers on any Person (as defined in the Bankruptcy Code) standing or

26  authority to pursue any cause of action belonging to the Debtors or their estates,

27  including, without limitation, Claims and Defenses with respect to the Prepetition Loan

28  Documents, the Prepetition Debt or the Prepetition Senior Liens.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

28.    <u>Limitation on Use of Financing Proceeds and Collateral</u>.  Notwithstanding anything herein or in any other order by the Bankruptcy Court to the contrary, no party may use borrowings under the DIP Facility, Prepetition Collateral, Cash Collateral, DIP Collateral, the Carve-Out, the Carve-Out Cap or any portion or proceeds of the foregoing in connection with (a) objecting to, contesting or raising any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Prepetition Loan Documents, or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) asserting any Claims and Defenses or causes of action against the DIP Agent, the DIP Lenders, or the Prepetition Loan Parties or their respective agents, affiliates, representatives, attorneys or advisors, (c) preventing, hindering or otherwise delaying the DIP Agent's or the DIP Lenders' assertion, enforcement or realization on the DIP Collateral once an Event of Default has occurred and is continuing in accordance with the DIP Documents or this Order, <u>provided</u> that the Debtors may contest or dispute whether an Event of Default has occurred as provided for in paragraph 18(a) of this Order, (d) seeking to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Loan Parties hereunder or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases, without such parties' prior written consent, (e) paying any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of the Bankruptcy Court and (ii) permitted to be paid under the DIP Documents and the Approved Budget, (f) using or seeking to use Cash Collateral or the DIP Liens except to the extent permitted under the DIP Documents and the Approved Budget, (g) selling or otherwise disposing of the DIP Collateral except as permitted by the DIP Documents or otherwise with the consent of the DIP Agent or the DIP Lenders, or (h) using or seeking to use any insurance proceeds related to the DIP Collateral, except as permitted by the DIP Documents or otherwise with the consent of the DIP Agent or the DIP Lenders.  Notwithstanding the foregoing, advisors to the Creditors' Committee, if any, may investigate claims and issues with respect to the liens granted

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  pursuant to the Prepetition Loan Documents during the Challenge Period at an aggregate

2  expense for such investigation, but not litigation, prosecution, objection or challenge

3  thereto, not to exceed $75,000.  Notwithstanding the foregoing, nothing in this Order shall

4  be deemed to (x) limit the ability of the Committee's professionals to be paid for services

5  rendered in the investigation or prosecution of claims against the DIP Agent or any of the

6  Prepetition Secured Parties; (y) preclude the Bankruptcy Court from awarding fees and

7  expenses to Committee professionals pursuant to sections 328 or 330 of the Bankruptcy

8  Code for such expenses and related disbursements; nor (z) relieve any plan proponent of

9  the obligation to satisfy the confirmation requirement of paying all allowed administrative

10  expense claims for such services and related disbursements; provided that in the case of

11  each of (x), (y), and (z), the payment is made from assets other than (i) the DIP Collateral,

12  (ii) the Prepetition Collateral or (iii) assets subject to the Contingent Liens.

13      29.    Use of DIP Accounts; Accounting.  With respect to any bank accounts

14  opened by the Debtors after the Petition Date (whether before or after the date of this

15  Order) (the "New Accounts"), the Prepetition Loan Parties and any holder of a Prepetition

16  Junior Lien shall have and are hereby granted (without the need for any further action)

17  liens in the New Accounts with the same validity, priority, and extent as such liens in the

18  Debtors' bank accounts existing on the Petition Date (the "Existing Accounts," and

19  together with the New Accounts, the "DIP Accounts").  The Debtors shall enter into

20  account control agreements with the Prepetition Loan Parties with respect to the New

21  Accounts.  All parties, including the PBGC, are hereby barred from asserting that the

22  Prepetition Loan Parties' liens on the New Accounts are of a lesser priority than their liens

23  in the Existing Accounts or that the PBGC Prior Lien or PBGC Lien Amount has any

24  different or additional priority in the New Accounts than it had or has in the Existing

25  Accounts.  The Debtors shall at all times maintain the ability to trace all monies entering

26  and removed from the DIP Accounts and all other accounts in use that are approved by

27  the cash management order.  The Debtors shall provide and deliver to the Prepetition

28  Agent an accounting of all money deposited and withdrawn from the DIP Accounts and

1  the relevant documents which show and track the tracing of all money and funds

2  deposited and withdrawn from the DIP Accounts.

3      30.  <u>Payments Held in Trust</u>.  Except as expressly permitted in this Order or the

4  DIP Documents, in the event that any person or entity receives any payment on account

5  of a security interest in DIP Collateral, receives any proceeds of DIP Collateral or receives

6  any other payment with respect thereto from any other source prior to indefeasible

7  satisfaction of all DIP Obligations under the DIP Documents, and termination of the Term

8  Loan Commitments (as defined in the DIP Documents) in accordance with the DIP

9  Documents, such person or entity shall be deemed to have received, and shall hold, any

10  such payment or proceeds of Collateral in trust for the benefit of the DIP Agent and DIP

11  Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise

12  instructed by the Bankruptcy Court, for application in accordance with the DIP Documents

13  and this Order.

14      31.  <u>Proofs of Claim</u>.  None of the DIP Agent, DIP Lenders, or the Prepetition

15  Loan Parties, in such respective capacities, will be required to file proofs of claim in any of

16  Chapter 11 Cases or any successor case.  Any order entered by the Bankruptcy Court in

17  connection with the establishment of a bar date for any claim (including without limitation

18  administrative claims) in the Chapter 11 Cases or any successor case shall not apply to

19  the DIP Agent, the DIP Lenders, or the Prepetition Loan Parties, in such respective

20  capacities.

21      32.  <u>Right of Access and Information</u>.  Without limiting the rights of access and

22  information afforded the DIP Agent and DIP Lenders under the DIP Documents or the

23  Prepetition Loan Parties under the Prepetition Loan Documents, the Debtors shall be, and

24  hereby are, required to afford representatives, agents and/or employees of the DIP Agent

25  and Prepetition Loan Parties reasonable access to the Debtors' premises and their books

26  and records in accordance with the DIP Documents and the Prepetition Loan Documents,

27  as the case may be, and shall reasonably cooperate, consult with, and provide to such

28  persons all such information as may be reasonably requested.  In addition, the Debtors

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  authorize their independent certified public accountants, financial advisors, restructuring

2  advisers, investment bankers and consultants to cooperate, consult with, and provide to

3  the DIP Agent and the Prepetition Agent all such information as may be reasonably

4  requested with respect to the business, results of operations and financial condition of the

5  Debtors.

6        33.    Retention of Jurisdiction.  The Bankruptcy Court has and will retain exclusive

7  jurisdiction with respect to any and all disputes or matters under, or arising out of or in

8  connection with, either the DIP Documents or this Order.

9        34.    Order Governs.  In the event of any inconsistency between the provisions of

10  this Order and the DIP Documents, the provisions of this Order shall govern.  Additionally,

11  to the extent that there may be an inconsistency between the terms of this Order and any

12  First Day Order or Second Day Order (each as defined in the DIP Credit Agreement), the

13  terms of this Order shall govern.

14        35.    Binding Effect; Successors and Assigns.  The DIP Documents and the

15  provisions of this Order shall be binding upon all parties-in-interest in the Chapter 11

16  Cases on a permanent basis, including without limitation, the DIP Agent, the DIP Lenders,

17  the Prepetition Loan Parties, any statutory or non-statutory committees appointed or

18  formed in the Chapter 11 Cases, and the Debtors and their respective successors and

19  assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for

20  any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy

21  Code, or any other fiduciary appointed as a legal representative of any of the Debtors, or

22  similar responsible person or similar designee or litigation trust hereinafter appointed or

23  elected for the estates of the Debtors) and shall inure to the benefit of the DIP Agent, the

24  DIP Lenders and the Prepetition Loan Parties and their respective successors and

25  assigns, including after conversion or dismissal of any of the Chapter 11 Cases; provided

26  that, except to the extent expressly set forth in this Order, the DIP Agent, the DIP Lenders,

27  and the Prepetition Loan Parties shall have no obligation to permit the use of Cash

28  Collateral or extend any financing to any chapter 7 trustee, chapter 11 trustee or similar

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   responsible person or similar designee or litigation trust hereunder appointed for the

2   estates of the Debtors.

3         36.    Limitation on Liability.  In determining to make any loan under the DIP

4   Documents, permitting the use of Cash Collateral or in exercising any rights or remedies

5   as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the

6   DIP Lenders and the Prepetition Loan Parties shall not be deemed to be in control of the

7   operations of the Debtors or to be acting as a "responsible person" or "owner or operator"

8   with respect to the operation or management of the Debtors (as such terms, or any similar

9   terms, are used in the United States Comprehensive Environmental Response,

10  Compensation and Liability Act, 29 U.S.C.  §§ 9601 et seq. as amended, or any similar

11  federal or state statute).  Furthermore, nothing in this Order or in the DIP Documents shall

12  in any way be construed or interpreted to impose or allow the imposition upon the DIP

13  Agent, the DIP Lenders, or the Prepetition Loan Parties of any liability for any claims

14  arising from the prepetition or postpetition activities of any of the Debtors and their

15  affiliates (as defined in section 101(2) of the Bankruptcy Code).

16        37.    Indemnification.  Prior to any reimbursement of indemnified obligations

17  referred to in the DIP Documents (or in any separate letter agreements between such

18  applicable parties and the Debtors in connection with the DIP facility), the DIP Agent shall

19  provide notice to the Committee of its request for such indemnity and the Committee shall

20  have ten (10) days after receipt of such notice to assert a specific written objection to the

21  indemnity and request a hearing.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ////

Lobel Weiland Golden Friedman LLP
840 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1       38.   <u>Effectiveness</u>. There shall be no stay of execution of effectiveness of this

2 Order.

3                               ###

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Date: December 16, 2015

Mark S. Wallace
United States Bankruptcy Judge

# SCHEDULE 1

| Debtor | Creditor | Amount |
|---|---|---|
| FCI | PBGC | $15,458,715 |
| FCHI | PBGC | $15,458,715 |
| FCHI | Stern/McEachen | $4,000,000 |
| SPV II | PBGC | $15,458,715 |
| SPV II | Stern/McEachen | $4,000,000 |
| SPV II | Caribou/OC Media | $2,145,239 |
| SPV II | Angelo Gordon | $10,000,000 |
| SPV VI | PBGC | $15,458,175 |
| 2100 Freedom | PBGC | $15,458,715 |
| Daily Press | PBGC | $15,458,715 |
| Freedom Colorado Information | PBGC | $15,458,715 |
| Freedom Newspaper Acquisition | PBGC | $15,458,715 |
| Freedom Newspapers | PBGC | $15,458,715 |
| Freedom Newspapers, Inc. | PBGC | $15,458,715 |
| Freedom Services, Inc. | PBGC | $15,458,715 |
| SPV I | PBGC | $15,458,715 |
| SPV IV | PBGC | $15,458,715 |
| SPV V | PBGC | $15,458,715 |
| OCR Community Publications, Inc | PBGC | $15,458,715 |
| Orange County Register Communications | PBGC | $15,458,715 |
| Victor Valley Publishing Company | PBGC | $15,458,715 |
| Victorville Publishing Company | PBGC | $15,458,715 |

# EXHIBIT "A"

**Back To INDEX**

**2100/Freedom Communications Holdings, Inc.**
**Weekly Cash Flows Projection - 2015**

>>> 2016 >>>

| | Fcst 01/08/16 | Fcst 01/15/16 | Fcst 01/22/16 | Fcst 01/29/16 | Fcst 02/05/16 | Fcst 02/12/16 | Fcst 02/19/16 | Fcst 02/26/16 | Fcst 03/04/16 | Fcst 03/11/16 | Fcst 03/18/16 | Fcst 03/25/16 | Fcst 04/01/16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Accounts** | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | |
| Operating | 3,546,374 | 3,384,457 | 3,384,457 | 3,488,874 | 3,346,933 | 3,214,897 | 3,214,897 | 3,339,433 | 3,103,872 | 2,955,116 | 2,806,360 | 2,806,360 | 3,096,372 |
| Other (including Inter Account Transfers In) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Receipts | 3,546,374 | 3,384,457 | 3,384,457 | 3,488,874 | 3,346,933 | 3,214,897 | 3,214,897 | 3,339,433 | 3,103,872 | 2,955,116 | 2,806,360 | 2,806,360 | 3,096,372 |
| **Operating Disbursements** | | | | | | | | | | | | | |
| Payroll & Benefits | 2,146,653 | 555,000 | 2,433,733 | 272,500 | 2,225,032 | 555,000 | 2,256,430 | 272,500 | 1,930,981 | 555,000 | 2,132,285 | 272,500 | 1,859,850 |
| Paper & Ink | 551,000 | 556,000 | 551,000 | 566,000 | 528,488 | 533,488 | 528,488 | 543,488 | 528,488 | 539,487 | 534,487 | 549,487 | 534,487 |
| Purchased Content | 32,137 | 31,984 | 31,984 | 31,984 | 31,030 | 29,757 | 29,757 | 29,757 | 31,389 | 31,389 | 31,389 | 31,389 | 31,389 |
| Outside Services | 981,000 | 711,000 | 981,000 | 761,000 | 981,000 | 711,000 | 971,000 | 751,000 | 971,000 | 701,000 | 971,000 | 751,000 | 971,000 |
| Operating Supplies & Materials | 82,035 | 82,333 | 82,333 | 75,542 | 75,542 | 66,488 | 66,488 | 66,488 | 66,488 | 66,424 | 66,424 | 66,424 | 66,424 |
| Repairs & Maintenance | 49,977 | 49,651 | 49,651 | 49,651 | 49,651 | 49,651 | 49,651 | 49,651 | 44,651 | 49,971 | 49,971 | 49,971 | 49,971 |
| Promotion and Marketing | 40,376 | 40,355 | 40,355 | 40,355 | 46,189 | 53,988 | 53,988 | 53,988 | 53,988 | 42,748 | 42,748 | 42,748 | 42,748 |
| Postage, Office Supplies, Dues, and Subscriptions | 19,697 | 18,390 | 18,390 | 18,390 | 18,574 | 18,574 | 18,574 | 18,574 | 18,574 | 20,007 | 20,007 | 20,007 | 20,007 |
| Travel, Meals, and Entertainment | 21,138 | 21,416 | 21,416 | 21,416 | 24,695 | 15,735 | 15,735 | 15,735 | 15,735 | 23,191 | 23,191 | 23,191 | 23,191 |
| Training, Seminars, Events, and Communications | 1,131 | 1,109 | 1,109 | 1,109 | 1,106 | 1,106 | 1,106 | 1,106 | 1,106 | 1,114 | 1,114 | 1,114 | 1,114 |
| Utilities, Rent, and Lease | 25,000 | 10,000 | 682,100 | 77,000 | 29,000 | 119,000 | 563,100 | 55,000 | 32,000 | 138,000 | 438,100 | 180,000 | 36,000 |
| Insurance | | | | | | | | | | | | | 85,500 |
| Taxes (non-income) | 50,000 | 50,000 | 50,000 | 50,000 | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Total Operating Disbursements | 4,000,185 | 2,127,237 | 4,943,070 | 1,971,737 | 4,085,204 | 2,228,766 | 4,604,286 | 1,907,266 | 3,742,747 | 2,218,330 | 4,360,715 | 2,037,630 | 3,771,680 |
| **Capital Expenditures and Income Taxes** | | | | | | | | | | | | | |
| Capital Expenditures | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Capital Expenditures and Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Debt, Financing & Other Disbursements** | | | | | | | | | | | | | |
| Interest Payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Principal Payments | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 200,000 |
| Bank Fees and Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Debt related disbursements | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 200,000 |
| Other Misc Disbursements | 250,000 | 250,000 | 250,000 | | | | | | | | 250,000 | | |
| Restructuring Fees | | | | | | | | | | | | | |
| Lobel, Weiland & Golden, LLP | | 275,000 | | | | | | 375,000 | | | | 375,000 | |
| GlassRatner Advisory & Capital Group | | | | 65,000 | | | | 65,000 | | | | 65,000 | |
| Donlin Recano | | | | 15,000 | | | | 15,000 | | | | 15,000 | |
| Squar Milner | | | | 10,000 | | | | 10,000 | | | | 10,000 | |
| Silver Point Counsel | | | | 200,000 | | | | 200,000 | | | | 200,000 | |
| Rutan | | | | | | | | | | | | | |
| US Trustee Fees | 25,000 | | | | | 25,000 | | | | 25,000 | | | |
| Counsel - Creditors Committee | | | | 48,000 | | | | | | | | | |
| Mesar & Company (Independent Sales Rep) | | 300,000 | | | | | 300,000 | | | | | | |
| InterAccount Transfers Out | | | | | | | | | | | | | (120,000) |
| **Disbursements - Total** | 4,275,185 | 2,952,237 | 5,193,070 | 2,309,737 | 4,285,204 | 2,253,766 | 4,904,286 | 2,572,266 | 3,942,747 | 2,243,330 | 4,610,715 | 2,627,630 | 3,851,680 |
| Cash - Beginning | 5,098,619 | 4,370,808 | 4,803,027 | 2,994,414 | 4,173,551 | 3,235,280 | 4,196,411 | 2,507,011 | 3,274,179 | 2,435,303 | 3,147,089 | 1,342,734 | 1,521,264 |
| DIP Facility (single draw) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Change in Cash | (728,811) | 432,220 | (1,808,613) | 1,179,136 | (938,271) | 961,131 | (1,689,389) | 767,167 | (838,875) | 711,786 | (1,804,355) | 178,530 | (755,308) |
| Cash - Ending | 4,370,808 | 4,803,027 | 2,994,414 | 4,173,551 | 3,235,280 | 4,196,411 | 2,507,011 | 3,274,179 | 2,435,303 | 3,147,089 | 1,342,734 | 1,521,264 | 765,996 |
| **Operating Cash - Ending** | 4,370,808 | 4,803,027 | 2,994,414 | 4,173,551 | 3,235,280 | 4,196,411 | 2,507,011 | 3,274,179 | 2,435,303 | 3,147,089 | 1,342,734 | 1,521,264 | 765,996 |