1  William N. Lobel, State Bar No. 93202
   wlobel@lwgfllp.com
2  Alan J. Friedman, State Bar No. 132580
   afriedman@lwgfllp.com
3  Beth E. Gaschen, State Bar No. 245894
   bgaschen@lwgfllp.com
4  Christopher J. Green, State Bar No. 295874
   cgreen@lwgfllp.com
5  **LOBEL WEILAND GOLDEN FRIEDMAN LLP**
   650 Town Center Drive, Suite 950
6  Costa Mesa, California 92626
   Telephone   714-966-1000
7  Facsimile   714-966-1002

8  Attorneys for Debtors and Debtors-in-Possession

9              **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

                **SANTA ANA DIVISION**

11 | In re | Case No. 8:15-bk-15311-MW

12 | FREEDOM COMMUNICATIONS, INC., *et* | Chapter 11
   | *al.*,[1] |

13 | | (Jointly Administered with Case Nos.
   |                               Debtors and | 8:15-bk-15312-MW; 8:15-bk-15313-MW;
14 |                               Debtors-in-Possession. | 8:15-bk-15315-MW; 8:15-bk-15316-MW;
   | | 8:15-bk-15317-MW; 8:15-bk-15318-MW;
15 | Affects: | 8:15-bk-15319-MW; 8:15-bk-15320-MW;
   | | 8:15-bk-15321-MW; 8:15-bk-15322-MW;
16 | ☒  All Debtors | 8:15-bk-15323-MW; 8:15-bk-15324-MW;
   | | 8:15-bk-15325-MW; 8:15-bk-15326-MW;
17 | ☐  Freedom Communications, Inc., a | 8:15-bk-15327-MW; 8:15-bk-15328-MW;
18 | Delaware corporation, ONLY | 8:15-bk-15329-MW; 8:15-bk-15330-MW;
   | | 8:15-bk-15332-MW; 8:15-bk-15337-MW;
19 | ☐  Freedom Communications Holdings, | 8:15-bk-15339-MW; 8:15-bk-15340-MW;
   | Inc., a Delaware corporation, ONLY | 8:15-bk-15342-MW; 8:15-bk-15343-MW)

20

21

22  _____

23      [1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom
    Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc.
    (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610);
24  Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735);
    Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom
25  Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom
    Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona,
26  Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register
    Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company
27  (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom
    SPV IV, LLC (8500); and Freedom SPV V, LLC (9036).  The Debtors' mailing address is 625 N. Grand
28  Avenue, Santa Ana, California 92701.

1054191.10

| | |
|---|---|
| 1 | ☐ Freedom Services, Inc., a Delaware corporation, ONLY |
| 2 | |
| 3 | ☐ 2100 Freedom, Inc., a Delaware corporation, ONLY |
| 4 | ☐ OCR Community Publications, Inc., a California corporation, ONLY |
| 5 | |
| 6 | ☐ Daily Press, LLC, a California limited liability company, ONLY |
| 7 | ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY |
| 8 | |
| 9 | ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY |
| 10 | |
| 11 | ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY |
| 12 | ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY |
| 13 | |
| 14 | ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY |
| 15 | ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY |
| 16 | |
| 17 | ☐ Freedom Newspapers, a Texas general partnership, ONLY |
| 18 | ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY |
| 19 | |
| 20 | ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY |
| 21 | |
| 22 | ☐ OCR Information Marketing, Inc., a California corporation, ONLY |
| 23 | ☐ Odessa American, a Texas general partnership, ONLY |
| 24 | |
| 25 | ☐ Orange County Register Communications, Inc., a California corporation, ONLY |
| 26 | |
| 27 | ☐ Victor Valley Publishing Company, a California corporation, ONLY |
| 28 | |

**DEBTORS' MOTION FOR ENTRY OF ORDERS: (I)(A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (B) AUTHORIZING, BUT NOT REQUIRING, THE GRANTING OF STALKING HORSE PROTECTIONS TO POTENTIAL STALKING HORSE BIDDER(S), (C) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE, (D) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (II)(A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO SUCCESSFUL BIDDER(S)' ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO**

- 2 -

1054191.10

1  ☐  Victorville Publishing Company, a
California limited partnership, ONLY

2

3  ☐  Freedom SPV II, LLC, a Delaware
limited liability company, ONLY

4  ☐  Freedom SPV VI, LLC, a Delaware
limited liability company, ONLY

5

6  ☐  Freedom SPV I, LLC, a Delaware
limited liability company, ONLY

7  ☐  Freedom SPV IV, LLC, a Delaware
limited liability company, ONLY

8

9  ☐  Freedom SPV V, LLC, a Delaware
limited liability company, ONLY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1054191.10

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ............................................................................2

        A.      Jurisdiction and Venue .................................................2

II.     THE CHAPTER 11 FILINGS ..............................................3

        A.      The Debtors......................................................................3

III.    PRELIMINARY STATEMENT ........................................6

IV.     RELIEF REQUESTED .......................................................7

V.      PROPOSED BID AND SALE PROCEDURES ....................8

        A.      Assets to the Sold ..........................................8

        B.      Proposed Bidding Procedures.....................................9

                1.      Consultation Requirement ...............................9

                2.      Stalking Horse Bidder ...................................9

                3.      Documentation Necessary for Potential Bidders to
                        Conduct Due Diligence ...................................10

                4.      Due Diligence ................................................11

                5.      Provisions Governing Qualifications of Qualified Bids
                        and Overbids ...............................................11

                6.      Bid Deadline ..................................................15

                7.      Evaluation of Competing Bids........................16

                8.      No Competing Bid...........................................17

                9.      Auction Procedures .......................................17

                10.     Selection of Successful Bidder .....................19

                11.     Additional Deposits and Return of Deposits ...................20

                12.     Back-Up Bidder.............................................21

                13.     Credit Bid Rights...........................................22

                14.     Reservation of Rights ..................................22

                15.     Sale Hearing...................................................23

        C.      Notice of Sale Hearing .............................................23

1054191.7

# **TABLE OF CONTENTS (cont.)**

**Page**

D.  Sale Hearing............................................................................24

E.  Procedures for the Assumption and Assignment of Contracts..................25

F.  Procedures for the Designation of a Stalking Horse Bidder(s) Prior to Auction and Authority to Grant Stalking Horse Protections ........................................................................26

VI.  LEGAL BASIS FOR RELIEF REQUESTED.............................................28

A.  The Bidding Procedures Are Appropriate and Will Maximize the Value Received for the Assets ...............................................28

B.  The Debtor's Ability to Grant Stalking Horse Protections is Appropriate Under the Circumstances .......................................29

C.  The Sale of Assets is Authorized by Section 363 as a Sound Exercise of the Debtors' Business Judgment and is in the Best Interests of the Debtors, their Estates and Creditors................................33

D.  The Sale of the Assets Free and Clear of Liens, Claims and Other Interests is Authorized by Section 363(f) .........................37

E.  The Proposed Notice of Bidding Procedures and Auction Is Appropriate...........................................................................40

F.  Assumption and Assignment of Certain Executory Contracts and Unexpired Lease .................................................................41

G.  The Successful Bidder Should Be Afforded All Protections Under Section 363(m) as A Good Faith Purchaser ...................43

H.  Relief from the Fourteen Day Waiting Period Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.................................44

VII.  NOTICE ..........................................................................................45

VIII.  CONCLUSION .................................................................................45

1054191.9

# TABLE OF AUTHORITIES

<strong>Page(s)</strong>

## Cases

Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.), 56 B.R. 186,
189-90 (Bankr. N.D. Ga. 1986) .......................................................................... 39

Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.),
99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)) ........................................................ 34

Bankruptcy Code 363 (f)(5).......................................................................... 37, 38

Bidermann Indus. U.S.A., Inc., 203 B.R. at 552; Integrated Resources, 147
B.R. at 657 ........................................................................................................ 31

Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy,
Inc.), 181 (3d Cir. 1999) .................................................................................... 32

Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R
.538 (Bankr. D.N.J. 1989) .................................................................................. 41

Cello Bag Co. Inc. v. Champion Int'l Corp. (In re Atlanta Packaging Prods.,
Inc.),
99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)) ................................................. 28, 34

Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R.
343, (Bankr. E.D. Pa. 1988) ............................................................................. 37

Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25
(B.A.P. 9th Cir. 2008)....................................................................................... 38

Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),
722 (2d Cir. 1983) ............................................................................................. 34

Food Barn Stores, 107 F.3d at 564-65.............................................................. 34

Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),
107 F.3d 558, 564–65 (8th Cir. 1997) ............................................................... 28

Futuresource LLC v. Reuters Ltd.,
312 F.3d 281, 285-86........................................................................................ 37

Hupp Indus., 140 B.R. 191................................................................................. 32

In re 240 North Brand Partners, Ltd.,
200 B.R. 653 (B.A.P. 9th Cir. 1996) .................................................................. 34

In re 995 Fifth Ave., Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) ................. 28

In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 147 (3d Cir.1986); Allstate
Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994).................................... 43

In re Abbotts Dairies of Pennsylvania, Inc.,

1054191.7

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

788 P.2d 143 (2d Cir. 1986) .................................................................................. 34

In re Am. Suzuki Motor Corp.,
494 B.R. (Bankr. C.D. Cal. 2013) ....................................................................... 41

In re America West Airlines, Inc., 166 B.R. 908 (Bankr. D. Ariz. 1994 .......................... 31

In re American West Airlines, 166 B.R. 908 (Bankr. D. Ariz. 1994) ............................. 34

In re Art & Architecture Books of the 21st Century, 2013 WL 4874342
(Bankr. C.D. Cal. Sept. 12, 2013)........................................................................ 41

In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill.
1985) ................................................................................................................... 42

In re Bygaph, Inc., 56 B.R.
596, (Bankr. S.D.N.Y. 1986) .............................................................................. 42

In re Bygaph, Inc., 56 B.R.
596, n.8 (Bankr. S.D.N.Y. 1986)......................................................................... 37

In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992)............................................. 34

In re Chrysler LLC, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ..................................... 39

In re Ernst Home Center, Inc.,
209 B.R. 974 (Bankr. W.D. Wash. 1997) ........................................................... 34

In re General Motors Corp., 407 B.R. 463, 505-06 (Bankr. S.D.N.Y. 2009)................ 39

In re Hupp Indus., 140 B.R. 191, 194 (Bankr. N.D. Ohio 1997) .................................. 30

In re Jolan Inc., 403 B.R. 866, 867 (Bankr. W.D. Wash. 2009)..................................... 38

In re Lajijani, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); GBL Holding Co.,
Inc. v. Blackburn/Travis/Cole, Ltd.,
331 B.R. 251, 255 (N.D. Tex. 2005)................................................................... 35

In re Leckie Smokeless Coal Co., 99 F.3d 573, 585 (4th Cir. 1996) .............................. 39

In re Marrose Corp., 1992 WL 33848, at *5 (Bankr. S.D.N.Y. Feb. 15,
1992) ................................................................................................................... 30

In re Med. Software Solutions,
286 B.R. 431, 445 ............................................................................................... 35

In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) .............................. 42

In re S.N.A. Nut Co., 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995). .................................. 31

In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990).............................. 43

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

In re Summit Global Logistics, Inc., 2008 WL 819934, at *9 (Bankr.  D.N.J.
    Mar.  26, 2008); C & J Clark Am.  Inc. v. Carol Ruth Inc.  (In re
    Wingspread Corp.), 92 B.R.  87 (Bankr.  S.D.N.Y.  1988).....................35

In re The Canyon Partnership, 55 B.R.  520, 524 (Bankr.  S.D.  Cal. 1985) ...................34

In re Trans World Airlines, Inc., 322 F.3d 283, (3d Cir. 2003)........................39

In re Wilde Horse Enterprises, Inc.,
    136 B.R.  830 (Bankr.  C.D.  Cal. 1991) ................................34

In re WPRV-TV, Inc., 143 B.R.
    315,  (D.P.R.  1991 ......................................................35

Michigan Employment Sec.  Comm'n v. Wolverine Radio Co.  (In re
    Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) .......................37

Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.),
    78 F.3d 18, 25 (2d Cir. 1996) .......................................41

Official Committee of Subordinated Bondholders v. Integrated Resources,
    Inc.  (In re Integrated Resources, Inc.),
    147 B.R.  650, 656-57 (S.D.N.Y.  1992)........................................28, 34

Orion Pictures Corp. v. Showtime Networks, Inc.  (In re Orion Pictures
    Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993). ............................41

P.K.R.  Convalescent Ctrs., Inc. v. Commonwealth of Virginia, Dep't of
    Medical Assistance Serv.  (In re P.K.R.  Convalescent Ctrs., Inc.), 189
    B.R.  90, 94 (Bankr.  E.D.  Va.  1995) ...................................39

Rubinstein v. Alaska Pac.  Consortium (In re New England Fish Co.), 19
    B.R.  323, 328 (Bankr.  W.D.  Wash.  1982) .......................................39

See also, Meyers v. Martin (In re Martin), 91 F.3d 289, 295 (3d Cir. 1996) ...................34

WBQ P'ship v. Commonwealth of Virginia Dep 't of Medical Assistant Servs.,
    189 B.R.  97, 103 (Bankr.  E.D.  Va.  1995) .......................................39

### Statutes

Collier on Bankruptcy P. 6004.11 .......................................44

Bankruptcy Code 365(f)(1).............................................42

Bankruptcy Code 365(a). ...............................................41

Bankruptcy Code 363(m) ...............................................25, 43

Bankruptcy Code 363(f)(2)..............................................37

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

Bankruptcy Code 363(f) ........................................................................ 37, 39

11 U.S.C. §§ 101–1532 ................................................................................. 1

11 U.S.C. §105(a) ................................................................................. 1, 37

11 U.S.C. §363 ...............................................................................passim

11 U.S.C. §363(b) ..................................................................................... 34

11 U.S.C. §365 ...............................................................................passim

28 U.S.C. §§ 157 ......................................................................................... 2

28 U.S.C. §§ 157(b)(2 ............................................................................... 2

28 U.S.C. §§ 1334 ...................................................................................... 2

28 U.S.C. §§ 1408 ...................................................................................... 3

28 U.S.C. §§ 1409 ...................................................................................... 3

**Rules**

Bankruptcy Rules 6004(h) ................................................................ 44, 45

Bankruptcy Rules 6006(d) ................................................................ 44, 45

Federal Rule of Bankruptcy Procedure 9014 .......................................... 1

Federal Rule of Bankruptcy Procedure 9007 .......................................... 1

Federal Rule of Bankruptcy Procedure 6006 .......................................... 1

Federal Rule of Bankruptcy Procedure 6005 .......................................... 1

Federal Rule of Bankruptcy Procedure 6004 .................................... 1, 33

Federal Rule of Bankruptcy Procedure 2002 ...................................passim

Local Bankruptcy Rule 9075-1 ............................................................... 45

Local Rule of Bankruptcy Procedure 6004-1 ........................................... 1

**TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, SECURED CREDITORS AND ALL OTHER INTERESTED PARTIES:**

Freedom Communications, Inc. and its related debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), hereby file this motion (the "Motion") seeking entry of two orders, in two phases, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, 6005, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), as follows:

***First, the Bid Procedures Order***, (i)(a) approving procedures in connection with the sale of substantially all of the Debtors' assets, (b) authorizing, but not requiring, the granting of Stalking Horse Protections (as defined herein) in the event the Debtors designate Stalking Horse Bidder(s) in connection with the sale of the Debtors' assets, (c) scheduling the related auction and hearing to consider approval of the sale, (d) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases, (e) approving the form and manner of notice thereof, and (f) granting related relief, and

***Second, the Sale Order***, at a later hearing to be scheduled by this Court pursuant to the above-referenced relief, (ii)(a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as provided in the Successful Bidder(s)' asset purchase agreement(s), (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto, and (c) granting related relief.

**The first phase of relief requested be this Motion is the establishment of procedures relating to the sale of the Debtors' Assets (defined herein as the**

1054191.9

1   **Bidding Procedures), including the scheduling of an Auction, approval of the**

2   **procedures relating to the Auction (including the selection, if appropriate, of one or**

3   **more Stalking Horse Bidders), and the scheduling of a Sale Hearing.  The Bidding**

4   **Procedures, and the preliminary relief requested by this Motion, have been the**

5   **subject of extensive negotiation and have the support of all of the major**

6   **constituences in the Debtors' cases – the Committee and the DIP Agent, as well as**

7   **the Debtors' Independent Sale Representative, Robert Mosier.**

8           **The hearing on the Bidding Procedures aspect of the Motion does not**

9   **request approval of a sale of the Debtors' assets to any purchaser.  Such relief will**

10  **be sought in connection with the Sale Hearing to be scheduled by this Court.**

11          In support of this Motion, the Debtors submit the Declaration of Chris D. Dahl (the

12  "Dahl Declaration"), the Declaration of Robert P. Mosier, the Debtors' Independent Sales

13  Representative (the "Mosier Declaration") and the Declaration of Christopher T. Nicholls of

14  FTI Capital Advisors, LLC (the "FTI Declaration") with respect to the specifics of the

15  proposed sale of the Debtors' assets.  The Debtors also rely on the Declaration of Chris D.

16  Dahl filed in support of the Debtors' first day motions (the "First Day Declaration") [Dkt.

17  No. 27] with respect to the description of the Debtors' business, their assets and liabilities,

18  capital structure and the events precipitating the filing of these chapter 11 cases, which

19  First Day Declaration is incorporated by reference herein.  In further support of the Motion,

20  the Debtors respectfully state as follows:

21  **I.      BACKGROUND**

22          A.      Jurisdiction and Venue

23          This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

24  1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtors consent to

25  the entry of a final order by the Court in connection with this Motion to the extent it is later

26  determined that the Court, absent consent of the parties, cannot enter final orders or

27

28
                                            - 5 -

1054191.10

1  judgments consistent with Article III of the United States Constitution.  Venue of these

2  cases and this Motion in this district is proper under 28 U.S.C.  §§ 1408 and 1409.

3  **II.    THE CHAPTER 11 FILINGS**

4         The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy

5  Code on November 1, 2015 and November 2, 2015 (as applicable to each Debtor, the

6  "Petition Date").  The Debtors continue to operate and manage their affairs as debtors and

7  debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No

8  party has requested the appointment of a trustee or examiner in the chapter 11 cases.  On

9  November 2, 2015, the Court entered an order authorizing the joint administration of the

10  Debtors' cases pursuant to Bankruptcy Rule 1015(b).

11         On or about November 10, 2015, an official committee of unsecured creditors was

12  appointed by the Office of the United States Trustee in the chapter 11 cases of Freedom

13  Communications, Inc., Freedom Communications Holdings, Inc., Freedom Services, Inc.

14  and OCR Community Publications, Inc.  (the "Committee").  This Motion contemplates the

15  active involvement of the Committee in the sale process.

16         **A.    The Debtors**

17         The Debtors, headquartered in Santa Ana, California, are collectively a privately

18  owned information and entertainment company consisting of print publications and

19  interactive businesses.  The Debtors' portfolio includes daily and weekly newspapers,

20  magazines and other specialty publications.  In addition, the Debtors operate an

21  interactive business which offers website complements, as well as digital and mobile

22  products, to their print publications.  The Debtors also have two real property holdings

23  located in Santa Ana and Riverside, California.  The Orange County Register is the

24  Debtors' flagship newspaper.  The Debtors also operate the Riverside Press-Enterprise

25  and Unidos (a Spanish language newspaper).  Detailed information regarding the Debtors'

26

27

28

- 6 -

1  businesses, structure, assets and liabilities is set forth in the First Day Declaration and is

2  incorporated herein by reference.[2]

3      For the past 80 years, the Debtors' business has focused on the distribution of print

4  news media, generating their revenue from both the distribution of newspapers and

5  magazines and from related advertising revenue.  However, over the past years, there

6  has been an increase in internet-based advertising and news source alternatives that has

7  continued to erode traditional print media sources of revenue.  Despite the Debtors' taking

8  affirmative steps to navigate the evolution of the print industry, the Debtors still faced

9  challenges.  The Debtors have filed these chapter 11 cases in order to maximize the value

10  of the Debtors and their assets by selling their business operations as a going concern

11  under the supervision of the Bankruptcy Court.  Provided that the contemplated sale

12  results in the payment in full of their respective claims, the sale is supported by the

13  Debtors' two primary prepetition secured creditors, Silver Point Finance, LLC ("Silver

14  Point") and the Pension Benefit Guaranty Corporation ("PBGC").  In addition, the Debtors

15  anticipate that the contemplated sale will have the support of the Committee, which will be

16  actively involved in the sale process.

17      The Debtors believe that a chapter 11 process and a sale consummated pursuant

18  to a competitive bidding process pursuant to section 363 of the Bankruptcy Code will

19  maximize value for the Debtors' estates and creditors, and provide the most stability for

20  the Debtors' employees, customers and vendors.

21      Critical to the success of the reorganization process will be the approval and

22  consummation of a sale of the Debtors' business without significant disruption or delay.

23

24  _____

25  [2] The First Day Declaration sets forth the following information relevant to this Motion: (a) Part I.A (pp. 5-6) sets forth information regarding the filing of the chapter 11 cases; (b) Part I.B (pp. 6-8) sets forth

26  information regarding the Debtors' corporate structure; (c) Part I.C (pp. 8-10) sets forth information regarding the Debtors' history and business operations; (d) Part I.D (pp. 10-26) sets forth information regarding the Debtors' capital structure and their assets and liabilities (including revenue sources, real property assets and

27  prepetition indebtedness); (e) Part I.E (pp. 26-27) sets forth information regarding the events leading to the chapter 11 cases; and (f) Part II (pp. 27-28) sets forth information regarding the contemplated sale of the

28  Debtors' assets.

- 7 -

1054191.10

1  The goal of the 363 sale process, as described herein, is to ensure that the Debtors

2  continue as a going concern, which will preserve asset value, maintain the jobs of

3  thousands of employees, preserve employee and retiree benefits, maintain important

4  contracts, ensure payment of secured claims and certain other obligations critical to the

5  Debtors' ongoing operations and provide value to fund payments to unsecured creditors

6  under a plan.

7       In contemplation of the sale of substantially all of the Debtors' assets, on

8  November 5, 2015, the Bankruptcy Court entered an order authorizing the Debtors' use of

9  cash collateral on an interim basis.  [Dkt.  No. 47].  The final hearing on the Debtors' use

10  of cash collateral, and for approval of a $4.5 million debtor-in-possession financing facility,

11  was held on December 14, 2015 and was approved by order entered on

12  December 17, 2015.  [Dkt.  No. 239].  The proceeds of the financing and the use of cash

13  collateral are intended to provide for the Debtors' cash needs pending the sale of

14  substantially all of their assets – which is contemplated to be completed by

15  March 31, 2016.  On November 5, 2015, the Bankruptcy Court also granted certain "first-

16  day" relief to the Debtors pursuant to which the Debtors were authorized to continue to

17  operate their businesses notwithstanding the pendency of the chapter 11 cases, including

18  orders authorizing the Debtors to pay and honor certain prepetition employment and

19  customer related obligations, maintain their existing cash management systems and

20  granting certain other standard administrative relief.  [Dkt.  Nos.  41-46].

21       On December 1, 2015, the Debtors filed an application to employ GlassRatner as

22  financial advisor and consultant for the Debtors, which employment was approved by

23  order entered December 23, 2015.  [Dkt.  No. 262].  On December 9, 2015, the Debtors

24  filed an application to employ Mosier & Company, Inc. as independent sales

25  representative for the Debtors, which employment was approved by order entered

26  December 29, 2015.  [Dkt.  No. 276].  On December 28, 2015, the Debtors filed an

27

28

1054191.10

1 | application to employ FTI Capital Advisors, LLC as their investment banker in connection

2 | with the sale.  [Dkt.  No. 271].

3 | **III.    PRELIMINARY STATEMENT**

4 |     Following a review of strategic alternatives for their businesses, the Debtors, in

5 | consultation with their advisors, determined that maximizing the value of their estates is

6 | best accomplished through an orderly sale, free and clear of liabilities, of substantially all

7 | of their assets, comprised mainly of the Debtors' print publications, interactive businesses

8 | and real property holdings (defined herein as the "Assets").

9 |     The Debtors contemplate a robust sale process seeking to maximize the value of

10 | their Assets and, to this end, have engaged GlassRatner as their financial advisory firm,

11 | FTI as their investment banker, and Mr.  Mosier as an independent sales representative to

12 | assist the Debtors in implementing such a sale process.  Since the Petition Date, the

13 | Debtors and their advisors have been engaged in a marketing effort designed to

14 | encourage bids for a transaction pursuant to which all or a portion of the Debtors'

15 | businesses would continue operating, thereby preserving as many jobs, customer and

16 | supplier relationships as possible.

17 |     To date, several parties have expressed an interest in purchasing the Debtors'

18 | Assets; however, no party has submitted a final proposal as of the date of the filing of this

19 | Motion.  In lieu of delaying the process in order to have a stalking horse agreement

20 | submitted with this Motion, and in light of the Debtors' budgeted cash position that

21 | contemplates the completion of the sale process by the end of March 2016, the Debtors

22 | determined it was in the best interests of all parties to file the instant Motion to put into

23 | place the sale procedures at this juncture so that all interested parties would have the

24 | maximum opportunity to bid for the Assets, while still preserving the Debtors' ability to

25 | select a stalking horse bidder in connection with the auction and provide Stalking Horse

26 | Protections to such bidder, if appropriate, as requested herein.

27 |

28 |

- 9 -

1054191.10

1    By virtue of the Debtors' financial position and the cash available to the Debtors

2  through the DIP financing facility and the use of cash collateral, it is imperative that the

3  procedures be put into place and the auction be scheduled such that the closing of the

4  sale of the Assets can occur by no later than March 31, 2016.

5    The Debtors believe that the sale of their Assets pursuant to the procedures and on

6  the timeline proposed herein presents the best opportunity to maximize value for all

7  interested parties.

8  **IV.    RELIEF REQUESTED**

9    Pursuant to this Motion, the Debtors request relief in two steps:

10    *First*, the Debtors request entry of an order, in the form attached hereto as

11  Exhibit A (the "Bidding Procedures Order"):  (A) approving procedures (the "Bidding

12  Procedures," the form of which is attached to the Bidding Procedures Order as Exhibit 1)

13  for (i) submitting bids for any or all of the Assets of the Debtors and (ii) conducting an

14  auction with respect to the sale of the Assets (the "Auction"); (B) authorizing, but not

15  requiring, the Debtors to grant the Stalking Horse Protections to potential Stalking Horse

16  Bidder(s) (as defined herein); (C) scheduling the Auction for March 16, 2016, at 10:00

17  a.m.  (prevailing Pacific Time) at the offices of Lobel Weiland Golden Friedman LLP, 650

18  Town Center Drive, Suite 950, Costa Mesa, California 92626, or at such other time, place,

19  and date as may be designated by the Debtors; (D) scheduling a hearing on or before

20  March 21, 2016 (the "Sale Hearing") to consider approval of the sale of the Assets with

21  respect to any bid(s) accepted by the Debtors; (E) approving the Cure Procedures (as

22  defined below) for the assumption and assignment of certain executory contracts and

23  unexpired leases of the Debtors to any purchaser(s) of the Assets, and to resolve any

24  objections thereto; and (F) approving (i) the form of notice of the Auction and Sale (the

25  "Procedures Notice"), attached to the Bidding Procedures Order as Exhibit 2, to be served

26  on the Procedures Notice Parties (as defined below), (ii) the form of publication notice of

27  the Auction and Sale (the "Publication Notice"), attached to the Bidding Procedures Order

28

- 10 -

1  as Exhibit 3, and (iii) the form of notice to parties holding executory contracts or unexpired

2  leases that may be assumed and assigned in connection with the sale of the Assets (the

3  "Notice of Potential Assumption and Assignment"), in the form attached to the Bidding

4  Procedures Order as Exhibit 4.

5      *Second*, the Debtors request entry of an order, pursuant to sections 105, 363 and

6  365 of the Bankruptcy Code in the form to be submitted in connection with the Sale

7  Hearing following the conclusion of the Auction (the "Sale Order"), (i) approving the sale of

8  the Assets to the purchaser, free and clear of all liens, security interests, claims, charges,

9  encumbrances and liabilities, except as provided in the applicable asset purchase

10  agreement, and authorizing the Debtors to consummate the Sale (as defined below) and

11  all documents, agreements, and contracts executed in conjunction therewith, and

12  (ii) approving the assumption and assignment of certain executory contracts and

13  unexpired leases in connection therewith.

14  **V.      PROPOSED BID AND SALE PROCEDURES**

15      **A.      Assets to the Sold**

16      As noted above, the Debtors seek to complete a sale (the "Sale") of their assets,

17  including, without limitation, their real estate interests, operating assets, accounts

18  receivable, executory contracts and leases, in one or more lots[3] (each distinct asset or

19  collections of assets is referred to herein as "Assets").

20      Except as otherwise provided in the Sale Order, the Bankruptcy Court's order

21  approving the Debtors' use of cash collateral and debtor in possession financing entered

22  on December 17, 2015 [Dkt.  No. 239] (the "DIP Order"), and the DIP Credit Agreement

23  (as defined in the DIP Order and as filed with the Bankruptcy Court on

24  December 14, 2015), all of the Debtors' rights, title, and interest in all of the Assets shall

25  be sold free and clear of any liens, security interests, claims, charges, or encumbrances

26

27  _____

28  [3] These lots include: (1) all Assets, (2) all Assets other than the Santa Ana real property, (3) the
    Santa Ana real property, or (4) any other combination of Assets.

1054191.10

1   pursuant to section 363 of the Bankruptcy Code.  The Debtors propose that any such

2   liens, security interests, claims, charges, or encumbrances shall attach to the amounts

3   payable to the Debtors' estates resulting from the Sale (the "Sale Proceeds"), in the same

4   order of priority and subject to the rights, claims, defenses, and objections, if any, of all

5   parties with respect thereto, subject to any existing or further order of the Court.

6           **B.     Proposed Bidding Procedures**

7           In order to ensure that the Debtors receive the maximum value for their Assets, the

8   Debtors will market their Assets and conduct a fair and open Auction subject to the

9   Bidding Procedures set forth as Exhibit 1 to the Bidding Procedures Order.  To the extent

10  that there are inconsistencies between the description of the Bidding Procedures below

11  and the terms of the Bidding Procedures, the terms of the Bidding Procedures shall

12  control.

13          **1.     Consultation Requirement**

14          During the sale process, the Debtors shall consult (the "Consultation Requirement")

15  with representatives of the Committee and Silver Point (the "DIP Agent" and, together with

16  the Committee, the "Consultation Parties"); provided that if the DIP Lenders (as defined in

17  the DIP Order) bid for the Assets, the Consultation Requirement as to the DIP Agent shall

18  not apply to the aspects of the sale process for which the Debtors and the Committee

19  determine that compliance with the Consultation Requirement would provide the DIP

20  Lenders with information that would unfairly benefit them as a potential bidder.

21          **2.     Stalking Horse Bidder**

22          In connection with the Sale, the Debtors, with the consent of the Committee and in

23  consultation with the DIP Agent, are authorized to enter into an asset purchase agreement

24  with a Stalking Horse Bidder with respect to all or a portion of the Assets (a "Stalking

25  Horse APA") not later than February 5, 2016.  In the event that the Debtors enter into one

26  or more Stalking Horse APAs, the Debtors will file with the Court and serve on the Notice

27  Parties (as defined below) a notice that includes the following:  (a) the identification of the

28

- 12 -

1054191.10

Stalking Horse Bidder(s); (b) a copy of the Stalking Horse APA(s); (c) the purchase price provided for in the applicable Stalking Horse APA (the "Stalking Horse Purchase Price"); (d) the deposit paid by the Stalking Horse Bidder; and (e) the amount of any Break-Up Fee and/or any Expense Reimbursement (as such terms are defined in the Bidding Procedures Order) being provided to the Stalking Horse Bidder in connection with the Stalking Horse APA.  Any Stalking Horse APA entered into by the Debtors shall be subject to higher or otherwise better offers or combinations of offers, as provided in the Bidding Procedures.  For the avoidance of doubt, the Debtors reserve the right to enter into multiple and/or separate Stalking Horse APAs, e.g., a Stalking Horse APA for their newspaper assets and a Stalking Horse APA for the Santa Ana real property.

### 3. Documentation Necessary for Potential Bidders to Conduct Due Diligence

In order to be qualified to receive any confidential information from the Debtors, an interested party (each, an "Interested Party") must submit each of the following to the Notice Parties on a timely basis:

(a)     An executed confidentiality agreement which shall inure to the benefit of the Debtors and may be assigned to the Successful Bidder (as defined below), in a form and substance satisfactory to the Debtors;

(b)     A statement demonstrating, to the Debtors' satisfaction, after consultation with the Consultation Parties, that the Interested Party has a bona fide interest in purchasing some or all of the Assets; and

(c)     Such other information with respect to an Interested Party's experience and financial wherewithal (which may include, but is not limited to, any cure and adequate assurance obligations as the case may be) as the Debtors (after consultation with the Consultation Parties) request, if any, which may include, but is not limited to, the internal corporate, legal or other authorizations to close a purchase transaction.

If the Debtors determine, after receipt of the items identified above and reasonable consultation with the Consultation Parties, that an Interested Party has a bona fide interest in purchasing the Assets and the financial wherewithal to do so, such Interested Party will

- 13 -

1054191.10

1    be deemed a "Potential Bidder."  As promptly as practicable after the Interested Party is

2    deemed to be a Potential Bidder, the Debtors will notify the Interested Party as to such

3    determination.

4                    **4.    Due Diligence**

5            The Debtors will afford any Potential Bidder such due diligence access or additional

6    information as the Debtors, in consultation with their advisors and after consultation with

7    the Consultation Parties, deem appropriate, in their business judgment.  Such information

8    shall be provided through the data room created by the Debtors to facilitate diligence

9    respecting the Assets by Potential Bidders (the "Data Room").  The Debtors shall

10   endeavor to provide all such information to all Potential Bidders concurrently by placing

11   the information in the Data Room and informing all Potential Bidders of the addition of the

12   information.  For any Potential Bidder who is a newspaper publisher or otherwise a

13   competitor of the Debtors or is affiliated with a newspaper publisher or other competitor of

14   the Debtors, the Debtors reserve the right to withhold any materials or information that the

15   Debtors determine is:  (i) sensitive or confidential business records, (ii) not appropriate for

16   disclosure to such a Potential Bidder, (iii) has not been made available to any other

17   newspaper publisher or competitor of the Debtors or affiliate thereof, and (iv) cannot be

18   reasonably redacted to remove any sensitive or confidential business information;

19   provided that the Debtors shall notify the Consultation Parties and the applicable Potential

20   Bidder of the determination to withhold such information and shall provide reasonable

21   detail as to the information withheld.  The due diligence period shall extend through and

22   include the Bid Deadline (as defined below).  Additional due diligence will not be provided

23   after the Bid Deadline unless such Potential Bidder has submitted a Qualified Bid.

24   / /

25   / /

26   / /

27   / /

28
                                        - 14 -

1054191.10

**5.    Provisions Governing Qualifications of Qualified Bids and Overbids**

A bid submitted with respect to all or any number or combination of the Assets will be considered a qualified bid only if the bid is submitted by a Potential Bidder and complies with all of the following (a "<u>Qualified Bid</u>"):

(a)    includes a proposed purchase agreement, including to the extent feasible all exhibits and schedules thereto (the "<u>Competing Purchase Agreement</u>"), duly authorized and executed by the Potential Bidder, along with a redlined, marked copy showing all changes between the Competing Purchase Agreement and (i) in the event a Stalking Horse Bidder has been selected, the Stalking Horse APA, or (ii) in the event no Stalking Horse Bidder has been selected, the Debtors' form of asset purchase agreement (the form of which will be posted in the Data Room) that provides the following:

(i)    (a) in the event that a Stalking Horse Bidder has been selected, subject to subparagraph 5(l) below, provides for consideration (the "<u>Competing Purchase Price</u>") that, in the business judgment of the Debtors after consultation with the Consultation Parties, individually, or together with one or more other bids that otherwise satisfy the requirements for a Qualified Bid and which do not seek to acquire materially overlapping Assets, exceeds the Stalking Horse Purchase Price, the Break-Up Fee and Expense Reimbursement (as provided in the Stalking Horse APA) by at least $250,000 (such amount, the "<u>Minimum Overbid</u>"); or (b) in the event that no Stalking Horse Bidder has been selected, provides the total cash consideration (excluding any amount attributed to the assumption of liabilities) to be paid for the Assets (the "<u>APA Purchase Price</u>");

(ii)    specifically disclaims any right of the Potential Bidder to receive a breakup fee or termination fee, and waives any claim to compensation under section 503(b) of the Bankruptcy Code for making a substantial contribution;

(iii)    identifies with particularity which liabilities, executory contracts and unexpired leases that have been identified to Potential Bidders through the diligence process the Potential Bidder would agree to assume (including, without limitation, any liabilities related to the Debtors' operations, pension plan and cure amounts);

(iv)    includes a contact person(s) for the proposed assignee that the applicable counterparty may directly contact in connection with adequate assurance of future performance issues; and

1054191.10

(v)    contains a proposed closing date that is not later than March 31, 2016;

(b)    includes a cashier's check made payable to the order of Freedom Communications, Inc., Debtor in Possession, or evidence of electronic funds transfer in accordance with instructions to be provided by the Debtors equal to 10% of the cash component of the Competing Purchase Price or the APA Purchase Price, as the case may be, which will be retained by the Debtors as a refundable deposit for application against the purchase price at the closing of the transaction, returned to the Potential Bidder, or forfeited to the Debtors as set forth below;

(c)    identifies the full legal name of the Potential Bidder (including any equity holders or other financial backers sponsoring or participating in connection with such bid);

(d)    provides that such offer remains open and irrevocable as follows (i) until the closing of the Sale if it is designated as the Successful Bid, (ii) until the Back-Up Expiration Date (as defined below) if it is designated as the Back-Up Bid (as defined below), and (iii) in all other cases, three (3) business days after conclusion of the Auction;

(e)    is accompanied by evidence establishing the Potential Bidder's ability to provide adequate assurance of future performance with respect to the executory contracts and unexpired leases identified in subparagraph (a)(iii) above.  If the Debtors conclude, exercising their business judgment, after consultation with the Consultation Parties, that the information establishing adequate assurance is not sufficient, then they may request specific additional information from the Potential Bidder in writing and the Potential Bidder shall have a reasonable period of time to supplement the information it provided to establish adequate assurance;

(f)    is accompanied by evidence establishing, based upon the Debtors' business judgment, after consultation with the Consultation Parties, that the Potential Bidder has the financial ability to pay, including through committed financing, or otherwise fulfill the conditions relating to, the Competing Purchase Price or the APA Purchase Price, as the case may be; such evidence shall include, but is not limited to, (i) current audited financial statements (to the extent they are otherwise prepared in the ordinary course of business) of (a) the Potential Bidder, or (b) if the Potential Bidder is an entity capitalized after the Petition Date for the purpose of acquiring the Assets, current audited financial statements of its equity holder(s) or their affiliate(s) (to the extent they are otherwise prepared in the ordinary course of business) who shall either guarantee the obligations of the Potential Bidder or provide such other form of financial disclosure and credit-quality support information or enhancement or (ii) documents evidencing committed financing for the Competing Purchase Price or APA Purchase Price, each as deemed reasonably acceptable after reasonable consultation among the Debtors and the Consultation Parties.  The Potential

- 16 -

Bidder may elect to only provide the information required under this subsection upon the execution of confidentiality agreement by the Debtors and Consultation Parties in favor of the Potential Bidder, its equity holders and its affiliates.  The form of confidentiality agreement shall be provided by the Debtors to any Potential Bidder upon request;

(g)     subject to subparagraph 5(l) below, in the event a Stalking Horse Bidder has been selected, contains terms and conditions that, taken as a whole, are higher or otherwise better than the terms and conditions of the Stalking Horse APA as determined by the Debtors using their business judgment, after consultation with the Consultation Parties;

(h)     is accompanied by evidence establishing, based upon the Debtors' business judgment, after consultation with the Consultation Parties, that (a) the Potential Bidder is capable and qualified, financially, legally and otherwise, of unconditionally performing all obligations under the Competing Purchase Agreement, and (b) all necessary internal, board, and shareholder approvals related to the submission, execution, delivery, and closing of the Competing Purchase Agreement, have been or can timely be obtained;

(i)     is not subject to any due diligence or financing contingencies of any kind, or any contingencies related to any internal or investment committee or similar approvals;

(j)     includes an acknowledgement and representation, in form and substance satisfactory to the Debtors, after consultation with the Consultation Parties, that the Potential Bidder:  (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Competing Purchase Agreement,

(k)     is received by each of the Notice Parties (as defined herein) prior to the Bid Deadline; and

(l)     Notwithstanding item subparagraphs 5(a)(iii) and 5(g) above, if a Stalking Horse Bidder is selected, a bid submitted by a Potential Bidder may still be deemed to be a Qualified Bid, if in the business judgment of the Debtors, after consultation with the Consultation Parties:  (a) such bid is for less than all of the Assets; and (b) the amount of such bid, when added to the Debtors' or the Committee's informal valuation of the Assets not being included in such bid, is equal to or greater than the Minimum Overbid.

- 17 -

1054191.10

1    The Stalking Horse Bidder, if any, and any Potential Bidder that timely submits a

2  Qualified Bid (an "Initial Overbid"), as set forth above, shall each be deemed a "Qualified

3  Overbidder" and may bid for all or a portion of the Assets at the Auction, and may modify

4  its bid in subsequent rounds to include or exclude Assets or liabilities and to modify other

5  terms of its bid, as it deems appropriate.  Any Potential Bidder that fails to submit a timely,

6  conforming Initial Overbid, as set forth above, shall be disqualified from bidding for the

7  Assets at the Auction.

8    Notwithstanding the requirements set forth above, the Debtors, in the exercise of

9  their business judgment, after consultation with the Consultation Parties, may consider, as

10  a single Qualified Bid, multiple bids for the Assets, a portion of the Assets, or some or all

11  of the Assets together with any other Assets of the Debtors such that, when taken

12  together in the aggregate, such bids would otherwise meet the standards for a single

13  Qualified Bid.  The Debtors may permit Potential Bidders who submitted such multiple

14  bids by the Bid Deadline but who were not identified as a component of a single Qualified

15  Bid consisting of such multiple bids and which otherwise satisfy the Qualified Bid criteria

16  set forth above, to participate in the Auction and to submit at the Auction higher or

17  otherwise better bids that in subsequent rounds of bidding may be considered, together

18  with other bids, as part of a single Qualifying Bid for overbid purposes.

19    All Qualified Bidders at the Auction shall be deemed to have consented to the

20  jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with

21  any disputes relating to the Auction and the construction and enforcement of any sale

22  transaction documents.

23    **6.    Bid Deadline**

24    A Potential Bidder that desires to make an Initial Overbid will deliver written copies

25  of its Qualified Bid to each of the following parties by electronic mail (collectively, the

26  "Notice Parties"): (i) Debtors' Independent Sales Representative, Robert P. Mosier, email:

27  rmosier@mosierco.com; (ii) counsel to the Debtors:  Lobel Weiland Golden Friedman LLP

28

- 18 -

1054191.10

1  (Attn:  William N. Lobel, Esq., facsimile:  (714) 966-1002, email: wlobel@lwgfllp.com and

2  Alan J. Friedman, Esq., facsimile:  (714) 966-1002, email: afriedman@lwgfllp.com),

3  (iii) investment banker for the Debtors, FTI Capital Advisors, LLC (Attn:  Christopher

4  Nicholls; facsimile:  (212) 499-3636, email: chris.nichols@fticonsulting.com and Michael

5  VanderLey; facsimile:  (415) 283-4277, email: mike.vanderley@fticonsulting.com),

6  (iv) counsel to the Committee:  Pachulski Stang Ziehl & Jones (Attn:  Robert J. Feinstein,

7  Esq., facsimile:  (212) 561-7777, email: rfeinstein@pszjlaw.com and Jeffrey W. Dulberg,

8  Esq., facsimile:  (310) 201-0760, email: jdulberg@pszjlaw.com), (v) financial advisor to the

9  Committee:  Alvarez and Marsal (Attn:  Brian Whittman, email BWhittman@alvarez

10  andmarsal.com), and (vi) counsel to the DIP Agent:  Munger, Tolles & Olson LLP (Attn:

11  Seth Goldman, Esq., facsimile:  (213) 687-3702, email: seth.goldman@mto.com), so as to

12  be received by no later than March 11, 2016, at 5:00 p.m. (prevailing Pacific Time) (the

13  "Bid Deadline").  Upon receipt by the Debtors of a bid from a Potential Bidder, the Debtors

14  shall timely, but no later than one (1) business day after the Bid Deadline, provide a

15  summary of such bids to (i) each Qualified Overbidder and to each of the other Notice

16  Parties.  The Debtors may, exercising their business judgment after consultation with the

17  Consultation Parties, extend the Bid Deadline.

18             **7.    Evaluation of Competing Bids**

19             In the event that there are competing bids for the Assets, a Qualified Bid will be

20  evaluated by the Debtors and the Consultation Parties based upon several factors

21  including, without limitation:  (i) the amount of the Competing Purchase Price, including

22  the liabilities being assumed, in the context of the Assets subject to the Qualified Bid,

23  (ii) the risks and timing associated with consummating such bid, (iii) the terms of the

24  Competing Purchase Agreement, (iv) to the extent applicable, the ability of the Qualified

25  Overbidder to obtain appropriate regulatory approvals, (v) the capitalization and adequate

26  assurance provided by the Potential Bidder with respect to its likely future performance

27  and satisfaction of any liabilities related to assumed executory contracts and unexpired

28

1054191.10

1   leases as well as any other assumed liabilities, including any pension related obligations,

2   and (vi) any other factors deemed relevant by the Debtors and the Consultation Parties in

3   the exercise of their respective business judgment.

4               **8.    No Competing Bid**

5         If a Stalking Horse Bidder is selected for all of the Debtors' assets and if no timely,

6   conforming Initial Overbid is received, the Debtors shall not conduct an Auction, and

7   following the Bid Deadline, the Stalking Horse Bidder will be named the Successful Bidder

8   and the Debtors shall request at the Sale Hearing that the Bankruptcy Court approve the

9   Debtors' entry into the Stalking Horse APA and consummation of the transactions

10  contemplated thereby, and request that the Sale Order be immediately effective upon

11  entry.

12              **9.    Auction Procedures**

13        If (i) a Stalking Horse Bidder is selected and one or more timely conforming Initial

14  Overbids is received, (ii) no Stalking Horse Bidder is selected but two or more timely

15  conforming Initial Overbids are received, or (iii) otherwise provided by the Bidding

16  Procedures, the Debtors will conduct the Auction on March 16, 2016, at 10:00 a.m.

17  (prevailing Pacific Time) (the "Auction Date"), at the offices of Lobel Weiland Golden

18  Friedman LLP, 650 Town Center Drive, Suite 950, Costa Mesa, California 92626, or at

19  such other location as shall be identified in a notice filed with the Bankruptcy Court at least

20  24 hours before the Auction, in which the Stalking Horse Bidder, if any, and all other

21  Qualified Overbidders may participate.  The Auction shall be governed by the following

22  procedures:

23              (a)    the Auction will be conducted openly and the actual identity of each
                       Qualified Overbidder will be disclosed on the record at the Auction;

24

25              (b)    only the Debtors, the Consultation Parties, the Stalking Horse
                       Bidder, if any, any other Qualified Overbidders, and their respective
                       counsel, financial advisors and representatives shall be permitted to
26                     attend, and all Qualified Overbidders wishing to attend the Auction
                       must have at least one individual representative with authority to bind
27                     such Qualified Overbidder attending the Auction in person;

28
                                    - 20 -

(c)     each Qualified Overbidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and that its Initial Overbid is a good faith bona fide offer and that it intends to consummate the proposed transaction if selected as the Successful Bidder;

(d)     at least one (1) business day prior to the Auction, each Qualified Overbidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Overbidder elects not to attend the Auction, such Qualified Overbidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Overbidder and such Qualified Overbidder may still be designated by the Debtors as the Leading Bid or the Back-Up Bidder.  Prior to the Auction, the Debtors will provide a summary of the Qualified Bid or combination of Qualified Bids which the Debtors believe, in their business judgment, after consultation with the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid") to each Potential Bidder that submitted a Qualifying Bid and to the Committee.  The Debtors, in consultation with the Consultation Parties may aggregate Initial Overbids from unaffiliated persons to create the Starting Bid; provided that all Qualified Overbidders shall remain subject to the provisions of 11 U.S.C.  § 363(n) regarding collusive bidding;

(e)     bidding will commence at the Starting Bid;

(f)     each subsequent bid shall be in increments of no less than $100,000 above the immediately preceding bid on the Assets, and the Debtors will evaluate each such bid after consultation with the Consultation Parties;

(g)     after the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or combination of bids that they believe to be the highest or otherwise best offer (the "Leading Bid").  A round of bidding will conclude after the Stalking Horse Bidder, if any, and each participating Qualified Overbidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid;

(h)     for the purpose of evaluating the value of the consideration provided by subsequent bids (including any subsequent bid by the Stalking Horse Bidder), the Debtors in consultation with the Consultation Parties will give effect to any additional liabilities to be assumed by a Qualified Overbidder or the Stalking Horse Bidder and any additional costs which may be imposed on the Debtors;

(i)     the Auction shall be conducted openly and each bidder will be informed of the terms of the previous bid or combination of bids determined by the Debtors in their business judgment, after consultation with the Consultation Parties, to have been the highest or otherwise best bid;

(j)     the Auction shall continue until, in the Debtors' business judgment, after consultation with the Consultation Parties, there is a highest or

- 21 -

otherwise best bid or combination of bids (collectively, the "Successful Bid" and the Stalking Horse Bidder or Qualified Overbidder (or group of bidders comprising the Qualified Overbidder) submitting the same, the "Successful Bidder");

(k)    the bidding at the Auction shall be transcribed; and

(l)    the Debtors shall have the right after consultation with the Consultation Parties to modify the procedures for the Auction, and to allow for bidding on only a portion of the Assets and not all of them, to modify bidding increments, waive terms and conditions with respect to any or all Potential Bidders (including, without limitation, the bidding requirements in paragraph 5 herein, and to adjourn the Auction one or more times for any reason, in a manner not inconsistent with the procedures set forth in subparagraphs (a) through (k) above or any bidding procedures order entered by the Bankruptcy Court, provided, however, (i) the procedures may not be modified and the Auction may not be adjourned until the then open round of bidding, if any, has concluded, (ii) notice of such modification or adjournment is given to all Potential Bidders continuing to participate in the Auction as well as the Consultation Parties, and (iii) if no bid or combination of bids is sufficient to repay the DIP Lenders in full in cash, the Debtors may not waive the requirement that all bids contain a proposed closing date that is not later than March 31, 2016 without the consent of the DIP Agent.

As used herein, the term "Successful Bidder's Purchase Agreement" shall mean, as applicable, the (i) Competing Purchase Agreement(s) of the Successful Bidder(s), if the Successful Bidder(s) are Qualified Overbidder(s) other than the Stalking Horse Bidder, or (ii) Stalking Horse APA, as it may be modified during the Auction pursuant to the procedures set forth in the immediately preceding paragraph, if the Stalking Horse Bidder is the Successful Bidder, in either case, as approved pursuant to the Sale Order.

## 10.    Selection of Successful Bidder; As-Is Where-Is

The determination of the Successful Bid and the Back-Up Bid (as defined below) by the Debtors, exercising their business judgment and in consultation with the Consultation Parties, at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.  Any Sale will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their agents or the Debtors' chapter 11 estates, except and solely to the extent expressly set forth in the Successful Bidder's Purchase Agreement.

1054191.10

1      Unless otherwise agreed to by the Debtors and the applicable Successful

2 Bidder(s), within two (2) business days after the conclusion of the Auction, the Successful

3 Bidder(s) shall complete and execute all agreements, contracts, instruments, and other

4 documents evidencing and containing the terms and conditions upon which the bid(s) of

5 the Successful Bidder(s) bid was made.  Within 24 hours after the conclusion of the

6 Auction (if any) (or, if no Auction is held because there were no other Qualified Bidders,

7 within 24 hours after a determination that the Stalking Horse Bidder is the Successful

8 Bidder in accordance with these Bidding Procedures), the Debtors shall file a notice

9 identifying the Successful Bidder(s) with the Bankruptcy Court and shall serve such notice

10 by fax, email, or overnight mail to all counterparties whose contracts are to be assumed

11 and assigned.

12      The Debtors and the Successful Bidder(s) will consummate the transactions

13 contemplated by the Purchase Agreement(s) submitted by the Successful Bidder(s),

14 pursuant to the terms and conditions thereof, upon the Bankruptcy Court's approval of

15 such Purchase Agreement(s) pursuant to the Sale Order.

16          **11.**    **Additional Deposits and Return of Deposits**

17      Within two (2) business days after the conclusion of the Auction, the Successful

18 Bidder(s) and Back-Up Bidder(s) shall increase their refundable deposits to 10% of the

19 cash component of the relevant Successful Bid or Back-Up Bid.  All deposits shall be

20 returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-

21 Up Bidder (as defined below) no later than five (5) business days following the conclusion

22 of the Auction.  The Successful Bidder's deposit will be credited towards the purchase

23 price at the closing under the Successful Bidder's Purchase Agreement.  The Back-Up

24 Bidder's deposit shall be returned to it no later than five (5) business days after the Back-

25 Up Expiration Date or, if the Back-Up Bidder is selected as the Successful Bidder and the

26 Debtors elect to consummate the Sale with the Back-Up Bidder, its deposit will be credited

27 towards the purchase price at the closing under the Back-Up Bid.

28

1054191.10

1    If the Successful Bidder fails to consummate the Sale because of a breach or

2  failure to perform on the part of the Successful Bidder, the Successful Bidder's deposit

3  shall be forfeited to the Debtors, and the Debtors shall have the right to seek any and all

4  other remedies and damages from the defaulting Successful Bidder.

5                    **12.    Back-Up Bidder**

6    The Qualified Overbidder(s) with the next highest or otherwise best Qualified Bid

7  (the "Back-Up Bid"), as determined by the Debtors in their business judgment after

8  consultation with the Consultation Parties shall be required to serve as back-up bidder(s)

9  (the "Back-Up Bidder(s)").  The identity of the Back-Up Bidder(s) and the amount and

10  material terms of the applicable Back-Up Bid shall be announced by the Debtors at the

11  conclusion of the Auction at the same time the Debtors announce the identity of the

12  Successful Bidder(s).  The Back-Up Bidder(s) shall be required to keep the applicable

13  Back-Up Bid open and irrevocable until the earlier of (i) the closing under the applicable

14  Successful Bidder's Purchase Agreement and (ii) 5:00 p.m.  (prevailing Pacific time) of the

15  first business day that is 60 days after the Auction Date (the "Back-Up Expiration Date").

16  If a Successful Bidder fails to consummate the approved sale because of a breach or

17  failure to perform on the part of such Successful Bidder, the Debtors in consultation with

18  the Consultation Parties shall have the right, but not the obligation, to accept the

19  applicable Back-Up Bidder's bid, in which case the Back-Up Bidder will be immediately

20  notified and deemed to be the Successful Bidder for all purposes under these Bidding

21  Procedures (and the Competing Purchase Agreement relating to the applicable Back-Up

22  Bid will be deemed to be the Successful Bidder's Purchase Agreement for all purposes

23  hereunder), and the Debtors will be authorized to consummate the Sale with the Back-Up

24  Bidder without further order of the Bankruptcy Court; provided, however, that any sale to a

25  Back-Up Bidder shall be consummated no later than the Back-Up Expiration Date.

26

27

28

1054191.10

### 13.    Credit Bid Rights

Subject to applicable law, the DIP Lenders shall have the right to use their allowed prepetition secured claims and postpetition secured claims, in all cases subject to section 363(k) of the Bankruptcy Code, to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Assets.  Notwithstanding anything to the contrary in these procedures, the DIP Lenders (i) shall be excused from compliance with Part II.B, II.D, and II.E of the Bidding Procedures, (ii) shall be deemed an Interested Party, Potential Bidder, and Qualified Overbidder, and (iii) may make a bid at the Auction (in any round) on all or any portion of the Assets without the requirement of submitting a Qualified Bid by the Bid Deadline or a bid in a prior round at the Auction; _provided_ that if no Auction with respect to the Assets would otherwise be conducted pursuant to the Bidding Procedures, then the DIP Lenders may make any bid on the Assets by no later than one (1) business day prior to the date scheduled for the Auction.  If the DIP Lenders submit any such bid for all or any portion of the Assets, the Debtors will conduct the Auction if there is a competing bid.

### 14.    Reservation of Rights

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify the Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders; adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing; provided that if no Successful Bid or combination of Successful Bids is sufficient to repay the DIP Lenders in full in cash, the Debtors may not agree to extend the deadline for closing any Successful Bid past March 31, 2016 without the consent of the DIP Agent.

1054191.10

1  The Debtors further reserve the right, in the exercise of their business judgment,

2  after consultation with the Consultation Parties, to terminate discussions with any or all

3  Potential Bidders at any time without specifying the reasons therefor.

4  **15.  Sale Hearing**

5  The Debtors will seek entry of the Sale Order from the Bankruptcy Court, approving

6  and authorizing the Sale to the Successful Bidder(s) in accordance with the Bidding

7  Procedures and pursuant to the terms and conditions set forth in the Successful Bidder's

8  Purchase Agreement, at the Sale Hearing to begin on or before March 21, 2016, which

9  date may not be continued without the consent of the Consultation Parties.

10  **C.  Notice of Sale Hearing**

11  As stated above, the Debtors request that this Court schedule the Sale Hearing for

12  March 21, 2016.  The Debtors propose that any objections to the Sale be filed and served

13  so as to be received no later than 9:00 a.m.  (prevailing Pacific Time) on date of the Sale

14  Hearing**,** and that any replies to objections to the Sale be heard at the Sale Hearing.

15  Failure to object to the relief requested in the Motion shall be deemed to be "consent" for

16  purposes of Bankruptcy Code section 363(f).

17  The Debtors also request that the Court approve the form of the Procedures

18  Notice, substantially in the form of <u>Exhibit 2</u> to the Bidding Procedures Order.  The

19  Debtors will serve a copy of the Procedures Notice on the Notice Parties, as well as the

20  following parties:  (i) the Office of the United States Trustee; (ii) any parties requesting

21  notices in these cases pursuant to Bankruptcy Rule 2002; and (iii) any entity that has

22  expressed a bona fide interest in acquiring the Assets in the six (6) months preceding the

23  date of this Motion (collectively with the parties specified in this paragraph, the

24  "<u>Procedures Notice Parties</u>").

25  The Debtors propose to serve the Procedures Notice within three (3) days following

26  entry of the Bidding Procedures Order, by first-class mail, postage prepaid on the

27  Procedures Notice Parties.  The proposed Procedures Notice provides that any party that

28

- 26 -

1  has not received a copy of the Motion or the Bidding Procedures Order that wishes to

2  obtain a copy of this Motion or the Bidding Procedures Order, including all exhibits

3  thereto, may contact the Debtors' claims and noticing agent, Donlin Recano & Company,

4  Inc., (i) at their website (www.donlinrecano.com/freedom) (ii) by phone at (212) 771-1128,

5  (iii) by email to claims@donlinrecano.com, or (iv) by written request to Donlin, Recano &

6  Company, Inc., Re: Freedom Communications, Inc., et al., 6201 15th Avenue, Brooklyn,

7  NY 11219.

8         The Debtors also proposed to publish the Publication Notice in in the Los Angeles

9  Times, the Orange County Register and the national edition of the Wall Street Journal

10 within three (3) days following entry of the Bidding Procedures Order.

11        The Debtors submit that the foregoing notices comply fully with Bankruptcy Rule

12 2002 and are reasonably calculated to provide timely and adequate notice of the Bidding

13 Procedures, the Auction and Sale, and the Sale Hearing to the Debtors' creditors and

14 other parties in interest, as well as to those who have expressed an interest, or those the

15 Debtors and their advisors believe are likely to express an interest, in bidding on the

16 Assets.  Based on the foregoing, the Debtors respectfully request that this Court approve

17 these proposed notice procedures.

18        **D.    Sale Hearing**

19        At the Sale Hearing, the Debtors will seek Court approval of the Sale to the

20 Successful Bidder(s), free and clear of all liens, claims, and encumbrances pursuant to

21 section 363 of the Bankruptcy Code, with all liens, claims, and encumbrances to attach to

22 the Sale Proceeds with the same validity and in the same order of priority as they

23 attached to the Assets prior to the Sale, including the assumption by the Debtors, and

24 assignment to the Successful Bidder, of certain executory contracts and unexpired leases

25 pursuant to section 365 of the Bankruptcy Code.  The Debtors will submit and present

26 additional evidence, as necessary, at the Sale Hearing demonstrating that the Sale is fair,

27 reasonable, and in the best interests of the Debtors' estates and all interested parties, and

28

1054191.10

1  that the Successful Bidder is entitled to the protections of section 363(m) of the

2  Bankruptcy Code.

3  **E.    Procedures for the Assumption and Assignment of Contracts**

4  The Debtors request the following procedures (the "Cure Procedures") for notifying

5  counterparties to executory contracts and unexpired leases of potential Cure Amounts (as

6  defined below) with respect to those executory contracts and unexpired leases that the

7  Debtors may seek to assume and assign on the Closing Date (the "Designated Executory

8  Contracts") (with the executory contracts and unexpired leases actually being assumed

9  and assigned pursuant to a Successful Bidder's Purchase Agreement to be identified and

10  the counterparties notified directly following the Auction, as set forth below).

11  Within seven (7) days of the entry of the Bidding Procedures Order, the Debtors will

12  file a notice of potential assumption, assignment, and/or transfer of the Designated

13  Executory Contracts listed therein, substantially in the form attached to the Bidding

14  Procedures Order as Exhibit 4 (the "Notice of Potential Assumption and Assignment"),

15  and serve such notice on all non-debtor parties to the Designated Executory Contracts

16  (the "Contract Notice Parties").

17  The Notice of Potential Assumption and Assignment shall identify the calculation of

18  the cure amounts, if any, that the Debtors believe must be paid to cure all defaults

19  outstanding under each Designated Executory Contract (the "Cure Amounts") as of such

20  date.  The Notice of Potential Assumption and Assignment shall set a deadline by which

21  the non-debtor party to a Designated Executory Contract may file an objection to the Cure

22  Amount or the assumption and assignment of such contract or lease.  In addition, if in

23  connection with the ongoing marketing process, the Debtors identify additional contracts

24  or leases that might be assumed by the Debtors and assigned to a prospective purchaser

25  that are not set forth in the original Notice of Potential Assumption and Assignment, the

26  Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Potential

27

28

1054191.10

Assumption and Assignment") to the applicable counterparties to such additional contracts and/or leases and they shall be Designated Executory Contracts.

The Debtors request that this Court set the deadline to object to any Cure Amount or the assumption and assignment of any Designated Executory Contract as five (5) days prior to the Auction; provided, however, that the Debtors propose that any objection solely as it relates to whether a Successful Bidder can provide adequate assurance of future performance may be raised up until the time of the Sale Hearing. The Notice of Potential Assumption and Assignment and any Supplemental Notice of Potential Assumption and Assignment shall also provide that objections to any Cure Amount or the assumption and assignment of any Designated Executory Contract will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors subject to the Court's calendar.

Within 24 hours after the conclusion of the Auction, the Debtors shall file a notice identifying the Successful Bidder(s) with the Bankruptcy Court and shall serve such notice by fax, email, or overnight mail to all counterparties whose Designated Executory Contracts are to be assumed and assigned pursuant to the Successful Bidder(s)' Purchase Agreement.

At the Sale Hearing, the Debtors and/or the Successful Bidder(s) shall (i) present evidence necessary to demonstrate adequate assurance of future performance by any Successful Bidder and (ii) request entry of an order requesting approval of the assumption and assignment of any or all Designated Executory Contracts to be assumed and assigned on the Closing Date to any Successful Bidder.

**F.    Procedures for the Designation of a Stalking Horse Bidder(s) Prior to Auction and Authority to Grant Stalking Horse Protections**

While there was not an agreement in place prior to the filing of this Motion, the Debtors intend to solicit "stalking horse" bids for the Assets prior to the Auction from Potential Bidders (any such bid, a "Stalking Horse Bid"). Recognizing such party's expenditure of time, energy and resources, and that a Stalking Horse Bid provides a floor

1054191.10

1  bid with respect to the Assets that it offers to purchase, the Debtors propose that they

2  should have the ability, but not the obligation, to provide certain bidding protections to a

3  Potential Bidder, if any, selected as a stalking horse bidder (a "Stalking Horse Bidder") by

4  the Debtors in their business judgment, and in consultation with the Consultation Parties.

5      The Debtors may agree to pay a Stalking Horse Bidder a break-up fee of up to

6  2.5% of the cash consideration offered by such Stalking Horse Bidder (the "Break-Up

7  Fee") and an expense reimbursement in an amount not to exceed $200,000 (the

8  "Expense Reimbursement" and, together with the Break-Up Fee, the "Stalking Horse

9  Protections").  Any such Stalking Horse Protections would be paid in the event that:  (i) the

10 Stalking Horse Bidder is not approved by the Bankruptcy Court as the purchaser of the

11 Assets on which it bid, (ii) the Stalking Horse Bidder is not in default of its obligations

12 under its purchase agreement with the Debtors, and (iii) the Assets on which the Stalking

13 Horse Bidder bid are thereafter sold to a Successful Bidder(s) at the Auction for

14 consideration in excess of the purchase price provided for in the Stalking Horse Bidder's

15 purchase agreement notwithstanding the Stalking Horse Bidder's willingness and ability to

16 consummate the transactions contemplated by its purchase agreement, which payment

17 shall be made to the Stalking Horse Bidder promptly following closing with the Successful

18 Purchaser(s) of the Assets on which the Stalking Horse Bidder bid.  The Stalking Horse

19 Protections, if payable, will be the sole and exclusive remedy of a Stalking Horse Bidder if

20 the applicable Stalking Horse Bidder's purchase agreement is not consummated.

21     In the event a Stalking Horse Bidder is designated by the Debtors, in consultation

22 with the Consultation Parties, any bid(s) submitted by a Potential Bidder other than the

23 Stalking Horse Bidder (individually, or together with one or more bids that otherwise

24 satisfy the requirements for a Qualified Bid and which do not seek to acquire materially

25 overlapping assets) must be in an amount that is sufficient to pay the Stalking Horse

26 Protections and result in additional consideration to the Debtors' estates (as compared to

27

28

1054191.10

the purchase price offered by such Stalking Horse Bidder), after payment of the Stalking

Horse Protections, by at least $250,000.

## VI.    LEGAL BASIS FOR RELIEF REQUESTED

### A.    The Bidding Procedures Are Appropriate and Will Maximize the Value Received for the Assets

Courts have made clear that a debtor's business judgment is entitled to substantial

deference with respect to the procedures to be used in selling assets of the estate.  See

e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.  (In re

Integrated Resources, Inc.), 147 B.R.  650, 656-57 (S.D.N.Y.  1992), *appeal dismissed,* 3

F.3d 49 (2d Cir. 1993) (noting that bidding procedures that have been negotiated by a

debtor are to be reviewed according to the deferential "business judgment" standard,

under which such procedures and arrangements are "presumptively valid"); In re 995 Fifth

Ave., Assocs., L.P., 96 B.R.  24, 28 (Bankr.  S.D.N.Y.  1989) (holding that the business

judgment standard protects such provisions negotiated in good faith).

The paramount goal in any proposed sale of property of the estate is to maximize

the proceeds received by the estate.  See, e.g., Integrated Resources, 147 B.R. at 659 ("It

is a well-established principle of bankruptcy law that the .  .  .  [debtors'] duty with respect

to such sales is to obtain the highest price or greatest overall benefit possible for the

estate.") (quoting Cello Bag Co.  Inc. v. Champion Int'l Corp.  (In re Atlanta Packaging

Prods., Inc.), 99 B.R.  124, 131 (Bankr.  N.D.  Ga.  1988)); see also Four B. Corp. v. Food

Barn Stores, Inc.  (In re Food Barn Stores, Inc.), 107 F.3d 558, 564–65 (8th Cir. 1997) (in

bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate

at hand").  To that end, courts recognize that procedures intended to enhance competitive

bidding are consistent with the goal of maximizing the value received by the estate and

therefore are appropriate in the context of bankruptcy sales.  Integrated Resources, 147

B.R. at 659 (such procedures "encourage bidding and [to] maximize the value of the

debtor's assets.").

1054191.10

1   The Debtors believe that the Bidding Procedures proposed herein will establish the

2   parameters under which the value of their Assets may be tested at the Auction and

3   through the ensuing Sale Hearing.  Such procedures will increase the likelihood that the

4   Debtors' creditors will receive the greatest possible consideration for the Assets because

5   they will ensure a competitive and fair bidding process.  They also allow the Debtors to

6   undertake the Auction in as expeditious and efficient manner as possible, which the

7   Debtors believe is essential to maximizing the value of their estates for their creditors.

8   The Debtors also believe the proposed Bidding Procedures will promote active

9   bidding from seriously interested parties and will dispel any doubt as to the highest or

10   otherwise best offer reasonably available for their Assets.  In particular, the proposed

11   Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair and

12   open fashion that will encourage participation by financially capable bidders who

13   demonstrate the ability to close a transaction.

14   In sum, the Debtors believe the Bidding Procedures – which were negotiated with

15   the Consultation Parties and Mr.  Mosier prior to the filing of this Motion – will encourage

16   bidding for the Assets and are consistent with the relevant standards governing auctions

17   and bidding procedures in bankruptcy proceedings.  Accordingly, the proposed Bidding

18   Procedures are reasonable, appropriate, within the Debtors' sound business judgment

19   and should be approved.

20   **B.     The Debtor's Ability to Grant Stalking Horse Protections is Appropriate**

21   **Under the Circumstances**

22

23   By the Motion, the Debtors seek the authority, but not the obligation, with the

consent of the Committee and in consultation with the DIP Agent, to be able to provide the

24   Stalking Horse Protections to a potential Stalking Horse Bidder.  The Stalking Horse

25   Protections proposed by the Debtors consist of (i) a Break-Up Fee of up to 2.5% of the

26   cash component of a proposed Stalking Horse Bid, and (ii) an Expense Reimbursement

27   not to exceed the amount of $200,000.

28

- 32 -

1    The Debtors submit that the proposed Stalking Horse Protections are a normal,

2 and oftentimes necessary, component of sales outside the ordinary course of business

3 under section 363 of the Bankruptcy Code.  In particular, such protections encourage a

4 potential purchaser to invest the requisite time, money, and effort to conduct due diligence

5 and sale negotiations with a debtor despite the inherent risks and uncertainties of the

6 chapter 11 process.  See, e.g., Integrated Resources, 147 B.R. at 660 (noting that fees

7 may be legitimately necessary to convince a "white knight" to offer an initial bid by

8 providing some form of compensation for the expenses such bidder incurs and the risks

9 such bidder faces by having its offer held open, subject to higher and better offers); In re

10 Hupp Indus., 140 B.R.  191, 194 (Bankr.  N.D.  Ohio 1997) (without any reimbursement,

11 "bidders would be reluctant to make an initial bid for fear that their first bid will be shopped

12 around for a higher bid from another bidder who would capitalize on the initial bidder's . .

13 due diligence"); In re Marrose Corp., 1992 WL 33848, at *5 (Bankr.  S.D.N.Y.  Feb.  15,

14 1992) (stating that "agreements to provide reimbursement of fees and expenses are

15 meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse'

16 which attracts more favorable offers"); 995 Fifth Ave.  Assocs., 96 B.R. at 28 (finding that

17 bidding incentives may be "legitimately necessary to convince a white knight to enter the

18 bidding by providing some form of compensation for the risks it is undertaking") (citations

19 omitted).

20    In this case, a Stalking Horse Bidder was not in place prior to the filing of this

21 Motion.  The Debtors, however, believed that it was important to file the Motion

22 notwithstanding the lack of a formal Stalking Horse Bid in order to allow for Interested

23 Parties to have the greatest amount of time to conduct due diligence prior to the Auction,

24 in light of the proposed closing deadline of March 31, 2016.  The Debtors intend to

25 continue to seek a Stalking Horse Bid in connection with the Auction and believe that it is

26 necessary and appropriate to have the authority (but not the requirement) to be able to

27

28

1054191.10

1  offer to a potential Stalking Horse Bidder industry-standard protections for taking on such
2  a role.

3      Bid protections, similar to the Stalking Horse Protections sought to be approved
4  by this Motion, have been approved in numerous other chapter 11 cases, and termination
5  or break-up fees in the range of approximately 3% of the purchase price are typically
6  approved.  See Bidermann Indus.  U.S.A., Inc., 203 B.R.  547, 552 (Bankr.  S.D.N.Y.
7  1997) (criticizing a break-up fee equal to 4.4%); Integrated Resources, 147 B.R. at 654
8  ("average break-up fee in the industry is 3.3%").

9      While there is no binding authority in the Ninth Circuit as to the appropriate test to
10  be utilized in determining whether to approve a proposed bidding incentive, such as the
11  proposed Stalking Horse Protections, three levels of scrutiny have been applied by courts
12  in different jurisdictions, lending guidance on this issue.

13      Many courts, including those in the Southern District of New York, utilize the
14  "business judgment" standard of review.  Under this standard, a break-up fee negotiated
15  by the debtor in good faith and with due care is presumptively valid.  A court will approve
16  bidding incentives where there is no evidence of self-dealing or manipulation, the amounts
17  are reasonable in comparison to the purchase price, and the fee encourages, rather than
18  chills, competitive bidding.  See e.g., Bidermann Indus.  U.S.A., Inc., 203 B.R. at 552;
19  Integrated Resources, 147 B.R. at 657.

20      Other courts (including a bankruptcy court out of Arizona), have held that a break-
21  up fee should be approved when it is in the best interests of the estate.  Under this
22  approach, the court will not simply defer to a debtor's business judgment, but will approve
23  bidding incentives if they are not unduly burdensome and serve the best interests of the
24  estate and its stakeholders.  See In re America West Airlines, Inc., 166 B.R.  908 (Bankr.
25  D. Ariz.  1994); In re S.N.A.  Nut Co., 186 B.R.  98, 104 (Bankr.  N.D.  Ill.  1995).

26      Other courts, most particularly the Third Circuit, have adopted a third
27  "administrative expense" approach, which requires that the bidding incentive provide

28

- 34 -

1  some benefit to the debtor's estate.  Calpine Corp. v. O'Brien Envtl.  Energy, Inc.  (In re

2  O'Brien Envtl.  Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999) (holding that, even though

3  bidding incentives are measured against a business judgment standard in non-bankruptcy

4  transactions, the administrative expense provisions of Bankruptcy Code section 503(b)

5  govern in the bankruptcy context).  See also Hupp Indus., 140 B.R.  191.  In O'Brien, the

6  Third Circuit identified at least two instances in which bidding incentives may provide

7  benefit to the estate.  First, the benefit may be found if "assurance of a break-up fee

8  promoted more competitive bidding, such as by inducing a bid that otherwise would not

9  have been made and without which bidding would have been limited."  Id. at 537.

10  Second, where the availability of bidding incentives induces a bidder to research the value

11  of the debtors and submit a bid that serves as a minimum or floor bid on which other

12  bidders can rely, "the bidder may have provided a benefit to the estate by increasing the

13  likelihood that the price at which the debtor is sold will reflect its true worth."  Id.

14       Whether evaluated under the "business judgment," "best interests of the estate" or

15  the "administrative expense" standard, the Debtors believe that the Stalking Horse

16  Protections pass muster and will create a competitive bidding process that benefits, and is

17  in the best interests of, the estates.

18       First, the Break-Up Fee is designed to induce a Stalking Horse Bidder to submit a

19  bid that will serve as a minimum floor bid upon which other bidders may rely.  In such

20  event, the Stalking Horse Bidder would be providing a material benefit to the Debtors,

21  their estates, and their respective stakeholders by encouraging bidding and increasing the

22  likelihood that the best possible price for the Assets will be received.

23       Second, the Debtors believe that the proposed Expense Reimbursement is fair and

24  is designed to reasonably compensate a Stalking Horse Bidder for its diligence and actual

25  out-of-pocket professional fees incurred in negotiating the terms of a stalking horse

26  agreement on an expedited timeline, all of which benefit the Debtors' estates.

27

28
                                    - 35 -

1054191.10

1    Third, the Debtors do not believe the Stalking Horse Protections, if granted to a

2   Stalking Horse Bidder, will have a chilling effect on the sale process.  Rather, the

3   existence of a Stalking Horse Bidder increases the likelihood that the best possible price

4   for the Assets will be received by permitting other Qualified Bidders to rely on the

5   diligence performed by the Stalking Horse Bidder, and moreover, by allowing Qualified

6   Bidders to utilize a Stalking Horse Bidders' purchase agreement as a platform for

7   negotiations and modifications in the context of a competitive bidding process.

8    Finally, the proposed Stalking Horse Protections will be subject to the caps set forth

9   herein and will be the result of arms-length negotiations between and among the Debtors

10  (under the steerage of Mr.  Mosier), the Consultation Parties and the Stalking Horse

11  Bidder, with each side being represented by separate, independent counsel.[4]

12   In sum, the Debtors' ability to grant the Stalking Horse Protections is reasonable

13  under the circumstances and will enable the Debtors to maximize the value for their

14  Assets while limiting any chilling effect on the sale process.

15  **C.   The Sale of Assets is Authorized by Section 363 as a Sound Exercise**

16  **of the Debtors' Business Judgment and is in the Best Interests of the**

17  **Debtors, their Estates and Creditors**

18   In accordance with Bankruptcy Rule 6004, sales of property rights outside the

19
20  ordinary course of business may be conducted by private sale or public auction.  In these

21  cases, the Debtors have determined that the Sale of their Assets by public auction will

22

23

24

25  [4] As discussed below, it is possible that the Debtors' current management could have an interest in an
    entity selected as a Stalking Horse Bidder.  In such event, the transaction could be considered an "insider"
    transaction and therefore subject to heightened scrutiny.  However, because the proposed Stalking Horse
26  Protections would be the result of arms-length negotiations with the involvement of the Consultation Parties
    and Mr. Mosier as an independent sales representative acting on behalf of the Debtors, are well within the
27  bounds of reasonable bidding incentives typically approved in bankruptcy cases, and would be entered into
    in good faith and for the benefit the Debtors' estates, the Debtors believe that the Stalking Horse Protections
28  meet any heightened scrutiny applicable to insider transactions.

- 36 -

1  enable them to obtain the highest or otherwise best offer for their Assets (thereby

2  maximizing the value of their estates) and is in the best interests of their stakeholders.

3      Section 363 of the Bankruptcy Code provides that a trustee, "after notice and a

4  hearing, may use, sell, or lease, other than in the ordinary course of business, property of

5  the estate." 11 U.S.C. § 363(b).  In considering a proposed sale, courts look at whether

6  the sale is in the best interests of the estate based on the facts and the history of the

7  case.  In re American West Airlines, 166 B.R.  908, 912 (Bankr.  D. Ariz.  1994) (citing

8  Committee of Equity Sec.  Holders v. Lionel Corp.  (In re Lionel Corp.), 722 F.2d 1063,

9  1070 (2d Cir. 1983)).  This requires an examination of the "business justification" for the

10 proposed sale.  In re 240 North Brand Partners, Ltd., 200 B.R.  653 (B.A.P.  9th Cir.

11 1996); In re Wilde Horse Enterprises, Inc., 136 B.R.  830 (Bankr.  C.D.  Cal. 1991); In re

12 Ernst Home Center, Inc., 209 B.R.  974 (Bankr.  W.D.  Wash.  1997).  The trustee or

13 debtor-in-possession has "broad power" under section 363 to sell property of an estate,

14 and indicates that "the manner of sale is within the discretion of the trustee …." In re The

15 Canyon Partnership, 55 B.R.  520, 524 (Bankr.  S.D.  Cal. 1985).  See also, Meyers v.

16 Martin (In re Martin), 91 F.3d 289, 295 (3d Cir. 1996); In re Abbotts Dairies of

17 Pennsylvania, Inc., 788 P.2d 143 (2d Cir. 1986); Official Committee of Unsecured

18 Creditors v. The LTV Corp.  (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992).

19     The paramount goal in any proposed sale of property of the estate is to maximize

20 the proceeds received by the estate.  See e.g., Food Barn Stores, 107 F.3d at 564-65 (in

21 bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate

22 at hand"); Integrated Resources, 147 B.R. at 659 ("It is a well-established principle of

23 bankruptcy law that the . . .  [trustee's] duty with respect to such sales is to obtain the

24 highest price or greatest overall benefit possible for the estate.") (quoting Cello Bag Co.

25 Inc. v. Champion Int'l Corp.  (In re Atlanta Packaging Prods., Inc.), 99 B.R.  124, 130

26 (Bankr.  N.D.  Ga.  1988)); 995 Fifth Ave., Assocs., 96 B.R. at 28.  As long as the sale

27 appears to enhance a debtor's estate, court approval of a trustee's decision to sell should

28

1054191.10

1  only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary

2  to the provisions of the Bankruptcy Code.  In re Lajijani, 325 B.R.  282, 289 (B.A.P.  9th

3  Cir. 2005); GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd., 331 B.R.  251, 255 (N.D.

4  Tex.  2005); In re WPRV-TV, Inc., 143 B.R.  315, 319 (D.P.R.  1991) ("The trustee has

5  ample discretion to administer the estate, including authority to conduct public or private

6  sales of estate property.  Courts have much discretion on whether to approve proposed

7  sales, but the trustee's business judgment is subject to great judicial deference.").

8         The Debtors and their advisors have engaged, and will continue to engage, in a

9  robust marketing and sale process directed at generating significant interest in the

10  Debtors' Assets to maximize the value to the Debtors' estates.  Based on ongoing

11  discussions in connection with this process, the Debtors believe that it is possible that,

12  among other Interested Parties, an entity in which the Debtors' management holds an

13  interest may seek to be a Potential Bidder (or a potential Stalking Horse Bidder) for the

14  Assets, resulting in the transaction potentially being considered an "insider" transaction.

15  Even in such event, however, bankruptcy courts have recognized that the sale of a

16  debtor's assets to an insider is not *per se* prohibited, although the transaction may be

17  subject to heightened scrutiny.  See e.g., In re Med.  Software Solutions, 286 B.R.  431,

18  445 (Bankr.  D. Utah 2002) (holding that under Section 363(b) when transactions benefit

19  insiders, "the purchaser [of the asset] has a heightened responsibility to show that the sale

20  is proposed in good faith and for fair value"); Bidermann Indus., 203 B.R. at 551 ("[S]ales

21  to fiduciaries in chapter 11 cases are not per se prohibited, 'but [they] are necessarily

22  subject to heightened scrutiny because they are rife with the possibility of abuse.'"); In re

23  Summit Global Logistics, Inc., 2008 WL 819934, at *9 (Bankr.  D.N.J.  Mar.  26, 2008); C

24  & J Clark Am.  Inc. v. Carol Ruth Inc.  (In re Wingspread Corp.), 92 B.R.  87 (Bankr.

25  S.D.N.Y.  1988) (sale to insider will not be approved if transaction is fraught with fraud or

26  impropriety).

27

28
                                          - 38 -

1054191.10

1    Here, even applying a heightened standard of scrutiny under section 363 should an

2  insider group be the Successful Bidder in these cases, the proposed Sale of the Assets

3  should be approved.

4    As a preliminary matter, as set forth in the Dahl, Mosier and FTI Declarations filed

5  in support of the Motion, the Debtors, with the assistance of their advisors, conducted a

6  review of the Debtors' strategic alternatives, including an exploration of possible

7  refinancing, restructuring, or sale options and determined that the proposed Sale of their

8  business through a 363 sale process governed by the Bidding Procedures would

9  maximize the value of their estates and is in the best interests of their stakeholders.  Such

10  approach has the support of the Debtors' primary secured creditors and the Committee.

11  Thus, the Sale is supported by good business reasons.

12    Further, the fairness and reasonableness of the consideration to be paid by the

13  ultimate purchaser(s) will be demonstrated by adequate "market exposure" and an open

14  and fair auction process – the best means for establishing whether a fair and reasonable

15  price is being paid.  In order to ensure a fair auction process, until completion of the

16  Auction, the Debtors are permitted to initiate contact with, solicit, or encourage submission

17  of any inquiries, proposals, or offers by any person or entity in connection with any sale or

18  other disposition of the Assets, and interested parties will be afforded a full and fair

19  opportunity to conduct due diligence in connection therewith.

20    Moreover, Mr.  Mosier is in place to act as an independent sales representative on

21  behalf of the Debtors in all aspects of the Sale, and the process contemplates the active

22  involvement of the Consultation Parties to evaluate the fairness and propriety of the Sale

23  and the process, ensuring that the terms thereof are fair and reasonable, and that all

24  parties have been afforded a fair chance to participate in the process.

25    Accordingly, the Debtors believe that the Sale of the Assets to the Successful

26  Bidder, whether to an insider group or not, should be approved.

27

28
                                    - 39 -

1054191.10

**D.    The Sale of the Assets Free and Clear of Liens, Claims and Other Interests is Authorized by Section 363(f)**

Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

> (1)   applicable nonbankruptcy law permits sale of such property free and clear of such interests;
> (2)   such entity consents;
> (3)   such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
> (4)   such interest is in bona fide dispute; or
> (5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C.  § 105(a).

Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests.  See e.g., Michigan Employment Sec.  Comm'n v.  Wolverine Radio Co.  (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (section 363(f) of the Bankruptcy Code is written in the disjunctive, thus a court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met); Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (Bankr.  E.D.  Pa.  1988) (because section 363(f) is written in the disjunctive, a court may approve a "free and clear" sale even if only one of the subsections is met); In re Bygaph, Inc., 56 B.R.  596, 606 n.8 (Bankr.  S.D.N.Y.  1986) (same).

The Debtors believe that one or more of the tests of section 363(f) will be satisfied with respect to the Sale of the Assets.  In particular, the Debtors believe that section 363(f)(2) will be met because each of the parties holding liens on the Assets will consent

- 40 -

1   or, absent any objection to this Motion, will be deemed to have consented to the Sale.

2   See e.g., Futuresource LLC v. Reuters Ltd., 312 F.3d 281, 285-86 (7th Cir. 2002); Elliot,

3   94 B.R. at 345 (failure to object constitutes deemed consent under section 363(f)(2)).

4       Further, the Debtors believe that they will meet, among others, the test set forth in

5   section 363 (f)(5) of the Bankruptcy Code.  Any parties in interest that assert liens, claims,

6   encumbrances or other interests in, to or against the acquired Assets, will be adequately

7   protected by having their liens, if any, attach to the Sale Proceeds, in the same order of

8   priority, with the same validity, force and effect that such parties had prior to the Sale,

9   subject to any claims and defenses that the Debtors and their estates may possess with

10  respect thereto.

11      The Debtors are aware of the Ninth Circuit Bankruptcy Appellate Panel's decision

12  in Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R.  25 (B.A.P.  9th Cir.

13  2008) as it relates to 363 free and clear sales over the objection of a junior lienholder who

14  will not be paid in full from the sale of its collateral.  While this decision has been roundly

15  criticized and, indeed, has not been followed by the majority of subsequent decisions, the

16  Debtors submit that, even if Clear Channel were applicable, a free and clear sale order is

17  appropriate under section 363(f)(5), as there is an existence of a qualifying procedure

18  under nonbankruptcy law that would enable the Debtors to strip junior liens from their

19  property (i.e., the Debtors' prepetition default under the senior Silver Point loan and the

20  pending foreclosure proceedings with respect thereto).  Accordingly, even under an

21  application of Clear Channel, a free and clear sale order to the Successful Bidder(s) is

22  appropriate and warranted.  See also In re Jolan Inc., 403 B.R.  866, 867 (Bankr.  W.D.

23  Wash.  2009) (a sale free and clear of a junior lien is authorized under section 363(f)(5)

24  where there is a qualifying proceeding, such as a foreclosure proceeding, pursuant to

25  which the junior lienholder could be compelled to accept less than full payment of its

26  debt).

27

28
                                    - 41 -

1054191.10

1    Accordingly, section 363(f) of the Bankruptcy Code authorizes the transfer and

2  conveyance of the Assets free and clear of all liens, claims, encumbrances and all other

3  interests, including rights or claims based on any taxes or successor or transferee liability.

4    The Debtors submit that it is appropriate to sell the Assets free and clear of

5  successor liability relating to the Debtors' businesses.  Such a provision ensures that a

6  Successful Bidder is protected from any claims or lawsuits premised on the theory that the

7  Successful Bidder is a successor in interest to one or more of the Debtors.  Courts have

8  consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes

9  free from successor liability relating to the debtor's business.  See e.g., In re Trans World

10  Airlines, Inc., 322 F.3d 283, 288–89 (3d Cir. 2003) (sale of assets pursuant to section

11  363(f) barred successor liability claims for employment discrimination and rights under

12  travel voucher program); In re Leckie Smokeless Coal Co., 99 F.3d 573, 585 (4th Cir.

13  1996) (affirming the sale of debtors' assets free and clear of certain taxes); In re General

14  Motors Corp., 407 B.R.  463, 505-06 (Bankr.  S.D.N.Y.  2009) (holding that "the Court will

15  permit GM's assets to pass to the purchaser free and clear of successor liability claims,

16  and in that connection, will issue the requested findings and associated injunction."); In re

17  Chrysler LLC, 405 B.R.  84, 111 (Bankr.  S.D.N.Y.  2009) ("in personam claims, including

18  any potential state successor or transferee liability claims against New Chrysler, as well

19  as in rem interests, are encompassed by section 363(f) and are therefore extinguished by

20  the Sale Transaction."); see also WBQ P'ship v. Commonwealth of Virginia Dep 't of

21  Medical Assistant Servs., 189 B.R.  97, 103 (Bankr.  E.D.  Va.  1995) (approving sale of

22  debtor's assets under section 363(f) and precluded governmental entity from collecting

23  depreciation recapture arising from such sale from the purchaser); P.K.R.  Convalescent

24  Ctrs., Inc. v. Commonwealth of Virginia, Dep't of Medical Assistance Serv.  (In re P.K.R.

25  Convalescent Ctrs., Inc.), 189 B.R.  90, 94 (Bankr.  E.D.  Va.  1995) (same); Am.  Living

26  Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.), 56 B.R.  186, 189-90 (Bankr.  N.D.  Ga.

27  1986) (sale pursuant to section 363(f) barred successor liability for product defect claims),

28

- 42 -

1  *aff'd,* 805 F.2d 1515 (11th Cir. 1986); Rubinstein v. Alaska Pac. Consortium (In re New

2  England Fish Co.), 19 B.R. 323, 328 (Bankr. W.D. Wash. 1982) (sale pursuant to

3  section 363(f) was free and clear of successor liability claims for employment

4  discrimination and civil rights violations).

5      The purpose of an order purporting to authorize the transfer of assets free and

6  clear of all liens, claims, encumbrances and all other interests would be frustrated if

7  claimants could thereafter use the transfer as a basis to assert claims against a purchaser

8  arising from a seller's pre-sale conduct. Moreover, without such assurances, the Debtors

9  would run the risk that potential bidders may not enter the Auction or, if they did, would do

10 so with reduced bid amounts. To that end, a Successful Bidder should not be liable under

11 any theory of successor liability relating to the Debtors' businesses, but should hold the

12 purchased Assets free and clear.

13     **E.      The Proposed Notice of Bidding Procedures and Auction Is**

14             **Appropriate**

15     The Debtors believe that they will obtain the maximum recovery for their estates if

16 their Assets are sold through a well-advertised sale and auction. As set forth in the FTI

17 Declaration, the Debtors have already taken significant steps to identify potential

18 purchasers, including developing a list of strategic buyers, companies with operations in

19 the newspaper industry and financial investors who have or may have an interest in

20 investing the newspaper industry and/or in the other Assets of the Debtors. The Debtors

21 and their advisors have undertaken the process of contacting such potential buyers

22 regarding the transaction, putting appropriate confidentiality provisions in place, and

23 providing relevant transaction related information. In this regard, the Debtors have

24 established the Data Room to provide Potential Bidders with due diligence access and

25 additional information relevant to the Assets and the Auction, and Potential Bidders in

26 contact with the Debtors have been provided with access to the Data Room to ensure an

27 open marketing and sale process with the greatest amount of exposure.

28
                                       - 43 -

Under Bankruptcy Rules 2002(a) and (c), the Debtors are required to notify creditors of a proposed sale of their assets, including disclosure of the time and place of an auction, the terms and conditions of the sale, and the deadline for filing any objections thereto.  The Debtors submit that the proposed notice procedures herein, including the Procedures Notice and the Publication Notice, comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the sale by auction to the Debtors' creditors and other interested parties, as well as to those parties who have expressed an interest, or may express an interest, in bidding on the Assets. The proposed time frame between the filing of this Motion, the commencement of the bidding process, and the Auction should provide interested purchasers ample time to participate in the Auction to be held on March 16, 2016.

**F.      Assumption and Assignment of Certain Executory Contracts and Unexpired Lease**

Section 365(a) of the Bankruptcy Code provides that, subject to the court's approval, a trustee "may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a).  Upon finding that a trustee has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code.  See In re Am.  Suzuki Motor Corp., 494 B.R.  466 (Bankr.  C.D.  Cal. 2013) (Whether to assume or reject an executory contract is generally left to the business judgment of the trustee or debtor-in-possession).  See also Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.), 78 F.3d 18, 25 (2d Cir. 1996); Orion Pictures Corp. v. Showtime Networks, Inc.  (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993).

Pursuant to section 365(f)(2) of the Bankruptcy Code, a trustee may assign an executory contract or unexpired lease of nonresidential real property if:

> (a)     the trustee assumes such contract or lease in accordance with the provisions of this section; and

- 44 -

(b)   adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." See In re Art & Architecture Books of the 21st Century, 2013 WL 4874342 (Bankr. C.D. Cal. Sept. 12, 2013); Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. In re Bygaph, Inc., 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

To the extent necessary, the Debtors and the Successful Bidder(s) will present evidence at the Sale Hearing to prove the financial credibility, willingness, and ability of the Successful Bidder(s) to perform under the Designated Executory Contracts to be assumed and assigned pursuant to such Successful Bidder's asset purchase agreement. The Court, counterparties and other interested parties therefore will have the opportunity to evaluate the ability of any Successful Bidder to provide adequate assurance of future performance under the Designated Executory Contracts to be assumed and assigned, as

- 45 -

1054191.10

1 required by section 365(b)(1)(C) of the Bankruptcy Code.  In addition, the Cure

2 Procedures are appropriate and consistent with section 365 of the Bankruptcy Code.  To

3 the extent any defaults exist under any Designated Executory Contracts, any such

4 defaults will be cured pursuant to the Successful Bidder's asset purchase agreement.  Any

5 provision in the Designated Executory Contracts that would restrict, condition, or prohibit

6 an assignment of such contracts will be deemed unenforceable pursuant to section

7 365(f)(1) of the Bankruptcy Code.

8      Accordingly, the Debtors submit that the Cure Procedures for effectuating the

9 assumption and assignment of the Designated Executory Contracts as set forth herein are

10 appropriate and should be approved.

11     **G.**    **The Successful Bidder Should Be Afforded All Protections Under**

12          **Section 363(m) as A Good Faith Purchaser**

13

14      Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in

15 property purchased from the debtor's estate notwithstanding that the sale conducted

16 under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m)

17 states that:

18        The reversal or modification on appeal of an authorization
       under [section 363(b)] .  .  . does not affect the validity of a

19        sale .  .  . to an entity that purchased .  .  . such property in
       good faith, whether or not such entity knew of the pendency

20        of the appeal, unless such authorization and such sale were
       stayed pending appeal.

21      Section 363(m) "fosters the 'policy of not only affording finality to the judgment of

22 the bankruptcy court, but particularly to give finality to those orders and judgments upon

23 which third parties rely.'"  In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 147 (3d

24 Cir.1986); Allstate Ins.  Co. v. Hughes, 174 B.R.  884, 888 (S.D.N.Y.  1994)

25 ("Section 363(m) .  .  . provides that good faith transfers of property will not be affected by

26 the reversal or modification on appeal of an unstayed order, whether or not the transferee

27 knew of the pendency of the appeal"); In re Stein & Day, Inc., 113 B.R.  157, 162 (Bankr.

28

- 46 -

1054191.10

1  S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected

2  from the reversal of a sale on appeal unless there is a stay pending appeal").

3       Any Successful Bidder will be an entity making an arms-length, good faith bid

4  following a competitive purchasing process, and will be selected by the Debtors in

5  accordance with the Bidding Procedures through the Debtors' independent sales

6  representative, Mr. Mosier, and in consultation with the Consultation Parties. Therefore,

7  the Debtors intend to request at the Sale Hearing a finding that the Successful Bidder is a

8  good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.[5]

9      **H.**    **Relief from the Fourteen Day Waiting Period Under Bankruptcy Rules**

10              **6004(h) and 6006(d) is Appropriate**

11

12       Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease

13  of property . . . is stayed until the expiration of 14 days after entry of the order, unless the

14  court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order

15  authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed

16  until the expiration of 14 days after the entry of the order, unless the court orders

17  otherwise." The Debtors request that the Sale Order be effective immediately by

18  providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d)

19  are waived.

20       The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time

21  for an objecting party to appeal before an order can be implemented. <u>See</u> Advisory

22  Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules

23  6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court

24  should "order otherwise" and eliminate or reduce the fourteen (14) day stay period, <u>Collier</u>

25  suggests that the fourteen (14) day stay period should be eliminated to allow a sale or

26  _____

27  [5] To the extent that these protections afforded by section 363(m) may have been called into question by the
Ninth Circuit Bankruptcy Panel's decision in <u>Clear Channel</u>, 391 B.R. 25, the Debtors respectfully submit
that such decision was wrongly decided, and should not be utilized to disturb a free and clear sale entered

28  by this Court.

1054191.10

1  other transaction to close immediately "where there has been no objection to the

2  procedure." Collier on Bankruptcy P. 6004.11 (Alan N. Resnick & Henry J. Sommer eds.,

3  16th ed.).  Furthermore, Collier provides that if an objection is filed and overruled, and the

4  objecting party informs the court of its intent to appeal, the stay may be reduced to the

5  amount of time actually necessary to file such appeal.  Id.

6        In light of the Debtors' financial constraints in connection with the DIP facility and

7  use of cash collateral which contemplate the Sale closing by March 31, 2016, the Debtors

8  hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules

9  6004(h) and 6006(d) or, in the alternative, if an objection to the Sale is filed, reduce the

10  stay period to the minimum amount of time needed by the objecting party to file its appeal.

11  **VII.    NOTICE**

12        The Debtors will provide notice of this Motion to:  (a) the Office of the United States

13  Trustee, (b) the Committee, (c) Debtors' secured creditors, and (d) the parties that have

14  filed with the Court requests for notice of all matters in accordance with Bankruptcy Rule

15  2002.  To the extent necessary, the Debtors request that the Court waive compliance with

16  Local Bankruptcy Rule 9075-1 and approve service (in addition to the means of service

17  set forth in such Local Bankruptcy Rule) by overnight or electronic delivery.  In the event

18  that the Court grants the relief requested by the Motion, the Debtors shall provide notice of

19  the entry of the order granting such relief upon each of the foregoing parties and any other

20  parties-in-interest as the Court directs, as well as providing notice of the Auction and Sale

21  Hearing upon all requisite parties under Bankruptcy Rule 2002 by means of the

22  Publication Notice and the Procedures Notice.  The Debtors submit that such notice is

23  sufficient and that no other or further notice be given.

24  **VIII.    CONCLUSION**

25        WHEREFORE, the Debtors respectfully request that the Court enter the Bidding

26  Procedures Order substantially in the form attached hereto as Exhibit A and the Sale

27  Order substantially in the form to be submitted in connection with the Sale Hearing,

28
                                    - 48 -

1  (a) granting the relief requested herein and (b) granting to the Debtors such other and

2  further relief as the Court may deem proper.

3

4                                           Respectfully submitted,

5  Dated:  January 13, 2016                 LOBEL WEILAND GOLDEN FRIEDMAN LLP

6
                                            By:  /s/ Alan J. Friedman
7                                               WILLIAM N. LOBEL
                                                ALAN J. FRIEDMAN
8                                           Attorneys for Debtors and Debtors-in-
                                            Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           - 49 -

1054191.10

EXHIBIT "A"

William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Attorneys for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:15-bk-15311-MW |
| FREEDOM COMMUNICATIONS, INC., *et al.*,[1] | Chapter 11 |
| Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| Affects: | |
| ☒ All Debtors | |
| ☐ Freedom Communications, Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | |

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036).  The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

EXHIBIT "A"
Page 50

*Lobel Weiland Golden Friedman LLP*
*650 Town Center Drive, Suite 950*
*Costa Mesa, California 92626*
*Tel 714-966-1000 · Fax 714-966-1002*

1  ☐ Freedom Services, Inc., a Delaware corporation, ONLY

2  ☐ 2100 Freedom, Inc., a Delaware

3  corporation, ONLY

4  ☐ OCR Community Publications, Inc., a California corporation, ONLY

5

6  ☐ Daily Press, LLC, a California limited liability company, ONLY

7  ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY

8

9  ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

10

11  ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

12  ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

13

14  ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

15  ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

16

17  ☐ Freedom Newspapers, a Texas general partnership, ONLY

18  ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

19

20  ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

21

22  ☐ OCR Information Marketing, Inc., a California corporation, ONLY

23  ☐ Odessa American, a Texas general partnership, ONLY

24

25  ☐ Orange County Register Communications, Inc., a California corporation, ONLY

26

27  ☐ Victor Valley Publishing Company, a California corporation, ONLY

28

**ORDER: (I)(A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (B) AUTHORIZING, BUT NOT REQUIRING, THE GRANTING OF STALKING HORSE PROTECTIONS TO POTENTIAL STALKING HORSE BIDDER(S), (C) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE, (D) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (II)(A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO SUCCESSFUL BIDDER(S)' ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO**

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1054195.3

- 2 -

BIDDING PROCEDURES ORDER

EXHIBIT "A"
Page 51

1    ☐  Victorville Publishing Company, a
California limited partnership, ONLY

2

3    ☐  Freedom SPV II, LLC, a Delaware
limited liability company, ONLY

4    ☐  Freedom SPV VI, LLC, a Delaware
limited liability company, ONLY

5

6    ☐  Freedom SPV I, LLC, a Delaware
limited liability company, ONLY

7    ☐  Freedom SPV IV, LLC, a Delaware
limited liability company, ONLY

8

9    ☐  Freedom SPV V, LLC, a Delaware
limited liability company, ONLY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Lobel Weiland Golden Friedman LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1054195.3

- 3 -

BIDDING PROCEDURES ORDER

Upon consideration of the motion (the "Motion")[2] of Freedom Communications, Inc. and its related debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") seeking entry of an order (this "Order"), pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, rules 2002, 6004, 6005, 6006, 9007 and 9014 of the Bankruptcy Rules, and rule 6004-1 of the Local Rules, (i)(a) approving procedures in connection with the sale of substantially all of the Debtors' assets, (b) authorizing, but not requiring, the granting of Stalking Horse Protections in the event the Debtors designate Stalking Horse Bidder(s) in connection with the sale of the Debtors' assets, (c) scheduling the related auction and hearing to consider approval of the sale, (d) approving procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases, (e) approving the form and manner of notice thereof, and (f) granting related relief, and (ii)(a) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and other interests, except as provided in the Successful Bidder(s)' asset purchase agreement(s), (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto, and (c) granting related relief, all as more fully set forth in the Motion; and upon consideration of the Dahl Declaration, the Mosier Declaration, the FTI Declaration and the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion and/or Bidding Procedures attached hereto as Exhibit 1, as applicable.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1408 and 1409; and this Court having found that the relief requested in the Motion is in

the best interests of the Debtors' estates, creditors, and other parties in interest; and this

Court having found that the Debtors' notice of the Motion and opportunity for a hearing

on the Motion were appropriate and no other notice need be provided; and this Court

having reviewed the Motion and having heard the statements in support of the relief

requested therein at the hearing before this Court (the "Hearing"); and this Court

having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings

had before this Court; and after due deliberation and sufficient cause appearing therefor;

AND FURTHER FOUND AND DETERMINED THAT:

A.    The Bidding Procedures substantially in the form attached hereto as

Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize the

recovery from the sale of the Assets.

B.    The Debtors' notice of the Bidding Procedures, the Cure Procedures, the

Auction and the hearing to approve the sale of the Assets (the "Sale Hearing"), including

the Procedures Notice, the Publication Notice and the Notice of Potential Assumption

and Assignment, substantially in the forms attached hereto as Exhibit 2, Exhibit 3 and

Exhibit 4, is appropriate and reasonably calculated to provide all interested parties with

timely and proper notice, and no other or further notice is required.

C.    The Debtors have demonstrated compelling and sound business

justifications for authorizing the sale of the Debtors' Assets, entry into a Stalking Horse

Agreement(s) and payment of an authorized Break-Up Fee or Expense Reimbursement

under the circumstances, timing and procedures set forth herein and in the Motion.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

D.      Break-Up Fee(s) and Expense Reimbursement(s) up to the amounts authorized by this Order are (a) fair and reasonable, (b) beneficial to the Debtors' estates and creditors, and (c) an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code.

E.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

F.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      Any objections and responses to the Motion that have not been overruled, withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied.

3.      The Bidding Procedures attached hereto as Exhibit 1 are APPROVED.

4.      In the event that the Debtors enter into one or more Stalking Horse APAs, the Debtors will file with the Court and serve on the Notice Parties (as defined in Paragraph 7 below) a notice that includes the following: (a) the identification of the Stalking Horse Bidder(s); (b) a copy of the Stalking Horse APA(s); (c) the applicable Stalking Horse Purchase Price APA; (d) the deposit paid by the applicable Stalking Horse Bidder; and (e) the amount of any Break-Up Fee and/or any Expense Reimbursement being provided to the Stalking Horse Bidder in connection with the applicable Stalking Horse APA.  Any Stalking Horse APA entered into by the Debtors

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

shall be subject to higher or otherwise better offers or combinations of offers, as

provided in the Bidding Procedures.  For the avoidance of doubt, the Debtors reserve

the right to enter into multiple and/or separate Stalking Horse APAs, e.g., a Stalking

Horse APA for their newspaper assets and a Stalking Horse APA for the Santa Ana real

property.

5.    In connection with a Stalking Horse APA, the Debtors, with the consent of

the Committee and in consultation with the DIP Agent, are authorized, but not required,

to grant to a Stalking Horse Bidder a Break-Up Fee of up to 2.5% of the cash

consideration offered by such Stalking Horse Bidder and/or an Expense

Reimbursement in an amount not to exceed $200,000.  Such Stalking Horse

Protections, if any, would be paid in the event that: (i) the Stalking Horse Bidder is not

approved by the Court as the purchaser of the Assets on which it bid, (ii) the

Stalking Horse Bidder is not in default of its obligations under its Stalking Horse

APA, and (iii) the Assets on which the Stalking Horse Bidder bid are thereafter sold

to a Successful Bidder(s) at the Auction for consideration in excess of the purchase

price provided for in the Stalking Horse APA notwithstanding the Stalking Horse

Bidder's willingness and ability to consummate the transactions contemplated by its

Stalking Horse APA, which payment shall be made to the Stalking Horse Bidder

promptly following closing with the Successful Purchaser(s) of the Assets on which the

Stalking Horse Bidder bid.  The Stalking Horse Protections, if payable, shall be the sole

and exclusive remedy of a Stalking Horse Bidder if the applicable Stalking Horse APA is

not consummated.

6.    All Qualified Bidders at the Auction shall be deemed to have consented to

the jurisdiction of this Court and waived any right to a jury trial in connection with any

EXHIBIT "A"
Page 56

disputes relating to the Auction and the construction and enforcement of any sale

transaction documents arising in connection therewith.

7.     The Sale Hearing shall be held  on March 21, 2016, at _____ (prevailing

Pacific Time), before the United States Bankruptcy Court for the Central District of

California, Santa Ana Division, Ronald Reagan Federal Building and U.S. Courthouse,

411 West Fourth Street, Santa Ana, CA 92701.  Any objections to the Sale shall be filed

and served so as to be received no later than 9:00 a.m. (prevailing Pacific Time) on

date of the Sale Hearing by the following parties: (i) the Debtors' Independent Sales

Representative, Robert P. Mosier, email: rmosier@mosierco.com; (ii) counsel to the

Debtors: Lobel Weiland Golden Friedman LLP (Attn: William N. Lobel, Esq., facsimile:

(714) 966-1002, email: wlobel@lwgfllp.com and Alan J. Friedman, Esq., facsimile: (714)

966-1002, email: afriedman@lwgfllp.com), (iii) the Debtors' investment banker, FTI

Capital Advisors, LLC (Attn: Christopher Nicholls; facsimile: (212) 499-3636, email:

chris.nichols@fticonsulting.com and Michael VanderLey; facsimile: (415) 283-4277,

email: mike.vanderley@fticonsulting.com), (iv) counsel to the Official Committee of

Unsecured Creditors: Pachulski Stang Ziehl & Jones (Attn: Robert J. Feinstein, Esq.,

facsimile: (212) 561-7777, email: rfeinstein@pszjlaw.com and Jeffrey W. Dulberg, Esq.,

facsimile: (310) 201-0760, email: jdulberg@pszjlaw.com), (v) the Committee's financial

advisor: Alvarez and Marsal (Attn: Brian Whittman, email BWhittman@alvarez

andmarsal.com), (vi) counsel to the DIP Agent:  Munger, Tolles & Olson LLP (Attn:

Seth Goldman, Esq., facsimile:  (213) 687-3702, email: seth.goldman@mto.com) (such

parties collectively defined as the "Notice Parties"), and (vii) the Office of the United

States Trustee (Attn: Frank Cadigan, Esq., facsimile:  (714) 338-3421, email:

frank.cadigan@usdoj.gov; and Attn: Michael Hauser, Esq., facsimile:  (714) 338-3421,

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

email:  michael.hauser@usdoj.gov).  Any replies to objections to the Sale shall be heard at the Sale Hearing.  Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f).

8.     With the consent of the Consultation Parties, the Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtors shall have the right, in the exercise of their business judgment, after consultation with the Consultation Parties, to terminate the Sale at any time.

9.     The following forms of notice are approved: (a) the Procedures Notice, in the form substantially similar to that attached hereto as <u>Exhibit 2</u>, (b) the Publication Notice, in the form substantially similar to that attached hereto as <u>Exhibit 3</u>, and (b) the Notice of Potential Assumption and Assignment, in the form substantially similar to that attached hereto as <u>Exhibit 4</u>.

10.     On or before three (3) days after the entry of this Order, the Debtors shall serve, or cause to be served, by first class mail, the Procedures Notice on the following parties: (i) the Notice Parties; (ii) the Office of the United States Trustee; (iii) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002; and (iv) any entity that has expressed a bona fide interest in acquiring the Assets in the six (6) months preceding the date of the filing of the Motion.

11.     On or before three (3) days after the entry of this Order, the Debtors shall publish the Publication Notice in the Los Angeles Times, the Orange County Register and the national edition of the Wall Street Journal.

12.     On or before seven (7) days after the entry of this Order, the Debtors shall

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

serve, or cause to be served, by first class mail, the Notice of Potential Assumption and

Assignment on all non-debtor parties to the Designated Executory Contracts that the

Debtors may seek to assume and assign on the Closing Date of a Sale; provided,

however, that the identification of a contract or lease in the Notice of Potential

Assumption and Assignment shall not constitute an admission by the Debtors that such

contract or lease is an executory contract or unexpired lease or that such contract or

lease will be assumed and assigned.  The Debtors reserve all of their rights, claims, and

causes of action with respect to the contracts and leases listed in a Notice of Potential

Assumption and Assignment.  The Notice of Potential Assumption and Assignment shall

identify the calculation of the cure amounts, if any, that the Debtors believe must be

paid to cure all defaults outstanding under each Designated Executory Contract (the

"Cure Amounts") as of such date (the "Cure Date").  In addition, if in connection with the

ongoing marketing process, the Debtors identify additional contracts or leases that

might be assumed by the Debtors and assigned to a prospective purchaser that are not

set forth in the original Notice of Potential Assumption and Assignment, the Debtors

shall promptly send a supplemental notice (a "Supplemental Notice of Potential

Assumption and Assignment") to the applicable counterparties to such additional

contracts and/or leases and they shall be Designated Executory Contracts.

13.    Unless the non-debtor party to a Designated Executory Contract files an

objection (each, a "Cure Amount/Assignment Objection") to (i) its scheduled Cure

Amount, and/or (ii) the assumption, assignment and/or transfer of such Designated

Executory Contract no later than five (5) days before the Auction (by March 11, 2015)

(collectively, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure

Amount/Assignment Objection so as to be received no later than the Cure/Assignment

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

BIDDING PROCEDURES ORDER

EXHIBIT "A"
Page 59

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Objection Deadline by the Notice Parties and the Office of the United States Trustee, then such non-debtor party will (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts as of the Cure Date with respect to such Designated Executory Contract against the Debtors, the Successful Bidder or any other party and such parties shall be entitled to rely solely upon the Cure Amount, and (b) subject to paragraph 16 of this Order, be deemed to have consented to the assumption, assignment and/or transfer of such Designated Executory Contract, notwithstanding any consent right that such party could have asserted, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or any other assignee of the relevant Designated Executory Contract that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, as of the Cure Date, under such Designated Executory Contract.

14.   If an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.  The Debtors, in their discretion, may in good faith (i) resolve any disputed Claimed Cure Amount without further order of the Court, or (ii) pursue a contested determination by this Court of any disputed Claimed Cure Amount.  Subject to the foregoing, if the Debtors hold a Claimed Cure Amount in reserve as a result of an objection to a Cure Amount, then the Debtors may assume and assign the Designated Executory Contract that is the subject of such objection prior to the resolution of such objection and without further delay.

15.   Within 24 hours after the conclusion of the Auction (if any) (or, if no Auction is held, within 24 hours after a determination that the Stalking Horse Bidder is the

Successful Bidder in accordance with the Bidding Procedures), the Debtors shall file a notice identifying the Successful Bidder(s) with the Bankruptcy Court and shall serve such notice by fax, email, or overnight mail to all counterparties whose contracts and/or leases are to be assumed and assigned pursuant to such Successful Bidder's Purchase Agreement.

16.   The counterparties to the Designated Executory Contracts may, at or prior to the Sale Hearing, object to the assumption, assignment, and/or transfer of such Designated Executory Contract solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.  Any non-debtor party to a Designated Executory Contract that does not object to the assignment of its respective Designated Executory Contract shall be deemed to have consented to the assumption, assignment, and/or transfer of such Designated Executory Contract to the Successful Bidder.  For the avoidance of any doubt, nothing in this paragraph 16 shall extend, shorten or otherwise affect the time period, or the ability to otherwise object, to any Cure Amount.

17.   Any unresolved objections to any Cure Amount or the assumption and assignment of any Designated Executory Contract will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors subject to the Court's calendar.

18.   Except to the extent otherwise provided in the Successful Bidder's Purchase Agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising after the assumption and assignment of any executory contract or unexpired lease pursuant to section 365(k) of the Bankruptcy Code.

19.   To the extent the provisions of this Order are inconsistent with the provisions of any Exhibit referenced herein or with the Motion, the provisions of this

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  Order shall control.

2     20.  The Court shall retain jurisdiction over all matters arising from or related to

3  the interpretation and implementation of this Order.

4     21.  Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006,

5  7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately

6  effective and enforceable.

7

8                                  ###

9

10

**Lobel Weiland Golden Friedman LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1054195.3                    - 13 -                 BIDDING PROCEDURES ORDER

# EXHIBIT "1"

**BIDDING PROCEDURES**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the sale of the Assets (as defined below), which constitute substantially all of the assets of Freedom Communications, Inc. and its related debtors and debtors-in-possession (collectively, the "Debtors") in connection with the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the Central District of California, Santa Ana division (the "Bankruptcy Court"), under Lead Case No. 8:15-bk-15311-MW.

## I.        ASSETS TO BE SOLD

The Debtors shall market the sale, in one or more lots,[1] of all of their assets (each distinct asset or collections of assets is referred to herein as "Assets"), including, without limitation, real estate interests, operating assets, accounts receivable, executory contracts and leases, free and clear of any and all claims and liens, with such liens and claims to attach to the proceeds of the sale(s) in accordance with the Sale Order (as defined herein), the Bankruptcy Court's order approving the Debtors' use of cash collateral and debtor in possession financing entered on December 17, 2015 [Dkt. No. 239] (the "DIP Order"), and the DIP Credit Agreement (as defined in the DIP Order and as filed with the Bankruptcy Court on December 14, 2015).   During the sale process, the Debtors shall consult (the "Consultation Requirement") with representatives of the Official Committee of Unsecured Creditors (the "Committee") and Silver Point Finance, LLC (the "DIP Agent" and, together with the Committee, the "Consultation Parties"); provided that if the DIP Lenders (as defined in the DIP Order) bid for the Assets, the Consultation Requirement as to the DIP Agent shall not apply to the aspects of the sale process for which the Debtors and the Committee determine that compliance with the Consultation Requirement would provide the DIP Lenders with information that would unfairly benefit them as a potential bidder.

## II.        THE BIDDING PROCEDURES

In order to ensure that the Debtors receive the maximum value for the Assets, the following procedures shall govern the sale of the Assets.

### A.        Stalking Horse Bidder

Pursuant to the Bidding Procedures Order, the Debtors, with the consent of the Committee and in consultation with the DIP Agent, are authorized to enter into an asset purchase agreement with a Stalking Horse Bidder with respect to all or a portion of the Assets (a "Stalking Horse APA") not later than February 5, 2016.  In the event that the Debtors enter into one or more Stalking Horse APAs, the Debtors will file with the Court

###############################################

[1] These lots shall include:  (1) all Assets, (2) all Assets other than the Santa Ana real property, (3) the Santa Ana real property, or (4) any other combination of Assets.

1054176.3

\#
\#
\#
\#

and serve on the Notice Parties (as defined in Section II.E below) a notice that includes the following: (a) the identification of the Stalking Horse Bidder(s); (b) a copy of the Stalking Horse APA(s); (c) the purchase price provided for in the applicable Stalking Horse APA (the "Stalking Horse Purchase Price"); (d) the deposit paid by the Stalking Horse Bidder; and (e) the amount of any Break-Up Fee and/or any Expense Reimbursement (as such terms are defined in the Bidding Procedures Order) being provided to the Stalking Horse Bidder in connection with the Stalking Horse APA. Any Stalking Horse APA entered into by the Debtors shall be subject to higher or otherwise better offers or combinations of offers, as provided herein. For the avoidance of doubt, the Debtors reserve the right to enter into multiple and/or separate Stalking Horse APAs, e.g., a Stalking Horse APA for their newspaper assets and a Stalking Horse APA for the Santa Ana real property.

## B.    Documentation Necessary for Potential Bidders to Conduct Due Diligence

In order to be qualified to receive any confidential information from the Debtors, an interested party (each, an "Interested Party") must submit each of the following to the Notice Parties on a timely basis:

(1)    An executed confidentiality agreement which shall inure to the benefit of the Debtors and may be assigned to the Successful Bidder (as defined below), in a form and substance satisfactory to the Debtors;

(2)    A statement demonstrating, to the Debtors' satisfaction, after consultation with the Consultation Parties, that the Interested Party has a bona fide interest in purchasing some or all of the Assets; and

(3)    Such other information with respect to an Interested Party's experience and financial wherewithal (which may include, but is not limited to, any cure and adequate assurance obligations as the case may be) as the Debtors (after consultation with the Consultation Parties) request, if any, which may include, but is not limited to, the internal corporate, legal or other authorizations to close a purchase transaction.

If the Debtors determine, after receipt of the items identified above and reasonable consultation with the Consultation Parties, that an Interested Party has a bona fide interest in purchasing the Assets and the financial wherewithal to do so, such Interested Party will be deemed a "Potential Bidder." As promptly as practicable after the Interested Party is deemed to be a Potential Bidder, the Debtors will notify the Interested Party as to such determination.

## C.    Due Diligence

The Debtors will afford any Potential Bidder such due diligence access or additional

\#
\#
\#
\#

\#
\#
\#
\#
information as the Debtors, in consultation with their advisors and after consultation with the Consultation Parties, deem appropriate, in their business judgment.    Such information shall be provided through the data room created by the Debtors to facilitate diligence respecting the Assets by Potential Bidders (the "Data Room").  The Debtors shall endeavor to provide all such information to all Potential Bidders concurrently by placing the information in the Data Room and informing all Potential Bidders of the addition of the information.  For any Potential Bidder who is a newspaper publisher or otherwise a competitor of the Debtors or is affiliated with a newspaper publisher or other competitor of the Debtors, the Debtors reserve the right to withhold any materials or information that the Debtors determine is: (i) sensitive or confidential business records, (ii) not appropriate for disclosure to such a Potential Bidder, (iii) has not been made available to any other newspaper publisher or competitor of the Debtors or affiliate thereof, and (iv) cannot be reasonably redacted to remove any sensitive or confidential business information; provided that the Debtors shall notify the Consultation Parties and the applicable Potential Bidder of the determination to withhold such information and shall provide reasonable detail as to the information withheld.  The due diligence period shall extend through and include the Bid Deadline (as defined below).  Additional due diligence will not be provided after the Bid Deadline unless such Potential Bidder has submitted a Qualified Bid.

## D.    Provisions Governing Qualification of Qualified Bids and Overbids

A bid submitted with respect to all or any number or combination of the Assets will be considered a qualified bid only if the bid is submitted by a Potential Bidder and complies with all of the following (a "Qualified Bid"):

(1)        includes a proposed purchase agreement, including to the extent feasible all exhibits and schedules thereto (the "Competing Purchase Agreement"), duly authorized and executed by the Potential Bidder, along with a redlined, marked copy showing all changes between the Competing Purchase Agreement and (i) in the event a Stalking Horse Bidder has been selected, the Stalking Horse APA, or (ii) in the event no Stalking Horse Bidder has been selected, the Debtors' form of asset purchase agreement (the form of which will be posted in the Data Room) that provides the following:

(a)    (i) in the event that a Stalking Horse Bidder has been selected, subject to subparagraph D(12) below, provides for consideration (the "Competing Purchase Price") that, in the business judgment of the Debtors after consultation with the Consultation Parties, individually, or together with one or more other bids that otherwise satisfy the requirements for a Qualified Bid and which do not seek to acquire materially overlapping Assets, exceeds the Stalking Horse Purchase Price, the Break-Up Fee and Expense

\#
\#
\#
\#

Reimbursement (as provided in the Stalking Horse APA) by at least $250,000 (such amount, the "<u>Minimum Overbid</u>"); or (ii) in the event that no Stalking Horse Bidder has been selected, provides the total cash consideration (excluding any amount attributed to the assumption of liabilities) to be paid for the Assets (the "<u>APA Purchase Price</u>");

(b)    specifically disclaims any right of the Potential Bidder to receive a breakup fee or termination fee, and waives any claim to compensation under section 503(b) of the Bankruptcy Code for making a substantial contribution;

(c)    identifies with particularity which liabilities, executory contracts and unexpired leases that have been identified to Potential Bidders through the diligence process the Potential Bidder would agree to assume (including, without limitation, any liabilities related to the Debtors' operations, pension plan and cure amounts);

(d)    includes a contact person(s) for the proposed assignee that the applicable counterparty may directly contact in connection with adequate assurance of future performance issues; and

(e)    contains a proposed closing date that is not later than March 31, 2016;

(2)    includes a cashier's check made payable to the order of Freedom Communications, Inc., Debtor-in-Possession, or evidence of electronic funds transfer in accordance with instructions to be provided by the Debtors equal to 10% of the cash component of the Competing Purchase Price or the APA Purchase Price, as the case may be, which will be retained by the Debtors as a refundable deposit for application against the purchase price at the closing of the transaction, returned to the Potential Bidder, or forfeited to the Debtors as set forth below;

(3)    identifies the full legal name of the Potential Bidder (including any equity holders or other financial backers sponsoring or participating in connection with such bid);

(4)    provides that such offer remains open and irrevocable as follows (a) until the closing of the Sale if it is designated as the Successful Bid, (b) until the Back-Up Expiration Date (as defined below) if it is designated as the Back-Up Bid (as defined below), and (c) in all other cases, three (3) business days after conclusion of the Auction;

4

\#
\#
\#
\#

#
#
#
#

(5)     is accompanied by evidence establishing the Potential Bidder's ability to provide adequate assurance of future performance with respect to the executory contracts and unexpired leases identified in subparagraph (1)(c) above. If the Debtors conclude, exercising their business judgment, after consultation with the Consultation Parties, that the information establishing adequate assurance is not sufficient, then they may request specific additional information from the Potential Bidder in writing and the Potential Bidder shall have a reasonable period of time to supplement the information it provided to establish adequate assurance;

(6)     is accompanied by evidence establishing, based upon the Debtors' business judgment, after consultation with the Consultation Parties, that the Potential Bidder has the financial ability to pay, including through committed financing, or otherwise fulfill the conditions relating to, the Competing Purchase Price or the APA Purchase Price, as the case may be; such evidence shall include, but is not limited to, (i) current audited financial statements (to the extent they are otherwise prepared in the ordinary course of business) of (a) the Potential Bidder, or (b) if the Potential Bidder is an entity capitalized after the Petition Date for the purpose of acquiring the Assets, current audited financial statements of its equity holder(s) or their affiliate(s) (to the extent they are otherwise prepared in the ordinary course of business) who shall either guarantee the obligations of the Potential Bidder or provide such other form of financial disclosure and credit-quality support information or enhancement or (ii) documents evidencing committed financing for the Competing Purchase Price or APA Purchase Price, each as deemed reasonably acceptable after reasonable consultation among the Debtors and the Consultation Parties.  The Potential Bidder may elect to only provide the information required under this subsection upon the execution of confidentiality agreement by the Debtors and Consultation Parties in favor of the Potential Bidder, its equity holders and its affiliates.  The form of confidentiality agreement shall be provided by the Debtors to any Potential Bidder upon request;

(7)     subject to subparagraph D(12) below, in the event a Stalking Horse Bidder has been selected, contains terms and conditions that, taken as a whole, are higher or otherwise better than the terms and conditions of the Stalking Horse APA as determined by the Debtors using their business judgment, after consultation with the Consultation Parties;

(8)     is accompanied by evidence establishing, based upon the Debtors' business judgment, after consultation with the Consultation Parties, that (a) the Potential Bidder is capable and qualified, financially, legally and otherwise, of unconditionally performing all obligations under the Competing Purchase Agreement, and (b) all necessary internal, board, and shareholder approvals related to the submission, execution, delivery, and closing of the Competing Purchase Agreement, have been or can timely be obtained;

5

#
#
#
#

\#
\#
\#
\#

(9)      is not subject to any due diligence or financing contingencies of any kind, or any contingencies related to any internal or investment committee or similar approvals;

(10)     includes an acknowledgement and representation, in form and substance satisfactory to the Debtors, after consultation with the Consultation Parties, that the Potential Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Competing Purchase Agreement,

(11)     is received by each of the Notice Parties (as defined herein) prior to the Bid Deadline; and

(12)     Notwithstanding item subparagraphs D(1)(a) and D(7) above, if a Stalking Horse Bidder is selected, a bid submitted by a Potential Bidder may still be deemed to be a Qualified Bid, if in the business judgment of the Debtors, after consultation with the Consultation Parties: (a) such bid is for less than all of the Assets; and (b) the amount of such bid, when added to the Debtors' or the Committee's informal valuation of the Assets not being included in such bid, is, equal to or greater than the Minimum Overbid.

The Stalking Horse Bidder, if any, and any Potential Bidder that timely submits a Qualified Bid (an "Initial Overbid"), as set forth above, shall each be deemed a "Qualified Overbidder" and may bid for all or a portion of the Assets at the Auction, and may modify its bid in subsequent rounds to include or exclude Assets or liabilities and to modify other terms of its bid, as it deems appropriate.  Any Potential Bidder that fails to submit a timely, conforming Initial Overbid, as set forth above, shall be disqualified from bidding for the Assets at the Auction.

Notwithstanding the requirements set forth above, the Debtors, in the exercise of their business judgment, after consultation with the Consultation Parties, may consider, as a single Qualified Bid, multiple bids for the Assets, a portion of the Assets, or some or all of the Assets together with any other Assets of the Debtors such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid.  The Debtors may permit Potential Bidders who submitted such multiple bids by the Bid Deadline but who were not identified as a component of a single Qualified Bid consisting of such multiple bids and which otherwise satisfy the Qualified Bid criteria set forth above, to participate in the Auction and to submit at the Auction

\#
\#
\#
\#

6

\#
\#
\#
\#

higher or otherwise better bids that in subsequent rounds of bidding may be considered, together with other bids, as part of a single Qualifying Bid for overbid purposes.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of any sale transaction documents.

## E.    Bid Deadline

A Potential Bidder that desires to make an Initial Overbid will deliver written copies of its Qualified Bid to each of the following parties by electronic mail (collectively, the "Notice Parties"): (i) Debtors' Independent Sales Representative, Robert P. Mosier, email: rmosier@mosierco.com; (ii) counsel to the Debtors: Lobel Weiland Golden Friedman LLP (Attn: William N. Lobel, Esq., facsimile: (714) 966-1002, email: wlobel@lwgfllp.com and Alan J. Friedman, Esq., facsimile: (714) 966-1002, email: afriedman@lwgfllp.com), (iii) investment banker for the Debtors, FTI Capital Advisors, LLC (Attn: Christopher Nicholls; facsimile: (212) 499-3636, email: chris.nichols@fticonsulting.com and Michael VanderLey; facsimile: (415) 283-4277, email: mike.vanderley@fticonsulting.com), (iv) counsel to the Committee: Pachulski Stang Ziehl & Jones (Attn: Robert J. Feinstein, Esq., facsimile: (212) 561-7777, email: rfeinstein@pszjlaw.com and Jeffrey W. Dulberg, Esq., facsimile: (310) 201-0760, email: jdulberg@pszjlaw.com), (v) financial advisor to the Committee: Alvarez and Marsal (Attn: Brian Whittman, email BWhittman@alvarez andmarsal.com), and (vi) counsel to the DIP Agent:  Munger, Tolles & Olson LLP (Attn: Seth Goldman, Esq., facsimile:  (213) 687-3702, email: seth.goldman@mto.com), so as to be received by no later than March 11, 2016, at 5:00 p.m. (prevailing Pacific Time) (the "Bid Deadline").  Upon receipt by the Debtors of a bid from a Potential Bidder, the Debtors shall timely, but no later than one (1) business day after the Bid Deadline, provide a summary of such bids to (i) each Qualified Overbidder and to each of the other Notice Parties.   The Debtors may, exercising their business judgment after consultation with the Consultation Parties, extend the Bid Deadline.

## F.    Evaluation of Competing Bids

In the event that there are competing bids for the Assets, a Qualified Bid will be evaluated by the Debtors and the Consultation Parties based upon several factors including, without limitation: (i) the amount of the Competing Purchase Price, including the liabilities being assumed, in the context of the Assets subject to the Qualified Bid, (ii) the risks and timing associated with consummating such bid, (iii) the terms of the Competing Purchase Agreement, (iv) to the extent applicable, the ability of the Qualified Overbidder to obtain appropriate regulatory approvals, (v) the capitalization and adequate assurance provided by the Potential Bidder with respect to its likely future performance and satisfaction of any liabilities related to assumed executory contracts

\#
\#
\#
\#

\#
\#
\#
\#

and unexpired leases as well as any other assumed liabilities, including any pension related obligations, and (vi) any other factors deemed relevant by the Debtors and the Consultation Parties in the exercise of their respective business judgment.

## G.    No Competing Bid

If a Stalking Horse Bidder is selected for all of the Debtors' assets and if no timely, conforming Initial Overbid is received, the Debtors shall not conduct an Auction, and following the Bid Deadline, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors shall request at the Sale Hearing that the Bankruptcy Court approve the Debtors' entry into the Stalking Horse APA and consummation of the transactions contemplated thereby, and request that the Sale Order be immediately effective upon entry.

## H.    Auction Procedures

If (i) a Stalking Horse Bidder is selected and one or more timely conforming Initial Overbids is received, (ii) no Stalking Horse Bidder is selected but two or more timely conforming Initial Overbids are received, or (iii) otherwise provided by these procedures, the Debtors will conduct the Auction on March 16, 2016, at 10:00 a.m. (prevailing Pacific Time) (the "Auction Date"), at the offices of Lobel Weiland Golden Friedman LLP, 650 Town Center Drive, Suite 950, Costa Mesa, California 92626, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction, in which the Stalking Horse Bidder, if any, and all other Qualified Overbidders may participate.  The Auction shall be governed by the following procedures:

      (1)      the Auction will be conducted openly and the actual identity of each Qualified Overbidder will be disclosed on the record at the Auction;

      (2)      only the Debtors, the Consultation Parties, the Stalking Horse Bidder, if any, any other Qualified Overbidders, and their respective counsel, financial advisors and representatives shall be permitted to attend, and all Qualified Overbidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Overbidder attending the Auction in person;

      (3)      each Qualified Overbidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and that its Initial Overbid is a good faith bona fide offer and that it intends to consummate the proposed transaction if selected as the Successful Bidder;

      (4)      at least  one (1) business day prior to the Auction, each Qualified Overbidder who has timely submitted a Qualified Bid must inform the Debtors

\#
\#
\#
\#

#
#
#
#

whether it intends to attend the Auction; <u>provided</u> that in the event a Qualified Overbidder elects not to attend the Auction, such Qualified Overbidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Overbidder and such Qualified Overbidder may still be designated by the Debtors as the Leading Bid or the Back-Up Bidder.  Prior to the Auction, the Debtors will provide a summary of the Qualified Bid or combination of Qualified Bids which the Debtors believe, in their business judgment, after consultation with the Consultation Parties, is the highest or otherwise best offer (the "<u>Starting Bid</u>") to each Potential Bidder that submitted a Qualifying Bid and to the Committee.  The Debtors, in consultation with the Consultation Parties may aggregate Initial Overbids from unaffiliated persons to create the Starting Bid; <u>provided</u> that all Qualified Overbidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding;

(5)      bidding will commence at the Starting Bid;

(6)      each subsequent bid shall be in increments of no less than $100,000 above the immediately preceding bid on the Assets, and the Debtors will evaluate each such bid after consultation with the Consultation Parties;

(7)      after the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or combination of bids that they believe to be the highest or otherwise best offer (the "<u>Leading Bid</u>").  A round of bidding will conclude after the Stalking Horse Bidder, if any, and each participating Qualified Overbidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid;

(8)      for the purpose of evaluating the value of the consideration provided by subsequent bids (including any subsequent bid by the Stalking Horse Bidder), the Debtors in consultation with the Consultation Parties will give effect to any additional liabilities to be assumed by a Qualified Overbidder or the Stalking Horse Bidder and any additional costs which may be imposed on the Debtors;

(9)      the Auction shall be conducted openly and each bidder will be informed of the terms of the previous bid or combination of bids determined by the Debtors in their business judgment, after consultation with the Consultation Parties, to have been the highest or otherwise best bid;

(10)     the Auction shall continue until, in the Debtors' business judgment, after consultation with the Consultation Parties, there is a highest or otherwise best bid or combination of bids (collectively, the "<u>Successful Bid</u>" and the Stalking Horse Bidder or Qualified Overbidder (or group of bidders comprising the Qualified Overbidder) submitting the same, the "<u>Successful Bidder</u>");

#
#
#
#

\#
\#
\#
\#

(11)    the bidding at the Auction shall be transcribed; and

(12)    the Debtors shall have the right after consultation with the Consultation Parties to modify the procedures for the Auction, and to allow for bidding on only a portion of the Assets and not all of them, to modify bidding increments, waive terms and conditions with respect to any or all Potential Bidders (including, without limitation, the bidding requirements in paragraph D herein, and to adjourn the Auction one or more times for any reason, in a manner not inconsistent with the procedures set forth in subparagraphs (1) through (11) above or any bidding procedures order entered by the Bankruptcy Court, <u>provided</u>, <u>however</u>, (i) the procedures may not be modified and the Auction may not be adjourned until the then open round of bidding, if any, has concluded, (ii) notice of such modification or adjournment is given to all Potential Bidders continuing to participate in the Auction as well as the Consultation Parties, and (iii) if no bid or combination of bids is sufficient to repay the DIP Lenders in full in cash, the Debtors may not waive the requirement that all bids contain a proposed closing date that is not later than March 31, 2016 without the consent of the DIP Agent.

As used herein, the term "<u>Successful Bidder's Purchase Agreement</u>" shall mean, as applicable, the (i) Competing Purchase Agreement(s) of the Successful Bidder(s), if the Successful Bidder(s) are Qualified Overbidder(s) other than the Stalking Horse Bidder, or (ii) Stalking Horse APA, as it may be modified during the Auction pursuant to the procedures set forth in the immediately preceding paragraph, if the Stalking Horse Bidder is the Successful Bidder, in either case, as approved pursuant to the Sale Order.

**I.    <u>Selection of Successful Bidder; As-Is Where-Is</u>**

The determination of the Successful Bid and the Back-Up Bid (as defined below) by the Debtors, exercising their business judgment and in consultation with the Consultation Parties, at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.    Any Sale will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their agents or the Debtors' chapter 11 estates, except and solely to the extent expressly set forth in the Successful Bidder's Purchase Agreement.

Unless otherwise agreed to by the Debtors and the applicable Successful Bidder(s), within two (2) business days after the conclusion of the Auction, the Successful Bidder(s) shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the bid(s) of the Successful Bidder(s) bid was made.    Within 24 hours after the conclusion of the Auction (if any) (or, if no Auction is held because there were no other Qualified Bidders, within 24 hours after a determination that the Stalking Horse Bidder is the Successful Bidder in accordance with these Bidding Procedures), the Debtors shall file a notice

\#
\#
\#
\#

\#
\#
\#
\#

identifying the Successful Bidder(s) with the Bankruptcy Court and shall serve such notice by fax, email, or overnight mail to all counterparties whose contracts are to be assumed and assigned.

The Debtors and the Successful Bidder(s) will consummate the transactions contemplated by the Purchase Agreement(s) submitted by the Successful Bidder(s), pursuant to the terms and conditions thereof, upon the Bankruptcy Court's approval of such Purchase Agreement(s) pursuant to the Sale Order.

## J.    Additional Deposits and Return of Deposits

Within two (2) business days after the conclusion of the Auction, the Successful Bidder(s) and Back-Up Bidder(s) shall increase their refundable deposits to 10% of the cash component of the relevant Successful Bid or Back-Up Bid.  All deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction.  The Successful Bidder's deposit will be credited towards the purchase price at the closing under the Successful Bidder's Purchase Agreement.  The Back-Up Bidder's deposit shall be returned to it no later than five (5) business days after the Back-Up Expiration Date or, if the Back-Up Bidder is selected as the Successful Bidder and the Debtors elect to consummate the Sale with the Back-Up Bidder, its deposit will be credited towards the purchase price at the closing under the Back-Up Bid.

If the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of the Successful Bidder, the Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

## K.    Back-Up Bidder

The Qualified Overbidder(s) with the next highest or otherwise best Qualified Bid (the "Back-Up Bid"), as determined by the Debtors in their business judgment after consultation with the Consultation Parties shall be required to serve as back-up bidder(s) (the "Back-Up Bidder(s)").  The identity of the Back-Up Bidder(s) and the amount and material terms of the applicable Back-Up Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s).  The Back-Up Bidder(s) shall be required to keep the applicable Back-Up Bid open and irrevocable until the earlier of (i) the closing under the applicable Successful Bidder's Purchase Agreement and (ii) 5:00 p.m. (prevailing Pacific time) of the first business day that is 60 days after the Auction Date (the "Back-Up Expiration Date").  If a Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the

\#
\#
\#
\#

#
#
#
#
Debtors in consultation with the Consultation Parties shall have the right, but not the obligation, to accept the applicable Back-Up Bidder's bid, in which case the Back-Up Bidder will be immediately notified and deemed to be the Successful Bidder for all purposes under these Bidding Procedures (and the Competing Purchase Agreement relating to the applicable Back-Up Bid will be deemed to be the Successful Bidder's Purchase Agreement for all purposes hereunder), and the Debtors will be authorized to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court; provided, however, that any sale to a Back-Up Bidder shall be consummated no later than the Back-Up Expiration Date.

## L.    Credit Bid Rights

Subject to applicable law, the DIP Lenders shall have the right to use their allowed prepetition secured claims and postpetition secured claims, in all cases subject to section 363(k) of the Bankruptcy Code, to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Assets.  Notwithstanding anything to the contrary in these procedures, the DIP Lenders (i) shall be excused from compliance with Part II.B, II.D, and II.E above, (ii) shall be deemed an Interested Party, Potential Bidder, and Qualified Overbidder, and (iii) may make a bid at the Auction (in any round) on all or any portion of the Assets without the requirement of submitting a Qualified Bid by the Bid Deadline or a bid in a prior round at the Auction; provided that if no Auction with respect to the Assets would otherwise be conducted pursuant to these procedures, then the DIP Lenders may make any bid on the Assets by no later than one (1) business day prior to the date scheduled for the Auction.  If the DIP Lenders submit any such bid for all or any portion of the Assets, the Debtors will conduct the Auction if there is a competing bid.

## M.    Reservation of Rights

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders; adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing; provided that if no Successful Bid or combination of Successful Bids is sufficient to repay the DIP Lenders in full in cash,  the Debtors may not agree to extend the deadline for closing any Successful Bid past March 31, 2016 without the consent of the DIP Agent.

The Debtors further reserve the right, in the exercise of their business judgment, after consultation with the Consultation Parties, to terminate discussions with any or all Potential Bidders at any time without specifying the reasons therefor.
#
12
#
#
#

#
#
#
#

## III.  SALE HEARING

The Debtors will seek entry of an Order of the Bankruptcy Court, approving and authorizing the Sale to the Successful Bidder(s) in accordance with these Bidding Procedures and pursuant to the terms and conditions set forth in the Successful Bidder's Purchase Agreement (the "Sale Order"), at a hearing to begin on or before March 21, 2016 (the "Sale Hearing"), which date may not be continued without the consent of the Consultation Parties.

#
#
#
#

# EXHIBIT "2"

## NOTICE OF BIDDING PROCEDURES

William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Attorneys for Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:15-bk-15311-MW |
| FREEDOM COMMUNICATIONS, INC., *et al.*,[1] | Chapter 11 |
| Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| Affects: | |
| ☒ All Debtors | |
| ☐ Freedom Communications, Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | |

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036).  The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

- 1 -

PROCEDURES NOTICE

☐ Freedom Services, Inc., a Delaware corporation, ONLY

☐ 2100 Freedom, Inc., a Delaware corporation, ONLY

☐ OCR Community Publications, Inc., a California corporation, ONLY

☐ Daily Press, LLC, a California limited liability company, ONLY

☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY

☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

☐ Freedom Newspapers, a Texas general partnership, ONLY

☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

☐ OCR Information Marketing, Inc., a California corporation, ONLY

☐ Odessa American, a Texas general partnership, ONLY

☐ Orange County Register Communications, Inc., a California corporation, ONLY

☐ Victor Valley Publishing Company, a California corporation, ONLY

**NOTICE OF SALE PROCEDURES, AUCTION DATE AND SALE HEARING**

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   ☐  Victorville Publishing Company, a California limited partnership, ONLY

2   ☐  Freedom SPV II, LLC, a Delaware limited liability company, ONLY

3

4   ☐  Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

5

6   ☐  Freedom SPV I, LLC, a Delaware limited liability company, ONLY

7   ☐  Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

8

9   ☐  Freedom SPV V, LLC, a Delaware limited liability company, ONLY

10

11   **PLEASE TAKE NOTICE** that, on January 13, 2016, Freedom Communications,

12   Inc. and its related debtors and debtors-in-possession in the above-captioned chapter 11

13   cases (the "Debtors") filed the Debtors' Motion For Entry Of Orders: (I)(A) Approving Procedures In Connection With Sale Of Substantially All Of Debtors' Assets, (B)

14   Authorizing, But Not Requiring, The Granting Of Stalking Horse Protections To Potential Stalking Horse Bidder(s), (C) Scheduling Related Auction And Hearing To Consider

15   Approval Of Sale, (D) Approving Procedures Related To Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (E) Approving Form And

16   Manner Of Notice Thereof, And (II)(A) Authorizing Sale Of Substantially All Of Debtors'

17   Assets Pursuant To Successful Bidder(s)' Asset Purchase Agreement, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests, And (B) Approving Assumption

18   And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto (the "Motion").[2]  Pursuant to the Motion, the Debtors seek, among other things, to sell, in

19   one or more lots, substantially all of their assets (the "Assets") to the successful bidder(s)

20   (the "Successful Bidder(s)") through a competitive bidding process, free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105(a), 363 and

21   365 of the Bankruptcy Code (the "Sale").

22   **PLEASE TAKE FURTHER NOTICE** that, on January [__], 2016, the Bankruptcy

23   Court entered an order (the "Bidding Procedures Order") approving the Motion and the bidding procedures (the "Bidding Procedures"), which set forth the key dates, deadlines

24   and procedures related to the Sale of the Assets.  All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures.  To the extent that there

25   are any inconsistencies between the Bidding Procedures Order (including the Bidding

26   _____

27   [2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Procedures) and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that the Debtors, with the consent of the Committee and in consultation with the DIP Agent, are authorized to enter into an asset purchase agreement with a Stalking Horse Bidder with respect to all or a portion of the Assets (a "Stalking Horse APA") not later than February 5, 2016. In the event that the Debtors enter into one or more Stalking Horse APAs, the Debtors will file with the Court and serve on the following parties: (i) Debtors' Independent Sales Representative, Robert P. Mosier, email: rmosier@mosierco.com; (ii) counsel to the Debtors: Lobel Weiland Golden Friedman LLP (Attn: William N. Lobel, Esq., facsimile: (714) 966-1002, email: wlobel@lwgfllp.com and Alan J. Friedman, Esq., facsimile: (714) 966-1002, email: afriedman@lwgfllp.com), (iii) investment banker for the Debtors, FTI Capital Advisors, LLC (Attn: Christopher Nicholls; facsimile: (212) 499-3636, email: chris.nichols@fticonsulting.com and Michael VanderLey; facsimile: (415) 283-4277, email: mike.vanderley@fticonsulting.com), (iv) counsel to the Committee: Pachulski Stang Ziehl & Jones (Attn: Robert J. Feinstein, Esq., facsimile: (212) 561-7777, email: rfeinstein@pszjlaw.com and Jeffrey W. Dulberg, Esq., facsimile: (310) 201-0760, email: jdulberg@pszjlaw.com), (v) financial advisor to the Committee: Alvarez and Marsal (Attn: Brian Whittman, email BWhittman@alvarezandmarsal.com), and (vi) counsel to the DIP Agent: Munger, Tolles & Olson LLP (Attn: Seth Goldman, Esq., facsimile: (213) 687-3702, email: seth.goldman@mto.com) (such parties collectively defined as the "Notice Parties"), and (vii) the Office of the United States Trustee (Attn: Frank Cadigan, Esq., facsimile: (714) 338-3421, email: frank.cadigan@usdoj.gov; and Attn: Michael Hauser, Esq., facsimile: (714) 338-3421, email: michael.hauser@usdoj.gov), a notice that includes the following: (a) the identification of the Stalking Horse Bidder(s); (b) a copy of the Stalking Horse APA(s); (c) the purchase price provided for in the applicable Stalking Horse APA (the "Stalking Horse Purchase Price"); (d) the deposit paid by the applicable Stalking Horse Bidder; and (e) the amount of any Break-Up Fee and/or any Expense Reimbursement (as such terms are defined in the Bidding Procedures Order) being provided to the Stalking Horse Bidder in connection with the Stalking Horse APA. Any Stalking Horse APA entered into by the Debtors shall be subject to higher or otherwise better offers or combinations of offers, as provided herein. For the avoidance of doubt, the Debtors reserve the right to enter into multiple and/or separate Stalking Horse APAs, e.g., a Stalking Horse APA for their newspaper assets and a Stalking Horse APA for the Santa Ana real property.

**PLEASE TAKE FURTHER NOTICE** that the Court has set March 11, 2016, at 5:00 p.m. (prevailing Pacific Time) as the Bid Deadline by which any Potential Bidder that desires to make an Initial Overbid must deliver written copies of its Qualified Bid to the Notice Parties. The Debtors may, exercising their business judgment after consultation with the Consultation Parties, extend the Bid Deadline.

**PLEASE TAKE FURTHER NOTICE** that, if a Stalking Horse Bidder is selected for all of the Debtors' assets and if no timely, conforming Initial Overbid or other bid in accordance with the Bidding Procedures is received, the Debtors shall not conduct an Auction, and following the Bid Deadline, the Stalking Horse Bidder will be named the

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Successful Bidder and, upon the Debtors' request, the Court will consider the approval of the Debtors' entry into the Stalking Horse APA at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, If (i) a Stalking Horse Bidder is selected and one or more timely conforming Initial Overbids is received, (ii) no Stalking Horse Bidder is selected but two or more timely conforming Initial Overbids are received, or (iii) as otherwise provided by the Bid Procedures, the Debtors will conduct the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Auction, if necessary, shall be held on March 16, 2016, at 10:00 a.m. (prevailing Pacific Time) at the offices of Lobel Weiland Golden Friedman LLP, 650 Town Center Drive, Suite 950, Costa Mesa, California 92626, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder(s) (the "Sale Hearing") on March 21, 2016, at _____ (prevailing Pacific Time), before the United States Bankruptcy Court for the Central District of California, Santa Ana Division, Ronald Reagan Federal Building and U.S. Courthouse, 411 West Fourth Street, Santa Ana, CA 92701. Any objections to the Sale shall be filed and served so as to be received no later than 9:00 a.m. (prevailing Pacific Time) on the date of the Sale Hearing by (a) the Notice Parties, and (b) the Office of the United States Trustee. Any replies to objections to the Sale shall be heard the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, with the consent of the Consultation Parties, the Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtors shall have the right, in the exercise of their business judgment, after consultation with the Consultation Parties, to terminate the Sale at any time.

**PLEASE TAKE FURTHER NOTICE** that this Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, Bidding Procedures Order, and Bidding Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. A copy of the Motion, Bidding Procedures, and/or Bidding Procedures Order may be obtained from the Debtors' claims and noticing agent, Donlin Recano & Company, Inc., (i) at their website (www.donlinrecano.com/freedom) (ii) by phone at (212) 771-1128, (iii) by email to claims@donlinrecano.com, or (iv) by written request to Donlin, Recano & Company, Inc., Re: Freedom Communications, Inc., et al., 6201 15th Avenue, Brooklyn, NY 11219.

/ /

/ /

/ /

**PLEASE TAKE FURTHER NOTICE** that, if you are a counterparty to an executory contract or unexpired lease with the Debtors, you may receive a separate Notice of Potential Assumption and Assignment advising you of certain dates, deadlines and procedures in connection with any proposed assumption and assignment of such contract or lease in connection with the Sale.

Dated:  January __, 2016                    LOBEL WEILAND GOLDEN FRIEDMAN LLP

By _____
                                   WILLIAM N. LOBEL
                                   ALAN J. FRIEDMAN
                                   Attorneys for Debtors and
                                   Debtors-in-Possession

1054190.3                                   - 6 -                         PROCEDURES NOTICE

# EXHIBIT "3"

**PUBLICATION NOTICE**

UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

IN RE FREEDOM COMMUNICATIONS, INC., *et al.*

**NOTICE OF SALE PROCEDURES, AUCTION DATE AND SALE HEARING
RELATING TO THE SALE OF SUBSTANTIALLY ALL ASSETS**

**PLEASE TAKE NOTICE** that, on January [__], 2016, Freedom Communications, Inc. and its related debtors and debtors-in-possession in jointly-administered chapter 11 cases currently pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), under Lead Case No. 8:15-bk-15311-MW (the "Debtors"), filed the *Debtors' Motion For Entry Of Orders: (I)(A) Approving Procedures In Connection With Sale Of Substantially All Of Debtors' Assets, (B) Authorizing, But Not Requiring, The Granting Of Stalking Horse Protections To Potential Stalking Horse Bidder(s), (C) Scheduling Related Auction And Hearing To Consider Approval Of Sale, (D) Approving Procedures Related To Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (E) Approving Form And Manner Of Notice Thereof, And (II)(A) Authorizing Sale Of Substantially All Of Debtors' Assets Pursuant To Successful Bidder(s)' Asset Purchase Agreement, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests, And (B) Approving Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto* (the "Motion").  Pursuant to the Motion, the Debtors seek, among other things, approval to sell, in one or more lots, substantially all of their assets, comprised mainly of the Debtors' print publications, interactive businesses and real property holdings (the "Assets") to the successful bidder(s) (the "Successful Bidder(s)") through a competitive bidding process, free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code (the "Sale").

**PLEASE TAKE FURTHER NOTICE** that, on January [__], 2016, the Bankruptcy Court entered an order (the "Bidding Procedures Order") establishing the Bidding Procedures, which set forth the key dates, deadlines and procedures related to the Sale of the Assets.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are authorized to enter into asset purchase agreement(s) with one or more Stalking Horse Bidder(s) with respect to all or a portion of the Assets not later than **February 5, 2016**, subject to higher or otherwise better offers or combinations of offers as set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Court has set **March 11, 2016, at 5:00 p.m. (prevailing Pacific Time)** as the Bid Deadline by which a Potential Bidder that desires to make an Initial Overbid for some or all of the Assets must deliver written copies of its Qualified Bid to the Notice Parties (as such terms are defined in the Bidding Procedures Order).

**PLEASE TAKE FURTHER NOTICE** that, if a Stalking Horse Bidder is selected for all of the Debtors' assets and if no timely, conforming Initial Overbid or other bid in accordance with the Bidding Procedures is received, the Debtors shall not conduct an Auction, and following the Bid Deadline, the Stalking Horse Bidder will be named the Successful Bidder and, upon the Debtors' request, the Court will consider the approval of the Debtors' entry into the Stalking Horse asset purchase agreement at the Sale Hearing  If (i) a Stalking Horse Bidder is selected and one or more timely conforming Initial Overbids is received, (ii) no Stalking Horse Bidder is selected but two or more timely conforming Initial Overbids are received, or (iii) as otherwise provided by the Bidding Procedures, the Debtors will conduct the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Auction, if necessary, shall be held on **March 16, 2016, at 10:00 a.m. (prevailing Pacific Time)** at the offices of Lobel Weiland Golden Friedman LLP, 650 Town Center Drive, Suite 950, Costa Mesa, California 92626, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder(s) (the "Sale Hearing") on **March 21, 2016, at _____ (prevailing Pacific Time)**, before the United States Bankruptcy Court for the Central District of California, Santa Ana Division, Ronald Reagan Federal Building and U.S. Courthouse, 411 West Fourth Street, Santa Ana, CA 92701.  Any objections to the Sale shall be filed and served so as to be received no later than 9:00 a.m. (prevailing Pacific Time) on the date of the Sale Hearing by (a) the Notice Parties, and (b) the Office of the United States Trustee.  Any replies to objections to the Sale shall be heard the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Sale Procedures, Auction Date and Sale Hearing is subject to the full terms and conditions of the Motion, Bidding Procedures Order, and Bidding Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.  A copy of the Motion, Bidding Procedures Order, and/or Bidding Procedures Order may be obtained from the Debtors' claims and noticing agent, Donlin Recano & Company, Inc., (i) at their website (www.donlinrecano.com/freedom) (ii) by phone at (212) 771-1128, (iii) by email to claims@donlinrecano.com, or (iv) by written request to Donlin, Recano & Company, Inc., Re: Freedom Communications, Inc., et al., 6201 15th Avenue, Brooklyn, NY 11219.

**BY ORDER OF THE COURT**

# EXHIBIT "4"

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT**

1 | William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
2 | Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
3 | Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
4 | Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
5 | **LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
6 | Costa Mesa, California 92626
Telephone    714-966-1000
7 | Facsimile    714-966-1002

8 | Attorneys for Debtors and Debtors-in-Possession

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| 11   In re | Case No. 8:15-bk-15311-MW |
| 12   FREEDOM COMMUNICATIONS, INC., *et al.*,[1] | Chapter 11 |
| 13 | (Jointly Administered with Case Nos. |
| 14              Debtors and<br>          Debtors-in-Possession. | 8:15-bk-15312-MW; 8:15-bk-15313-MW;<br>8:15-bk-15315-MW; 8:15-bk-15316-MW; |
| 15   Affects: | 8:15-bk-15317-MW; 8:15-bk-15318-MW;<br>8:15-bk-15319-MW; 8:15-bk-15320-MW; |
| 16   ☒  All Debtors | 8:15-bk-15321-MW; 8:15-bk-15322-MW;<br>8:15-bk-15323-MW; 8:15-bk-15324-MW; |
| 17   ☐  Freedom Communications, Inc., a | 8:15-bk-15325-MW; 8:15-bk-15326-MW;<br>8:15-bk-15327-MW; 8:15-bk-15328-MW; |
| 18   Delaware corporation, ONLY | 8:15-bk-15329-MW; 8:15-bk-15330-MW;<br>8:15-bk-15332-MW; 8:15-bk-15337-MW; |
| 19   ☐  Freedom Communications Holdings,<br>Inc., a Delaware corporation, ONLY | 8:15-bk-15339-MW; 8:15-bk-15340-MW;<br>8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| 20 | |

21

22    [1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom
Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc.
23    (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610);
Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735);
24    Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom
Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom
25    Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona,
Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register
26    Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company
(7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom
27    SPV IV, LLC (8500); and Freedom SPV V, LLC (9036).  The Debtors' mailing address is 625 N. Grand
Avenue, Santa Ana, California 92701.

28

1054196.3                                         - 1 -                    NOTICE OF POTENTIAL
ASSUMPTION AND ASSIGNMENT

*Lobel Weiland Golden Friedman LLP*
*650 Town Center Drive, Suite 950*
*Costa Mesa, California 92626*
*Tel 714-966-1000 • Fax 714-966-1002*

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  ☐  Freedom Services, Inc., a Delaware corporation, ONLY

2

3  ☐  2100 Freedom, Inc., a Delaware corporation, ONLY

4  ☐  OCR Community Publications, Inc., a California corporation, ONLY

5

6  ☐  Daily Press, LLC, a California limited liability company, ONLY

7  ☐  Freedom California Mary Publishing, Inc., a California corporation, ONLY

8

9  ☐  Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

10

11  ☐  Freedom Colorado Information, Inc., a Delaware corporation, ONLY

12  ☐  Freedom Interactive Newspapers, Inc., a California corporation, ONLY

13

14  ☐  Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

15  ☐  Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

16

17  ☐  Freedom Newspapers, a Texas general partnership, ONLY

18  ☐  Freedom Newspapers, Inc., a Delaware corporation, ONLY

19

20  ☐  Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

21

22  ☐  OCR Information Marketing, Inc., a California corporation, ONLY

23  ☐  Odessa American, a Texas general partnership, ONLY

24

25  ☐  Orange County Register Communications, Inc., a California corporation, ONLY

26

27  ☐  Victor Valley Publishing Company, a California corporation, ONLY

28

**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH SALE OF ASSETS**

1054196.3

NOTICE OF POTENTIAL
ASSUMPTION AND ASSIGNMENT

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1   ☐ Victorville Publishing Company, a
California limited partnership, ONLY

2

3   ☐ Freedom SPV II, LLC, a Delaware
limited liability company, ONLY

4   ☐ Freedom SPV VI, LLC, a Delaware
limited liability company, ONLY

5

6   ☐ Freedom SPV I, LLC, a Delaware
limited liability company, ONLY

7   ☐ Freedom SPV IV, LLC, a Delaware
limited liability company, ONLY

8

9   ☐ Freedom SPV V, LLC, a Delaware
limited liability company, ONLY

10

11

12   **PLEASE TAKE NOTICE** that, on January 13, 2016, Freedom Communications, Inc. and its related debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors") filed the Debtors' Motion For Entry Of Orders: (I)(A) Approving Procedures In Connection With Sale Of Substantially All Of Debtors' Assets, (B) Authorizing, But Not Requiring, The Granting Of Stalking Horse Protections To Potential Stalking Horse Bidder(s), (C) Scheduling Related Auction And Hearing To Consider Approval Of Sale, (D) Approving Procedures Related To Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (E) Approving Form And Manner Of Notice Thereof, And (II)(A) Authorizing Sale Of Substantially All Of Debtors' Assets Pursuant To Successful Bidder(s)' Asset Purchase Agreement, Free And Clear Of Liens, Claims, Encumbrances, And Other Interests, And (B) Approving Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto (the "Motion").[2]  Pursuant to the Motion, the Debtors seek, among other things, to sell, in one or more lots, substantially all of their assets (the "Assets") to the successful bidder(s) (the "Successful Bidder(s)") through a competitive bidding process, free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code (the "Sale").

13

14

15

16

17

18

19

20

21

22   **PLEASE TAKE FURTHER NOTICE** that, on January [__], 2016, the Bankruptcy Court entered an order approving the Motion (the "Bidding Procedures Order"), which sets forth the key dates, deadlines and procedures related to the Sale of the Assets, including with respect to procedures for the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code (the "Contracts").  Parties should carefully read the Bidding Procedures

23

24

25

26   _____

27   **[2]** Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

28

Order.  To the extent that there are any inconsistencies between the Bidding Procedures Order and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that a hearing approve the sale of the Assets and the assumption and assignment of the Contracts to the Successful Bidder(s) (the "Sale Hearing") will be held on March __, 2016, at _____ (prevailing Pacific Time), before the United States Bankruptcy Court for the Central District of California, Santa Ana Division, Ronald Reagan Federal Building and U.S. Courthouse, 411 West Fourth Street, Santa Ana, CA 92701.  With the consent of the Consultation Parties, the Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Cure Procedures outlined in the Bidding Procedures Order, the Debtors are delivering this notice (the "Notice of Potential Assumption and Assignment") identifying (i) the Designated Executory Contracts which may be assumed by the Debtors and assigned as part of the Sale(s); and (ii) the proposed cure amount (the "Cure Amount" as of the date hereof (the "Cure Date") for each Designated Executory Contract identified on the Notice of Potential Assignment and Assumption.

**PLEASE TAKE FURTHER NOTICE** that you have been identified as a party to a Designated Executory Contract that the Debtors may seek to assume and assign as part of the Sale(s).  The Designated Executory Contract with respect to which you have been identified as a non-debtor counterparty, and the corresponding proposed Cure Amount as of the Cure Date, if any, has been set forth on Exhibit 1 attached hereto.

**PLEASE TAKE FURTHER NOTICE** that the identification of a Designated Executory Contract in the Notice of Potential Assumption and Assignment shall not constitute an admission by the Debtors that such contract or lease is an executory contract or unexpired lease or that such contract or lease will be assumed and assigned. The Debtors reserve all of their rights, claims, and causes of action with respect to the Designated Executory Contracts listed in a Notice of Potential Assumption and Assignment.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the scheduled Cure Amount and/or the assumption, assignment and/or transfer of any Designated Executory Contract listed on the Notice of Potential Assumption and Assignment must be made in writing, filed with the Bankruptcy Court, 411 West Fourth Street, Santa Ana, CA 92701, and served so as to be received by the following parties on or before March 11, 2016 (the "Cure/Assignment Objection Deadline"): (i) the Debtors' Independent Sales Representative, Robert P. Mosier, email: rmosier@mosierco.com; (ii) counsel to the Debtors: Lobel Weiland Golden Friedman LLP (Attn: William N. Lobel, Esq., facsimile: (714) 966-1002, email: wlobel@lwgfllp.com and Alan J. Friedman, Esq., facsimile: (714) 966-1002, email: afriedman@lwgfllp.com), (iii) the Debtors' investment banker, FTI Capital Advisors, LLC (Attn: Christopher Nicholls; facsimile: (212) 499-3636, email:

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

chris.nichols@fticonsulting.com and Michael VanderLey; facsimile: (415) 283-4277, email: mike.vanderley@fticonsulting.com), (iv) counsel to the Official Committee of Unsecured Creditors: Pachulski Stang Ziehl & Jones (Attn: Robert J. Feinstein, Esq., facsimile: (212) 561-7777, email: rfeinstein@pszjlaw.com and Jeffrey W. Dulberg, Esq., facsimile: (310) 201-0760, email: jdulberg@pszjlaw.com), (v) the Committee's financial advisor: Alvarez and Marsal (Attn: Brian Whittman, email BWhittman@alvarezandmarsal.com); (vi) counsel to the DIP Agent:  Munger, Tolles & Olson LLP (Attn:  Seth Goldman, Esq., facsimile:  (213) 687-3702, email: seth.goldman@mto.com), and (vii) the Office of the United States Trustee (Attn: Frank Cadigan, Esq., facsimile:  (714) 338-3421, email:  frank.cadigan@usdoj.gov; and Attn: Michael Hauser, Esq., facsimile:  (714) 338-3421, email:  michael.hauser@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that, unless a Cure/Assignment Objection is filed by the Cure/Assignment Deadline, then such non-debtor party will (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts as of the Cure Date with respect to such Designated Executory Contract against the Debtors, the Successful Bidder or any other party and such parties shall be entitled to rely solely upon the Cure Amount, and (b) subject to paragraph 16 of the Bidding Procedures Order (and as set forth below), be deemed to have consented to the assumption, assignment and/or transfer of such Designated Executory Contract, notwithstanding any consent right that such party could have asserted, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or any other assignee of the relevant Designated Executory Contract that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied, as of the Cure Date, under such Designated Executory Contract.

**PLEASE TAKE FURTHER NOTICE** that, if an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. The Debtors, in their discretion, may in good faith (i) resolve any disputed Claimed Cure Amount without further order of the Court, or (ii) pursue a contested determination by this Court of any disputed Claimed Cure Amount.  Subject to the foregoing, if the Debtors hold a Claimed Cure Amount in reserve as a result of an objection to a Cure Amount, then the Debtors may assume and assign the Designated Executory Contract that is the subject of such objection prior to the resolution of such objection and without further delay.

**PLEASE TAKE FURTHER NOTICE** that, within 24 hours after the conclusion of the Auction (if any) (or, if no Auction is held, within 24 hours after a determination that the Stalking Horse Bidder is the Successful Bidder in accordance with the Bidding Procedures), the Debtors shall file a notice identifying the Successful Bidder(s) with the Bankruptcy Court and shall serve such notice by fax, email, or overnight mail to all counterparties whose contracts are to be assumed and assigned pursuant to such Successful Bidder's Purchase Agreement.

**PLEASE TAKE FURTHER NOTICE** that, the counterparties to the Designated Executory Contracts may, at or prior to the Sale Hearing, object to the assumption,

assignment, and/or transfer of such Designated Executory Contract solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code. Any non-debtor party to a Designated Executory Contract that does not object to the assignment of its respective Designated Executory Contract shall be deemed to have consented to the assumption, assignment, and/or transfer of such Designated Executory Contract to the Successful Bidder. For the avoidance of any doubt, nothing in this paragraph shall extend, shorten or otherwise affect the time period, or the ability to otherwise object, to any Cure Amount.

**PLEASE TAKE FURTHER NOTICE** that any unresolved objections to any Cure Amount or the assumption and assignment of any Designated Executory Contract will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors subject to the Court's calendar.

**PLEASE TAKE FURTHER NOTICE** that, except to the extent otherwise provided in the Successful Bidder's Purchase Agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising after the assumption and assignment of the Contracts pursuant to section 365(k) of the Bankruptcy Code.

Dated: January ___, 2016                LOBEL WEILAND GOLDEN FRIEDMAN LLP


By _____
                              WILLIAM N. LOBEL
                              ALAN J. FRIEDMAN
                              Attorneys for Debtors and
                              Debtors-in-Possession

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1054196.3                                - 6 -                        NOTICE OF POTENTIAL
                                                                  ASSUMPTION AND ASSIGNMENT

| In re:                                                                 | CHAPTER: **11** |
|---|---|
| **Freedom Communications, Inc., a Delaware corporation, Inc., et al.**<br><br>Debtor(s). | CASE NUMBER: **8:15-bk-15311-MW**<br>**(Jointly Administered)** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 950
Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled **DEBTORS' MOTION FOR ENTRY OF ORDERS: (I)(A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (B) AUTHORIZING, BUT NOT REQUIRING, THE GRANTING OF STALKING HORSE PROTECTIONS TO POTENTIAL STALKING HORSE BIDDER(S), (C) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE, (D) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (II)(A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO SUCCESSFUL BIDDER(S)' ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 13, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 13, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

(Attorney Service)
The Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, 6th Floor Courtesy Bin
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 1/13/2016 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: **Freedom Communications, Inc., a Delaware corporation, Inc., et al.** Debtor(s). | CHAPTER **11** CASE NUMBER **8:15-bk-15311-MW** (Jointly Administered) |
|---|---|

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- **James C Behrens**   jbehrens@greenbergglusker.com, kwoodson@ggfirm.com;calendar@ggfirm.com
- **Ron Bender**   rb@lnbyb.com
- **J Scott Bovitz**   bovitz@bovitz-spitzer.com
- **Frank Cadigan**   frank.cadigan@usdoj.gov
- **Brian L Davidoff**   bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
- **Michael T Delaney**   mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
- **Caroline Djang**   cdjang@rutan.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Robert J Feinstein**   rfeinstein@pszjlaw.com
- **Alan J Friedman**   afriedman@wgllp.com, nlockwood@wgllp.com;jokeefe@wgllp.com;banavim@wgllp.com
- **Beth Gaschen**   bgaschen@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- **Nancy S Goldenberg**   nancy.goldenberg@usdoj.gov
- **Seth Goldman**   seth.goldman@mto.com
- **Christopher J Green**   cgreen@wgllp.com, chrisgreen@ucla.com;kadele@wgllp.com
- **Michael J Hauser**   michael.hauser@usdoj.gov
- **M Jonathan Hayes**   jhayes@srhlawfirm.com, roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;staci@srhlawfirm.com;jhayesecf@gmail.com;sevan@srhlawfirm.com;carolyn@srhlawfirm.com
- **Eric M Heller**   eric.m.heller@irscounsel.treas.gov
- **James O Johnston**   jjohnston@jonesday.com
- **Samuel M Kidder**   skidder@bhfs.com
- **Elan S Levey**   elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- **William N Lobel**   wlobel@lwgfllp.com, nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Aaron J Malo**   amalo@sheppardmullin.com, jsummers@sheppardmullin.com
- **Ashley M McDow**   amcdow@bakerlaw.com, mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Reed M Mercado**   rmercado@sheppardmullin.com
- **Elizabeth L Musser**   emusser@tresslerllp.com
- **Ernie Zachary Park**   ernie.park@bewleylaw.com
- **Ronak Patel**   rpatel@co.riverside.ca.us, mdominguez@co.riverside.ca.us
- **Courtney E Pozmantier**   cpozmantier@greenbergglusker.com, kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- **Christopher E Prince**   cprince@lesnickprince.com
- **Christopher O Rivas**   crivas@reedsmith.com
- **Jeremy E Rosenthal**   jrosenthal@sidley.com
- **Peter J Rudinskas**   pjr.legal@gmail.com
- **Leonard M Shulman**   lshulman@shbllp.com
- **Donald W Sieveke**   ibmoola@yahoo.com, dws4law@pacbell.net
- **David P Simonds**   dsimonds@akingump.com, tsouthwell@akingump.com
- **Sarah Stuppi**   Sarah@stuppilaw.com
- **Helena Tseregounis**   htseregounis@sidley.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **Monika S Wiener**   mwiener@jonesday.com, kfloyd@jonesday.com
- **Beth Ann R Young**   bry@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**