1  William N. Lobel, State Bar No. 93202
   wlobel@lwgfllp.com
2  Alan J. Friedman, State Bar No. 132580
   afriedman@lwgfllp.com
3  Beth E. Gaschen, State Bar No. 245894
   bgaschen@lwgfllp.com
4  Christopher J. Green, State Bar No. 295874
   cgreen@lwgfllp.com
5  **LOBEL WEILAND GOLDEN FRIEDMAN LLP**
   650 Town Center Drive, Suite 950
6  Costa Mesa, California 92626
   Telephone    714-966-1000
7  Facsimile    714-966-1002

8  Attorneys for Debtors and Debtors-in-Possession

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11             **SANTA ANA DIVISION**

| | |
|---|---|
| 12 In re | Case No. 8:15-bk-15311-MW |
| 13 FREEDOM COMMUNICATIONS, INC., *et al.*, | Chapter 11 |
| 14                Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; |
| 15 Affects: | 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; |
| 16 ☒  All Debtors | 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; |
| 17 ☐  Freedom Communications, Inc., a Delaware corporation, ONLY | 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; |
| 18 | 8:15-bk-15339-MW; 8:15-bk-15340-MW; |
| 19 ☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| 20 ☐  Freedom Services, Inc., a Delaware corporation, ONLY | |
| 21 ☐  2100 Freedom, Inc., a Delaware corporation, ONLY | **REPLY REGARDING BID PROCEDURES COMPONENT OF THE DEBTORS'** |
| 22 | **MOTION FOR ENTRY OF ORDERS: (I)(A) APPROVING PROCEDURES IN** |
| 23 ☐  OCR Community Publications, Inc., a California corporation, ONLY | **CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS'** |
| 24 ☐  Daily Press, LLC, a California limited liability company, ONLY | **ASSETS, (B) AUTHORIZING, BUT NOT REQUIRING, THE GRANTING OF STALKING HORSE PROTECTIONS TO** |
| 25 | **POTENTIAL STALKING HORSE** |
| 26 ☐  Freedom California Mary Publishing, Inc., a California corporation, ONLY | **BIDDER(S), (C) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE, (D) APPROVING** |
| 27 ☐  Freedom California Ville Publishing Company LP, a California limited partnership, ONLY | **PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS** |

*Lobel Weiland Golden Friedman LLP*
*650 Town Center Drive, Suite 950*
*Costa Mesa, California 92626*
*Tel 714-966-1000   Fax 714-966-1002*

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1

2  ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

3  ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

4

5  ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

6  ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

7

8  ☐ Freedom Newspapers, a Texas general partnership, ONLY

9  ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

10

11  ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

12

13  ☐ OCR Information Marketing, Inc., a California corporation, ONLY

14  ☐ Odessa American, a Texas general partnership, ONLY

15

16  ☐ Orange County Register Communications, Inc., a California corporation, ONLY

17

18  ☐ Victor Valley Publishing Company, a California corporation, ONLY

19  ☐ Victorville Publishing Company, a California limited partnership, ONLY

20

21  ☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

22  ☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

23

24  ☐ Freedom SPV I, LLC, a Delaware limited liability company, ONLY

25  ☐ Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

26

27  ☐ Freedom SPV V, LLC, a Delaware limited liability company, ONLY

28

**AND UNEXPIRED LEASES, AND (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (II)(A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO SUCCESSFUL BIDDER(S)' ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO**

**DATE:    February 1, 2016**
**TIME:    2:00 p.m.**
**Ctrm:    6C**

1  **TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE,**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER INTERESTED**

3  **PARTIES:**

4         Freedom Communications, Inc. and its related debtors and debtors-in-possession in

5  the above-captioned chapter 11 cases (the "Debtors"), hereby file this Reply in connection

6  with the Bidding Procedures aspects of the *Debtors' Motion For Entry Of Orders:  (I)(A)*

7  *Approving Procedures In Connection With Sale Of Substantially All Of Debtors' Assets,*

8  *(B) Authorizing, But Not Requiring, The Granting Of Stalking Horse Protections To*

9  *Potential Stalking Horse Bidder(s), (C) Scheduling Related Auction And Hearing To*

10  *Consider Approval Of Sale, (D) Approving Procedures Related To Assumption And*

11  *Assignment Of Certain Executory Contracts And Unexpired Leases, And (E) Approving*

12  *Form And Manner Of Notice Thereof, And (II)(A) Authorizing Sale Of Substantially All Of*

13  *Debtors' Assets Pursuant To Successful Bidder(s)' Asset Purchase Agreement, Free And*

14  *Clear Of Liens, Claims, Encumbrances, And Other Interests, And (B) Approving*

15  *Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases*

16  *Related Thereto* (the "Bidding Procedures and Sale Motion").[1]

17         The Debtors have received comments from a handful of creditors and interested

18  parties relating to the Bidding Procedures and other aspects of the Bidding Procedures

19  and Sale Motion.  The Debtors have worked to consensually resolve these issues and, as

20  set forth in this Reply and as incorporated into the revised Bidding Procedures (a redlined

21  copy of which attached hereto as Exhibit A) and revised Bidding Procedures Order (a

22  redlined copy of which attached hereto as Exhibit B), the Debtors believe that such issues

23  have been, or will be, resolved to the satisfaction of the key constituents.  The changes

24  reflected herein and in the revised Bidding Procedures and Bidding Procedures Order

25  

26  _____

27  [1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bidding Procedures and Sale Motion.

28  

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  have the approval of the Official Committee of Unsecured Creditors (the "<u>Committee</u>") and

2  Silver Point Finance, LLC (the "<u>DIP Agent</u>").[2]

3      Specifically, creditors and parties-in-interest have raised the following issues:

4      1.    The Pension Benefit Guaranty Corporation (the "<u>PBGC</u>"), one of the largest

5  secured creditors of the estates, has requested that it be included as a "Consultation

6  Party" in connection with the Auction and Sale, along with representatives of the

7  Committee and the DIP Agent, respectively.  The Bidding Procedures have been revised

8  to include the PBGC as one of the Consultation Parties.  *See* <u>Exhibit A</u>, Bidding

9  Procedures, revised Section I.  This revision resolves all issues raised by the PBGC.

10     2.    Tribune Publishing (the "<u>Tribune</u>"), a potential bidder in connection with the

11 Auction, has requested that any deposit made by a potential bidder be held by an entity

12 other than the Debtors.  The Bidding Procedures have been revised to provide that

13 deposits will be held in the client trust account of counsel to the Committee, Pachulski

14 Stang Ziehl & Jones LLP ("<u>PSZJ</u>").  PSZJ will provide wire instructions on "as requested"

15 basis for said account.  *See* <u>Exhibit A</u>, Bidding Procedures, revised Section II.D.2.  This

16 change resolves all issues raised by the Tribune.

17     3.    MediaNews Group, Inc. d/b/a Digital First Media ("<u>DFM</u>"), a potential bidder

18 in connection with the Auction, filed a limited objection, statement and reservation of rights

19 in connection with the Bidding Procedures aspects of the Bidding Procedures and Sale

20 Motion (the "<u>Limited Objection</u>") [Dkt.  No. 346].  As noted by DFM, the issues raised in

21 the Limited Objection have been the subject of discussions between DFM and the

22 Debtors, as well as the Committee and Silver Point, and the Debtors believe that the

23 issues raised by DFM in the Limited Objection will be consensually resolved as follows:

24

25  ────────────

26  [2] While the Debtors have attempted to obtain final approval from all interested parties as to the precise language set forth in the revised Bidding Procedures and Bidding Procedures Order – which language is designed to resolve all outstanding matters raised in connection therewith, it is

27  possible that there may be some changes to the language prior to, at or as a result of the hearing on approval of the Bidding Procedures aspect of the Bidding Procedures and Sale Motion

28  scheduled for February 1, 2016.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

a. *Deadline to Designate a Stalking Horse Bidder (Limited Objection, ¶ 1)*.  By the Limited Objection, DFM requests that the deadline for submitting a Stalking Horse Bid – currently proposed for February 5, 2016 – be extended.  The Bidding Procedures have been revised to provide for a one-week extension of the deadline until February 12, 2016.  *See* Exhibit A, Bidding Procedures, revised Section II.A.  The Debtors believe that this extension provides for a reasonable amount of time following the hearing on approval of the Bidding Procedures for potential bidders to assess and formulate any Stalking Horse Bid, and is appropriate in light of the timing relating to the Auction and Sale (which are structured to proceed with, or without, a Stalking Horse Bid(s)).  With this change, the Debtors believe that DFM's issues in this regard have been appropriately addressed.

b. *Timing re Assumption and Assignment or Rejection (Limited Objection, ¶ 2)*.  The Debtors have revised the Bidding Procedures and Bidding Procedures Order to provide for a Successful Bidder to have an opportunity following the Auction to evaluate the Debtors' executory contracts and unexpired leases, negotiate with the counter-parties thereto and designate them for assumption and assignment; provided that the Successful Bidder identifies such contracts and/or leases subject to potential assumption and assignment within 2 days of the Auction and makes all payments under such executory contracts and/or unexpired leases that become due during this period.  To the extent additional contracts and/or leases are designated by the Successful Bidder during the post-Auction period, the assumption and assignment thereof will be the subject of a further motion filed by the Debtors.  *See* Exhibit A, Bidding Procedures, revised Section II.I; Exhibit B, Bidding Procedures Order, revised ¶ 15.  With this change, the Debtors believe that DFM's issues in this regard have been appropriately addressed.

c. *Potential Restricted Access to the Data Room (Limited Objection, ¶ 3)*.  The Debtors have revised the Bidding Procedures to provide that, in the event that a Potential Bidder is designated a "competitor" by the Debtors such that its access to the Data Room is limited in accordance with the Bidding Procedures, such Potential Bidders' counsel and/or financial advisors (subject to the execution of an appropriate confidentiality

1  agreement) will be allowed to review the withheld documents and information. *See*

2  Exhibit A, Bidding Procedures, revised Section II.C. With this change, the Debtors believe

3  that DFM's issues in this regard have been appropriately addressed.[3]

4  　　　　d. *Designation as a Potential Bidder (Limited Objection, ¶ 4)*. The Debtors

5  intend to continue to work with DFM in connection with DFM's designation as a Potential

6  Bidder, including executing an appropriate confidentiality agreement pursuant to which

7  DFM will provide its financial statements to the Debtors. Assuming that DFM meets the

8  qualifications for a Potential Bidder as set forth in the Bidding Procedures, the Debtors

9  anticipate that DFM will be designated a Potential Bidder in connection with the Auction.

10  　　With the above-referenced changes to the Bidding Procedures and the Bidding

11  Procedures Order, as reflected in the redlines attached hereto as Exhibit A and Exhibit B,

12  respectively, the Debtors believe that all outstanding issues raised, formally and

13  informally, with respect to the Bidding Procedures aspects of the Bidding Procedures and

14  Sale Motion have been resolved.

15  　　The Debtors therefore, with the consent and approval of the Committee and Silver

16  Point, request that the Court approve the Bidding Procedures aspects of the Bidding

17  Procedures and Sale Motion, as requested therein and as modified hereby.

18  Dated:   January 28, 2016　　　　　　　LOBEL WEILAND GOLDEN FRIEDMAN LLP

19

20  　　　　　　　　　　　　　　　　　　By _____

21  　　　　　　　　　　　　　　　　　　　　WILLIAM N. LOBEL
    　　　　　　　　　　　　　　　　　　　　ALAN J. FRIEDMAN
    　　　　　　　　　　　　　　　　　　　　Attorneys for Debtors and
22  　　　　　　　　　　　　　　　　　　　　Debtors-in-Possession

23

24

25

26

27

28  [3] The Debtors have been advised that DFM will be formally withdrawing its Limited Objection.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

EXHIBIT "A"

#

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed in connection with the sale of the Assets (as defined below), which constitute substantially all of the assets of Freedom Communications, Inc. and its related debtors and debtors-in-possession (collectively, the "Debtors") in connection with the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the Central District of California, Santa Ana division (the "Bankruptcy Court"), under Lead Case No. 8:15-bk-15311-MW.

I.    **ASSETS TO BE SOLD**

The Debtors shall market the sale, in one or more lots,[1] of all of their assets (each distinct asset or collections of assets is referred to herein as "Assets"), including, without limitation, real estate interests, operating assets, accounts receivable, executory contracts and leases, free and clear of any and all claims and liens, with such liens and claims to attach to the proceeds of the sale(s) in accordance with the Sale Order (as defined herein), the Bankruptcy Court's order approving the Debtors' use of cash collateral and debtor in possession financing entered on December 17, 2015 [Dkt. No. 239] (the "DIP Order"), and the DIP Credit Agreement (as defined in the DIP Order and as filed with the Bankruptcy Court on December 14, 2015).  During the sale process, the Debtors shall consult (the "Consultation Requirement") with representatives of the Official Committee of Unsecured Creditors (the "Committee") and), Silver Point Finance, LLC (the "DIP Agent" and,") and the Pension Benefit Guaranty Corporation (together with the Committee and the DIP Agent, the "Consultation Parties"); provided that if the DIP Lenders (as defined in the DIP Order) bid for the Assets, the Consultation Requirement as to the DIP Agent shall not apply to the aspects of the sale process for which the Debtors and the Committee determine that compliance with the Consultation Requirement would provide the DIP Lenders with information that would unfairly benefit them as a potential bidder.

II.    **THE BIDDING PROCEDURES**

In order to ensure that the Debtors receive the maximum value for the Assets, the following procedures shall govern the sale of the Assets.

A.    **Stalking Horse Bidder**

Pursuant to the Bidding Procedures Order, the Debtors, with the consent of the Committee and in consultation with the DIP Agent, are authorized to enter into an asset purchase agreement with a Stalking Horse Bidder with respect to all or a portion of the Assets (a "Stalking Horse APA") not later than February 512, 2016.  In the event that the Debtors enter into one or more Stalking Horse APAs, the Debtors will file with the Court

###############################################

[1] These lots shall include:  (1) all Assets, (2) all Assets other than the Santa Ana real property, (3) the Santa Ana real property, or (4) any other combination of Assets.

1054176.3

\#

\#
\#
\#
\#

and serve on the Notice Parties (as defined in Section II.E below) a notice that includes the following: (a) the identification of the Stalking Horse Bidder(s); (b) a copy of the Stalking Horse APA(s); (c) the purchase price provided for in the applicable Stalking Horse APA (the "Stalking Horse Purchase Price"); (d) the deposit paid by the Stalking Horse Bidder; and (e) the amount of any Break-Up Fee and/or any Expense Reimbursement (as such terms are defined in the Bidding Procedures Order) being provided to the Stalking Horse Bidder in connection with the Stalking Horse APA.  Any Stalking Horse APA entered into by the Debtors shall be subject to higher or otherwise better offers or combinations of offers, as provided herein.  For the avoidance of doubt, the Debtors reserve the right to enter into multiple and/or separate Stalking Horse APAs, e.g., a Stalking Horse APA for their newspaper assets and a Stalking Horse APA for the Santa Ana real property.

**B.      Documentation Necessary for Potential Bidders to Conduct Due Diligence**

In order to be qualified to receive any confidential information from the Debtors, an interested party (each, an "Interested Party") must submit each of the following to the Notice Parties on a timely basis:

> (1)      An executed confidentiality agreement which shall inure to the benefit of the Debtors and may be assigned to the Successful Bidder (as defined below), in a form and substance satisfactory to the Debtors;
>
> (2)      A statement demonstrating, to the Debtors' satisfaction, after consultation with the Consultation Parties, that the Interested Party has a bona fide interest in purchasing some or all of the Assets; and
>
> (3)      Such other information with respect to an Interested Party's experience and financial wherewithal (which may include, but is not limited to, any cure and adequate assurance obligations as the case may be) as the Debtors (after consultation with the Consultation Parties) request, if any, which may include, but is not limited to, the internal corporate, legal or other authorizations to close a purchase transaction.

If the Debtors determine, after receipt of the items identified above and reasonable consultation with the Consultation Parties, that an Interested Party has a bona fide interest in purchasing the Assets and the financial wherewithal to do so, such Interested Party will be deemed a "Potential Bidder."  As promptly as practicable after the Interested Party is deemed to be a Potential Bidder, the Debtors will notify the Interested Party as to such determination.

**C.      Due Diligence**

Formatted: Indent: Left:  0", Keep lines together

Formatted: Keep lines together

2

\#
\#
\#
\#

#

#
#
#
#

The Debtors will afford any Potential Bidder such due diligence access or additional information as the Debtors, in consultation with their advisors and after consultation with the Consultation Parties, deem appropriate, in their business judgment. Such information shall be provided through the data room created by the Debtors to facilitate diligence respecting the Assets by Potential Bidders (the "Data Room"). The Debtors shall endeavor to provide all such information to all Potential Bidders concurrently by placing the information in the Data Room and informing all Potential Bidders of the addition of the information. For any Potential Bidder who is a newspaper publisher or otherwise a competitor of the Debtors or is affiliated with a newspaper publisher or other competitor of the Debtors, the Debtors reserve the right to withhold any materials or information that the Debtors determine is: (i) sensitive or confidential business records, (ii) not appropriate for disclosure to such a Potential Bidder, (iii) has not been made available to any other newspaper publisher or competitor of the Debtors or affiliate thereof, and (iv) cannot be reasonably redacted to remove any sensitive or confidential business information; provided that the Debtors shall notify the Consultation Parties and the applicable Potential Bidder of the determination to withhold such information and shall provide reasonable detail as to the information withheld-, and further provided that any such information so withheld may be provided to counsel and/or the financial advisors to such Potential Bidder designated a competitor of the Debtors pursuant to this Section II.C. upon the execution of confidentiality agreement(s) acceptable to the Debtors. The due diligence period shall extend through and include the Bid Deadline (as defined below). Additional due diligence will not be provided after the Bid Deadline unless such Potential Bidder has submitted a Qualified Bid.

**D.    Provisions Governing Qualification of Qualified Bids and Overbids**

A bid submitted with respect to all or any number or combination of the Assets will be considered a qualified bid only if the bid is submitted by a Potential Bidder and complies with all of the following (a "Qualified Bid"):

      (1)    includes a proposed purchase agreement, including to the extent feasible all exhibits and schedules thereto (the "Competing Purchase Agreement"), duly authorized and executed by the Potential Bidder, along with a redlined, marked copy showing all changes between the Competing Purchase Agreement and (i) in the event a Stalking Horse Bidder has been selected, the Stalking Horse APA, or (ii) in the event no Stalking Horse Bidder has been selected, the Debtors' form of asset purchase agreement (the form of which will be posted in the Data Room) that provides the following:

            (a)    (i) in the event that a Stalking Horse Bidder has been selected, subject to subparagraph D(12) below, provides for consideration (the "Competing Purchase Price") that, in the business judgment of the Debtors after consultation with the Consultation Parties,

#    3
#
#
#

#
#
#
#

#

individually, or together with one or more other bids that otherwise satisfy the requirements for a Qualified Bid and which do not seek to acquire materially overlapping Assets, exceeds the Stalking Horse Purchase Price, the Break-Up Fee and Expense Reimbursement (as provided in the Stalking Horse APA) by at least $250,000 (such amount, the "Minimum Overbid"); or (ii) in the event that no Stalking Horse Bidder has been selected, provides the total cash consideration (excluding any amount attributed to the assumption of liabilities) to be paid for the Assets (the "APA Purchase Price");

(b)  specifically disclaims any right of the Potential Bidder to receive a breakup fee or termination fee, and waives any claim to compensation under section 503(b) of the Bankruptcy Code for making a substantial contribution;

(c)  identifies with particularity which liabilities, executory contracts and unexpired leases that have been identified to Potential Bidders through the diligence process the Potential Bidder would agree to assume (including, without limitation, any liabilities related to the Debtors' operations, pension plan and cure amounts);

(d)  includes a contact person(s) for the proposed assignee that the applicable counterparty may directly contact in connection with adequate assurance of future performance issues; and

(e)  contains a proposed closing date that is not later than March 31, 2016;

(2)  includes a cashier's check made payable to the order of Pachulski Stang Ziehl & Jones LLP, for the benefit of Freedom Communications, Inc., Debtor-in-Possession, or evidence of electronic funds transfer in accordance with instructions to be provided by the Debtors equal to 10% of the cash component of the Competing Purchase Price or the APA Purchase Price, as the case may be, which will be retained by the Debtorsheld in the client trust account of counsel to the Committee, Pachulski Stang Ziehl & Jones LLP ("PSZJ") (PSZJ will provide wire instructions on "as requested" basis for said account), as a refundable deposit for application against the purchase price at the closing of the transaction, returned to the Potential Bidder, or forfeited to the Debtors as set forth below;

(3)  identifies the full legal name of the Potential Bidder (including any equity holders or other financial backers sponsoring or participating in connection with such bid);

4

#
#
#
#

#
#
#
#

(4)       provides that such offer remains open and irrevocable as follows (a) until the closing of the Sale if it is designated as the Successful Bid, (b) until the Back-Up Expiration Date (as defined below) if it is designated as the Back-Up Bid (as defined below), and (c) in all other cases, three (3) business days after conclusion of the Auction;

(5)       is accompanied by evidence establishing the Potential Bidder's ability to provide adequate assurance of future performance with respect to the executory contracts and unexpired leases identified in subparagraph (1)(c) above. If the Debtors conclude, exercising their business judgment, after consultation with the Consultation Parties, that the information establishing adequate assurance is not sufficient, then they may request specific additional information from the Potential Bidder in writing and the Potential Bidder shall have a reasonable period of time to supplement the information it provided to establish adequate assurance;

(6)       is accompanied by evidence establishing, based upon the Debtors' business judgment, after consultation with the Consultation Parties, that the Potential Bidder has the financial ability to pay, including through committed financing, or otherwise fulfill the conditions relating to, the Competing Purchase Price or the APA Purchase Price, as the case may be; such evidence shall include, but is not limited to, (i) current audited financial statements (to the extent they are otherwise prepared in the ordinary course of business) of (a) the Potential Bidder, or (b) if the Potential Bidder is an entity capitalized after the Petition Date for the purpose of acquiring the Assets, current audited financial statements of its equity holder(s) or their affiliate(s) (to the extent they are otherwise prepared in the ordinary course of business) who shall either guarantee the obligations of the Potential Bidder or provide such other form of financial disclosure and credit-quality support information or enhancement or (ii) documents evidencing committed financing for the Competing Purchase Price or APA Purchase Price, each as deemed reasonably acceptable after reasonable consultation among the Debtors and the Consultation Parties.  The Potential Bidder may elect to only provide the information required under this subsection upon the execution of confidentiality agreement by the Debtors and Consultation Parties in favor of the Potential Bidder, its equity holders and its affiliates.  The form of confidentiality agreement shall be provided by the Debtors to any Potential Bidder upon request;

(7)       subject to subparagraph D(12) below, in the event a Stalking Horse Bidder has been selected, contains terms and conditions that, taken as a whole, are higher or otherwise better than the terms and conditions of the Stalking Horse APA as determined by the Debtors using their business judgment, after consultation with the Consultation Parties;

(8)       is accompanied by evidence establishing, based upon the Debtors' business judgment, after consultation with the Consultation Parties, that (a) the

5

#
#
#
#

#

#
#
#
#

Potential Bidder is capable and qualified, financially, legally and otherwise, of unconditionally performing all obligations under the Competing Purchase Agreement, and (b) all necessary internal, board, and shareholder approvals related to the submission, execution, delivery, and closing of the Competing Purchase Agreement, have been or can timely be obtained;

(9)    is not subject to any due diligence or financing contingencies of any kind, or any contingencies related to any internal or investment committee or similar approvals;

(10)    includes an acknowledgement and representation, in form and substance satisfactory to the Debtors, after consultation with the Consultation Parties, that the Potential Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Competing Purchase Agreement,

(11)    is received by each of the Notice Parties (as defined herein) prior to the Bid Deadline; and

(12)    Notwithstanding item subparagraphs D(1)(a) and D(7) above, if a Stalking Horse Bidder is selected, a bid submitted by a Potential Bidder may still be deemed to be a Qualified Bid, if in the business judgment of the Debtors, after consultation with the Consultation Parties: (a) such bid is for less than all of the Assets; and (b) the amount of such bid, when added to the Debtors' or the Committee's informal valuation of the Assets not being included in such bid, is, equal to or greater than the Minimum Overbid.

The Stalking Horse Bidder, if any, and any Potential Bidder that timely submits a Qualified Bid (an "Initial Overbid"), as set forth above, shall each be deemed a "Qualified Overbidder" and may bid for all or a portion of the Assets at the Auction, and may modify its bid in subsequent rounds to include or exclude Assets or liabilities and to modify other terms of its bid, as it deems appropriate. Any Potential Bidder that fails to submit a timely, conforming Initial Overbid, as set forth above, shall be disqualified from bidding for the Assets at the Auction.

Notwithstanding the requirements set forth above, the Debtors, in the exercise of their business judgment, after consultation with the Consultation Parties, may consider, as a

#                                                                 6
#
#
#

\#
\#
\#
\#

single Qualified Bid, multiple bids for the Assets, a portion of the Assets, or some or all of the Assets together with any other Assets of the Debtors such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid.  The Debtors may permit Potential Bidders who submitted such multiple bids by the Bid Deadline but who were not identified as a component of a single Qualified Bid consisting of such multiple bids and which otherwise satisfy the Qualified Bid criteria set forth above, to participate in the Auction and to submit at the Auction higher or otherwise better bids that in subsequent rounds of bidding may be considered, together with other bids, as part of a single Qualifying Bid for overbid purposes.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of any sale transaction documents.

**E.    Bid Deadline**

A Potential Bidder that desires to make an Initial Overbid will deliver written copies of its Qualified Bid to each of the following parties by electronic mail (collectively, the "Notice Parties"): (i) Debtors' Independent Sales Representative, Robert P. Mosier, email: rmosier@mosierco.com; (ii) counsel to the Debtors: Lobel Weiland Golden Friedman LLP (Attn: William N. Lobel, Esq., facsimile: (714) 966-1002, email: wlobel@lwgfllp.com and Alan J. Friedman, Esq., facsimile: (714) 966-1002, email: afriedman@lwgfllp.com), (iii) investment banker for the Debtors, FTI Capital Advisors, LLC (Attn: Christopher Nicholls; facsimile: (212) 499-3636, email: chris.nichols@fticonsulting.com and Michael VanderLey; facsimile: (415) 283-4277, email: mike.vanderley@fticonsulting.com), (iv) counsel to the Committee: Pachulski Stang Ziehl & Jones (Attn: Robert J. Feinstein, Esq., facsimile: (212) 561-7777, email: rfeinstein@pszjlaw.com and Jeffrey W. Dulberg, Esq., facsimile: (310) 201-0760, email: jdulberg@pszjlaw.com), (v) financial advisor to the Committee: Alvarez and Marsal (Attn: Brian Whittman, email BWhittman@alvarez andmarsal.com), and (vi) counsel to the DIP Agent:  Munger, Tolles & Olson LLP (Attn: Seth Goldman, Esq., facsimile:  (213) 687-3702, email: seth.goldman@mto.com), so as to be received by no later than March 11, 2016, at 5:00 p.m. (prevailing Pacific Time) (the "Bid Deadline").  Upon receipt by the Debtors of a bid from a Potential Bidder, the Debtors shall timely, but no later than one (1) business day after the Bid Deadline, provide a summary of such bids to (i) each Qualified Overbidder and to each of the other Notice Parties.  The Debtors may, exercising their business judgment after consultation with the Consultation Parties, extend the Bid Deadline.

| Formatted: Default Paragraph Font |

**F.    Evaluation of Competing Bids**

7

\#
\#
\#
\#

\#
\#
\#
\#
In the event that there are competing bids for the Assets, a Qualified Bid will be evaluated by the Debtors and the Consultation Parties based upon several factors including, without limitation: (i) the amount of the Competing Purchase Price, including the liabilities being assumed, in the context of the Assets subject to the Qualified Bid, (ii) the risks and timing associated with consummating such bid, (iii) the terms of the Competing Purchase Agreement, (iv) to the extent applicable, the ability of the Qualified Overbidder to obtain appropriate regulatory approvals, (v) the capitalization and adequate assurance provided by the Potential Bidder with respect to its likely future performance and satisfaction of any liabilities related to assumed executory contracts and unexpired leases as well as any other assumed liabilities, including any pension related obligations, and (vi) any other factors deemed relevant by the Debtors and the Consultation Parties in the exercise of their respective business judgment.

**G.    No Competing Bid**

If a Stalking Horse Bidder is selected for all of the Debtors' assets and if no timely, conforming Initial Overbid is received, the Debtors shall not conduct an Auction, and following the Bid Deadline, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors shall request at the Sale Hearing that the Bankruptcy Court approve the Debtors' entry into the Stalking Horse APA and consummation of the transactions contemplated thereby, and request that the Sale Order be immediately effective upon entry.

**H.    Auction Procedures**

If (i) a Stalking Horse Bidder is selected and one or more timely conforming Initial Overbids is received, (ii) no Stalking Horse Bidder is selected but two or more timely conforming Initial Overbids are received, or (iii) otherwise provided by these procedures, the Debtors will conduct the Auction on March 16, 2016, at 10:00 a.m. (prevailing Pacific Time) (the "Auction Date"), at the offices of Lobel Weiland Golden Friedman LLP, 650 Town Center Drive, Suite 950, Costa Mesa, California 92626, or at such other location as shall be identified in a notice filed with the Bankruptcy Court at least 24 hours before the Auction, in which the Stalking Horse Bidder, if any, and all other Qualified Overbidders may participate.  The Auction shall be governed by the following procedures:

     (1)    the Auction will be conducted openly and the actual identity of each Qualified Overbidder will be disclosed on the record at the Auction;

     (2)    only the Debtors, the Consultation Parties, the Stalking Horse Bidder, if any, any other Qualified Overbidders, and their respective counsel, financial advisors and representatives shall be permitted to attend, and all Qualified Overbidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Overbidder attending the Auction

\#
\#
\#
\#

8

\#
\#
\#
\#

in person;

(3)    each Qualified Overbidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and that its Initial Overbid is a good faith bona fide offer and that it intends to consummate the proposed transaction if selected as the Successful Bidder;

(4)    at least  one (1) business day prior to the Auction, each Qualified Overbidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Overbidder elects not to attend the Auction, such Qualified Overbidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Overbidder and such Qualified Overbidder may still be designated by the Debtors as the Leading Bid or the Back-Up Bidder.  Prior to the Auction, the Debtors will provide a summary of the Qualified Bid or combination of Qualified Bids which the Debtors believe, in their business judgment, after consultation with the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid") to each Potential Bidder that submitted a Qualifying Bid and to the Committee.  The Debtors, in consultation with the Consultation Parties may aggregate Initial Overbids from unaffiliated persons to create the Starting Bid; provided that all Qualified Overbidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding;

(5)    bidding will commence at the Starting Bid;

(6)    each subsequent bid shall be in increments of no less than $100,000 above the immediately preceding bid on the Assets, and the Debtors will evaluate each such bid after consultation with the Consultation Parties;

(7)    after the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or combination of bids that they believe to be the highest or otherwise best offer (the "Leading Bid").  A round of bidding will conclude after the Stalking Horse Bidder, if any, and each participating Qualified Overbidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid;

(8)    for the purpose of evaluating the value of the consideration provided by subsequent bids (including any subsequent bid by the Stalking Horse Bidder), the Debtors in consultation with the Consultation Parties will give effect to any additional liabilities to be assumed by a Qualified Overbidder or the Stalking Horse Bidder and any additional costs which may be imposed on the Debtors;

(9)    the Auction shall be conducted openly and each bidder will be informed of the terms of the previous bid or combination of bids determined by the Debtors in their business judgment, after consultation with the Consultation Parties,

9

\#
\#
\#
\#

#

#
#
#
#

to have been the highest or otherwise best bid;

(10)    the Auction shall continue until, in the Debtors' business judgment, after consultation with the Consultation Parties, there is a highest or otherwise best bid or combination of bids (collectively, the "Successful Bid" and the Stalking Horse Bidder or Qualified Overbidder (or group of bidders comprising the Qualified Overbidder) submitting the same, the "Successful Bidder");

(11)    the bidding at the Auction shall be transcribed; and

(12)    the Debtors shall have the right after consultation with the Consultation Parties to modify the procedures for the Auction, and to allow for bidding on only a portion of the Assets and not all of them, to modify bidding increments, waive terms and conditions with respect to any or all Potential Bidders (including, without limitation, the bidding requirements in paragraph D herein, and to adjourn the Auction one or more times for any reason, in a manner not inconsistent with the procedures set forth in subparagraphs (1) through (11) above or any bidding procedures order entered by the Bankruptcy Court, provided, however, (i) the procedures may not be modified and the Auction may not be adjourned until the then open round of bidding, if any, has concluded, (ii) notice of such modification or adjournment is given to all Potential Bidders continuing to participate in the Auction as well as the Consultation Parties, and (iii) if no bid or combination of bids is sufficient to repay the DIP Lenders in full in cash, the Debtors may not waive the requirement that all bids contain a proposed closing date that is not later than March 31, 2016 without the consent of the DIP Agent.

As used herein, the term "Successful Bidder's Purchase Agreement" shall mean, as applicable, the (i) Competing Purchase Agreement(s) of the Successful Bidder(s), if the Successful Bidder(s) are Qualified Overbidder(s) other than the Stalking Horse Bidder, or (ii) Stalking Horse APA, as it may be modified during the Auction pursuant to the procedures set forth in the immediately preceding paragraph, if the Stalking Horse Bidder is the Successful Bidder, in either case, as approved pursuant to the Sale Order.

I.    **Selection of Successful Bidder; As-Is Where-Is**

The determination of the Successful Bid and the Back-Up Bid (as defined below) by the Debtors, exercising their business judgment and in consultation with the Consultation Parties, at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.    Any Sale will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their agents or the Debtors' chapter 11 estates, except and solely to the extent expressly set forth in the Successful Bidder's Purchase Agreement.

Unless otherwise agreed to by the Debtors and the applicable Successful Bidder(s), or

10

#
#
#
#

#

\#
\#
\#
\#

as otherwise provided in this paragraph with respect to a Successful Bidder's consideration of the Debtors' executory contracts and unexpired leases during the Contact Examination Period (as defined hereinbelow), within two (2) business days after the conclusion of the Auction, the Successful Bidder(s) shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the bid(s) of the Successful Bidder(s) bid was made. Within 24 hours after the conclusion of the Auction (if any) (or, if no Auction is held because there were no other Qualified Bidders, within 24 hours after a determination that the Stalking Horse Bidder is the Successful Bidder in accordance with these Bidding Procedures), the Debtors shall file a notice identifying the Successful Bidder(s) with the Bankruptcy Court and shall serve such notice by fax, email, or overnight mail to all counterparties whose contracts are to be assumed and assigned. identified counterparties whose contracts are to be assumed and assigned. Following the Auction, a Successful Bidder shall have an additional period of time to evaluate the Debtors' executory contracts and unexpired leases, negotiate with the counterparties thereto and designate them for assumption and assignment or rejection (the "Contract Examination Period"), provided that the Successful Bidder makes all payments under such executory contracts and/or unexpired leases that become due during the Contract Examination Period. If additional executory contracts and/or unexpired leases are designated by the Successful Bidder for assumption and assignment during the Contract Examination Period, the Debtors shall serve a supplemental notice on such counterparties whose contracts are sought to be assumed and assigned to the Successful Bidder. If such designation occurs after the Sale Hearing, the assumption and assignment shall be the subject of a separate motion for approval thereof to be filed by the Debtors.

The Debtors and the Successful Bidder(s) will consummate the transactions contemplated by the Purchase Agreement(s) submitted by the Successful Bidder(s), pursuant to the terms and conditions thereof, upon the Bankruptcy Court's approval of such Purchase Agreement(s) pursuant to the Sale Order.

**J.**     **Additional Deposits and Return of Deposits**

Within two (2) business days after the conclusion of the Auction, the Successful Bidder(s) and Back-Up Bidder(s) shall increase their refundable deposits to 10% of the cash component of the relevant Successful Bid or Back-Up Bid. All deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction. The Successful Bidder's deposit will be credited towards the purchase price at the closing under the Successful Bidder's Purchase Agreement. The Back-Up Bidder's deposit shall be returned to it no later than five (5) business days after the Back-Up Expiration Date or, if the Back-Up Bidder is selected as the Successful Bidder and the Debtors elect to consummate the Sale with the Back-Up Bidder, its deposit will be credited towards the purchase price at the closing under the Back-Up Bid.

\#                     11
\#
\#
\#

\#

\#
\#
\#
\#

If the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of the Successful Bidder, the Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

**K.**    **Back-Up Bidder**

The Qualified Overbidder(s) with the next highest or otherwise best Qualified Bid (the "Back-Up Bid"), as determined by the Debtors in their business judgment after consultation with the Consultation Parties shall be required to serve as back-up bidder(s) (the "Back-Up Bidder(s)").  The identity of the Back-Up Bidder(s) and the amount and material terms of the applicable Back-Up Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s).  The Back-Up Bidder(s) shall be required to keep the applicable Back-Up Bid open and irrevocable until the earlier of (i) the closing under the applicable Successful Bidder's Purchase Agreement and (ii) 5:00 p.m. (prevailing Pacific time) of the first business day that is 60 days after the Auction Date (the "Back-Up Expiration Date").  If a Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors in consultation with the Consultation Parties shall have the right, but not the obligation, to accept the applicable Back-Up Bidder's bid, in which case the Back-Up Bidder will be immediately notified and deemed to be the Successful Bidder for all purposes under these Bidding Procedures (and the Competing Purchase Agreement relating to the applicable Back-Up Bid will be deemed to be the Successful Bidder's Purchase Agreement for all purposes hereunder), and the Debtors will be authorized to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court; provided, however, that any sale to a Back-Up Bidder shall be consummated no later than the Back-Up Expiration Date.

**L.**    **Credit Bid Rights**

Subject to applicable law, the DIP Lenders shall have the right to use their allowed prepetition secured claims and postpetition secured claims, in all cases subject to section 363(k) of the Bankruptcy Code, to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Assets.  Notwithstanding anything to the contrary in these procedures, the DIP Lenders (i) shall be excused from compliance with Part II.B, II.D, and II.E above, (ii) shall be deemed an Interested Party, Potential Bidder, and Qualified Overbidder, and (iii) may make a bid at the Auction (in any round) on all or any portion of the Assets without the requirement of submitting a Qualified Bid by the Bid Deadline or a bid in a prior round at the Auction; provided that if no Auction with respect to the Assets would otherwise be conducted pursuant to these procedures, then the DIP Lenders may make any bid on the Assets by no later than one (1) business day prior to the date scheduled for the Auction.  If the DIP Lenders submit any such bid for all or any portion

\#                                           12
\#
\#
\#

\#

\#
\#
\#
\#

of the Assets, the Debtors will conduct the Auction if there is a competing bid.

**M.    Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders; adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing; provided that if no Successful Bid or combination of Successful Bids is sufficient to repay the DIP Lenders in full in cash,  the Debtors may not agree to extend the deadline for closing any Successful Bid past March 31, 2016 without the consent of the DIP Agent.

The Debtors further reserve the right, in the exercise of their business judgment, after consultation with the Consultation Parties, to terminate discussions with any or all Potential Bidders at any time without specifying the reasons therefor.

**III.    SALE HEARING**

The Debtors will seek entry of an Order of the Bankruptcy Court, approving and authorizing the Sale to the Successful Bidder(s) in accordance with these Bidding Procedures and pursuant to the terms and conditions set forth in the Successful Bidder's Purchase Agreement (the "Sale Order"), at a hearing to begin on or before March 21, 2016 (the "Sale Hearing"), which date may not be continued without the consent of the Consultation Parties.

\#
\#
\#
\#

13

EXHIBIT "B"

1 | William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
2 | Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
3 | Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
4 | Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
5 | **LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
6 | Costa Mesa, California 92626
Telephone    714-966-1000
7 | Facsimile    714-966-1002

8 | Attorneys for Debtors and Debtors-in-Possession

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| 11 | In re | Case No. 8:15-bk-15311-MW |
|---|---|---|
| 12 | FREEDOM COMMUNICATIONS, INC., *et al.*,[1] | Chapter 11 |
| 13 | Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; |
| 14 | | 8:15-bk-15317-MW; 8:15-bk-15318-MW; |
| 15 | | 8:15-bk-15319-MW; 8:15-bk-15320-MW; |
| 16 | Affects: | 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; |
| 17 | ☒ All Debtors | 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; |
| 18 | ☐ Freedom Communications, Inc., a Delaware corporation, ONLY | 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; |
| 19 | ☐ Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| 20 | ☐ Freedom Services, Inc., a Delaware corporation, ONLY | |

21

22 _____

23 | [1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom
Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc.
(3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610);
24 | Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735);
Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom
25 | Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom
Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona,
26 | Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register
Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company
27 | (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom
SPV IV, LLC (8500); and Freedom SPV V, LLC (9036). The Debtors' mailing address is 625 N. Grand
28 | Avenue, Santa Ana, California 92701.

1054195.34                                    - 1 -                    BIDDING PROCEDURES ORDER

Style Definition: Normal

| | |
|---|---|
| ☐ 2100 Freedom, Inc., a Delaware corporation, ONLY | **ORDER: (I)(A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (B) AUTHORIZING, BUT NOT REQUIRING, THE GRANTING OF STALKING HORSE PROTECTIONS TO POTENTIAL STALKING HORSE BIDDER(S), (C) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE, (D) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (II)(A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO SUCCESSFUL BIDDER(S)' ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO** |
| ☐ OCR Community Publications, Inc., a California corporation, ONLY | |
| ☐ Daily Press, LLC, a California limited liability company, ONLY | |
| ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY | |
| ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY | |
| ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY | |
| ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Newspapers, a Texas general partnership, ONLY | |
| ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY | |
| ☐ OCR Information Marketing, Inc., a California corporation, ONLY | |
| ☐ Odessa American, a Texas general partnership, ONLY | |
| ☐ Orange County Register Communications, Inc., a California corporation, ONLY | |
| ☐ Victor Valley Publishing Company, a California corporation, ONLY | |
| ☐ Victorville Publishing Company, a California limited partnership, ONLY | |

1054195.34

- 2 -

BIDDING PROCEDURES ORDER

Lobel Weiland Golden Friedman LLP



1
2    ☐  Freedom SPV II, LLC, a Delaware limited liability company, ONLY

3    ☐  Freedom SPV VI, LLC, a Delaware limited liability company, ONLY
4
5    ☐  Freedom SPV I, LLC, a Delaware limited liability company, ONLY

6    ☐  Freedom SPV IV, LLC, a Delaware limited liability company, ONLY
7
8    ☐  Freedom SPV V, LLC, a Delaware limited liability company, ONLY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-7000  Fax 714-966-1002

1054195.34    - 3 -    BIDDING PROCEDURES ORDER

1         Upon consideration of the motion (the "Motion")² of Freedom Communications, Inc.

2 and its related debtors and debtors-in-possession in the above-captioned chapter 11

3 cases (collectively, the "Debtors") seeking entry of an order (this "Order"), pursuant to

4 sections 105(a), 363 and 365 of the Bankruptcy Code, rules 2002, 6004, 6005, 6006,

5 9007 and 9014 of the Bankruptcy Rules, and rule 6004-1 of the Local Rules, (i)(a)

6 approving procedures in connection with the sale of substantially all of the Debtors'

7 assets, (b) authorizing, but not requiring, the granting of Stalking Horse Protections in the

8 event the Debtors designate Stalking Horse Bidder(s) in connection with the sale of the

9 Debtors' assets, (c) scheduling the related auction and hearing to consider approval of

10 the sale, (d) approving procedures related to the assumption and assignment of certain

11 of the Debtors' executory contracts and unexpired leases, (e) approving the form and

12 manner of notice thereof, and (f) granting related relief, and (ii)(a) authorizing the sale of

13 such assets free and clear of liens, claims, encumbrances, and other interests, except as

14 provided in the Successful Bidder(s)' asset purchase agreement(s), (b) approving the

15 assumption and assignment of certain of the Debtors' executory contracts and unexpired

16 leases related thereto, and (c) granting related relief, all as more fully set forth in the

17 Motion; and upon consideration of the Dahl Declaration, the Mosier Declaration, the FTI

18 Declaration and the First Day Declaration; and this Court having jurisdiction over this

19 matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a

20 core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that

21 venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§

22 1408 and 1409; and this Court having found that the relief requested in the Motion is in

---

² Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion and/or Bidding Procedures attached hereto as Exhibit 1, as applicable.

1054195.34            - 4 -            BIDDING PROCEDURES ORDER

1  the best interests of the Debtors' estates, creditors, and other parties in interest; and this

2  Court having found that the Debtors' notice of the Motion and opportunity for a hearing

3  on the Motion were appropriate and no other notice need be provided; and this Court

4  having reviewed the Motion and having heard the statements in support of the relief

5
6  requested therein at the hearing before this Court (the "Hearing"); and this Court

7  having determined that the legal and factual bases set forth in the Motion and at the

8  Hearing establish just cause for the relief granted herein; and upon all of the proceedings

9  had before this Court; and after due deliberation and sufficient cause appearing therefor;

10
11         AND FURTHER FOUND AND DETERMINED THAT:

12         A.     The Bidding Procedures substantially in the form attached hereto as

13  Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize the

14  recovery from the sale of the Assets.

15         B.     The Debtors' notice of the Bidding Procedures, the Cure Procedures, the

16  Auction and the hearing to approve the sale of the Assets (the "Sale Hearing"), including

17  the Procedures Notice, the Publication Notice and the Notice of Potential Assumption

18  and Assignment, substantially in the forms attached hereto as Exhibit 2, Exhibit 3 and

19
20  Exhibit 4, is appropriate and reasonably calculated to provide all interested parties with

21  timely and proper notice, and no other or further notice is required.

22         C.     The Debtors have demonstrated compelling and sound business

23  justifications for authorizing the sale of the Debtors' Assets, entry into a Stalking Horse

24  Agreement(s) and payment of an authorized Break-Up Fee or Expense Reimbursement

25  under the circumstances, timing and procedures set forth herein and in the Motion.

26
27         D.     Break-Up Fee(s) and Expense Reimbursement(s) up to the amounts

28  authorized by this Order are (a) fair and reasonable, (b) beneficial to the Debtors'

1054195.34                          - 5 -                BIDDING PROCEDURES ORDER

**Formatted:** Light Grid - Accent 31, Indent: First line: 0.5"

1    estates and creditors, and (c) an actual and necessary cost of preserving the Debtors'

2    estates within the meaning of section 503(b) of the Bankruptcy Code.

3        E.    The findings and conclusions set forth herein constitute the Court's

4    findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

5    applicable to this proceeding pursuant to Bankruptcy Rule 9014.

6

7        F.    To the extent any of the following findings of fact constitute conclusions of

8    law, they are adopted as such.  To the extent any of the following conclusions of law

9    constitute findings of fact, they are adopted as such.

10        IT IS HEREBY ORDERED THAT:

11        1.    The Motion is GRANTED.

12        2.    Any objections and responses to the Motion that have not been overruled,

13    withdrawn, waived, settled, or resolved, and all reservations of rights included therein,

14    are hereby overruled and denied.

15

16        3.    The Bidding Procedures attached hereto as _Exhibit 1_ are APPROVED.

17        4.    In the event that the Debtors enter into one or more Stalking Horse APAs,

18    the Debtors will file with the Court and serve on the Notice Parties (as defined in

19    Paragraph 7 below) a notice that includes the following: (a) the identification of the

20    Stalking Horse Bidder(s); (b) a copy of the Stalking Horse APA(s); (c) the applicable

21    Stalking Horse Purchase Price APA; (d) the deposit paid by the applicable Stalking

22    Horse Bidder; and (e) the amount of any Break-Up Fee and/or any Expense

23    Reimbursement being provided to the Stalking Horse Bidder in connection with the

24    applicable Stalking Horse APA.  Any Stalking Horse APA entered into by the Debtors

25    shall be subject to higher or otherwise better offers or combinations of offers, as

26    provided in the Bidding Procedures.  For the avoidance of doubt, the Debtors reserve

27

28

1054195.34                                    - 6 -                    BIDDING PROCEDURES ORDER

1   the right to enter into multiple and/or separate Stalking Horse APAs, e.g., a Stalking

2   Horse APA for their newspaper assets and a Stalking Horse APA for the Santa Ana real

3   property.

4
5       5.      In connection with a Stalking Horse APA, the Debtors, with the consent of

6   the Committee and in consultation with the DIP Agent, are authorized, but not required,

7   to grant to a Stalking Horse Bidder a Break-Up Fee of up to 2.5% of the cash

8   consideration offered by such Stalking Horse Bidder and/or an Expense

9   Reimbursement in an amount not to exceed $200,000.  Such Stalking Horse

10  Protections, if any, would be paid in the event that: (i) the Stalking Horse Bidder is not

11  approved by the Court as the purchaser of the Assets on which it bid, (ii) the

12  Stalking Horse Bidder is not in default of its obligations under its Stalking Horse

13  APA, and (iii) the Assets on which the Stalking Horse Bidder bid are thereafter sold

14  to a Successful Bidder(s) at the Auction for consideration in excess of the purchase

15  price provided for in the Stalking Horse APA notwithstanding the Stalking Horse

16  Bidder's willingness and ability to consummate the transactions contemplated by its

17  Stalking Horse APA, which payment shall be made to the Stalking Horse Bidder

18  promptly following closing with the Successful Purchaser(s) of the Assets on which the

19
20  Stalking Horse Bidder bid.  The Stalking Horse Protections, if payable, shall be the sole

21  and exclusive remedy of a Stalking Horse Bidder if the applicable Stalking Horse APA is

22  not consummated.

23

24      6.      All Qualified Bidders at the Auction shall be deemed to have consented to

25  the jurisdiction of this Court and waived any right to a jury trial in connection with any

26  disputes relating to the Auction and the construction and enforcement of any sale

27  transaction documents arising in connection therewith.

28

1054195.34                      - 7 -                 BIDDING PROCEDURES ORDER

7.    The Sale Hearing shall be held on March 21, 2016, at _____ (prevailing

Pacific Time), before the United States Bankruptcy Court for the Central District of

California, Santa Ana Division, Ronald Reagan Federal Building and U.S. Courthouse,

411 West Fourth Street, Santa Ana, CA 92701.  Any objections to the Sale shall be filed

and served so as to be received no later than 9:00 a.m. (prevailing Pacific Time) on the

date of the Sale Hearing by the following parties: (i) the Debtors' Independent Sales

Representative, Robert P. Mosier, email: rmosier@mosierco.com; (ii) counsel to the

Debtors: Lobel Weiland Golden Friedman LLP (Attn: William N. Lobel, Esq., facsimile:

(714) 966-1002, email: wlobel@lwgfllp.com and Alan J. Friedman, Esq., facsimile: (714)

966-1002, email: afriedman@lwgfllp.com), (iii) the Debtors' investment banker, FTI

Capital Advisors, LLC (Attn: Christopher Nicholls; facsimile: (212) 499-3636, email:

chris.nichols@fticonsulting.com and Michael VanderLey; facsimile: (415) 283-4277,

email: mike.vanderley@fticonsulting.com), (iv) counsel to the Official Committee of

Unsecured Creditors: Pachulski Stang Ziehl & Jones LLP (Attn: Robert J. Feinstein,

Esq., facsimile: (212) 561-7777, email: rfeinstein@pszjlaw.com and Jeffrey W. Dulberg,

Esq., facsimile: (310) 201-0760, email: jdulberg@pszjlaw.com), (v) the Committee's

financial advisor: Alvarez and& Marsal (Attn: Brian Whittman, email

BWhittman@alvarez andmarsalalvarezandmarsal.com), (vi) counsel to the DIP Agent:

Munger, Tolles & Olson LLP (Attn:  Seth Goldman, Esq., facsimile:  (213) 687-3702,

email: seth.goldman@mto.com) (such parties collectively defined as the "Notice

Parties"), and (vii) the Office of the United States Trustee (Attn: Frank Cadigan, Esq.,

facsimile: (714) 338-3421, email: frank.cadigan@usdoj.gov; and Attn: Michael Hauser,

Esq., facsimile: (714) 338-3421, email: michael.hauser@usdoj.gov).  Any replies to

objections to the Sale shall be heard at the Sale Hearing.  Failure to object to the relief

1054195.34                          - 8 -              BIDDING PROCEDURES ORDER

1  requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy

2  Code section 363(f).

3      8.      With the consent of the Consultation Parties, the Sale Hearing may be

4  adjourned from time to time without further notice to creditors or parties in interest other

5  than by announcement of the adjournment in open court on the date scheduled for the

6  Sale Hearing, and the Debtors shall have the right, in the exercise of their business

7

8  judgment, after consultation with the Consultation Parties, to terminate the Sale at any

9  time.

10     9.      The following forms of notice are approved: (a) the Procedures Notice, in

11  the form substantially similar to that attached hereto as Exhibit 2, (b) the Publication

12  Notice, in the form substantially similar to that attached hereto as Exhibit 3, and (b) the

13  Notice of Potential Assumption and Assignment, in the form substantially similar to that

14  attached hereto as Exhibit 4.

15

16     10.     On or before three (3) days after the entry of this Order, the Debtors shall

17  serve, or cause to be served, by first class mail, the Procedures Notice on the following

18  parties: (i) the Notice Parties; (ii) the Office of the United States Trustee; (iii) any parties

19  requesting notices in these cases pursuant to Bankruptcy Rule 2002; and (iv) any entity

20  that has expressed a bona fide interest in acquiring the Assets in the six (6) months

21

22  preceding the date of the filing of the Motion.

23     11.     On or before three (3) days after the entry of this Order, the Debtors shall

24  publish the Publication Notice in the Los Angeles Times, the Orange County Register

25  and the national edition of the Wall Street Journal.

26     12.     On or before seven (7) days after the entry of this Order, the Debtors shall

27  serve, or cause to be served, by first class mail, the Notice of Potential Assumption and

28

1054195.34                          - 9 -               BIDDING PROCEDURES ORDER

1   Assignment on all non-debtor parties to the Designated Executory Contracts that the

2   Debtors may seek to assume and assign on the Closing Date of a Sale; provided,

3   however, that the identification of a contract or lease in the Notice of Potential

4   Assumption and Assignment shall not constitute an admission by the Debtors that such

5   contract or lease is an executory contract or unexpired lease or that such contract or

6   lease will be assumed and assigned.  The Debtors reserve all of their rights, claims, and

7   

8   causes of action with respect to the contracts and leases listed in a Notice of Potential

9   Assumption and Assignment.  The Notice of Potential Assumption and Assignment shall

10  identify the calculation of the cure amounts, if any, that the Debtors believe must be

11  paid to cure all defaults outstanding under each Designated Executory Contract (the

12  "Cure Amounts") as of such date (the "Cure Date").  In addition, if in connection with the

13  ongoing marketing process, the Debtors identify additional contracts or leases that

14  might be assumed by the Debtors and assigned to a prospective purchaser that are not

15  set forth in the original Notice of Potential Assumption and Assignment, the Debtors

16  shall promptly send a supplemental notice (a "Supplemental Notice of Potential

17  Assumption and Assignment") to the applicable counterparties to such additional

18  contracts and/or leases and they shall be Designated Executory Contracts.

19  

20          13.  Unless the non-debtor party to a Designated Executory Contract files an

21  objection (each, a "Cure Amount/Assignment Objection") to (i) its scheduled Cure

22  Amount, and/or (ii) the assumption, assignment and/or transfer of such Designated

23  Executory Contract no later than five (5) days before the Auction (by March 11, 2015)

24  (collectively, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure

25  Amount/Assignment Objection so as to be received no later than the Cure/Assignment

26  Objection Deadline by the Notice Parties and the Office of the United States Trustee,

27  

28  

1054195.34                              - 10 -                    BIDDING PROCEDURES ORDER

1  then such non-debtor party will (a) be forever barred from objecting to the Cure Amount

2  and from asserting any additional cure or other amounts as of the Cure Date with

3  respect to such Designated Executory Contract against the Debtors, the Successful

4  Bidder or any other party and such parties shall be entitled to rely solely upon the Cure

5  Amount, and (b) subject to paragraph 16 of this Order, be deemed to have consented to

6  the assumption, assignment and/or transfer of such Designated Executory Contract,

7  notwithstanding any consent right that such party could have asserted, and shall be

8  forever barred and estopped from asserting or claiming against the Debtors, the

9  Successful Bidder or any other assignee of the relevant Designated Executory Contract

10  that any additional amounts are due or defaults exist, or conditions to assumption,

11  assignment, and/or transfer must be satisfied, as of the Cure Date, under such

12  Designated Executory Contract.

13        14.    If an objection challenges a Cure Amount, the objection must set forth the

14  Cure amount being claimed by the objecting party (the "Claimed Cure Amount") with

15  appropriate documentation in support thereof.  The Debtors, in their discretion, may in

16  good faith (i) resolve any disputed Claimed Cure Amount without further order of the

17  Court, or (ii) pursue a contested determination by this Court of any disputed Claimed

18  Cure Amount.  Subject to the foregoing, if the Debtors hold a Claimed Cure Amount in

19  reserve as a result of an objection to a Cure Amount, then the Debtors may assume and

20  assign the Designated Executory Contract that is the subject of such objection prior to

21  the resolution of such objection and without further delay.

22        15.    Within 24 hours after the conclusion of the Auction (if any) (or, if no Auction

23  is held, within 24 hours after a determination that the Stalking Horse Bidder is the

24  Successful Bidder in accordance with the Bidding Procedures), the Debtors shall file a

1054195.34                    - 11 -              BIDDING PROCEDURES ORDER

1  notice identifying the Successful Bidder(s) with the Bankruptcy Court and shall serve

2  such notice by fax, email, or overnight mail to all ~~counterparties whose contracts and/or~~

3  ~~leases are to be assumed and assigned pursuant to such Successful Bidder's Purchase~~

4  ~~Agreement~~identified counterparties whose contracts and/or leases are to be assumed

5  and assigned pursuant to such Successful Bidder's Purchase Agreement.  Following the

6  Auction, a Successful Bidder shall have an additional period of time to evaluate the

7  Debtors' executory contracts and unexpired leases, negotiate with the counterparties

8  thereto and designate them for assumption and assignment (the "Contract Examination

9  Period"), provided that a Successful Bidder: (i) no later than two (2) business days after

10  the conclusion of the Auction, advises the Debtors in writing as to which executory

11  contracts and/or unexpired leases the Successful Bidder desires to have remain

12  available for assumption and assignment; and (ii) makes all payments under such

13  executory contracts and/or unexpired leases that become due during the Contract

14  Examination Period.  If additional executory contracts and/or unexpired leases are

15  designated by the Successful Bidder for assumption and assignment during the

16  Contract Examination Period, the assumption and assignment shall be the subject of a

17  separate motion for approval thereof to be filed by the Debtors.  Provided that the

18  counterparty was previously served with a Notice of Potential Assumption and

19  Assignment or Supplemental Notice of Potential Assumption and Assignment, the

20  counterparty shall have an opportunity in connection with such motion to raise an

21  objection solely on the issue of whether the Successful Bidder can provide adequate

22  assurance of future performance as required by section 365 of the Bankruptcy Code,

23  in accordance with Paragraph 16 hereof.

24       16.   The counterparties to the Designated Executory Contracts may, at or prior

1054195.~~3~~4                          - 12 -              BIDDING PROCEDURES ORDER

1  to the Sale Hearing, (or, if designated during the Contract Examination Period, in
2  connection with a separate motion to assume and assign as provided by Paragraph 15
3  hereof), object to the assumption, assignment, and/or transfer of such Designated
4  Executory Contract solely on the issue of whether the Successful Bidder can provide
5  adequate assurance of future performance as required by section 365 of the
6  Bankruptcy Code.  Any non-debtor party to a Designated Executory Contract that does
7  not object to the assignment of its respective Designated Executory Contract shall be
8  deemed to have consented to the assumption, assignment, and/or transfer of such
9  Designated Executory Contract to the Successful Bidder.  For the avoidance of any
10  doubt, nothing in this paragraph 16 shall extend, shorten or otherwise affect the time
11  period, or the ability to otherwise object, to any Cure Amount.

13      17.    Any unresolved objections to any Cure Amount or the assumption and
14  assignment of any Designated Executory Contract will be heard at the Sale Hearing or
15  at a later hearing, as determined by the Debtors subject to the Court's calendar.

17      18.    Except to the extent otherwise provided in the Successful Bidder's Purchase
18  Agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing
19  or arising after the assumption and assignment of any executory contract or unexpired
20  lease pursuant to section 365(k) of the Bankruptcy Code.

22      19.    To the extent the provisions of this Order are inconsistent with the
23  provisions of any Exhibit referenced herein or with the Motion, the provisions of this
24  Order shall control.

25      20.    The Court shall retain jurisdiction over all matters arising from or related to
26  the interpretation and implementation of this Order.

27      21.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006,
28

1054195.34                    - 13 -                    BIDDING PROCEDURES ORDER



1   7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately

2   effective and enforceable.

3               ###

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1054195.34                 - 14 -         BIDDING PROCEDURES ORDER

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

| In re:<br><br>**Freedom Communications, Inc., a Delaware corporation, Inc., et al.**<br><div style="text-align:right">Debtor(s).</div> | CHAPTER: **11**<br><br>CASE NUMBER: **8:15-bk-15311-MW**<br>**(Jointly Administered)** |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**650 Town Center Drive, Suite 950**
**Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled **REPLY REGARDING BID PROCEDURES COMPONENT OF THE DEBTORS' MOTION FOR ENTRY OF ORDERS: (I)(A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (B) AUTHORIZING, BUT NOT REQUIRING, THE GRANTING OF STALKING HORSE PROTECTIONS TO POTENTIAL STALKING HORSE BIDDER(S), (C) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE, (D) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (II)(A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO SUCCESSFUL BIDDER(S)' ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 28, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 28, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

(Attorney Service)
The Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, 6th Floor Courtesy Bin
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 1/28/2016 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **9013-3.1.PROOF.SERVICE**

| In re: | CHAPTER **11** |
|---|---|
| **Freedom Communications, Inc., a Delaware corporation, Inc., et al.** <br> Debtor(s). | CASE NUMBER **8:15-bk-15311-MW** <br> **(Jointly Administered)** |

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **James C Behrens**   jbehrens@greenbergglusker.com, kwoodson@ggfirm.com;calendar@ggfirm.com
- **Matthew Bouslog**   MBouslog@gibsondunn.com, Pcrawford@gibsondunn.com
- **J Scott Bovitz**   bovitz@bovitz-spitzer.com
- **Frank Cadigan**   frank.cadigan@usdoj.gov
- **Joseph Corrigan**   Bankruptcy2@ironmountain.com
- **Brian L Davidoff**   bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
- **Michael T Delaney**   mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
- **Caroline Djang**   cdjang@rutan.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Robert J Feinstein**   rfeinstein@pszjlaw.com
- **Scott D Fink**   brodellecf@weltman.com
- **Alan J Friedman**   afriedman@wgllp.com, nlockwood@wgllp.com;jokeefe@wgllp.com;banavim@wgllp.com
- **Beth Gaschen**   bgaschen@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- **Nancy S Goldenberg**   nancy.goldenberg@usdoj.gov
- **Seth Goldman**   seth.goldman@mto.com
- **Christopher J Green**   cgreen@wgllp.com, chrisgreen@ucla.com;kadele@wgllp.com
- **Michael J Hauser**   michael.hauser@usdoj.gov
- **M Jonathan Hayes**   jhayes@srhlawfirm.com,
  roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;staci@srhlawfirm.com;jhayesecf@gmail.com;sevan@srhlawfirm.com;carolyn@srhlawfirm.com
- **Eric M Heller**   eric.m.heller@irscounsel.treas.gov
- **Lillian Jordan**   ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM
- **Samuel M Kidder**   skidder@bhfs.com
- **Jeffrey C Krause**   jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
- **Elan S Levey**   elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- **William N Lobel**   wlobel@lwgfllp.com, nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Aaron J Malo**   amalo@sheppardmullin.com, jsummers@sheppardmullin.com
- **Ashley M McDow**   amcdow@bakerlaw.com,
  mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Reed M Mercado**   rmercado@sheppardmullin.com
- **Raymond F Moats**   colcaecf@weltman.com
- **Elizabeth L Musser**   emusser@tresslerllp.com
- **Ernie Zachary Park**   ernie.park@bewleylaw.com
- **Ronak Patel**   rpatel@co.riverside.ca.us, mdominguez@co.riverside.ca.us
- **Courtney E Pozmantier**   cpozmantier@greenbergglusker.com,
  kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- **Christopher E Prince**   cprince@lesnickprince.com
- **Christopher O Rivas**   crivas@reedsmith.com
- **Jeremy E Rosenthal**   jrosenthal@sidley.com
- **Peter J Rudinskas**   pjr.legal@gmail.com
- **Leonard M Shulman**   lshulman@shbllp.com
- **Donald W Sieveke**   ibmoola@yahoo.com, dws4law@pacbell.net
- **David P Simonds**   dsimonds@akingump.com, tsouthwell@akingump.com
- **Sarah Stuppi**   Sarah@stuppilaw.com
- **Helena Tseregounis**   htseregounis@sidley.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **Beth Ann R Young**   bry@lnbyb.com
- 

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**