William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:15-bk-15311-MW |
| FREEDOM COMMUNICATIONS, INC., *et al.*, | Chapter 11 |
| Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |

Affects:

☐ All Debtors

☒ Freedom Communications, Inc., a Delaware corporation, ONLY

☐ Freedom Communications Holdings, Inc., a Delaware corporation, ONLY

☐ Freedom Services, Inc., a Delaware corporation, ONLY

☐ 2100 Freedom, Inc., a Delaware corporation, ONLY

☐ OCR Community Publications, Inc., a California corporation, ONLY

☒ Daily Press, LLC, a California limited liability company, ONLY

☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY

☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SETTLEMENT BY AND BETWEEN CERTAIN OF THE DEBTORS AND LMG NATIONAL PUBLISHING, INC.; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF BRAD SMITH IN SUPPORT THEREOF**

**Hearing Date and Time:**

**DATE:    January 8, 2018**
**TIME:    2:00 p.m.**
**CTRM:   6C**
            **411 West Fourth Street**
            **Santa Ana, CA 92701**

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

#1140276

1

2  ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

3  ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

4

5  ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

6  ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

7

8  ☐ Freedom Newspapers, a Texas general partnership, ONLY

9  ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

10

11  ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

12

13  ☐ OCR Information Marketing, Inc., a California corporation, ONLY

14  ☐ Odessa American, a Texas general partnership, ONLY

15

16  ☐ Orange County Register Communications, Inc., a California corporation, ONLY

17

18  ☒ Victor Valley Publishing Company, a California corporation, ONLY

19  ☒ Victorville Publishing Company, a California limited partnership, ONLY

20

21  ☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

22  ☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

23

24  ☒ Freedom SPV I, LLC, a Delaware limited liability company, ONLY

25  ☐ Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

26

27  ☒ Freedom SPV V, LLC, a Delaware limited liability company, ONLY

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

#1140276

MOTION TO APPROVE
SETTLEMENT AGREEMENT

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................. 4

II. JURISDICTION AND VENUE ........................................................................ 5

III. STATEMENT OF FACTS ............................................................................. 6

    A.  The Debtors' Business Operations ........................................................ 6

    B.  The Asset Purchase Agreement .......................................................... 6

    C.  The Transition Services Agreement ...................................................... 7

    D.  The LMG Proofs of Claim .................................................................... 8

    E.  The LMG Adversary Proceeding .......................................................... 8

    F.  The Freedom Entities' Motion for Summary Judgment ....................... 8

IV. THE SETTLEMENT AGREEMENT ............................................................. 10

V.  THE SETTLEMENT AGREEMENT SHOULD BE APPROVED .................... 12

    A.  The Bankruptcy Court Should Approve the Settlement
        Agreement Pursuant to Federal Rule of Bankruptcy Procedure
        9019(a) ................................................................................................. 13

        1.  The Probability of Success / Complexity of the Litigation ............... 14

        2.  Difficulties With Collection ............................................................. 15

        3.  The Expense, Inconvenience, or Delay Occasioned by
            the Litigation .............................................................................. 16

        4.  The Interests of Creditors ............................................................. 16

VI. NOTICE ..................................................................................................... 17

VII. CONCLUSION ........................................................................................... 17

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 • Fax 714-966-1002

0.0

i

1

## TABLE OF AUTHORITIES

2                                                                                                **Page(s)**

3    **Cases**

4    *A&C Properties)*,
5        784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. den., Martin v.
        Robinson*, 479 U.S. 854, 107 S.Ct. 189 (1989) ................................................... 13

6    *In re Coram Healthcare Corp.*,
7        315 B.R. 321, 330 (Bankr. D. Del. 2004) ............................................................. 13

    *In re Hermitage Inn, Inc.*,
8        66 Bankr. 71, 72 (Bankr. D. Colo. 1986) ............................................................. 13

9    *In re Hibbard Brown & Co., Inc.*,
10        217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) ............................................................. 14

    *In re Nutritional Sourcing Corp.*,
11        398 B.R. 816, 833 (Bankr. D. Del. 2008) ............................................................. 13

12   *Martin*,
13        91 F.3d at 395; *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000) ................. 13

    *Nellis v. Shugrue*,
14        165 B.R. 115, 23 (S.D.N.Y. 1994).......................................................................... 14

15   *Pacific Gas*,
16        304 B.R. at 417 (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74
        (Bankr. D. Or. 2002).................................................................................... 13, 14

17   *Planned Protective Servs., Inc.*,
18        130 B.R. 94, 99, n.7 (Bankr. C.D. Cal. 1991)....................................................... 13

    *Stein*,
19        236 B.R. 34, 37 (D. Or. 1999).............................................................................. 13

20   *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,
21        839 F. 2d 610, 620 (9th Cir. 1988) ...................................................................... 14

    **Statutes**

22
23   11 U.S.C § 1334.......................................................................................................... 6

24   11 U.S.C. § 105............................................................................................................ 12

25   11 U.S.C. § 1102.......................................................................................................... 6

26   28 U.S.C § 1409........................................................................................................... 6

27   28 U.S.C. §§ 157........................................................................................................... 6

28   28 U.S.C. § 157(b)(2) ................................................................................................... 6

0.0                                          ii

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

28 U.S.C. §§ 1408 ................................................................................................ 6

Cal. Civ. Code § 1542 ........................................................................................ 11

**Rules**

Fed. R. Bankr. P. 9019 .................................................................................. 12, 13

Fed. R. Bankr. P. 2002 ...................................................................................... 13

1  **TO THE HONORABLE MARK S. WALLACE, UNITED STATES BANKRUPTCY JUDGE,**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES-IN-INTEREST:**

3     **PLEASE TAKE NOTICE** that on January 8, 2018, at the hour of 2:00 p.m., Victor

4  Valley Publishing Company ("VVPC"), Victorville Publishing Company ("VPC"), Daily

5  Press, LLC ("Daily Press"), Freedom Communications, Inc. ("FCI" or "Freedom"),

6  Freedom SPV I, LLC ("FSPV I"), and Freedom SPV V, LLC ("FSPV V"),[1] certain of the

7  jointly administered debtors and debtors-in-possession in the above-captioned chapter 11

8  bankruptcy cases (the "Chapter 11 Cases"), will move (the "Motion") this Court for the

9  entry of an order, pursuant to section 105 of title 11 of the United States Code (the

10  "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

11  "Bankruptcy Rules"), approving the Settlement and Mutual Release Agreement, dated

12  October 31, 2017 (the "Settlement Agreement"), by and between the Freedom Entities

13  and LMG National Publishing, Inc., a Delaware corporation ("LMG"),[2] resolving disputes

14  among the Parties in connection with the Chapter 11 Cases and at issue in the pending

15  Adversary (as such term is defined herein) involving the Parties as to, among other things,

16  disputes relating to $647,868.46 in Withheld Revenues (as defined herein), as well as

17  providing releases of any and all claims, acts or omissions arising between the Parties.

18  The settlement among the Parties (the "Settlement") is the product of extensive

19  negotiations between the Parties and the terms of the Settlement are specifically set forth

20  in the Settlement Agreement executed by the Parties, a copy of which is attached as

21  **Exhibit A** to the Declaration of Brad Smith (the "Smith Declaration") annexed hereto.

22     **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of

23  Motion and Motion, Rule 9019 of the Bankruptcy Rules, Rule 9013-1 of the Local Rules of

24  Bankruptcy Procedure for the Central District of California (the "Local Bankruptcy Rules"),

25

26  ──────────────

27     [1] VVPC, VPC, Daily Press, FCI, FSPV I and FSVP V are collectively referred to herein as the "Freedom Entities."

28     [2] LMG and the Freedom Entities are collectively referred to herein as the "Parties."

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  the Memorandum of Points and Authorities and the Smith Declaration filed in support of

2  the Motion, and all pleadings, documents and records on file with this Court, as well as

3  any other documentary evidence as may be presented to this Court in connection with this

4  matter.

5      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule

6  9013-1, any opposition to the Motion or other responsive pleading must be filed with the

7  Clerk of the Bankruptcy Court and served on counsel for the Freedom Entities (at the

8  address located in the upper left-hand corner of this Notice), counsel for LMG, counsel for

9  the Committee, the Office of the United States Trustee (at the addresses below), as well

10 as any other parties of interest, not later than fourteen (14) days prior to the hearing date

11 in the form required by Local Bankruptcy Rule 9013-1(f).

12

13 Counsel for LMG:

14 Ashley M. McDow, Esq.
   Michael T. Delaney, Esq.

15 Baker & Hostetler LLP
   11601 Wilshire Blvd., Suite 1400

16 Los Angeles, CA 90025
   Email: amcdow@bakerlaw.com

17 Email: mdelaney@bakerlaw.com

18 Counsel for the Committee:

19 Robert J. Feinstein
   Pachulski Stang Ziehl & Jones LLP

20 780 Third Avenue, 34th Floor
   New York, NY 10017-2024

21 Email: rfeinstein@pszjlaw.com
   Fax: (212) 561-7777

22
   -and-

23
   Jeffrey W. Dulberg

24 Pachulski Stang Ziehl & Jones LLP
   10100 Santa Monica Blvd., 13th Floor

25 Los Angeles, CA 90067
   Email: jdulberg@pszjlaw.com

26 Fax: (310) 277-6910

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

Office of the United States Trustee:
Frank Cadigan, Asst. U.S. Trustee
Nancy S. Goldenberg, Attorney
Michael J. Hauser, Attorney
Office of the United States Trustee
411 West Fourth Street, Suite 9041
Santa Ana, CA  92701-8000
Email:  frank.cadigan@usdoj.gov
Email:  nancy.goldenberg@usdoj.gov
Email:  michael.hauser@usdoj.gov
Fax:  (714) 338-3421

**IF YOU FAIL TO FILE A WRITTEN OBJECTION TO THE MOTION WITHIN SUCH TIME PERIOD, THE COURT MAY TREAT SUCH FAILURE AS A WAIVER OF YOUR RIGHT TO OBJECT TO THE MOTION AND MAY APPROVE THE MOTION.**

**PLEASE TAKE FURTHER NOTICE** that the Freedom Entities submit that the Settlement Agreement is fair and reasonable and the relief requested herein is in the best interest of the Freedom Entities, their estates, creditors and other parties-in-interest and should therefore be granted.  Accordingly, for the reasons set forth herein, the Freedom Entities request the Court enter an order authorizing and approving the Settlement Agreement, as requested by the Motion.

Dated:  December ___, 2017

Respectfully submitted,
LOBEL WEILAND GOLDEN FRIEDMAN LLP

By:_____
WILLIAM N. LOBEL
ALAN J. FRIEDMAN
BETH E. GASCHEN
Attorneys for Debtors and
Debtors-in-Possession

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

By way of the Motion, the Parties seek approval of the Settlement memorialized in the Settlement Agreement that will resolve the issues among the Parties in connection with the Chapter 11 Cases and in the pending Adversary (as defined herein), including relating to $647,868.46 in Withheld Revenues (as defined herein), and providing releases of any and all other claims or causes of action between and among the Parties, as provided by the Settlement Agreement.

The material terms of the Settlement Agreement are as follows:[3]

- <u>Cash Payment</u>.  No later than three (3) business days after the Effective Date,[4] the Freedom Entities, or any of them, shall pay LMG the sum of Fifty Thousand Dollars ($50,000.00) in immediately available funds (the "<u>Cash Payment</u>").

- <u>Allowed General Unsecured Claim</u>.  On the Effective Date, and without the need to take any further action, LMG (or any designated assignee thereof) shall be deemed to have an allowed general unsecured claim in the Freedom Entities' Chapter 11 Cases (defined in the Settlement Agreement as the "<u>Bankruptcy Cases</u>") and enforceable against the Freedom Entities' estates (defined in the Settlement Agreement as the "<u>Estates</u>") and any or all of the Freedom Entities in the amount of $608,519.21 (the "<u>LMG Claim</u>"). In the event the Freedom Entities propose a plan of reorganization or liquidation under chapter 11 of the Bankruptcy Code that attempts to separately classify, provide alternate treatment(s) for, or subordinate any general unsecured claim(s), the LMG Claim shall not be subordinated to any other general unsecured claims or otherwise reduced or diminished, and shall be included in the class of general unsecured claims scheduled to receive the greatest and most immediate distributions under the plan.

---

[3] A more detailed summary of the salient terms of the Settlement Agreement is set forth in Section IV of this Motion. While the summaries of the principal terms of the Settlement Agreement set forth in this Motion are intended to be accurate, parties in interest should read the full Settlement Agreement, attached as **Exhibit A** to the Smith Declaration, for the complete terms.  If there is any discrepancy between the summaries contained herein and the Settlement Agreement, the terms of the Settlement Agreement shall control.

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.  As provided in Section 1 of the Settlement Agreement, the Settlement Agreement shall be effective on the date on which the order grating this Motion and approving the Settlement becomes a Final Order (the "<u>Effective Date</u>").

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

- <u>LMG Release</u>.   Except for the obligations expressly created or provided under the Settlement, the Freedom Entities shall release, remise, acquit, exonerate and forever discharge LMG and each of its successors, predecessors, assigns, employees, officers, directors, agents, professionals, and affiliates ("<u>LMG Release Parties</u>") of and from any and all claims, acts or omissions arising between them, including, without limitation, any claims for attorneys' fees and costs under the APA (as hereafter defined) or otherwise, whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which the Freedom Entities had, have or may have against the LMG Release Parties, or any of them.  Such release shall be effective upon the Effective Date.

- <u>Freedom Release</u>.   Except for the obligations created or provided under the Settlement, and except as otherwise provided therein, including, without limitation, in Paragraph 4.c. of the Settlement Agreement, LMG shall release, remise, acquit, exonerate and forever discharge the Freedom Entities, and each of them, and each of their successors, predecessors, assigns, professionals and affiliates ("<u>Freedom Release Parties</u>") of and from any and all claims, acts or omissions arising between them, including, without limitation, any claims for attorneys' fees and costs under the APA (as hereafter defined) or otherwise, whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which LMG had, has or may have against the Freedom Release Parties, or any of them.  Such release shall be effective upon the Effective Date.

- <u>Dismissal of Adversary Proceeding</u>.   No later than ten (10) business days after receipt of the Cash Payment, the Parties shall execute and file a joint stipulation to dismiss the Adversary (as hereafter defined) with prejudice, provided, however, that the Court shall retain jurisdiction over the Adversary to the extent necessary to enforce the Settlement and, if necessary, compel the payment of any and all amounts due thereunder.

As discussed herein, the Settlement's beneficial terms and satisfaction of the prevailing legal standards support approval of the Settlement Agreement.  Accordingly, the Freedom Entities request that the Bankruptcy Court approve the Settlement Agreement as requested by this Motion.

## II.   <u>JURISDICTION AND VENUE</u>

On November 1, 2015 and November 2, 2015 (the "<u>Petition Date</u>"), the Freedom Entities (and their related debtors and debtors-in-possession, together, the "<u>Debtors</u>") commenced the Chapter 11 Cases in the United States Bankruptcy Court for the Central

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1  District of California (the "Bankruptcy Court" or "Court").  The Bankruptcy Court authorized

2  the joint administration of the Chapter 11 Cases by order entered on November 2, 2015.

3       On November 10, 2015, the Office of the United States Trustee appointed the

4  Committee in the Chapter 11 Cases of Freedom Communications, Inc., Freedom

5  Communications Holdings, Inc., Freedom Services, Inc. and OCR Community

6  Publications, Inc., pursuant to section 1102 of the Bankruptcy Code.

7       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

8  1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of this matter in this

9  district is proper under 28 U.S.C. §§ 1408 and 1409.

10       The Parties consent to the entry of a final order by the Court in connection with this

11  Motion to the extent it is later determined that the Court, absent consent of the Parties,

12  cannot enter final orders or judgments consistent with Article III of the United States

13  Constitution.

14  **III.    STATEMENT OF FACTS**

15      **A.    The Debtors' Business Operations**

16       Prior to the sale of substantially all of their assets, the Debtors were a privately

17  owned information and entertainment company consisting of print publications and

18  interactive businesses.  The Debtors' portfolio included daily and weekly newspapers,

19  magazines and other specialty publications.  In addition, the Debtors operated an

20  interactive business which offered website complements, as well as digital and mobile

21  products, to their print publications.  The Orange County Register was the Debtors'

22  flagship newspaper.  The Debtors also operated the Press-Enterprise and Unidos (a

23  Spanish language newspaper), and owned real property in Santa Ana and Riverside,

24  California.

25      **B.    The Asset Purchase Agreement**

26       On or about February 28, 2014, VVPC, VPC, and Daily Press (collectively, the

27  "Sellers"), on the one hand, and LMG, on the other hand, entered into that certain Asset

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

6                          MOTION TO APPROVE
SETTLEMENT AGREEMENT

Purchase Agreement dated February 28, 2014 (the "APA").  By and through the APA, LMG acquired, as a going concern, substantially all of the assets, properties and businesses of the Sellers, including, without limitation, all accounts receivables and other revenue streams derived from or related to the assets or operations of the Sellers.

C.   **The Transition Services Agreement**

On or about February 28, 2014, Freedom and LMG entered into the Transition Services Agreement dated February 28, 2014 (the "TSA" and, together with the APA, the "Agreements").  Pursuant to the TSA, Freedom agreed to provide certain services to LMG directly and/or through one or more affiliates during the transition of the businesses subject to the APA to LMG.  LMG alleges that these services included the collection of accounts receivables and revenues derived from the continued operation of the businesses subject to the APA (the "Revenues").

Between March 3, 2014 and October 17, 2014, the Freedom Entities collected or took possession of $1,553,709.75 in Revenues.  On March 14, 2014, Freedom returned $215,423.29 of the Revenues, which constituted Revenues collected as of March 7, 2014.  On June 6, 2014 and June 17, 2014 Freedom returned an additional $50,000 and $20,000 of the Revenues, respectively.  Commencing on or about February 6, 2015 and continuing through the end of April 2015, Freedom made nine (9) additional transfers of Revenue, each in the amount of $20,000, to LMG (totaling $180,000).  These payments were applied to reduce the balance owing on account of a working capital adjustment.  The total Revenues returned to LMG of $285,423.29 ("Returned Revenues").

In addition to the Returned Revenues, the Freedom Entities rendered services and incurred expenses on behalf of LMG pursuant to the TSA totaling $620,418 (the "Service Balance").  In satisfaction of the Service Balance, LMG agreed to offset the Service Balance against the Revenues then held by Freedom and/or the Sellers.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1     As of the Petition Date, the Freedom Entities had yet to return $647,868.46 (the

2 "Withheld Revenues") in Revenues to LMG.

3     **D.   The LMG Proofs of Claim**

4     On or about April 1, 2016, LMG filed the following proofs of claim (collectively, the

5 "Proofs of Claim"): (i) proof of claim 3-1 in the VVPC Bankruptcy; (ii) proof of claim 3-1 in

6 the VPC Bankruptcy; (iii) proof of claim 4-1 in the Daily Press Bankruptcy; (iv) proof of

7 claim 499-1 in the Freedom Bankruptcy; (v) proof of claim 3-1 in the FSPV I Bankruptcy;

8 and (vi) proof of claim 3-1 in the FSPV V Bankruptcy.

9     **E.   The LMG Adversary Proceeding**

10     On or about January 31, 2017, LMG filed a complaint against the Freedom Entities

11 (the "Complaint")—thereby commencing the adversary proceeding styled *LMG National*

12 *Publishing, Inc. v. Victor Valley Publishing Company, et al.*, adv. no. 8:17-ap-01016-MW

13 (the "Adversary"), in the Bankruptcy Court. By and through the Adversary, LMG sought

14 the imposition of a resulting trust over certain funds held by the Freedom Entities or a

15 judicial determination that such funds did not constitute property of the bankruptcy estates

16 in the Bankruptcy Cases (collectively, the "Estates").

17     On or about March 17, 2017, the Freedom Entities filed both an answer to the

18 Complaint and a counter-complaint against LMG. On or about April 4, 2017, the Freedom

19 Entities filed an amended answer and counter-complaint against LMG (the "Counter-

20 Complaint"). By and through the Counter-Complaint, the Freedom Entities sought to

21 disallow the Proofs of Claim or, alternatively, a judicial determination that LMG was solely

22 entitled to a general unsecured claim on account of the Withheld Revenues. On or about

23 May 9, 2017, LMG filed an answer to the Counter-Complaint.

24     **F.   The Freedom Entities' Motion for Summary Judgment**

25     On or about April 13, 2017, the Freedom Entities filed a motion for summary

26 judgment or adjudication on the Counter-Complaint and sought an award of attorneys'

27 fees and expenses (the "Motion for Summary Judgment"). Therein, the Freedom Entities

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  argued, among other things, that the indemnity clause of the APA prevented LMG from

2  recovering any amount, including the Withheld Revenues, from the Freedom Entities. The

3  Freedom Entities further argued that LMG was not entitled to the imposition of a resulting

4  trust or a constructive trust or a judicial determination that certain funds held by the

5  Freedom Entities, or any of them, constituted the sole and separate property of LMG

6  because LMG had failed to sufficiently trace the Withheld Revenues to funds presently in

7  the possession of a Freedom Entity.

8        On or about June 7, 2017, LMG filed an opposition to the Motion for Summary

9  Judgment.  Therein, LMG argued, among other things, that the indemnity clause of the

10  APA did not govern the claims asserted in the Complaint and, assuming *arguendo* that the

11  indemnity clause applied, LMG timely satisfied the prerequisites to assert a claim under

12  the indemnity clause.  LMG further argued that governing law did not require tracing to

13  impose a resulting trust and, even if the Bankruptcy Court found that it did, further

14  discovery was necessary to afford LMG an opportunity to trace the Withheld Revenues to

15  funds presently held by the Freedom Entities.

16        On or about June 28, 2017, the Motion for Summary Judgment came on for

17  hearing before the Court, the Honorable Mark S. Wallace presiding.  After receiving

18  argument, the Court continued the hearing on the Motion for Summary Judgment in order

19  to permit the Parties to submit additional briefing on multiple unresolved issues, including,

20  without limitation, the law applicable to the question of tracing and whether tracing is

21  required in order to impose a resulting trust under governing law.

22        By way of the Settlement Agreement, the Parties wish to settle and resolve any and

23  all disputes between the Parties, including, without limitation, the disputes alleged in the

24  Adversary and relating to the Withheld Revenues, pursuant to the terms set forth in the

25  Settlement Agreement.

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

#1140276

9

## IV. THE SETTLEMENT AGREEMENT

As a result of extensive negotiations, the Parties have reached the compromise memorialized in the Settlement Agreement, the material terms of which are the following:

a. **Cash Payment**.  No later than three (3) business days after the Effective Date, the Freedom Entities, or any of them, shall pay LMG the sum of Fifty Thousand Dollars ($50,000.00) in immediately available funds (the "Cash Payment").  The Cash Payment shall be made via wire transfer to an account designated by LMG.

b. **Allowed General Unsecured Claim.**  On the Effective Date, and without the need to take any further action, LMG (or any designated assignee thereof) shall be deemed to have an allowed general unsecured claim in the Bankruptcy Cases and enforceable against the Debtors' estates and any or all of the Freedom Entities in the amount of $608,519.21 (the "LMG Claim").  The LMG Claim consists of (i) the unpaid portion of the Withheld Revenues after accounting for the Cash Payment ($597,868.46) and (ii) the amount sought by and through the Proofs of Claim ($10,650.75) for the unpaid working capital adjustment, and for all intents and purposes shall relate back and replace the original Proofs of Claim.  In the event the Freedom Entities propose a plan of reorganization or liquidation under chapter 11 of the Bankruptcy Code that attempts to separately classify, provide alternate treatment(s) for, or subordinate any general unsecured claim(s), the LMG Claim shall not be subordinated to any other general unsecured claims or otherwise reduced or diminished, and shall be included in the class of general unsecured claims scheduled to receive the greatest and most immediate distributions under the plan.

c. **Waiver of Claim Objections.**  Except as expressly set forth in the Settlement Agreement, the Freedom Entities shall waive any and all objections to the Proofs of Claim and LMG Claim, whether filed or unfiled, known or unknown.

d. **Dismissal of Adversary Proceeding.**  No later than ten (10) business days after receipt of the Cash Payment, the Parties shall execute and file a joint

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  stipulation to dismiss the Adversary with prejudice; *provided, however*, that the Court shall

2  retain jurisdiction over the Adversary to the extent necessary to enforce the Settlement

3  and, if necessary, compel the payment of any and all amounts due hereunder.

4          e.    **LMG Release**.  Except for the obligations expressly created or

5  provided under the Settlement, the Freedom Entities shall release, remise, acquit,

6  exonerate and forever discharge LMG and each of its successors, predecessors, assigns,

7  employees, officers, directors, agents, professionals, and affiliates ("LMG Release

8  Parties") of and from any and all claims, acts or omissions arising between them,

9  including, without limitation, any claims for attorneys' fees and costs under the APA or

10 otherwise, whether now known or unknown, anticipated or unanticipated, suspected or

11 unsuspected, which the Freedom Entities had, have or may have against the LMG

12 Release Parties, or any of them.  In so doing, the Freedom Entities have had the benefit

13 and advice of counsel and hereby knowingly and intentionally waive any right(s) under

14 California Civil Code section 1542, or any analogous or similar law.  Such release shall be

15 effective upon the Effective Date.

16         f.    **Freedom Release**.  Except for the obligations created or provided

17 under the Settlement, and except as otherwise provided therein, including, without

18 limitation, in Paragraph 4.c., LMG shall release, remise, acquit, exonerate and forever

19 discharge the Freedom Entities, and each of them, and each of their successors,

20 predecessors, assigns, professionals and affiliates ("Freedom Release Parties") of and

21 from any and all claims, acts or omissions arising between them, including, without

22 limitation, any claims for attorneys' fees and costs under the APA or otherwise, whether

23 now known or unknown, anticipated or unanticipated, suspected or unsuspected, which

24 LMG had, has or may have against the Freedom Release Parties, or any of them.  In so

25 doing, LMG has had the benefit and advice of counsel and hereby knowingly and

26 intentionally waive any right(s) under California Civil Code section 1542, or any analogous

27 or similar law.  Such release shall be effective upon the Effective Date.

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1            **g.**    **Reservation of Rights.**  Notwithstanding anything to the contrary

2    provided in the Settlement Agreement, LMG shall retain any and all claims, causes of

3    action, and rights to monetary damages from the current and/or former directors and/or

4    officers of the Freedom Entities and/or any of their parents, subsidiaries, partners, joint

5    venturers, and/or affiliates (the "D&Os"), save and except for Brad Smith, the chief

6    restructuring officer for the Freedom Entities.  To the extent the liability of the D&Os, or

7    any of them, is derivative or otherwise dependent on the liability of the Freedom Release

8    Parties, or any of them, the release provided to the Freedom Release Parties shall not

9    affect or limit the liability of the D&Os, or any of them; rather, the release shall be deemed

10    solely to limit the rights of LMG to recover damages on account of such liability from any

11    source other than the D&Os, or any of them, independent of any insurance policies or the

12    nature of the liability as derivative.  The release provided to the Freedom Release Parties

13    shall not preclude LMG from naming any or all of the Freedom Release Parties as

14    defendants in any action seeking damages against the D&Os, or any of them, so long as

15    LMG does not seek to recover any damages or otherwise obtain any relief from any or all

16    of the Freedom Release Parties.  The releases contained in this Paragraph do not and

17    shall not be interpreted as releasing the Freedom Entities from the obligation to make

18    either the Cash Payment or distributions on account of the LMG Claim.

19            **h.**    **Cooperation.**  The Parties shall execute any additional

20    documentation reasonably necessary to effectuate the intent and purpose of the

21    Settlement.  The Parties shall not take any action or counsel or assist any other individual

22    or entity to take any action to interfere with or impede the performance of the Settlement

23    or any provision thereof.

24
25    **V.    THE SETTLEMENT AGREEMENT SHOULD BE APPROVED**

26            By this Motion, the Freedom Entities seek entry of an order under Bankruptcy Code

27    section 105 and Bankruptcy Rule 9019 approving the Settlement Agreement.

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

**A.    The Bankruptcy Court Should Approve the Settlement**

**Agreement Pursuant to Federal Rule of Bankruptcy Procedure**

**9019(a)**

Federal Rule of Bankruptcy Procedure 9019(a) provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

The approval or disapproval of a settlement under Rule 9019(a) falls within the sound discretion of the bankruptcy court.  *See In re Stein*, 236 B.R. 34, 37 (D. Or. 1999). In undertaking such consideration, "[t]he law favors compromise and not litigation for its own sake . . . ."  *See Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. den., Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189 (1989).  In reaching its determination, although the court is to consider the range of results in litigation, "the court's assessment does not require resolution of the issues, but only their identification, so that the reasonableness of the settlement may be evaluated."  *In re Hermitage Inn, Inc.*, 66 Bankr. 71, 72 (Bankr. D. Colo. 1986).

In this regard, a court need not decide the numerous issues of law and fact raised by the settlement and it need not be convinced that the proposed settlement is the best possible, rather "[t]he court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."  *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008) (*quoting In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004)); *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99, n.7 (Bankr. C.D. Cal. 1991).  In making its determination, a court should not substitute its own judgment for that of the debtor and should defer to the debtor so long as there is a reasonable business justification for the settlement.  *See Martin*, 91 F.3d at 395; *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1    2000).  The court should exercise its discretion "in light of the general public policy

2    favoring settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y.

3    1998); *Nellis v. Shugrue*, 165 B.R. 115, 23 (S.D.N.Y. 1994) ("[T]he general rule [is] that

4    settlements are favored and, in fact, encouraged by the approval process outlined

5    above.").

6           In determining the fairness, reasonableness, and adequacy of a proposed

7    settlement agreement, the Ninth Circuit has set forth that a court should consider the

8    following factors:  (1) the probability of success in litigation; (2) the difficulties, if any, to be

9    encountered in the matter of collection; (3) the complexity of the litigation involved and the

10   expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

11   of the creditors and the proper deference to their reasonable views in the premises.  *See*

12   *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F. 2d 610, 620 (9th Cir. 1988)

13   (quoting *A & C Props.*, 784 F.2d at 1380).  It is not necessary that the conclusions reached

14   in the consideration of each of these factors support the settlement but, taken as a whole,

15   those conclusions must favor the approval of the settlement.  *See Pacific Gas*, 304 B.R. at

16   417 (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002))

17          In this case, as discussed in further detail below, the Settlement Agreement falls

18   well within the range of reasonable litigation outcomes and is the product of good faith,

19   arms-length negotiations among the Parties.

20          **1.    The Probability of Success / Complexity of the Litigation**

21          While the Freedom Entities believe that they have a reasonable likelihood of

22   success in the litigation with LMG, they recognize that they may not necessarily prevail in

23   connection with some or all of the claims and causes of action at issues in the litigation

24   with LMG.  Specifically, as evidenced by the Court's request for additional briefing with

25   respect to multiple unresolved issues in connection with the Adversary and the pending

26   Motion for Summary Judgment, including the applicability of the tracing requirement to the

27   Parties' disputes, the issues have a high degree of complexity and a favorable outcome

28

Lobel Weiland Golden Friedman LLP
660 Town Center Drive, Suite 850
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  for the Freedom Entitles, therefore, is uncertain in light of such unresolved issues.  Should

2  the legal issues raised by the Parties not be disposed of in a summary fashion, the Parties

3  would be faced with preparing for a contested trial involving these complex and novel

4  issues.  In addition, should the Motion for Summary Judgment not be granted, the Parties

5  would need to undertake significant discovery related to issues such as tracing, the

6  Freedom Entitles' financial condition, the terms of the Parties' agreements and their

7  import, as well as the Parties' intent.  These issues are made even more complex in light

8  of the cessation of the Debtors' business operations and the resulting impact on a direct

9  access to relevant financial data and personnel with knowledge of such issues.

10  Accordingly, the Parties believe that the resolution of all disputes among them at issue in

11  the Chapter 11 Cases and in the Adversary, in accordance with the terms of the

12  Settlement Agreement, represents a fair and reasonable settlement of their disputes.

13         **2.**    **Difficulties With Collection**

14       The instant matter does not involve a material consideration of the difficulty of

15  collection with respect to an affirmative recovery by the Estates.[5]  However, the

16  Settlement does result in a significant reduction in LMG's claimed entitlement to

17  ownership of estate funds.  By the Complaint, LMG asserts that approximately $650,000

18  of funds held by the Debtors are not estate property, but – through the imposition of a

19  resulting trust or otherwise – belong to LMG.  If ultimately successful, LMG's claims in this

20  regard would serve to materially reduce the amount of funds available for distribution to

21  the Debtors' creditors.  By the Settlement, the Parties have agreed to a Cash Payment to

22  LMG in the amount of $50,000, with the remainder of the LMG Claim (in the amount of

23  $608,519.21) allowed as a general unsecured claim that will be treated on par with other

24  unsecured claimants in the Chapter 11 Cases.  Accordingly, the issues that are being

25

26

27  ────────────

28  [5] The Freedom Entities, like LMG, sought prevailing party attorneys' fees and costs in connection with
the Adversary (which claims are being released pursuant to the Settlement).  The Freedom Entities did not
claim any additional affirmative monetary recovery against LMG.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  resolved by way of the Settlement Agreement will eliminate the potential of a significant

2  impact in the Debtors' cash position, benefitting all creditors of the Estates.

3          **3.    The Expense, Inconvenience, or Delay Occasioned by the**

4                  **Litigation**

5          A further factor that weighs in favor of a settlement of the issues with LMG is the

6  expense, inconvenience and delay that will result should the litigation continue.  While the

7  Freedom Entities moved for summary adjudication on many of the issues by way of the

8  Motion for Summary Judgment, summary disposition has been contested by LMG and, as

9  discussed above – especially in light of the Court's request for further briefing on

10 numerous issues – it is uncertain whether some or all of the issues will be disposed of in

11 this truncated fashion.  To the extent that some or all of the factual and legal issues

12 remained, continued litigation would likely be protracted, time-consuming, and costly,

13 necessitating a substantial expenditure of attorney and expert fees on behalf of the

14 Estates.  Furthermore, the issues relating to the LMG Claims and the pending Adversary

15 continue to be a hindrance to the ability of the Debtors to move forward to propose a plan

16 in these Chapter 11 Cases as the status of approximately $650,000 in funds, as being

17 estate funds or not, remains unresolved.  Pursuant to the Settlement, LMG will receive

18 $50,000 as a Cash Payment and shall have an allowed unsecured claim in the amount of

19 $608,519.21.  As discussed above, this resolution preserves significant funds for the

20 benefit of all creditors of the Estates.

21         **4.    The Interests of Creditors**

22         The Settlement will resolve all claims and disputes between the Parties related to

23 the Chapter 11 Cases and the Adversary, thereby avoiding the continuation of expensive

24 and lengthy litigation, and the uncertainty of a successful outcome.  The terms of the

25 Settlement were reached as a result of extensive negotiations between the Parties.

26 Further, the Settlement will remove one of the remaining obstacles to the ability of the

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  Debtors and the Committee to proceed to formulate and propose a plan in the Chapter 11

2  Cases.

3      Based on the foregoing, the Freedom Entities submit that the Settlement

4  memorialized in the Settlement Agreement satisfies the test for approval under Ninth

5  Circuit law, and the approval thereof is in the best interests of the Freedom Entities, their

6  estates, creditors and other parties in interest, and therefore, should be approved.

7

## VI.  NOTICE

8

9      Notice of the filing of this Motion has been given to all parties entitled to notice in

accordance with the Bankruptcy Court's Order Limiting Scope of Notice entered

10

November 5, 2015 [Dkt. No. 45], and to all parties requesting electronic notice.  The

11

Freedom Entities submit that such notice is sufficient and that no other or further notice be

12

given.

13

14  ## VII.  CONCLUSION

15      Based on the foregoing, the Freedom Entities request that the Bankruptcy Court

16  enter an Order: (1) granting the Motion; (2) approving the Settlement Agreement;

17  (3) authorizing the Parties to enter into and take any and all actions reasonably necessary

18  to effectuate the terms of the Settlement Agreement; and (4) for such other and further

19  relief as the Bankruptcy Court may deem just and proper.

20                          Respectfully submitted,

21

Dated:  December _8_, 2017            LOBEL WEILAND GOLDEN FRIEDMAN LLP

22

23

24  By: _____
                          WILLIAM N. LOBEL
25                        ALAN J. FRIEDMAN
                          BETH E. GASCHEN
26                        Attorneys for Debtors and
                          Debtors-in-Possession

27

28
#1140276                     17              MOTION TO APPROVE
                                             SETTLEMENT AGREEMENT

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## DECLARATION OF BRAD SMITH

I, Brad Smith, declare as follows:

1.      I am a Senior Managing Director of GlassRatner Advisory & Capital Group LLC ("GlassRatner"), which has served as financial advisor and consultant to the debtors and debtors-in-possession (the "Debtors") in their chapter 11 cases (the "Chapter 11 Cases"). Effective as of April 1, 2016, I was appointed as Chief Restructuring Officer ("CRO") to the Debtors. In my role as CRO, I am responsible for the winding-down of the Debtors' operations following the sale of substantially all of the Debtors' assets, including the preparation of a plan and disclosure statement, and the review and resolution of certain claims against the estates and litigation matters.

2.      As a result of my tenure as the Debtors' financial advisor and thereafter as CRO, my review of relevant documents, and my discussions with members of the Debtors' staff and their advisors, I am generally familiar with the Debtors' financial affairs. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, could testify competently thereto. Except as otherwise stated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' staff and their advisors, my review of relevant documents, or my opinion, based on my experience and knowledge of the Debtors' books and records and/or their financial affairs.

3.      I am submitting this declaration in support of the *Motion for Order Approving Settlement By and Between Certain of the Debtors and LMG National Publishing, Inc.* (the "Motion"). All terms not defined herein shall have the meanings ascribed to them in the Motion. I have reviewed the Motion and am familiar with the information contained therein.

4.      By the Motion, Victor Valley Publishing Company ("VVPC"), Victorville Publishing Company ("VPC"), Daily Press, LLC ("Daily Press"), Freedom Communications, Inc. ("FCI" or "Freedom"), Freedom SPV I, LLC ("FSPV I"), and

Freedom SPV V, LLC ("FSPV V") (the "Freedom Entities") seek an order approving the

Settlement and Mutual Release Agreement, dated October 31, 2017 (the "Settlement

Agreement"), by and between the Freedom Entities and LMG National Publishing, Inc., a

Delaware corporation ("LMG"), resolving disputes among the Parties in connection with

the Chapter 11 Cases and at issue in the pending Adversary (as such term is defined

herein) involving the Parties as to, among other things, relating to the Withheld Revenues

(as such term is defined herein), as well as releases of any and all claims, acts or

omissions arising between the Parties.  The settlement among the Parties (the

"Settlement") is the product of extensive negotiations between the Parties, and the terms

of the Settlement are specifically set forth in the Settlement Agreement executed by the

Parties, a copy of which is attached as **Exhibit A** hereto.

5.    The material terms of the Settlement Agreement are summarized in

paragraph 21 hereinbelow.

## Jurisdiction and Venue

6.    On November 1, 2015 and November 2, 2015 (the "Petition Date"), the

Debtors commenced the Chapter 11 Cases in the United States Bankruptcy Court for the

Central District of California (the "Bankruptcy Court" or "Court").  The Bankruptcy Court

authorized the joint administration of the Chapter 11 Cases by order entered on

November 2, 2015.

7.    On November 10, 2015, the Office of the United States Trustee appointed

the Committee in the Chapter 11 Cases of Freedom Communications, Inc., Freedom

Communications Holdings, Inc., Freedom Services, Inc. and OCR Community

Publications, Inc., pursuant to section 1102 of the Bankruptcy Code.

8.    It is my understanding that the Parties consent to the entry of a final order by

the Bankruptcy Court in connection with the Motion to the extent it is later determined that

the Bankruptcy Court, absent consent of the Parties, cannot enter final orders or

judgments consistent with Article III of the United States Constitution.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

0.0

### Factual Background

9.      Prior to the sale of substantially all of their assets, the Debtors were a privately owned information and entertainment company consisting of print publications and interactive businesses.  The Debtors' portfolio included daily and weekly newspapers, magazines and other specialty publications.  In addition, the Debtors operated an interactive business which offered website complements, as well as digital and mobile products, to their print publications.  The Orange County Register was the Debtors' flagship newspaper.  The Debtors also operated the Press-Enterprise and Unidos (a Spanish language newspaper), and owned real property in Santa Ana and Riverside, California.

10.     On or about February 28, 2014, VVPC, VPC, and Daily Press (collectively, the "Sellers"), on the one hand, and LMG, on the other hand, entered into that certain Asset Purchase Agreement dated February 28, 2014 (the "APA").  By and through the APA, LMG acquired, as a going concern, substantially all of the assets, properties and businesses of the Sellers, including, without limitation, all accounts receivables and other revenue streams derived from or related to the assets or operations of the Sellers.

11.     On or about February 28, 2014, Freedom and LMG entered into the Transition Services Agreement dated February 28, 2014 (the "TSA" and, together with the APA, the "Agreements").  Pursuant to the TSA, Freedom agreed to provide certain services to LMG directly and/or through one or more affiliates during the transition of the businesses subject to the APA to LMG.  LMG alleges that these services included the collection of accounts receivables and revenues derived from the continued operation of the businesses subject to the APA (the "Revenues").

12.     Between March 3, 2014 and October 17, 2014, the Freedom Entities collected or took possession of $1,553,709.75 in Revenues.  On March 14, 2014, Freedom returned $215,423.29 of the Revenues, which constituted Revenues collected as of March 7, 2014.  On June 6, 2014 and June 17, 2014 Freedom returned an

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

0.0

additional $50,000 and $20,000 of the Revenues, respectively.  Commencing on or about February 6, 2015 and continuing through the end of April 2015, Freedom made nine (9) additional transfers of Revenue, each in the amount of $20,000, to LMG (totaling $180,000).  These payments were applied to reduce the balance owing on account of a working capital adjustment.  The total Revenues returned to LMG of $285,423.29 ("Returned Revenues").

13.    In addition to the Returned Revenues, the Freedom Entities rendered services and incurred expenses on behalf of LMG pursuant to the TSA totaling $620,418 (the "Service Balance").  In satisfaction of the Service Balance, LMG agreed to offset the Service Balance against the Revenues then held by Freedom and/or the Sellers.

14.    As of the Petition Date, the Freedom Entities had yet to return $647,868.46 (the "Withheld Revenues") in Revenues to LMG.

15.    On or about April 1, 2016, LMG filed the following proofs of claim (collectively, the "Proofs of Claim"): (i) proof of claim 3-1 in the VVPC Bankruptcy; (ii) proof of claim 3-1 in the VPC Bankruptcy; (iii) proof of claim 4-1 in the Daily Press Bankruptcy; (iv) proof of claim 499-1 in the Freedom Bankruptcy; (v) proof of claim 3-1 in the FSPV I Bankruptcy; and (vi) proof of claim 3-1 in the FSPV V Bankruptcy.

16.    On or about January 31, 2017, LMG filed a complaint against the Freedom Entities (the "Complaint")—thereby commencing the adversary proceeding styled *LMG National Publishing, Inc. v. Victor Valley Publishing Company, et al.*, adv. no. 8:17-ap-01016-MW (the "Adversary"), in the Bankruptcy Court.  By and through the Adversary, LMG sought the imposition of a resulting trust over certain funds held by the Freedom Entities or a judicial determination that such funds did not constitute property of the bankruptcy estates in the Bankruptcy Cases (collectively, the "Estates").

17.    On or about March 17, 2017, the Freedom Entities filed both an answer to the Complaint and a counter-complaint against LMG.  On or about April 4, 2017, the Freedom Entities filed an amended answer and counter-complaint against LMG (the

"Counter-Complaint"). By and through the Counter-Complaint, the Freedom Entities

sought to disallow the Proofs of Claim or, alternatively, a judicial determination that LMG

was solely entitled to a general unsecured claim on account of the Withheld Revenues.

On or about May 9, 2017, LMG filed an answer to the Counter-Complaint.

18.    On or about April 13, 2017, the Freedom Entities filed a motion for summary

judgment or adjudication on the Counter-Complaint and sought an award of attorneys'

fees and expenses (the "Motion for Summary Judgment"). Therein, the Freedom Entities

argued, among other things, that the indemnity clause of the APA prevented LMG from

recovering any amount, including the Withheld Revenues, from the Freedom Entities.

The Freedom Entities further argued that LMG was not entitled to the imposition of a

resulting trust or a constructive trust or a judicial determination that certain funds held by

the Freedom Entities, or any of them, constituted the sole and separate property of LMG

because LMG had failed to sufficiently trace the Withheld Revenues to funds presently in

the possession of a Freedom Entity.

19.    On or about June 7, 2017, LMG filed an opposition to the Motion for

Summary Judgment. Therein, LMG argued, among other things, that the indemnity

clause of the APA did not govern the claims asserted in the Complaint and, assuming

*arguendo* that the indemnity clause applied, LMG timely satisfied the prerequisites to

assert a claim under the indemnity clause. LMG further argued that governing law did

not require tracing to impose a resulting trust and, even if the Bankruptcy Court found

that it did, further discovery was necessary to afford LMG an opportunity to trace the

Withheld Revenues to funds presently held by the Freedom Entities.

20.    On or about June 28, 2017, the Motion for Summary Judgment came on for

hearing before the Court, the Honorable Mark S. Wallace presiding. After receiving

argument, the Court continued the hearing on the Motion for Summary Judgment in order

to permit the Parties to submit additional briefing on multiple unresolved issues, including,

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-965-1000  Fax 714-966-1002

1  without limitation, the law applicable to the question of tracing and whether tracing is

2  required in order to impose a resulting trust under governing law.

### The Terms of the Settlement Agreement

4      21.    As a result of the extensive negotiations, the Parties have reached the

5  compromise memorialized in the Settlement Agreement, the material terms of which are

6  the following:[6]

7          a.    Cash Payment.  No later than three (3) business days after the

8  Effective Date, the Freedom Entities, or any of them, shall pay LMG the sum of

9  Fifty Thousand Dollars ($50,000.00) in immediately available funds (the "Cash

10  Payment").  The Cash Payment shall be made via wire transfer to an account

11  designated by LMG.

12          b.    Allowed General Unsecured Claim.  On the Effective Date, and

13  without the need to take any further action, LMG (or any designated assignee

14  thereof) shall be deemed to have an allowed general unsecured claim in the

15  Bankruptcy Cases and enforceable against the Debtors' estates and any or all of

16  the Freedom Entities in the amount of $608,519.21 (the "LMG Claim").  The LMG

17  Claim consists of (i) the unpaid portion of the Withheld Revenues after accounting

18  for the Cash Payment ($597,868.46) and (ii) the amount sought by and through the

19  Proofs of Claim ($10,650.75) for the unpaid working capital adjustment, and for all

20  intents and purposes shall relate back and replace the original Proofs of Claim.  In

21  the event the Freedom Entities propose a plan of reorganization or liquidation

22  under chapter 11 of the Bankruptcy Code that attempts to separately classify,

23  provide alternate treatment(s) for, or subordinate any general unsecured claim(s),

24  the LMG Claim shall not be subordinated to any other general unsecured claims or

25

26  _____

27  [6] While the summaries of the principal terms of the Settlement Agreement set forth here and in the Motion
    are intended to be accurate, parties in interest should read the full Settlement Agreement, attached as
    **Exhibit A** hereto, for the complete terms.  If there is any discrepancy between the summaries contained in
28  the Motion and herein, and the Settlement Agreement, the terms of the Settlement Agreement shall control.
    0.0

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

otherwise reduced or diminished, and shall be included in the class of general unsecured claims scheduled to receive the greatest and most immediate distributions under the plan.

      c.      <u>Waiver of Claim Objections</u>.  Except as expressly set forth in the Settlement Agreement, the Freedom Entities shall waive any and all objections to the Proofs of Claim and LMG Claim, whether filed or unfiled, known or unknown.

      d.      <u>Dismissal of Adversary Proceeding</u>.  No later than ten (10) business days after receipt of the Cash Payment, the Parties shall execute and file a joint stipulation to dismiss the Adversary with prejudice; *provided, however*, that the Court shall retain jurisdiction over the Adversary to the extent necessary to enforce the Settlement and, if necessary, compel the payment of any and all amounts due hereunder.

      e.      <u>LMG Release</u>.  Except for the obligations expressly created or provided under the Settlement, the Freedom Entities shall release, remise, acquit, exonerate and forever discharge LMG and each of its successors, predecessors, assigns, employees, officers, directors, agents, professionals, and affiliates ("<u>LMG Release Parties</u>") of and from any and all claims, acts or omissions arising between them, including, without limitation, any claims for attorneys' fees and costs under the APA or otherwise, whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which the Freedom Entities had, have or may have against the LMG Release Parties, or any of them.  In so doing, the Freedom Entities have had the benefit and advice of counsel and hereby knowingly and intentionally waive any right(s) under California Civil Code section 1542, or any analogous or similar law.  Such release shall be effective upon the Effective Date.

      f.      <u>Freedom Release</u>.  Except for the obligations created or provided under the Settlement, and except as otherwise provided therein, including, without limitation, in Paragraph 4.c., LMG shall release, remise, acquit, exonerate and

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

0.0

24

1   forever discharge the Freedom Entities, and each of them, and each of their

2   successors, predecessors, assigns, professionals and affiliates ("Freedom Release

3   Parties") of and from any and all claims, acts or omissions arising between them,

4   including, without limitation, any claims for attorneys' fees and costs under the APA

5   or otherwise, whether now known or unknown, anticipated or unanticipated,

6   suspected or unsuspected, which LMG had, has or may have against the Freedom

7   Release Parties, or any of them.  In so doing, LMG has had the benefit and advice

8   of counsel and hereby knowingly and intentionally waive any right(s) under

9   California Civil Code section 1542, or any analogous or similar law.  Such release

10   shall be effective upon the Effective Date.

11        g.    Reservation of Rights.  Notwithstanding anything to the contrary

12   provided in the Settlement Agreement, LMG shall retain any and all claims, causes

13   of action, and rights to monetary damages from the current and/or former directors

14   and/or officers of the Freedom Entities and/or any of their parents, subsidiaries,

15   partners, joint venturers, and/or affiliates (the "D&Os"), save and except for Brad

16   Smith, the chief restructuring officer for the Freedom Entities.  To the extent the

17   liability of the D&Os, or any of them, is derivative or otherwise dependent on the

18   liability of the Freedom Release Parties, or any of them, the release provided to the

19   Freedom Release Parties shall not affect or limit the liability of the D&Os, or any of

20   them; rather, the release shall be deemed solely to limit the rights of LMG to

21   recover damages on account of such liability from any source other than the D&Os,

22   or any of them, independent of any insurance policies or the nature of the liability

23   as derivative.  The release provided to the Freedom Release Parties shall not

24   preclude LMG from naming any or all of the Freedom Release Parties as

25   defendants in any action seeking damages against the D&Os, or any of them, so

26   long as LMG does not seek to recover any damages or otherwise obtain any relief

27   from any or all of the Freedom Release Parties.  The releases contained in this

28   0.0

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    Paragraph do not and shall not be interpreted as releasing the Freedom Entities

2    from the obligation to make either the Cash Payment or distributions on account of

3    the LMG Claim.

4    h.    Cooperation. The Parties shall execute any additional documentation

5    reasonably necessary to effectuate the intent and purpose of the Settlement. The

6    Parties shall not take any action or counsel or assist any other individual or entity to

7    take any action to interfere with or impede the performance the Settlement or any

8    provision thereof.

9    22.    In determining the fairness, reasonableness, and adequacy of a proposed

10   settlement agreement, on behalf of the Debtors' estates, I reviewed and considered the

11   following factors:  (1) the probability of success in litigation; (2) the difficulties, if any, to be

12   encountered in the matter of collection; (3) the complexity of the litigation involved and the

13   expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

14   of the creditors and the proper deference to their reasonable views in the premises.  After

15   consideration of such factors, I determined that the Settlement Agreement falls well within

16   the range of reasonable litigation outcomes and is the product of good faith, arms-length

17   negotiations among the Parties.

18                    **The Probability of Success / Complexity of the Litigation**

19   23.    While I believe that the Freedom Entities have a reasonable likelihood of

20   success in the litigation with LMG, I recognize that they may not necessarily prevail in

21   connection with some or all of the claims and causes of action at issues in the litigation

22   with LMG.  Specifically, as evidenced by the Court's request for additional briefing with

23   respect to multiple unresolved issues in connection with the Adversary and the pending

24   Motion for Summary Judgment, including the applicability of the tracing requirement to the

25   Parties' disputes, I believe that the issues have a high degree of complexity and a

26   favorable outcome for the Freedom Entities, therefore, is uncertain in light of such

27   unresolved issues.  Should the legal issues raised by the Parties not be disposed of in a

28   0.0                                        26

Lobel Weiland Golden Friedman LLP
660 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  summary fashion, the Parties would be faced with preparing for a contested trial involving

2  these complex and novel issues.  In addition, should the Motion for Summary Judgment

3  not be granted, it is my understanding that the Parties would need to undertake significant

4  discovery related to issues such as tracing, the Freedom Entitles' financial condition, the

5  terms of the Parties' agreements and their import, as well as the Parties' intent.  These

6  issues are made even more complex in light of the cessation of the Debtors' business

7  operations and the resulting impact on a direct access to relevant financial data and

8  personnel with specific knowledge of such issues.  Accordingly, I believe that the

9  resolution of all disputes among the Parties at issue in the Chapter 11 Cases and in the

10  Adversary, in accordance with the terms of the Settlement Agreement, represents a fair

11  and reasonable settlement of their disputes.

12  <center>**Difficulties With Collection**</center>

13      24.    The instant matter does not involve a material consideration of the difficulty

14  of collection with respect to an affirmative recovery by the Estates.[7]  However, the

15  Settlement does result in a significant reduction in LMG's claimed entitlement to

16  ownership of estate funds.  By the Complaint, LMG asserts that approximately $650,000

17  of funds held by the Debtors are not estate property, but – through the imposition of a

18  resulting trust or otherwise – belong to LMG.  If ultimately successful, LMG's claims in

19  this regard would serve to materially reduce the amount of funds available for distribution

20  to the Debtors' creditors.  By the Settlement, the Parties have agreed to a Cash Payment

21  to LMG in the amount of $50,000, with the remainder of the LMG Claim (in the amount of

22  $608,519.21) allowed as a general unsecured claim that will be treated on par with other

23  unsecured claimants in the Chapter 11 Cases.  Accordingly, I believe that the issues that

24

25

26

---

27  [7] The Freedom Entities, like LMG, sought prevailing party attorneys' fees and costs in connection with
the Adversary (which claims are being released pursuant to the Settlement).  The Freedom Entities did not
28  claim any additional affirmative monetary recovery against LMG.

0.0

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-386-1000   Fax 714-386-1002

1    are being resolved by way of the Settlement Agreement will eliminate the potential of a

2    significant impact in the Debtors' cash position, benefitting all creditors of the Estates.

3    <u>**The Expense, Inconvenience, or Delay Occasioned by the Litigation**</u>

4       25.   A further factor that weighs in favor of a settlement of the issues with LMG is

5    the expense, inconvenience and delay that will result should the litigation continue. While

6    the Freedom Entities moved for summary adjudication on many of the issues by way of

7    the Motion for Summary Judgment, summary disposition has been contested by LMG

8    and, as discussed above – especially in light of the Court's request for further briefing on

9    numerous issues – it is uncertain whether some or all of the issues will be disposed of in

10    this truncated fashion. To the extent that some or all of the factual and legal issues

11    remained, I believe that continued litigation would likely be protracted, time-consuming,

12    and costly, necessitating a substantial expenditure of attorney and expert fees on behalf

13    of the Estates. Furthermore, the issues relating to the LMG Claims and the pending

14    Adversary continue to be a hindrance to the ability of the Debtors to move forward to

15    propose a plan in these Chapter 11 Cases as the status of approximately $650,000 in

16    funds, as being estate funds or not, remains unresolved. Pursuant to the Settlement,

17    LMG will receive $50,000 as a Cash Payment and shall have an allowed unsecured claim

18    in the amount of $608,519.21. As discussed above, I believe that this resolution

19    preserves significant funds for the benefit of all creditors of the Estates.

20                             **The Interests of Creditors**

21       26.   The Settlement will resolve all claims and disputes between the Parties

22    related to the Chapter 11 Cases and the Adversary, thereby avoiding the continuation of

23    expensive and lengthy litigation, and the uncertainty of a successful outcome. The terms

24    of the Settlement were reached as a result of extensive negotiations between the Parties.

25    Further, the Settlement will remove one of the remaining obstacles to the ability of the

26    Debtors and the Committee to proceed to formulate and propose a plan in the Chapter 11

27    Cases.

28    0.0

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-846-1000 Fax 714-846-1002

1    27.    Based on the foregoing, I believe that the Settlement memorialized in the

2  Settlement Agreement is in the best interests of the Freedom Entities, their estates,

3  creditors and other parties in interest, and should be approved.

4    28.    Notice of the filing of this Motion has been given to all parties entitled to

5  notice in accordance with the Bankruptcy Court's Order Limiting Scope of Notice entered

6  November 5, 2015 [Dkt. No. 45], and to all parties requesting electronic notice.

7    I declare under penalty of perjury pursuant to the laws of the United States of

8  America that the foregoing is true and correct.

9    Executed on this  29th  day of  November , 2017, at Los Angeles, California.

10

11                                                    Brad Smith

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

# EXHIBIT "A"

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement (the "Settlement") is entered into as of October 31 , 2017, by and between LMG NATIONAL PUBLISHING, INC. ("LMG"), a Delaware corporation, on the one hand, and VICTOR VALLEY PUBLISHING COMPANY ("VVPC"), a California corporation, VICTORVILLE PUBLISHING COMPANY ("VPC"), a California limited partnership, DAILY PRESS, LLC ("Daily Press"), a California limited liability company, FREEDOM COMMUNICATIONS, INC. ("FCI" or "Freedom"), a Delaware corporation, FREEDOM SPV I, LLC ("FSPV I"), a Delaware limited liability company, and FREEDOM SPV V, LLC ("FSPV V"), a Delaware limited liability company, on the other hand. VVPC, VPC, Daily Press, FCI, FSPV I, and FSPV V may be referred to herein collectively as the "Freedom Entities" and each individually as a "Freedom Entity". LMG and the Freedom Entities may be referred to herein collectively as the "Parties" and each individually as a "Party".

### RECITALS

A.      On or about February 28, 2014, VVPC, VPC, and Daily Press (collectively, the "Sellers"), on the one hand, and LMG, on the other hand, entered into the Asset Purchase Agreement dated February 28, 2014 (the "APA"). By and through the APA, Plaintiff acquired, as a going concern, substantially all of the assets, properties and businesses of the Sellers, including, without limitation, all accounts receivables and other revenue streams derived from or related to the assets or operations of the Sellers.

B.      On or about February 28, 2014, Freedom and LMG entered into the Transition Services Agreement dated February 28, 2014 (the "TSA" and, together with the APA, the "Agreements"). Pursuant to the TSA, Freedom agreed to provide certain services to LMG directly and/or through one or more affiliates during the transition of the businesses subject to the APA to LMG. LMG alleges that these services included the collection of accounts receivables and revenues derived from the continued operation of the businesses subject to the APA (the "Revenues").

C.      Between March 3, 2014 and October 17, 2014, the Freedom Entities collected or took possession of $1,553,709.75 in Revenues. On March 14, 2014, Freedom returned $215,423.29 of the Revenues, which constituted Revenues collected as of March 7, 2014. On June 6, 2014 and June 17, 2014 Freedom returned an additional $50,000 and $20,000 of the Revenues, respectively. Commencing on or about February 6, 2015 and continuing through the end of April 2015, Freedom made nine (9) additional transfers of Revenue, each in the amount of $20,000, to LMG (totaling $180,000). These payments were applied to reduce the balance owing on account of a working capital adjustment. The total Revenues returned to LMG of $285,423.29 ("Returned Revenues").

D.      In addition to the Returned Revenues, the Freedom Entities rendered services and incurred expenses on behalf of LMG pursuant to the TSA totaling $620,418 (the "Service Balance"). In satisfaction of the Service Balance, LMG agreed to offset the Service Balance against the Revenues then held by Freedom and/or the Sellers.

1

E.      On or about November 1, 2015, and November 2, 2015 (the "Petition Dates"), the Freedom Entities filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")—thereby commencing the following bankruptcy cases (collectively, the "Bankruptcy Cases") in the United States Bankruptcy Court for the Central District of California (the "Court"): *In re Victor Valley Publishing Company*, case number 8:15-bk-15330-MW (the "VVPC Bankruptcy"); *In re Victorville Publishing Company*, case number 8:15-bk-15332-MW (the "VPC Bankruptcy"); *In re Daily Press, LLC*, case number 8:15-bk-15317-MW (the "Daily Press Bankruptcy"); *In re Freedom Communications, Inc.*, case number 8:15-bk-15311-MW (the "FCI Bankruptcy"); *In re Freedom SPV I, LLC*, case number 8:15-bk-15340-MW (the "FSPV I Bankruptcy"); and *In re Freedom SPV V, LLC*, case number 8:15-bk-15343-MW (the "FSPV V Bankruptcy"). On or about November 2, 2015, the Court entered an order authorizing the joint administration of the Bankruptcy Cases.

F.      As of the Petition Dates, the Freedom Entities had yet to return $647,868.46 (the "Withheld Revenues") in Revenues to LMG.

G.      On or about April 1, 2016, LMG filed the following proofs of claim (collectively, the "Proofs of Claim"): (i) proof of claim 3-1 in the VVPC Bankruptcy; (ii) proof of claim 3-1 in the VPC Bankruptcy; (iii) proof of claim 4-1 in the Daily Press Bankruptcy; (iv) proof of claim 499-1 in the Freedom Bankruptcy; (v) proof of claim 3-1 in the FSPV I Bankruptcy; and (vi) proof of claim 3-1 in the FSPV V Bankruptcy.

H.      On or about January 31, 2017, LMG filed a complaint against the Freedom Entities (the "Complaint")—thereby commencing the adversary proceeding styled *LMG National Publishing, Inc. v. Victor Valley Publishing Company, et al.*, adv. no. 8:17-ap-01016-MW (the "Adversary"), in the Court. By and through the Adversary, LMG sought the imposition of a resulting trust over certain funds held by the Freedom Entities or a judicial determination that such funds did not constitute property of the bankruptcy estates in the Bankruptcy Cases (collectively, the "Estates").

I.      On or about March 17, 2017, the Freedom Entities filed both an answer to the Complaint and a counter-complaint against LMG. On or about April 4, 2017, the Freedom Entities filed an amended answer and counter-complaint against LMG (the "Counter-Complaint"). By and through the Counter-Complaint, the Freedom Entities sought to disallow the Proofs of Claim or, alternatively, a judicial determination that LMG was solely entitled to a general unsecured claim on account of the Withheld Revenues.

J.      On or about April 13, 2017, the Freedom Entities filed a motion for summary judgment or adjudication on the Counter-Complaint and sought an award of attorneys' fees and expenses (the "Motion for Summary Judgment"). Therein, the Freedom Entities argued, among other things, that the indemnity clause of the APA prevented LMG from recovering any amount, including the Withheld Revenues, from the Freedom Entities. The Freedom Entities further argued that LMG was not entitled to the imposition of a resulting trust or a constructive trust or a judicial determination that certain funds held by the Freedom Entities, or any of them, constituted the sole and separate property of LMG because LMG had failed to sufficiently trace the Withheld Revenues to funds presently in the possession of a Freedom Entity.

2

K.      On or about May 9, 2017, LMG filed an answer to the Counter-Complaint.

L.      On or about June 7, 2017, LMG filed an opposition to the Motion for Summary Judgment. Therein, LMG argued, among other things, that the indemnity clause of the APA did not govern the claims asserted in the Complaint and, assuming *arguendo* that the indemnity clause applied, LMG timely satisfied the prerequisites to assert a claim under the indemnity clause. LMG further argued that governing law did not require tracing to impose a resulting trust and, even if the Court found that it did, further discovery was necessary to afford LMG an opportunity to trace the Withheld Revenues to funds presently held by the Freedom Entities.

M.      On or about June 28, 2017, the Motion for Summary Judgment came on for hearing before the Court, the Honorable Mark S. Wallace presiding. After receiving argument, the Court continued the hearing on the Motion for Summary Judgment in order to permit the Parties to submit additional briefing on multiple unresolved issues, including, without limitation, the law applicable to the question of tracing and whether tracing is required in order to impose a resulting trust under governing law.

N.      By and through this Settlement, the Parties wish to resolve any and all disputes by and between the Parties, including, without limitation, the disputes alleged in the Adversary and relating to Withheld Revenues, pursuant to the terms set forth *infra*.

## AGREEMENT

NOW, THEREFORE, in consideration for the promises, mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties hereby agree as follows:

1.      BANKRUPTCY COURT APPROVAL. This Settlement shall not be deemed effective unless and until the Court enters a final order[1] approving the Settlement without material modification pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As soon as practicable following the execution of this Settlement, the Freedom Entities shall file a motion seeking Court approval of the Settlement (the "Compromise Motion"). If the Court denies the Compromise Motion or approves the Settlement subject to material modifications, the Settlement shall be deemed null, void *ab initio*, and unenforceable; *provided, however*, that the Parties may agree to any modification(s) to the Settlement by the Court and, if so agreed, the Settlement shall remain in effect subject to such modifications. The date on which the order granting the Compromise Motion and approving the Settlement becomes a Final Order may be referred to herein as the "Effective Date".

2.      LMG SETTLEMENT PAYMENT. In settlement of the Adversary, LMG shall receive the following:

---

[1] An order shall be deemed a "Final Order" fifteen (15) calendar days after its entry *provided that* (a) no timely appeal has been filed challenging the order or, (b) if a timely appeal has been filed, no order staying the effect of the order has been requested or entered. A notice of appeal shall be deemed timely if filed within the time allotted under Rule 8002 of the Bankruptcy Rules.

a.    **Cash Payment.**  No later than three (3) business days after the Effective Date, the Freedom Entities, or any of them, shall pay LMG the sum of FIFTY THOUSAND DOLLARS ($50,000.00) in immediately available funds (the "Cash Payment").  The Cash Payment shall be made via wire transfer to an account designated by LMG.

b.    **Allowed General Unsecured Claim.**  On the Effective Date, and without the need to take any further action, LMG (or any designated assignee thereof) shall be deemed to have an allowed general unsecured claim in the Bankruptcy Cases and enforceable against the Estates and any or all of the Freedom Entities in the amount of $608,519.21 (the "LMG Claim"). The LMG Claim consists of (i) the unpaid portion of the Withheld Revenues after accounting for the Cash Payment ($597,868.46) and (ii) the amount sought by and through the Proofs of Claim ($10,650.75) for the unpaid working capital adjustment, and for all intents and purposes shall relate back and replace the original Proofs of Claim.  In the event the Freedom Entities propose a plan of reorganization or liquidation under chapter 11 of the Bankruptcy Code that attempts to separately classify, provide alternate treatment(s) for, or subordinate any general unsecured claim(s), the LMG Claim shall not be subordinated to any other general unsecured claims or otherwise reduced or diminished, and shall be included in the class of general unsecured claims scheduled to receive the greatest and most immediate distributions under the plan.

c.    **Waiver of Claim Objections.**  Except as expressly set forth herein, the Freedom Entities hereby waive any and all objections to the Proofs of Claim and LMG Claim, whether filed or unfiled, known or unknown.

3.    <u>DISMISSAL OF ADVERSARY PROCEEDING</u>.  No later than ten (10) business days after receipt of the Cash Payment, the Parties shall execute and file a joint stipulation to dismiss the Adversary with prejudice; *provided, however*, that the Court shall retain jurisdiction over the Adversary to the extent necessary to enforce this Settlement and, if necessary, compel the payment of any and all amounts due hereunder.

4.    <u>RELEASES</u>.

a.    **LMG Release.**  Except for the obligations expressly created or provided under this Settlement, the Freedom Entities shall release, remise, acquit, exonerate and forever discharge LMG and each of its successors, predecessors, assigns, employees, officers, directors, agents, professionals, and affiliates ("LMG Release Parties") of and from any and all claims, acts or omissions arising between them, including, without limitation, any claims for attorneys' fees and costs under the APA or otherwise, whether now known or unknown, anticipated or unanticipated, suspected or unsuspected, which the Freedom Entities had, have or may have against the LMG Release Parties, or any of them.  In so doing, the Freedom Entities have had the benefit and advice of counsel and hereby knowingly and intentionally waive any right(s) under California Civil Code section 1542, or any analogous or similar law, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,

WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release provided under this Paragraph shall be effective upon the **Effective Date.**
The release(s) provided under this Paragraph, including the release under California Civil
Code section 1542, shall be enforceable in any court of law or equity without respect to
the laws generally applicable in such court. The laws of the State of California shall
apply to the application, interpretation, and enforceability of the release provided under
this Paragraph.

      b.    **Freedom Release.** Except for the obligations created or provided under
this Settlement, and except as otherwise provided herein, including, without limitation, in
Paragraph 4.c., LMG shall release, remise, acquit, exonerate and forever discharge the
Freedom Entities, and each of them, and each of their successors, predecessors, assigns,
professionals and affiliates ("Freedom Release Parties") of and from any and all claims,
acts or omissions arising between them, including, without limitation, any claims for
attorneys' fees and costs under the APA or otherwise, whether now known or unknown,
anticipated or unanticipated, suspected or unsuspected, which LMG had, has or may have
against the Freedom Release Parties, or any of them. In so doing, LMG has had the
benefit and advice of counsel and hereby knowingly and intentionally waive any right(s)
under California Civil Code section 1542, or any analogous or similar law, which
provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS
OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,
WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The release provided under this Paragraph shall be effective upon the payment of the
Cash Payment. The release(s) provided under this Paragraph, including the release under
California Civil Code section 1542, shall be enforceable in any court of law or equity
without respect to the laws generally applicable in such court. The laws of the State of
California shall apply to the application, interpretation, and enforceability of the release
provided under this Paragraph.

      c.    **Reservation of Rights.** Notwithstanding anything to the contrary
provided herein, LMG shall retain any and all claims, causes of action, and rights to
monetary damages from the current and/or former directors and/or officers of the
Freedom Entities and/or any of their parents, subsidiaries, partners, joint venturers, and/or
affiliates (the "D&Os"), save and except for Brad Smith, the chief restructuring officer
for the Freedom Entities. To the extent the liability of the D&Os, or any of them, is
derivative or otherwise dependent on the liability of the Freedom Release Parties, or any
of them, the release provided to the Freedom Release Parties shall not affect or limit the
liability of the D&Os, or any of them; rather, the release shall be deemed solely to limit
the rights of LMG to recover damages on account of such liability from any source other
than the D&Os, or any of them, independent of any insurance policies or the nature of the

5

EXHIBIT "A"
Page 35

liability as derivative. The release provided to the Freedom Release Parties shall not preclude LMG from naming any or all of the Freedom Release Parties as defendants in any action seeking damages against the D&Os, or any of them, so long as LMG does not seek to recover any damages or otherwise obtain any relief from any or all of the Freedom Release Parties.

The releases contained in this Paragraph do not and shall not be interpreted as releasing the Freedom Entities from the obligation to make either the Cash Payment or distributions on account of the LMG Claim.

5.    **BREACH AND CURE.** Upon the occurrence of a breach of this Settlement, the non-breaching Party shall notify the Party allegedly in breach of the Settlement of the nature of the breach in writing. Within five (5) business days of receiving notice of an alleged breach, the Party allegedly in breach of the Settlement shall either (a) provide a written response contesting the alleged breach, which shall including, among other things, the grounds for contesting the breach and any and all documents supporting its position, or (b) cure the breach. If the Party contests the breach, the Parties shall meet and confer in an attempt to resolve the dispute within three (3) business days of the date of the response contesting the breach. If the Parties are unable to resolve the dispute regarding a purported breach of the Settlement or a Party fails to contest or cure a breach within the time allotted, the Parties may take any actions necessary to enforce their respective rights and remedies under this Settlement.

6.    **HEADINGS.** The headings of all sections of this Settlement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

7.    **GOVERNING LAW/FORUM SELECTION.** THIS SETTLEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA WITHOUT GIVING EFFECT TO THE CHOICE OF LAWS PRINCIPLES THEREOF. By its execution and delivery of this Settlement, each of the Parties hereto hereby irrevocably and unconditionally agrees that any legal action, suit or proceeding with respect to any matter under or arising out of or in connection with this Settlement shall be brought in the Court. By the execution and delivery of this Settlement, each of the Parties hereto hereby irrevocably accepts and submits itself to the exclusive jurisdiction of the Court, generally and unconditionally, with respect to any such action, suit or proceeding, and consents to the entry of any final order or judgment by the Court. If and only if the Court lacks the requisite jurisdiction or authority to adjudicate any such disputes, the Parties hereto hereby consent to the jurisdiction and venue of the United States District Court for the Central District of California, Southern Division, to resolve any such disputes.

8.    **JOINT AUTHORSHIP.** This Settlement is the product of negotiation and preparation by and among each Party hereto, and each Party acknowledges that they have had the opportunity to consult with independent counsel of their choosing. Accordingly, this Settlement and any ambiguities or uncertainties herein shall be equally and fairly interpreted and construed without reference to the identity of the individual or entity preparing this Settlement on the express understanding and agreement that the Parties participated equally in the negotiation and preparation of the Agreement or have had equal opportunity to do so. Accordingly, the Parties

6

hereby waive the benefit of California Civil Code section 1654 and any successor or amended statute, which provides that in cases of uncertainty, language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist, and any and all similar rule(s) and/or statute(s).

9.    **VOLITIONAL EXECUTION.**    Each Party hereto enters into this Settlement knowingly and voluntarily, in the total absence of any fraud, mistake, duress, coercion, or undue influence and after careful thought and reflection upon and consultation with independent counsel regarding this Settlement and the matters referred to herein; and, accordingly, by signing this Settlement, each Party signifies full understanding, agreement, and acceptance.

10.    **SEVERABILITY.**  With the exceptions of Paragraphs 1 through 5, in the event that any provision of this Settlement should be held to be void, voidable, or unenforceable, the remaining portions hereof shall remain in full force and effect.

11.    **AMENDMENT.** This Settlement may be amended, altered, modified, or otherwise changed in any respect or particular only by a writing duly executed by the Parties or their authorized representatives, and with Court approval, as necessary and appropriate.

12.    **AUTHORITY.**  Subject only to Court approval, the Parties represent and warrant to the others that each has the requisite power and authority to enter into this Settlement and perform its respective obligations hereunder.  Each signatory represents and warrants to the Parties that he or she has the authority to execute this Settlement on behalf of the Party they purportedly represent and thereby bind such individual or entity to this Settlement.

13.    **COOPERATION.**    The Parties shall execute any additional documentation reasonably necessary to effectuate the intent and purpose of this Settlement.  The Parties shall not take any action or counsel or assist any other individual or entity to take any action to interfere with or impede the performance this Settlement or any provision hereof.

14.    **COUNTERPARTS/ELECTRONIC SIGNATURE.**  This Settlement may be executed and delivered (by facsimile or otherwise) in any number of counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Digital copies, facsimile copies, and Xerox copies of any signature by a Party or their representative shall have the same force and effect as an original signature.

15.    **SETTLEMENT DISCUSSIONS.**  This Settlement is part of a proposed settlement of the disputes between the Parties.  Pursuant to Rule 408 of the Federal Rules of Evidence and any applicable state rule of evidence, this Settlement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to seek approval of the Settlement or to enforce the terms of the same.

16.    **NO THIRD PARTY BENEFICIARIES.**  This Settlement is not intended to benefit any individual or entity that is not a Party hereto.

17.    **INTEGRATION.**  This Settlement constitutes the complete agreement between the Parties with respect to the subject matter hereof and, except as expressly provided herein,

7

supersedes all prior agreements, oral or written, between or among the Parties to the extent such prior agreements pertain or relate to the subject matter of this Settlement.

18.   **NOTICES.**  Except as otherwise provided herein, all notices hereunder shall be deemed given upon dispatch if in writing and delivered via email and U.S. Mail, postage prepaid, to the following addresses:

|  |  |
|---|---|
| **To LMG:** | Mark Maring<br>LMG National Publishing, Inc.<br>175 Sully's Trail, Third Floor<br>Pittsford, NY 14534<br>Email: mmaring@gatehousemedia.com |
|  | **With copy to:** |
|  | Ashley M. McDow, Esq.<br>Michael T. Delaney, Esq.<br>Baker & Hostetler LLP<br>11601 Wilshire Blvd., Ste. 1400<br>Los Angeles, CA 90025<br>Email: amcdow@bakerlaw.com<br>mdelaney@bakerlaw.com |
| **To the Freedom Entities:** | Brad Smith<br>GlassRatner Advisory & Capital Group, LLC<br>555 W. Fifth Street, Suite 3725<br>Los Angeles, CA 90013 |
|  | **With copy to:** |
|  | Alan J. Friedman, Esq.<br>Beth Gaschen, Esq.<br>Lobel Weiland Golden Friedman LLP<br>650 Town Center Dr., Ste. 950<br>Costa Mesa, CA 92626<br>Email: afriedman@lwgfllp.com<br>bgaschen@lwgfllp.com |

A Party may change the designated recipient or address(es) for the provision of notice(s) under this Settlement by transmitting a notice of address or recipient change by the means specified in this Paragraph.  Any address or recipient change shall be deemed effective upon receipt.  Any notices transmitted prior to receipt of a notice of address or recipient change shall be deemed valid and effective upon dispatch.

[SIGNATURE PAGE TO FOLLOW]

8

Dated:    October 3/ , 2017

By:    _____

Mark Maring, Vice President of LMG
NATIONAL PUBLISHING, INC.

Dated:    October ___ , 2017

By:    _____

Brad Smith, Chief Restructuring Officer for
VICTOR VALLEY PUBLISHING
COMPANY, VICTORVILLE PUBLISHING
COMPANY, DAILY PRESS, LLC,
FREEDOM COMMUNICATIONS, INC.,
FREEDOM SPV I, LLC, and FREEDOM SPV
V, LLC

## APPROVED AS TO FORM AND CONTENT:

Dated:    November 9 , 2017
          October

BAKER & HOSTETLER LLP

By:    _____

Ashley M. McDow
Michael T. Delaney

Attorneys for LMG NATIONAL PUBLISHING, INC.

Dated:    October ___ , 2017

LOBEL WEILAND GOLDEN FRIEDMAN LLP

By:    _____

Alan J. Friedman
Beth Gaschen

Attorneys for VICTOR VALLEY PUBLISHING
COMPANY, VICTORVILLE PUBLISHING
COMPANY, DAILY PRESS, LLC, FREEDOM
COMMUNICATIONS, INC., FREEDOM SPV I, LLC,
and FREEDOM SPV V, LLC

9

Dated:    October ___ , 2017

By: _____
Mark Maring, Vice President of LMG
NATIONAL PUBLISHING, INC.

Dated:    October 23, 2017

By: _____
Brad Smith, Chief Restructuring Officer for
VICTOR VALLEY PUBLISHING
COMPANY, VICTORVILLE PUBLISHING
COMPANY, DAILY PRESS, LLC,
FREEDOM COMMUNICATIONS, INC.,
FREEDOM SPV I, LLC, and FREEDOM SPV
V, LLC

**APPROVED AS TO FORM AND CONTENT:**

Dated:    October ___ , 2017

**BAKER & HOSTETLER LLP**

By: _____
Ashley M. McDow
Michael T. Delaney

Attorneys for LMG NATIONAL PUBLISHING, INC.

Dated:    October ___ , 2017
Nov. 28

**LOBEL WEILAND GOLDEN FRIEDMAN LLP**

By: _____
Alan J. Friedman
Beth Gaschen

Attorneys for VICTOR VALLEY PUBLISHING
COMPANY, VICTORVILLE PUBLISHING
COMPANY, DAILY PRESS, LLC, FREEDOM
COMMUNICATIONS, INC., FREEDOM SPV I, LLC,
and FREEDOM SPV V, LLC

9

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **650 Town Center Drive, Suite 950, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SETTLEMENT BY AND BETWEEN CERTAIN OF THE DEBTORS AND LMG NATIONAL PUBLISHING, INC.; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF BRAD SMITH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.       TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 8, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 8, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

(Via Attorney Service)
The Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, 6th Floor Courtesy Bin
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 12/8/2017 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| Date | Printed Name | Signature |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Richard L Barnett**   rick@barnettrubin.com, kelly@barnettrubin.com
- **James Cornell Behrens**   jbehrens@milbank.com
- **Shraddha Bharatia**   notices@becket-lee.com
- **Matthew Bouslog**   MBouslog@gibsondunn.com,
  Pcrawford@gibsondunn.com
- **J Scott Bovitz**   bovitz@bovitz-spitzer.com
- **Larry Butler**   secured@becket-lee.com
- **Frank Cadigan**   frank.cadigan@usdoj.gov
- **Andrew W Caine**   acaine@pszjlaw.com
- **David Cantrell**   dcantrell@lc-law-llp.com
- **Jeffrey D Cawdrey**   jcawdrey@grsm.com,
  jmydlandevans@grsm.com;madeyemo@gordonrees.com
- **Conrad K Chiu**   cchiu@pryorcashman.com
- **Carol Chow**   carol.chow@ffslaw.com
- **Shawn M Christianson**   cmcintire@buchalter.com,
  schristianson@buchalter.com
- **Theodore A Cohen**   tcohen@sheppardmullin.com,
  amontoya@sheppardmullin.com
- **Joseph Corrigan**   Bankruptcy2@ironmountain.com
- **Michael T Delaney**   mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
- **Jessica DiFrancesco**   notices@becket-lee.com
- **Caroline Djang**   cdjang@rutan.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Robert J Feinstein**   rfeinstein@pszjlaw.com
- **Scott D Fink**   brodellecf@weltman.com
- **Alan J Friedman**   afriedman@lwgfllp.com,
  nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@lwgfllp.com;lgauthi
  er@lwgfllp.com
- **Matthew T Furton**   mfurton@lockelord.com,
  cpaul@lockelord.com;chicagodocket@lockelord.com
- **Thomas M Gaa**   tgaa@bbslaw.com
- **Beth Gaschen**   bgaschen@wgllp.com,
  kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwg
  fllp.com
- **Nancy S Goldenberg**   nancy.goldenberg@usdoj.gov
- **Christopher J Green**   cgreen@bohmwildish.com,
  chrisgreen@ucla.edu;christopher-green-
  2815@ecf.pacerpro.com;KWinterson@mintz.com

- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Eric M Heller**    eric.m.heller@irscounsel.treas.gov
- **Lillian Jordan**    ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM
- **Payam Khodadadi**    pkhodadadi@mcguirewoods.com, dkiker@mcguirewoods.com
- **Samuel M Kidder**    skidder@bhfs.com
- **Jeannie Kim**    jkim@buchalter.com
- **Alan M Kindred**    akindred@leechtishman.com, alankindred@hotmail.com;dtomko@leechtishman.com
- **Armand R. Kizirian**    armand.falveylaw@gmail.com, thomaswfalvey@gmail.com;mike.falveylaw@gmail.com;alvarez.falveylaw@gmail.com;celeste.a.wood@gmail.com;kathy.falveylaw@gmail.com
- **Alan J Kornfeld**    akornfeld@pszjlaw.com, mdj@pszjlaw.com
- **Jeffrey C Krause**    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
- **Yochun Katie Lee**    kylee@akingump.com, tsouthwell@akingump.com;westdocketing@akingump.com
- **Elan S Levey**    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- **William N Lobel**    wlobel@lwgfllp.com, nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Aaron J Malo**    amalo@sheppardmullin.com, jsummers@sheppardmullin.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
- **Ashley M McDow**    amcdow@bakerlaw.com, mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Reed M Mercado**    rmercado@sheppardmullin.com
- **Harlene Miller**    harlene@harlenemillerlaw.com
- **Raymond F Moats**    colcaecf@weltman.com
- **Elizabeth L Musser**    emusser@tresslerllp.com
- **Jeffrey P Nolan**    jnolan@pszjlaw.com
- **Courtney E Norton**    cnorton@greenbergglusker.com, kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- **John M O'Donnell**    john.o'donnell@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov
- **Deborah OConnor**    deborah.oconnor@sedgwicklaw.com, viann.corbin@sedgwicklaw.com
- **Ryan D ODea**    rodea@shbllp.com, sswartzell@shbllp.com

- **Ernie Zachary Park**    ernie.park@bewleylaw.com
- **Ronak N Patel**    rpatel@rivco.org, mdominguez@RIVCO.org
- **Marc S Pfeuffer**    pfeuffer.marc@pbgc.gov, efile@pbgc.gov
- **Kathy Bazoian Phelps**    kphelps@diamondmccarthy.com,
  vgarcia@diamondmccarthy.com
- **Christopher E Prince**    ,
  jmack@lesnickprince.com;mlampton@lesnickprince.com;cprince@ecf.courtdrive.com
- **Amelia Puertas-Samara**    itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov
- **Christopher B Queally**    cqueally@callahan-law.com, jluirette@callahan-law.com
- **Michael B Reynolds**    mreynolds@swlaw.com, kcollins@swlaw.com
- **Todd C. Ringstad**    becky@ringstadlaw.com
- **Christopher O Rivas**    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Jeremy E Rosenthal**    jrosenthal@sidley.com
- **Peter J Rudinskas**    pjr.legal@gmail.com
- **James M Sabovich**    jsabovich@callahan-law.com, jluirette@callahan-law.com;ksalour@callahan-law.com;bmccormack@callahan-law.com;erichards@callahan-law.com;SRobinson@callahan-law.com
- **Steven B Sacks**    ssacks@sheppardmullin.com,
  jnakaso@sheppardmullin.com
- **Scott A Schiff**    sas@soukup-schiff.com
- **Leonard M Shulman**    lshulman@shbllp.com
- **Donald W Sieveke**    ibmoola@yahoo.com, dws4law@pacbell.net
- **David P. Simonds**    dsimonds@akingump.com,
  tsouthwell@akingump.com;westdocketing@akingump.com
- **Alex E Spjute**    spjute@hugheshubbard.com, ryan@hugheshubbard.com
- **Sarah Stuppi**    Sarah@stuppilaw.com
- **Helena Tseregounis**    htseregounis@sidley.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Daniel Uribe**    duribe@gmail.com
- **Scott S Weltman**    colcaecf@weltman.com
- **Johnny White**    JWhite@wrslawyers.com, aparisi@wrslawyers.com
- **Brandon J Witkow**    bw@witkowlaw.com, tg@witkowlaw.com
- **Steven D Zansberg**    szansberg@lskslaw.com, mkelley@lskslaw.com