Robert J. Feinstein (Pro Hac Vice)
Alan J. Kornfeld (CA Bar No. 130063)
Jeffrey W. Dulberg (CA Bar No. 181200)
Elissa A. Wagner (CA Bar No. 213589)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone:  310/277-6910
Facsimile:  310/201-0760
Email:    rfeinstein@pszjlaw.com
            akornfeld@pszjlaw.com
            jdulberg@pszjlaw.com
            ewagner@pszjlaw.com

Counsel for the Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>FREEDOM COMMUNICATIONS, INC., a Delaware corporation, et al.,[1]<br><br>Debtors and<br>Debtors-in-Possession. | Case No.: 8:15-bk-15311-MW<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036). The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

Affects:

☒  All Debtors

☐  Freedom Communications, Inc., a Delaware corporation, ONLY

☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY

☐  Freedom Services, Inc., a Delaware corporation, ONLY

☐  2100 Freedom, Inc., a Delaware corporation, ONLY

☐  OCR Community Publications, Inc., a California corporation, ONLY

☐  Daily Press, LLC, a California limited liability company, ONLY

☐  Freedom California Mary Publishing, Inc., a California corporation, ONLY

☐  Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

☐  Freedom Colorado Information, Inc., a Delaware corporation, ONLY

☐  Freedom Interactive Newspapers, Inc., a California corporation, ONLY

☐  Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

☐  Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

☐  Freedom Newspapers, a Texas general partnership, ONLY

☐  Freedom Newspapers, Inc., a Delaware corporation, ONLY

☐  Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

☐  OCR Information Marketing, Inc., a California corporation, ONLY

☐  Odessa American, a Texas general partnership, ONLY

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR ORDER APPROVING SETTLEMENT BETWEEN THE COMMITTEE, THE PENSION BENEFIT GUARANTY CORPORATION, AND THE DEBTORS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Hearing Date and Time:**

Date:        December 16, 2019
Time:        2:00 p.m.

Place:       Courtroom 6C
             411 West Fourth Street
             Santa Ana, CA 92701

Judge:       Honorable Mark S. Wallace

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:326021.2 29266/002

☐  Orange County Register Communications, Inc., a California corporation, ONLY

☐  Victor Valley Publishing Company, a California corporation, ONLY

☐  Victorville Publishing Company, a California limited partnership, ONLY

☐  Freedom SPV II, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV I, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV V, LLC, a Delaware limited liability company, ONLY

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-iii-

# TABLE OF CONTENTS

I.      Introduction .......................................................................................................... 1

II.     Salient Terms of the Settlement Agreement ...................................................... 3

III.    Jurisdiction and Venue ...................................................................................... 5

IV.     Relevant Factual Background and Procedural History ...................................... 5

    A.    The Chapter 11 Cases ............................................................................. 5

    B.    The Adversary Proceeding ...................................................................... 6

    C.    The District Court Action ....................................................................... 7

    D.    Mediations and Other Settlement Efforts .............................................. 8

V.      Argument ............................................................................................................ 9

    A.    Paramount Interests of Creditors .......................................................... 10

    B.    Complexity of Litigation, Likelihood of Success and Difficulties in Collection .......... 12

VI.     Notice of the Motion ........................................................................................ 13

VII.    Conclusion ........................................................................................................ 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-iv-

1

## TABLE OF AUTHORITIES

**Cases**

*In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986)................................................................ 9, 10

*In re Blair*, 538 F.2d 849 (9th Cir. 1976)........................................................................................ 10

*In re Carla Leather, Inc.*, 44 B.R. 457 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764
   (S.D.N.Y. 1985) ............................................................................................................................. 10

*In re Pac. Gas & Elec. Co.*, 304 B.R. 395 (Bankr. N.D. Cal. 2004) ........................................... 10

*In re Stein*, 236 B.R. 34 (D. Or. 1999).............................................................................................. 9

*In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir. 1983 ......................................................................... 10

*In re Woodson*, 839 F. 2d 610 (9th Cir. 1988)................................................................................ 10

*John S. Marandas, P.C. v. Bishop (In re Sassalos)*, 160 B.R. 646 (D. Or. 1993) ......................... 9

**Statutes**

11 U.S.C. § 105(a) ......................................................................................................................... 1, 5

28 U.S.C. § 1334 ................................................................................................................................. 5

28 U.S.C. § 1408 ................................................................................................................................. 5

28 U.S.C. § 1409 ................................................................................................................................. 5

28 U.S.C. § 157 ................................................................................................................................... 5

**Rules**

Fed. R. Bankr. P. 9019......................................................................................................... passim

*PACHULSKI STANG ZIEHL & JONES LLP*
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:326021.2 29266/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Official Committee of Unsecured Creditors ("OCUC") appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby moves (the "Motion") the Court for entry of an order, pursuant to section 105(a) of title 11 of the United States Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, approving a settlement agreement ("Settlement Agreement") entered into between the OCUC, the Pension Benefit Guaranty Corporation ("PBGC"), and the Debtors (collectively, the "Parties").  The Parties entered into the Settlement Agreement in connection with the claims asserted by the OCUC, on behalf of the Debtors, in *Official Committee of Unsecured Creditors of Freedom Communications, Inc., et al. v. Kushner, et al.*, Adv. No. 8:17-ap-01012-MW (Bankr. C.D. Cal.) (the "Adversary Proceeding"), the action commenced by the PBGC in the United States District Court for the Central District of California ("District Court") under the caption *Pension Benefit Guaranty Corporation v. Spitz, et al.*, Case No. 8:19-cv-00299-DOC-DFM (C.D. Cal.) (the "District Court Action"), and the claims filed by the PBGC in the Debtors' chapter 11 cases (the "PBGC Claims").  A copy of the Settlement Agreement is attached hereto as **Exhibit A**.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

The Settlement Agreement is a "best of both worlds" solution for the Debtors, their chapter 11 estates (collectively, the "Bankruptcy Estate") and all of the Debtors' creditors, including the PBGC and the Debtors' other unsecured creditors.  The Settlement Agreement, which will be funded with the $8,235,000 of proceeds received or to be received in connection with the settlement agreements executed to date in the Adversary Proceeding and District Court Action, provides for a total payment of $5,490,000 to the Bankruptcy Estate, allows the Bankruptcy Estate to avoid incurring further litigation expense in the prosecution of the Adversary Proceeding, and provides that the PBGC – the largest unsecured creditor of the Debtors, with over $174,000,000 of unpaid claims filed in the Debtors' chapter 11 cases (collectively, the "Bankruptcy Case") – waives any right to

---

[1]  In the event of any discrepancies between any summary of the Settlement Agreement set forth herein and the Settlement Agreement itself, the Settlement Agreement shall control.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

share in distributions from the Bankruptcy Estate unless and until (i) administrative and priority claims have been paid in full, and (ii) the Debtors' other general unsecured creditors receive a $1,000,000 distribution. At the same time, the Settlement Agreement also provides for a $2,745,000 payment to the PBGC, the assignment of the Bankruptcy Estate's claims against the only remaining non-settling defendants in the Adversary Proceeding – Richard J. Covelli and his related entities (collectively, "Covelli") – to the PBGC, a release in favor of the PBGC of all claims to any funds recovered by the PBGC from Covelli, and a release in favor of the PBGC of all claims to the $120,000 to be paid by Traci M. Christian and her entity (collectively, "Christian") pursuant to a separate settlement agreement that is in the process of being finalized.

Of the $5,490,000 to be paid to the Bankruptcy Estate pursuant to the Settlement Agreement, $2,745,000 is designated as compensation to the Bankruptcy Estate for the litigation expense incurred by the OCUC's counsel in connection with its investigation and prosecution of the Adversary Proceeding. The Settlement Agreement also requires that the OCUC's counsel provide the PBGC with, among other things, over three years of work product prepared by the OCUC's litigation counsel.  That work product includes material prepared by the OCUC's litigation counsel in the extensive investigation it conducted prior to commencing the Adversary Proceeding in January 2017, its review and analysis related to the over 2,600,000 pages of documents produced in the Adversary Proceeding, its preparation for the more than thirty depositions scheduled in the Adversary Proceeding, and its research and analysis related to the three unsuccessful dispositive motions filed by defendants in the Adversary Proceeding, which included two motions to dismiss filed by various defendants in 2017 and a motion for summary judgment filed by Covelli in 2019.

Thus, the Settlement Agreement is a fair and reasonable resolution that is in the best interests of the Bankruptcy Estate and all of the Debtors' constituencies. The Settlement Agreement will provide the Debtors with a path towards the resolution of the Bankruptcy Case (filed in 2015), increase the likelihood that the Debtors' other (*i.e.*, non-PBGC) unsecured creditors will receive distributions from the Bankruptcy Estate, compensate the Bankruptcy Estate for the litigation expense incurred by the OCUC's litigation counsel in connection with the Adversary Proceeding, and allow the Bankruptcy Estate to avoid incurring further litigation expense in the prosecution of

-2-

the Adversary Proceeding. The Settlement Agreement also is fair and reasonable vis-à-vis the PBGC: it provides for a substantial payment to the PBGC, and will enable the PBGC – which has resources not available to the Bankruptcy Estate – to efficiently and effectively prosecute the Bankruptcy Estate's claims against Covelli together with the PBGC's separate claims against Covelli, and thereby continue to seek redress for the harm suffered by the Debtors and their pension plan, the Retirement Plan of Freedom Communications, Inc. (the "Pension Plan"), as a result of Covelli's misconduct.

For the reasons set forth herein, the Settlement Agreement is reasonable, fair and in the best interests of the Bankruptcy Estate and the Debtors' creditors.  Accordingly, the OCUC respectfully requests that the Court grant the Motion and enter an order (i) approving the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and (ii) authorizing the OCUC to take any and all actions reasonably necessary to effectuate the Settlement Agreement without further order of the Court.

## II.    Salient Terms of the Settlement Agreement

The salient terms of the Settlement Agreement are as follows:

Of the $8,235,000 of settlement proceeds received or to be received on account of the claims asserted in the Adversary Proceeding and the District Court Action – of which $400,000 was received in August 2018 pursuant to a settlement with Larry P. Chinn and Financial Institution Consulting Corporation, and $7,835,000 is to be received pursuant to a settlement with Aaron B. Kushner and Eric J. Spitz – one-third ($2,745,000) will be paid to the PBGC (the "PBGC Settlement Amount"), one-third ($2,745,000) will be paid to the Bankruptcy Estate as consideration for the legal services provided by the OCUC's counsel in connection with the Adversary Proceeding, and one-third ($2,745,000) will be paid to the Bankruptcy Estate.  Exhibit A at ¶¶ 2(a)-(c). Thus, the Settlement Agreement will result in a total payment of $5,490,000 to the Bankruptcy Estate.

The OCUC will assign the claims asserted in the Adversary Proceeding against Covelli and his related entities (the "Covelli Claims") to the PBGC. Exhibit A at ¶ 3(a). The PBGC will have exclusive authority to prosecute and/or settle the Covelli Claims, and any funds recovered by the PBGC on account of the Covelli Claims (the "Covelli Recoveries") will belong exclusively to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PBGC.  *Id.*  As a result of this assignment, the Bankruptcy Estate will avoid incurring further litigation expense in connection with the Adversary Proceeding – the OCUC has entered into or is finalizing settlement agreements with all other defendants in the Adversary Proceeding – and the PBGC, which has the resources available to pursue the litigation against Covelli to a final judgment (if necessary), will be able to continue to seek redress for the harm suffered by the Debtors and their Pension Plan as a result of Covelli's misconduct.

All funds received pursuant to the pending settlement between the OCUC, PBGC and Christian will belong exclusively to the PBGC.  Exhibit A at ¶¶ 4(a)-(b).  The OCUC and PBGC have entered into a term sheet with Christian, which is attached hereto as **Exhibit B**.  As reflected therein, Christian has agreed to pay $120,000 (the "Christian/Etaros Recoveries") to the PBGC to resolve the claims asserted against Christian in the Adversary Proceeding and the District Court Action.  Exhibit B at ¶ 1.  Once the OCUC and the PBGC have finalized and executed a formal settlement agreement with Christian, the OCUC will file a separate motion seeking the Court's approval of that settlement.

In addition to the consideration the PBGC will receive pursuant to the Settlement Agreement, the PBGC received a payment of $16,159,231 from the Debtors in March 2016.  The PBGC has agreed to waive any right to receive further distributions from the Debtors unless and until (i) all administrative and priority claims are paid in full, and (ii) a distribution of $1,000,000 is made to the Debtors' other general unsecured creditors.  Exhibit A at ¶ 5(a).  In the event that both of those conditions are satisfied, the PBGC will then be entitled to share ratably in any additional distributions (i.e., distributions over and above the $1,000,000 distribution referenced above) made to general unsecured creditors.  Exhibit A at ¶ 5(b).  Because the PBGC is the largest unsecured creditor of the Debtors, with in excess of $174,000,000 of unpaid claims filed in the chapter 11 cases, this provision of the Settlement Agreement will increase the likelihood that the Debtors' other unsecured creditors will receive distributions from the Bankruptcy Estate.

Finally, to effectuate the terms of the Settlement Agreement and enable the PBGC to prosecute the Covelli Claims effectively and efficiently, (i) the OCUC has filed a motion in the District Court Action, which has been noticed for a hearing in the District Court on January 6, 2020, seeking to withdraw the reference of the Adversary Proceeding and consolidate the Adversary Proceeding with

DOCS_LA:326021.2 29266/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the District Court Action, and (ii) the OCUC will transfer to the PBGC all litigation materials related to the Adversary Proceeding, including trial preparation materials and other work product prepared by the OCUC's counsel in connection with the Adversary Proceeding.  Exhibit A at ¶¶ 3(b), 7.

### III.    Jurisdiction and Venue

The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The OCUC seeks the relief requested herein pursuant to section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, and consents to entry of a final order by the Court on the Motion.

### IV.    Relevant Factual Background and Procedural History

#### A.    The Chapter 11 Cases

On November 1, 2015 and November 2, 2015, the Debtors filed petitions for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Court authorized the joint administration of the Debtors' chapter 11 cases on November 2, 2015.

On November 10, 2015, the Office of the United States Trustee appointed the OCUC pursuant to section 1102 of the Bankruptcy Code.  The PBGC is a member of the OCUC, and Jack Butler, a Supervisory Financial Analyst at PBGC, is the Chair of the OCUC.

The PBGC is the largest unsecured creditor of the Debtors.  On March 30, 2016, the PBGC filed three claims against the Debtors: (i) Claim No. 503-1 is a claim for $154,566,070 based on the Debtors' statutory liability under 29 U.S.C. §§ 1362 and 1368 for the unfunded benefit liabilities of the Pension Plan; (ii) Claim No. 504-1 is a claim for $20,080,588.45 based on the Debtors' statutory liability under 29 U.S.C. § 1307 for termination and other premiums owed on account of the Pension Plan; and (iii) Claim No. 505-1 was a claim for $16,159,231 based on the Debtors' statutory liability under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082, 1342 and 1362(c) for unpaid minimum funding contributions to the Pension Plan. Claim No. 505-1 was paid in full, in the amount of $16,159,231.00, on March 31, 2016 from the proceeds of the sale of the Debtors' assets. The PBGC's other two claims, in the total amount of $174,646,658.45, remain unpaid.  Aside from the PBGC's claims, approximately $40,000,000 of general unsecured claims are held by other creditors.

**B.    The Adversary Proceeding**

In August 2016, the Debtors and OCUC entered into a stipulation [Bankr. Docket No. 858] ("Standing Stipulation") whereby the Debtors granted the OCUC "exclusive leave, standing, and authority to commence, prosecute, and settle any Insider Estate Causes of Action with full rights and privileges and in the stead of the Debtors, with any and all recoveries to be for the benefit of" the Debtors' chapter 11 estates.  The Court approved the Standing Stipulation on September 6, 2016.

Pursuant to the Standing Stipulation, the OCUC commenced the Adversary Proceeding on January 26, 2017 against the following defendants: (i) Aaron B. Kushner ("Kushner") and Eric J. Spitz ("Spitz"); (ii) Larry P. Chinn ("Chinn") and Financial Institution Consulting Corporation ("FICC"); (iii) Covelli and three of his related entities; and (iv) Christian and her related entity.  In the Adversary Proceeding, the OCUC asserted, among other things, a breach of fiduciary duty claim against Kushner and Spitz, and an aiding and abetting breach of fiduciary duty claim against the remaining defendants.  The OCUC's claims seek to recover damages suffered by the Debtors as a result of two disastrous life insurance investments made by the Pension Plan.

In March 2017, all of the defendants filed (or joined in) motions to dismiss the OCUC's complaint. Kushner and Spitz sought, among other things, dismissal of the OCUC's breach of fiduciary duty claim on the grounds of ERISA preemption, and on the grounds that the OCUC had not adequately alleged the breach of a fiduciary duty owed to the Debtors.  *See* Adv. Docket No. 15. The Court denied Kushner and Spitz's motion to dismiss [Adv. Docket No. 36] on May 5, 2017.

In the other motions to dismiss, the remaining defendants incorporated many of the same arguments made by Kushner and Spitz, and also sought dismissal of the OCUC's aiding and abetting breach of fiduciary duty claim on the grounds that the OCUC had not adequately alleged the elements of its claim.  *See* Adv. Docket No. 9.  The Court denied the remaining defendants' motions to dismiss [Adv. Docket No. 55] on June 5, 2017.

Following a mediation in December 2017 (discussed in further detail below), the parties commenced fact discovery in the Adversary Proceeding. The parties served document requests and interrogatories on each other, and served approximately thirty document subpoenas on numerous third parties, including the PBGC, Aon Hewitt Investment Consulting, Inc. and J.P. Morgan

-6-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Investment Management Inc. At least approximately 2,600,000 pages of documents have been produced to date by the parties and third parties.  Furthermore, as set forth in the scheduling motion [Adv. Docket No. 111] filed by the OCUC on January 10, 2019, the parties collectively identified more than thirty depositions to be taken in the Adversary Proceeding. To date, the parties have completed twelve of those individual and entity depositions. At least approximately twenty fact depositions remain on the parties' schedule, to be held in a variety of locations including Los Angeles, Orange County, Dallas, North Carolina, Connecticut, New York and Washington, D.C.

Upon the conclusion of fact discovery, a significant amount of expert discovery likely will be necessary to resolve the claims asserted in the Adversary Proceeding.  In light of, among other things, the various valuation issues raised in connection with the Adversary Proceeding, the parties each may need to retain multiple experts, all of whom will need to prepare initial and/or rebuttal expert reports, and be deposed.

On July 29, 2019, Covelli filed a motion for summary judgment in the Adversary Proceeding [Adv. Docket No. 133].  After a hearing on September 18, 2019, the Court denied the summary judgment motion without prejudice pursuant to Fed. R. Civ. P. 56(d) [Adv. Docket No. 164].  The Court also prohibited Covelli from re-filing the summary judgment motion until after the close of all discovery (including expert discovery) in the Adversary Proceeding.  Pursuant to a scheduling order entered on October 11, 2019 [Adv. Docket No. 169], all discovery in the Adversary Proceeding is presently stayed, with discovery to recommence on January 6, 2020.

### C.    The District Court Action

Effective as of March 31, 2016, the Pension Plan was terminated by agreement and the PBGC became the statutory trustee of the Pension Plan. The PBGC commenced the District Court Action in the District Court on February 14, 2019 against Kushner, Spitz, Covelli and his related entities, and Christian and her related entity.

In the District Court Action, the PBGC has asserted various ERISA claims against the defendants based on, among other things, the two failed life insurance investments at issue in the Adversary Proceeding.  Covelli filed a motion to dismiss the PBGC's complaint, which has not yet been decided by the District Court.

-7-

1    As discussed above, to effectuate the terms of the Settlement Agreement, the OCUC has filed

2 a motion in the District Court seeking withdrawal of the reference of the Adversary Proceeding and

3 consolidation of the Adversary Proceeding with the District Court Action. The OCUC filed its

4 motion on January 18, 2019, and noticed the motion for a hearing on January 6, 2020.

5    **D.    Mediations and Other Settlement Efforts**

6    On December 14, 2017, the parties to the Adversary Proceeding and the PBGC participated

7 in a mediation in an attempt to resolve the various claims against the defendants. On the day before

8 the mediation, Chinn commenced a chapter 7 proceeding in the United States Bankruptcy Court for

9 the Western District of Tennessee. The mediation resulted in a settlement agreement between the

10 OCUC, PBGC, Chinn, FICC, and Chinn's professional liability insurer, pursuant to which Chinn's

11 insurer deposited $400,000 in the trust account of the OCUC's counsel. The settlement agreement

12 with Chinn and FICC provides that the $400,000 settlement payment will be allocated between the

13 OCUC, on behalf of the Debtors, and the PBGC pursuant to an allocation agreement to be presented

14 to the Court for approval. *See, e.g.*, Bankr. Docket No. 1511 at pgs. 8-9. The Court approved the

15 settlement with Chinn and FICC [Bankr. Docket No. 1517] on August 1, 2018, and Chinn and FICC

16 were dismissed from the Adversary Proceeding.

17    On May 14, 2019, the OCUC, PBGC, Kushner and Spitz participated in a second mediation.

18 That mediation resulted in a settlement with Kushner and Spitz, pursuant to which the settling

19 defendants' professional liability insurers agreed to make a $7,835,000 settlement payment, to be

20 funded with the projected amount of coverage remaining under two "burning" insurance policies.

21 The settlement payment is to be deposited in the trust account of the OCUC's counsel upon the

22 satisfaction of the following two conditions: (i) approval of the settlement pursuant to Fed. R. Bankr.

23 P. 9019 and a "good faith settlement" determination by the Court in the Bankruptcy Case; and (ii) a

24 "good faith settlement" determination by the District Court in the District Court Action. *See, e.g.*,

25 Bankr. Docket No. 1565 at pg. 2. Like the settlement with Chinn and FICC, the settlement with

26 Kushner and Spitz provides that the settlement payment will be allocated between the OCUC, on

27 behalf of the Debtors, and the PBGC pursuant to a separate allocation agreement to be presented to

28 the Court for approval. *Id*.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-8-

Following a hearing on September 23, 2019, the Court approved the settlement with Kushner and Spitz pursuant to Fed. R. Bankr. P. 9019 and made a "good faith settlement" determination in the Bankruptcy Case. *See* Bankr. Docket No. 1584. In the District Court, substantive hearings on the settling defendants' motion for a "good faith settlement" determination were held before United States District Judge David O. Carter on September 27, 2019 and November 12, 2019. The District Court has not yet issued a ruling on the motion for a "good faith settlement" determination.

At the September 27, 2019 hearing in the District Court, Judge Carter ordered the OCUC and PBGC to participate in a settlement conference with Covelli and Christian. The settlement conference was held on October 22, 2019 before United States Magistrate Judge Douglas F. McCormick. The parties were unable to reach a resolution at the settlement conference, but agreed to continue their settlement discussions.

Finally, on or about November 13, 2019, the OCUC, PBGC and Christian executed a term sheet to resolve the claims asserted against Christian in the Adversary Proceeding and the District Court Action. The term sheet provides for a $120,000 settlement payment from Christian to the PBGC, and is conditioned upon (among other things) the parties' execution of a formal settlement agreement, which will be presented to the Court for approval pursuant to Fed. R. Bankr. P. 9019. Exhibit B at ¶¶ 1, 10(a)-(b).

## V.    Argument

Particularly in the bankruptcy context, the law "favors compromise and not litigation for its own sake." *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) (citation omitted); *see also John S. Marandas, P.C. v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993) (noting that compromises are favored in bankruptcy). In bankruptcy proceedings, the approval of a settlement is committed to the sound discretion of the bankruptcy court. *See* Fed. R. Bankr. P. 9019(a) ("[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement"); *In re Stein,* 236 B.R. 34, 37 (D. Or. 1999) (the "decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sound discretion"). The bankruptcy court, however, should not substitute its own judgment for the judgment of a trustee or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-9-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

debtor-in-possession.  *See In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

In considering whether to approve a proposed settlement, the bankruptcy court must determine if the settlement is reasonable under the circumstances, fair and equitable, and in the best interests of the estate and its constituencies.  *See, e.g., In re A & C Properties*, 784 F.2d at 1381. The court is not required to conduct a mini-trial on the merits of the underlying claims.  *See In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976).  The court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks and citation omitted).

To determine the fairness, reasonableness and adequacy of a proposed settlement, a court should consider the following factors: the probability of success in the litigation; the difficulties, if any, to be encountered in the matter of collection; the complexity of the litigation, and the expense, inconvenience and delay necessarily attending it; and the paramount interests of creditors and a proper deference to their reasonable views.  *See In re Woodson*, 839 F. 2d 610, 620 (9th Cir. 1988) (quoting *In re A & C Properties*, 784 F.2d at 1381).  A proposed settlement need not satisfy each of these factors, so long as "the factors as a whole favor approving the settlement."  *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citation omitted).

For the reasons discussed below, the Settlement Agreement satisfies the factors the Court should consider in determining whether to approve the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019.  Accordingly, the OCUC respectfully requests that the Court grant the Motion and approve the Settlement Agreement.

## A.    Paramount Interests of Creditors

The Settlement Agreement will protect the paramount interests of the Debtors' creditors.  It provides for a total payment of $5,490,000 to the Bankruptcy Estate, of which $2,745,000 has been designated as compensation to the Bankruptcy Estate for the three years of hard-fought litigation and resulting expense incurred by the OCUC's counsel in connection with its investigation and prosecution of the Adversary Proceeding.  The $5,490,000 payment will provide the Debtors, whose Bankruptcy Case has been pending since November 2015, with a path towards the resolution of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Bankruptcy Case. Furthermore, the Settlement Agreement provides that the PBGC – with more than $174,000,000 of unpaid claims that dwarf the approximately $40,000,000 of general unsecured claims held by other creditors – will forego any right to receive distributions from the Debtors unless and until the Debtors' other general unsecured creditors receive a $1,000,000 distribution.  That limitation on the PBGC's right to receive further distributions from the Bankruptcy Estate will increase the likelihood that the Debtors' other general unsecured creditors will receive distributions from the Bankruptcy Estate. Finally, the Settlement Agreement also protects the Bankruptcy Estate from incurring further litigation expense in the Adversary Proceeding, by transferring to the PBGC all responsibility and authority over the prosecution of the claims against the remaining non-settling defendants in the Adversary Proceeding (*i.e.*, Covelli and his entities).   Thus, the Settlement Agreement will protect the interests of the Debtors' creditors and is in the best interests of the Bankruptcy Estate.

The Settlement Agreement also is fair and reasonable vis-à-vis the PBGC. The PBGC commenced its litigation, which is still at the pleading stage, in February 2019.  Pursuant to the Settlement Agreement, the PBGC will receive a payment of $2,745,000, will retain the right to share ratably in any distributions in excess of $1,000,000 made to general unsecured creditors of the Debtors, will have exclusive rights to any and all funds or other assets recovered from Covelli, and will receive the entire settlement amount to be paid by Christian.  Furthermore, to assist the PBGC in its prosecution of the claims against Covelli, the PBGC will receive the full benefit of the years of research, analysis, investigation and trial preparation conducted by the OCUC's litigation counsel in connection with, among other things, the three dispositive motions defeated by the OCUC in the Adversary Proceeding, its review and analysis of the voluminous document productions in the Adversary Proceeding, and its preparation for the more than thirty depositions scheduled in the Adversary Proceeding, which were well underway when discovery was initially stayed in May 2019. As a result, the Settlement Agreement also is in the best interests of the PBGC, the Debtors' single largest creditor.  Therefore, the first factor the Court should consider – the paramount interests of creditors – weighs heavily in favor of approval of the Settlement Agreement.

DOCS_LA:326021.2 29266/002

**B.    Complexity of Litigation, Likelihood of Success and Difficulties in Collection**

As outlined above, the Settlement Agreement provides that the OCUC will assign its claims against Covelli to the PBGC, and that the Bankruptcy Estate will waive and release all claims to any funds recovered by the PBGC on account of the claims against Covelli.  While the OCUC has prevailed on every dispositive motion filed to date by the defendants in the Adversary Proceeding – including a motion to dismiss and a motion for summary judgment filed by Covelli – and is confident that it would continue to prevail if it litigated against Covelli to a final judgment, it is undisputed that the Adversary Proceeding involves numerous complex issues that will be extremely expensive to litigate through the remaining fact discovery, expert discovery and trial.  Among other things, and in addition to the twelve fact depositions already taken in the Adversary Proceeding, approximately twenty fact depositions remain on the parties' schedule in a variety of locations across the country, to be followed by what in all likelihood will be extensive expert discovery, a renewed motion for summary judgment by Covelli and, ultimately, a jury trial in the District Court.

Regardless of the likelihood that the OCUC would succeed on the merits of its claims against Covelli, the Settlement Agreement is an ideal solution for both the Bankruptcy Estate and the PBGC. The Settlement Agreement compensates the Bankruptcy Estate for, among other things, the assignment of its claims against Covelli to the PBGC, and relieves the Bankruptcy Estate of the expense and delay of further prosecution of the Adversary Proceeding.  At the same time, the Settlement Agreement will enable the PBGC – which, unlike the Bankruptcy Estate, has the resources needed to litigate against Covelli to a final judgment – to effectively and efficiently prosecute the Bankruptcy Estate's claims against Covelli together with the PBGC's own separate claims against Covelli, with the benefit of the years of work product prepared by the OCUC's litigation counsel.  In exchange for its agreement to assume responsibility for the claims asserted against Covelli in the Adversary Proceeding, the PBGC will be entitled to all funds recovered from Covelli on account of those claims.  Thus, as stated above, the Settlement Agreement represents a "best of both worlds" solution: it will allow the PBGC to continue to seek redress for the injuries suffered by the Debtors and the Pension Plan as a result of Covelli's misconduct, and provides that the PBGC will have the exclusive right to any funds recovered through its efforts, while also

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-12-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  compensating the Bankruptcy Estate and allowing it to avoid incurring further litigation expense in

2  the Adversary Proceeding.

3      Finally, with respect to difficulties in the matter of collection, Covelli has not provided any

4  financial disclosures to the OCUC, and thus it is unclear whether Covelli has assets available to

5  satisfy any judgment against him on account of the claims asserted in the Adversary Proceeding.

6  Nonetheless, Covelli advised the Court, in his unsuccessful motion for summary judgment, that this

7  "sprawling case ... is imposing massive costs on an individual of modest means and his small

8  businesses."  Adv. Docket No. 133 at pg. 1.  To the extent that is a true statement by Covelli, the

9  OCUC would potentially face difficulties in collecting any judgment entered against Covelli.

10     In sum, the Settlement Agreement satisfies the remaining factors the Court should consider in

11  evaluating the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019.  Therefore, the OCUC

12  respectfully submits that the Settlement Agreement should be approved.

## VI.    Notice of the Motion

14     Notice has been given to all parties entitled to notice in accordance with the Court's order

15  limiting the scope of notice in these chapter 11 cases [Bankr. Docket No. 45], to all parties

16  requesting electronic notice, to all parties to the Settlement Agreement, to all parties to the

17  Adversary Proceeding, and to all parties to the District Court Action.  The OCUC submits that such

18  notice is sufficient, and that no other or further notice is required.

## VII.    Conclusion

20     For the reasons set forth above, the OCUC respectfully requests that the Court enter an order

21  (i) granting the Motion, (ii) approving the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019,

22  (iii) authorizing the OCUC to take any and all actions reasonably necessary to effectuate the

23  Settlement Agreement without further order of the Court, and (iv) granting such other and further

24  relief as the Court deems just and proper.

26                    [remainder of page intentionally blank]

DOCS_LA:326021.2 29266/002

1

Dated:   November 25, 2019                PACHULSKI STANG ZIEHL & JONES LLP

2

*/s/ Alan J. Kornfeld*

3

Robert J. Feinstein
Alan J. Kornfeld

4

Jeffrey W. Dulberg
Elissa A. Wagner

5

Counsel for the Official Committee of Unsecured Creditors

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

-14-

# Exhibit A

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is entered into between and among the following parties (referred to collectively as the "Parties" and each individually as a "Party"): the Official Committee of Unsecured Creditors of Freedom Communications, Inc., et al. (the "OCUC"); the Pension Benefit Guaranty Corporation (the "PBGC"); and Freedom Communications, Inc. and its affiliated debtors (collectively, the "Debtors") in the chapter 11 cases pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") under the caption *In re Freedom Communications, Inc., et al.*, Case No. 8:15-bk-15311-MW (the "Bankruptcy Case"). The Parties agree as follows:

1. <u>Effective Date</u>. The effective date ("Effective Date") of this Agreement shall occur upon satisfaction of both of the following conditions: (a) execution of this Agreement by all of the Parties; and (b) entry of an order by the Bankruptcy Court in the Bankruptcy Case approving the Agreement pursuant to Fed. R. Bankr. P. 9019. The OCUC shall file a motion seeking the Bankruptcy Court's approval of the Agreement promptly upon execution of the Agreement by all of the Parties.

2. <u>Allocation of Chinn/FICC and Kushner/Spitz Settlement Proceeds</u>. Settlement proceeds in the total amount of $8,235,000.00 (the "Settlement Funds") have been deposited, or are to be deposited, into the client trust account of Pachulski Stang Ziehl & Jones LLP ("PSZJ"), as counsel to the OCUC, as follows: $400,000.00 was deposited on August 24, 2018 pursuant to a settlement agreement (the "Chinn/FICC Settlement") approved by the Bankruptcy Court in the Bankruptcy Case on August 1, 2018 [Docket No. 1517]; and $7,835,000 is to be deposited, pursuant to a settlement agreement approved by the Bankruptcy Court in the Bankruptcy Case on September 25, 2019 [Docket No. 1584] (the "Kushner/Spitz Settlement"), upon the satisfaction of certain conditions as specified in the Kushner/Spitz Settlement. The Settlement Funds shall be allocated among the PBGC and the Debtors' chapter 11 estates (collectively, the "Bankruptcy Estate") as follows:

(a) One-third of the Settlement Funds, totaling $2,745,000.00 (the "PBGC Settlement Amount"), shall be paid to the PBGC within 5 days after the later of (i) the Effective Date and (ii) the date of the deposit of the settlement proceeds from the Kushner/Spitz Settlement.

(b) One-third of the Settlement Funds, totaling $2,745,000.00, shall be paid to the Bankruptcy Estate as consideration for the legal services provided by PSZJ as counsel to the OCUC in, and in connection with, the adversary proceeding pending in the Bankruptcy Court under the caption *Official Committee of Unsecured Creditors of*

*Freedom Communications, Inc., et al. v. Kushner, et al.*, Adv. No. 8:17-ap-01012-MW (the "Adversary Proceeding").

(c) One-third of the Settlement Funds, totaling $2,745,000.00, shall be paid to the Bankruptcy Estate.

3.    <u>Assignment of Covelli Claims</u>.  In the Adversary Proceeding, the OCUC has asserted, on behalf of the Debtors and the Bankruptcy Estate, the following claims against Richard J. Covelli, JTR, LLC, C & C Marketing LLC and C2 Advisors, LLC (collectively, the "Covelli Defendants"):  a claim for aiding and abetting breach of fiduciary duty; a claim to avoid fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B); and a claim to avoid fraudulent transfers pursuant to 11 U.S.C. § 544(b) and California Civil Code §§ 3439.04, 3439.05 and 3439.07 (collectively, the "Covelli Claims").   The Parties agree as follows with respect to the Covelli Claims:

(a) Upon the Effective Date, (i) the Covelli Claims are assigned to the PBGC, (ii) the PBGC shall have exclusive leave, responsibility (but without any duty or obligation to any other Party), standing, and authority to assert, prosecute and/or settle the Covelli Claims, (iii) the PBGC shall bear all fees and costs arising out of its prosecution and/or settlement of the Covelli Claims, (iv) any and all funds or other assets or consideration recovered by the PBGC on account of the Covelli Claims (the "Covelli Recoveries") shall be payable solely to the PBGC and shall belong exclusively to the PBGC, and (v) the OCUC, the Debtors and the Bankruptcy Estate waive and release all rights or claims to any Covelli Recoveries.

(b) To effectuate the terms of this Agreement, the OCUC has filed a motion in the United States District Court for the Central District of California (the "District Court") seeking to withdraw the reference of the Adversary Proceeding and to consolidate the Adversary Proceeding with the action commenced by the PBGC in the District Court on February 14, 2019 under the caption *Pension Benefit Guaranty Corporation v. Spitz, et al.*, Case No. 8:19-cv-00299-DOC-DFM (the "District Court Action").  Upon entry of an order by the District Court withdrawing the reference of the Adversary Proceeding and consolidating the Adversary Proceeding with the District Court Action, counsel for the OCUC shall withdraw its appearance(s) in such consolidated proceeding and counsel for PBGC shall be substituted therein as plaintiffs' counsel.

4.    <u>Christian/Etaros Recoveries</u>.  In the Adversary Proceeding, the OCUC has asserted, on behalf of the Debtors and the Bankruptcy Estate, the following claims against Traci M. Christian and

Etaros Actuarial Services LLC (collectively, the "Christian Defendants"):  a claim for aiding and abetting breach of fiduciary duty; a claim to avoid fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B); and a claim to avoid fraudulent transfers pursuant to 11 U.S.C. § 544(b) and California Civil Code §§ 3439.04, 3439.05 and 3439.07.  In the District Court Action, the PBGC has asserted various claims under Title 29 of the United States Code against the Christian Defendants.  The OCUC, the PBGC and the Christian Defendants have reached an agreement in principle to resolve all claims asserted by the OCUC and the PBGC against the Christian Defendants, which agreement in principle will be documented in a formal settlement agreement and will be subject to approval by the Bankruptcy Court in the Bankruptcy Case (the "Christian/Etaros Settlement").  The Parties agree as follows with respect to the Christian/Etaros Settlement:

> (a) Any and all funds or other assets or consideration paid or provided by the Christian Defendants pursuant to the Christian/Etaros Settlement (the "Christian/Etaros Recoveries") shall be payable solely to the PBGC and shall belong exclusively to the PBGC.

> (b) The OCUC, the Debtors and the Bankruptcy Estate waive and release all rights or claims to any of the Christian/Etaros Recoveries.

5.     Limitations on PBGC's Right to Additional Distributions.  In the Bankruptcy Case, the PBGC filed the following claims against the Debtors (collectively, the "PBGC Claims"):  Claim No. 503-1 for $154,566,070 based on the Debtors' statutory liability under 29 U.S.C. §§ 1362 and 1368 for the unfunded benefit liabilities of the Retirement Plan of Freedom Communications, Inc. ("Pension Plan"); Claim No. 504-1 for $20,080,588.45 based on the Debtors' statutory liability under 29 U.S.C. § 1307 for termination and other premiums owed on account of the Pension Plan; and Claim No. 505-1 for $16,159,231 based on the Debtors' statutory liability under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082, 1342 and 1362(c) for unpaid minimum funding contributions to the Pension Plan. Claim No. 505-1 was paid in full on March 31, 2016.  The Parties agree as follows with respect to the PBGC Claims:

> (a) The PBGC shall not share in any distributions made by the Debtors or the Bankruptcy Estate after the Effective Date, including any distribution(s) made to general unsecured creditors of the Debtors (whether via a plan of liquidation or otherwise), unless and until (i) all administrative and priority claims against the Debtors and the Bankruptcy Estate are paid in full, and (ii) $1,000,000 is distributed to the general unsecured creditors of the Debtors (other than the PBGC).

DOCS_LA:325948.5 29266/002

(b) In the event that (i) all administrative and priority claims against the Debtors and the Bankruptcy Estate are paid in full, and (ii) $1,000,000 is distributed to the general unsecured creditors of the Debtors (other than the PBGC), then the PBGC thereafter shall be entitled to share ratably in any additional distributions made to the general unsecured creditors of the Debtors.

6.    <u>OCUC, Debtors and Bankruptcy Estate's Release of Claims to Further Recoveries</u>.  Except as set forth in paragraphs 2(b) and 2(c) of this Agreement, the OCUC, the Debtors and the Bankruptcy Estate waive and release any and all rights or claims to any funds or other assets or consideration recovered by or provided to the PBGC in connection with the Adversary Proceeding or the District Court Action.

7.    <u>Turnover of Litigation Materials</u>.  To the extent not previously provided to the PBGC, the OCUC, through its counsel, agrees to turn over the following materials to the Office of the General Counsel of the PBGC no later than 30 days after the Effective Date:  all discovery received by the OCUC in the Adversary Proceeding; all discovery produced by the OCUC in the Adversary Proceeding; and all work product prepared by the OCUC in connection with the Adversary Proceeding.  The OCUC, through its counsel, will cooperate with the Office of the General Counsel of the PBGC to ensure that the PBGC obtains from the OCUC's counsel all information necessary to prosecute the Adversary Proceeding, to the extent such information is presently in the possession of the OCUC's counsel.

8.    <u>Applicable Law</u>.  Except to any extent preempted by federal law, the laws of the State of California (without regard to its conflict of laws rules) shall govern the validity, interpretation and performance of this Agreement.

9.    <u>Jurisdiction and Venue in the Bankruptcy Court</u>.  Each Party agrees that the Bankruptcy Court shall have exclusive jurisdiction over any disputes regarding the validity, interpretation or performance of this Agreement, and consents to personal jurisdiction and venue in the Bankruptcy Court in connection with any such disputes.

10.    <u>Representations and Warranties</u>.  Each Party represents and warrants that it has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

11.  <u>Representations and Warranties of the OCUC.</u>  In entering this Agreement, PBGC has relied upon the following representations and warranties by the OCUC to PBGC:

(a) That the Bankruptcy Estate has recovered $385,069 on account of causes of action brought by the Bankruptcy Estate under sections 544 through 550 of the Bankruptcy Code (the "Avoidance Recoveries"); and

(b) The Bankruptcy Estate will not be receiving any additional Avoidance Recoveries; and

(c) As of the date of this Agreement, the Bankruptcy Estate has $1,904,069 in cash on hand (including the Avoidance Recoveries); and

(d) Other than cash on hand, the only other sources of recovery for the Bankruptcy Estate are: (i) the Bankruptcy Estate's allocated share of the Settlement Funds under paragraph 2(c) above; and (ii) a possible tax refund from the State of California.

12.  <u>Entire Agreement</u>.  This document contains the entire Agreement between the Parties, and may only be modified in writing signed by the Parties or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this document.

13.  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement.  Delivery of a signature page to this Agreement by email or other electronic means shall be effective as delivery of the original signature page to this Agreement.

WHEREFORE, the Parties have executed this Agreement on the dates shown below.

Dated:  November 22, 2019

Dated:  November ___, 2019

**Naviga, Acting Chair of the Official Committee of Unsecured Creditors of Freedom Communications, Inc., et al.**

**Pension Benefit Guaranty Corporation**

_____
Brian Cornelius
Global Collections Analyst
Naviga

_____
Judith R. Starr
General Counsel
Pension Benefit Guaranty Corporation

11.  <u>Representations and Warranties of the OCUC.</u>  In entering this Agreement, PBGC has relied upon the following representations and warranties by the OCUC to PBGC:

(a)  That the Bankruptcy Estate has recovered $385,069 on account of causes of action brought by the Bankruptcy Estate under sections 544 through 550 of the Bankruptcy Code (the "Avoidance Recoveries"); and

(b)  The Bankruptcy Estate will not be receiving any additional Avoidance Recoveries; and

(c)  As of the date of this Agreement, the Bankruptcy Estate has $1,904,069 in cash on hand (including the Avoidance Recoveries); and

(d)  Other than cash on hand, the only other sources of recovery for the Bankruptcy Estate are: (i) the Bankruptcy Estate's allocated share of the Settlement Funds under paragraph 2(c) above; and (ii) a possible tax refund from the State of California.

12.  <u>Entire Agreement.</u>  This document contains the entire Agreement between the Parties, and may only be modified in writing signed by the Parties or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this document.

13.  <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery of a signature page to this Agreement by email or other electronic means shall be effective as delivery of the original signature page to this Agreement.

WHEREFORE, the Parties have executed this Agreement on the dates shown below.

Dated: November __, 2019

**Naviga, Acting Chair of the Official Committee of Unsecured Creditors of Freedom Communications, Inc., et al.**

Dated: November 22, 2019

**Pension Benefit Guaranty Corporation**

_____

Brian Cornelius
Global Collections Analyst
Naviga

_____

Judith R. Starr
General Counsel
Pension Benefit Guaranty Corporation

Dated:  November 22 2019

**Freedom Communications, Inc., et al.**

Brad Smith
Chief Restructuring Officer of the Debtors

# Exhibit B

## Settlement Term Sheet

The parties to this settlement term sheet are (i) the Official Committee of Unsecured Creditors of Freedom Communications, Inc., et al. ("OCUC"), (ii) the Pension Benefit Guaranty Corporation ("PBGC"), (iii) Traci M. Christian ("Ms. Christian"), and (iv) Etaros Actuarial Services, Inc. ("Etaros") (Etaros and, together with Ms. Christian, the "Defendants").  The parties agree as follows, subject to the terms and conditions set forth herein:

1. Defendants shall pay to PBGC or OCUC $120,000 (the "Settlement Sum"),[1] as follows:

   a. $75,000 shall be paid within 3 days after approval of this settlement by the Bankruptcy Court.

   b. $45,000 shall be paid upon the later of February 21, 2020 or three days after the settlement is approved by the Bankruptcy Court

2. Defendant's agree that failure to timely pay any amounts owed above shall result in a stipulated judgment against the Defendants in favor of the PBGC and OCUC in the amount of the Settlement Sum less any amounts paid, plus interest accruing from the date such funds are due.

3. The OCUC, the PBGC and the Defendants shall exchange mutual general releases, including (without limitation) releases of the claims asserted against the Defendants in the OCUC's litigation in the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") and the claims asserted against the

---

[1] Prior to final documentation of the settlement, PBGC and OCUC will provide direction as to the recipient of the $120,000 payment.

DOCS_LA:321852.1 29266/002

Defendants in the PBGC's litigation in the United States District Court for the Central District of California ("District Court").

4. The OCUC will dismiss the action against Defendants in the Bankruptcy Court with prejudice.    The PBGC will dismiss the action against Defendants in the District Court with prejudice.

5. Prior to the execution of this Term Sheet, Defendants produced financial information to the OCUC which the Plaintiffs relied upon in entering this Term Sheet. Defendants agree to respond by December 12, 2019, to PBGC's demands for additional information and financial disclosures of the Defendants under penalty of perjury. PBGC shall review the additional financial information and disclosures to determine if there is a material variance of Defendants' financial situation from Defendants' financial situation set forth in the information produced to the OCUC. If a material variance exists, PBGC in its sole discretion may decline to enter into the final settlement agreement. The term "material variance" shall mean a variance of $75,000 in net assets from the information previously produced to the OCUC. However, increases in retirement accounts resulting from market gains and regular contributions in the amount of approximately $23,000 shall not be included in calculating any material variance.

6. Defendants shall withdraw any objections to any settlement amongst the OCUC, PBGC, Aaron Kushner and Eric Spitz, and shall not object to any other settlements related to Freedom Communications, Inc., the OCUC's litigation in the Bankruptcy Court or the PBGC's litigation in the District Court.

7. Defendants shall agree to appear, at Defendants expense, at any evidentiary hearing/trial in the OCUC's litigation in the Bankruptcy Court or the PBGC's litigation in the District Court.

Page 2 of 4

8. Defendants agree that its undersigned counsel shall accept service for the Defendants to appear at any evidentiary/hearing trial in the OCUC's litigation in the Bankruptcy Court or the PBGC's litigation in the District Court.

9. The OCUC and PBGC agree to provide the following representation and warranty in the long form settlement agreement; the OCUC and PBGC represent and warrant that, after a reasonably diligent investigation, that they have not caused to be filed a complaint with the Actuarial Board for Consulting & Discipline ("ABCD"), nor are they aware of any of their representative(s) or employee(s) filing of a complaint with the ABCD.

10. The settlement reflected in this term sheet is subject to and conditioned upon each of the following:

    a. Final documentation of the terms and conditions of the settlement in an executed settlement agreement containing additional standard terms and conditions as those stated herein.

    b. Approval of the settlement agreement by the Bankruptcy Court in the jointly administered chapter 11 case of Freedom Communications, Inc., et al. ("Bankruptcy Case").

Accepted and agreed to as of October 13, 2019 by:

Official Committee of Unsecured Creditors of Freedom Communications, Inc., et al.

Pension Benefit Guaranty Corporation

By: Jack Butler
    Chair of the OCUC

By: Joel Ruderman
    Assistant General Counsel

DOCS_LA:321852.1 29266/002

Traci M. Christian

Etaros Actuarial Services, LLC

By:  Witkow Baskin
     Counsel to Traci M. Christian

By:  Witkow Baskin
     Counsel to Etaros Actuarial Services,
LLC

DOCS_LA:321852.1 29266/002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*): **OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR ORDER APPROVING SETTLEMENT BETWEEN THE COMMITTEE, THE PENSION BENEFIT GUARANTY CORPORATION, AND THE DEBTORS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 25, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **November 25, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 25, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| VIA OVERNIGHT MAIL | VIA EMAIL: |
|---|---|
| Honorable Mark S. Wallace | Carolyn Lachman – lachman.carolyn@pbgc.gov |
| United States Bankruptcy Court | Robert J. Guite – rguite@sheppardmullin.com |
| Central District of California | Michael Joyce – mjoyce@chubb.com |
| Ronald Reagan Federal Building and Courthouse | Christopher A. Parady – cparady@peabodyarnold.com |
| 411 West Fourth Street, Suite 6135 / Courtroom 6C | Joel Ruderman – ruderman.joel@pbgc.gov |
| Santa Ana, CA 92701-4593 | William H. Forman -- wforman@scheperkim.com |

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 25, 2019 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:323706.3 29266/002

**F 9013-3.1.PROOF.SERVICE**

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Kyra E Andrassy    kandrassy@swelawfirm.com,
lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
David M Banker    dbanker@lowenstein.com, dbanker@lowenstein.com
Richard L Barnett    rick@barnettrubin.com, kelly@barnettrubin.com
James Cornell Behrens    jbehrens@milbank.com,
gbray@milbank.com;mshinderman@milbank.com;dodonnell@milbank.com;j
brewster@milbank.com;JWeber@milbank.com
Shraddha Bharatia    notices@becket-lee.com
Matthew Bouslog    MBouslog@gibsondunn.com,
msandoval@gibsondunn.com
J Scott Bovitz    bovitz@bovitz-spitzer.com
Larry Butler    notices@becket-lee.com
Frank Cadigan    frank.cadigan@usdoj.gov
Andrew W Caine    acaine@pszjlaw.com
David Cantrell    dcantrell@lc-law-llp.com
Jeffrey D Cawdrey    jcawdrey@grsm.com,
jmydlandevans@grsm.com;madeyemo@gordonrees.com;sdurazo@grsm.com
Conrad K Chiu    cchiu@pryorcashman.com
Carol Chow    carol.chow@ffslaw.com, easter.santamaria@ffslaw.com
Shawn M Christianson    cmcintire@buchalter.com,
schristianson@buchalter.com
Theodore A Cohen    tcohen@sheppardmullin.com,
amontoya@sheppardmullin.com
Erinn M Contreras    econtreras@sheppardmullin.com,
nsaucedo@sheppardmullin.com
Joseph Corrigan    Bankruptcy2@ironmountain.com
Raphael Cung    rcung@callahan-law.com, jeggleston@callahan-
law.com;deisenbrey@callahan-law.com;mmartinez@callahan-law.com
Michael T Delaney    mdelaney@bakerlaw.com
Jessica DiFrancesco    notices@becket-lee.com
Caroline Djang    caroline.djang@bbklaw.com,
julie.urquhart@bbklaw.com;sansanee.wells@bbklaw.com;paul.nordlund@bb
klaw.com
Jeffrey W Dulberg    jdulberg@pszjlaw.com
Robert J Feinstein    rfeinstein@pszjlaw.com
Scott D Fink    brodellecf@weltman.com
Marc C Forsythe    kmurphy@goeforlaw.com,
mforsythe@goeforlaw.com;goeforecf@gmail.com
Alan J Friedman    afriedman@lwgfllp.com, lgauthier@shbllp.com
Alan J Friedman    afriedman@shbllp.com, lgauthier@shbllp.com
Matthew T Furton    mfurton@lockelord.com,
cpaul@lockelord.com;chicagodocket@lockelord.com
Thomas M Gaa    tgaa@bbslaw.com
Beth Gaschen    bgaschen@wgllp.com,
kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@
wgllp.com
Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
David B Golubchik    dbg@lnbyb.com, stephanie@lnbyb.com
Christopher J Green    chrisgreen@ucla.edu,
chrisgreen@ucla.edu;christopher-green-2815@ecf.pacerpro.com
Justin D Harris    jdh@harrislawfirm.net, felicia@harrislawfirm.net
Michael J Hauser    michael.hauser@usdoj.gov
Eric M Heller    eric.m.heller@irscounsel.treas.gov
Lillian Jordan    ENOTICES@DONLINRECANO.COM,
RMAPA@DONLINRECANO.COM
Samuel M Kidder    skidder@bhfs.com
Jeannie Kim    jkim@buchalter.com, docket@buchalter.com
Alan M Kindred    akindred@leechtishman.com,
alankindred@hotmail.com;dtomko@leechtishman.com
Armand R. Kizirian    armand@boyamianlaw.com,
michael@boyamianlaw.com;brett@boyamianlaw.com;jessica@boyamianlaw.
com;jennifer@boyamianlaw.com
Stuart I Koenig    Skoenig@leechtishman.com,
sfrey@leechtishman.com;jabrams@leechtishman.com
Alan J Kornfeld    akornfeld@pszjlaw.com, mp@pszjlaw.com
Matthew J Kraus    mkraus@lc-lawyers.com, mbuchheit@lc-lawyers.com
Jeffrey C Krause    jkrause@gibsondunn.com,
dtrujillo@gibsondunn.com;jstern@gibsondunn.com

Yochun Katie Lee    kylee@akingump.com,
tsouthwell@akingump.com;westdocketing@akingump.com
Elan S Levey    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
William N Lobel    wlobel@pszjlaw.com,
nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
Aaron J Malo    amalo@sheppardmullin.com,
jsummers@sheppardmullin.com
Robert S Marticello    Rmarticello@swelawfirm.com,
gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
Ashley M McDow    amcdow@foley.com,
sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.
com
David W. Meadows    david@davidwmeadowslaw.com
Reed M Mercado    rmercado@sheppardmullin.com
Harlene Miller    harlene@harlenemillerlaw.com, harlenejd@gmail.com
Raymond F Moats    colcaecf@weltman.com
Elizabeth L Musser    emusser@londonfischer.com
Jeffrey P Nolan    jnolan@pszjlaw.com
Courtney E Norton    cnorton@greenbergglusker.com,
kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@g
reenbergglusker.com
Ryan D O'Dea    rodea@shbllp.com, LGauthier@shbllp.com
John M O'Donnell    john.o'donnell@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov
Ernie Zachary Park    ernie.park@bewleylaw.com
Ronak N Patel    rpatel@rivco.org,
dresparza@rivco.org;mdominguez@rivco.org
Mary A Petrovic    petrovic.mary@pbgc.gov, efile@pbgc.gov
Marc S Pfeuffer    pfeuffer.marc@pbgc.gov, efile@pbgc.gov
Kathy Bazoian Phelps    kphelps@diamondmccarthy.com,
philip.dobbs@diamondmccarthy.com
Christopher E Prince    ,
jmack@lesnickprince.com;erivas@lesnickprince.com;cprince@ecf.courtdrive
.com
Amelia Puertas-Samara    itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov
Christopher B Queally    cqueally@callahan-law.com, jluirette@callahan-
law.com
Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com
Christopher O Rivas    crivas@reedsmith.com, chris-rivas-
8658@ecf.pacerpro.com
Jeremy E Rosenthal    jrosenthal@sidley.com
Peter J Rudinskas    pjr.legal@gmail.com
James M Sabovich    jsabovich@callahan-law.com, ksalour@callahan-
law.com;jkirwin@callahan-law.com;rcung@callahan-
law.com;bmccormack@callahan-law.com;erichards@callahan-
law.com;SRobinson@callahan-law.com
Jonathan C Sandler    jsandler@bhfs.com,
pherron@bhfs.com;sgrisham@bhfs.com
Scott A Schiff    sas@soukup-schiff.com
Daren M Schlecter    daren@schlecterlaw.com, assistant@schlecterlaw.com
George E Schulman    GSchulman@DGDK.com,
danninggill@gmail.com;gschulman@ecf.inforuptcy.com
Leonard M Shulman    lshulman@shbllp.com
Donald W Sieveke    , dws4law@pacbell.net
Donald W Sieveke    ibmoola@yahoo.com, dws4law@pacbell.net
David P. Simonds    dsimonds@akingump.com, tsouthwell@akingump.com
David A Smyth    smythlaw@gmail.com, dsmyth2_@hotmail.com
Alex E Spjute    spjute@hugheshubbard.com,
gaurav.reddy@hugheshubbard.com
Sarah Stuppi    Sarah@stuppilaw.com
Helena Tseregounis    htseregounis@sidley.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Daniel Uribe    duribe@gmail.com
Elissa A Wagner    ewagner@pszjlaw.com
Michael A Wallin    mwallin@wallinrussell.com
Scott S Weltman    colcaecf@weltman.com
Johnny White    JWhite@wrslawyers.com, aparisi@wrslawyers.com
Brandon J Witkow    bw@witkowlaw.com, tg@witkowlaw.com
Steven D Zansberg    szansberg@lskslaw.com, mkelley@lskslaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**2. SERVED BY UNITED STATES MAIL**:

**2002 SERVICE LIST**

Debtor
Freedom Communications, Inc.,
Attn: Rich Mirman, CEO
a Delaware Corporation
625 N. Grand Ave.
Santa Ana, CA 9270

Peter C. Anderson, U.S. Trustee
Frank Cadigan, Asst. U.S. Trustee
411 West Fourth Street, Suite 9041
Santa Ana, CA  92701

Special Counsel for Debtors
William F. Meehan
Caroline Djang
Rutan & Tucker LLP
611 Anton Blvd., 14th Floor
Costa Mesa, CA  92626

Beth Gaschen
Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA  92626

Creditors' Committee Chairman
John J. Butler
Pension Benefit Guaranty Corporation
1200 K Street NW
Washington, DC 20005-4026

Attys for Silver Point Finance, LLC, et al.
Seth Goldman
Thomas B. Walper
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560

Silver Point Finance LLC
Paul Weiss Rifkind Wharton &
   Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6031

Silver Point Finance, as Coll. Agent
Attn:  Managing Agent/Officer or
   Director
Two Greenwich Plaza, First Floor
Greenwich, CT  06830-6353

Request for Special Notice
Attys for Angelo, Gordon Management
David P. Simonds
Akin Gump Strauss Hauer & Feld LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067-4614

Request for Special Notice
Attys for Angelo, Gordon Management
Lisa G. Beckerman
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, Bank of America Tower
New York, NY  10036-6745

Request for Special Notice
Attys for Tribune Publishing Company
Kenneth P. Kansa
Sidley Austin LLP
One South Dearborn Street, #900
Chicago, IL  60603

Request for Special Notice
Attys for The Bank of NY Mellon
Chistopher O. Rivas
Reed Smith
355 S. Grand Avenue, Suite 2900
Los Angeles, CA  90071

Request for Special Notice
Attys for Pension Benefit Guaranty Corp.
Mary A. Petrovic
Pension Benefit Guaranty Corp.
1200 K Street, N.W.
Washington, D.C.  20005

Geoffrey Lyon
Lyon Law
400 Oceangate, Ste 1120
Long Beach, CA 90802

Khatib Mazen
Lyon Law PC
400 Oceangate, Ste. 450
Long Beach, CA 90802

Rick Y. Zou
Lyon Law PC
10960 Wilshire Blvd Ste 820
Los Angeles, CA 90024

John O. Aernecke
164 Marriott Avenue
Schenectady, NY  12304

Adam B. Summers
6522 Corte Montecito
Carlsbad, CA  92009

Thomas J. Campbell
22536 Lake Forest Lane
Lake Forest, CA  92630

Leslie C. Heilman
Ballard Spahr LLP
919 North Market St., 11th Fl.
Wilmington, DE  19801-3034

Elizabeth Anne Ronca
29512 Los Osos Drive
Laguna Niguel, CA  92677

Rutan & Tucker LLP
611 Anton Blvd, Ste 1400
Costa Mesa, CA  92626-1931

**Attorney for Richard Covelli Parties**
William H. Forman
Scheper Kim and Harris LLP
800 W. 6th Street, 18th Floor
Los Angeles, CA 90017

Joel W. Ruderman
Assistant General Counsel
Pension Benefit Guaranty Corporation
1200 K Street NW
Washington DC 20005-4026

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.