Alan J. Friedman (Bar No. 132580)
SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

*Counsel for the Debtors*
*Co-Plan Proponents*

Robert J. Feinstein (Pro Hac Vice)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    rfeinstein@pszjlaw.com
          akornfeld@pszjlaw.com
          jdulberg@pszjlaw.com

*Counsel for the Official Committee of*
*Unsecured Creditors, Co-Plan Proponents*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>FREEDOM COMMUNICATIONS, INC., a Delaware corporation, et al.,[1]<br><br>Debtors and<br>Debtors-in-Possession. | Case No.: 8:15-bk-15311-MW<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8-15-bk-15337-MW; 8:15-bk-15339-MW; 8-15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |

[1]  The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036). The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

Affects:

☒  All Debtors

☐  Freedom Communications, Inc., a Delaware corporation, ONLY

☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY

☐  Freedom Services, Inc., a Delaware corporation, ONLY

☐  2100 Freedom, Inc., a Delaware corporation, ONLY

☐  OCR Community Publications, Inc., a California corporation, ONLY

☐  Daily Press, LLC, a California limited liability company, ONLY

☐  Freedom California Mary Publishing, Inc., a California corporation, ONLY

☐  Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

☐  Freedom Colorado Information, Inc., a Delaware corporation, ONLY

☐  Freedom Interactive Newspapers, Inc., a California corporation, ONLY

☐  Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

☐  Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

☐  Freedom Newspapers, a Texas general partnership, ONLY

☐  Freedom Newspapers, Inc., a Delaware corporation, ONLY

☐  Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

☐  OCR Information Marketing, Inc., a California corporation, ONLY

**DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

1

☐   Odessa American, a Texas general partnership, ONLY

2

☐   Orange County Register Communications, Inc., a California corporation, ONLY

3

4

☐   Victor Valley Publishing Company, a California corporation, ONLY

5

☐   Victorville Publishing Company, a California limited partnership, ONLY

6

7

☐   Freedom SPV II, LLC, a Delaware limited liability company, ONLY

8

☐   Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

9

10

☐   Freedom SPV I, LLC, a Delaware limited liability company, ONLY

11

☐   Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

12

13

☐   Freedom SPV V, LLC, a Delaware limited liability company, ONLY

14

15

16

17

18

19

**THIS IS NOT A SOLICITATION OF VOTES ON THE PLAN.  VOTES MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED A DISCLOSURE STATEMENT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

20

21

22

23

24

25

26

27

28

## DISCLAIMER

**THIS DISCLOSURE STATEMENT PROVIDES INFORMATION REGARDING THE JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS THAT THE DEBTORS AND THE COMMITTEE ARE SEEKING TO HAVE CONFIRMED BY THE BANKRUPTCY COURT. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES TO, AND CONFIRMATION OF, THE PLAN AND MAY NOT BE RELIED ON FOR ANY OTHER PURPOSE. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION OR RECOMMENDATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR THE MERITS OF THE PLAN.**

**THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATING TO THE PLAN, AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE PLAN PROPONENTS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE AND PROVIDE ADEQUATE INFORMATION WITH RESPECT TO THE DOCUMENTS SUMMARIZED, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF, OR ARE INCONSISTENT WITH, SUCH DOCUMENTS.**

**ALTHOUGH THE PLAN PROPONENTS HAVE MADE EVERY EFFORT TO BE ACCURATE, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF AN AUDIT OR OTHER REVIEW BY AN ACCOUNTING FIRM. IN THE EVENT OF ANY CONFLICT, INCONSISTENCY, OR DISCREPANCY BETWEEN THE TERMS AND PROVISIONS IN THE PLAN, THIS DISCLOSURE STATEMENT, THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT, OR THE FINANCIAL INFORMATION INCORPORATED HEREIN OR THEREIN BY REFERENCE, THE PLAN SHALL GOVERN FOR ALL PURPOSES. ALL HOLDERS OF CLAIMS SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.**

**THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED HEREIN HAVE BEEN MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN. ALTHOUGH THE PLAN PROPONENTS HAVE MADE AN EFFORT TO DISCLOSE WHERE CHANGES IN PRESENT CIRCUMSTANCES COULD REASONABLY BE EXPECTED TO AFFECT MATERIALLY THE RECOVERY UNDER THE PLAN, THIS DISCLOSURE STATEMENT IS QUALIFIED TO THE EXTENT CERTAIN EVENTS DO OCCUR.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "<u>SEC</u>") OR ANY FEDERAL, STATE, LOCAL, OR FOREIGN REGULATORY AGENCY, NOR HAS THE SEC OR ANY OTHER SUCH AGENCY PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT. PERSONS OR ENTITIES HOLDING OR TRADING IN, OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING, CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.**

# **TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ......................................................................................................11

II.     PLAN OVERVIEW....................................................................................................11

    A.      General Structure of the Plan ..........................................................................11

    B.      Summary of Treatment of Claims and Interests Under the Plan ......................13

    C.      Plan Voting Instructions and Procedures ........................................................14

        1.      Voting Rights ......................................................................................14

        2.      Solicitation Materials .........................................................................15

        3.      Voting Instructions and Procedures ....................................................16

        4.      Confirmation Hearing and Deadline for Objections to Confirmation .......19

III.    GENERAL INFORMATION ABOUT THE DEBTORS AND THE CASES .................19

    A.      Business Overview and Background .................................................................19

    B.      Circumstances Leading to Chapter 11 Filing...................................................20

    C.      Prepetition Secured Debt .................................................................................20

IV.    THE CHAPTER 11 CASES .......................................................................................21

    A.      First Day Orders...............................................................................................21

    B.      Cash Collateral / DIP Financing .....................................................................21

    C.      Payment of Prepetition Commission Obligations.............................................22

    D.      Debtors' Customer, Subscriber and Advertiser Programs.................................22

    E.      The Sale of Substantially All of the Debtors' Assets ...........................................23

    F.      The Silver Point Settlement .............................................................................23

    G.      The Committee Action......................................................................................24

    H.      Claim Bar Dates...............................................................................................26

    I.      Incentive and Severance Programs ..................................................................27

    J.      Extension of Exclusivity Periods for Filing a Chapter Plan and for Soliciting Acceptances to the Plan ..................................................................................27

    K.      Retention of Debtors' Professionals .................................................................27

    L.      Appointment of Committee and Retention of Committee Professionals...............28

    M.      Schedules, Statements of Financial Affairs .........................................................28

    N.      Prosecution of Avoidance Actions.......................................................................28

V.    SUMMARY OF THE JOINT CHAPTER 11 PLAN .........................................................28
    A.    Purpose and Effect of the Plan..............................................................29
    B.    Limited Substantive Consolidation.........................................................29
    C.    Estimated Recoveries............................................................................30
VI.    CERTAIN PLAN PROVISIONS .............................................................................30
    A.    Classification and Treatment of Classified Claims and Interests ..........30
        1.    Summary. ..............................................................................31
        2.    Classification and Treatment of Claims and Interests. ..............31
    B.    Acceptance of Rejection of the Plan......................................................33
        1.    Classes Permitted and Not Permitted to Vote.........................33
        2.    Effect of Non-Voting. ............................................................33
        3.    Nonconsensual Confirmation..................................................33
        4.    Postpetition Interest. .............................................................34
        5.    Elimination of Vacant Classes. ..............................................34
        6.    Special Provisions Regarding Insured Claims.........................34
    C.    Means for Implementation of the Plan...................................................34
        1.    Settlement of Intercompany Claims........................................34
        2.    Partial Substantive Consolidation. .........................................35
        3.    Continued Corporate Existence and Vesting of Assets. ..........35
        4.    Corporate Action; Winding Up of Affairs. ...............................36
        5.    Plan Administrator. ...............................................................37
        6.    Source of Funding..................................................................39
        7.    Retained Rights of Action.......................................................39
        8.    Interests in Non-Debtors Affiliates and Subsidiaries................39
        9.    Payment of Plan Expenses. ...................................................40
        10.    Dissolution of Debtors; Final Decree. ....................................40
        11.    Records. ................................................................................40

D.    Treatment of Executory Contracts and Unexpired Leases ....................................40

1.    Rejection of Executory Contracts and Unexpired Leases...........................40

2.    Bar Date for Rejection Claims..................................................................41

E.    Distributions and Related Matters ....................................................................41

1.    Dates of Distribution..................................................................................41

2.    Cash Distributions......................................................................................41

3.    Rounding of Payments................................................................................41

4.    Disputed Claims..........................................................................................41

5.    Undeliverable and Unclaimed Distributions..............................................42

6.    Minimum Distributions..............................................................................42

7.    Compliance With Tax Requirements..........................................................42

8.    Record Date in Respect to Distributions....................................................43

F.    Litigation, Objections to Claims, and Determination of Taxes ...........................43

1.    Litigation.....................................................................................................43

2.    Objections to Claims; Objection Deadline. ...............................................43

3.    Tax Determinations.....................................................................................43

4.    Temporary or Permanent Resolution of Disputed Claims..........................43

5.    Setoffs. .......................................................................................................44

G.    Injunctions, Exculpation, Releases and Related Provisions ..................................44

1.    Injunctions...................................................................................................44

2.    Exculpation. ...............................................................................................44

3.    Debtor Release. ..........................................................................................45

4.    Consenting Creditor Release......................................................................45

VII.    RISK FACTORS ............................................................................................................46

A.    The Plan Proponents May Not Be Able to Obtain Confirmation of the Plan........46

B.    Claims May Exceed the Plan Proponents' Estimates ...........................................46

C.    The Conditions Precedent to the Effective Date of the Plan May Not Occur .......47

VIII.    CONFIRMATION OF THE PLAN.................................................................47

    A.    The Confirmation Hearing.................................................47

    B.    Requirements for Confirmation of the Plan.........................47

    C.    Best Interests of Creditors..............................................48

    D.    Feasibility...................................................................49

    E.    Acceptance by Impaired Classes......................................49

    F.    Confirmation Without Acceptance by All Impaired Classes.................................49

        1.    No Unfair Discrimination ..........................................50

        2.    Fair and Equitable Test .............................................50

    G.    Alternatives to the Plan..................................................50

IX.    CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF
THE PLAN ...........................................................................................50

    A.    Federal Taxation Issues Related to Pass-Through Entities in General.................52

    B.    Consequences to Creditors.............................................53

        1.    Holders of Claims ...................................................53

        2.    Non-United States Persons .........................................53

    C.    Importance of Obtaining Professional Tax Assistance.........................54

X.    RECOMMENDATION ...........................................................................54

## **EXHIBITS**

EXHIBIT A    Joint Plan of Liquidation

EXHIBIT B    Organizational Chart

---

**THE PLAN PROPONENTS HEREBY ADOPT AND INCORPORATE EACH
EXHIBIT ATTACHED TO THIS DISCLOSURE STATEMENT
BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN**

## I.    **INTRODUCTION**

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), the above-captioned debtors and debtors-in-possession (the "Debtors" or the "Company") and the Official Committee of Unsecured Creditors (the "Committee") hereby jointly submit this disclosure statement (the "Disclosure Statement") for the *Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors* (as may be amended or modified, the "Plan"). The definitions contained in the Bankruptcy Code are incorporated herein by this reference. The definitions set forth in Article II of the Plan will also apply to capitalized terms used herein that are not otherwise defined. A copy of the Plan is attached hereto as **Exhibit A**.[2]

The purpose of this Disclosure Statement is to enable creditors whose Claims are Impaired under the Plan and who are entitled to vote to make an informed decision in exercising their right to accept or reject the Plan. This Disclosure Statement sets forth certain information regarding the Debtors' prepetition operating and financial history, their reasons for seeking protection under chapter 11 of the Bankruptcy Code, and the anticipated wind-down and liquidation of the Liquidating Debtors by a Plan Administrator. This Disclosure Statement also describes certain terms and provisions of the Plan, certain effects of Confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which Distributions will be made under the Plan. In addition, this Disclosure Statement discusses the Confirmation process and the voting procedures that Holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

## II.    **PLAN OVERVIEW**

### A.    **General Structure of the Plan**

The Debtors and the Committee are co-proponents of the Plan, which provides for the distribution of the remaining assets of the Debtors' estates, consisting primarily of net cash proceeds from certain settlements. Specifically, the Plan provides for the liquidation, collection, disposition and distribution of the remaining assets of the Debtors' Estates and winding-up the Debtors' affairs and the Chapter 11 Cases. Substantially all of the Debtors' assets were sold to a third party buyer and the remaining material causes of action of the Debtors were addressed and resolved under certain settlements including with the Pension Benefit Guaranty Corporation. The Plan proposes to fairly and efficiently allocate the Debtors' remaining Distributable Assets in a manner that is supported by the principal constituencies in the Chapter 11 Cases and will allow such cases to be promptly resolved.

The Plan will be implemented through the substantive consolidation of the Debtors' Estates for the purposes of voting and Distributions under the Plan, the re-vesting of the Estates' assets in Liquidating Debtor Freedom Communications, Inc., and the appointment of a Plan Administrator to liquidate or otherwise dispose of the Estates' remaining assets, if and to the extent such assets were not previously monetized or otherwise transferred by the Debtors prior to the Effective Date. All Intercompany Claims will be waived and eliminated. The Plan Administrator will act for the Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under the

---

[2] All capitalized terms used but not defined herein shall have the meanings provided to such terms in the Plan. The summary of the Plan provided herein is qualified in its entirety by reference to the Plan. In the case of any inconsistency between the summary herein and the Plan, the Plan shall govern.

Plan, subject to the provisions hereof, and shall, among other powers, wind up the affairs of the Liquidating Debtors; use, manage, sell, abandon and/or otherwise dispose of the remaining property of the Estates; prosecute objections to Claims and any litigation on behalf of the Liquidating Debtors; cause distributions to be made to Creditors pursuant to the Plan; and take such other actions required under or consistent with the Plan.  The initial Plan Administrator will be David K. Gottlieb.[3]

Under the Plan, the Holders of Allowed Administrative Expenses, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims will be paid in full on the Effective Date, unless otherwise agreed with the Holders of such Claims.  The Holders of Allowed Miscellaneous Secured Claims will either:  (a) be paid in cash up to the value of their collateral, or (b) have their obligations assumed or otherwise addressed as provided for in the Plan, including pursuant to agreements with such Holders.  As discussed in the Disclosure Statement, the Secured Claims of the Debtors' prepetition secured lenders, the debtor-in-possession financing lenders, and the PBGC were paid in full or otherwise addressed and resolved prior to the filing of the Plan.

Holders of Allowed General Unsecured Claims will receive any remaining Net Distributable Estate Assets after the payment of (or reserves for) Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims, and Plan Expenses; provided that in the event that the aggregate Cash recovery for Holders of Allowed General Unsecured Claims (other than the PBGC) exceeds $1,000,000, then any excess Cash proceeds will be shared ratably by the Holders of Allowed General Unsecured Claims and the Holder of the PBGC Unsecured Claims.  The PBGC (or other Holder of the PBGC Unsecured Claims) will receive the treatment provided for the PBGC Unsecured Claims set forth in the PBGC Settlement, including, as noted, the PBGC sharing ratably with Holders of Allowed Class 3 General Unsecured Claims any excess Cash proceeds over $1,000,000 in the aggregate.  As discussed below, in order to facilitate a recovery for general unsecured creditors, certain Professional Persons in the Chapter 11 Cases have agreed to limit their recovery on account of their (senior) Allowed Professional Fee Claims, thereby freeing up certain funds for distribution to creditors with Allowed General Unsecured Claims.

All Interests in the Debtors will be canceled, and any associated management rights held by Holders of Interests will be void and of no force and effect as of the Effective Date.  Holders of Interests will not receive any Distribution or other property pursuant to the Plan.

**THE PLAN PROPONENTS BELIEVE THAT THE PLAN IS FAIR AND EQUITABLE, WILL MAXIMIZE THE VALUE TO THESE ESTATES, AND IS IN THE BEST INTERESTS OF THE DEBTORS AND THEIR CONSTITUENTS.**

---

[3] Mr. Gottlieb is a principal of D Gottlieb & Associates, LLC, and has over 35 years' experience as a CPA.  He has served as a chapter 7 panel trustee in the Central District of California since 1995. Mr. Gottlieb is a chapter 11 trustee and examiner and acts as accountant and financial advisor to other fiduciaries, as well as debtors-in-possession, official unsecured creditors' committees and other parties in bankruptcy and insolvency matters.  He is a member of the AICPA, the Association of Certified Fraud Examiners, Litigation Support Committee for the California Society of CPAs, the National Association of Bankruptcy Trustees, ABI and the Los Angeles Bankruptcy Forum. Mr. Gottlieb earned his B.S. in accounting from New York University.

**FOR THESE REASONS, THE PLAN PROPONENTS URGE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE TO TIMELY RETURN THEIR BALLOTS AND TO VOTE TO ACCEPT THE PLAN.**

**B.    Summary of Treatment of Claims and Interests Under the Plan**

The Plan provides for the classification and treatment of Claims and Interests.  The Plan designates 4 Classes of Claims and 1 Class of Interests.  These Classes and Plan treatments take into account the differing nature and priority under the Bankruptcy Code of the various Claims and Interests.

The table below summarizes the classification and treatment of the Claims and Interests under the Plan.  The Plan substantively consolidates the Debtors for voting and distribution purposes.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.   FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN.**

| Class | Claim or Interest | Entitlement to Vote | Projected Recovery | Estimated Claims Amount | Proposed Treatment |
|---|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired; Not Entitled to Vote (Presumed to Accept) | 100% | Approximately $1,000,000.00 | Class 1 consists of Priority Non-Tax Claims.  At the election of the Liquidating Debtors, each Holder of a Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, on or as soon as practicable after the later of (i) the Effective Date, or (ii) thirty (30) calendar days following the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, (a) a Cash payment from the Liquidating Debtors equal to the Allowed amount of such Claim, or (b) such other treatment as otherwise agreed by the Holder of such Claim and the Debtors or the Liquidating Debtors. |
| 2 | Miscellaneous Secured Claims | Unimpaired; Not Entitled to Vote (Presumed to Accept) | 100% | Approximately $200,000.00 | Class 2 consists of any Miscellaneous Secured Claims. Although all Miscellaneous Secured Claims have been placed in one Class for the purposes of nomenclature, each Miscellaneous Secured Claim, to the extent secured by a Lien on any property or interest in property of any of the Debtors different from that securing any other Miscellaneous Secured Claim, shall be treated as being in a separate sub-Class for purposes of voting and receiving distributions under the Plan. Except to the extent that a Holder of an Allowed Miscellaneous Secured Claim has been paid by the Debtors, in whole or in part, prior to the Effective Date, on the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, at the option of the Liquidating Debtors, in full and final satisfaction of such Miscellaneous Secured Claim, (i) each Allowed Miscellaneous Secured Claim shall be reinstated and Unimpaired in accordance with section 1124 of the Bankruptcy Code,  or (ii) each Holder of an Allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Miscellaneous Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Miscellaneous Secured Claim, (y) the collateral securing such Allowed Miscellaneous Secured Claim, or (z) such other treatment as may be agreed to by the Holder of such Claim and the Debtors or the Liquidating Debtors. |

| | | | | | |
|---|---|---|---|---|---|
| 3 | General Unsecured Claims | Impaired; Entitled to Vote | Approx. 0.5% - 5.0% | $40,000,000 (excludes any PBGC Unsecured Claims) | Class 3 consists of all General Unsecured Claims.  Except to the extent that a Holder of an Allowed Class 3 General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of the each Allowed Class 3 General Unsecured Claim, each Holder of an Allowed Class 3 General Unsecured Claim shall receive a Cash payment equal to its Pro Rata share of the Net Distributable Estate Assets on one or more dates as soon as reasonably practicable after (i) all General Unsecured Claims have been Allowed, Disallowed or otherwise resolved and (ii) the payment of (or reserves for) all Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims and Plan Expenses (unless the holder of the applicable claim agrees to other less favorable treatment); *provided, however*, in the event that an aggregate of at least $1,000,000 in Cash in Net Distributable Assets is or will be distributed, as Distributions under the Plan, to the Holders of Allowed Class 3 General Unsecured Claims on account of such Claims, any and all Net Distributable Assets in excess of such $1,000,000 Cash threshold shall be distributed by the Liquidating Debtors to the Holders of Allowed Class 3 Claims and the PBGC (or other Holder of the Class 4 Claims), on account of their Class 3 and Class 4 Claims, respectively, on a Pro Rata basis as soon as reasonably practicable on the Class 3 Distribution Date(s); *provided further* that in the discretion of the Plan Administrator, Allowed Class 3 General Unsecured Claims may receive Distributions before the reconciliation of all Disputed Class 3 General Unsecured Claims provided that (x) reserves are maintained for any Class 3 General Unsecured Claim that is Disputed at the time of such Distribution and (y) the Plan Administrator shall make a corrective Distribution following the resolution of any Disputed Claim within thirty (30) days of such resolution. |
| 4 | PBGC Unsecured Claims | Impaired; Entitled to Vote | <1% | TBD (approx. $145,000,000) | Class 4 consists of PBGC Unsecured Claims.  The Holder of the PBGC Unsecured Claims shall receive the treatment provided for the PBGC on account of the PBGC Unsecured Claims set forth in the PBGC Settlement.  Specifically, pursuant to the PBGC Settlement, the PBGC has agreed to waive any right to receive Distributions under the Plan, on account of the PBGC Unsecured Claims, unless and until the Pro Rata Class 3 / Class 4 Distribution Trigger Event occurs or is otherwise satisfied; upon the occurrence of the Pro Rata Class 3 / Class 4 Distribution Trigger Event, the PBGC shall be entitled to share on a Pro Rata basis with the Holders of Allowed Class 3 Claims any Excess Net Distributable Assets. |
| 5 | Interests | Impaired; Not Entitled to Vote (Deemed to Reject) | 0% | n/a | Class 5 consists of all Interests.  Holders of Interests shall receive no distributions under the Plan, and on the Effective Date, all Interests shall be deemed void and of no force and effect. |

**THE PLAN PROPONENTS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR HOLDERS OF CLAIMS AGAINST THE DEBTORS AND THUS STRONGLY RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.**

C.    **Plan Voting Instructions and Procedures**

1.    **Voting Rights**

Under the Bankruptcy Code, acceptance of the Plan by a Class of Claims is determined by calculating the number and the amount of Allowed Claims voting to accept, based on the actual total Allowed Claims voting on the Plan.  Acceptance by a Class of Claims requires more than one-half of the number of total voting Allowed Claims in the Class to vote in favor of the Plan and at least two-thirds in dollar amount of the total Allowed Claims in the Class to vote in favor of the Plan.

Under the Bankruptcy Code, only Classes of Claims or Interests that are "Impaired" and that are not deemed as a matter of law to have rejected a plan under Section 1126 of the Bankruptcy Code are entitled to vote to accept or reject the Plan. Any Class that is "Unimpaired" is not entitled to vote to accept or reject the Plan and is conclusively presumed to have accepted the Plan. As set forth in Section 1124 of the Bankruptcy Code, a Class is "Impaired" if the legal, equitable, or contractual rights attaching to the Claims or Interests of that Class are modified or altered. Any Class of Claims or Interests that does not receive or retain any property under the Plan on account of such Claims or Interests is deemed to have rejected the Plan.

Pursuant to the Plan, Classes 3 and 4 (General Unsecured Claims and the PBGC, respectively) are Impaired under the Plan and entitled to vote to accept or reject the Plan. Only the Holder of a Claim as of [DATE], 2020 (the "Voting Record Date"), may vote to accept or reject the Plan.

Pursuant to the Plan, Claims in Classes 1and 2  are Unimpaired by the Plan, and such Holders are conclusively presumed to have accepted the Plan and are therefore not entitled to vote on the Plan.

Pursuant to the Plan, Interests in Class 5  will not receive or retain any property under the Plan on account of such Interests, as applicable, and are, therefore, deemed to reject the Plan and are not entitled to vote on the Plan.

### 2.    Solicitation Materials

The Debtors have engaged Donlin, Recano & Company, Inc. (the "Voting Agent") to serve as the voting agent to process and tabulate Ballots for each Class entitled to vote on the Plan and to generally oversee the voting process.  The following materials shall constitute the solicitation package (the "Solicitation Package"):

• This Disclosure Statement, including the Plan and all other Exhibits annexed thereto;

• The Bankruptcy Court order approving this Disclosure Statement (the "Disclosure Statement Order");

• The notice of, among other things, (i) the date, time, and place of the hearing to consider Confirmation of the Plan and related matters and (ii) the deadline for filing objections to Confirmation of the Plan (the "Confirmation Hearing Notice");

• One or more Ballots, as applicable, to be used in voting to accept or to reject the Plan, and applicable voting instructions (the "Voting Instructions");

• A pre-addressed return envelope; and

• Such other materials as the Bankruptcy Court may direct or approve.

The Plan Proponents, through the Voting Agent, will distribute the Solicitation Package in accordance with the Disclosure Statement Order.  The Solicitation Package is also available at the Debtors' restructuring website at https://www.donlinrecano.com/Clients/orf/Index.

Prior to the Confirmation Hearing, the Plan Proponents intend to file a Plan Supplement that includes, among other things, (i) the qualifications and proposed compensation of and other disclosures regarding the Plan Administrator; and (ii) any executory contracts and unexpired leases designated for assumption by the Debtors.  As the Plan Supplement is updated or otherwise modified, such modified or updated documents will be made available on the Debtors' restructuring website at https://www.donlinrecano.com/Clients/orf/Index.

If you are the Holder of a Claim and believe that you are entitled to vote on the Plan, but you did not receive a Ballot or your Ballot is damaged or illegible, or if you have any questions concerning voting procedures, you should contact the Voting Agent by writing to Donlin, Recano & Company, Inc. Re: Freedom Communications, Inc., et al. Attn: Voting Department; PO Box 199043 Blythebourne Station; Brooklyn, NY 11219; Email: [DRCVote@DonlinRecano.com].  If the reason that you did not receive a Ballot is because your Claim is subject to a pending claim objection and you wish to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes by [DATE], 2020, or you will not be entitled to vote to accept or reject the Plan.

**THE DEBTORS AND THE LIQUIDATING DEBTORS, AS APPLICABLE, RESERVE THE RIGHT THROUGH THE CLAIM OBJECTION PROCESS TO OBJECT TO ANY CLAIM.**

### 3.    Voting Instructions and Procedures

All votes to accept or reject the Plan must be cast by using the Ballots enclosed with the Solicitation Packages.  No votes other than ones using such Ballots will be counted, except to the extent the Bankruptcy Court orders otherwise.  The Bankruptcy Court has fixed [DATE], 2020 as the Voting Record Date for the determination of the Holders of Claims who are entitled to (i) receive a Solicitation Package and (ii) vote to accept or reject the Plan.  The Voting Record Date and all of the Plan Proponents' solicitation and voting procedures shall apply to all of the Debtors' Creditors and other parties in interest.

If you are a Holder of a Claim in a Class that is entitled to vote, after carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot, you are asked to indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the accompanying Ballot.

**The deadline to vote on the Plan is [DATE], 2020 at 5:00 p.m. (prevailing Pacific Time) (the "Voting Deadline").**

In order for your vote to be counted, your Ballot must be properly completed, in accordance with the Voting Instructions on the Ballot, and received no later than the Voting Deadline at the following address, if by First-Class Mail:

**Freedom Communications, Inc. Ballot Processing
c/o Donlin, Recano & Company, Inc.
Attn: Voting Department
P.O. Box 192016 Blythebourne Station
Brooklyn, NY 11219**

Ballots sent by hand delivery or overnight mail should be sent to the following address:

**Freedom Communications, Inc. Ballot Processing**
**c/o Donlin, Recano & Company, Inc.**
**Attn: Voting Department**
**6201 15th Avenue**
**Brooklyn, NY 11219**

Holders of Claims in Class 3 (General Unsecured Claims) and Class 4 (PBGC Unsecured Claims) as of the Voting Record Date are entitled to vote to accept or reject the Plan, and they may do so by completing the appropriate Ballots and returning them in the envelope provided to the Voting Agent so as to be actually received by the Voting Agent by the Voting Deadline. Each Holder of a Claim must vote its entire Claim within a particular Class either to accept or reject the Plan and may not split such votes. If multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last timely received, properly executed Ballot will be deemed to reflect that voter's intent and will supersede and revoke any Ballot previously received. The Ballots will clearly indicate the appropriate return address. It is important to follow the specific instructions provided on each Ballot.

Unless otherwise provided in the Voting Instructions accompanying the Ballots, the following Ballots will not be counted in determining whether the Plan has been accepted or rejected:

- Any Ballot that fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection of the Plan;

- Any Ballot received after the Voting Deadline, except if the Debtors have granted an extension of the Voting Deadline with respect to such Ballot or by order of the Bankruptcy Court;

- Any Ballot containing a vote that the Bankruptcy Court determines was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

- Any Ballot that is illegible or contains insufficient information to permit the identification of the Claim Holder;

- Any Ballot cast by a Person or Entity that does not hold a Claim in the voting Class with respect to which the Ballot is cast; and

- Any Ballot without an original signature.

Any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. If more than one timely, properly completed Ballot is received, only the last timely received Ballot will be counted for purposes of determining whether the requisite acceptances have been received. Any party who has delivered a properly completed Ballot for the acceptance or rejection of the Plan that wishes to withdraw such acceptance or rejection rather than changing its vote may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must

(i) contain the description of the Claims to which it relates and the aggregate principal amount represented by such Claims, (ii) contain the original signature of the withdrawing party, (iii) contain a certification that the withdrawing party owns the Claims and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be actually received by the Voting Agent prior to the Voting Deadline.

**ALL BALLOTS ARE ACCOMPANIED BY VOTING INSTRUCTIONS.   IT IS IMPORTANT THAT THE HOLDER OF A CLAIM IN THE CLASSES ENTITLED TO VOTE FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED WITH EACH BALLOT.**

In addition, for all Holders of Class 3 Claims (General Unsecured Claims) and Class 4 (PBGC Unsecured Claims), the Ballot contains an option to "opt-out" of certain releases provided under the Plan.  The Plan provides that each Holder of a Claim that votes to accept, or is deemed to accept, the Plan is considered a "Releasing Creditor" under the Plan and is bound by certain releases provided in Article IX thereof, and as set forth below, other than any Holder of a Class 3 Claim or a Class 4 Claim that affirmatively elects on its Ballot to opt out of being a Releasing Creditor.  Each Class 3 and Class 4 Ballot will contain the text of the proposed release and instructions to each Holder of a Class 3 or a Class 4 Claim regarding the option to opt-out of the release.

If you have any questions about (i) the procedure for voting your Claim, (ii) the Solicitation Package that you have received, or (iii) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy of the Plan, this Disclosure Statement, or any appendices or Exhibits to such documents, please contact the Voting Agent by writing to Donlin, Recano & Company, Inc. Re: Freedom Communications, Inc., et al., Attn: Voting Department; PO Box 199043, Blythebourne Station; Brooklyn, NY 11219.  Copies of the Plan, Disclosure Statement, Plan Supplement and other documents filed in these Chapter 11 Cases may be obtained free of charge on the Voting Agent's website at https://www.donlinrecano.com/Clients/orf/Index.  Documents filed in these Chapter 11 Cases may also be examined between the hours of 9:00 a.m. and 4:00 p.m., prevailing Pacific Time, Monday through Friday (excluding federal holidays), at the Office of the Clerk of the Bankruptcy Court, 411 West Fourth St., Santa Ana, California.

The Voting Agent will process and tabulate Ballots for the Classes entitled to vote to accept or reject the Plan and will file a voting report (the "Voting Report") in accordance with the Disclosure Statement Order.  The Voting Report will, among other things, describe every Ballot that does not conform to the Voting Instructions or that contains any form of irregularity, including, but not limited to, those Ballots that are late, illegible (in whole or in material part), unidentifiable, lacking signatures, lacking necessary information, or damaged.

**THE PLAN PROPONENTS URGE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE TO TIMELY RETURN THEIR BALLOTS AND TO VOTE TO ACCEPT THE PLAN BY THE VOTING DEADLINE.**

### 4.    Confirmation Hearing and Deadline for Objections to Confirmation

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing to commence on [DATE], 2020 at [TIME] (prevailing Pacific Time), before the Honorable Mark S. Wallace, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Central District of California, 411 West Fourth St., Courtroom 6C, Santa Ana, California 92701.  The Confirmation Hearing Notice, which sets forth the time and date of the Confirmation Hearing, has been included along with this Disclosure Statement.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made in the agenda for the Confirmation Hearing or at the Confirmation Hearing or any adjournment thereof.

Objections to Confirmation of the Plan must be filed and served on the Plan Proponents and certain other entities, all in accordance with the Confirmation Hearing Notice, so that they are actually received by no later than [DATE], 2020 at [TIME] (prevailing Pacific Time).  Unless objections to Confirmation of the Plan are timely served and filed in compliance with the Disclosure Statement Order, which is attached to this Disclosure Statement, they may not be considered by the Bankruptcy Court.

## III.    GENERAL INFORMATION ABOUT THE DEBTORS AND THE CASES

### A.    Business Overview and Background

Prior to the Petition Date, the Debtors, headquartered in Santa Ana, California, were collectively a privately owned information and entertainment company consisting of print publications and interactive businesses.  The Debtors' portfolio included daily and weekly newspapers, magazines, and other specialty publications.  *The Orange County Register* (the "OC Register") was the Debtors' flagship newspaper.  In addition, the Debtors operated an interactive business, which offered website complements, as well as digital and mobile products, to their print publications.  The Debtors also had two real property holdings, which were held in SPV II (the Santa Ana Property (defined below) and SPV VI (the Riverside Property (defined below).

Founded in 1935 by R.C. Hoiles, the Debtors' enterprise was operated as a family-owned business until 2004, when private equity firms, The Blackstone Group and Providence Equity Partners, Inc. and certain affiliates, acquired an approximate 40% share in the company for approximately $460 million (which share thereafter increased to approximately 48%), with the remaining shares being held by the Hoiles family.  On September 1, 2009, the company filed chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Delaware, and exited bankruptcy in April 2010.

Thereafter, in 2012, the company sold its entire broadcast television division to a third party, leaving the company essentially free of debt.  Commencing in 2012, the company began selling the majority of its newspaper portfolio.  In July 2012, Freedom Communications Holdings, Inc. ("FCHI") completed a merger with 2100 Trust, LLC ("2100 Trust"), an entity established by investor Aaron Kushner, and 2100 Freedom Inc. At the effective time of the merger, 2100 Freedom Inc. was merged into FCHI, with FCHI surviving the merger. All outstanding shares of FCHI were

cancelled and the outstanding shares of 2100 Freedom Inc. became the new outstanding shares of FCHI, with FCHI becoming a wholly-owned subsidiary of 2011 Trust. After the merger, 2100 Trust changed its name to 2100 Freedom, Inc. This transaction marked the final transaction by the company following its emergence from bankruptcy in 2010 and subsequent divestitures of all of its remaining business units.  Following the merger, the Debtors continued to operate under the umbrella name "Freedom Communications."  As of the close of the transaction in July 2012, the Debtors' businesses consisted of its flagship newspaper, the OC Register, and a community newspaper portfolio.

With a new focus on the OC Register and related newspaper portfolio, commencing in the last quarter of 2012, the Debtors began a period of expansion and redirection, including increasing newsroom and sales staffing, increasing customer realization and retention programs, acquiring magazine publications and launching new daily publications and expanding coverage to new sectors, including business, arts, academia, politics, fashion, philanthropy, faith, family, home, transportation and food.  Since 2012, the Debtors took the OC Register from being the 20th largest newspaper in the United States to being the 8th largest as measured by circulation, and sought to strategically sell and acquire certain assets to allow the Debtors to focus their efforts on strengthening their core business and managing cost efficiency.

Starting at the end of 2012 and continuing through 2014, the Debtors began to sell certain of their smaller community newspapers. The Debtors also sold real property holdings in Colorado and Irvine and Victorville, California.  As part of its targeted growth strategy, in November 2013, the Debtors acquired substantially all of the assets of the Press Enterprise newspaper group, including *The Press-Enterprise* and *La Prensa* (which later became *Unidos*, a Spanish language newspaper).

### B.    Circumstances Leading to Chapter 11 Filing

The Debtors' bankruptcy filing was attributable to various factors including falling advertising revenue, competition from internet-based advertising, and volatility in newsprint prices. In an effort to mitigate declining revenue, prepetition, the Debtors had made cost reductions by consolidating operational functions, introducing new business models and outsourcing distribution, printing and customer care operations.  However, despite the Debtors' best efforts to increase revenues and decrease expenses, the Debtors were unable fully achieve their financial goals to such a degree that would enable them to continue to operate under their current capital structure. Accordingly, the Debtors made the decision to sell all of their assets and operations for the benefit of all parties through the chapter 11 process.  On November 1 and 2, 2015, the Debtors filed chapter 11 petitions for relief in the United States Bankruptcy Court, Central District of California (Santa Ana Division).

### C.    Prepetition Secured Debt

As of the Petition Date, the Debtors had approximately $51.2 million of allegedly secured debt asserted by certain entities, including the Prepetition Loan Parties (defined and discussed below) in the amount of approximately $19.46 million, and the PBGC in the amount of approximately $15.46 million.  As of the Petition Date, substantially all of the Debtors' assets were pledged to secure their obligations to creditors.

Specifically, certain Debtors, as borrowers or guarantors, were parties to a 2013 Credit Guaranty Agreement (as amended, together with related agreements and documents, the "Prepetition Credit Documents") with Silver Point, as administrative agent and collateral agent, and certain lenders (collectively, the "Prepetition Loan Parties"). As of the Petition Dates, the Prepetition Loan Parties asserted secured claims against the Debtors in the principal sum of not less than $12 million, plus accrued interest, charges, fees, expenses, and a "make-whole amount" of more than $5.2 million. The Debtors, the Committee and the Prepetition Loan Parties resolved all disputes relating to the Prepetition Loan Parties' secured claims, which were paid in full by the Debtors after the closing of the Sale (discussed below).

### D.     PBGC Claims

The PBGC, on behalf of The Retirement Plan of Freedom Communications, Inc. (the "Pension Plan"), filed with the California Secretary of State notices of federal lien under I.R.C. sec. 412(n) and/or sec. 430(k), to secure obligations owed by the Debtors to the PBGC based on missed Pension Plan contributions (including interest thereon) totaling more than $15.4 million. In addition, the PBGC now holds an approximately $145 million general unsecured Class 4 claim arising out of the underfunding of the Pension Plan.

## IV.    THE CHAPTER 11 CASES

### A.     First Day Orders

On November 5, 2015, upon the Debtors' motions, the Bankruptcy Court granted certain "first day" relief to the Debtors pursuant to which the Debtors were authorized to continue to operate their businesses notwithstanding the pendency of the Chapter 11 Cases, including orders authorizing the Debtors to pay and honor certain prepetition employee related obligations, maintaining their existing cash management systems, and granting certain other standard administrative relief. [Docket Nos. 41-47].

### B.     Cash Collateral / DIP Financing

Recognizing the need to access cash, the Debtors and their advisors engaged in discussions with the Debtors' primary secured creditor asserting an interest in the Debtors' cash collateral – Silver Point, as prepetition agent of the Prepetition Loan Parties – regarding the terms of the Debtors' consensual continued use of cash collateral. In addition, the Debtors engaged in discussions with Silver Point (as well as other potential financing sources) regarding the terms of debtor-in-possession (DIP) financing to allow the Debtors to operate pending the contemplated sale of their businesses. As a result of such negotiations, the Debtors sought and obtained from the Court interim and final orders [Docket Nos. 47 & 239] authorizing (as applicable) postpetition financing consisting of a senior secured term loan credit facility in the aggregate principal amount not to exceed $4.5 million, plus the amount necessary to consummate a refinancing of the Prepetition Loan Parties' secured claims. The Court's orders granted, in part, first priority liens, in addition to superpriority claims, in favor of Silver Point, the DIP agent, for the benefit of the DIP lenders on all prepetition and postpetition property of the Debtors' Estates and all proceeds thereof, excluding a lien on avoidance actions and avoidance claim proceeds. As a result of negotiations among the Committee, the Debtors, the DIP lenders and prepetition secured creditors, the originally proposed DIP facility was modified in a number of respects (as reflected in the final order), including an

increase in the amount of new money available under the DIP facility from $3 million to $4.5 million to allow for the cases to be able to operate through the contemplated end of the sale process in March 2016 without going cash negative, and the elimination of any proposed liens for Silverpoint or the PBGC on the Estates' avoidance actions. During the pendency of the Chapter 11 Cases, prior to the filing of the Plan, the DIP lenders' claims were paid or otherwise satisfied in full by the Debtors, including payment with cash proceeds from the Sale (defined and discussed below).

### C.    Payment of Prepetition Commission Obligations

The Debtors sought on an emergency basis an order authorizing the payment of prepetition commission obligations for five employees exceeding the statutory cap of (then) $12,475 for each employee under Bankruptcy Code section 507(a)(4). In their motion, the Debtors explained that they had recently lost an important sales representative to a competitor, and that they needed to ensure that the affected employees felt confident that their compensation would not be impacted by the bankruptcy filings. Subsequent to the filing of the motion, the Debtors withdrew their request to pay one employee his commission based on issues raised by the U.S. Trustee. The Court entered orders [Docket Nos. 219 & 277] authorizing the payment of prepetition commission obligations to the other four employees, which exceeded the statutory cap amounts by approximately $120,000 in the aggregate.

### D.    Debtors' Customer, Subscriber and Advertiser Programs

In a "first day" motion [Docket No. 14], the Debtors requested and subsequently received authority (subject to certain modifications) to honor their prepetition obligations under their customer related programs and practices (designed to develop and sustain the Debtors' positive reputations in the marketplace) to customers, subscribers, and advertisers in the ordinary course of business as follows [Docket Nos. 42 & 240]:

| Program/Obligation | Authorized (estimated prepetition amounts unless otherwise noted) |
|---|---|
| Refunds | $565,683 |
| Delivery Providers | $790,000 (maximum cap; subject to Committee consent) |
| Prepaid Subscriptions | $5,521,000 |
| Prepaid Advertising | $1,933,000 |
| Postage Obligations | $11,500 |
| Advertising Infrastructure & Brokered Ads | $1,247,000 (maximum cap; subject to Committee consent) |
| Community Partners Commissions | $236,000 |
| Credit Card Fees | $65,000 |
| Customer Service Providers | $112,000 |
| QChief Customer Service Provider | $3,000 |
| Outside Contractors | $49,000 |
| Staffing Companies | $500,000 (maximum cap; subject to Committee consent) |
| **Totals** | **$11,033,183.00** |

### E.    The Sale of Substantially All of the Debtors' Assets

Following a review of strategic alternatives for their businesses, the Debtors, in consultation with their advisors, determined that maximizing the value of their estates would be best accomplished through an orderly sale, free and clear of liabilities, of substantially all of their assets, comprised mainly of the Debtors' print publications, interactive businesses, real property holdings, accounts receivable, and contracts and leases.  Upon the Debtors' motion filed in January 2016, the Court approved certain bidding, auction and sale procedures pursuant to an order entered on February 5, 2016 [Docket No. 371].

Prior to and following the entry of the bidding procedures order, the Debtors – with the active involvement of their advisors (including GlassRatner, Mosier & Co., Inc. and FTI Consulting) and the ongoing input of the Committee and the PBGC – continued to market the Debtors' assets to potential buyers.  Among other efforts, FTI reached out to over 250 parties that FTI and the Debtors believed would be interested in purchasing either the business assets and/or the real estate holdings of the Debtors, and negotiating nondisclosure agreements with 35 interested parties.  Subsequently, two days prior to the bid deadline, in March 2016, the Debtors reached a stalking horse agreement with MediaNews Group, Inc. d/b/a Digital First Media ("DFM"), providing for a purchase price of $45.5 million, less an estimated $2.2 million for net adjustments for purchased cash, escrow for cure costs, and contingent consideration based on collected accounts receivable.  Two qualified overbids were received, including one by Orange County Media, LLC, ("OCM") a subsidiary of Tribune Publishing Co. ("Tribune"), and an auction was held on March 16, 2016.  At the conclusion of the auction, which included five rounds of bidding, OCM was selected by the Debtors as the successful bidder, and DFM was selected as the backup bidder.  It became known prior to the auction that the Department of Justice (the "DOJ") was considering seeking to enjoin the Tribune's ability to consummate the sale transaction, but the Debtors believed that they had negotiated with the Tribune to mitigate the risk associated with the Tribune being enjoined from consummating the sale. However, when attempting to work through the revisions to the Tribune's purchase agreement immediately following the auction, it became clear that the Tribune was unwilling to provide to the Debtors the protections that the Debtors and consultation parties believe they had received during the auction process.

On March 17, 2016, the parties learned that the DOJ had commenced an action against the Tribune seeking to enjoin the Tribune from consummating the sale (the "DOJ Action").  Given the risks associated the DOJ's efforts to enjoin the Tribune, and the Tribune's desire to push that risk entirely onto the Debtors, the Debtors, following consultation with the Committee and other consultation parties, determined that the Tribune's bid was no longer the highest and best bid. Consequently, the Debtors selected DFM as the successful bidder.  As set forth in the DFM purchase agreement, as amended, the "Base Purchase Price" for substantially all of the Debtors' assets was $49,800,000 in cash.  The Court entered an order on March 30, 2016 [Docket No. 562] approving the sale of substantially all of the Debtors' assets to DFM (the "Sale").  The Sale subsequently closed, with the net cash proceeds remitted to the Debtors.

### F.    The Silver Point Settlement

The Debtors, the Committee and Silver Point Finance, as the DIP agent for the DIP Lenders and as the prepetition agent for the Prepetition Loan Parties, entered into a settlement in March 2016, pursuant to which the claims and defenses asserted by the Committee with respect to the DIP

Lenders' claims and the Prepetition Loan Parties' claims were resolved.  Under the settlement, among other provisions, (i) the Estates would receive $1.5 million in cash proceeds obtained from the Sale of substantially all of the Debtors' assets that would otherwise be recoverable by the DIP Lenders; (ii) the DIP Lenders' secured claims would be reduced by $2.5 million; and (iii) the Committee would stipulate to be bound by the stipulations and admissions contained in the DIP Order and stipulate that the Committee's challenge period expired and all potential challenges to the DIP Lenders' and Prepetition Loan Parties' respective claims and liens (including the Committee's assertions that the "make-whole amounts" were unenforceable under state law) were released.  This settlement was approved by the Court pursuant to an order entered on March 23, 2016 [Docket No. 539].  After the closing of the Sale, the DIP Claims and the Prepetition Loan Parties' claims were paid in full or otherwise satisfied by the Debtors.

### G.    The Committee Action

#### (1)    Commencement and Prosecution of the Committee Action

On August 31, 2016, the Debtors and the Committee entered into a stipulation [Docket No. 858] (the "Standing Stipulation") whereby the Debtors granted the Committee "exclusive leave, standing, and authority to commence, prosecute, and settle any Insider Estate Causes of Action with full rights and privileges and in the stead of the Debtors, with any and all recoveries to be for the benefit of" the Estates.  The Bankruptcy Court approved the Standing Stipulation on September 6, 2016 [Docket No. 861].

Pursuant to the Standing Stipulation, in January 2017, the Committee commenced in the Bankruptcy Court Adversary Proceeding 8:17-ap-01012 (the "Committee Action") against Aaron Kushner (the Debtors' former CEO), Eric Spitz (the Debtors' former President), Larry Chinn (principal of Financial Institution Consulting Corp. ("FICC")), and certain other defendants.  As set forth in the Committee's complaint, the Committee asserted on behalf of the Debtors (among other things) a breach of fiduciary duty claim against Kushner and Spitz, and an aiding and abetting breach of fiduciary duty claim against Chinn, FICC and certain other defendants.  The Committee alleged that Kushner and Spitz's investment decisions on behalf of the Pension Plan directly impacted the adverse funding status of the Pension Plan, and thus determined (among other things) the Debtors' contribution obligations to the Pension Plan and, ultimately, the Debtors' liability to PBGC and other creditors.  Effective as of March 31, 2016, the Pension Plan was terminated by agreement and PBGC became the statutory trustee of the Pension Plan.  More specifically, the Committee alleged that Kushner and Spitz negligently invested the Pension Plan's assets in a life insurance program designed and promoted by Chinn, FICC and other defendants.  Prior to the related settlements discussed below, the Committee Action materially progressed, including the parties participating in a mediation, document productions having been undertaken, and numerous depositions having been conducted.  As explained below, the applicable parties reached settlements with defendants Kushner, Spitz and Chinn and the PBGC, thereby providing the Estates ultimately with millions of dollars in cash (to pay Administrative Expenses and fund a Chapter 11 plan) and resolving the Estates' and Committee's claims in the Committee Action other than their claims against defendant Richard Covelli and his related entities, which were assigned to the PBGC pursuant to the PBGC Settlement.

#### (2)    The Chinn Settlement

The Committee, on behalf of the Debtors, Larry Chin (a defendant in the Committee Action), Financial Institution Consulting Corp. ("FICC") (Mr. Chinn's related entity), the PBGC, and certain other parties entered into a settlement in June 2018, pursuant to which the parties resolved the claims asserted by the Committee and the PBGC against Chinn and FICC in the Committee Action. A total settlement payment of $400,000 would be paid to the Committee and PBGC, funded by AAIC (Chinn's insurance company) under a "burning" policy (a policy that is depleted dollar for dollar for costs of defense). Absent the settlement, continued litigation would further deplete the coverage available under the AAIC policy as well as increase the expense to the Debtors' estates. Under the settlement, Chinn and FICC also agreed to cooperate with the Committee and PBGC in the prosecution of their respective claims against the remaining defendants by, among other things, producing relevant documents and voluntarily sitting for interviews. The Bankruptcy Court approved this settlement pursuant to an order entered on August 1, 2018 [Docket No. 1517].

### (3)    The Kushner/Spitz Settlement

The Committee, Aaron Kushner and Eric Spitz (defendants in the Committee Action), and the PBGC entered into a settlement in August 2019, pursuant to which the parties resolved the breach of fiduciary duty and other claims asserted by the Committee against Kushner and Spitz in the Committee Action, and ERISA claims related to investments made by the Pension Plan asserted by the PBGC against Kushner and Spitz.

The settlement provided for a $7,835,000 settlement payment to the Committee and PBGC (the "Kushner/Spitz Settlement Payment"), funded by the settling defendants' professional liability insurers with the remaining amount of coverage available under two "burning" policies (policies that have been or would be (absent settlement) depleted dollar-for-dollar for costs of defense). The Committee and PBGC determined, based on financial disclosures provided by Kushner and Spitz, that the amount of insurance coverage available for a settlement with the settling defendants, without further litigation, exceeds any amount that either the Committee or PBGC could collect from the settling defendants after trial. The settlement payment would be deposited in Committee counsel's trust account, pending a separate allocation agreement to be entered into between the Committee and PBGC. The parties' settlement would preserve the most likely source of any recovery against Kushner and Spitz (the remaining amount of insurance coverage), while at the same time allowing the Debtors' estates to avoid any additional expense, delay or uncertainty related to further litigation with Kushner and Spitz and/or efforts to collect on any judgments entered in favor of the Committee after trial. The Bankruptcy Court approved the settlement pursuant to an order entered on September 25, 2019 [Docket No. 1584].

### (4)    The PBGC Settlement

The Committee and the PBGC entered into a settlement (the "PBGC Settlement") in November 2019 relating to, among other matters, the division of the Kushner/Spitz Settlement Payment and other recoveries between the Estates and the PBGC. The PBGC Settlement is a "best of both worlds" solution for the Debtors and the Estates and their creditors, including the PBGC and the Debtors' other unsecured creditors. The PBGC Settlement would be funded with the $8,235,000 of proceeds received or to be received in connection with the settlement agreements executed to date in the Committee Action and other judicial proceedings by the PBGC (including the Kushner/Spitz Settlement Payment), with one-third ($2,745,000) to be paid to the PBGC, one-third ($2,745,000) to be paid to the Estates as consideration for the legal services provided by Committee counsel in

connection with the Committee Action, and the remaining one-third ($2,745,000) to be paid to the Estates. Thus, the PBGC Settlement resulted in a total payment of $5,490,000 to the Estates.

As part of the PBGC Settlement, the Committee assigned the claims asserted in the Committee Action against defendant Richard Covelli and his related entities to the PBGC, which will now has exclusive authority to prosecute and/or settle said claims, and any funds recovered by the PBGC on account of said claims belong exclusively to the PBGC. The Estates will avoid incurring further litigation expense in connection with the Committee Action (the Committee has entered into settlement agreements with all other defendants in the Committee Action), and the PBGC, which has the resources available to pursue the litigation against Covelli to a final judgment (if necessary), will be able to continue to seek redress for the harm suffered by the Debtors and their Pension Plan as a result of Covelli's alleged misconduct. Further, the PBGC agreed to waive any right to receive further distributions from the Debtors unless and until (i) all administrative and priority claims are paid in full, and (ii) a distribution of $1,000,000 is made to the Debtors' other general unsecured creditors. In the event that both of those conditions are satisfied, the PBGC would then be entitled to share ratably in any additional distributions (i.e., distributions over and above the $1,000,000 distribution referenced above) made to general unsecured creditors. Because the PBGC is the largest unsecured creditor of the Debtors, with in excess of $174,000,000 of unpaid claims filed in the Chapter 11 Cases, this aspect of the PBGC Settlement dramatically increases the likelihood that the Debtors' other unsecured creditors will receive distributions from the Estates. Moreover, on February 6, 2020, Covelli filed a chapter 7 case before the United States Bankruptcy Court for the Western District of North Carolina. The PBGC's action against Covelli has been stayed pending the outcome of Covelli's chapter 7 case.

As explained by the Committee in its motion for approval of this settlement, the PBGC Settlement provides for a total payment of $5,490,000 to the Estates, of which $2,745,000 will be compensation to the Estates for the three years of hard-fought litigation and resulting expense incurred by Committee counsel in connection with its investigation and prosecution of the Committee Action. The aggregate $5,490,000 payment will facilitate the Debtors in continuing to administer the Chapter 11 Cases and confirming a Chapter 11 plan for the benefit of the Estates and their creditors. The Bankruptcy Court entered an order approving the PBGC Settlement pursuant to an order entered on January 13, 2020 [Docket No. 1609].

### H.    Claim Bar Dates

The Debtors filed a motion and obtained an order [Docket No. 355] setting the following case bar dates:

General Bar Date for proofs of claim:  April 1, 2016.

Governmental Bar Date:  The later of the (i) general bar date or (ii) April 29, 2016 for claim against Debtors who file petitions on November 1, 2015 and April 30, 2016 for claims who filed petitions on November 2, 2016.

Rejection Bar Date:  The later of (i) the general bar date or (ii) 30 days after the date of entry of an order authorizing the rejection of such contract or lease or any automatic rejection of such contract or lease.

Avoidance Bar Date:  The later of the (i) general bar date or (ii) 30 days after the entry of a judgment avoiding the transfer.

Supplemental Bar Date:  In the event the Debtors amend their schedules, the supplemental bar date is the later of the (i) general bar date or (ii) 30 days after the Debtors provide notice to the holder of the amendment.

## I.    Incentive and Severance Programs

The Debtors filed a motion seeking approval of an employee incentive program for key members of the Debtors' management (the "KEIP") based on obtaining certain value thresholds in connection with the sale of substantially all of the Debtors' assets, and an employee severance program (the "ESP") providing for payment of severance pay to associate employees and key executives (including one insider executive) of the Debtors in the event of a termination of employment post-January 1, 2016.

Specifically, under the KEIP, the key seven executives received payouts from a bonus pool between $500,000 and $1,500,000 (maximum) only upon the conclusion of a qualifying sale resulting in an aggregate value to the Debtors' estates of at least $42 million (the "KEIP Payment Event") (which condition was satisfied upon the Sale described above).  Under the ESP, the associate employees were provided with two weeks of severance in the case of a termination of employment post-January, 2016.  Based upon the current salary amounts, the payments for individual associate employees ranged from $400 to $6,632 (based upon on two weeks of pay).  For the seven executives eligible for the ESP, the maximum payout was approximately $51,000 (based on two weeks of pay), with a mean payout of approximately $7,300.  The Court approved the KEIP and the ESP pursuant to an order entered on March 2, 2016 [Docket No. 441].

## J.    Extension of Exclusivity Periods for Filing a Chapter Plan and for Soliciting Acceptances to the Plan

The Debtors, and later with the Committee, filed multiple motions and received orders extending the Debtors' exclusivity deadlines for filing a plan and for soliciting acceptances thereof to, most recently, August 26, 2017 and October 25, 2017, respectively.  The Debtors' plan filing and solicitation exclusivity have now expired.  No other plans, as alternatives to the Debtors' and Committee's proposed Plan, have been filed.

## K.    Retention of Debtors' Professionals

The Debtors employed (i) initially Lobel Weiland Golden Friedman LLP ("LWGF") as bankruptcy counsel [Docket No. 238] and subsequently Shulman Hodges & Bastian LLP ("SHB")[4] as bankruptcy counsel effective as of March 1, 2018 [Docket No. 1499][5]; (ii) GlassRatner Advisory & Capital Group LLC ("GlassRatner") as financial advisors, with Brad Smith, Senior Managing Director of GlassRatner, serving as the Debtors' Chief Restructuring Officer as of April 1, 2016 [Docket Nos. 262 & 618]; (iii) Rutan & Tucker, LLP as special corporate counsel [Docket No. 254]; (iv) Mosier & Co., Inc. as the Debtors' independent sale representative in all aspects related to the Sale proceedings (to ensure a fair and unbiased process) [Docket No. 276]; (v) FTI Consulting, Inc. as investment bankers [Docket No. 321]; and (vi) Squar Milner as accountants [Docket No. 364].

---

[4] SHB is now called Shulman Bastian Friedman & Bui LLP.

[5] As of the Petition Date, Alan Friedman was with the LWGF firm.  Subsequently, during the Chapter 11 Cases, Mr. Friedman left LWGF and joined the SHB firm, and continues to represent and advise the Debtors.

### L.    Appointment of Committee and Retention of Committee Professionals

On November 10, 2015, the U.S. Trustee appointed the Committee.  The initial members of the Committee were the Associated Press, Pension Benefit Guaranty Corporation, Electronic Business Solutions, Newscycle Solutions, Inland Empire Paper Co., Ponderay Newsprint Co., and ACI California, LLC [Docket No. 77].  Electronic Business Solutions and ACI California, LLC both subsequently resigned from the Committee.

The Committee retained (i) Pachulski Stang Ziehl & Jones LLP ("PSZ&J") as bankruptcy counsel and (ii) Alvarez & Marsal North America ("Alvarez") as financial advisors.  On December 23, 2015 and December 30, 2015, respectively, the Bankruptcy Court entered orders authorizing the Committee to retain PSZ&J and Dundon [Docket Nos. 261 & 279].  The Committee also employed Elucidor, LLC as its expert consultant primarily in connection with the Kushner, et al. Action (discussed below) pursuant to an order entered on June 1, 2018 [Docket No. 1508].

### M.    Schedules, Statements of Financial Affairs

In December 2015, each of the Debtors filed its schedules of assets and liabilities and statements of financial affairs with the Bankruptcy Court, with certain amendments filed by certain of the Debtors in January 2016 and August 2016.  The Debtors reserve all rights to make further amendments to the schedules of assets and liabilities and statements of financial affairs.  Copies of the Debtors' Schedules are available at www.donlinrecano.com/Clients/fc/Static/SOALS.

### N.    Prosecution of Avoidance Actions

The Committee commenced and prosecuted over 50 separate avoidance actions in the Bankruptcy Court, which ultimately resulted in approximately $385,000 in recoveries (face amount).

## V.    SUMMARY OF THE JOINT CHAPTER 11 PLAN

This section provides a summary of the structure and means for implementation of the Plan and the classification and treatment of Claims and Interests under the Plan and is qualified in its entirety by reference to the Plan (as well as the Exhibits thereto and definitions therein).

The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statement of such terms and provisions.

The Plan itself and the documents referred to therein control the actual treatment of Claims against and Interests in the Debtors under the Plan and will, upon the occurrence of the Effective Date, be binding upon all Holders of Claims against and Interests in the Debtors, the Debtors' Estates, the Liquidating Debtors, all parties receiving property under the Plan, and other parties in interest.  In the event of any conflict, inconsistency, or discrepancy between this Disclosure Statement and the Plan, the Plan Supplement, or any other operative document, the terms of the Plan, Plan Supplement, and/or such other operative document, as applicable, shall govern and control; provided that, in any event, the terms of the Plan shall govern and control over all other related documents.

### A.   Purpose and Effect of the Plan

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of its constituents. Chapter 11 also allows a debtor to formulate and consummate a plan of liquidation.  A plan of liquidation sets forth the means for satisfying claims against and interests in a debtor.  Confirmation of a plan of liquidation by a bankruptcy court makes the plan binding upon the debtor and any creditor of or interest holder in the debtor, whether or not such creditor or interest holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan.

The Plan provides for the distribution of the Debtors' assets to various Creditors as contemplated under the Plan and for the wind-up the Debtors' corporate affairs.  More specifically, the Plan provides that a Plan Administrator will administer and liquidate all remaining property of the Debtors, including Retained Rights of Action.

Under the Plan, with the exception of certain Claims against the Debtors that are not required to be classified, Claims against, and Interests in, the Debtors are divided into certain Classes according to their relative seniority and other criteria.  If the Plan is confirmed by the Bankruptcy Court and consummated, the unclassified Claims and the Claims and Interests of the various Classes will be treated in accordance with the applicable provisions in the Plan and the Plan Administrator will make Distributions if and as provided in the Plan.  A general description of the unclassified Claims and the Classes of Claims and Interests created under the Plan, the treatment of those Claims and Interests under the Plan, and the property to be distributed under the Plan are described below.

### B.   Limited Substantive Consolidation

Solely for purposes of voting and distribution in connection with the Plan, pursuant to Section 5.2 of the Plan, the Claims and assets of the Debtors and their Estates shall be "substantively consolidated" into the Estate of the Debtor FCI.  This means that solely for such purposes, the separateness of the Debtors and the Estates will be ignored and all of the Debtors and all of the Estates will be treated as if they were one Debtor and one Estate.

More specifically, on and after the Effective Date, and except as otherwise set forth in the Plan, (i) all assets and liabilities of the Liquidating Debtors shall be treated as though they were pooled into the Liquidating Debtor FCI, (ii) each Claim filed or to be filed against any Debtor, as to which two or more Debtors are co-liable as a legal or contractual matter, shall be deemed filed as a single Claim against, and a single obligation of, the Debtors, (iii) all Claims held by a Debtor against any other Debtor shall be cancelled or extinguished, (iv) no distributions shall be made under the Plan on account of any Claim held by a Debtor against any other Debtor, (v) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any Claim based upon a guarantee thereof executed by any other Debtor shall be treated as one Claim against the substantively-consolidated Debtors, and (vi) any joint or several liability of any of the Debtors shall be one obligation of the substantively-consolidated Debtors and any Claims based upon such joint or several liability shall be treated as one Claim against the substantively-consolidated Debtors.

The Plan is predicated on the treatment of General Unsecured Claims without regard to the specific Debtor as to which the Holders of such Claims assert their Claims.  The form of substantive consolidation proposed under the Plan ultimately should benefit all Creditors.    Absent the

substantive consolidation proposed under the Plan, the process of disentangling the Estates of the Debtors may be time consuming, costly, and may fundamentally not be feasible or practicable.  For instance, allocating the relative value of each Debtor's assets that were sold in connection with the Sale would be challenging.  There is no clear apportionment of the value of the sold assets of each of the Debtors and the associated liabilities that were assumed.  Apportioning the value of the Debtors' assets and associated liabilities with respect to these and other assets would be a difficult task and could lead to prolonged, costly disputes or litigation.

Further, as permitted by section 1123(a)(5)(C) of the Bankruptcy Code, one basis for substantive consolidation in these Chapter 11 Cases is the vote of the Class of Creditors entitled to vote in favor of such treatment.  The Plan does not propose substantive consolidation to deprive a specific Creditor or group of Creditors of their rights while providing a windfall to other Creditors. Rather, given the limited amount available for distribution to Holders of General Unsecured Claims, and the expense involved in allocating the remaining assets and liabilities of the Debtors among the Estates, the recovery by Creditors will be maximized by consolidating the assets and liabilities of each of the Debtors.

Accordingly, the Plan Proponents believe that substantive consolidation of the Debtors, for purposes of voting and distribution in connection with the Plan, is in the best interest of the Debtors' Estates and parties in interest.

### C.    Estimated Recoveries

Despite the PBGC's conditional waiver of the right to share in the proceeds available to Class 3 Claims, the Plan Proponents note that in the event the estates' funds were distributed in a "straight line" waterfall there would insufficient funds to provide a distribution (even a minimal one) to Holders of Allowed Class 3 Claims.  Nonetheless, to facilitate such a recovery, certain professionals have agreed to limit their recovery on their (senior) Allowed Professional Fee Claims in order to free up funds that will find their way further down the waterfall to generate cash for distribution to Holders of Allowed Class 3 Claims.

The Plan Proponents estimate that Holders of Allowed General Unsecured Claims in these Chapter 11 Cases should recover approximately 0.5% to 5% of the total amount of their Allowed General Unsecured Claims.

The Plan Proponents have calculated the estimate of projected recoveries for Holders of General Unsecured Claims taking into account: (a) the total estimated amount of General Unsecured Claims (approximately $40 million), (b) the estimated costs of winding down the estate and amounts required to satisfy administrative, priority, and secured claims, and (c) the total estimated amount of Cash available for distributions to Holders of General Unsecured Claims.  This estimate assumes that (i) there are no significant future recoveries with respect to the Retained Rights of Action, (ii) the total amount of Allowed Claims is not significantly different from the current estimated amount of Claims based on the Schedules and the proofs of claims Filed against the Debtors, and (iii) that administrative, priority, and secured claims are resolved in a manner consistent with the Plan Proponents' current estimates.

## VI.    CERTAIN PLAN PROVISIONS

### A.    Classification and Treatment of Classified Claims and Interests

1.      **Summary.**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest (or a portion thereof) is classified in a particular Class only to the extent that the Claim or Interest (or a portion thereof) qualifies within the description of that Class.  A Claim or Interest (or a portion thereof) is also classified in a particular Class only to the extent that such Claim or Interest (or a portion thereof) is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.  Any postpetition payment by or on behalf of the Estates in respect of a Claim shall reduce the Allowed amount thereof.

2.      **Classification and Treatment of Claims and Interests.**

**Class 1 – Priority Non-Tax Claims.**

(a)      <u>Classification</u>: Class 1 consists of all Priority Non-Tax Claims.  The Debtors estimate that the aggregate amount of unpaid Priority Non-Tax Claims as of the Effective Date will be approximately $1,000,000.00.

(b)      <u>Treatment</u>: At the election of the Liquidating Debtors, each Holder of a Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, on or as soon as practicable after the later of (i) the Effective Date, or (ii) thirty (30) calendar days following the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, (a) a Cash payment from the Liquidating Debtors equal to the Allowed amount of such Claim, or (b) such other treatment as otherwise agreed by the Holder of such Claim and the Debtors or the Liquidating Debtors.

(c)      <u>Impairment/Voting</u>: Class 1 Priority Non-Tax Claims are Unimpaired by the Plan, and Holders of such Class 1 Priority Non-Tax Claims are therefore conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, Holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

**Class 2 – Miscellaneous Secured Claims.**

(a)      <u>Classification</u>: Class 2 consists of any Miscellaneous Secured Claims.  Although all Miscellaneous Secured Claims have been placed in one Class for the purposes of nomenclature, each Miscellaneous Secured Claim, to the extent secured by a Lien on any property or interest in property of any of the Debtors different from that securing any other Miscellaneous Secured Claim, shall be treated as being in a separate sub-Class for purposes of voting and receiving distributions under the Plan.  The Debtors estimate that the aggregate amount of unpaid Miscellaneous Secured Claims as of the Effective Date will be approximately $200,000.

(b)      <u>Treatment</u>: Except to the extent that a Holder of an Allowed Miscellaneous Secured Claim has been paid by the Debtors, in whole or in part, prior to the Effective Date, on the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, at the option of the Liquidating Debtors, in full and final satisfaction of such Miscellaneous Secured Claim, (i) each Allowed Miscellaneous Secured Claim shall be reinstated and Unimpaired in accordance with

section 1124 of the Bankruptcy Code,  or (ii) each Holder of an Allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Miscellaneous Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Miscellaneous Secured Claim, (y) the collateral securing such Allowed Miscellaneous Secured Claim, or (z) such other treatment as may be agreed to by the Holder of such Claim and the Debtors or the Liquidating Debtors.

(c)    Impairment/Voting: Class 2 Miscellaneous Secured Claims are Unimpaired by the Plan, and Holders of such Class 2 Miscellaneous Secured Claims are therefore conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, Holders of Class 2 Miscellaneous Secured Claims are not entitled to vote to accept or reject the Plan.

**Class 3 – General Unsecured Claims.**

(a)    Classification: Class 3 consists of all General Unsecured Claims, which does not include the PBGC Unsecured Claims.  The Debtors estimate that, ultimately, Allowed Class 3 General Unsecured Claims will total approximately $40 million.

(b)    Treatment: Except to the extent that a Holder of an Allowed Class 3 General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of the each Allowed Class 3 General Unsecured Claim, each Holder of an Allowed Class 3 General Unsecured Claim shall receive a Cash payment equal to its Pro Rata share of the Net Distributable Estate Assets on one or more dates (the "Class 3 Distribution Date(s))") as soon as reasonably practicable after (i) all General Unsecured Claims have been Allowed, Disallowed or otherwise resolved and (ii) the payment of (or reserves for) all Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims and Plan Expenses (unless the holder of the applicable claim agrees to other less favorable treatment); *provided, however,* in the event that an aggregate of at least $1,000,000 in Cash in Net Distributable Assets is or will be distributed, as Distributions under the Plan, to the Holders of Allowed Class 3 General Unsecured Claims on account of such Claims (the "Pro Rata Class 3 / Class 4 Distribution Trigger Event"), any and all Net Distributable Assets in excess of such $1,000,000 Cash threshold (the "Excess Net Distributable Assets") shall be distributed by the Liquidating Debtors to the Holders of Allowed Class 3 Claims and the PBGC (or other Holder of the Class 4 Claims), on account of their Class 3 and Class 4 Claims, respectively, on a Pro Rata basis as soon as reasonably practicable on the Class 3 Distribution Date(s); *provided further* that in the discretion of the Plan Administrator, Allowed Class 3 General Unsecured Claims may receive Distributions before the reconciliation of all Disputed Class 3 General Unsecured Claims provided that (x) reserves are maintained for any Class 3 General Unsecured Claim that is Disputed at the time of such Distribution and (y) the Plan Administrator shall make a corrective Distribution following the resolution of any Disputed Claim within thirty (30) days of such resolution.

(c)    Impairment/Voting: Class 3 Prepetition Lender Claims are Impaired.  Holders of Class 3 Prepetition Lender Claims are therefore entitled to vote to accept or reject the Plan.

**Class 4 – PBGC Unsecured Claims.**

(a)    Classification: Class 4 consists of all PBGC Unsecured Claims.

(b)    <u>Treatment</u>: The Holder of the PBGC Unsecured Claims shall receive the treatment provided for the PBGC on account of the PBGC Unsecured Claims set forth in the PBGC Settlement.  Specifically, pursuant to the PBGC Settlement, the PBGC has agreed to waive any right to receive Distributions under the Plan, on account of the PBGC Unsecured Claims, unless and until the Pro Rata Class 3 / Class 4 Distribution Trigger Event occurs or is otherwise satisfied; upon the occurrence of the Pro Rata Class 3 / Class 4 Distribution Trigger Event, the PBGC shall be entitled to share on a Pro Rata basis with the Holders of Allowed Class 3 Claims any Excess Net Distributable Assets.  Nothing in the Plan is intended to or will modify the PBGC Settlement, and in the event of any discrepancy between the treatment noted above and the treatment provided for the PBGC under the PBGC Settlement, the terms of the PBGC Settlement govern.

(c)    <u>Impairment/Voting</u>: Class 4 PBGC Unsecured Claims are Impaired under the Plan. The Holder of such Class 4 Claims are entitled to vote to accept or reject the Plan.

## **<u>Class 5 – Interests in the Debtors.</u>**

(a)    <u>Classification</u>: Class 5 consists of all Interests.

(b)    <u>Treatment</u>: Holders of Interests shall receive no distributions under the Plan, and on the Effective Date, all Interests shall be deemed void and of no force and effect.

(c)    <u>Impairment/Voting</u>: Class 5 Interests are Impaired, and Holders of such Class 5 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 5 Interests are not entitled to vote to accept or reject the Plan.

### **B.    Acceptance of Rejection of the Plan**

### **1.    Classes Permitted and Not Permitted to Vote.**

Classes 1 and 2 are Unimpaired.  Holders of Claims in these Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall not be entitled to vote to accept or reject the Plan.  Classes 3, 4 and 5 are Impaired. Holders of Claims in Classes 3 and 4 are permitted to vote to accept or reject the Plan.  Holders of Interests in Class 5 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Plan Proponents reserve all rights with respect to all Claims and Interests classified by the Plan.  An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.

### **2.    Effect of Non-Voting.**

If no Holder of a Claim eligible to vote in a particular Class timely votes to accept or reject the Plan, the Plan Proponents may seek to have the Plan deemed **accepted** by the Holders of such Claims in such Class for purposes of section 1129 of the Bankruptcy Code.

### **3.    Nonconsensual Confirmation.**

33

In the event any Class of Claims votes to reject the Plan and given the deemed rejection of the Plan by the Holders of Interests in Class 5, the Plan Proponents request that the Bankruptcy Court confirm the Plan notwithstanding such rejection pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

### 4.    Postpetition Interest.

Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Claim to receive postpetition interest on account of such Claim, except to the extent that the Holder of a Claim has the benefit of a Lien on assets the value of which exceeds the amount of such Claim or the Plan expressly provides for postpetition interest on account of such Claim.

### 5.    Elimination of Vacant Classes.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 6.    Special Provisions Regarding Insured Claims.

With respect to any Insured Claim, any party with rights against or under the applicable insurance policy may pursue such rights.  Nothing in the Plan shall constitute a waiver of any causes of action the Debtors or the Liquidating Debtors may hold against any Person, including the Debtors' insurance carriers; and nothing in the Plan is intended to, shall, or shall be deemed to preclude any Holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided, however*, that the Debtors and the Liquidating Debtors do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

The Plan shall not modify the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all rights, claims and defenses to liability and/or coverage that such insurers may have, including the right to contest and/or litigate with any party the existence, primacy and/or scope of liability and/or available coverage under any alleged applicable policy. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any proof of claim, including, without limitation, any rights or defenses arising out of, or in the nature of, setoff or recoupment, or the Debtors' rights and defenses to such proofs of claim.

### C.    Means for Implementation of the Plan

### 1.    Settlement of Intercompany Claims.

Upon the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Debtor and their successors and assigns hereby waive and release each other and all of their respective successors from any and all Intercompany Claims and Rights of

Action among and between any or all of the Debtors, which waiver and release shall be effective as a bar to all actions, causes of action, suits, Claims, Liens, or demands of any kind with respect to any Intercompany Claim or Right of Action among or between any or all of the Debtors.

## 2. Partial Substantive Consolidation.

In furtherance of the settlements contained in the Plan, the entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, as of the Effective Date, of the substantive consolidation of the Debtors and their respective Estates into the Estate of Debtor FCI, solely for purposes of voting and distributions under the Plan. Pursuant to the Confirmation Order, on and after the Effective Date, (i) all Distributable Assets to be used for distributions to Creditors of any of the Debtors will be treated as though they were merged into Liquidating Debtor FCI; and (ii) any obligation of any Debtor and all guarantees thereof executed by, or joint liability of, any of the Debtors will be treated as one obligation of Liquidating Debtor FCI for distribution purposes pursuant to the Plan.

Notwithstanding the foregoing, the substantive consolidation of the Debtors for voting and distribution purposes shall not affect or impair (i) any rights, Claims, remedies or defenses of (or between) the separate Debtors as of the Petition Date, including with respect to any Retained Rights of Action; (ii) the legal and organizational structure of the Debtors; (iii) any Liens that are maintained, recognized, or preserved under the Plan; and (iv) claims under or with respect to any insurance policy of any Debtor (or any right to the proceeds of any such policy or policies).

The Disclosure Statement and the Plan shall be deemed to be a motion by the Plan Proponents for substantive consolidation. Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation and shall be determined by the Bankruptcy Court in the context of considering Confirmation of the Plan.

If the Bankruptcy Court determines that substantive consolidation of any given Debtor(s) is not appropriate, then the Plan Proponents may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis. Furthermore, the Plan Proponents reserve their rights to seek Confirmation of the Plan without implementing substantive consolidation of any given Debtor, and, in the Plan Proponents' discretion, to request that the Bankruptcy Court approve the treatment of and distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis.

Notwithstanding the substantive consolidation called for herein and in the Plan, each and every Debtor shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930 until its particular case is closed; provided, however, the Debtors or some of them may apply to close the cases of those Debtors following Confirmation.

## 3. Continued Corporate Existence and Vesting of Assets.

On and after the Effective Date, subject to the requirements of the Plan, the Liquidating Debtors will continue to exist as separate corporations or limited liability companies (as applicable) and shall retain all of the powers of corporations or limited liability companies (as applicable) under applicable non-bankruptcy law, and without prejudice to any right to amend their respective operating agreement, dissolve, merge or convert into another form of business entity, or to alter or terminate their existence. The existing stock, membership and/or other equity interests (as

applicable) of the Debtors shall be deemed to be held through the Plan Administrator.  Further, the Debtors' bylaws, operating agreements, and/or other corporate governance documents (as applicable) shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtors and their Estates, including any interests in subsidiaries and affiliates and any Retained Rights of Action of the Debtors, will vest in Liquidating Debtor FCI free and clear of all Claims, Liens, charges, other encumbrances and Interests.  Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtors, which shall be continued as corporations or limited liability companies (as applicable) following the Effective Date subject to the terms of the Plan.

On and after the Effective Date, subject to the requirements of the Plan, the Liquidating Debtors shall be permitted to conduct their business (to the extent permitted by the Plan), reconcile Claims, use and dispose of assets, prosecute litigation, make required tax filings, and otherwise take any and all actions as may be appropriate to implement the Plan without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Liquidating Debtors shall be authorized, without limitation, to use and dispose of the Distributable Assets of the Debtors and their Estates, to investigate and pursue any Retained Rights of Action as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to acquire and dispose of other property, and to otherwise administer their affairs.

### 4.    Corporate Action; Winding Up of Affairs.

On the Effective Date, the matters under the Plan involving or requiring, as applicable, corporate or limited liability company action of the members, managers, directors, or officers of the Debtors, including but not limited to actions requiring a vote or other approval of, as applicable, the board of managers or board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date, without any further action by the Bankruptcy Court or the members, managers, directors, or officers of the Debtors.

Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing director, manager and officer of the Debtors will be deemed to have resigned on the Effective Date without any further corporate action, (ii) the Plan Administrator shall be deemed the sole manager, director, officer and representative of the Liquidating Debtors to exercise the rights, power and authority of the Liquidating Debtors under applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (iii) all matters provided under the Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Confirmation Order shall modify the Debtors' operating agreements, bylaws and any other corporate governance documents such that the provisions of the Plan can be effectuated.  The Plan shall be administered by the Plan Administrator, and all actions taken thereunder in the name of the Liquidating Debtors shall be taken through the Plan Administrator.  All corporate governance activities of the Liquidating Debtors shall be exercised by the Plan Administrator in his or her discretion, subject to the terms of the Plan.

Following the Confirmation Date, the Liquidating Debtors shall not engage in any business activities or take any actions, except those necessary or appropriate to (i) effectuate the Plan and (ii) dispose of their assets and wind up the affairs of the Debtors and their Estates as soon as reasonably practicable. On and after the Effective Date, the Plan Administrator may, in the name of the Liquidating Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Plan Administrator may, without application to or approval of the Bankruptcy Court, pay, from the proceeds of Distributable Assets, the charges that he or she incurs after the Effective Date for professional fees and expenses that, but for the occurrence of the Effective Date, would constitute Allowed Administrative Expenses.

From and after the Effective Date, (i) the Debtors, for all purposes, shall be deemed to have withdrawn their business operations from any state or territory in which they were previously conducting or are registered or licensed to conduct their business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtors shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers effected pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.

## 5.    Plan Administrator.

On the Effective Date, the Plan Administrator shall begin acting for the Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under the Plan, subject to the provisions hereof. The Plan Administrator shall serve in such capacity through the earlier of the date that all of the Debtors are dissolved in accordance with the Plan and the date such Plan Administrator resigns, is terminated or otherwise unable to serve; *provided, however*, that any successor Plan Administrator appointed pursuant to the Plan shall serve in such capacity after the effective date of such person's appointment as Plan Administrator.

The qualifications and proposed compensation of and other disclosures regarding the Plan Administrator shall be set forth as part of the Plan Supplement; such compensation may be paid from the Liquidating Debtors' Cash on hand, without further notice or order of the Bankruptcy Court. Further, the Plan Administrator shall be entitled to reimbursement, from the Liquidating Debtors' Cash on hand, for his or her actual, reasonable, and necessary expenses incurred in connection with the performance of his or her duties, without the need for further notice or Bankruptcy Court approval. All distributions to be made to Creditors under the Plan shall be made by the Plan Administrator (or his or her designated agent). The Plan Administrator shall deposit and hold all Cash in trust for the benefit of Creditors (including Professional Persons) receiving distributions under the Plan. The duties and powers of the Plan Administrator shall include, without limitation, the following (without need of further Court approval):

(i) To exercise all power and authority that may be exercised, to commence all proceedings (including the power to continue any actions and proceedings that may

have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, or manager of the Liquidating Debtors with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and managers, including consummating the Plan and all transfers thereunder on behalf of the Liquidating Debtors;

(ii) To wind up the affairs of the Liquidating Debtors and any or all of their subsidiaries and affiliates and their Estates to the extent appropriate as expeditiously as reasonably possible;

(iii) To maintain all accounts, make distributions, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Liquidating Debtors;

(iv) To use, manage, sell, abandon, convert to Cash and/or otherwise dispose of the Distributable Assets for the purpose of liquidating or otherwise disposing of all remaining property of the Estates, making distributions and fully consummating the Plan;

(v) To take all steps necessary or appropriate to terminate the corporate existence of the Debtors consistent with the Plan;

(vi) To prosecute objections to Claims and Interests, and to compromise or settle any Claims or Interests (Disputed or otherwise);

(vii) To prosecute any and all Retained Rights of Action and compromise or settle any Retained Rights of Action; provided, however, the Plan Administrator will not, on behalf of the Debtors and Liquidating Debtors, prosecute or otherwise pursue any Avoidance Claims after the Effective Date;

(viii) To prepare and file tax returns to the extent required by law;

(ix) To employ and compensate any and all such professionals and agents as the Plan Administrator, in his or her sole discretion, deems appropriate to perform his or her duties under the Plan without further order of the Bankruptcy Court; and

(x) To take all other actions not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan, including, without limitation, filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown.    In the event of the resignation, removal, death, or incapacity of the Plan Administrator, the Bankruptcy Court shall, upon motion or *sua sponte*, appoint another Person to become Plan Administrator, with notice thereof provided to the Post-Effective Date Service List. Any successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

**6. Source of Funding.**

The source of all distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof, including, without limitation, the Debtors' Cash on hand and proceeds from any sale or other disposition of the Debtors' assets and prosecution of Retained Rights of Action. Also, as noted in Article V herein, despite the PBGC's conditional waiver of the right to share in the proceeds available to Class 3 Claims, the Plan Proponents note that in the event the estates' funds were distributed in a "straight line" waterfall there would insufficient funds to provide a distribution (even a minimal one) to Holders of Allowed Class 3 Claims. Nonetheless, to facilitate such a recovery, certain professionals have agreed to limit their recovery on their (senior) Allowed Professional Fee Claims in order to free up funds that will find their way further down the waterfall to generate cash for distribution to Holders of Allowed Class 3 Claims.

The Debtors estimate that, as of the Effective Date, the Debtors' Cash on hand will be approximately $2,200,000.00.

**7. Retained Rights of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Rights of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Liquidating Debtors' rights to commence, prosecute, or settle such Retained Rights of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Administrator may pursue such Retained Rights of Action, as appropriate, in accordance with the best interests of the Liquidating Debtors; provided, however, the Plan Administrator will not, on behalf of the Debtors and Liquidating Debtors, prosecute or otherwise pursue any Avoidance Claims after the Effective Date. **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Right of Action against it as any indication that the Debtors or Liquidating Debtors, as applicable, will not pursue any and all available Retained Rights of Action against it. The Debtors or Liquidating Debtors, as applicable, expressly reserve all rights to prosecute any and all Retained Rights of Action against any Person, except as otherwise expressly provided in the Plan.** Unless any Right of Action is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors and the Liquidating Debtors expressly reserve all Rights of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Rights of Action upon, after, or as a consequence of Confirmation or Consummation of the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Rights of Action shall vest in the Liquidating Debtors. The Liquidating Debtors shall have standing as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue, the Retained Rights of Action and objections to Claims, as appropriate, in the business judgment of the Plan Administrator. The Liquidating Debtors, acting through the Plan Administrator, may settle, release, sell, assign, otherwise transfer, or compromise Retained Rights of Action and/or objections to Claims without need for notice or order of the Bankruptcy Court.

**8. Interests in Non-Debtors Affiliates and Subsidiaries.**

As of the Effective Date, except as expressly provided in the Plan or by separate order of the Bankruptcy Court, the Liquidating Debtors shall retain any stock or interests that they may hold in their non-Debtor affiliates or subsidiaries and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests.  After the Effective Date, the Liquidating Debtors may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

### 9.      Payment of Plan Expenses.

The Liquidating Debtors may pay all reasonable Plan Expenses without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court.

### 10.     Dissolution of Debtors; Final Decree.

Once the Plan Administrator determines that the Final Resolution Date has occurred as to any of the Liquidating Debtors, such Liquidating Debtors shall be dissolved for all purposes by the Plan Administrator without the necessity for any other or further actions to be taken by or on behalf of any Liquidating Debtors or payments to be made in connection therewith; *provided, however*, that, without the need of any further approval, the Plan Administrator in his or her discretion may execute and file documents and take all other actions as he or she deems appropriate relating to the dissolution of the Liquidating Debtors under the laws of Delaware and/or any other applicable states, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Liquidating Debtors as provided in the Plan, without the payment of any fee, tax, or charge and without need for the filing of certificates.  At any time following the Effective Date, the Plan Administrator, on behalf of the Liquidating Debtors, shall be authorized to move for the entry of a final decree closing any or all of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.

### 11.     Records.

The Liquidating Debtors and Plan Administrator shall maintain reasonably good and sufficient books and records of accounting relating to the Distributable Assets, the Liquidating Debtors' Cash, the management thereof, all transactions undertaken by such parties, all expenses incurred by or on behalf of the Liquidating Debtors and Plan Administrator, and all distributions contemplated or effectuated under the Plan.  Upon the entry of a final decree closing the Chapter 11 Cases, unless otherwise ordered by the Bankruptcy Court, the Liquidating Debtors and Plan Administrator may destroy or otherwise dispose of all records maintained by the Liquidating Debtors and/or Plan Administrator.   Notwithstanding anything to the contrary, the Plan Administrator may, upon notice to the Post-Effective Date Service List and without Bankruptcy Court approval, destroy any documents that he or she believes are no longer required to effectuate the terms and conditions of the Plan.

### D.      Treatment of Executory Contracts and Unexpired Leases

### 1.      Rejection of Executory Contracts and Unexpired Leases.

Except for any executory contracts or unexpired leases:  (i) that previously were assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) that are listed for assumption by the Debtors as of the Effective Date in a

Plan Supplement to be filed and served on affected non-Debtor counterparties; (iii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to the Effective Date; (iv) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates; or (v) that were previously sold, conveyed or otherwise assigned pursuant to Final Order, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. Without limiting the foregoing, the indemnification obligations in favor of the Debtors' current directors, officers, managers, and representatives, to the extent not previously rejected, shall be assumed as of the Effective Date, and all other pre-Effective Date indemnification obligations of the Debtors shall be deemed rejected as of the Effective Date to the extent that such obligations are contained in executory contracts within the meaning of section 365 of the Bankruptcy Code, but only to the extent not inconsistent with any existing insurance obligations. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions or rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

### 2.    Bar Date for Rejection Claims.

If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors or their Estates unless a proof of Claim is Filed and served on the Plan Administrator and its counsel within thirty (30) calendar days after the earlier of (a) the Effective Date and (b) service of a notice that the executory contract or unexpired lease has been rejected. All such Claims for which proofs of Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured Claims, subject to the provisions of the Plan.

### E.    Distributions and Related Matters

### 1.    Dates of Distribution.

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, by the Liquidating Debtors (or their agent) on the immediately following Business Day.

### 2.    Cash Distributions.

Distributions of Cash may be made either by check drawn on a domestic bank or wire or ACH transfer from a domestic bank, at the option of the Liquidating Debtors, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### 3.    Rounding of Payments.

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

### 4.    Disputed Claims.

Notwithstanding all references in the Plan to Claims that are Allowed, solely for the purpose of calculating (but not distributing) the amount or number of distributions to be made on account of Allowed Class 3 General Unsecured Claims under the Plan, such calculations may be made, in the Plan Administrator's sole discretion, as if each Disputed Claim were an Allowed Claim, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or authorized or otherwise determines the amount or number which would constitute a sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by the Liquidating Debtors), such amount or number as determined by the Bankruptcy Court may be used for calculations as to such Disputed Claim instead.

### 5.    Undeliverable and Unclaimed Distributions.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Plan Administrator has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however*, that such distributions shall be deemed Unclaimed Property at the expiration of ninety (90) calendar days from the date of such attempted distribution. After such date, all Unclaimed Property shall revert to the Liquidating Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be forever barred. The Plan Administrator may implement reasonable attempts to reach any recipient of an undeliverable distribution prior to reverting such property to the Liquidating Debtors.

### 6.    Minimum Distributions.

Notwithstanding any other provision of the Plan, in the Plan Administrator's sole discretion, the Plan Administrator will not be required to make distributions of Cash less than $25 in value, and each such Claim to which this limitation applies shall be deemed fully and finally satisfied and not entitled to any further payment or consideration  pursuant to Article IX and its Holder is forever barred pursuant to Article IX from asserting that Claim or Claims against the Debtors, the Liquidating Debtors, their Estates, or their property.

### 7.    Compliance With Tax Requirements.

(a) The Liquidating Debtors shall comply with all withholding and reporting requirements imposed by federal, state, or local taxing authorities in connection with making distributions pursuant to the Plan.

(b) In connection with each distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Liquidating Debtors shall file such information return with the IRS and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received, the Liquidating Debtors may, in their sole option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

### 8.    Record Date in Respect to Distributions.

Except as set forth below, the record date and time for the purpose of determining which Persons are entitled to receive any and all distributions on account of any Allowed Claims or Interests, irrespective of the date of or number of distributions, shall be the Record Date.

### F.    Litigation, Objections to Claims, and Determination of Taxes

#### 1.    Litigation.

Except as may be expressly provided otherwise in the Plan, the Liquidating Debtors, through the Plan Administrator, shall be responsible for pursuing Retained Rights of Action, any objection to the allowance of any Claim, and the determination of tax issues and liabilities.

#### 2.    Objections to Claims; Objection Deadline.

As of the Effective Date, the Liquidating Debtors shall have exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims.   Any objection to a Claim or Interest shall be filed with the Bankruptcy Court and served on the Person holding such Claim or Interest within one hundred eighty (180) calendar days after the Effective Date (as may be extended pursuant to this section, the "Objection Deadline"), provided that the Liquidating Debtors may seek one or more extensions thereof subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002.

#### 3.    Tax Determinations.

In addition to any other  remedies or procedures available  a) to dispute claims for taxes of any kind of the Debtors, whether pre-petition tax claims and/or administrative expense tax claims, b) to determine the amount of any tax that may be owed by any of the Debtors,  whether pre-petition taxes or administrative expense taxes, or c) to seek recovery of refunds of taxes  by any of the Debtors, whether the refunds sought are pre-petition refunds or are post-petition refunds, the Liquidating Debtors, at any time, may utilize (and receive the benefits of) section 505 of the Bankruptcy Code in order to:

(1) determine the amount of any tax liability of any of the Debtors or the Liquidating Debtors relating to an act or event occurring prior to the Effective Date;
(2) object to any claim for taxes against any of the Debtors or the Liquidating Debtors relating to an act or event occurring prior to the Effective Date; or
(3) determine the amount of any refund of taxes asserted by any of the Debtors or the Liquidating Debtors arising prior to the Effective Date.

The Liquidating Debtors shall be entitled to invoke all relevant provisions of Section 505 with respect to any and all tax issues relating to the Liquidating Debtors  and/or the Debtors.

#### 4.    Temporary or Permanent Resolution of Disputed Claims.

The Liquidating Debtors may request that the Bankruptcy Court estimate any contingent or unliquidated Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether any Person has previously objected to such Disputed Claim.  The Bankruptcy Court will retain jurisdiction and power to estimate any contingent or unliquidated Disputed Claim at any time. If the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount will constitute either the Allowed amount of such Disputed Claim or a maximum limitation

on such Disputed Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Disputed Claim, then the Liquidating Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Disputed Claim. In addition, the Liquidating Debtors may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim or Interest and the rights of the Holder of such Claim or Interest would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced. All of the aforementioned objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

    **5.**  **Setoffs**.

    The Liquidating Debtors may, but shall not be required to, setoff against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim may be setoff against claims of any nature whatsoever that the Debtors or the Estates may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidating Debtors of any such claim that the Liquidating Debtors may have against such Holder, unless otherwise agreed to in writing by such Holder and the Liquidating Debtors.

    **G.**  **Injunctions, Exculpation, Releases and Related Provisions**

    **1.**  **Injunctions.**

    **(a)**  **<u>Generally.</u>**

    Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, seeking to hold (i) the Liquidating Debtors or their Estates, or (ii) the property of the Debtors or their Estates, liable for any Claim, obligation, right, interest, debt or liability that has been released pursuant to the Plan.

    **(b)**  **<u>Non-Discharge of Debtors; Injunction.</u>**

    **In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. As such, no Person may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan. As of the Effective Date, all parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, causes of action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.**

    **2.**  **Exculpation.**

As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act taken or omitted to be taken, on or after the Petition Date, in connection with, or related to, the formulation, preparation, dissemination, implementation, administration, Confirmation or Consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Cases or the Debtors up to and including the Effective Date; *provided, however*, that the foregoing provisions of this subsection shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.  For the avoidance of doubt, the scope of the exculpation provided under Section 9.2 of the Plan does not include any of the current or former members of the Debtors or any of the former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.  Notwithstanding anything in the Plan to the contrary, no Person serving as Plan Administrator shall have or incur any personal liability as the manager, member or officer of the Debtors or Liquidating Debtors for any act taken or omission made in connection with the wind-up or dissolution of the Liquidating Debtors or any nondebtor subsidiary or affiliate; *provided, however*, that the foregoing shall have no effect on the liability of the Plan Administrator that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.

3.       **Debtor Release.**

As of and subject to the occurrence of the Effective Date, for good and valuable consideration, the Debtors, for themselves and the Estates, hereby irrevocably, unconditionally and generally release the Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, which the Debtors or their Estates ever had, now have or hereafter can, shall or may have against any of the Released Parties from the beginning of time to the Effective Date that in any way relate to the Debtors, their direct or indirect non-Debtor subsidiaries, the Estates, or the Chapter 11 Cases; *provided, however*, that the foregoing provisions of Section 9.3 of the Plan shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.  For the avoidance of doubt, the scope of the release provided under Section 9.3 of the Plan does not include any of the current or former members of the Debtors or any of the former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.

4.       **Consenting Creditor Release.**

As of and subject to the occurrence of the Effective Date and except for the treatment provided in the Plan, for good and valuable consideration the each Releasing Creditor, for itself and its respective present or former officers, directors, managers, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, attorneys, accountants, professionals, and successors or assigns, in each case solely in their capacity as such, shall be deemed to have completely, conclusively, unconditionally and irrevocably released the Released Debtor/Committee Parties from any and all claims, obligations, rights,

**suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, which the Releasing Creditor, the Debtors or their Estates ever had, now have or hereafter can, shall or may have against any of the Released Debtor/Committee Parties from the beginning of time to the Effective Date that in any way relate to the Debtors, their direct or indirect non-Debtor subsidiaries, the Estates, or the Chapter 11 Cases, *provided, however*, that the foregoing release does not affect or impair any obligations under any intercreditor agreements or any other agreements or arrangements between and among non-Debtor parties.  For the avoidance of doubt, the Released Debtor/Committee Parties do not include any of the current or former non-Debtor members of the Debtors or any former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.**

## VII.    RISK FACTORS

### A.    The Plan Proponents May Not Be Able to Obtain Confirmation of the Plan

With regard to any proposed chapter 11 plan, the Plan Proponents may not receive the requisite acceptances to confirm a plan.  In the event that votes from Claims in Classes entitled to vote are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Plan Proponents intend to seek Confirmation of the Plan by the Bankruptcy Court.  If the requisite acceptances are not received, the Plan Proponents may nevertheless seek Confirmation of the Plan notwithstanding the dissent of certain Classes of Claims.  The Bankruptcy Court may confirm the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, which allow the Bankruptcy Court to confirm a plan that has been rejected by an Impaired Class of Claims if it determines that the plan satisfies section 1129(b) of the Bankruptcy Code.  To confirm a plan over the objection of a dissenting Class, the Bankruptcy Court also must find that at least one Impaired Class has accepted the plan, with such acceptance being determined without including the acceptance of any "insider" in such Class.

Even if the requisite acceptances of a proposed plan are received, the Bankruptcy Court might not confirm the Plan as proposed if the Bankruptcy Court finds that any of the statutory requirements for confirmation under section 1129 of the Bankruptcy Code have not been met.

If the Plan is not confirmed by the Bankruptcy Court, it is unclear whether the Plan Proponents would be able to successfully develop, prosecute, confirm and consummate an alternative plan that is acceptable to the Bankruptcy Court and the Debtors' creditors, and what, if any, distributions Holders of Claims ultimately would receive with respect to their Claims.

### B.    Claims May Exceed the Plan Proponents' Estimates

There is a risk under the Plan that Claims will materially exceed the Plan Proponents' estimates, in which case distributions to Creditors would be significantly reduced or eliminated.  Among other things, payments will only be made to Class 3 General Unsecured Creditors from Net Distributable Estate Assets—in other words, after payment in full, or reserves for, all Plan Expenses and all administrative, priority, and secured Claims.  The process of reconciling all such Claims has not yet been completed and outstanding disputes remain that will need to be litigated or otherwise resolved.  If and to the extent Plan Expenses and Allowed Administrative, Priority, and Secured

Claims exceed the Plan Proponents' estimates, amounts available for General Unsecured Creditors may be significantly reduced or eliminated.

### C.    The Conditions Precedent to the Effective Date of the Plan May Not Occur

As more fully set forth in the Plan, the Effective Date is subject to several conditions precedent.  If such conditions precedent are not met or waived, the Effective Date will not occur.

## VIII.    <u>CONFIRMATION OF THE PLAN</u>

### A.    The Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing to commence on [DATE], 2020 at [TIME] (prevailing Pacific Time), before the Honorable Mark S. Wallace, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made in the agenda for the Confirmation Hearing or at the Confirmation Hearing or any adjournment thereof.

Objections to Confirmation of the Plan must be filed and served so that they are actually received by no later than [DATE], 2020 at [TIME] (prevailing Pacific Time).  **Unless objections to Confirmation of the Plan are timely served and filed in compliance with the Disclosure Statement Order, they may not be considered by the Bankruptcy Court**.

### B.    Requirements for Confirmation of the Plan

Among the requirements for the Confirmation of the Plan is that the Plan (i) is accepted by all Impaired Classes of Claims, or, if rejected by an Impaired Class of Claims, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Impaired Class of Claims; (ii) is feasible; and (iii) is in the "best interests" of Holders of Claims.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  The Plan Proponents believe that:  (i) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Plan Proponents have complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.  Specifically, in addition to other applicable requirements, the Plan Proponents believe that the Plan satisfies or will satisfy the following applicable Confirmation requirements of section 1129 of the Bankruptcy Code:

•    The Plan complies with the applicable provisions of the Bankruptcy Code.

•    The Plan proponents have complied with the applicable provisions of the Bankruptcy Code.

•    The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each Holder of a Claim in an Impaired Class of Claims has accepted the Plan, or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan will have accepted the Plan, or the Plan can be confirmed without the approval of a Class that did not accept the Plan pursuant to section 1129(b) of the Bankruptcy Code.

- Except to the extent a different treatment is agreed to, the Plan provides that all Allowed Administrative Expenses, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto.

- All accrued and unpaid fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

## C.    Best Interests of Creditors

Often called the "best interests of creditors" test, section 1129(a)(7) of the Bankruptcy Code requires that a Bankruptcy Court find, as a condition to confirmation of a chapter 11 plan, that the plan provides, with respect to each impaired class, that each holder of a claim or an interest in such class either (i) has accepted the plan or (ii) will receive or retain under the plan property of a value that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7 on the Effective Date.  To make these findings, the Bankruptcy Court must: (a) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if each of the Debtors' Chapter 11 Cases were converted to a chapter 7 case on the Effective Date and the assets of the Debtors' Estates were liquidated; (b) determine the liquidation distribution that each non-accepting Holder of a Claim or an Interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare the Holder's liquidation distribution to the distribution under the Plan that the Holder would receive if the Plan were confirmed and consummated.

Here, the costs of liquidation under chapter 7 of the Bankruptcy Code would include the statutory fees payable to a chapter 7 trustee, and the fees that would be payable to additional attorneys and other professionals that such a trustee may engage (who would need time to

understand case issues), which amounts would have to be paid before anything is paid to Holders of Allowed General Unsecured Claims.

Conversion to chapter 7 of the Bankruptcy Code would also mean the establishment of a new claims bar date, which could result in new General Unsecured Claims being asserted against the Estates, thereby diluting the recoveries of other Holders of Allowed General Unsecured Claims.

For these reasons, among others, the Plan Proponents believe that Holders of Claims will receive equal or greater value as of the Effective Date under the Plan than such Holders would receive in a chapter 7 liquidation.

### D.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors, or any successor to the Debtors (unless such liquidation or reorganization is proposed in the plan).  This requirement is satisfied as the Plan proposes a liquidation and the Plan Proponents believe that the Debtors already have sufficient Cash on hand in order to fund distributions to Creditors pursuant to the terms of the Plan.

### E.    Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

A class is "impaired" unless a plan:  (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the interest entitles the holder of such claim or interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or reject the plan.  Thus, a Class of Impaired Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually voting cast their Ballots in favor of acceptance.

### F.    Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a Bankruptcy Court to confirm a plan even if all impaired classes have not accepted it, provided that the plan has been accepted by at least one impaired class of claims, determined without including the acceptance of the plan by any insider. Notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminate unfairly" (as discussed below) and is "fair and equitable" (as discussed below) with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponents shall request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

### 1.    No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that reject or are deemed to have rejected a plan and that are of equal priority with another class of claims or interests that is receiving different treatment under such plan.  The test does not require that the treatment of such classes of claims or interests be the same or equivalent, but that such treatment be "fair."  In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character).  Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.  The Plan Proponents submit that if the Plan Proponents "cramdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured such that it does not "discriminate unfairly" against any rejecting Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2.    Fair and Equitable Test

The "fair and equitable" test applies to classes that reject or are deemed to have rejected a plan and are of different priority and status vis-à-vis another class (*e.g.*, secured versus unsecured claims, or unsecured claims versus equity interests), and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class, including interest.  As to the rejecting class, the test sets different standards depending upon the type of claims or interests in such rejecting class.  The Plan Proponents submit that if the Plan Proponents "cramdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured such that the applicable "fair and equitable" standards are met.

### G.    Alternatives to the Plan

The Plan Proponents believe that the Plan is in the best interests of Holders of Claims.  If, however, the requisite acceptances of the voting Classes of Claims are not received, or no Plan is confirmed and consummated, the theoretical alternatives to the Plan include: (a) formulation of an alternative plan or plans of liquidation, or (b) liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

The Plan Proponents believe that the Plan enables Holders of Claims to realize the greatest possible recovery under the circumstances, and, as compared to any alternative plan of liquidation, has the greatest chance of being confirmed and consummated.

## IX.    CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion is a summary of certain U.S. federal income tax consequences of the Plan to Holders of Claims against the Debtors.  This discussion is based on the Internal Revenue

Code (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules and pronouncements of the Internal Revenue Service ("IRS"), all as in effect on the date hereof.  Due to the complexity of certain aspects of the Plan, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims (including Claims within the same Class), the Holder's status and method of accounting (including Holders within the same Class) and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are subject to significant uncertainties.  No legal opinions have been requested from counsel with respect to any of the tax aspects of the Plan and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below.  Further, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtors and the Holders of Claims.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or the Holders of Claims in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, traders that mark-to-market their securities, mutual funds, insurance companies, other financial institutions, real estate investment trusts, tax-exempt organizations, small business investment companies, regulated investment companies, foreign taxpayers, persons whose functional currency is not the U.S. dollar, persons subject to the alternative minimum tax, and persons holding Claims or Interests as part of a "straddle," "hedge," "constructive sale" or "conversion transaction" with other investments).  This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue.  No aspect of foreign, state, local or estate and gift taxation is addressed.

The U.S. federal income tax consequences of the distributions contemplated by the Plan to the Holders of Claims that are U.S. Persons will depend upon a number of factors.  For purposes of the following discussion, a "U.S. Person" is any person or entity (1) who is a citizen or resident of the United States, (2) that is a corporation or partnership created or organized in or under the laws of the United States or any state thereof, (3) that is an estate, the income of which is subject to U.S. federal income taxation regardless of its source or (4) that is a trust (a) the administration over which a United States person can exercise primary supervision and all of the substantial decisions of which one or more U.S. persons have the authority to control; or (b) that has in effect a valid election to continue to be treated as a U.S. Person for U.S. federal income tax purposes.  In the case of a partnership, the tax treatment of its partners will depend on the status of the partner and the activities of the partnership.  U.S. Persons who are partners in a partnership should consult their tax advisors.  A "Non-U.S. Person" is any person or entity that is not a U.S. Person.  For purposes of the following discussion and unless otherwise noted below, the term "Holder" will mean a Holder of a Claim that is a U.S. Person.

Except where otherwise indicated, this discussion assumes that the Claims are held as capital assets within the meaning of section 1221 of the Tax Code.

THE FOLLOWING SUMMARY IS NOT INTENDED TO CONSTITUTE ADVICE TO ANY PARTY, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PERSONAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM, AS WELL AS EACH HOLDER OF AN INTEREST, IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

*IRS Circular 230 Notice. To ensure compliance with IRS Circular 230, Holders of Claims and Interests are hereby notified that: (a) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims and Interests for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtors of the transactions or matters addressed herein; and (c) Holders of Claims and Interests should seek advice based on their particular circumstances from an independent tax advisor.*

### A.    Federal Taxation Issues Related to Pass-Through Entities in General

For U.S. federal income tax law purposes, an entity can be organized as a corporation, a partnership, or a hybrid entity (otherwise known as S corporations and limited liability companies). The two primary differences between corporations and partnerships are how the entity's earnings are taxed and whether or not the shareholder/owners are shielded from the liabilities of the entity. Generally, corporations are treated as independent tax-paying entities, unaffected by the personal characteristics of their shareholders or changes in their composition as a result of transfers of stock from old shareholders to new ones, giving rise to the potential for double taxation.  Because corporations are treated independently, corporate income is taxed to a corporation as it is received or accrued, and is taxed at the shareholder level when and if the corporation distributes earnings to the shareholders or they sell their stock.  Partnerships, however, are not entities subject to income tax. Instead, the partners are taxed directly on partnership income whether or not it is actually distributed to them.

Hybrid entities, on the other hand, combine the two primary differences between corporations and partnerships.  As to S corporations, shareholders are shielded from entity level liability similar to that of a corporation; however, generally, the earnings of the entity are taxed at the ownership level similar to that of a partnership.  As to limited liability companies, member-owners are shielded from entity level liability similar to that of a corporation; however, unique to the LLC, an option exists to be taxed as a corporation or taxed as a partnership, provided that the LLC has at least two member-owners, as set forth under Treasury Regulations Section 301.7701-3.

Generally, pass-through entities are subject to a single layer of tax on their earnings at the ownership level (partner, member, or shareholder depending on entity type).  Taxable income of pass-through entities is computed at the entity level (generally each type of entity will file a tax return showing no tax liability at the entity level); however, each owner is taxed separately on his, her, or its distributive share of income, gain, loss, deduction, and/or credit, as applicable.  The character of the items included in taxable income is determined at the entity level with no regard to the owners' individual characteristics.  With respect to tax attributes, pass-through entities are generally not allowed to maintain certain tax attributes, such as net operating losses, given such

entities are not directly taxable. These tax attributes pass-through to the owners, and usage, carryback, or carryforward of these attributes is determined at the ownership level.

BECAUSE THE FINAL TAX TREATMENT OUTCOME DEPENDS ON EACH PARTY'S SPECIFIC SITUATION, PARTIES IN INTEREST ARE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE TAX IMPLICATIONS TO THEM WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED UNDER OR IN CONNECTION WITH THE PLAN AND THEIR SPECIFIC SITUATION, AND NOTHING HEREIN IS INTENDED TO CONSTITUTE ADVICE TO ANY PARTY.

### B.    Consequences to Creditors

#### 1.    Holders of Claims

Generally, a holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim. The tax basis of a holder in a Claim will generally be equal to the holder's cost therefore. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A Holder who received Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A Holder who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for United States federal income tax purposes as interest, regardless of whether such Holder realizes an overall gain or loss as a result of surrendering its Claim. A Holder who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such Holder realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, certain Creditors may receive only a partial distribution of their Allowed Claims. Whether the Holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the Holder and its Claims. Creditors should consult their own tax advisors.

#### 2.    Non-United States Persons

A Holder of a Claim that is a Non-U.S. Person generally will not be subject to United States federal income tax with respect to property (including money) received in exchange for such Claim

pursuant to the Plan, unless (i) such Holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such Holder is an individual, such Holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

### C.    Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.    THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES.  ACCORDINGLY, CLAIM AND INTEREST HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.]

## X.    **RECOMMENDATION**

In the opinion of the Plan Proponents, the Plan is superior and preferable to the alternatives described in this Disclosure Statement.  Accordingly, the Plan Proponents recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support Confirmation of the Plan.

June ___, 2020

_____
_____
_____ of
Debtors and Debtors in Possession

_____
[_____]
Authorized Representative of
Official Committee of Unsecured Creditors

Prepared by:

*Debtors' Counsel*

Alan J. Friedman (Bar No. 132580)
SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

     -and-

*Committee Counsel*

Robert J. Feinstein (Pro Hac Vice)
Alan J. Kornfeld (Bar No. 130063)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    rfeinstein@pszjlaw.com
              akornfeld@pszjlaw.com
              jdulberg@pszjlaw.com

**EXHIBIT A**

**Joint Plan of Liquidation**

Alan J. Friedman (Bar No. 132580)
SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

*Counsel for the Debtors*
*Co-Plan Proponents*

Robert J. Feinstein (Pro Hac Vice)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    rfeinstein@pszjlaw.com
          jdulberg@pszjlaw.com

*Counsel for the Official Committee of*
*Unsecured Creditors*
*Co-Plan Proponents*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:15-bk-15311-MW |
| FREEDOM COMMUNICATIONS, INC., a Delaware corporation, et al.,[1] | Chapter 11 |
| Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| Affects: | |
| ☒  All Debtors | |
| ☐  Freedom Communications, Inc., a Delaware corporation, ONLY | |
| ☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | **JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |
| ☐  Freedom Services, Inc., a Delaware corporation, ONLY | |

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036). The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

☐  2100 Freedom, Inc., a Delaware corporation, ONLY

☐  OCR Community Publications, Inc., a California corporation, ONLY

☐  Daily Press, LLC, a California limited liability company, ONLY

☐  Freedom California Mary Publishing, Inc., a California corporation, ONLY

☐  Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

☐  Freedom Colorado Information, Inc., a Delaware corporation, ONLY

☐  Freedom Interactive Newspapers, Inc., a California corporation, ONLY

☐  Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

☐  Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

☐  Freedom Newspapers, a Texas general partnership, ONLY

☐  Freedom Newspapers, Inc., a Delaware corporation, ONLY

☐  Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

☐  OCR Information Marketing, Inc., a California corporation, ONLY

☐  Odessa American, a Texas general partnership, ONLY

☐  Orange County Register Communications, Inc., a California corporation, ONLY

☐  Victor Valley Publishing Company, a California corporation, ONLY

☐  Victorville Publishing Company, a California limited partnership, ONLY

☐  Freedom SPV II, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

**Disclosure Statement Approval Hearing:**

| | |
|---|---|
| Date: | July 15, 2020 |
| Time: | 2:00 p.m. |
| Place: | Courtroom 6C |
| | 411 West Fourth Street |
| | Santa Ana, CA 92701 |
| Judge: | Honorable Mark S. Wallace |

DOCS_LA:326527.6 29266/002

1

2 ☐   Freedom SPV I, LLC, a Delaware limited liability company, ONLY

3 ☐   Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

4

5 ☐   Freedom SPV V, LLC, a Delaware limited liability company, ONLY

6

7                          **INTRODUCTION**[2]

8       The Debtors and the Committee hereby propose this Plan, which provides for the distribution
of the remaining assets of the Debtors' estates, consisting primarily of net cash proceeds from certain

9 litigation settlements.  Reference is made to the Disclosure Statement for (i) a discussion of the
Debtors' history, businesses, assets and liabilities, (ii) a summary and analysis of this Plan, and (iii)

10 certain related matters, including risk factors relating to the consummation of this Plan and
Distributions to be made under this Plan.  The Debtors and the Committee are the proponents of the

11 Plan within the meaning of section 1129 of the Bankruptcy Code.

12      This Plan provides for the liquidation, collection, disposition and distribution of the
remaining assets of the Debtors' Estates and winding-up the Debtors' affairs and the Chapter 11

13 Cases.  Substantially all of the Debtors' commercial assets were sold to a third party buyer and
remaining material causes of action of the Debtors were addressed and resolved under certain

14 settlements including with the Pension Benefit Guaranty Corporation.  The Plan proposes to fairly
and efficiently allocate the Debtors' remaining Distributable Assets in a manner that is supported by

15 the principal constituencies in the Chapter 11 Cases and will allow such cases to be promptly
resolved.

16
        This Plan will be implemented through the substantive consolidation of the Debtors' Estate

17 for the purposes of voting and Distributions under the Plan, the re-vesting of the Estates' assets in
Liquidating Debtor Freedom Communications, Inc., and the appointment of a Plan Administrator to

18 liquidate or otherwise dispose of the Estates' remaining assets, if and to the extent such assets were
not previously monetized or otherwise transferred by the Debtors prior to the Effective Date.  All

19 Intercompany Claims will be waived and eliminated.  The Plan Administrator will act for the
Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors of a

20 Delaware corporation implementing such liquidation and wind-down as contemplated under this
Plan, subject to the provisions hereof, and shall, among other powers, wind up the affairs of the

21 Liquidating Debtors; use, manage, sell, abandon and/or otherwise dispose of the remaining property
of the Estates; prosecute objections to Claims and any litigation on behalf of the Liquidating Debtors;

22 cause distributions to be made to Creditors pursuant to this Plan; and take such other actions required
under or consistent with this Plan.  The initial Plan Administrator will be David K. Gottlieb.[3]

23

24 ─────────────────────────
[2] Capitalized terms used in this Introduction have the meanings ascribed to those terms in Article I below.

25 [3] Mr. Gottlieb is a principal of D Gottlieb & Associates, LLC, and has over 35 years' experience as a CPA.  He has
served as a chapter 7 panel trustee in the Central District of California since 1995. Mr. Gottlieb is a chapter 11 trustee

26 and examiner and acts as accountant and financial advisor to other fiduciaries, as well as debtors-in-possession, official
unsecured creditors' committees and other parties in bankruptcy and insolvency matters. He is a member of the AICPA,

27 the Association of Certified Fraud Examiners, Litigation Support Committee for the California Society of CPAs, the
National Association of Bankruptcy Trustees, ABI and the Los Angeles Bankruptcy Forum. Mr. Gottlieb earned his B.S.

28 in accounting from New York University.

Under the Plan, the Holders of Allowed Administrative Expenses, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims will be paid in full on the Effective Date, unless otherwise agreed with the Holders of such Claims.

The Holders of Allowed Miscellaneous Secured Claims will either:  (a) be paid in cash up to the value of their collateral, or (b) have their obligations assumed or otherwise addressed as provided for herein, including pursuant to agreements with such Holders.  As discussed in the Disclosure Statement, the Secured Claims of the Debtors' prepetition secured lenders, the debtor-in-possession financing lenders, and the PBGC were paid in full or otherwise addressed and resolved prior to the filing of this Plan.

Holders of Allowed General Unsecured Claims in Class 3 will receive any remaining Net Distributable Estate Assets after the payment of (or reserves for) Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims, and Plan Expenses; provided that in the event that the aggregate Cash recovery for Holders of Allowed General Unsecured Claims (other than the PBGC) exceeds $1,000,000, then any excess Cash proceeds will be shared ratably by the Holders of Allowed General Unsecured Claims and the Holder of the PBGC Unsecured Claims in Class 4.  The PBGC (or other Holder of the PBGC Unsecured Claims) will receive the treatment provided for the PBGC Unsecured Claims set forth in the PBGC Settlement, including, as noted, the PBGC sharing ratably with Holders of Allowed Class 3 General Unsecured Claims any excess Cash proceeds over $1,000,000 in the aggregate.

As discussed below, in order to facilitate a recovery for general unsecured creditors, certain Professional Persons in the Chapter 11 Cases have agreed to limit their recovery on account of their (senior) Allowed Professional Fee Claims, thereby freeing up certain funds for distribution to creditors with Allowed General Unsecured Claims.

Lastly, all Interests in the Debtors will be canceled, and any associated management rights held by Holders of Interests will be void and of no force and effect as of the Effective Date.  Holders of Interests will not receive any Distribution or other property pursuant to the Plan.

The Disclosure Statement distributed with this Plan contains a discussion of, among other things, the Debtors' history, a summary of the Debtors' assets and liabilities, a summary of what Holders of Claims and Interests will receive under this Plan, a discussion of certain alternatives to this Plan, and a summary of the procedures and voting requirements necessary for Confirmation of this Plan.  The Disclosure Statement is intended to provide Holders of Claims with information sufficient to enable such Holders to vote on this Plan.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan.  Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims to the extent required by section 1125 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of "this Plan" or "the Plan" as used herein:

(a)  whenever from the context it is appropriate, each term, whether stated in the singular or

4

the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender;

(b)  any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(c)  any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented;

(d)  unless otherwise specified, all references in the Plan to sections and exhibits are references to sections and exhibits of or to the Plan;

(e)  the words  "herein," "hereof," "hereto," "hereunder," "herewith," and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan;

(f)  the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

(g)  any term used in capitalized form in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and

(h)  the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document other than the Confirmation Order.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

The following capitalized terms used in the Plan shall have following meanings:

**1.1**    **Administrative Expense:**    An unpaid administrative expense of the kind described in sections 365, 503(b) and 507(a)(2) of the Bankruptcy Code against any of the Debtors, including, without limitation, (a) the actual, necessary costs and expenses of preserving the Estates of the Debtors, (b) compensation and reimbursement of expenses of professionals and reimbursement of expenses of Committee members, in each case, to the extent allowable under sections 327, 328, 330(a), 331, 503(b) and/or 1103 of the Bankruptcy Code and Allowed or otherwise payable pursuant to orders of the Bankruptcy Court, and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930, including U.S. Trustee Fees.

**1.2**    **Allowed**, **Allowed Claim**, or **Allowed [____] Claim:**    With respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim that has been scheduled by any of the Debtors in their Schedules as other than disputed, contingent or unliquidated which has not been superseded by a filed proof of claim and which scheduled Claim has not been amended; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed by the Liquidating Debtors on or after the Effective Date and, to the extent necessary, approved by the Bankruptcy Court; (d) a Claim that has been timely filed by the Bar Date for which no objection has been filed by the Objection Deadline; or (e) a Claim that is allowed pursuant to the terms of this Plan.  For the avoidance of doubt: (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder solely by virtue of being allowed for voting purposes, and (ii) except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed

5

and for which no Proof of Claim has been Filed shall not be considered Allowed under this Plan.

**1.3**  **Avoidance Claims:**  Any Rights of Action arising under chapter 5 of the Bankruptcy Code or applicable federal or state law and the proceeds thereof.  As discussed in the Disclosure Statement, the Debtors and Liquidating Debtors prosecuted or otherwise pursued numerous  Avoidance Claims prior to the filing of the Plan, and do not anticipate prosecuting any Avoidance Claims after the Effective Date.

**1.4**  **Ballot:**  The form approved by the Bankruptcy Court and distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which is to be indicated, among other things, acceptance or rejection of the Plan.

**1.5**  **Bankruptcy Code:**  Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as may be amended).

**1.6**  **Bankruptcy Court:**  The United States Bankruptcy Court for the Central District of California, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the Central District of California.

**1.7**  **Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the Local Rules of the Bankruptcy Court.

**1.8**  **Bar Date:**  The applicable deadlines in the Chapter 11 Cases for filing any and all Claims (including Administrative Expenses).

**1.9**  **Bar Date Order:**  The order or orders of the Bankruptcy Court setting the Bar Date, including the *Order Granting Motion for Order Establishing a Bar Date for Filing Proofs of Claim and Approving Form and Manner of Notice of Bar Date* [Docket No. 355].

**1.10**  **Business Day:**  Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.11**  **Cash:**  Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

**1.12**  **Chapter 11 Cases:**  (a) When used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under case number 15-bk-15311-MW.

**1.13**  **Claim:**  Any claim against any of the Debtors or any property of the Debtors within the meaning of section 101(5) of the Bankruptcy Code including, without limitation, claims of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**1.14**  **Class:**  Each category of Claims or Interests classified in Article III of the Plan pursuant to section 1122 of the Bankruptcy Code.

**1.15**  **Class 3 Distribution Date(s):**  This term has the meaning set forth in Section 3.2.3 of this Plan.

**1.16**  **Committee:**  The Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these Chapter 11 Cases, as it may be reconstituted from time to time.

6

**1.17    Committee Retained Professionals**: The Committee's attorneys and other professionals (solely in their respective capacity as professionals of the Committee).

**1.18    Confirmation:** The approval by the Bankruptcy Court of this Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

**1.19    Confirmation Date:** The date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**1.20    Confirmation Hearing:** The hearing(s) on Confirmation of the Plan, to be held on the date or dates established by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

**1.21    Confirmation Order:** The order entered by the Bankruptcy Court confirming the Plan.

**1.22    Consummation:** Substantial consummation of the Plan as that term is used in section 1127(b) of the Bankruptcy Code.

**1.23    Creditor:** Any Person who is the Holder of a Claim.

**1.24    Debtor Retained Professionals:** The Debtors' attorneys and other professionals (solely in their respective capacity as attorneys or other professionals of the Debtors).

**1.25    Debtors:** The debtors and debtors in possession in the Chapter 11 Cases.

**1.26    Disallowed** or **Disallowed Claim:** With respect to any Claim, except as otherwise provided herein, a Claim or any portion thereof that (a) has been disallowed by agreement with the creditor, (b) has been disallowed by Final Order, (c) is listed in the Schedules in an unknown amount, as zero, as contingent, disputed, or unliquidated, or is not listed in the Schedules, and as to which no proof of Claim or Administrative Expense has been Filed, or (iv) has been withdrawn by the applicable creditor.

**1.27    Disclosure Statement:** The *Disclosure Statement in Respect of Joint Chapter 11 Plan of Liquidation Proposed By Debtors and Official Committee of Unsecured Creditors*, as it may be amended, modified or supplemented from time to time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Plan.

**1.28    Disputed:** With respect to any Claim or Interest, any Claim or Interest that is: (a) disputed under the Plan, or subject to a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (b) a Claim, on account of which a proof of Claim was filed or which has been otherwise asserted and in respect of which Claim the Objection Deadline has not expired, (i) for which a corresponding Claim has not been listed in the Debtors' Schedules or for which the corresponding Claim is listed in the Debtors' Schedules with a lower amount, with a differing classification, or as disputed, contingent, or unliquidated, (ii) which has not been allowed either by a Final Order, by the Plan, or under a stipulation or settlement with the Debtors or the Liquidating Debtors, and (iii) which Claim the Plan Administrator has not determined will not be subject to an objection or request for estimation; (c) contingent or unliquidated; (d) improperly asserted, by the untimely or otherwise improper filing of proof of such Claim as required by order of the Bankruptcy Court; or (e) any other Claim that is not Allowed. A Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of distribution until it is no longer Disputed.

**1.29    Distributable Assets:** Except as otherwise noted below, any and all real or personal property of any of the Debtors of any nature, including, without limitation, any Claims, Retained Rights of Action, books and records, any other general intangibles of any of the Debtors, and any

7

and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the applicable Estate within the scope of section 541 of the Bankruptcy Code. Notwithstanding the foregoing, the term "Distributable Assets" does not include any property that has been abandoned by any Estate pursuant to a Final Order of the Bankruptcy Court.

**1.30** **Distributable Estate Assets**:  Collectively, (i) the Cash on hand of the Debtors from and after the Effective Date (which was approximately $2,215,140.08 in Cash as of June 2, 2020); (ii) Retained Rights of Action; and (iii) any other remaining property or assets of the Debtors immediately prior to the Effective Date.

**1.31** **Distribution:**  The transfer of Cash or other property by the Plan Administrator to the Holders of Allowed Claims.

**1.32** **Effective Date:**  The first Business Day immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

**1.33** **Equity Security:**  Any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

**1.34** **Estates:**  The estates created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**1.35** **Excess Net Distributable Assets:**  This term has the meaning set forth in Section 3.2.3 of this Plan.

**1.36** **Exculpated Parties:**  Each in their capacities as such, (a) the Debtors, (b) the present and former officers, directors, managers, and employees of the Debtors who served in such capacities at any point from and after the Petition Date, (c) the Debtor Retained Professionals, (d) the Committee and its present and former members (solely in their respective capacity as members of the Committee), (e) the Committee Retained Professionals, and (f) the respective successors or assigns of the foregoing parties.

**1.37** **FCI:**  Debtor Freedom Communications, Inc., either in its capacity as debtor and debtor in possession under chapter 11 of the Bankruptcy Code in the Chapter 11 Cases or otherwise from and after the Effective Date.

**1.38** **Fee Applications:**  Applications of Professional Persons for allowance of compensation and reimbursement of expenses incurred in the Chapter 11 Cases

**1.39** **File** or **Filed:**  Filed of record and entered on the docket in the Chapter 11 Cases.

**1.40** **Final Decree:**  The order entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing a Chapter 11 Case.

**1.41** **Final Order:**  A judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which judgment, order, ruling or other decree has not been reversed, stayed, revoked, modified, supplemented or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.  For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be or has been filed with respect to such order.

8

**1.42    Final Resolution Date:** The date on which all Disputed Claims of Creditors shall have been resolved by Final Order or otherwise finally determined.

**1.43    General Unsecured Claim:** A Claim, other than (a) an Administrative Expense, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, (d) an Intercompany Claim, (e) a Miscellaneous Secured Claim, and (f) a PBGC Unsecured Claim.

**1.44    Governmental Unit:** This term shall have the meaning set forth in section 101(27) of the Bankruptcy Code

**1.45    Holder:** The beneficial owner of record of any Claim or Interest.

**1.46    Impaired:** This term shall have the meaning set forth in section 1124 of the Bankruptcy Code.

**1.47    Insider:** This term shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

**1.48    Insured Claim:** Any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage) that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**1.49    Intercompany Claim:** Any Claim asserted by one of the Debtors against any of the other Debtors.

**1.50    Interest:** (a) Any Equity Security, including all membership interests, shares or similar securities, whether or not transferable or denominated "stock" and whether issued, unissued, authorized or outstanding; (b) any warrant, option, or contractual right to purchase, sell, subscribe or acquire such Equity Securities at any time and all rights arising with respect thereto; and (c) any similar interest in any of the Debtors.

**1.51    IRS:** The Internal Revenue Service.

**1.52    Lien:** Any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

**1.53    Liquidating Debtors:** The Debtors on and after the Effective Date.

**1.54    Miscellaneous Secured Claim:** Any Secured Claim that has not been fully paid or otherwise satisfied or resolved pursuant to order(s) of the Bankruptcy Court prior to the entry of an order approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code. For the avoidance of doubt, this term does not include any Secured Claims of the PBGC, which claims shall be entitled to the treatment set forth in the PBGC Settlement and PBGC Settlement Order.

**1.55    Net Distributable Estate Assets:** The Distributable Estate Assets from and after the Effective Date, once such assets have been reduced to Cash, net of amounts paid in respect of Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims, and Plan Expenses and/or reserves established for any of the foregoing, and excluding those Distributable Estate Assets that are subject to any Liens until such time that such Liens are satisfied or otherwise addressed in full.

**1.56    Objection Deadline:** The deadline to object to Claims and/or Interests specified in Section 8.2 of the Plan, as may be extended pursuant thereto.

**1.57    PBGC:** Pension Benefit Guaranty Corporation or its successor or assign.

9

**1.58**    **PBGC Settlement**: That certain *Settlement Agreement* dated November 22, 2019, between and among the Committee, the PBGC, and the Debtors, as amended, modified and/or supplemented from time to time, and as approved by the Bankruptcy Court and subject to the PBGC Settlement Order.

**1.59**    **PBGC Settlement Order**:  The order of the Bankruptcy Court entered January 13, 2020 [Docket No. 1609] approving the PBGC Settlement, subject to the terms and conditions of the PBGC Settlement Order.

**1.60**    **PBGC Unsecured Claim(s)**:  The general unsecured claims of the PBGC against the Debtors as described in the PBGC Settlement.

**1.61**    **Person:**  Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.62**    **Petition Date:**  November 1, 2015 or November 2, 2015, the date, as applicable, on which each of the Debtors filed its petition for relief under chapter 11 of the Bankruptcy Code.

**1.63**    **Plan:**    This *Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors*, as it may be amended or modified from time to time.

**1.64**    **Plan Administrator:** David K. Gottlieb, or any duly selected successor.

**1.65**    **Plan Expenses:** The expenses incurred or payable by the Liquidating Debtors following the Effective Date (including the reasonable fees and costs of attorneys and other professionals) relating to implementation of the Plan, for the purpose of (a) resolving Claims and effectuating Distributions to Creditors under the Plan, (b) otherwise implementing the Plan and closing the Chapter 11 Cases, or (c) undertaking any other matter relating to the Plan.

**1.66**    **Plan Proponents:**  Together, the Debtors and the Committee.

**1.67**    **Plan Supplement:**  The supplement to the Plan to be Filed by the Plan Proponents with the Bankruptcy Court, which supplement shall contain forms of certain substantially final documents (if any) required for the implementation of the Plan, no later than ten (10) calendar days prior to the deadline for voting on the Plan.  The Plan Proponents shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**1.68**    **Post-Effective Date Service List**:  Collectively, (i) the Plan Administrator; (ii) the U.S. Trustee; (iii) PBGC; and (iv) any other party specifically requesting service of all documents in these Bankruptcy Cases from and after the Effective Date.

**1.69**    **Priority Non-Tax Claim:**  Any Claim, other than an Administrative Expense and a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

**1.70**    **Priority Tax Claim:**  A Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.71**    **Pro Rata:**  This term means, at any time, the proportion that the face amount of a Claim in a particular Class (or particular Classes, if applicable) bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class(es); and "face amount," as used herein, means (a) when used in reference to a Disputed Claim, the full stated liquidated amount claimed by the Holder of the Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other

10

applicably bankruptcy law; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**1.72    Pro Rata Class 3 / Class 4 Distribution Trigger Event:**  This term has the meaning set forth in Section 3.2.3 of this Plan.

**1.73    Professional Fee Claim:**    An Administrative Expense of a Professional Person for compensation for services rendered and reimbursement of costs, expenses or other charges incurred on or after the Petition Date and on or before the Effective Date.

**1.74    Professional Person:**  Persons retained or to be compensated by the Debtors or their Estates pursuant to sections 326, 327, 328, 330, 363, 503(b), and/or 1103 of the Bankruptcy Code.

**1.75    Record Date:**    The Effective Date or such other date that may be approved by the Bankruptcy Court.

**1.76    Released Debtor/Committee Parties:**  Collectively, (i) the Debtors, (ii) the Estates, (iii) the Debtors' directors, officers, managers, and employees (as applicable) who served in such capacities during the Chapter 11 Cases or a portion thereof, (iv) the Debtor Retained Professionals, (v) the Committee and its members (solely in their respective capacity as members of the Committee), (vi) the Committee Retained Professionals, and (viii) the respective successors or assigns of the foregoing parties.

**1.77    Released Parties:**    Collectively, (i) the Debtors' directors, officers, managers, and employees (as applicable) who served in such capacities during the Chapter 11 Cases or a portion thereof, (ii) the Debtor Retained Professionals, (iii) the Committee and its members (solely in their respective capacity as members of the Committee), (iv) the Committee Retained Professionals, and (vi) the respective successors or assigns of the foregoing parties.

**1.78    Releasing Creditor:**  Each Holder of a Claim that votes to accept, or is deemed to accept, the Plan, other than any Holder of a Class 3 Claim that affirmatively elects on its Ballot to opt out of being a Releasing Creditor.

**1.79    Retained Rights of Action:**  All Rights of Action belonging to any of the Debtors or the Estates as of the Effective Date, including, without limitation and as applicable, Avoidance Claims (including those disclosed in the Schedules), but excluding those Rights of Action specifically released under the Plan or the Confirmation Order.  The Retained Rights of Action include, without limitation, (x) any and all rights of the Debtors or the Estates to pursue any Rights of Action against any third parties, whether or not pending and whether or not disclosed or referenced in the Schedules or in the Disclosure Statement; and (y) potential claims for tax refunds.  As discussed in the Disclosure Statement, the Debtors and Liquidating Debtors do not anticipate prosecuting or otherwise pursuing any Avoidance Claims after the Effective Date.

**1.80    Rights of Action:**  Any and all claims, demands, rights, defenses, actions, causes of action (including, without limitation and as applicable, Avoidance Claims), suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges, to the extent not otherwise previously waived, released, assigned, transferred or disposed of, of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, held by any Person against any other Person, and any proceeds thereof, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to Claims or Interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all claims or rights under Bankruptcy Code sections 502, 509, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553, and 558, all fraudulent-conveyance, fraudulent-transfer, and voidable-transactions laws, all non-bankruptcy laws

11

vesting in creditors' rights to avoid, rescind, or recover on account of transfers or obligations, all preference laws, the Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction), the Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction), the Uniform Voidable Transactions Act (as it may have been codified in any particular jurisdiction), and all similar laws and statutes; (6) claims for tax refunds; and (7) any other claims which may be asserted against any of the Debtors' affiliates, insiders and/or any other third parties.

**1.81    Schedules:**  The schedules of assets and liabilities and statement of financial affairs filed by each Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended from time to time.

**1.82    Secured Claim:**  Any Claim of any Person (a) that is secured by a Lien on property in which any of the Debtors or their Estates has an interest, which Lien is valid, perfected and enforceable and not subject to avoidance under applicable law or by reason of a Final Order but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of any of the Estates securing such Claim or (b) to the extent that such Person has a valid and enforceable right of setoff under applicable non-bankruptcy law and section 553 of the Bankruptcy Code.

**1.83    Tax:**  Any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

**1.84    Timely Filed:**  With respect to a Claim, that a proof of such Claim was filed within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (including the Bar Date Order), or has otherwise been deemed timely filed by a Final Order of the Bankruptcy Court.

**1.85    Unclaimed Property:**  All Cash deemed to be "Unclaimed Property" pursuant to Article VII of the Plan.

**1.86    Unimpaired:**  With respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.87    U.S. Trustee:** The Office of the United States Trustee.

**1.88    U.S. Trustee Fees:** Fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930.

## ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**2.1    Introduction**.    As required by the Bankruptcy Code, Administrative Expenses and Priority Tax Claims are not placed into voting Classes. Instead, they are left unclassified, are not considered Impaired, do not vote on the Plan, and receive treatment specified by statute, order of the Bankruptcy Court or agreement of the parties.  All postpetition payments or credits by or on behalf of the Debtors in respect of an Administrative Expense or Priority Tax Claim shall reduce the Allowed amount thereof.

**2.2    Administrative Expenses**.  Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which an Administrative Expense

12

becomes an Allowed Administrative Expense, the Holder of such Allowed Administrative Expense shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Expense, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense or (b) such other less favorable treatment as to which such Holder and the Debtors or Liquidating Debtors shall have agreed upon in writing; *provided*, *however*, that Allowed Administrative Expenses with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements related thereto.  Unless otherwise agreed by the Liquidating Debtors, (a) requests for payment of all Administrative Expenses must be Filed and served as described in Section 11.2 of the Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses of Professional Persons as set forth in Section 11.3 of the Plan.  No interest or penalties of any nature shall be paid in respect of an Allowed Administrative Expense.

**2.3** **Professional Fee Claims**.  Professional Fee Claims shall be paid as set forth in Section 11.3 of the Plan.

**2.4** **Priority Tax Claims**.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Priority Tax Claims are not classified.  Thus, Holders of Priority Tax Claims are not entitled to vote to accept or reject the Plan.  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, at the option of the Liquidating Debtors, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtors or Liquidating Debtors or otherwise determined upon an order of the Bankruptcy Court.  Any Allowed Priority Tax Claim (or portion thereof) not yet due and payable as of the Effective Date will be paid by the Liquidating Debtors no later than when due and payable under applicable non-bankruptcy law without regard to the commencement of the Chapter 11 Cases; provided that upon request of the Liquidating Debtors, the Bankruptcy Court shall determine the amount of any Disputed Priority Tax Claim.  Any Holder of a Priority Tax Claim may agree to accept different treatment as to which the Liquidating Debtors and such Holder have agreed upon in writing.

**2.5** **Statutory Fees**.  All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date or as soon as practicable thereafter.  From and after the Effective Date, the Liquidating Debtors shall pay the fees assessed against their respective Estates only until such time as the particular Chapter 11 Cases are closed, dismissed or converted.  In addition, the Liquidating Debtors shall file post-confirmation quarterly reports in conformity with the U.S. Trustee guidelines until entry of an order closing or converting the Chapter 11 Cases.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**3.1** **Summary.**  The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest (or a portion thereof) is classified in a particular Class only to the extent that the Claim or Interest (or a portion thereof)

13

qualifies within the description of that Class. A Claim or Interest (or a portion thereof) is also classified in a particular Class only to the extent that such Claim or Interest (or a portion thereof) is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date. Any postpetition payment by or on behalf of the Estates in respect of a Claim shall reduce the Allowed amount thereof.

**3.2    Classification and Treatment of Claims and Interests.**

**3.2.1    Class 1 – Priority Non-Tax Claims.**

> (a)    <u>Classification</u>: Class 1 consists of all Priority Non-Tax Claims.

> (b)    <u>Treatment</u>: At the election of the Liquidating Debtors, each Holder of a Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, on or as soon as practicable after the later of (i) the Effective Date, or (ii) thirty (30) calendar days following the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, (a) a Cash payment from the Liquidating Debtors equal to the Allowed amount of such Claim, or (b) such other treatment as otherwise agreed by the Holder of such Claim and the Debtors or the Liquidating Debtors.

> (c)    <u>Impairment/Voting</u>: Class 1 Priority Non-Tax Claims are Unimpaired by the Plan, and Holders of such Class 1 Priority Non-Tax Claims are therefore conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, Holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

**3.2.2    Class 2 – Miscellaneous Secured Claims.**

> (a)    <u>Classification</u>: Class 2 consists of any Miscellaneous Secured Claims. Although all Miscellaneous Secured Claims have been placed in one Class for the purposes of nomenclature, each Miscellaneous Secured Claim, to the extent secured by a Lien on any property or interest in property of any of the Debtors different from that securing any other Miscellaneous Secured Claim, shall be treated as being in a separate sub-Class for purposes of voting and receiving distributions under the Plan.

> (b)    <u>Treatment</u>: Except to the extent that a Holder of an Allowed Miscellaneous Secured Claim has been paid by the Debtors, in whole or in part, prior to the Effective Date, on the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, at the option of the Liquidating Debtors, in full and final satisfaction of such Miscellaneous Secured Claim, (i) each Allowed Miscellaneous Secured Claim shall be reinstated and Unimpaired in accordance with section 1124 of the Bankruptcy Code,  or (ii) each Holder of an Allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Miscellaneous Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Miscellaneous Secured Claim, (y) the collateral securing such Allowed Miscellaneous Secured Claim, or (z) such other treatment as may be agreed to by the Holder of such Claim and the Debtors or the Liquidating Debtors.

> (c)    <u>Impairment/Voting</u>: Class 2 Miscellaneous Secured Claims are Unimpaired by the Plan, and Holders of such Class 2 Miscellaneous Secured Claims are therefore conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, Holders of Class 2 Miscellaneous Secured Claims are not entitled to vote to accept or reject the Plan.

**3.2.3    Class 3 – General Unsecured Claims.**

> (a)    <u>Classification</u>: Class 3 consists of all General Unsecured Claims.

(b)    Treatment: Except to the extent that a Holder of an Allowed Class 3 General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of the each Allowed Class 3 General Unsecured Claim, each Holder of an Allowed Class 3 General Unsecured Claim shall receive a Cash payment equal to its Pro Rata share of the Net Distributable Estate Assets on one or more dates (the "Class 3 Distribution Date(s)") as soon as reasonably practicable after (i) all General Unsecured Claims have been Allowed, Disallowed or otherwise resolved and (ii) the payment of (or reserves for) all Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims and Plan Expenses (unless the holder of the applicable claim agrees to other less favorable treatment); *provided, however,* in the event that an aggregate of at least $1,000,000 in Cash in Net Distributable Assets is or will be distributed, as Distributions under the Plan, to the Holders of Allowed Class 3 General Unsecured Claims on account of such Claims (the "Pro Rata Class 3 / Class 4 Distribution Trigger Event"), any and all Net Distributable Assets in excess of such $1,000,000 Cash threshold (the "Excess Net Distributable Assets") shall be distributed by the Liquidating Debtors to the Holders of Allowed Class 3 Claims and the PBGC (or other Holder of the Class 4 Claims), on account of their Class 3 and Class 4 Claims, respectively, on a Pro Rata basis as soon as reasonably practicable on the Class 3 Distribution Date(s); *provided further* that in the discretion of the Plan Administrator, Allowed Class 3 General Unsecured Claims may receive Distributions before the reconciliation of all Disputed Class 3 General Unsecured Claims provided that (x) reserves are maintained for any Class 3 General Unsecured Claim that is Disputed at the time of such Distribution and (y) the Plan Administrator shall make a corrective Distribution following the resolution of any Disputed Claim within thirty (30) days of such resolution.

(c)    Impairment/Voting: Class 3 General Unsecured Claims are Impaired under the Plan. Therefore, Holders of such Class 3 General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 3.2.4  **Class 4 – PBGC Unsecured Claims** .

(a)    Classification: Class 4 consists of all PBGC Unsecured Claims.

(b)    Treatment: The Holder of the PBGC Unsecured Claims shall receive the treatment provided for the PBGC on account of the PBGC Unsecured Claims set forth in the PBGC Settlement. Specifically, pursuant to the PBGC Settlement, the PBGC has agreed to waive any right to receive Distributions under the Plan, on account of the PBGC Unsecured Claims, unless and until the Pro Rata Class 3 / Class 4 Distribution Trigger Event occurs or is otherwise satisfied; upon the occurrence of the Pro Rata Class 3 / Class 4 Distribution Trigger Event, the PBGC shall be entitled to share on a Pro Rata basis with the Holders of the PBGC Unsecured Claims any Excess Net Distributable Assets.  Nothing in the Plan is intended to or will modify the PBGC Settlement, and in the event of any discrepancy between the treatment noted above and the treatment provided for the PBGC under the PBGC Settlement, the terms of the PBGC Settlement govern.

(c)    Impairment/Voting: Class 4 PBGC Unsecured Claims are Impaired under the Plan. Therefore, Holders of such Class 4 PBGC Unsecured Claims are entitled to vote to accept or reject the Plan.

### 3.2.5  **Class 5 – Interests in the Debtors**.

(a)    Classification: Class 5 consists of all Interests.

(b)    Treatment: Holders of Interests shall receive no distributions under the Plan, and on the Effective Date, all Interests shall be deemed void and of no force and effect.

(c)    Impairment/Voting: Class 5 Interests are Impaired and Holders of such Class 5 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

15

Therefore, Holders of Class 5 Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1    Identification of Unimpaired Classes**. The following Classes of Claims are Unimpaired under the Plan:

        (a)    Class 1 – Priority Non-Tax Claims

        (b)    Class 2 – Miscellaneous Secured Claims

**4.2    Identification of Impaired Classes**. The following Classes of Claims and Interests are Impaired under the Plan:

        (a)    Class 3 – General Unsecured Claims

        (b)    Class 4 – PBGC Unsecured Claims

        (c)    Class 5 – Interests in the Debtors

**4.3    Classes Permitted and Not Permitted to Vote.**  Classes 1 and 2 are Unimpaired.  Holders of Claims in these Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall not be entitled to vote to accept or reject the Plan. Classes 3, 4 and 5 are Impaired.  Holders of Claims in Class 3 and 4 are permitted to vote to accept or reject the Plan.  Holders of Interests in Class 5 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Plan Proponents reserve all rights with respect to all Claims and Interests classified by the Plan.  An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.

**4.4    Effect of Non-Voting**.  If no Holder of a Claim eligible to vote in a particular Class timely votes to accept or reject the Plan, the Plan Proponents may seek to have the Plan deemed **accepted** by the Holders of such Claims in such Class for purposes of section 1129 of the Bankruptcy Code.

**4.5    Nonconsensual Confirmation**.  In the event any Class of Claims votes to reject the Plan and given the deemed rejection of the Plan by the Holders of Interests in Class 5, the Plan Proponents request that the Bankruptcy Court confirm the Plan notwithstanding such rejection pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

**4.6    Postpetition Interest**.  Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Claim to receive postpetition interest on account of such Claim, except to the extent that the Holder of a Claim has the benefit of a Lien on assets the value of which exceeds the amount of such Claim or the Plan expressly provides for postpetition interest on account of such Claim.

**4.7    Elimination of Vacant Classes**.  Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to

16

section 1129(a)(8) of the Bankruptcy Code.

**4.8**    **Special Provisions Regarding Insured Claims**.

(a)    With respect to any Insured Claim, any party with rights against or under the applicable insurance policy may pursue such rights. Nothing herein shall constitute a waiver of any causes of action the Debtors or the Liquidating Debtors may hold against any Person, including the Debtors' insurance carriers; and nothing herein is intended to, shall, or shall be deemed to preclude any Holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided, however*, that the Debtors and the Liquidating Debtors do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

(b)    The Plan shall not modify the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all rights, claims and defenses to liability and/or coverage that such insurers may have, including the right to contest and/or litigate with any party the existence, primacy and/or scope of liability and/or available coverage under any alleged applicable policy. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any proof of claim, including, without limitation, any rights or defenses arising out of, or in the nature of, setoff or recoupment, or the Debtors' rights and defenses to such proofs of claim.

## ARTICLE V

### MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1**    **Settlement of Intercompany Claims.**    Upon the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Debtor and their successors and assigns hereby waive and release each other and all of their respective successors from any and all Intercompany Claims and Rights of Action among and between any or all of the Debtors, which waiver and release shall be effective as a bar to all actions, causes of action, suits, Claims, Liens, or demands of any kind with respect to any Intercompany Claim or Right of Action among or between any or all of the Debtors.

**5.2**    **Partial Substantive Consolidation.**

(a)    In furtherance of the settlements contained in the Plan, the entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, as of the Effective Date, of the substantive consolidation of the Debtors and their respective Estates into the Estate of Debtor FCI, solely for purposes of voting and distributions under the Plan. Pursuant to the Confirmation Order, on and after the Effective Date, (i) all Distributable Assets to be used for distributions to Creditors of any of the Debtors will be treated as though they were merged into Liquidating Debtor FCI; and (ii) any obligation of any Debtor and all guarantees thereof executed by, or joint liability of, any of the Debtors will be treated as one obligation of Liquidating Debtor FCI for distribution purposes pursuant to this Plan.

(b)    Notwithstanding the foregoing, the substantive consolidation of the Debtors for voting and distribution purposes shall not affect or impair (i) any rights, Claims, remedies or defenses of (or between) the separate Debtors as of the Petition Date, including with respect to any Retained Rights of Action; (ii) the legal and organizational structure of the Debtors; (iii) any Liens that are maintained, recognized, or preserved under the Plan; and (iv) claims under or with respect to any insurance policy of any Debtor (or any right to the proceeds of any such policy or policies).

(c)    The Disclosure Statement and the Plan shall be deemed to be a motion by the Plan Proponents for substantive consolidation.    Any objection by an affected Creditor to such

17

consolidation shall be treated as an objection to Confirmation and shall be determined by the Bankruptcy Court in the context of considering Confirmation of the Plan.

(d)    If the Bankruptcy Court determines that substantive consolidation of any given Debtor(s) is not appropriate, then the Plan Proponents may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis.  Furthermore, the Plan Proponents reserve their rights to seek Confirmation of the Plan without implementing substantive consolidation of any given Debtor, and, in the Plan Proponents' discretion, to request that the Bankruptcy Court approve the treatment of and distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis.

(e)    Notwithstanding the substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930 until its particular case is closed; provided, however, the Debtors or some of them may apply to close the cases of those Debtors following Confirmation.

**5.3    Continued Corporate Existence and Vesting of Assets.**

(a)    On and after the Effective Date, subject to the requirements of the Plan, the Liquidating Debtors will continue to exist as separate corporations or limited liability companies (as applicable) and shall retain all of the powers of corporations or limited liability companies (as applicable) under applicable non-bankruptcy law, and without prejudice to any right to amend their respective operating agreement, dissolve, merge or convert into another form of business entity, or to alter or terminate their existence.  The existing stock, membership and/or other equity interests (as applicable) of the Debtors shall be deemed to be held through the Plan Administrator.  Further, the Debtors' bylaws, operating agreements, and/or other corporate governance documents (as applicable) shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

(b)    Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtors and their Estates, including any interests in subsidiaries and affiliates and any Retained Rights of Action of the Debtors, will vest in Liquidating Debtor FCI free and clear of all Claims, Liens, charges, other encumbrances and Interests.  Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtors, which shall be continued as corporations or limited liability companies (as applicable) following the Effective Date subject to the terms of the Plan.

(c)    On and after the Effective Date, subject to the requirements of the Plan, the Liquidating Debtors shall be permitted to conduct their business (to the extent permitted by the Plan), reconcile Claims, use and dispose of assets, prosecute litigation, make required tax filings, and otherwise take any and all actions as may be appropriate to implement the Plan without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.  The Liquidating Debtors shall be authorized, without limitation, to use and dispose of the Distributable Assets of the Debtors and their Estates, to investigate and pursue any Retained Rights of Action as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to acquire and dispose of other property, and to otherwise administer their affairs.

**5.4    Corporate Action; Winding Up of Affairs.**

(a)    On the Effective Date, the matters under the Plan involving or requiring, as applicable, corporate or limited liability company action of the members, managers, directors, or officers of the Debtors, including but not limited to actions requiring a vote or other approval of, as applicable, the board of managers or board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have

18

been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date, without any further action by the Bankruptcy Court or the members, managers, directors, or officers of the Debtors.

(b)     Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing director, manager and officer of the Debtors will be deemed to have resigned on the Effective Date without any further corporate action, (ii) the Plan Administrator shall be deemed the sole manager, director, officer and representative of the Liquidating Debtors to exercise the rights, power and authority of the Liquidating Debtors under applicable provisions of this Plan and bankruptcy and non-bankruptcy law, and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court.    The Confirmation Order shall modify the Debtors' operating agreements, bylaws and any other corporate governance documents such that the provisions of this Plan can be effectuated.  The Plan shall be administered by the Plan Administrator, and all actions taken thereunder in the name of the Liquidating Debtors shall be taken through the Plan Administrator.  All corporate governance activities of the Liquidating Debtors shall be exercised by the Plan Administrator in his or her discretion, subject to the terms of this Plan.

(c)     Following the Confirmation Date, the Liquidating Debtors shall not engage in any business activities or take any actions, except those necessary or appropriate to (i) effectuate the Plan and (ii) dispose of their assets and wind up the affairs of the Debtors and their Estates as soon as reasonably practicable.  On and after the Effective Date, the Plan Administrator may, in the name of the Liquidating Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Plan Administrator may, without application to or approval of the Bankruptcy Court, pay, from the proceeds of Distributable Assets, the charges that he or she incurs after the Effective Date for professional fees and expenses that, but for the occurrence of the Effective Date, would constitute Allowed Administrative Expenses.

(d)     From and after the Effective Date, (i) the Debtors, for all purposes, shall be deemed to have withdrawn their business operations from any state or territory in which they were previously conducting or are registered or licensed to conduct their business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtors shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

(e)     Pursuant to section 1146(c) of the Bankruptcy Code, any transfers effected pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.

**5.5     Plan Administrator.**

(a)     On the Effective Date, the Plan Administrator shall begin acting for the Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under this Plan, subject to the provisions hereof.  The Plan Administrator shall serve in such capacity through the earlier of the date that all of the Debtors are dissolved in accordance with this Plan and the date such Plan Administrator resigns, is terminated or otherwise unable to serve; *provided, however*, that any successor Plan Administrator appointed pursuant to the Plan shall serve in such capacity after the effective date of such person's appointment as Plan Administrator.

(b)     The qualifications and proposed compensation of and other disclosures regarding the Plan Administrator shall be set forth as part of the Plan Supplement; such compensation may be paid from the Liquidating Debtors' Cash on hand, without further notice or order of the Bankruptcy Court.

19

Further, the Plan Administrator shall be entitled to reimbursement, from the Liquidating Debtors' Cash on hand, for his or her actual, reasonable, and necessary expenses incurred in connection with the performance of his or her duties, without the need for further notice or Bankruptcy Court approval. All distributions to be made to Creditors under the Plan shall be made by the Plan Administrator (or his or her designated agent). The Plan Administrator shall deposit and hold all Cash in trust for the benefit of Creditors (including Professional Persons) receiving distributions under the Plan. The duties and powers of the Plan Administrator shall include, without limitation, the following (without need of further Court approval):

(i) To exercise all power and authority that may be exercised, to commence all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, or manager of the Liquidating Debtors with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and managers, including consummating the Plan and all transfers thereunder on behalf of the Liquidating Debtors;

(ii) To wind up the affairs of the Liquidating Debtors and any or all of their subsidiaries and affiliates and their Estates to the extent appropriate as expeditiously as reasonably possible;

(iii) To maintain all accounts, make distributions, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Liquidating Debtors;

(iv) To use, manage, sell, abandon, convert to Cash and/or otherwise dispose of the Distributable Assets for the purpose of liquidating or otherwise disposing of all remaining property of the Estates, making distributions and fully consummating this Plan;

(v) To take all steps necessary or appropriate to terminate the corporate existence of the Debtors consistent with this Plan;

(vi) To prosecute objections to Claims and Interests, and to compromise or settle any Claims or Interests (Disputed or otherwise);

(vii) To prosecute any and all Retained Rights of Action and compromise or settle any Retained Rights of Action; provided, however, the Plan Administrator will not, on behalf of the Debtors and Liquidating Debtors, prosecute or otherwise pursue any Avoidance Claims after the Effective Date;

(viii) To prepare and file tax returns to the extent required by law;

(ix) To employ and compensate any and all such professionals and agents as the Plan Administrator, in his or her sole discretion, deems appropriate to perform his or her duties under the Plan without further order of the Bankruptcy Court; and

(x) To take all other actions not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan, including, without limitation, filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

(c)    The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown. In the event of the resignation, removal, death, or incapacity of the Plan Administrator, the Bankruptcy Court shall, upon motion or *sua sponte*, appoint another Person to become Plan Administrator, with notice thereof provided to the Post-Effective Date Service List.

20

Any successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

**5.6    Source of Funding**.  The source of all distributions and payments under this Plan will be the Distributable Assets and the proceeds thereof, including, without limitation, the Debtors' Cash on hand and proceeds from any sale or other disposition of the Debtors' remaining assets and prosecution of Retained Rights of Action.

**5.7    Retained Rights of Action.**

(a)    In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Rights of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Liquidating Debtors' rights to commence, prosecute, or settle such Retained Rights of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Plan Administrator may pursue such Retained Rights of Action, as appropriate, in accordance with the best interests of the Liquidating Debtors; provided, however, the Plan Administrator will not, on behalf of the Debtors and Liquidating Debtors, prosecute or otherwise pursue any Avoidance Claims after the Effective Date.  **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Right of Action against it as any indication that the Debtors or Liquidating Debtors, as applicable, will not pursue any and all available Retained Rights of Action against it. The Debtors or Liquidating Debtors, as applicable, expressly reserve all rights to prosecute any and all Retained Rights of Action against any Person, except as otherwise expressly provided in the Plan.**  Unless any Right of Action is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors and the Liquidating Debtors expressly reserve all Rights of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Rights of Action upon, after, or as a consequence of Confirmation or Consummation of the Plan.

(b)    In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Rights of Action shall vest in the Liquidating Debtors.  The Liquidating Debtors shall have standing as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue, the Retained Rights of Action and objections to Claims, as appropriate, in the business judgment of the Plan Administrator.  The Liquidating Debtors, acting through the Plan Administrator, may settle, release, sell, assign, otherwise transfer, or compromise Retained Rights of Action and/or objections to Claims without need for notice or order of the Bankruptcy Court.

**5.8    Interests in Non-Debtors Affiliates and Subsidiaries.**  As of the Effective Date, except as expressly provided in the Plan or by separate order of the Bankruptcy Court, the Liquidating Debtors shall retain any stock or interests that they may hold in any non-Debtor affiliates or subsidiaries and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests.  After the Effective Date, the Liquidating Debtors may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

**5.9    Payment of Plan Expenses**.  The Liquidating Debtors may pay all reasonable Plan Expenses without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court.

**5.10    Dissolution of Debtors; Final Decree**.  Once the Plan Administrator determines that the Final Resolution Date has occurred as to any of the Liquidating Debtors, such Liquidating Debtors shall be dissolved for all purposes by the Plan Administrator without the necessity for any other or further actions to be taken by or on behalf of any Liquidating Debtors or payments to be made in connection therewith; *provided, however*, that, without the need of any further approval, the Plan Administrator in his or her discretion may execute and file documents and take all other actions as

DOCS_LA:326527.6 29266/002

he or she deems appropriate relating to the dissolution of the Liquidating Debtors under the laws of Delaware and/or any other applicable states, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Liquidating Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of certificates.  At any time following the Effective Date, the Plan Administrator, on behalf of the Liquidating Debtors, shall be authorized to move for the entry of a final decree closing any or all of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.

**5.11** __Records__.  The Liquidating Debtors and Plan Administrator shall maintain reasonably good and sufficient books and records of accounting relating to the Distributable Assets, the Liquidating Debtors' Cash, the management thereof, all transactions undertaken by such parties, all expenses incurred by or on behalf of the Liquidating Debtors and Plan Administrator, and all distributions contemplated or effectuated under this Plan.  Upon the entry of a final decree closing the Chapter 11 Cases, unless otherwise ordered by the Bankruptcy Court, the Liquidating Debtors and Plan Administrator may destroy or otherwise dispose of all records maintained by the Liquidating Debtors and/or Plan Administrator.   Notwithstanding anything to the contrary, the Plan Administrator may, upon notice to the Post-Effective Date Service List and without Bankruptcy Court approval, destroy any documents that he or she believes are no longer required to effectuate the terms and conditions of this Plan.

## __ARTICLE VI__

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1** __Rejection of Executory Contracts and Unexpired Leases.__  Except for any executory contracts or unexpired leases:  (i) that previously were assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) that are listed for assumption by the Debtors as of the Effective Date in a Plan Supplement to be filed and served on affected non-Debtor counterparties; (iii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to the Effective Date; (iv) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates; or (v) that were previously sold, conveyed or otherwise assigned pursuant to Final Order, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Without limiting the foregoing, the indemnification obligations in favor of the Debtors' current directors, officers, managers, and representatives, to the extent not previously rejected, shall be assumed as of the Effective Date, and all other pre-Effective Date indemnification obligations of the Debtors shall be deemed rejected as of the Effective Date to the extent that such obligations are contained in executory contracts within the meaning of section 365 of the Bankruptcy Code, but only to the extent not inconsistent with any existing insurance obligations.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions or rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

**6.2** __Bar Date for Rejection Claims.__  If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors or their Estates unless a proof of Claim is Filed and served on the Plan Administrator and its counsel within thirty (30) calendar days after the earlier of (a) the Effective Date and (b) service of a notice that the executory contract or unexpired lease has been rejected.  All such Claims for which proofs of Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured Claims, subject to the provisions of the Plan.

## ARTICLE VII

### DISTRIBUTIONS AND RELATED MATTERS

**7.1    Dates of Distribution.**  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, by the Liquidating Debtors (or their agent) on the immediately following Business Day.

**7.2    Cash Distributions.**  Distributions of Cash may be made either by check drawn on a domestic bank or wire or ACH transfer from a domestic bank, at the option of the Liquidating Debtors, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**7.3    Rounding of Payments.**  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

**7.4    Disputed Claims.**  Notwithstanding all references in the Plan to Claims that are Allowed, solely for the purpose of calculating (but not distributing) the amount or number of distributions to be made on account of Allowed Class 3 General Unsecured Claims under the Plan, such calculations may be made, in the Plan Administrator's sole discretion, as if each Disputed Claim were an Allowed Claim, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or authorized or otherwise determines the amount or number which would constitute a sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by the Liquidating Debtors), such amount or number as determined by the Bankruptcy Court may be used for calculations as to such Disputed Claim instead.

**7.5    Undeliverable and Unclaimed Distributions.**  In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Plan Administrator has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however*, that such distributions shall be deemed Unclaimed Property at the expiration of ninety (90) calendar days from the date of such attempted distribution.  After such date, all Unclaimed Property shall revert to the Liquidating Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be forever barred.  The Plan Administrator may implement reasonable attempts to reach any recipient of an undeliverable distribution prior to reverting such property to the Liquidating Debtors.

**7.6    Minimum Distributions.**  Notwithstanding any other provision of the Plan, in the Plan Administrator's sole discretion, the Plan Administrator will not be required to make distributions of Cash less than $25 in value, and each such Claim to which this limitation applies shall be deemed fully and finally satisfied and not entitled to any further payment or consideration  pursuant to Article IX and its Holder is forever barred pursuant to Article IX from asserting that Claim or Claims against the Debtors, the Liquidating Debtors, their Estates, or their property.

**7.7    Compliance With Tax Requirements**.

(a) The Liquidating Debtors shall comply with all withholding and reporting requirements imposed by federal, state, or local taxing authorities in connection with making distributions pursuant to the Plan.

(b) In connection with each distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Liquidating Debtors shall

23

file such information return with the IRS and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received, the Liquidating Debtors may, in their sole option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

**7.8    Record Date in Respect to Distributions.**  Except as set forth below, the record date and time for the purpose of determining which Persons are entitled to receive any and all distributions on account of any Allowed Claims or Interests, irrespective of the date of or number of distributions, shall be the Record Date.

## ARTICLE VIII

## LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES

**8.1    Litigation.**  Except as may be expressly provided otherwise in the Plan, the Liquidating Debtors, through the Plan Administrator, shall be responsible for pursuing Retained Rights of Action, any objection to the allowance of any Claim, and the determination of tax issues and liabilities.

**8.2    Objections to Claims; Objection Deadline.**  As of the Effective Date, the Liquidating Debtors shall be authorized to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims.  Any objection to a Claim shall be filed with the Bankruptcy Court and served on the Person holding such Claim within one hundred eighty (180) calendar days after the Effective Date (as may be extended pursuant to this section, the "Objection Deadline"), provided that the Liquidating Debtors may seek one or more extensions thereof subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002.

**8.3    Tax Determinations**.  In addition to any other available remedies or procedures with respect to Tax issues or liabilities or rights to tax refunds, the Liquidating Debtors, at any time, may utilize (and receive the benefits of) section 505 of the Bankruptcy Code with respect to: (1) any tax issue or liability or right to a tax refund relating to an act or event occurring prior to the Effective Date; or (2) any tax liability or right to a tax refund arising prior to the Effective Date.  If the Liquidating Debtors utilize section 505(b) of the Bankruptcy Code: (1) the Bankruptcy Court shall determine the amount of the subject Tax liability or right to a Tax refund in the event that the appropriate Governmental Unit timely determines a Tax to be due in excess of the amount indicated on the subject return; and (2) if the prerequisites are met for obtaining a discharge of Tax liability in accordance with section 505(b) of the Bankruptcy Code, the Liquidating Debtors shall be entitled to such discharge which shall apply to any and all Taxes relating to the period covered by such return.

**8.4    Temporary or Permanent Resolution of Disputed Claims**.  The Liquidating Debtors may request that the Bankruptcy Court estimate any contingent or unliquidated Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether any Person has previously objected to such Disputed Claim.  The Bankruptcy Court will retain jurisdiction and power to estimate any contingent or unliquidated Disputed Claim at any time.  If the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount will constitute either the Allowed amount of such Disputed Claim or a maximum limitation on such Disputed Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Disputed Claim, then the Liquidating Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Disputed Claim.  In addition, the Liquidating Debtors may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim or Interest and the rights of the Holder of such Claim or Interest would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not

24

necessarily exclusive of one another.

**8.5    Setoffs**.  The Liquidating Debtors may, but shall not be required to, setoff against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim may be setoff against claims of any nature whatsoever that the Debtors or the Estates may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Debtors of any such claim that the Liquidating Debtors may have against such Holder, unless otherwise agreed to in writing by such Holder and the Liquidating Debtors.

## ARTICLE IX

### INJUNCTIONS, EXCULPATION, RELEASES AND RELATED PROVISIONS

**9.1    Injunctions.**

**9.1.1    Generally**.  Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date.  From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, seeking to hold (i) the Liquidating Debtors or their Estates, or (ii) the property of the Debtors or their Estates, liable for any Claim, obligation, right, interest, debt or liability that has been released pursuant to the Plan.

**9.1.2    Non-Discharge of Debtors; Injunction.  In accordance with section 1141(d)(3) of the Bankruptcy Code, this Plan does not discharge the Debtors.  Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  As such, no Person may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under the Plan.  As of the Effective Date, all parties are precluded from asserting against any property to be distributed under this Plan any Claims, rights, causes of action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in this Plan or the Confirmation Order.**

**9.2    Exculpation.  As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act taken or omitted to be taken, on or after the Petition Date, in connection with, or related to, the formulation, preparation, dissemination, implementation, administration, Confirmation or Consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Cases or the Debtors up to and including the Effective Date; *provided, however*, that the foregoing provisions of this subsection shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.  For the avoidance of doubt, the scope of the exculpation provided under this Section 9.2 does not include any of the current or former members of the Debtors or any of the former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.  Notwithstanding anything in the Plan to the contrary, no Person serving as Plan Administrator shall have or incur any personal liability as the manager, member, director or officer of the Debtors or Liquidating Debtors for any act taken or omission made in connection with the wind-up or dissolution of the Liquidating Debtors or any nondebtor subsidiary or affiliate; *provided, however*, that the foregoing shall have no effect on the liability of the Plan Administrator that results from any such act or omission that is**

25

determined in a Final Order to have constituted willful misconduct or actual fraud.

**9.3      Debtor Release.  As of and subject to the occurrence of the Effective Date, for good and valuable consideration, the Debtors, for themselves and the Estates, hereby irrevocably, unconditionally and generally release the Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, which the Debtors or their Estates ever had, now have or hereafter can, shall or may have against any of the Released Parties from the beginning of time to the Effective Date that in any way relate to the Debtors, their direct or indirect non-Debtor subsidiaries, the Estates, or the Chapter 11 Cases; *provided, however*, that the foregoing provisions of this subsection shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.  For the avoidance of doubt, the scope of the release provided under this Section 9.3 does not include any of the current or former members of the Debtors or any of the former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.**

**9.4      Consenting Creditor Release.  As of and subject to the occurrence of the Effective Date and except for the treatment provided in the Plan, for good and valuable consideration  each Releasing Creditor, for itself and its respective present or former officers, directors, managers, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, attorneys, accountants, professionals, and successors or assigns, in each case solely in their capacity as such, shall be deemed to have completely, conclusively, unconditionally and irrevocably released the Released Debtor/Committee Parties from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, which the Releasing Creditor, the Debtors or their Estates ever had, now have or hereafter can, shall or may have against any of the Released Debtor/Committee Parties from the beginning of time to the Effective Date that in any way relate to the Debtors, their direct or indirect non-Debtor subsidiaries, the Estates, or the Chapter 11 Cases, *provided, however*, that the foregoing release does not affect or impair any obligations under any intercreditor agreements or any other agreements or arrangements between and among non-Debtor parties.   For the avoidance of doubt, the Released Debtor/Committee Parties do not include any of the current or former non-Debtor members of the Debtors or any former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.**

## ARTICLE X

### RETENTION OF JURISDICTION AND POWER

**10.1      Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and power over the Chapter 11 Cases and any of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by applicable law, including, without limitation, such jurisdiction and power as appropriate to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction and power for the following purposes:

(a) establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code), resolve any objections to the allowance, priority, or secured or unsecured status of Claims or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim or Interest pursuant to the Plan, including but not limited to determining whether any Creditor has a valid lien

26

against any of the Debtors' assets;

(b) grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c) resolve any matters related to the rejection of any executory contract or unexpired lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d) ensure that distributions to Holders of Allowed Claims are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

(e) decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any of the Debtors that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

(f) enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason reversed, stayed, revoked, modified, supplemented or amended;

(g) resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h) subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(i) issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan or the Confirmation Order;

(j) consider and act on the compromise and settlement of any Claim or Retained Right of Action;

(k) decide or resolve any Retained Rights of Action;

(l) enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Liquidating Debtors wherever located;

(m) hear and decide any objections to Claims brought by the Liquidating Debtors or any other party in interest, to the extent authorized by the Plan;

(n) hear and decide any litigation, as applicable, brought by the Liquidating Debtors;

27

(o) hear and determine any motions or contested matters involving Priority Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Chapter 11 Cases, including, without limitation (i) matters involving federal, state, and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of any of the Debtors;

(p) determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(q) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings issued or entered in connection with the Chapter 11 Cases or the Plan, including any order approving any stipulation or settlement in the Chapter 11 Cases;

(r) remand to state court any claim, cause of action, or proceeding involving the Debtors that was removed to federal court, in whole or in part in reliance upon 28 U.S.C. § 1334;

(s) determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(t) determine any other matter not inconsistent with the Bankruptcy Code; and

(u) enter an order or final decree concluding the Chapter 11 Cases.

**10.2**    **Failure of the Bankruptcy Court to Exercise Jurisdiction.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth immediately above, the provisions of this Article X shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

# ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.1**    **Headings.**  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**11.2**    **Bar Date for Administrative Expenses**.  **Requests for payment of all Administrative Expenses, other than for which a request and/or proof of Claim has previously been filed, must be Filed and served on the Liquidating Debtors and the U.S. Trustee by no later than thirty (30) calendar days after the Effective Date.  The Liquidating Debtors shall have until the Objection Deadline to object to a Timely Filed request for payment of an Administrative Expense (as may be extended),** *provided, that,* **the Liquidating Debtors may seek extension(s) thereof subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002.  Nothing in the Plan shall prohibit the Liquidating Debtors from paying Administrative Expenses in the ordinary course in accordance with applicable law during or after the Chapter 11 Cases.**

**11.3**    **Professional Fee Claims**.  **Notwithstanding the foregoing provisions of this Article XI, but except as may be expressly provided in other sections of the Plan, Professional Persons**

28

requesting compensation or reimbursement of expenses incurred after the Petition Date and prior to the Effective Date must file and serve, on all parties entitled to notice thereof, a Fee Application for final allowance of compensation and reimbursement of expenses no later than thirty (30) calendar days after the Effective Date and any objections to such applications must be made in accordance with applicable rules of the Bankruptcy Court.  Professional Fee Claims shall be paid in accordance with the terms of the order(s) authorizing such payments as promptly as possible on the Effective Date for any outstanding amounts due as of the Effective Date, and as soon as practicable thereafter as such obligation to pay becomes due unless otherwise agreed upon by the applicable Professional.  From and after the Effective Date, the Liquidating Debtors shall in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professionals thereafter incurred by the Liquidating Debtors.

**11.4**    **Non-Voting Equity Securities**.  If and to the extent applicable, the Debtors shall comply with the provisions of section 1123(a)(6) of the Bankruptcy Code.

**11.5**    **Subordination Agreements**.  Pursuant to section 510(a) of the Bankruptcy Code, to the extent there is any subordination agreement in place between creditors that is enforceable under non-bankruptcy law, the Liquidating Debtors shall honor such subordination agreement and turn over any distributions required to be turned over pursuant to the terms of such agreements.

**11.6**    **Notices**.  All notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by mail or facsimile addressed to.

Plan Administrator:
D. GOTTLIEB & ASSOCIATES, LLC
Attn: David K. Gottlieb
16255 Ventura Blvd., Suite 440
Encino, California 91436
Telephone: (818) 539-7720
Facsimile: (818) 436.0729
Email: dgottlieb@dkgallc.com


Debtors' Counsel:
SHULMAN  BASTIAN FRIEDMAN & BUI LLP
Attn: Alan J. Friedman
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

Committee Counsel:
PACHULSKI STANG ZIEHL & JONES LLP
Attn: Jeffrey W. Dulberg
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jdulberg@pszjlaw.com

DOCS_LA:326527.6 29266/002

All notices and requests to any Person of record holding any Claim or Interest shall be sent to such Person at the Person's last known address or to the last known address of the Person's attorney of record. Any such Person may designate in writing any other address for purposes of this section of the Plan, which designation will be effective on receipt.

**11.7    Successors and Assigns.**  The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**11.8    Severability of Plan Provisions**.  If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

**11.9    No Waiver**.  Neither the failure of the Debtors to list a Claim in the Debtors' Schedules, the failure of the Debtors to object to any Claim or Interest for purposes of voting, the failure of the Debtors to object to a Claim or Interest prior to Confirmation or the Effective Date, the failure of the Debtors to assert a Retained Right of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been filed with respect to a Claim, nor any action or inaction of the Debtors or any other Person with respect to a Claim, Interest or Retained Right of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Liquidating Debtors or their successors, before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date, to (a) object to or examine such Claim or Interest, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Rights of Action.

**11.10    Inconsistencies**.  In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

**11.11    Plan Supplement.**  No later than ten (10) calendar days prior to the deadline to vote on this Plan, the Plan Proponents shall File with the Bankruptcy Court the Plan Supplement, which shall contain such substantially final agreements, other documents and information as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtors or the Committee.

**11.12    Preservation of Insurance**.  The Debtors' release from and payment of Claims as provided in the Plan shall not diminish or impair the enforceability of any insurance policy that may cover or otherwise apply to or regarding any Claims, including, without limitation, any Claims on account of the Debtors' officers or managers.

**11.13    Waiver of Stay**.  The Plan Proponents request as part of the Confirmation Order a waiver of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

30

**11.14  Choice of Law.** Except to the extent a rule of law or procedures is supplied by federal law (including but not limited to the Bankruptcy Code and the Bankruptcy Rules), this Plan shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that State.  Any applicable non-bankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the appointment of the Plan Administrator, (iii) the wind down of the Debtors, or (iv) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

**11.15  Modification or Withdrawal of Plan.**

(a)    The Plan Proponents may jointly seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein, the Plan Proponents reserve the right to jointly amend the terms of the Plan or waive any conditions to its Confirmation, effectiveness or consummation, if the Plan Proponents jointly determine that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

(b)    After Confirmation of the Plan, but prior to the Effective Date, the Plan Proponents may, pursuant to section 1127 of the Bankruptcy Code, seek to jointly modify the Plan.  After the Effective Date, the Liquidating Debtors may apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

(c)    The Debtors and the Committee each reserve the right to revoke and withdraw the Plan at any time prior to the Effective Date, in which case the Plan will be deemed to be null and void.  If either the Debtors or the Committee revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests or Rights of Action of the Debtors or the Estates against any other Person; (b) prejudice in any manner the rights of the Debtors, the Estates, the Committee, or any other Person; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, the Estates, the Committee, or any other Person.

**ARTICLE XII
CONDITIONS TO EFFECTIVENESS**

**12.1  Conditions to Effectiveness.** The Plan will not be consummated and the Effective Date will not occur unless and until (A) the Confirmation Order is entered in a form acceptable to the Debtors and the Committee; (B) all documents to be provided in the Plan Supplement are in form and substance acceptable to the Debtors and the Committee; (C) the Confirmation Order shall be a Final Order; (D) the Debtors and the Committee determine in their respective reasonable business judgment that the Estates have sufficient Cash to pay all Allowed Administrative Expenses, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims, as of the Effective Date, to the extent the Holders thereof are entitled to payment as of such date under the Plan and unless otherwise agreed by such Holders, (E) the Debtors and the Committee determine in their respective reasonable business judgment that the Estates have sufficient Cash to pay all asserted, accrued, and estimated Administrative Expenses that have not yet been Allowed or are otherwise not yet payable as of the Effective Date but which such Administrative Expenses are anticipated to be later Allowed or otherwise payable and the Holders of any such Administrative Expenses have not agreed to alternative treatment; and (F) a reserve has been established for Professional Fee Claims reasonably estimated by Professional Persons to become due and owing on account of services provided on or before the Effective Date.  Any of the foregoing conditions may be jointly waived by the Debtors and the Committee and such waiver shall not require any notice, Bankruptcy Court order, or any

31

further action.

## ARTICLE XIII

### EFFECT OF CONFIRMATION

**13.1    Binding Effect of Confirmation.**    Confirmation will bind the Debtors, the Committee, all Holders of Claims or Interests and other parties in interest to the provisions of the Plan whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim or Interest has accepted the Plan.

**13.2    Good Faith.**    Confirmation of the Plan shall constitute a conclusive determination that:  (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code and, in each case, that the Plan Proponents and their respective representatives have acted in good faith in connection therewith.

**13.3    No Limitations on Effect of Confirmation.**    Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

DOCS_LA:326527.6 29266/002

# ARTICLE XIV

## CONFIRMATION REQUEST AND RECOMMENDATION

**14.1    Request for Confirmation.**  The Plan Proponents jointly request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

**14.2    Recommendation for Confirmation.**  The Plan Proponents believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support Confirmation of the Plan.

June 4, 2020

_____
Brad Smith
CRO of
Debtors and Debtors in Possession

_____
Authorized Representative of
Official Committee of Unsecured Creditors

Submitted by:

*Debtors' Counsel*

Alan J. Friedman (Bar No. 132580)
SHULMAN  BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

        -and-

*Committee Counsel*

Robert J. Feinstein (Pro Hac Vice)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    rfeinstein@pszjlaw.com
              jdulberg@pszjlaw.com

DOCS_LA:326527.5 29266/002

# ARTICLE XIV

## CONFIRMATION REQUEST AND RECOMMENDATION

**14.1    Request for Confirmation.**  The Plan Proponents jointly request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

**14.2    Recommendation for Confirmation.**   The Plan Proponents believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support Confirmation of the Plan.


_____, 2020

_____
of Debtors and Debtors in Possession


June 3, 2020                           _____
                                      Jack Butler
                                      Authorized Representative of
                                      Official Committee of Unsecured Creditors


Submitted by:

_Debtors' Counsel_

Alan J. Friedman (Bar No. 132580)
SHULMAN  BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

        -and-

_Committee Counsel_

Robert J. Feinstein (Pro Hac Vice)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:    rfeinstein@pszjlaw.com
              jdulberg@pszjlaw.com

# EXHIBIT B

## Organizational Chart

# FREEDOM ORGANIZATIONAL CHART



**2100 Freedom Inc.**
a Delaware corporation

**SPV VI**
DE limited liability company
Riverside

**Freedom Communications Holdings, Inc.**
a Delaware corporation – 100% owned

**The Press Enterprise**
Riverside, CA
An unincorporated Division of FCHI

**Freedom Services, Inc.,**
a Delaware corporation
100% subsidiary of FCI

**Freedom Communications, Inc.**
a Delaware corporation – 100% owned

**The Orange County Register**
Santa Ana, CA
An unincorporated Division of FCI

**Freedom Newspapers, Inc.**
a DE corporation

**Freedom Newspaper Acqusitions, Inc.**
a DE corporation
100% owned by FNI

**Orange County Register Communications, Inc.,**
a California corporation
100% owned by FNI

**Freedom Colorado Information, Inc.**
a DE corporation
100% owned by FNI
(inactive)

**Victor Valley Publishing Co.**
a CA corporation
100% owned by FNI
(inactive)

**Victorville Publishing Co.**
a CA LLP
92..678% owned by FNAI
4.4133% FCI
2.9087% min interest
(inactive)

**OCR Community Publications, Inc.,**
a California corporation
Magazines

10%    8%    3%    79%

**SPV I**
DE limited liability company
Domain names & 100% spv II-V

**SPV II**
DE limited liability company
Santa Ana real estate

**SPV IV**
DE limited liability company
Inactive (held Colorado)

**SPV III**
DE limited liability company
Inactive

**SPV V**
DE limited liability company
Daily Press real estate
Sold  incl 100% of VICT

Note: excludes all sold and discontinued entities

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13ᵗʰ Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*):  **DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 4, 2020** , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 4, 2020 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:295574.1 29266/002

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- *Kyra E Andrassy    kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com*
- *David M Banker    dbanker@lowenstein.com, dbanker@lowenstein.com*
- *Richard L Barnett    rick@barnettrubin.com, kelly@barnettrubin.com*
- *James Cornell Behrens    jbehrens@milbank.com,
  gbray@milbank.com;mshinderman@milbank.com;dodonnell@milbank.com;jbrewster@milbank.com;JWeber@milbank.com*
- *Shraddha Bharatia    notices@becket-lee.com*
- *Matthew Bouslog    MBouslog@gibsondunn.com, jsprecher@gibsondunn.com*
- *J Scott Bovitz    bovitz@bovitz-spitzer.com*
- *Larry Butler    notices@becket-lee.com*
- *Frank Cadigan    frank.cadigan@usdoj.gov*
- *Andrew W Caine    acaine@pszjlaw.com*
- *David Cantrell    dcantrell@lc-law-llp.com*
- *Jeffrey D Cawdrey    jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com*
- *Conrad K Chiu    cchiu@pryorcashman.com*
- *Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com*
- *Theodore A Cohen    tcohen@sheppardmullin.com, amontoya@sheppardmullin.com*
- *Erinn M Contreras    econtreras@sheppardmullin.com, nsaucedo@sheppardmullin.com*
- *Joseph Corrigan    Bankruptcy2@ironmountain.com*
- *Raphael Cung    rcung@callahan-law.com, jeggleston@callahan-law.com;deisenbrey@callahan-law.com;mmartinez@callahan-law.com*
- *Michael T Delaney    mdelaney@bakerlaw.com*
- *Jessica DiFrancesco    notices@becket-lee.com*
- *Caroline Djang    caroline.djang@bbklaw.com, sansanee.wells@bbklaw.com*
- *Jeffrey W Dulberg    jdulberg@pszjlaw.com*
- *Robert J Feinstein    rfeinstein@pszjlaw.com*
- *Scott D Fink    colcaecf@weltman.com*
- *Marc C Forsythe    kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com*
- *Alan J Friedman    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com*
- *Matthew T Furton    mfurton@lockelord.com, cpaul@lockelord.com;chicagodocket@lockelord.com*
- *Thomas M Gaa    tgaa@bbslaw.com*
- *Beth Gaschen    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com;lbracken@wgllp.com*
- *Nancy S Goldenberg    nancy.goldenberg@usdoj.gov*
- *David B Golubchik    dbg@lnbyb.com, stephanie@lnbyb.com*
- *Christopher J Green    chrisgreen@ucla.edu, chrisgreen@ucla.edu;christopher-green-2815@ecf.pacerpro.com*
- *Justin D Harris    jdh@harrislawfirm.net, felicia@harrislawfirm.net*
- *Michael J Hauser    michael.hauser@usdoj.gov*
- *Eric M Heller    eric.m.heller@irscounsel.treas.gov*
- *Lydia A Hewett    lydia.hewett@cpa.state.tx.us*
- *Joan Huh    joan.huh@cdtfa.ca.gov*
- *Lillian Jordan    ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM*
- *Samuel M Kidder    skidder@bhfs.com*
- *Jeannie Kim    jkim@buchalter.com, lsemeraro@sheppardmullin.com*
- *Alan M Kindred    akindred@leechtishman.com,
  alankindred@hotmail.com;dtomko@leechtishman.com;challer@leechtishman.com*
- *Armand R. Kizirian    armand@boyamianlaw.com,
  michael@boyamianlaw.com;brett@boyamianlaw.com;jessica@boyamianlaw.com;jennifer@boyamianlaw.com*
- *Stuart I Koenig    Skoenig@leechtishman.com, sfrey@leechtishman.com;jabrams@leechtishman.com*
- *Alan J Kornfeld    akornfeld@pszjlaw.com, mdj@pszjlaw.com*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:295574.1 29266/002

- *Matthew J Kraus    mkraus@lc-lawyers.com, mbuchheit@lc-lawyers.com*
- *Jeffrey C Krause    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com*
- *Yochun Katie Lee    kylee@akingump.com, tsouthwell@akingump.com;westdocketing@akingump.com*
- *Elan S Levey    elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov*
- *William N Lobel    wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com*
- *Aaron J Malo    amalo@sheppardmullin.com, jsummers@sheppardmullin.com*
- *Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com*
- *Ashley M McDow    amcdow@foley.com, sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com*
- *David W. Meadows    david@davidwmeadowslaw.com*
- *Reed M Mercado    rmercado@sheppardmullin.com*
- *Harlene Miller    harlene@harlenemillerlaw.com, harlenejd@gmail.com*
- *Raymond F Moats    colcaecf@weltman.com*
- *Elizabeth L Musser    emusser@londonfischer.com*
- *Jeffrey P Nolan    jnolan@pszjlaw.com*
- *Courtney E Norton    cnorton@greenbergglusker.com, kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com*
- *Ryan D O'Dea    rodea@shulmanbastian.com, LGauthier@shulmanbastian.com*
- *John M O'Donnell    john.o'donnell@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov*
- *Ernie Zachary Park    ernie.park@bewleylaw.com*
- *Ronak N Patel    rpatel@rivco.org, dresparza@rivco.org;mdominguez@rivco.org*
- *Mary A Petrovic    petrovic.mary@pbgc.gov, efile@pbgc.gov*
- *Marc S Pfeuffer    pfeuffer.marc@pbgc.gov, efile@pbgc.gov*
- *Kathy Bazoian Phelps    kphelps@diamondmccarthy.com, ericka.clarke@diamondmccarthy.com*
- *Christopher E Prince    , jmack@lesnickprince.com;cprince@ecf.courtdrive.com*
- *Amelia Puertas-Samara    itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov*
- *Christopher B Queally    cqueally@callahan-law.com, jluirette@callahan-law.com*
- *Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com*
- *Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com*
- *Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com*
- *Jeremy E Rosenthal    jrosenthal@sidley.com*
- *Joel W Ruderman    ruderman.joel@pbgc.gov, email@pbgc.gov*
- *Peter J Rudinskas    pjr.legal@gmail.com*
- *James M Sabovich    jsabovich@callahan-law.com, ksalour@callahan-law.com;jkirwin@callahan-law.com;rcung@callahan-law.com;bmccormack@callahan-law.com;erichards@callahan-law.com;SRobinson@callahan-law.com*
- *Jonathan C Sandler    jsandler@bhfs.com, pherron@bhfs.com;sgrisham@bhfs.com*
- *Scott A Schiff    sas@soukup-schiff.com*
- *Daren M Schlecter    daren@schlecterlaw.com, assistant@schlecterlaw.com*
- *George E Schulman    GSchulman@DanningGill.Com, danninggill@gmail.com;gschulman@ecf.inforuptcy.com*
- *Leonard M Shulman    lshulman@shulmanbastian.com*
- *Donald W Sieveke    , dws4law@pacbell.net*
- *Donald W Sieveke    ibmoola@yahoo.com, dws4law@pacbell.net*
- *David A Smyth    smythlaw@gmail.com, dsmyth2_@hotmail.com*
- *Alex E Spjute    spjute@hugheshubbard.com, gaurav.reddy@hugheshubbard.com*
- *Sarah Stuppi    Sarah@stuppilaw.com*
- *Charles Tsai    CHARLES.TSAI@DOJ.CA.GOV*
- *Helena Tseregounis    htseregounis@sidley.com*
- *United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov*
- *Daniel Uribe    duribe@gmail.com*
- *Elissa A Wagner    ewagner@pszjlaw.com*
- *Michael A Wallin    mwallin@wallinrussell.com*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                     **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:295574.1 29266/002

- *Scott S Weltman     colcaecf@weltman.com*
- *Johnny White     JWhite@wrslawyers.com,*
  *aparisi@wrslawyers.com;eweiman@wrslawyers.com;chamilton@wrslawyers.com*
- *Brandon J Witkow     bw@witkowlaw.com, tg@witkowlaw.com*
- *Steven D Zansberg     zansbergs@ballardspahr.com, DocketClerk_Denver@ballardspahr.com*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

DOCS_LA:295574.1 29266/002