XAVIER BECERRA
Attorney General of California
LISA W. CHAO
Supervising Deputy Attorney General
DONNY P. LE
Deputy Attorney General
State Bar No. 275019
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 269-6312
 Fax:  (916) 731-2144
 E-mail:  Donny.Le@doj.ca.gov
*Attorneys for Creditor California Department of Tax and Fee Administration*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| **In re:** | CASE NO. 8:15-bk-15311-MW |
| **FREEDOM COMMUNICATIONS, INC., a Delaware corporation, *et al.*,** | Chapter 11 |
| Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| Affects: | |
| ☒ All Debtors | |
| ☐ Freedom Communications., Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | |
| ☐ Freedom Services, Inc., a Delaware corporation, ONLY | **OPPOSITION OF THE CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION TO MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION UNDER BANKRUPTCY CODE 502(C) TO ESTIMATE CLAIMS OF THE CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION ("CDTFA") AND TO DETERMINE THAT CDTFA OWES DEBTORS REFUNDS IN EXCESS OF THE CLAIMS OF CDTFA** |
| ☐ 2100 Freedom, Inc., a Delaware corporation, ONLY | |
| ☐ OCR Community Publications, Inc., a California corporation, ONLY | |
| ☐ Daily Press, LLC, a California limited liability company, ONLY | |

| | |
|---|---|

☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY

☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

☐ Freedom Newspapers, a Texas general partnership, ONLY

☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

☐ OCR Information Marketing, Inc., a California corporation, ONLY

☐ Odessa American, a Texas general partnership, ONLY

☐ Orange County Register Communications, Inc., a California corporation, ONLY

☐ Victor Valley Publishing Company, a California corporation, ONLY

☐ Victorville Publishing Company, a California limited partnership, ONLY

☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

☐ Freedom SPV I, LLC, a Delaware limited liability company, ONLY

Hearing: March 15, 2020
Time: 2:00 p.m.
Courtroom: 6C
Address: 411 West 4th Street Santa Ana, CA 92701

2

☐  Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

☐  Freedom SPV V, LLC, a Delaware limited liability company, ONLY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 4

STATEMENT OF FACTS ..................................................................................... 5

    I.     CDTFA's Pre-Petition Proofs of Claims Filed in March 2016 ................................................................................................... 6

    II.    CDTFA's Post-Petition Administrative Tax Claims Filed in April 2020 ................................................................................... 6

    III.   Debtors' Pre-Petition Tax Refund Claims for Tax Years 2012 - 2015 in April 2016 ................................................................... 7

    IV.   CDTFA's Pre- and Post-Petition Period Audits Concluded in October 2020 .......................................................................... 8

    V.    Debtors' Estimation Motion ............................................................ 8

ARGUMENT ....................................................................................................... 10

    I.     Estimation under Section 502(c) of the Pre- and Post-Petition Claims and Refunds is Improper ...................................... 10

          A.    CDTFA's claims are not "contingent" or "unliquidated." ....... 10

          B.    The fixing of CDTFA's claims does not unduly delay the administrative of the case .......................................................... 12

          C.    Estimation of tax refunds and post-petition administrative tax claims does not comport with the purpose of section 502(c) ...................................................................................... 13

    II.    The Court Should Abstain from Determining the Tax and Allow the State Administrative Appeal Process to be Completed ...................................................................................... 14

    III.   If the Court Proceeds with Estimation under Section 502(c), then the Court Should Estimate the Pre-Petition and Post-Petition Refunds Based on CDTFA's Audit Findings ....................................................................................... 15

          A.    The Court must apply the same burdens of proof under state law that require the taxpayer prove entitlement to exemptions through direct source documents ......................... 18

          B.    Debtors failed to prove entitlement to the exemptions asserted in their estimation motion ........................................ 19

**TABLE OF CONTENTS**
**(continued)**

Page

1.   Debtors failed to substantiate that their education
     sales qualified for the digital subscription
     exemption ............................................................... 20

2.   Debtors failed to substantiate their 50% digital
     subscription exemption ......................................... 22

3.   Debtors failed to substantiate that the transportation
     costs exemption is to be deducted only from print
     revenue ................................................................... 24

4.   Debtors failed to substantiate that gross
     subscription revenue should be reduced by 32.02%
     for FCI and 40.36% for FCHI due to transportation
     costs exemption ..................................................... 25

5.   Debtors failed to substantiate the resale exemption
     (for single copy newspaper sales) ......................... 27

6.   Debtors failed to substantiate that all their
     commercial printing sales qualified for an
     exemption. .............................................................. 30

7.   Debtors understated their asset sale fixture and
     equipment values in their sales tax return ............. 31

IV.   CDTFA WILL AMEND ITS CLAIMS UPON COMPLETION OF A
      JUDICIAL OR ADMINISTRATIVE ADJUDICATION ................................... 31

CONCLUSION ............................................................................. 32

# TABLE OF AUTHORITIES

**Page**

CASES

*Bittner v. Borne Chemical Co., Inc.*
   691 F.2d 134 (3d Cir. 1982) ........................................................................ 15, 18

*California State Bd. of Equalization v. Sierra Summit Inc*.
   490 U.S. 844 (1989) .......................................................................................... 31

*Hall v. Franchise Tax Bd*.
   244 Cal. App. 2d 843 (1966) ............................................................................ 18

*Hetzel v. Franchise Tax Bd*.
   161 Cal. App. 2d 224 (1958) ............................................................................ 19

*Honeywell v. State Bd. of Equalization*
   128 Cal. App. 3d 739 (1982) ............................................................................ 18

*Hotel Del Coronado Corp. v. State Bd. of Equalization*
   15 Cal. App. 3d 612 (1971) .............................................................................. 19

*Hounsom v. United States*
   325 B.R. 319 (M.D. Fla. 2005) ........................................................................ 11

*In re Adelphia Bus. Solutions, Inc.*
   341 B.R. 415 (Bankr. S.D.N.Y. 2003) ........................................................ 13, 14

*In re Ahmed*
   362 B.R. 445 (Bankr. C.D. Cal. 2006) ............................................................. 11

*In re American Motor Club, Inc*.
   139 B.R. 578 (Bankr. E.D.N.Y. 1992) .............................................................. 15

*In re Barcal*
   213 B.R. 1008 (B.A.P. 8th Cir. 1997) .............................................................. 11

*In re Continental Airlines, Inc.*
   981 F.2d 1450 (5th Cir. 1993) .......................................................................... 13

*In re Fostvedt*
   823 F.2d 305 (9th Cir. 1987) ............................................................................ 11

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Indian Motocycle Co., Inc.*
   261 B.R. 800 (B.A.P. 1st Cir. 2001) ............................................................. 10, 14

*In re Lamar*
   111 B.R. 327 (D. Nev. 1990)........................................................................... 11

*In re Madison*
   168 B.R. 986 (D. Haw. 1994)........................................................................... 11

*In re Mazzeo*
   131 F.3d 295 (2d Cir. 1997) ........................................................................... 10

*In re PG&E*
   295 B.R. 635 (Bankr. N.D. Cal. 2003)...................................................... 15, 16, 18

*In re Ralph Lauren Womenswear, Inc.*
   197 B.R. 771 (Bankr. S.D.N.Y. 2003) ............................................................. 16

*In re Slack*
   187 F.3d 1070 (9th Cir. 1999)........................................................................... 11

*Paine v. State Bd. of Equalization*
   137 Cal. App 3d 438 (1982)........................................................................... 19

*People v. Schwartz*
   31 Cal. 2d. 59 (1947) ...................................................................................... 18

*Raleigh v. Illinois Dept. of Revenue*
   530 U.S. 15 (2000) .......................................................................................... 18

*United States v. Verdunn*
   89 F.3d 799 (11th Cir. 1996)........................................................................... 11

# TABLE OF AUTHORITIES
## (continued)

Page

**STATUTES**

11 U.S.C.
§§ 101-1532 .................................................................................. 5
§ 363 ............................................................................................ 6
§ 502(c) ................................................................................. *passim*
§ 502(c)(1) ................................................................ 5, 10, 13
§ 505 .................................................................................. 5, 15
§ 505(a) ...................................................................................... 14
§ 541(a) ...................................................................................... 14
§ 553 ........................................................................................... 16
§§ 1129(a)(9)(A) and (11) ...................................................... 13

Cal. Rev. & Tax. Code
§ 2 .............................................................................................. 18
§ 6066 ........................................................................................ 18
§ 6091 ................................................................................. *passim*
§ 6092 ........................................................................................ 18
§ 6901 ........................................................................................ 16
§ 7051 ........................................................................................ 19
§ 7053 ........................................................................................ 19
§ 7054 ........................................................................................ 19

**OTHER AUTHORITIES**

Cal. Code Reg. tit. 18
§ 1668(a) and (b) .................................................................... 28
§ 1541.5(c) ............................................................................... 30
§ 1590(a)(8) ............................................................................. 22
§ 1590(b)(3)(B) ........................................................................ 22
§ 1590(c), 1668(a) .................................................................. 30
§ 1628(a) ................................................................................... 25
§ 1667(a) ................................................................................... 27
§ 1668 ........................................................................................ 28
§ 1668(a) ................................................................................... 30
§ 1668(e) ............................................................................. 27, 28
§ 1668(f) .................................................................................... 28
§ 1668(f)(2) .............................................................................. 28

# TABLE OF AUTHORITIES
**(continued)**

**Page**

Cal. Sales & Use Tax Reg.

§ 1590 ...........................................................................................................24
§ 1590(b)........................................................................................................22
§ 1595(b)(1)....................................................................................................31
§ 1590(b)(3)(B)...............................................................................................22

1    Tax creditor California Department of Tax and Fee Administration (CDTFA),

2  by and through counsel, hereby responds and objects to the *Motion of Debtors and*

3  *Debtors-In-Possession Under Bankruptcy Code 502(c) to Estimate Claim of the*

4  *California Department of Tax and Fee Administration And to Determine That*

5  *CDTFA Owes Debtors Refunds in Excess of the Claims of the CDTFA* (the

6  "Estimation Motion").

7                              **INTRODUCTION**

8    The above-captioned debtors ("Debtors") have been winding down their

9  businesses since March 30, 2016.  When the U.S. Trustee's Office raised concerns

10  over the Chapter 11 estate's diminution of its assets on April 6, 2020 through a

11  motion to dismiss case or convert case to one under Chapter 7 (Dkt. No. 1632),

12  CDTFA raised its concern over Debtors' combined post-petition administrative tax

13  liabilities of $1,058,334.14 found through CDTFA's audit (Dkt. No. 1649, p. 6

14  (post-petition administrative tax liability is $719,281.84 for Freedom

15  Communications, Inc., and $339,052.30 for Freedom Communications Holdings

16  for a total post-petition administrative tax liability of $1,058,334.14). Debtors

17  countered that they had a combined pre- and post-petition tax refund in the amount

18  of $7,170,656 due from CDTFA which would be used to fund Debtors' Chapter 11

19  plan.

20     On August 20, 2020, Debtors filed an amended Disclosure Statement (Dkt.

21  No. 1696) and Chapter 11 Plan (Dkt. No. 1698).  CDTFA's audit, which began in

22  2015, was finally completed in October 2020, and found significant underreporting

23  of sales.  The audit was hampered by Debtors' deficiencies in record retention and

24  staffing.  Debtors were unable to reach a successful conclusion on the audit and

25  petitioned for administrative findings in November 2020.  Nevertheless, in an effort

26  to move this case closer to plan confirmation, Debtors filed this motion seeking

27  estimation of CDTFA's pre-petition and post-petition claims as well as estimation

28  of alleged pre-petition and post-petition tax refunds owed by CDTFA.

1    As acknowledged by Debtors' their Estimation Motion, estimation of

2    CDTFA's tax claims under 11 U.S.C. § 502(c)(1)[1] is not appropriate.  Here,

3    CDTFA's tax claims are not contingent or unliquidated, and the fixing of such

4    claims would not unduly delay the administration of the case.  Additionally,

5    estimation of Debtors' refunds under section 502(c)(1) does not comport with the

6    general purposes of estimation which is to *determine issues of liability or amount*

7    *owed by the estate* for purposes of plan distribution (emphasis added).  Thus,

8    CDTFA requests that this Court deny the Estimation Motion.

9    Debtors also acknowledge that this matter could be a claim objection and

10   determined under 11 U.S.C. § 505, but concede that their administrative appeal is

11   pending and they have neither objected to CDTFA's claim nor filed a complaint to

12   determine tax.  Under the circumstances, this Court should exercise its discretion

13   not to hear the matter under section 505 and allow the administrative appeal process

14   to be completed.

15   Alternatively, if this Court is inclined to estimate CDTFA's pre- and post-

16   petition claims and Debtors' alleged claims for refunds for the same periods, the

17   Court should (1) limit its findings to purposes of Chapter 11 plan feasibility, (2)

18   adopt additional procedures for the presentation of calculations and other evidence,

19   and (3) estimate those refunds based on evidence and conclusions from CDTFA's

20   audit findings.

21                              **STATEMENT OF FACTS**

22   Debtors consist primarily of Freedom Communications, Inc. (FCI)

23   (Bankruptcy Case No. 8:15-bk-15311-MW, the "FCI Case"), and Freedom

24   Communications Holdings Inc. (FCHI) (Bankruptcy Case No. Case No. 8:15-bk-

25   15312-MW, the "FCHI Case").  FCI and FCHI publish newspapers and magazines,

26   including, but not limited to the Orange County Register and the Riverside Press-

27   _____

28   [1] Unless specified otherwise, all chapter and section references are to the
     Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Enterprise, and are registered as California retailers under retail permits 024-086069 and 102-501862, respectively.

## I.   CDTFA'S PRE-PETITION PROOFS OF CLAIMS FILED IN MARCH 2016

Debtors filed for Chapter 11 relief on November 2015.  CDTFA commenced an audit in order to file protective pre-petition Proofs of Claim for tax years 2012 through 2015 in the FCI Case and FCHI Case.  CDTFA filed Proofs of Claim in each of the underlying bankruptcy cases for FCI and FCHI.  FCI's pre-petition claim is in the total amount of $126,353.79 asserted as a priority tax claim.  FCI Case, POC No. 229-2.  FCHI's pre-petition claim is in the total amount of $81,945.63 which is also asserted as a priority tax claim.  FCHI Case, POC No. 84-2.

As a result of CDTFA's audit, Debtors responded by exercising their administrative rights.  Debtors filed a Petitions for Redetermination for FCI and FCHI on May 13, 2016.  A true and correct copy is attached to the Declaration of William P. Kimsey, CPA ("Kimsey Decl."), as Exhibit 1.  The Petitions stated that "We request that the *audit be completed* as there is no risk to the BOE of collection except items that are proven to be non-taxable as a result of completing audit work and for which therefore no tax should be assessed." (Emphasis Added).

## II.   CDTFA'S POST-PETITION ADMINISTRATIVE TAX CLAIMS FILED IN APRIL 2020

On March 30, 2016, the Court approved Debtors' motion to sell assets pursuant to 11 U.S.C. § 363 to newspaper publisher, Digital First Media (DFM).  Dkt. No. 562.  DFM continues to operate the Orange County Register and Riverside Press-Enterprise.

Debtors filed their final closeout sales tax return for FCI and FCHI in April 2016 for the quarterly tax period of January through March 2016 (the "Post-Petition Returns") but the Post-Petition Returns were rejected for calculation errors.  Debtors refiled the Post-Petition Returns in June 2016 and asserted a tax refund in

1  the amount of $99,443 for FCI and $0 for FCHI.  A true and correct copy of these

2  calculations is attached to the Kimsey Decl. as Exhibit 2.

3          In the Post-Petition Returns, Debtors claimed that most of the amount of their

4  Gross Subscription Revenue was decreased by (a) non-taxable digital subscriptions

5  (the "Digital Subscription Exemption"), and (b) transportation costs.  The net result

6  is that Debtors dramatically decreased their taxable revenue and corresponding

7  sales tax liability.  Kimsey Decl., Ex. 2, pp. 28, 31.  Due to the alarming decrease in

8  Debtors' taxable revenue and sale tax liability, CDTFA commenced an additional

9  audit of tax year 2016 as well.

10          As a result of CDTFA's preliminary audit of tax year 2016, CDTFA filed

11  administrative tax expense claims in FCI and FHCI in April 2020.  FCI's

12  administrative tax expense claim is in the total amount of $719,281.84.  FCI Case,

13  POC No. 597-1.  FCHI's administrative tax expense claim is in the total amount of

14  $339,052.30.  FCHI Case, POC No. 112-1.

15  **III.  DEBTORS' PRE-PETITION TAX REFUND CLAIMS FOR TAX YEARS 2012 -
          2015 IN APRIL 2016**
16

17          In April 2016, and in addition to the Post-Petition Returns, Debtors filed

18  amended sales tax returns for every quarterly period from tax year 2012 through

19  2015 (collectively, the "Amended Pre-Petition Returns").  A true and correct copy

20  of Debtors' refund summary calculations are attached to the Kimsey Decl. as

21  Exhibit 3 (for each quarterly period).  The Amended Pre-Petition Returns also

22  asserted an alarming decrease in Debtors' taxable revenue and sale tax liability by

23  using an increased Digital Subscription Exemption and increased Transportation

24  Costs Exemption.  This was a stunning contrast to Debtors' original returns for the

25  same quarterly periods which reported Gross Subscription Revenue that was mostly

26  taxable.  Debtors alleged that their Gross Subscription Revenue was now

27  approximately 90% tax-exempt.  As a result of the Amended Returns, Debtors

28

assert total tax refunds of $6,309,122 for FCI, and $1,131,534 for FCHI (i.e., sum of refunds for each quarterly period).

## IV. CDTFA's Pre- and Post-Petition Period Audits Concluded in October 2020

Given the above:  (1) Pre-petition claims, (2) Post-Petition Returns and corresponding refund claims, and (3) Amended Pre-Petition Returns and corresponding refunds claims, CDTFA commenced an audit of all relevant quarterly periods.  For the entire duration of the audit, Debtors were unable to respond to the audit with punctuality.  CDTFA's repeated its records requests, year after year, which Debtors failed to respond.  A true and correct copy of Form 414Z is attached to the Kimsey Decl. as Exhibit 4 (noting that Debtors did not comply with multiple requests for records from CDTFA' auditors made on June 16, 2017, September 8, 2017, September 26, 2017, and April 8, 2018.)

Nonetheless, CDTFA concluded the audit in October 2020 by issuing, in part, CDTFA Form 836-A.  Form 836-A identifies and summarizes Debtors' main contentions, and then provides the findings reached by CDTFA.  A true and copy of Form 836-A for both FCI and FCHI are attached to the Kimsey Declaration as Exhibit 5 (hereinafter, the "Audit Findings").  Debtors have sought an administrative appeal of  the Audit Findings.  A true and copy of Petitions for Redetermination dated November 5, 2020 for both FCI and FCHI are attached to the Kimsey Declaration as Exhibit 6.

## V. Debtors' Estimation Motion

Debtors filed the Estimation Motion on February 9, 2021.  Notably Debtors now assert refund claims that are even lower than previously asserted in their Amended Pre-Petition Returns and Post-Petition Returns.  The charts below summarizes the relief sought in the Estimation Motion as compared to CDTFA's filed Proofs of Claims and Debtors' previously filed returns and amended returns:

Table 1:

| **Pre-Petition Period Claims** | | |
|---|---|---|
| | POC Filed by CDTFA | Estimation Motion |
| FCI | $126,353.79 | $0.00 |
| FCHI | $81,945.63 | $0.00 |

Table 2:

| **Post-Petition Period Administrative Tax Claims** | | |
|---|---|---|
| | POC Filed by CDTFA | Estimation Motion |
| FCI | $719,281.84 | $0.00 |
| FCHI | $339,052.30 | $55,372.80 |

Table 3:

| **Pre-Petition Period Tax Refund Claims** | | |
|---|---|---|
| | Amended Pre-Petition Returns | Estimation Motion |
| FCI | $6,039,122 | $4,023,402 |
| FCHI | $1,131,534 | $844,686 |

Table 4:

| **Post-Petition Period Tax Refund Claims** | | |
|---|---|---|
| | Post-Petition Returns | Estimation Motion |
| FCI | $99,443 | $86,009 |
| FCHI | $0 | $0 |

1

**ARGUMENT**

2

**I.    ESTIMATION UNDER SECTION 502(C) OF THE PRE- AND POST-PETITION
CLAIMS AND REFUNDS IS IMPROPER.**

3

4       Section 502(c) requires estimation of a "contingent or unliquidated claim"

5    when failure to do so would unduly delay the "administration of a case."

6    "Estimation was envisioned as a means for expeditiously determining the maximum

7    amount of a claim which must be *paid from the bankruptcy estate*."  4 Collier on

8    Bankruptcy ¶ TX5.05[1] (Richard Levin & Henry J. Sommer, eds., 16th ed.)

9    (emphasis added).  However, it has not been authoritatively decided whether 11

10   U.S.C. § 502(c)(1) is applicable to a disputed tax claim.  *Id*. (citing *In re Indian*

11   *Motocycle Co., Inc*., 261 B.R. 800, 809 (B.A.P. 1st Cir. 2001).  "The procedural

12   uncertainties encountered in estimation proceedings generally, coupled with the

13   doubts as to whether tax claims in particular are susceptible to estimation, make

14   section 502(c) a questionable tool for the resolution of tax disputes." *Id.*

15       Nonetheless, estimation under section 502(c) of CDTFA's pre- and post-tax

16   petition claims is not appropriate because CDTFA's tax claims are not contingent

17   or unliquidated, and the fixing of such claims would not unduly delay the

18   administration of the case.  Furthermore, estimation of Debtors' refund claims does

19   not comport with the general purposes of estimation.  The alleged refunds are not

20   "claims" which require estimation by the Court to establish *the liability or amount*

21   *owed by the estate*.  These deficiencies when taken together with the relative

22   uncertainties with due process that may result from an abbreviated or summary

23   proceeding to estimate CDTFA's tax claims should lead this Court to deny the

24   Estimation Motion

25       **A.    CDTFA's claims are not "contingent" or "unliquidated."**

26        CDTFA's claims are not contingent. *See In re Mazzeo*, 131 F.3d 295 (2d Cir.

27   1997) (finding that a tax debt, even though disputed, is not contingent as the legal

28   obligation arose on the nonpayment of taxes when due). In fact, Debtors readily

acknowledge in the Estimation Motion that CDTFA's claims are not "contingent." Estimation Mot., Dkt. No. 1725 p. 17, l. 11.  Rather, Debtors argue that the claims are "unliquidated."  They are wrong.

"[T]he question of whether a debt is liquidated turns on whether it is subject to ready determination and precision in computation of the amount due." *In re Slack*, 187 F.3d 1070, 1073 (9th Cir. 1999) (quoting *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) (internal quotation marks omitted)). "[A] debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been fully decided." *Id*. at 1075. An amount is readily ascertainable if it is easily calculable. *Id*. at 1074. In cases involving a tax claims, the amount of a tax debt is liquidated because it is readily ascertainable and easily computed through the fixed legal standards set forth in the Tax Code even if the debtor has vigorously disputed the tax liability. *In re Ahmed*, 362 B.R. 445, 450-51 (Bankr. C.D. Cal. 2006) (citing *United States v. Verdunn*, 89 F.3d 799, 803 (11th Cir. 1996)); *see also Hounsom v. United States*, 325 B.R. 319, 325 (M.D. Fla. 2005) (finding that tax debts were liquidated even though IRS had not issued notices of deficiency for two of the tax years at issue and the debtor was disputing the tax liability in tax court); *In re Barcal*, 213 B.R. 1008, 1014 (B.A.P. 8th Cir. 1997) (finding that vigorously disputed tax debts were liquidated because they had been fixed and established by an assessment); *In re Madison*, 168 B.R. 986, 989 (D. Haw. 1994) (dismissing the debtor's argument that tax debts were unliquidated because they were subject to protracted and extensive evidentiary hearings in tax court, instead relying on the notices of deficiency to find the debt was liquidated); *In re Lamar*, 111 B.R. 327, 329 (D. Nev. 1990) (rejecting argument that assessed tax penalty was unliquidated because there was no opportunity for judicial review before it was assessed).

Here, there is no denying that Debtors' tax debts can be calculated precisely through the application of fixed legal standards.  Accordingly, CDTFA's tax claims

1    are not "unliquidated" and are not subject to estimation under section 502(c).

2    **B.    The fixing of CDTFA's claims does not unduly delay the administrative of the case.**

3

4    Estimation under section 502(c) is further appropriate when the "fixing or

5    liquidation" of the claim would "unduly delay the administration of the case."

6    Here, Debtors cannot make such a showing.  As stated in the U.S. Trustee's motion

7    to dismiss case or convert case to one under Chapter 7, Debtors' cases have

8    languished for over four and a half years.  U.S. Tr. Mot., Dkt. No. 1632, p. 4.  In

9    response to the U.S. Trustee's motion, Debtors finally filed their first Disclosure

10   Statement and Chapter 11 Plan on June 4, 2020.  Disclosure Statement and Plan,

11   Dkt. Nos. 1652, 1653.  And on August 20, 2020, Debtors filed an amended

12   Disclosure Statement and Ch. 11 Plan.  Am. Statement and Ch. 11 Plan, Dkt. Nos.

13   1696, 1698.  At the hearing on the amended Disclosure Statement, Debtors stated

14   that they intended to file the Estimation Motion by no later than mid-December

15   2020.  Debtors' Reply, Dkt. No. 1707, p. 8.  As a result, the Court continued the

16   hearing on the amended Disclosure Statement for 6 months.  However, Debtors

17   only filed the Estimation Motion on February 9, 2021 — on the eve of the amended

18   Disclosure Statement hearing.  Prior to February 9, 2021, Debtors took no action on

19   CDTFA's claims or their claims for refunds under the Bankruptcy Code.  Certainly,

20   the fixing of CDTFA's tax claims would not unduly delay the administration of the

21   case when Debtors have failed to take any action under the Bankruptcy Code on

22   CDTFA's tax claims until now.

23   Moreover, the effective date on Debtor's amended Chapter 11 Plan is further

24   conditioned on the estate receiving sufficient funds at some point in the indefinite

25   future.  Am. Ch. 11 Plan, Dkt. No. 1696, p. 47 ("The Conditions Precedent to the

26   Effective Date of the Plan May Not Occur.")  The Amended Disclosure Statement

27   makes clear that obtaining the sufficient funds will depend in large part on whether

28   Debtors can obtain tax refunds from CDTFA.  *Id.*, p. 39-40.  However, Debtors are

12

in the preliminary stages of their state-level administrative refund action and have only just filed this Estimation Motion.  Debtors, in their own Chapter 11 Plan, have already contemplated that the tax refund claims must be fixed or otherwise adjudicated in either a judicial or administrative tribunal and that creditors must wait until this process is completed before receiving any distributions. Accordingly, the fixing of CDTFA's tax claims would not unduly delay the administration of this case, and the Court should deny the Estimation Motion.

### C.    Estimation of tax refunds and post-petition administrative tax claims does not comport with the purpose of section 502(c).

"Estimation was envisioned as a means for expeditiously determining the maximum amount of a claim which must be paid from the bankruptcy estate."  4 Collier on Bankruptcy ¶ TX5.05[1] (Richard Levin & Henry J. Sommer, eds., 16th ed.)  Bankruptcy courts typically employ the estimation process on tort claims to provide "a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine." *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003).  When estimation is used for purposes of plan feasibility raised in the context of 11 U.S.C. §§ 1129(a)(9)(A) and (11), the purpose of estimation is "to move forward and to get recoveries into the pockets of creditors without delaying the whole process as a consequence of a limited number of very complex claims."  *Id.* at 423; *see also In re Continental Airlines, Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993) (Bankruptcy Courts may estimate claims under § 502(c)(1) in order to (i) "avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions," and (ii) "promote a fair distribution to creditors through a realistic assessment of uncertain claims").

In fact, the estimation of post-petition administrative tax claims raises even additional concerns.  As the Bankruptcy Appellate Panel for the First Circuit noted,

1  "we have not found a single case which has estimated a debtor's postpetition

2  administrative tax claim pursuant to § 502(c)." *In re Indian Motocycle Co., Inc.*,

3  261 B.R. 800, 809 (B.A.P. 1st Cir. 2001).  Ultimately, the Panel in *Indian*

4  *Motocyc*le concluded that bankruptcy courts lacked jurisdiction to estimate a

5  debtor's post-petition tax liability pursuant to section 502(c).  *Id*. at 810.  Similarly,

6  other bankruptcy courts have been reluctant to estimate administrative claims under

7  section 502(c) because "it raises risks of the denial of due process, and Bankruptcy

8  Courts need to be sensitive to this concern." *In re Adelphia Bus. Solutions, Inc.*, 341

9  B.R. at 423.

10      In this case, Debtors seek to employ the estimation process for both CDTFA's

11  post-petition administrative tax claims and Debtors' tax refund claims.  At a

12  minimum, this Court should not use the estimation process for CDTFA's post-

13  petition administrative tax claims.  Additionally, the alleged refunds are not

14  "claims" or liabilities against the bankruptcy estate which would require estimation

15  to *establish the liability or amount owed by the bankruptcy estate for purposes of*

16  *plan distribution* (emphasis added).  Rather, the refund claims represent Debtors'

17  legal interests.  *See* 11 U.S.C. § 541(a).  Accordingly, estimation of CDTFA's

18  post-petition administrative tax claims and Debtors' tax refund claims under section

19  502(c) does not comport with the purposes of that section, and this Court should

20  deny the Estimation Motion.

21  **II.   THE COURT SHOULD ABSTAIN FROM DETERMINING THE TAX AND**
     **ALLOW THE STATE ADMINISTRATIVE APPEAL PROCESS TO BE**
22   **COMPLETED.**

23      As a concession to the flaws of their request to estimate CDTFA's claims,

24  Debtors proffers that the Court could convert this to a claim objection or a

25  complaint for determination of tax under section 505(a).  Estimation Mot., Dkt. No.

26  1725, p. 11, ll. 21-25.  However, Debtors acknowledge they have not sought any

27  such relief. *Id.*, ll. 18-20.

28

1    Section 505 is a permissive form of jurisdiction, and contemplates that the

2    Court may "decline" to review a tax, and instead "refer" to the tax-specific forum.

3    *In re American Motor Club, Inc*., 139 B.R. 578, 581 (Bankr. E.D.N.Y. 1992).  In

4    considering whether it should exercise such discretion, the court can consider factors

5    such as "complexity of the tax issues to be decided, the need to administer the

6    bankruptcy case in an orderly and efficient manner, the burden on the Bankruptcy

7    Court's docket, the length of time required for trial and decision, the asset and

8    liability structure of the debtor, and the prejudice to the debtor and potential

9    prejudice to the taxing authority."  *Id*.  Further, the Bankruptcy Court should abstain

10    from determining a debtor's tax liability whenever it would be in the interest of the

11    debtor and creditors or if abstention will have minimal or no impact on the estate.

12    *Id*.

13    Abstention is appropriate here.  The tax involves a five-year period with

14    numerous substantive tax and evidentiary issues.  CDTFA completed its audit in

15    October 2020, and have discussed its Audit Findings with Debtors.  Debtors have

16    invoked state tax law procedures by filing an administrative appeal in November

17    2020.  These state administrative procedures are designed to efficiently resolve tax

18    disputes.  Thus, the Court should abstain and allow the parties to complete the

19    administrative proceeding.

20    **III.  IF THE COURT PROCEEDS WITH ESTIMATION UNDER SECTION 502(C), THEN THE COURT SHOULD ESTIMATE THE PRE-PETITION AND POST-**

21    **PETITION REFUNDS BASED ON CDTFA'S AUDIT FINDINGS**

22    The Bankruptcy Code and the Bankruptcy Rules do not set forth a procedure

23    for estimating claims; instead, the court may use "whatever method is best suited to

24    the particular contingencies at issue."  *In re PG&E*, 295 B.R. 635, 642 (Bankr. N.D.

25    Cal. 2003).  However, the bankruptcy court is required to follow the substantive

26    law governing the nature of the claim (such as following California Sale and Use

27    Tax Regulations when estimating a refund claim).  *Id*. (citing *Bittner v. Borne*

28    *Chemical Co., Inc.*, 691 F.2d 134, 135-36 (3d Cir. 1982)).

1    The estimation process most commonly used is described as follows:

2    A trier of fact first determines which version [of the facts] is most
probable and proceeds from there to determine an award in a fixed
3    amount. An estimator of claims must take into account the likelihood
that each party's version might or might not be accepted by a trier of
4    fact. The estimated value of a claim is then the amount of the claim
diminished by [the] probability that it may be sustainable only in part or
5    not at all.

6    ***

7    Thus, to the extent that I have had to analyze the facts presented by the
parties, I have sought not to make definitive findings of fact, but instead
8    to assess the probabilities of the various contentions made by the parties
passing muster. . .  In contrast, the parties' legal arguments must be
9    evaluated not for the probability that they have merit, but rather for
their correctness as a matter of governing law.
10

11    *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 2003)

12    (citing *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 521 (Bankr.

13    E.D.N.Y. 1994)). Such an estimate "necessarily implies no certainty" and "is not a

14    finding or fixing of an exact amount." *In re PG&E*, 295 B.R. at 642. "'It is merely

15    the court's best estimate for the purpose of permitting the case to go forward….'"

16    *Id.* (citation omitted).

17    Before this Court begins the estimation process, CDTFA offers some general

18    points for the Court's consideration if it chooses to adopt additional procedures for

19    estimation.  First, this Court should limit any estimation proceeding solely for the

20    purposes of determining feasibility of Debtor's proposed Chapter 11 Plan.

21    Second, CDTFA must retain any offset rights that may arise from its claims.

22    *See* 11 U.S.C. § 553; Cal. Rev. & Tax. Code § 6901.

23    Third, estimation under section 502(c) is difficult because Debtors are

24    asserting refunds in the Estimation Motion in amounts that are different than those

25    asserted in their Amended Pre-Petition and Post-Petition Returns filed in 2016.  *See*

26    Tables 3 and 4, *supra*.  CDTFA's Audit Findings dealt primarily with the amounts

27    reported in Debtors' Amended Pre-Petition and Post-Petition Returns.  *See* Kimsey

28

1    Decl., Ex. 5.  Nonetheless, upon review of any new evidence now presented in this

2    Estimation Motion, CDTFA concludes that the Audits Findings, as presented in

3    CDTFA Form 836-A, require no further adjustment.  Again, Form 836-A identifies

4    and summarizes Debtors' main contentions and provides the findings reached by

5    CDTFA.  This is further complicated by the fact that the asserted refunds and Audit

6    Findings cover two separate entities – FCI and FHCI.

7        Fourth, the Estimation Motion presents seven (7) primary audit issues under

8    dispute but the Court will not be able to determine the magnitude of how each audit

9    issue affects the calculation of refunds due or tax owed unless the Court constructs

10   or reconstructs its own calculation based upon the evidence presented by Debtors

11   and CDTFA.  Moreover, CDTFA attempted to reconcile Debtors' tax and refund

12   calculations included as Exhibits 109 and 110 in the Estimation Motion.  Kimsey

13   Decl., Ex. 7, pp. 152-54 (determining that the overall difference between CDTFA's

14   Audit Findings and Debtors' calculations, as presented in this Estimation Motion,

15   in taxable measure is $50,771,804 which represents approximately $4,061,744 in

16   sales and use tax for FCI and $13,592,959 which represents approximately

17   $1,087,437 in sales and use tax for FCHI).  Given that Debtors' tax and refund

18   calculations were presented for the first time to CDTFA in this Estimation Motion,

19   CDTFA will provide additional reconciliations, calculations, and other audit

20   workpapers upon the Court's request.  Additionally, the presentation of such

21   calculations and any other audit workpapers will be done in the manner set by this

22   Court.

23       Finally, estimation under section 502(c) is difficult given that Debtors had the

24   burden of proof in the underlying audit pursuant to state law but failed to

25   adequately maintain business records.

26

27

28

**A.   The Court must apply the same burdens of proof under state law that require the taxpayer prove entitlement to exemptions through direct source documents.**

In estimation proceedings, the bankruptcy court is required to follow the substantive law governing the nature of the claim (such as following California Sale and Use Tax Regulations when estimating a refund claim).  *In re PG&E*, 295 B.R. at 642 (citing *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135-36 (3d Cir. 1982)).  Under state decisional law, CDTFA's tax assessments and audit determinations, are presumed to be correct, and when entered into evidence are *prima facie* evidence of the amount due.  *People v. Schwartz*, 31 Cal. 2d. 59, 64 (1947); *Hall v. Franchise Tax Bd.*, 244 Cal. App. 2d 843, 848 (1966).  CDTFA is not "bound" to accept the "statements of the taxpayer, unsupported by any record. . . ."  *People v. Schwartz*, 31 Cal. 2d at 64.  Ultimately, the burden of proof is on the taxpayer.  *Honeywell v. State Bd. of Equalization*, 128 Cal. App. 3d 739, 744-45 (1982).  If this were a traditional objection to CDTFA's tax claim, the burden of proof is properly placed upon the taxpayer.  *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 19, 20 (2000).

Under specific provisions of the California's Sales and Use Tax Law (as found in Division 2 of the California Revenue and Taxation Code), the burden of establishing nontaxability on the taxpayer.  California Revenue and Taxation Code section 6091 provides that "all gross receipts are subject to the tax until the contrary is established."  Cal. Rev. & Tax. Code § 6091.  Unless there is a (1) specific statutory exemption, or (2) a properly executed tax exemption certificate (a paper certificate that provides verification that a purchasing customer is exempt from taxation), the sale is subject to tax.  *See* Cal. Rev. & Tax. Code § 6091.  A seller can be relieved from sales tax liability by obtaining a "certificate" from a person who is engaged in the business of selling the same tangible personal property and who also holds a permit to transaction such business.  Cal. Rev. & Tax. Code § 6092, 6066.

There is a limited universe of statutory tax exemptions.  "It is well settled in the field of taxation that tax exemptions and deductions are solely a matter of legislative grace." *Hetzel v. Franchise Tax Bd*., 161 Cal. App. 2d 224, 229 (1958). As such, a tax exemption must be strictly construed against the taxpayer.  *Hotel Del Coronado Corp. v. State Bd. of Equalization*, 15 Cal. App. 3d 612, 617 (1971).  A taxpayer is "not entitled to an exemption merely because they say they are, they must *offer credible evidence* of exemption entitlement." *Paine v. State Bd. of Equalization*, 137 Cal. App 3d 438, 443-44 (1982) (emphasis added).

Accordingly, this Court should apply the same evidentiary burdens required under application state law (decisional and statutory) in a refund action to this estimation proceeding because such evidentiary burdens are inextricably bound up into CDTFA's tax claims.

**B.    Debtors failed to prove entitlement to the exemptions asserted in their estimation motion.**

As a preliminary matter, CDTFA's auditors concluded that Debtors' recordkeeping system was insufficient and unable to support Debtors' claimed exemptions.  Kimsey Decl., Ex. 4.  Debtors were not in compliance with California Revenue and Taxation Code sections 7051 and 7054 which require all retailers keep records and authorize CDTFA to examine the books and records to verify the accuracy of the returns.  Cal. Rev. & Tax. Code § 7053 ("[A] retailer shall keep such records, receipts, invoices, and other pertinent papers in such form as the board may require.").

At various times throughout the audit, CDTFA's auditors could not reconcile accounting data or received incomplete data from Debtors, and Debtors failed to respond to CDTFA's additional audit requests.  Kimsey Decl., Ex. 4 (noting that CDTFA auditor could not reconcile or validate data to trial balance (entries dated October 26, 2016, December 28, 2016); discussing data discrepancies with Debtor (entry dated November, 3, 2016); noting that data provided did not reference to

source documents (entry dated December 1, 2016); noting that Debtors had no additional records to present (entry dated September 26, 2017)).  Based on these incidents, CDTFA found that Debtors' recordkeeping system failed to memorialize critical facts and analyses for figuring out taxability under the California Sales and Use Tax Law.

Nonetheless, CDTFA was able to complete its audit in October 2020 based on the best available information it could obtain from Debtors.  *See* Form 836-A for FCI and FCHI (the "Audit Findings"), Kimsey Decl. Ex. 5.  While CDTFA's Audit Findings dealt primarily with the amounts reported in Debtors' Amended Pre-Petition and Post-Petition Returns, upon review of the Estimation Motion, CDTFA concludes that the Audits Findings, as presented in CDTFA Forms 836-A for FCI and FCHI, require no further adjustment.  For sake of simplicity and for purposes of this Estimation Motion, CDTFA will primarily focus its discussion of the refunds as requested in this Estimation Motion versus those amounts calculated as a result of the Audit Findings.  There are seven (7) primary issues that Debtors raise in the Estimation Motion that most significantly impact their calculation of the alleged refunds.  CDTFA will discuss each of the issues in the same order that they are presented in the Estimation Motion for ease of comparison.

### 1.    Debtors failed to substantiate that their education sales qualified for the digital subscription exemption.

As concluded in Form 836-A for FCI and FCHI, CDTFA found that there was no Gross Subscription Revenue associated with subscription donations to the Register in Education and the Newspapers in Education programs (collectively, the "Donation Programs").  Debtors failed to explain how the Donation Programs generated subscription revenue to begin with especially when the Donation Programs are funded by "(a) newspaper subscribers who would donate their subscriptions and (b) business and/or community organizations in the form of cash."  Estimation Mot., Dkt. No. 1725, p. 26.  If FCI and FCHI recorded revenue

and any corresponding Digital Subscription Exemption in the sale transaction that involved the original newspaper subscriber, once the original newspaper subscriber donated the subscription to the Donation Programs, that donation does not generate an additional sale be recorded as Gross Subscription Revenue.  Indeed, it is the original newspaper subscriber that made the donation after purchasing the subscription, and the educator or students would have access to the digital subscription for free.  Further, to permit Debtors to claim an additional Digital Subscription Exemption once the newspaper subscriber donates the subscription would permit Debtors to claim two exemptions on one sale transaction.

Notwithstanding the inconsistency in recognizing revenue for donated subscriptions, CDTFA reviewed Debtors' original and Amended Pre-Petition Returns for the applicable periods and determined that Debtors "netted" or otherwise failed to include revenue derived from the Donation Programs in their Gross Subscription Revenue.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl. Ex. 5, pp. 93, 100, 105, 110.  It follows that if the revenue from the Donation Programs is not included in Gross Subscription Revenue, then it cannot be removed from Gross Subscription Revenue as an "exemption."

Furthermore, CDTFA attempted to test a sample of revenue transactions from the Donation Programs by reviewing subscription revenue reports; however, CDTFA could not trace a specific transaction to the individual sub-ledger accounts but noted that various comments in the revenue reports showed that subscribers donated their paper subscriptions to the Donations Programs as well. FCI Form 836-A; FCHI Form 836-A, Kimsey Decl. Ex. 5, pp. 93, 105.  CDTFA determined that the Donation Programs did not consist solely of digital subscriptions.  As a result of these discrepancies and conclusions, Debtors could not meet their burden of proof.  Accordingly, CDTFA disallowed Debtors' exemption related to the Donation Programs in the entire amount.

**2.**    **Debtors failed to substantiate their 50% digital**
**subscription exemption.**

California Sales and Use Tax Regulation 1590(b) provides that the sale of the

newspapers and periodicals, including sales by third party retailers, is subject to

sales tax unless otherwise exempt.  Digital content, however, is exempt from sales

tax.  Cal. Code Regs. tit. 18, § 1590(b)(3)(B) ("[T]he right to access the digital

content is not subject to tax.").  Recently, newspaper companies would sell a

subscription for a tangible newspaper combined with a subscription for the right to

access digital content; this is known as a "mixed newspaper subscription."  Cal.

Code Regs. tit. 18, § 1590(a)(8).  For the sale of mixed newspaper subscriptions on

or after October 1, 2016, a bright-line rule was created through California Sales and

Use Tax Sales Regulation 1590(b)(3)(B) for streamlined tax reporting which

presumed that mixed newspaper subscriptions would be allocated as 47% print and

53% digital for purposes of the Digital Subscription Exemption.  However, and

most important to the discussion here, prior to October 1, 2016, the sale of mixed

newspaper subscriptions was governed by the evidentiary presumption under

California Revenue and Taxation Code section 6091 which presumed that "all gross

receipts are subject to the tax until the contrary is established."  For mixed

newspaper subscriptions sold prior to October 1, 2016, the taxpayer must produce

competent evidence, identified with its books and records, that demonstrate an

entitlement to the percentage claimed as the Digital Subscription Exemption.

Initially, Debtors claimed, in their Amended Pre-Petition Returns, that they

were entitled to the presumption ratio under California Sales and Use Tax

Regulation 1590(b)(3)(B) in which 53% of their Gross Subscription Revenue was

exempt from tax under the Digital Subscription Exemption even though those tax

periods preceded the October 1, 2016 effective date of the regulation.  FCI Form

836-A; FCHI Form 836-A, Kimsey Decl. Ex. 5, pp. 93, 105-06.  There is no

1 authority for a retroactive application as sought by Debtors in their Amended Pre-

2 Petition Returns.

3       In the Estimation Motion, Debtors now seek a 50% Digital Subscription

4 Exemption for the periods of May 1, 2013 through March 31, 2016.  Estimation

5 Mot. Dkt. No. 1725, p. 21.  Debtors support their claims to a 50% Digital

6 Subscription Exemption based primarily on the opinion of Chris Christian who

7 reviewed Debtors' subscription pricing information and other industry reports.  *Id*.,

8 p. 114, paras. 31-34.  There is no evidence that Mr. Christian conducted a statistical

9 sample test to determine digital subscription percentage through the review of sales

10 invoices, renewal noticed, or other sales records actually maintained by Debtors.

11       On the other hand, CDTFA made several attempts to perform representative

12 testing to determine the digital newspaper subscription ratio; however, Debtors

13 provided records (i.e., renewal notices) which were incomplete, not representative,

14 and unreliable to perform a representative test.  FCI Form 836-A; FCHI Form 836-

15 A, Kimsey Decl., Ex. 5, pp. 93, 101, 105, 110-11.  During this process, CDTFA's

16 auditors reviewed a considerable number of the renewal notices over the audit

17 periods, and all the reviewed renewal notices were silent regarding the digital

18 subscription as being mixed with hard copy subscription.  FCI Form 836-A; FCHI

19 Form 836-A, Kimsey Decl., Ex. 5, pp. 101, 111.  Thus, CDTFA could not

20 substantiate any portion of the 53% Digital Subscription Exemption originally

21 claimed by Debtors in their Amended Pre-Petition Returns.  This was alarming

22 given that Debtors alleged that more than 50% of their sales have been digital

23 subscriptions over the past decade.  Nevertheless, CDTFA allowed Debtors a 41%

24 Digital Subscription Exemption based on an audit of a Southern California

25 newspaper publisher that is a competitor to Debtors, rather than seek to tax

26 Debtors' entire Gross Subscription Revenue at 100%.  FCI Form 836-A; FCHI

27 Form 836-A, Kimsey Decl., Ex. 5, pp. 101, 105.  As a result of these findings and

28

conclusions, Debtors could not meet their burden of proof.  Accordingly, CDTFA

disallowed Debtors' Digital Subscription Exemption to the extent it exceeded 41%.

### 3.    Debtors failed to substantiate that the transportation costs exemption is to be deducted only from print revenue.

Debtors next argue that certain transportation costs should be subtracted only

from Print Revenue (i.e., after the Digital Subscription Exemption is applied to

Gross Subscription Revenue) because only print sales incurred transportation costs.

However, California Revenue and Taxation Code section 6091 makes clear that "all

gross receipts are subject to the tax until the contrary is established."  Cal. Rev. &

Tax. Code § 6091.  Unless there is a (1) specific statutory exemption, or (2) a

properly executed tax exemption certificate (a paper certificate that provides

verification that a purchasing customer is exempt from taxation), the sale is subject

to tax.  *Id*.  Here, transportation costs are included in Gross Subscription Revenue,

and any exemption for transportation costs would be reduced from Gross

Subscription Revenue.

Further, there is no specific statutory exemption that permits application of the

Transportation Costs Exemption to only Print Revenue, and Debtors have not cited

to any.  Rather, Debtors rely on proposed amendments to California Sales and Use

Tax Regulation 1590 which would permit Debtors to deduct Transportation Costs

Exemption only from Print Revenue.  However, these proposed changes have not

been finalized or enacted.  Nonetheless, the proposed amendment would not have

retroactive application, and Debtors failed to discuss how the amended regulation

could be retroactively applied.  As such, the current law that governs the

methodology and application of Transportation Costs Exemption is found in

California Revenue and Taxation Code section 6091.  As a result of these

conclusions, Debtors could not meet their burden of proof.  Accordingly, CDTFA

deducted transportation costs from Gross Subscription Revenue before application

of the Digital Subscription Exemption.

**4.      Debtors failed to substantiate that gross subscription revenue should be reduced by 32.02% for FCI and 40.36% for FCHI due to transportation costs exemption.**

When a retailer, in this case a newspaper company, charges for transportation and delivery in a sale transaction, those charges are taxable unless they are "separately stated."  Cal. Code Regs., tit. 18, § 1628(a).  "Transportation charges will be regarded as "separately stated" only if they are separately set forth in the contract for sale or in a document reflecting that contract, issued contemporaneously with the sale, such as the retailer's invoice." *Id*.

Here, Debtors argue that Gross Subscription Revenue should be reduced by 32.02% for FCI and 40.36% for FCHI.  However, Debtors' methodology of subtracting the Transportation Costs Exemption after application of the Digital Subscription Exemption is inconsistent because Debtors appear to apply the percentage reduction for the Transportation Costs Exemption to the entire amount of Gross Subscription Revenue (i.e., "above the line") then use that resulting dollar amount to subtract from Print Revenue (i.e., the revenue that remains after the Digital Subscription Exemption) (i.e., "below the line").  Put simply, if the Transportation Costs Exemption only applies to Print Revenue because print sales incurred transportation costs as Debtors' assert, then the percentage reduction for transportation costs should only be taken from Print Revenue.  To illustrate this inconsistency, if Debtor's claimed percentage reductions for transportation costs of 32.02% for FCI and 40.36% for FCHI is first applied to Gross Subscription Revenue and the resulting dollar amount is then used to reduce only Print Revenue, then Debtors are asserting that Print Revenue is to be reduced by a whopping 57% for FCI and 78% for FCHI due to transportation costs.

In order to substantiate these percentages, CDTFA reviewed several files and worksheets provided by Debtors.   FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 92, 99-95, 105, 107-08.  Upon review, CDTFA determined that Debtors did not maintain financial records or general ledger account to record

separately itemized transportation charges for newspapers that were delivered.  FCI
Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 92, 104-05. When
CDTFA sought to review invoices and other related documents, Debtors merely
provided a worksheet that demonstrated the transportation charges of 30% of the
total recorded subscription charges.  FCI Form 836-A; FCHI Form 836-A, Kimsey
Decl., Ex. 5, p. 92, 104-05.  CDTFA concluded that such schedules included non-
exempt expenses such as carriers' tips and charges for deliveries of free
subscriptions, etc.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp.
92, 104-05.  Furthermore, Debtors' worksheets captured other irrelevant factors
such as recorded tax, single copy sales, sales made by related entity (Press-
Enterprise), and did not provide a complete audit trail to the customer's billings.
FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 94, 107.

When CDTFA attempted to perform a representative sampling test of
supporting documents such as sales invoices, Debtors could not provide complete
ledgers or account details that showed all recorded transportation charges. FCI
Form 836-A; FCHI Form 836-A, Kimsey Decl, Ex. 5, pp. 92, 105.  Upon review of
Debtors' trial balance, CDTFA noted that Debtor did not keep a separate General
Ledger account to record transportation charges.  FCI Form 836-A; FCHI Form
836-A, Kimsey Decl., Ex. 5, pp. 92, 105.  In addition, Debtors were unable to
provide an electronic workable download file for the recorded subscription sales in
order to perform a stratified statistical sample.  FCI Form 836-A; FCHI Form 836-
A, Kimsey Decl., Ex. 5, pp. 92, 105.

Despite these deficiencies, CDTFA eventually obtain renewal notices from
Debtors but found them to be incomplete, not representative, and unreliable to
perform a representative test. FCI Form 836-A; FCHI Form 836-A, Kimsey Decl.,
Ex. 5, pp. 95, 107-08.  In another attempt to perform testing, Debtors provided a
batch of 2,003 renewal notices scattered through the entire audit period, and
CDTFA was able to review the first 50 billings on December 12, 2012, October 8,

2013 and April 16, 2015 with special emphasis in selecting 7-day and one-day subscribers which represented 89% of the total subscribers during the test.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 95, 108.  After further meetings with Debtors, CDTFA conducted an expanded test to include another 396 transactions.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 95, 108.  Based on this testing, CDTFA was able to establish estimated weighted transportation cost ratio of 25.78% for the period through March 31, 2013 and 21.43% for the period after March 31, 2013.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 92, 95, 105, 108. CDTFA's audit supervisor concluded that a weighted ratio of 23.71% was appropriate.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 95, 108.  As a result of these findings and conclusions, Debtors could not meet their burden of proof.  Accordingly, CDTFA disallowed Debtors' Transportation Costs Ratio to the extent it exceeded 23.71%.

### 5.    Debtors failed to substantiate the resale exemption (for single copy newspaper sales).

Generally, California Revenue and Taxation Code section 6091 provides that "all gross receipts are subject to the tax until the contrary is established."  Cal. Rev. & Tax. Code § 6091; Cal. Code Regs. tit. 18, § 1667(a) ("[I]t shall be presumed that all gross receipts are subject to the tax until the contrary is established."). "This presumption may be rebutted by the seller as to any sale by establishing to the satisfaction of the Board that the gross receipts from the sale are not subject to the tax or by timely taking a resale certificate as provided in Regulation 1668 or by taking a certificate as provided in this regulation." Cal. Code Regs. tit. 18, § 1667(a).

A newspaper sale for resale is not subject to sales tax.  Cal. Code Regs. tit. 18, § 1668(e).  For example, this would occur when Debtors (i.e., the "seller") sell their newspapers to a supermarket (i.e., the "purchaser") that will resell the newspapers to its customers.  Consistent with the broader presumption scheme of

California Revenue and Taxation Code section 6091, a seller can generally rebut the presumption of taxability on a resale transaction in one of three ways, otherwise the resale transaction remains taxable on the seller.  *See generally* Cal. Code Regs. tit. 18, § 1668 (collectively, these three forms of rebuttal will be referred to as the "Resale Exemptions").

First, the seller can timely take "in good faith a certificate from the purchaser that the property is purchased for resale," and such certificate must satisfy certain essential elements.  Cal. Code Reg. tit. 18, § 1668(a) and (b).

Second, if the seller does not timely obtain a resale certificate containing the essential elements, the seller can be relieved of the sales tax liability only if the seller shows that the property sold (i.e., the newspaper):

(1) Was in fact resold by the purchaser and was not used by the purchaser for any purpose other than retention, demonstration, or display while holding it for sale in the regular course of business, or

(2) Is being held for resale by the purchaser and has not been used by the purchaser for any purpose other than retention, demonstration, or display while holding it for sale in the regular course of business, or

(3) Was consumed by the purchaser and tax was reported directly to the Board by the purchaser on the purchaser's sales and use tax return, or

(4) Was consumed by the purchaser and tax was paid to the Board by the purchaser pursuant to an assessment against or audit of the purchaser developed either on an actual basis or test basis.

Cal. Code Regs. tit. 18, § 1668(e).

Finally, the seller can use "XYZ letters" (i.e., an audit confirmation letter) which the seller can send to the purchaser "inquiring as to the purchaser's disposition of the property purchased from the seller."  Cal. Code Regs. tit. 18, § 1668(f).  The XYZ letter must be a form prescribed by CDTFA, and generally asks the purchaser either confirm that (1) the property is currently being held for resale or, (2) if the property has already been sold, that the purchaser has remitted the sales tax to CDTFA.  Cal. Code Regs. tit. 18, § 1668(f)(2).

Debtors asserted the Resale Exemptions on over $7,055,639 in sales for FCI and $1,011,084 in sales for FCHI over the course of the audit.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 96, 108.  And after completion of its audit, CDTFA disallowed the Resale Exemptions on sales of $2,166,185 for FCI and sales of $468,833 for FCHI.  In this Estimation Motion, Debtors are arguing that the Resale Exemptions should apply to these previously disallowed amounts.

In their initial attempts to test the resale transactions, CDTFA concluded that Debtors "netted" (i.e., were not include in Gross Single Copy Revenue) the sales of single copy newspapers in reporting their revenue in their Amended Returns.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 93, 105.  Again, if that revenue is not included in Gross Single Copy Revenue to begin with, it cannot be removed from Gross Single Copy Revenue as an "exemption."  Nonetheless, CDTFA thoroughly tested the resale transactions, and a detailed discussion and analysis of CDT FA's testing is contained in FCI's Form 836-A and FCHI's Form 836-A.  Kimsey Decl., Ex. 5, pp. 95-98, 108-10.  For the Court's ease of review, CDTFA performed the following tests and made the following conclusions:

1. Reviewed resale and distribution contracts provided by Debtors, and found those contracts did not to cover the entire period under audit.

2. Noted those contracts did not contain the typical provisions indicative of a true reseller (i.e., bond and insurance requirements, Debtors still set pricing on sales, buyer required to place newspapers in racks and concession stands owned by Debtors, etc.)  Instead these contract indicated that the buyer was a "carriers" for Debtors, and thus Debtors remained "is responsible for the tax."  Cal. Code Regs. tit. 18, § 6015(c).

3. Debtor admitted that it owned, maintained and operated 1,175 (unverified) newspapers coin dispensing machines through concessionaires and newspaper's carriers.

4. Reviewed the XYZ letters but deemed those letters to be invalid, because those did not include the required seller's resale permit number.  If the seller did not have a resale permit number, then the reseller had no ability to remit sales tax to CDTFA.  Thus, the XYZ letters did not comply with California Sales and Use Tax Regulation 1668(f)(2).

5. Certain resales that Debtors alleged to have made were to entities that were no longer is business for parts of the audit period.

As a result of its testing, CDTFA disallowed a portion of Debtors' Resale Exemptions in the amount of $2,166,185 for FCI and $468,833 for FCHI.  Based on these findings and conclusions, Debtors could not meet their burden of proof. Accordingly, CDTFA disallowed a portion of Debtors' Resale Exemptions.

## 6.    Debtors failed to substantiate that all their commercial printing sales qualified for an exemption.

Certain commercial printing sales qualify for a sales tax exemption.  Dkt. No. 1725 at 62-66 (discussing said exemptions).  Generally, a seller obtains an exemption certificate as evidence for the sales tax exemption.  Cal. Code Regs. tit. 18, §§ 1541.5(c), 1590(c), 1668(a).

As a preliminary matter, CDTFA found that Debtors initially asserted they are entitled to such exemptions without first having included that revenue in Gross Commercial Printing Revenue.  Here, Debtors "netted" or did not include commercial printing sales in their Amended Returns in an amount of over $90,640,515.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 93, 99.  Once that income was brought back into Gross Commercial Printing Revenue, CDTFA tested and allowed over $70,596,203 in exempt sales.  Debtors are now seeking an additional allowance of approximately $18,097,505 in exemptions, leaving only $1,946,806 as taxable for this category of sales.  Estimation Mot., Dkt. No. 1725, p. 72.

Once again, CDTFA examined, through a representative stratified sampling, three categories of commercial sales:  based on customers, transactions more than $20,000, and transactions under $20,000.  CDTFA examined exemption and resale certificates and found such certificates to be invalid.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 99-100.  CDTFA further examined other documents supporting the transaction, such as packing slips, and found those

documents did not support the exemptions claimed by Debtors.  FCI Form 836-A; FCHI Form 836-A, Kimsey Decl., Ex. 5, pp. 99-100.  Based on these findings and conclusions, Debtors could not meet their burden of proof.  Accordingly, CDTFA disallowed a portion of Debtors' Commercial Printing Exemptions.

**7.    Debtors understated their asset sale fixture and equipment values in their sales tax return.**

This tax liability is based in both California Sales and Use Tax Regulation 1595(b)(1), and the Court-approved Asset Purchase Agreement (APA).  All bankruptcy court-approved asset sales require payment of sales tax.  *California State Bd. of Equalization v. Sierra Summit Inc.*, 490 U.S. 844, 852-53 (1989) (finding that imposition of state sales tax on a liquidation sale is lawful).  Here, IRS Form 8594 used for asset acquisitions filed by Debtors reported much higher asset values than what Debtors reported to CDTFA.  Accordingly, the difference is taxable.

**IV.  CDTFA WILL AMEND ITS CLAIMS UPON COMPLETION OF A JUDICIAL OR ADMINISTRATIVE ADJUDICATION.**

Based on CDTFA's Audit Findings in Forms 836-A, any changes to the CDTFA's filed Proofs of Claims would be as follows:

| POC # | TYPE | POC AMOUNT | POST-AUDIT AMOUNT |
|---|---|---|---|
| 229 (FCI) | Priority | $126,353.79 | $0 |
| 84 (FCHI) | Priority | $81,945.63 | $0 |
| 597 (FCI) | Administrative | $719,281.84 | $931,366.62 (subject to offset) |
| 112 (FCHI) | Administrative | $339,052.30 | $467,489.19 (subject to offset) |

Any penalties assessed post-audit would be for finality, not negligence.

The post-petition liabilities as a result of Debtors' errors discovered in CDTFA's audit will exceed a refund:

| | TAX | POST-PETITION INTEREST | REFUND | NET TOTAL |
|---|---|---|---|---|
| FCI | $1,036,603 | $208,154 | ($1,050,642) | $194,115 |
| FCHI | $491,116 | $105,989 | ($190,816) | $406,289 |

## CONCLUSION

For these reasons, the Court should deny the Estimation Motion and/or abstain from determining the tax to allow the parties to complete the administrative proceeding.  Alternatively, if the Court grants the Estimation Motion, the Court should estimate Debtors' pre-petition and post-petition refunds based on CDTFA's audit findings.

Dated:  March 1, 2021                    Respectfully submitted,

XAVIER BECERRA
 Attorney General of California
LISA W. CHAO
Supervising Deputy Attorney General

DONNY F. LE
Deputy Attorney General
*Attorneys for Creditor California
Department of Tax and Fee
Administration*

LA2020600592
Opposition (FINAL).docx

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**300 S. Spring Street, Suite 1702, Los Angeles, CA 90033.**

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION OF THE CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION TO MOTION OF DEBTORS AND DEBTORS-IN POSSESSION UNDER BANKRUPTCY CODE 502(C) TO ESTIMATE CLAIMS OF THE CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION ("CDTFA") AND TO DETERMINE THAT CDTFA OWES DEBTORS REFUNDS IN EXCESS OF THE CLAIMS OF CDTFA** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 1, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

March 1, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy** kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **David M Banker** dbanker@lowenstein.com, dbanker@lowenstein.com
- **Richard L Barnett** rick@barnettrubin.com, kelly@barnettrubin.com
- **James Cornell Behrens** jbehrens@milbank.com, gbray@milbank.com; mshinderman@milbank.com; dodonnell@milbank.com; jbrewster@milbank.com; JWeber@milbank.com
- **Shraddha Bharatia** notices@becket-lee.com
- **Matthew Bouslog** MBouslog@gibsondunn.com, jsprecher@gibsondunn.com
- **J Scott Bovitz** bovitz@bovitz-spitzer.com
- **Larry Butler** notices@becket-lee.com
- **Frank Cadigan** frank.cadigan@usdoj.gov
- **Andrew W Caine** acaine@pszjlaw.com
- **David Cantrell** dcantrell@lc-law-llp.com
- **Jeffrey D Cawdrey** jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com
- **Conrad K Chiu** cchiu@pryorcashman.com
- **Shawn M Christianson** cmcintire@buchalter.com, schristianson@buchalter.com
- **Theodore A Cohen** tcohen@sheppardmullin.com, amontoya@sheppardmullin.com
- **Erinn M Contreras** econtreras@sheppardmullin.com, nsaucedo@sheppardmullin.com
- **Joseph Corrigan** Bankruptcy2@ironmountain.com
- **Raphael Cung** rcung@callahan-law.com, jeggleston@callahan-law.com; deisenbrey@callahan-law.com; mmartinez@callahan-law.com
- **Michael T Delaney** mdelaney@bakerlaw.com
- **Jessica DiFrancesco** notices@becket-lee.com
- **Caroline Djang** caroline.djang@bbklaw.com, sansanee.wells@bbklaw.com;wilma.escalante@bbklaw.com
- **Jeffrey W Dulberg** jdulberg@pszjlaw.com
- **Robert J Feinstein** rfeinstein@pszjlaw.com
- **Scott D Fink** colcaecf@weltman.com
- **Marc C Forsythe** kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com
- **Alan J Friedman** afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- **Matthew T Furton** mfurton@lockelord.com, cpaul@lockelord.com;chicagodocket@lockelord.com
- **Thomas M Gaa** tgaa@bbslaw.com
- **Beth Gaschen** bgaschen@wgllp.com, kadele@wgllp.com; vrosales@wgllp.com; cbmeeker@gmail.com; cyoshonis@wgllp.com; lbracken@wgllp.com
- **Nancy S Goldenberg** nancy.goldenberg@usdoj.gov
- **David B Golubchik** dbg@lnbyb.com, stephanie@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

- **Christopher J Green** chrisgreen@ucla.edu, chrisgreen@ucla.edu;christopher-green-2815@ecf.pacerpro.com
- **Justin D Harris** jdh@harrislawfirm.net, felicia@harrislawfirm.net
- **Michael J Hauser** michael.hauser@usdoj.gov
- **Eric M Heller** eric.m.heller@irscounsel.treas.gov
- **Lydia A Hewett** lydia.hewett@cpa.state.tx.us
- **Joan Huh** joan.huh@cdtfa.ca.gov
- **Lillian Jordan** enotices@donlinrecano.com, rmapa@donlinrecano.com
- **Samuel M Kidder** skidder@bhfs.com
- **Jeannie Kim** jkim@buchalter.com, lsemeraro@sheppardmullin.com
- **Alan M Kindred** akindred@leechtishman.com, alankindred@hotmail.com; dtomko@leechtishman.com; challer@leechtishman.com
- **Armand R. Kizirian** armand@boyamianlaw.com, michael@boyamianlaw.com; brett@boyamianlaw.com; jessica@boyamianlaw.com; jennifer@boyamianlaw.com
- **Stuart I Koenig** Skoenig@leechtishman.com, sfrey@leechtishman.com;jabrams@leechtishman.com
- **Alan J Kornfeld** akornfeld@pszjlaw.com, mdj@pszjlaw.com
- **Matthew J Kraus** mkraus@lc-lawyers.com, mbuchheit@lc-lawyers.com
- **Jeffrey C Krause** jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
- **Yochun Katie Lee** kylee@akingump.com, tsouthwell@akingump.com;westdocketing@akingump.com
- **Elan S Levey** elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov
- **William N Lobel** wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Aaron J Malo** amalo@sheppardmullin.com, jsummers@sheppardmullin.com
- **Robert S Marticello** Rmarticello@swelawfirm.com, gcruz@swelawfirm.com; lgarrett@swelawfirm.com; jchung@swelawfirm.com
- **Ashley M McDow** amcdow@foley.com, sgaeta@foley.com; mhebbeln@foley.com; swilson@foley.com; jsimon@foley.com
- **David W. Meadows** david@davidwmeadowslaw.com
- **Reed M Mercado** rmercado@sheppardmullin.com
- **Harlene Miller** harlene@harlenemillerlaw.com, harlenejd@gmail.com
- **Raymond F Moats** colcaecf@weltman.com
- **Elizabeth L Musser** emusser@londonfischer.com
- **Jeffrey P Nolan** jnolan@pszjlaw.com
- **Courtney E Norton** cnorton@greenbergglusker.com, kwoodson@greenbergglusker.com; jking@greenbergglusker.com; calendar@greenbergglusker.com
- **Ryan D O'Dea** rodea@shulmanbastian.com, LGauthier@shulmanbastian.com
- **John M O'Donnell** john.o'donnell@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov
- **Ernie Zachary Park** ernie.park@bewleylaw.com
- **Ronak N Patel** rpatel@rivco.org, dresparza@rivco.org;mdominguez@rivco.org
- **Mary A Petrovic** petrovic.mary@pbgc.gov, efile@pbgc.gov
- **Marc S Pfeuffer** pfeuffer.marc@pbgc.gov, efile@pbgc.gov
- **Kathy Bazoian Phelps** kphelps@diamondmccarthy.com, ericka.clarke@diamondmccarthy.com
- **Christopher E Prince** , jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- **Amelia Puertas-Samara** itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov
- **Christopher B Queally** cqueally@callahan-law.com, jluirette@callahan-law.com
- **Michael B Reynolds** mreynolds@swlaw.com, kcollins@swlaw.com
- **Todd C. Ringstad** becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Christopher O Rivas** crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Jeremy E Rosenthal** jrosenthal@sidley.com
- **Joel W Ruderman** ruderman.joel@pbgc.gov, email@pbgc.gov
- **Peter J Rudinskas** pjr.legal@gmail.com
- **James M Sabovich** jsabovich@callahan-law.com, ksalour@callahan-law.com;jkirwin@callahan-law.com; rcung@callahan-law.com; bmccormack@callahan-law.com; erichards@callahan-law.com; SRobinson@callahan-law.com
- **Jonathan C Sandler** jsandler@bhfs.com, pherron@bhfs.com;sgrisham@bhfs.com
- **Scott A Schiff** sas@soukup-schiff.com
- **Daren M Schlecter** daren@schlecterlaw.com, assistant@schlecterlaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

- **George E Schulman** GSchulman@DanningGill.Com, danninggill@gmail.com;gschulman@ecf.inforuptcy.com
- **Leonard M Shulman** lshulman@shulmanbastian.com
- **Donald W Sieveke** , dws4law@pacbell.net
- **Donald W Sieveke** ibmoola@yahoo.com, dws4law@pacbell.net
- **David A Smyth** smythlaw@gmail.com, dsmyth2_@hotmail.com
- **Alex E Spjute** spjute@hugheshubbard.com, gaurav.reddy@hugheshubbard.com
- **Sarah Stuppi** Sarah@stuppilaw.com
- **Charles Tsai** charles.tsai@doj.ca.gov
- **Helena Tseregounis** htseregounis@sidley.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
- **Daniel Uribe** duribe@gmail.com
- **Elissa A Wagner** ewagner@pszjlaw.com
- **Michael A Wallin** mwallin@wallinrussell.com
- **Michael J. Weiland** mweiland@wgllp.com, kadele@wgllp.com; vrosales@wgllp.com;
cbmeeker@gmail.com; lbracken@wgllp.com
- **Scott S Weltman** colcaecf@weltman.com
- **Johnny White** JWhite@wrslawyers.com, aparisi@wrslawyers.com;
eweiman@wrslawyers.com; chamilton@wrslawyers.com
- **Brandon J Witkow**
- **Steven D Zansberg**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**NO PAPER COPIES**

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 1, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Mark S. Wallace 411 West
Fourth Stree
Santa Ana, CA 92701
 (*Via Overnight Courier*)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 1, 2021 | Yesenia Palomarez | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**