1   XAVIER BECERRA
    Attorney General of California
2   LISA W. CHAO
    Supervising Deputy Attorney General
3   DONNY P. LE
    Deputy Attorney General
4   State Bar No. 275019
     300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013
     Telephone:  (213) 269-6312
6    Fax:  (916) 731-2144
     E-mail:  Donny.Le@doj.ca.gov
7   *Attorneys for Creditor California Department of
    Tax and Fee Administration*

8

IN THE UNITED STATES BANKRUPTCY COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

SANTA ANA DIVISION

11

12

| | |
|---|---|
| 13   **In re:** | CASE NO. 8:15-bk-15311-MW |
| 14   **FREEDOM COMMUNICATIONS, INC., a Delaware corporation, *et al.*,** | Chapter 11 |
| 15                                 Debtors and | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; |
| 16                   Debtors-in-Possession. | 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; |
| 17   Affects: | 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; |
| 18   ■ All Debtors | 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; |
| 19   □ Freedom Communications., Inc., a Delaware corporation, ONLY | 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; |
| 20 | 8:15-bk-15332-MW; 8:15-bk-15337-MW; |
| 21   □ Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| 22   □ Freedom Services, Inc., a Delaware corporation, ONLY | **DECLARATION OF WILLIAM P. KIMSEY, CPA, IN SUPPORT OF** |
| 23 | **CALIFORNIA DEPARTMENT OF TAX** |
| 24   □ 2100 Freedom, Inc., a Delaware corporation, ONLY | **AND FEE ADMINISTRATION'S (CDTFA) OPPOSITION TO MOTION OF** |
| 25   □ OCR Community Publications, Inc., a California corporation, ONLY | **DEBTORS AND DEBTORS-IN-POSSESSION UNDER BANKRUPTCY** |
| 26 | **CODE 502(C) TO ESTIMATE CLAIMS OF CDTFA AND TO DETERMINE** |
| 27   □ Daily Press, LLC, a California limited liability company, ONLY | **THAT CDTFA OWES DEBTORS REFUNDS IN EXCESS OF THE CLAIMS OF CDTFA** |
| 28 | |

| | |
|---|---|
| 1 | ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY |
| 2 | |
| 3 | ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY |
| 4 | |
| 5 | ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY |
| 6 | ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY |
| 7 | |
| 8 | ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY |
| 9 | |
| 10 | ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY |

Hearing:        March 15, 2020
Time:            2:00 p.m.
Courtroom:   6C
Address:        411 West 4th Street
                    Santa Ana, CA 92701

1  ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY

2

3  ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

4

5  ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

6  ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

7

8  ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

9

10  ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

11  ☐ Freedom Newspapers, a Texas general partnership, ONLY

12

13  ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

14  ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

15

16  ☐ OCR Information Marketing, Inc., a California corporation, ONLY

17

18  ☐ Odessa American, a Texas general partnership, ONLY

19  ☐ Orange County Register Communications, Inc., a California corporation, ONLY

20

21  ☐ Victor Valley Publishing Company, a California corporation, ONLY

22

23  ☐ Victorville Publishing Company, a California limited partnership, ONLY

24  ☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

25

26  ☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

27  ☐ Freedom SPV I, LLC, a Delaware limited liability company, ONLY

28

1 ☐ Freedom SPV IV, LLC, a Delaware
2 limited liability company, ONLY

☐ Freedom SPV V, LLC, a Delaware
3 limited liability company, ONLY

4

5

6 ## DECLARATION OF WILLIAM P. KIMSEY, CPA

7     I, William P. Kimsey, CPA, declare as follows:

8     1.    I am over 18 years of age. I have worked for the California

9 Department of Tax and Fee Administration (CDTFA), the successor to the

10 California State Board of Equalization, for more than 36 years, and tasked with the

11 management and control of the audit function for the Excise Taxes Division. I

12 oversaw all Appeals and Data Analysis functions for 28 tax and fee programs,

13 including excise taxes, fuel taxes and environmental fees. These functions included

14 processing of various types of petitions and administrative protests, attending

15 hearings at all levels of the appeals process and analyzing external data for audit

16 purposes.

17     2.    I have been a Certified Public Accountant since May 1988.

18     3.    I have been retained by the CDTFA as a retired annuitant to provide

19 expert consulting services in the field of accounting and auditing.

20     4.    I am authorized to make this declaration on behalf of the CDTFA and

21 make this declaration in my official capacity as a CDTFA retired annuitant and not

22 otherwise. The following statements are based upon my personal knowledge and

23 upon my review of records kept by the CDTFA in the ordinary course of its

24 business practice. If called as a witness, I could testify competently thereto.

25     5.    I have personal knowledge of the manner in which the CDTFA's

26 records are kept. Each of the records upon which I rely was made in the ordinary

27 course of business at or near the time of the act, condition or event. The sources of

28

1  information at the time of preparation are such that I believe the CDTFA's records

2  to be trustworthy.

3      6.      I have reviewed the CDTFA's audit file and working papers for

4  accounts 024-086069 and 102-501862.

5      7.      The CDTFA's records show that in 2015, the CDTFA commenced its

6  audit of years 2012, 2013, 2014, and 2015 of Freedom Communications Inc. DBA

7  Orange County Register ("FCI") and Freedom Communications Holdings Inc.

8  DBA Press-Enterprise ("FCHI") (collectively "Debtors") in order to file claims in

9  the jointly administered Chapter 11 bankruptcy cases.

10      8.      The CDTFA's records show that in response to the CDTFA's audit

11  findings, Debtors filed a May 13, 2016, Petition for Redetermination. A true and

12  correct copy is attached as Exhibit 1.

13      9.      The CDTFA's records show that Debtors filed their final closeout

14  sales tax return in April 2016, but the return was rejected for calculation errors.

15  Debtors refiled in June 2016. Debtors reported gross combined sales of

16  approximately $14 million. Debtors reported combined sales tax of $238,665. A

17  true and correct copy is attached as Exhibit 2.

18      10.      The CDTFA's records show that in April 2016, Debtors submitted

19  claims for refund, and filed amended sales tax returns for 2012, 2013, 2014, and

20  2015. True and correct copies are attached as Exhibit 3.

21      11.      The CDTFA's records maintain an audit history and communications

22  log as Form 414Z. True and correct copies are attached as Exhibit 4.

23      12.      The CDTFA's records show that the CDTFA's audit of FCI and FCHI

24  concluded in October 2020. Form 836-A identifies and summarizes Debtors' main

25  contentions, and then provides the findings that came out of the audit. True and

26  correct copies are attached as Exhibit 5.

27

28

1   13.   The CDTFA's records show that Debtors appealed the audit findings
2   by filing Petitions for Redetermination dated November 5, 2020.  True and correct
3   copies are attached as Exhibit 6.

4   14.   An overview of the CDTFA's reconciliation to Debtors' tax and
5   refund calculations, as presented in Exhibits 109 and 110 of their Estimation
6   Motion, and various adjustments is attached hereto as Exhibit 7.

7   I declare under penalty of perjury that the foregoing is true and correct.
8   Executed on March 1, 2021, at Sacramento, California.

William P. Kimsey  CPA
William P. Kimsey, CPA

# EXHIBIT 1

BOE-416 REV. 7 (10-13)
**PETITION FOR REDETERMINATION**

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

| BUSINESS NAME | ACCOUNT NUMBER |
|---|---|
| Orange County Register | 24-086069 |

| TAXPAYER NAME | TYPE OF TAX OR FEE |
|---|---|
| Freedom Communications, Inc. | Sales & Use |

## PETITION FOR REDETERMINATION
### Administrative Appeal

Generally, if you have received a notice of amount due from the Board of Equalization (BOE), you may file an administrative appeal of that notice using this Petition for Redetermination. There are two important deadlines:

1.  If you received a *Notice of Determination*, a *Notice of Deficiency Assessment*, or a *Notice of Successor Liability*, you have **30 days** from the date on the notice to appeal.
2.  If you received a *Jeopardy Notice of Determination*, you only have **10 days** from the date listed on that document to appeal and pay the amount due or deposit security considered acceptable by the BOE.

Look carefully at the notice you received for the specific conditions and requirements for filing this petition. Anyone submitting a petition should be prepared, upon request, to provide documents that support the specific grounds upon which the petition is founded.

I am filing a petition of the notice dated ___April 15, 2016_____ for the period ___10.1.2012 to 9.30.2015___
in the amount of $ ___118,135.14 plus interest_____.

Please indicate below the specific grounds upon which the petition is founded *(required)*:

See attachment

You have the right to an appeals conference and an oral hearing before the Members of the Board (Board hearing). Please indicate below whether you request an appeals conference, a Board hearing, or both. (*Note*: If you select only a Board hearing, an appeals conference will, nevertheless, normally be held first.) *During its review of your petition, BOE staff may ask that you confirm your request for an appeals conference or Board hearing, and if you do still want an appeals conference or Board hearing, you must timely respond to that request.* Furthermore, if your case is accepted into the administrative appeals process, you may request that your case be considered under the BOE's administrative Settlement Program. Review under the Settlement Program is confidential and will not affect your appeal rights.

Please indicate below whether you request an appeals conference, a Board hearing, or both, and if you are interested in the Settlement Program.

☑ I request an appeals conference with an Appeals Division attorney or auditor at the BOE's nearest district office or in the BOE's Headquarters office in Sacramento.

☑ I request a Board hearing.

☑ I request my appeal be considered under the Settlement Program.

| SIGNATURE | DATE SIGNED | DAYTIME TELEPHONE NUMBER |
|---|---|---|
| | 5.13.2016 | (424) 354-1723 |

| PRINTED NAME | TITLE/CAPACITY | EMAIL ADDRESS |
|---|---|---|
| Brad W. Smith | CRO | bsmith@glassratner.com |

*If there is a conflict between this form or the notice you received and the law, the law is controlling. The filing of a Petition for Redetermination does not protect your right to a refund of tax, interest, or penalty amounts paid in excess of amounts legally due. You must timely file a claim for refund if you believe you have overpaid tax, interest, or penalty amounts. Filing a petition will not prevent interest from accruing on any unpaid tax due.*

**Freedom Communications, Inc.**
**Orange County Register**
**Acct 24-086069**
**Audit Case 844036**

**Attachment to Form BOE-416 – Petition for Redetermination**

The grounds upon which we found this petition are:

1. The audit team incorrectly attempts to assess tax on journal entries rather than actual transactions.
2. We request that the audit be completed as there is no risk to the BOE of collection except for items that are proven to be non-taxable as a result of completing the audit work and for which therefore no tax should be assessed.
3. The BOE started the audit in late December 2015, almost two months after we filed for bankruptcy. Subsequently, the audit was delayed several times by the audit team (documented in email correspondences). Therefore, if there wasn't enough time to complete the audit prior to the government bar date, it is primarily the result of delays caused by the BOE.
4. We provided the audit team with all it asked for in a timely manner including a complete GL dump in February that was to be used to generate audit samples for the last item on the Report of Field Audit. The audit team therefore had significant time to generate and provide a sample for the estimated item on the list of assessments but failed to do so.
5. In meetings during February and March the audit team explicitly agreed to allow us to address the remaining amounts in all but the last area of assessment after they provided us with the sample for that last item.
6. In making its determination to issue the Notice of Determination without finishing the work on the audit the BOE reasoned that it should not complete the audit because it had insufficient time to complete the audit and because it is "in danger of not collecting on the amount assessed as the company was selling off its assets. However, as noted in items 1 and 2, the BOE has caused substantially all the delays and since the BOE filed a POC with the bankruptcy court there is no danger of non-collection on the assessment.
7. The audit team never contacted us to determine whether the company is indeed not prepared to complete the audit. Upon the company's request to complete it, the audit team refused to do so. Instead the BOE proposes to assess on all amounts without giving us appropriate opportunity to proof non-taxability and or prior payment of tax and to use the adjustment rate from the prior audit on the last (estimated) item on the list of adjustments.
8. According to statements made by the audit team the prior audit was not done in accordance with current guidelines. The rate from the prior audit must therefore be deemed inaccurate and unfit to be used as an approximation suitable for use in the current audit calling into question the entirety of the estimated adjustment in the last item on the list which also happens to be the largest item.
9. The company made significant enhancements to its processes since the prior audit and therefore would expect an adjustment rate that is significantly less than the rate from the prior audit and should not be required to pay taxes it already paid or on transactions that are not taxable.

AUDRP3P1

4/22/16
Page: 1



## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

| | | | | |
|---|---|---|---|---|
| **Account No:** | **SR Y EA 024-086069** | **Case Id:** | **844036** | A Local Tax Allocation was completed |
| Firm Name: | ORANGE COUNTY REGISTER | **Lead Auditor:** | **HATEM M. KASSEM** | A Legal Bankruptcy Case Exists |
| **Owner:** | **FREEDOM COMMUNICATIONS INC** | **Supervisor:** | **GEORGE AFSHAR** | |
| Owner Type: | Corporation | Board Office: | Irvine Office | |
| Business Address: | 625 N GRAND AVE | Audit Report Date: | **April 11, 2016** | |
| | SANTA ANA, CA 92701-4347 | Business Code/SIC: | NAICS : 511110 | |
| Mailing Address: | PO BOX 11626 | Account Status: | Closed-Out | |
| | SANTA ANA, CA 92711-1626 | Tax Area Code: | 300009970000 | |

### LIABILITY (OR CREDIT) DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS

| Examination Period: 10/01/12 to 9/30/15 | Tax | Interest to 4/30/16 | Penalty | Total |
|---|---|---|---|---|
| **Total Disclosed by Examination** | 118,135.14 | 11,763.03 | | 129,898.17 |
| **Balance as of 4/30/16**\** | $118,135.14 | $11,763.03 | $0.00 | $129,898.17 |

*If multiple billings have occurred, the audit liability may not equal the sum of the billings

### TAXABLE MEASURE DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS

| | | State, Local County and STTI | 1/4% State Increase | Total District |
|---|---|---|---|---|
| 1 | RECORDED AND REPORTED TAXABLE MEASURE RECONCILIATION EXAMINED ON AN ACTUAL BASIS | | | |
| 2 | UNREPORTED TAXABLE MEASURE FROM DISALLOWED DEBITS ENTRIES POSTED TO SALES TAX PAYABLE GL ACCOUNT 25120- ACTUAL BASIS | 119,527 | 119,527 | 119,527 |
| 3 | UNSUPPORTED MISCELLANEOUS INCOME POSTED TO GL 73000- ACTUAL BASIS | 138,975 | 138,975 | 138,975 |
| 4 | UNSUPPORTED MISCELLANEOUS INCOME POSTED TO GL 73030- ACTUAL BASIS | 104,673 | 98,620 | 104,673 |
| 5 | UNSUPPORTED MISCELLANEOUS INCOME POSTED TO GL 73060- ACTUAL BASIS | 4,157 | 3,991 | 4,157 |
| 6 | UNREPORTED REVENUE FROM FIXED ASSETS SALES- ACTUAL BASIS | 10,305 | 2,113 | 10,305 |
| 7 | ESTIMATED EX-TAX COST OF CONSUMABLE SUPPLIES SUBJECT TO TAX PER PRIOR AUDIT RATIO- AUDIT PERIOD | 10,085 | 10,085 | 10,085 |
| | | 1,092,162 | 1,004,321 | 1,092,162 |
| | | $1,479,884 | $1,377,632 | $1,479,884 |

**Special Instructions**    This is a Bankruptcy case with a Bar Date of 4/29/16. This audit was phone billed by the EA district on 4/13/16.

BOE-416 REV. 7 (10-13)                                                                      STATE OF CALIFORNIA
**PETITION FOR REDETERMINATION**                                                           BOARD OF EQUALIZATION

| BUSINESS NAME | ACCOUNT NUMBER |
|---|---|
| Press Enterprise | 102-501862 |
| TAXPAYER NAME | TYPE OF TAX OR FEE |
| Freedom Communications Holdings, Inc. | Sales & Use |

## PETITION FOR REDETERMINATION
### Administrative Appeal

Generally, if you have received a notice of amount due from the Board of Equalization (BOE), you may file an administrative appeal of that notice using this Petition for Redetermination. There are two important deadlines:

1.  If you received a *Notice of Determination,* a *Notice of Deficiency Assessment,* or a *Notice of Successor Liability,* you have **30 days** from the date on the notice to appeal.

2.  If you received a *Jeopardy Notice of Determination,* you only have **10 days** from the date listed on that document to appeal and pay the amount due or deposit security considered acceptable by the BOE.

Look carefully at the notice you received for the specific conditions and requirements for filing this petition. Anyone submitting a petition should be prepared, upon request, to provide documents that support the specific grounds upon which the petition is founded.

I am filing a petition of the notice dated <u>April 15, 2016</u>          for the period <u>11.21.2013 to 9.30.2015</u>
in the amount of $ <u>77,132.28 plus interest</u>                            .

Please indicate below the specific grounds upon which the petition is founded (*required*):

See attachment

You have the right to an appeals conference and an oral hearing before the Members of the Board (Board hearing). Please indicate below whether you request an appeals conference, a Board hearing, or both. (*Note:* If you select only a Board hearing, an appeals conference will, nevertheless, normally be held first.) *During its review of your petition, BOE staff may ask that you confirm your request for an appeals conference or Board hearing, and if you do still want an appeals conference or Board hearing, you must timely respond to that request.* Furthermore, if your case is accepted into the administrative appeals process, you may request that your case be considered under the BOE's administrative Settlement Program. Review under the Settlement Program is confidential and will not affect your appeal rights.

Please indicate below whether you request an appeals conference, a Board hearing, or both, and if you are interested in the Settlement Program.

   ☑    I request an appeals conference with an Appeals Division attorney or auditor at the BOE's nearest district office or in the BOE's Headquarters office in Sacramento.

   ☑    I request a Board hearing.

   ☑    I request my appeal be considered under the Settlement Program.

| SIGNATURE | DATE SIGNED | DAYTIME TELEPHONE NUMBER |
|---|---|---|
|  | 5.13.2016 | (424) 354-1723 |
| PRINTED NAME | TITLE/CAPACITY | EMAIL ADDRESS |
| Brad W. Smith | CRO | bsmith@glassratner.com |

*If there is a conflict between this form or the notice you received and the law, the law is controlling. The filing of a Petition for Redetermination does not protect your right to a refund of tax, interest, or penalty amounts paid in excess of amounts legally due. You must timely file a claim for refund if you believe you have overpaid tax, interest, or penalty amounts. Filing a petition will not prevent interest from accruing on any unpaid tax due.*

**Freedom Communications Holdings, Inc.**
**Press Enterprise**
**Acct 102-501862**
**Audit Case 932578**

<u>**Attachment to Form BOE-416 – Petition for Redetermination**</u>

The grounds upon which we found this petition are:

1. The audit team incorrectly attempts to assess tax on journal entries rather than actual transactions.
2. We request that the audit be completed as there is no risk to the BOE of collection except for items that are proven to be non-taxable as a result of completing the audit work and for which therefore no tax should be assessed.
3. The BOE started the audit in late December 2015, almost two months after we filed for bankruptcy.  Subsequently, the audit was delayed several times by the audit team (documented in email correspondences).  Therefore, if there wasn't enough time to complete the audit prior to the government bar date, it is primarily the result of delays caused by the BOE.
4. We provided the audit team with all it asked for in a timely manner including a complete GL dump in February that was to be used to generate audit samples for the last item on the Report of Field Audit.  The audit team therefore had significant time to generate and provide a sample for the estimated item on the list of assessments but failed to do so.
5. In meetings during February and March the audit team explicitly agreed to allow us to address the remaining amounts in all but the last area of assessment after they provided us with the sample for that last item.
6. In making its determination to issue the Notice of Determination without finishing the work on the audit the BOE reasoned that it should not complete the audit because it had insufficient time to complete the audit and because it is "in danger of not collecting on the amount assessed as the company was selling off its assets.  However, as noted in items 1 and 2, the BOE has caused substantially all the delays and since the BOE filed a POC with the bankruptcy court there is no danger of non-collection on the assessment.
7. The audit team never contacted us to determine whether the company is indeed not prepared to complete the audit.  Upon the company's request to complete it, the audit team refused to do so.  Instead the BOE proposes to assess on all amounts without giving us appropriate opportunity to proof non-taxability and or prior payment of tax and to use the adjustment rate from the prior audit on the last (estimated) item on the list of adjustments.
8. According to statements made by the audit team the prior audit was not done in accordance with current guidelines.  The rate from the prior audit must therefore be deemed inaccurate and unfit to be used as an approximation suitable for use in the current audit calling into question the entirety of the estimated adjustment in the last item on the list which also happens to be the largest item.
9. The company made significant enhancements to its processes since the prior audit and therefore would expect an adjustment rate that is significantly less than the rate from the prior audit and should not be required to pay taxes it already paid or on transactions that are not taxable.



AUDRP3P1

4/22/16
Page: 1

## State Board of Equalization - Sales and Use Tax Department

## REPORT OF FIELD AUDIT

| | | | | |
|---|---|---|---|---|
| **Account No:** | SR EH 102-501862 | **Case Id:** | 932578 | A Local Tax Allocation was completed |
| Firm Name: | PRESS-ENTERPRISE | **Lead Auditor:** | **HATEM M. KASSEM** | A Legal Bankruptcy Case Exists |
| **Owner:** | **FREEDOM COMMUNICATIONS HOLDI** | **Supervisor:** | **GEORGE AFSHAR** | |
| Owner Type: | Corporation | Board Office: | Irvine Office | |
| Business Address: | 1825 CHICAGO AVE STE 100 | Audit Report Date: | **April 11, 2016** | |
| | RIVERSIDE, CA 92507-2373 | Business Code/SIC: | NAICS :  511110 | |
| Mailing Address: | 625 N GRAND AVE | Account Status: | Closed-Out | |
| | SANTA ANA, CA 92701-4347 | Tax Area Code: | 330500260000 | |

### LIABILITY (OR CREDIT) DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS

| | Tax | Interest to 4/30/16 | Penalty | Total |
|---|---|---|---|---|
| **Examination Period:** 11/21/13 to 9/30/15 | | | | |
| **Total Disclosed by Examination** | 77,132.28 | 7,127.19 | | 84,259.47 |
| **Balance as of 4/30/16**** | $77,132.28 | $7,127.19 | $0.00 | $84,259.47 |

****If multiple billings have occurred, the audit liability may not equal the sum of the billings

### TAXABLE MEASURE DISCLOSED BY EXAMINATION OF TAXPAYER'S RECORDS

| | | State, Local County and STTI | 1/4% State Increase | Total District |
|---|---|---|---|---|
| 1 | RECORDED AND REPORTED TAXABLE MEASURE MEASURE RECONCILIATION- ACTUAL BASIS | 9,776 | 9,776 | 9,776 |
| 2 | UNREPORTED TAXABLE SALES FROM DISALLOWED RECORDED DEBIT ADJUSTMENT ENTRIES - SALES TAX - AUDIT PERIOD | 472,226 | 472,226 | 472,226 |
| 3 | UNREPORTED TAXABLE MEASURE FROM DISALLOWED RECORDED DEBIT ADJUSTMENT ENTRIES - USE TAX - AUDIT PERIOD | 17,700 | 17,700 | 17,700 |
| 4 | UNSUPPORTED MISCELLANEOUS INCOME POSTED TO GL 17000- ACTUAL BASIS | 203,930 | 203,930 | 203,930 |
| 5 | ESTIMATED EX-TAX COST OF CONSUMABLE SUPPLIES SUBJECT TO TAX PER PRIOR AUDIT RATIO OF RELATED ACCOUNT- AUDIT PERIOD | 260,521 | 260,521 | 260,521 |
| | | $964,153 | $964,153 | $964,153 |

**Special Instructions**   This is a Bankruptcy case with a Bar Date of 4/29/16.  This audit was
phone billed by the EA district on 4/13/16.

**BILLING AND REFUND NOTICE**

STATE OF CALIFORNIA
BOARD OF EQUALIZATION
P.O. BOX 942879 SACRAMENTO, CALIFORNIA 94279-0001
RIVERSIDE DISTRICT    **(951) 680-6400**

| FOR BOE USE ONLY | | |
|---|---|---|
| RE | | PM |
| EFFECTIVE DATE OF PAYMENT | | |
| MO | DAY | YEAR |

PRESS-ENTERPRISE
FREEDOM COMMUNICATIONS HOLDINGS,
625 N GRAND AVE
SANTA ANA CA 92701-4347

**Account: SR EH 102-501862**

**Express Login Code: q039083f**

| Notice ID: | 0002 4317 398 | April 15, 2016 |
|---|---|---|
| Amount Due | | 84,259.47 |
| Amount enclosed | | _____ |

Additional charges are due if not paid by 04/30/16
(See instructions below)

2

---✂------------------------------------------------------------

**Payments can be made online by going to www.boe.ca.gov and selecting the Make a Payment tab.**
Otherwise, cut on the dotted line and return the top portion with your check or money order made payable to the State Board of Equalization.

** Notice of Determination **
You are hereby notified of an amount due from you as shown
below. Please visit our website at www.boe.ca.gov to
download publications 17 and 70 to help you better
understand our appeals procedures and your rights.

Account:  SR EH 102-501862
Notice ID:  0002 4317 398



| Sales and Use Taxes<br>SALES TAX REGULAR | TAX | Interest | Penalty | Total |
|---|---|---|---|---|
| DETERMINATION ISSUED 04/15/16 | | | | |
| As determined by Audit | | | | |
| For the Period 11/21/13-09/30/15 | | | | |
| Revenue | 77,132.28 | | | 77,132.28 |
| Interest 02/01/14-04/30/16 | | 7,127.19 | | 7,127.19 |
| Subtotal | 77,132.28 | 7,127.19 | 0.00 | 84,259.47 |
| **AMOUNT DUE** | | | | 84,259.47 |

**************************************************************

Additional interest will accrue in accordance with the
Revenue and Taxation Code section 6591 on the unpaid TAX at
the rate of 0.500 % per month. Interest of 385.66 will
accrue if the TAX is not paid on or before 04/30/16.

Additional penalty of $ 7,713.23 is due if not paid by 05/15/16.

Liability disclosed by audit.

Upon termination of a business, corporate officers or other person
responsible for the filing of returns or the payment of tax who
willfully fail to pay the taxes collected or use tax due, will be held
personally liable for any TAXES as well as interest and penalties on
the TAXES, originally owed by FREEDOM COMMUNICATIONS HOLDINGS, INC
under the provisions specified in section 6829 of the Revenue and
Taxation Code.

Information concerning Determinations
The person upon whom a determination is made or any person directly

Payments can be made online by going to *www.boe.ca.gov* and selecting the "Make a Payment" tab.

If you are paying by check or money order, write your account number and Notice ID shown above. Make check or money
order payable to the State Board of Equalization. Include the top portion of this form with your payment. Keep the bottom portion for
your records.

00042429479

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

**Account: SR EH  102-501862**

| RIVERSIDE DISTRICT | (951) 680-6400 | | | |
|---|---|---|---|---|
| ** Notice of Determination ** Page 2 | Notice ID:   0002 4317 398 | | April 15, 2016 | 2 |
| Sales and Use Taxes SALES TAX REGULAR | TAX | Interest | Penalty | Total |

✂ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

interested may petition for a redetermination with the Board of
Equalization within 30 days from the date shown at the top of this
notice. A petition must be in writing and state the specific grounds
upon which it is founded. Anyone submitting a petition should be
prepared to submit documentary evidence to support the specific
grounds upon request. If a hearing is desired, it should be requested
in the petition. The request should specify whether an appeals
conference with a staff counsel or supervising tax auditor at the
nearest district or a hearing before the Board in Sacramento is
desired. A 10 day notice of the time and place of the hearing will be
given.

The filing of a petition will not prevent the accrual of interest.
However, the application of additional penalty referred to above will
be deferred until 30 days after the date of a notice of
redetermination. Prompt payment of undisputed portions of the
liability should be made. This will prevent accrual of additional
interest thereon and will not in any way affect the protested
portions.

For more information about submitting a petition for redetermination
and where to submit your petition, please visit our website at
www.boe.ca.gov.

Payments can be made online by going to  *www.boe.ca.gov* and selecting the "Make a Payment" tab.

If you are paying by check or money order, write your account number and Notice ID shown above. Make check or money
order payable to the State Board of Equalization. Include the top portion of this form with your payment. Keep the bottom portion for
your records.

BOE-392 (FRONT) REV. 9 (3-11)
**POWER OF ATTORNEY**

STATE OF CALIFORNIA
BOARD OF EQUALIZATION
FRANCHISE TAX BOARD
EMPLOYMENT DEVELOPMENT DEPARTMENT

*Check below to indicate the appropriate agency. Please note that a separate form must be completed and provided to **each** agency checked.*

☑ **STATE BOARD OF EQUALIZATION**
PO BOX 942879
SACRAMENTO CA 94279-0001
800-400-7115

☐ **FRANCHISE TAX BOARD**
PO BOX 2828 MS F283
RANCHO CORDOVA CA 95741-2828
FAX 916-843-5440

☐ **EMPLOYMENT DEVELOPMENT DEPARTMENT**
PO BOX 826880 MIC 28
SACRAMENTO CA 94280-0001
916-654-7263  •  FAX 916-654-9211

| TAXPAYER'S NAME Freedom Communications Holdings, Inc. | BUSINESS OR CORPORATION NAME dba Press Enterprise | TELEPHONE NUMBER ( 424 ) 354-1723 | FAX NUMBER ( ) |
|---|---|---|---|
| SOCIAL SECURITY NUMBER | FEDERAL EMPLOYER IDENTIFICATION NUMBER(S) 33-0942814 | CALIFORNIA SECRETARY OF STATE NUMBER(S) 3337155 | |
| BOARD OF EQUALIZATION ACCOUNT/PERMIT(S) 102-501862 | | EDD EMPLOYER ACCOUNT NUMBER | |

MAILING ADDRESS *(Number and Street, City, State, ZIP Code)*
c/o Lobel Weiland Golden Friedman LLP, 650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

☐ **INDIVIDUAL**    ☐ **PARTNERSHIP**    ☑ **CORPORATION**    ☐ **LIMITED LIABILITY COMPANY**

☐ **OTHER** _____

As owner, officer, receiver, administrator, or trustee for the taxpayer, or as a party to the tax or fee matter before the:

☑ **State Board of Equalization**    ☐ **Franchise Tax Board**    ☐ **Employment Development Department**

**I hereby appoint:** *[enter below the individual appointee(s) name(s), address(es) (including ZIP Code), telephone number(s) and fax number(s) – do not enter names of accounting or law firms, partnerships, corporations, etc., as the appointee name]*

| APPOINTEE NAME Christine Bach | APPOINTEE NAME |
|---|---|
| APPOINTEE BUSINESS NAME *(If applicable)* | APPOINTEE BUSINESS NAME *(If applicable)* |
| APPOINTEE ADDRESS *(Number and Street)* c/o LWGF LLP, 650 Town Center Drive, Suite 950 | APPOINTEE ADDRESS *(Number and Street)* |

| (City) Costa Mesa | (State) CA | (ZIP Code) 92626 | (City) | (State) | (ZIP Code) |
|---|---|---|---|---|---|
| TELEPHONE NUMBER ( 714 ) 796-2381 | FAX NUMBER ( ) | | TELEPHONE NUMBER ( ) | FAX NUMBER ( ) | |

As attorney(s)-in-fact to represent the taxpayer(s) for the following tax or fee matters: *[specify type(s) of tax]*

☐ Franchise and Income Tax Law    ☐ Payroll Tax Law
☑ Sales and Use Tax Law    ☐ Benefit Reporting
☐ Use Fuel Tax Law    ☐ Other: _____

SPECIFY THE TAX OR FEE YEAR(S) OR PERIOD(S) [IF ESTATE TAX, INDICATE DATE OF DEATH] (for Board of Equalization and Franchise Tax Board purposes)
11.21.2013 - 3.31.2016

The attorney(s)-in-fact (or any of them) are authorized, subject to revocation, to receive confidential tax information and to perform on behalf of the taxpayer(s) the following acts for the tax or fee matters described above: *[check the box(es) for the powers granted]*

☐ General Authorization (including all acts described below).
☑ Specific Authorization (selected acts described below).

  ☑ To confer and resolve any assessment, claim or collection of a deficiency or other tax or fee matter pending before the identified agency and attend any meetings or hearings thereto for the specified law identified above.

  ☑ To receive, but not to endorse and collect, checks in payment of any refund of taxes, penalties or interest.

  ☐ To execute petitions, claims for refund and/or amendments thereto.

  ☐ To execute consents extending the statutory period for assessment or determination of taxes.

  ☐ To execute closing agreements under section 19441 of the California Revenue and Taxation Code.

  ☐ To execute settlement agreements under section 19442 of the California Revenue and Taxation Code.

*(The back of this form must be completed)*

BOE-392 (BACK) REV. 9 (3-11)

☐ To represent the taxpayer for changes to their mailing address for any and all Payroll Tax Law, Benefit Reporting, both Payroll Tax Law and Benefit Reporting.

☐ To execute settlement agreements under section 1236 of the California Unemployment Insurance Code.

☐ To delegate authority or to substitute another representative.

☑ Other acts *(specify):*  To represent the taxpayer in matters under appeal

Franchise Tax Board (FTB) will send you and your first representative listed a copy of FTB computer generated notices as they become available.

☐ Check this box if you **do not** want FTB to send copies of available FTB computer generated notices to your first representative listed.

*(Note: Not all FTB processing systems are capable of generating representative copies at this time.)*

**This Power of Attorney revokes all earlier Power(s) of Attorney on file with the California State Board of Equalization, the Employment Development Department, or the Franchise Tax Board as identified above for the same matters and years or periods covered by this form, except for the following:** *[specify to whom granted, date and address, or refer to attached copies of earlier power(s)]*

| NAME | DATE POWER OF ATTORNEY GRANTED |
|---|---|
| | |

ADDRESS *(Number and Street, City, State, ZIP Code)*

**Unless limited, this Power of Attorney will remain in effect until the final resolution of all tax matters specified herein.**
*[specify expiration date if limited term]*

TIME LIMIT/EXPIRATION DATE (for Board of Equalization and Franchise Tax Board purposes)
December 31, 2016

**Signature of Taxpayer(s)**—If a tax matter concerns a joint return, **both** spouses must sign if joint representation is requested. If you are a corporate officer, partner, guardian, tax matters partner/person, executor, receiver, registered domestic partner, administrator, or trustee on behalf of the taxpayer, by signing this Power of Attorney you are certifying that you have the authority to execute this form on behalf of the taxpayer.

▶   **IF THIS POWER OF ATTORNEY IS NOT SIGNED AND DATED BY AN AUTHORIZED INDIVIDUAL, IT WILL BE RETURNED AS INVALID.**

| SIGNATURE | TITLE *(if applicable)* | DATE |
|---|---|---|
| | CRO | 5.13.2016 |
| PRINT NAME Brad W. Smith | | TELEPHONE ( 424 ) 354-1723 |
| SIGNATURE | TITLE *(if applicable)* | DATE |
| | | |
| PRINT NAME | | TELEPHONE ( ) |

BOE-345-WEB REV. 13 (12-15)
## NOTICE OF BUSINESS CHANGE

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

**ACCOUNT NO.** (Example: SR KHE XXX-XXXXXX) (ACCOUNT NUMBER REQUIRED)
SR EH 102-501862

**BUSINESS NAME**
Freedom Communications Holdings, Inc. dba Press Enterprise

**OLD BUSINESS LOCATION** (street, city, state, zip code)
1825 Chicago Avenue, Suite 100, Riverside, CA 92507

Please complete the applicable sections of this form and mail to: **State Board of Equalization, ATTN: LRAU/Registration Team, MIC:27, P.O. Box 942879, Sacramento, CA 94279-0027.** Use the bottom section if you need more space. **Be sure to sign, include daytime phone number, and date.**

### SECTION I: ADDRESS CHANGES

| NEW BUSINESS LOCATION (street, city, state, zip code) (do not use a PO Box) | DATE MOVED |
|---|---|
| No longer in business - assets sold in bankruptcy | 03.31.2016 |

| ADDING NEW SUBLOCATION (street, city, state, zip code) | START DATE |
|---|---|
| | |

| DAYTIME PHONE NUMBER | FAX NUMBER |
|---|---|
| ( 424 ) 354-1723 | ( ) |

**NEW MAILING ADDRESS** (street, city, state, zip code)
c/o Lobel Weiland Golden Friedman LLP, 650 Town Center Drive, Suite 950, Costa Mesa, CA 92626

**OLD MAILING ADDRESS** (street, city, state, zip code)
625 N Grand Avenue, Santa Ana, CA 92701

### SECTION II: OWNERSHIP/DBA CHANGES

| NEW OWNER'S NAME | DAYTIME PHONE NUMBER |
|---|---|
| | ( ) |

HAS BUSINESS NAME (DBA) CHANGED?
☐ Yes  ☐ No   If yes, new business name or DBA

| CORPORATION NAME | CORPORATE ID NUMBER | STATE INCORPORATED |
|---|---|---|
| | | |

| ☐ Check here if Partner or LLC Member Added | NAME | DATE ADDED |
|---|---|---|
| | | |

| ☐ Check here if Partner or LLC Member Dropped | NAME | DATE DROPPED |
|---|---|---|
| | | |

| SIGNATURE (owner, corporate officer, member, partner) | TITLE | TODAY'S DATE |
|---|---|---|
| | CRO | 5.13.2016 |

| PRINT NAME | BUSINESS EMAIL ADDRESS |
|---|---|
| Brad W. Smith | bsmith@glassratner.com |

**ADDITIONAL INFORMATION**

Please use the space below to provide additional information to update your account. You should also complete form BOE-65, *Notice of Closeout ,* if any of the following statements apply to your situation.

- If you sold your business, please give us the name and account number of the purchaser. Also, please list your daytime phone number and address below so that we can send you information. Please include the name of the escrow company, if applicable.
- If you added or dropped more than one partner (or LLC member), provide additional names, dates, and phone numbers below.
- If you closed your business, please provide your current daytime phone number and address.
- If an account has been issued, and you have determined that no actual operation of the business took place (did not operate), the account will be closed with a closeout date identical to the starting date shown on the registration record.

For more information regarding the closing of your account, please visit our website and refer to BOE publication 74, *Closing Out Your Account* at *www.boe.ca.gov/pdf/pub74.pdf.*

If extra space is needed, you may attach additional pages. **Contact your district office if you have any questions, or if you want to add or delete a business location (suboutlet).** We recommend you retain proof of mailing this form. We will contact you if we need more information. If you have general tax questions, please contact our Customer Service Center at 1-800-400-7115 (TDD/TTY: 1-800-735-2929). Customer service representatives are available weekdays from 8:00 a.m. to 5:00 p.m. Pacific time, except state holidays, or visit our website at *www.boe.ca.gov.*

**Additional Information:**

Please copy all communications to Tina Bach, Interim Sr. Tax Director, phone 714-796-2381, email tbach@freedom.com

BOE-245-COR-1 REV. 2 (4-15)

**CORPORATE OFFICER REGISTRATION UPDATE**

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

Supporting documentation (for example, a certified copy of the current *Statement of Officers* filed with the Secretary of State's office or a copy of the corporate minutes stating a change of officer) must be submitted with this form.

| BUSINESS NAME | BOE ACCOUNT NUMBER |
|---|---|
| Freedom Communications Holdings, Inc. | 102-501862 |

| CORPORATE ID NUMBER | FEDERAL EMPLOYER IDENTIFICATION NUMBER (FEIN) |
|---|---|
| 3337155 | 33-0942814 |

| BUSINESS TELEPHONE NUMBER | FAX NUMBER | CONTACT PERSON |
|---|---|---|
| ( 424 ) 354-1723 | ( ) | Brad Smith, CRO |

EMAIL ADDRESS *(of your corporate officer designated to handle tax matters)*
bsmith@glassratner.com

Use additional sheets to include information for more than three individuals.

### CORPORATE OFFICER

| NAME | TITLE | DRIVER LICENSE NUMBER |
|---|---|---|
| Brad W. Smith | Chief Restructuring Officer | N5429425 |

| HOME ADDRESS *(street, city, state, zip code)* | HOME TELEPHONE NUMBER |
|---|---|
| c/o Lobel Weiland Golden Friedman LLP, 650 Town Center Drive, Costa Mesa, CA 92626 | ( 424 ) 354-1723 |

| EMAIL ADDRESS | MOBILE NUMBER |
|---|---|
| bsmith@glassratner.com | ( 310 ) 936-3745 |

### CORPORATE OFFICER

| NAME | TITLE | DRIVER LICENSE NUMBER |
|---|---|---|
| | | |

| HOME ADDRESS *(street, city, state, zip code)* | HOME TELEPHONE NUMBER |
|---|---|
| | ( ) |

| EMAIL ADDRESS | MOBILE NUMBER |
|---|---|
| | ( ) |

### CORPORATE OFFICER

| NAME | TITLE | DRIVER LICENSE NUMBER |
|---|---|---|
| | | |

| HOME ADDRESS *(street, city, state, zip code)* | HOME TELEPHONE NUMBER |
|---|---|
| | ( ) |

| EMAIL ADDRESS | MOBILE NUMBER |
|---|---|
| | ( ) |

### NORTH AMERICAN INDUSTRY CLASSIFICATION SYSTEM (NAICS)

PLEASE LIST YOUR PRIMARY BUSINESS ACTIVITY OR NAICS CODE
Newspaper delivery and services

TYPE OF BUSINESS ARE YOU ENGAGED IN *(please check appropriate box)*
☐ Retail    ☐ Wholesale    ☐ Construction Contractor    ☐ Manufacturer    ☑ Service    ☐ Leasing    ☐ Repair

WHAT DO YOU SELL?
newspaper and delivery services

### CERTIFICATION
#### (All Corporate Officers must sign below)

*I am duly authorized to sign the application and certify that the statements made are correct to the best of my knowledge and belief. I also represent and acknowledge that the applicant will be engaged in or conduct business as a seller or purchaser of tangible personal property.*

| PRINTED NAME | SIGNATURE | DATE |
|---|---|---|
| Brad W. Smith | *[signature]* | 5.13.2016 |
| PRINTED NAME | SIGNATURE | DATE |
| | | |
| PRINTED NAME | SIGNATURE | DATE |
| | | |

*Return this form to your local Board of Equalization office.*

William N. Lobel, State Bar No. 93202
wlobel@lwgfllp.com
Alan J. Friedman, State Bar No. 132580
afriedman@lwgfllp.com
Beth E. Gaschen, State Bar No. 245894
bgaschen@lwgfllp.com
Christopher J. Green, State Bar No. 295874
cgreen@lwgfllp.com
**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile    714-966-1002

Reorganization Counsel for Debtors and
Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:15-bk-15311-MW |
| FREEDOM COMMUNICATIONS, INC., a Delaware corporation, *et al.*, | Chapter 11 |
| | (Jointly Administered With Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; |
| Debtors and Debtors-in-Possession. | 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; |
| Affects: | 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; |
| ☒  All Debtors | 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; |
| ☐  Freedom Communications, Inc., a Delaware corporation, ONLY | 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; |
| ☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| ☐  Freedom Services, Inc., a Delaware corporation, ONLY | **NOTICE OF APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AUTHORITY TO EXPAND THE SCOPE OF RETENTION OF GLASSRATNER ADVISORY & CAPITAL AS FINANCIAL ADVISOR AND CONSULTANT TO THE DEBTORS** |
| ☐  2100 Freedom, Inc., a Delaware corporation, ONLY | |
| ☐  OCR Community Publications, Inc., a California corporation, ONLY | |
| ☐  Daily Press, LLC, a California limited liability company, ONLY | [No hearing required pursuant to Local Bankruptcy Rule 2014-1(b)(1)] |
| ☐  Freedom California Mary Publishing, Inc., a California corporation, ONLY | |

*Left margin:* Lobel Weiland Golden Friedman LLP — 650 Town Center Drive, Suite 950 — Costa Mesa, California 92626 — Tel 714-966-1000  Fax 714-966-1002

1  ☐ Freedom California Ville Publishing
Company LP, a California limited
2  partnership, ONLY

3  ☐ Freedom Colorado Information, Inc., a
Delaware corporation, ONLY
4

☐ Freedom Interactive Newspapers, Inc., a
5  California corporation, ONLY

6  ☐ Freedom Interactive Newspapers of
Texas, Inc., a Delaware corporation, ONLY
7

☐ Freedom Newspaper Acquisitions, Inc.,
8  a Delaware corporation, ONLY

9  ☐ Freedom Newspapers, a Texas general
partnership, ONLY
10

☐ Freedom Newspapers, Inc., a Delaware
11  corporation, ONLY

12  ☐ Freedom Newspapers of Southwestern
Arizona, Inc., a California corporation, ONLY
13

☐ OCR Information Marketing, Inc., a
14  California corporation, ONLY

15  ☐ Odessa American, a Texas general
partnership, ONLY
16

☐ Orange County Register
17  Communications, Inc., a California
corporation, ONLY
18

☐ Victor Valley Publishing Company, a
19  California corporation, ONLY

20  ☐ Victorville Publishing Company, a
California limited partnership, ONLY
21

☐ Freedom SPV II, LLC, a Delaware
22  limited liability company, ONLY

23  ☐ Freedom SPV VI, LLC, a Delaware
limited liability company, ONLY
24

☐ Freedom SPV I, LLC, a Delaware limited
25  liability company, ONLY

26  ☐ Freedom SPV IV, LLC, a Delaware
limited liability company, ONLY
27

☐ Freedom SPV V, LLC, a Delaware
28  limited liability company, ONLY

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1068161.3

2

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that pursuant to Section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Central District of California (the "Local Rules"), Freedom Communications, Inc., a Delaware corporation ("Freedom Communications") and each of its related debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors" and each a "Debtor"), have filed with this Court an application for an order expanding the scope of retention of GlassRatner Advisory & Capital Group LLC ("GlassRatner") such that Brad Smith, Senior Managing Director of GlassRatner, will serve as Chief Restructuring Officer ("CRO") to the Debtors effective as of April 1, 2016 (the "Application").[1]

On November 1, 2015 and November 2, 2015, as applicable to each Debtor (collectively, the "Petition Dates"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Court"). The Debtors continue to operate and manage their affairs as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner. On November 10, 2015, the United States Trustee appointed a Joint Committee of Creditors holding unsecured claims (the "Committee") in the cases of: (1) Freedom Communications, Inc., 8:15-bk-15311-MW; (2) Freedom Communications Holdings, Inc., 8:15-bk-15312-MW; (3) Freedom Services, Inc., 8:15-bk-15313-MW; and (4) OCR Community Publications, Inc., 8:15-bk-15316-MW.

By an order dated December 23, 2015 (the "Employment Order") [Docket No. 262], this Court approved the *Application of Debtors and Debtors-in-Possession to Employ GlassRatner Advisory & Capital Group LLC as Financial Advisor and Consultant* (the "Original Application") [Docket No. 145]. As more fully described in the Original Application, the Debtors engaged GlassRatner as a financial advisor because of GlassRatner's experience, knowledge, resources, capabilities and reputation in the reorganization and restructuring of distressed companies, together with their prepetition experience assisting the Debtors in connection with a potential restructuring of the Debtors' financial affairs.

The Debtors' relief requested herein is necessary to complete the wind down of the Debtors' business operations and successful resolution of these chapter 11 cases. Upon closing of the Sale, the Debtors lost most of its management and staff, and Mr. Smith's experience and familiarity with the Debtors' business operations is essential to complete the wind down. Mr. Smith, as CRO, and GlassRatner will, *inter alia*, oversee the remaining employees in winding down the Debtors' businesses, including terminating the Debtors' pension plans and 401k, and providing analysis for the purpose of preparing a disclosure statement and liquidating plan of reorganization.

As a result of work already performed on behalf of the Debtors, Mr. Smith has acquired significant knowledge of the Debtors and their businesses. As such, the Debtors believe that Mr. Smith is well-qualified and able to advise them in a cost-effective, efficient and timely manner. In his capacity as CRO, Mr. Smith will work with

_____

[1] Any term not specifically defined herein shall have the meaning set forth in the Application.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

1  and report directly to the Debtors' Board of Directors.  The Committee supports Mr.
   Smith's appointment as CRO.

2
        None of the services that the Firm will render in connection with these cases will
3  be duplicative of the services rendered by any of the other professionals employed in the
   Cases.

4                      **Proposed Compensation of the Firm**

5        The terms of GlassRatner's employment agreed to by the Debtors, subject to
   approval of the Court, are as follows:

6
        **A.    Modified Compensation Procedures**
7        GlassRatner will continue to comply with the modified compensation procedures as
   set forth in the Original Application and approved by way of the Employment Order.

8
        **B.    GlassRatner Continues to be a Disinterested Person**
9        To the best of GlassRatner's knowledge as of the date hereof, and except to the
   extent disclosed in the Original Application, GlassRatner continues to be a (i)
10 "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (ii)
   does not hold or represent an interest adverse to the Debtors' estates; and (iii) has no
11 connection to the Debtors, their creditors or related parties.

12       **PLEASE TAKE FURTHER NOTICE** that if you do not oppose expanding the scope
   of retention of GlassRatner, such that Brad Smith will serve as Chief Restructuring Officer
13 to the Debtors, you need take no further action.  In accordance with Local Bankruptcy
   Rule 2014-1(b)(3)(E), any opposition to the Application and request for hearing on the
14 Application must be filed with the Court and served on the Office of the United States
   Trustee and Lobel Weiland Golden Friedman LLP, reorganization counsel for the Debtors,
15 no later than 14 days from the date of service of this notice, in the form set forth in Local
   Bankruptcy Rule 9013-1(f)(1).  Any objections not timely made may be deemed waived.

16
        **PLEASE TAKE FURTHER NOTICE** that a complete copy of the Application may
17 be obtained from Nancy Lockwood, Paralegal, Lobel Weiland Golden Friedman LLP, by
   email at nlockwood@lwgfllp.com, by mail at 650 Town Center Drive, Suite 950, Costa
18 Mesa, California 92626, or by telephone at (714) 966-1000, or from the Clerk of the
   Bankruptcy Court.

19
                        Respectfully submitted,
20
   Dated:  April 22, 2016        LOBEL WEILAND GOLDEN FRIEDMAN LLP
21

22                       By:   /s/ Alan J. Friedman
                                   William N. Lobel
23                                 Alan J. Friedman
                                   Beth E. Gaschen
24                                 Christopher J. Green
                             Reorganization Counsel for Debtors and Debtors-in-
25                           Possession

26

27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| In re: **Freedom Communications, Inc., a Delaware corporation, Inc., et al.** Debtor(s). | CHAPTER: **11** CASE NUMBER: **8:15-bk-15311-MW** (Jointly Administered) |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**650 Town Center Drive, Suite 950**
**Costa Mesa, CA  92626**

A true and correct copy of the foregoing document entitled **NOTICE OF APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AUTHORITY TO EXPAND THE SCOPE OF RETENTION OF GLASSRATNER ADVISORY & CAPITAL AS FINANCIAL ADVISOR AND CONSULTANT TO THE DEBTORS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 22, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 22, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

(Attorney Service)
The Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, 6th Floor Courtesy Bin
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/22/2016 | Nancy Lockwood | /s/ Nancy Lockwood |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br>**Freedom Communications, Inc., a Delaware corporation, Inc., et al.**<br>Debtor(s). | CHAPTER: **11**<br>CASE NUMBER: **8:15-bk-15311-MW**<br>(Jointly Administered) |
|---|---|

**1.** <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- **James C Behrens**   jbehrens@greenbergglusker.com, kwoodson@ggfirm.com;calendar@ggfirm.com
- **Shraddha Bharatia**   notices@becket-lee.com
- **Matthew Bouslog**   MBouslog@gibsondunn.com, Pcrawford@gibsondunn.com
- **J Scott Bovitz**   bovitz@bovitz-spitzer.com
- **Frank Cadigan**   frank.cadigan@usdoj.gov
- **Joseph Corrigan**   Bankruptcy2@ironmountain.com
- **Brian L Davidoff**   bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com
- **Michael T Delaney**   mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
- **Jessica DiFrancesco**   notices@becket-lee.com
- **Caroline Djang**   cdjang@rutan.com
- **Jeffrey W Dulberg**   jdulberg@pszjlaw.com
- **Robert J Feinstein**   rfeinstein@pszjlaw.com
- **Scott D Fink**   brodellecf@weltman.com
- **Alan J Friedman**   afriedman@wgllp.com, nlockwood@wgllp.com;jokeefe@wgllp.com;banavim@wgllp.com
- **Beth Gaschen**   bgaschen@wgllp.com, kadele@wgllp.com;lfisk@wgllp.com;tziemann@wgllp.com
- **Nancy S Goldenberg**   nancy.goldenberg@usdoj.gov
- **Seth Goldman**   seth.goldman@mto.com
- **Christopher J Green**   cgreen@wgllp.com, chrisgreen@ucla.com;kadele@wgllp.com;lfisk@lwgfllp.com
- **Michael J Hauser**   michael.hauser@usdoj.gov
- **M Jonathan Hayes**   jhayes@srhlawfirm.com,
  roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@sr
  hlawfirm.com;staci@srhlawfirm.com;jhayesecf@gmail.com
- **Eric M Heller**   eric.m.heller@irscounsel.treas.gov
- **Lillian Jordan**   ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM
- **Samuel M Kidder**   skidder@bhfs.com
- **Jeffrey C Krause**   jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
- **Elan S Levey**   elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- **William N Lobel**   wlobel@lwgfllp.com, nlockwood@lwgfllp.com;jokeefe@lwgfllp.com;banavim@wgllp.com
- **Aaron J Malo**   amalo@sheppardmullin.com, jsummers@sheppardmullin.com
- **Ashley M McDow**   amcdow@bakerlaw.com,
  mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com
- **David W. Meadows**   david@davidwmeadowslaw.com
- **Reed M Mercado**   rmercado@sheppardmullin.com
- **Dawn A Messick**   messickd@ballardspahr.com, chabota@ballardspahr.com
- **Raymond F Moats**   colcaecf@weltman.com
- **Elizabeth L Musser**   emusser@tresslerllp.com
- **Ernie Zachary Park**   ernie.park@bewleylaw.com
- **Ronak Patel**   rpatel@co.riverside.ca.us, mdominguez@co.riverside.ca.us
- **Courtney E Pozmantier**   cpozmantier@greenbergglusker.com,
  kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- **Christopher E Prince**   , jmack@lesnickprince.com
- **Todd C. Ringstad**   becky@ringstadlaw.com
- **Christopher O Rivas**   crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Jeremy E Rosenthal**   jrosenthal@sidley.com
- **Peter J Rudinskas**   pjr.legal@gmail.com
- **Leonard M Shulman**   lshulman@shbllp.com
- **Donald W Sieveke**   ibmoola@yahoo.com, dws4law@pacbell.net
- **David P Simonds**   dsimonds@akingump.com, tsouthwell@akingump.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1

| In re: | CHAPTER: **11** |
|---|---|
| **Freedom Communications, Inc., a Delaware corporation, Inc., et al.** <br><br> Debtor(s). | CASE NUMBER: **8:15-bk-15311-MW** <br> **(Jointly Administered)** |

- **Alex E Spjute**    spjute@hugheshubbard.com, ryan@hugheshubbard.com;gartman@hugheshubbard.com
- **Sarah Stuppi**    Sarah@stuppilaw.com
- **Helena Tseregounis**    htseregounis@sidley.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Scott S Weltman**    colcaecf@weltman.com
- **Beth Ann R Young**    bry@lnbyb.com
- **Steven D Zansberg**    szansberg@lskslaw.com, mkelley@lskslaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

**FREEDOM**
COMMUNICATIONS, INC.

c/o Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite
Costa Mesa, CA 92626

7006 1140 0000 7432 9248

Petitions Section, MIC: 38
State Board of Equalization
PO Box 942879
Sacramento, CA 94279-0038





U.S. POSTAGE
SANTA ANA, CA
MAY 13, '16
AMOUNT
$4.87
R2304N17477-23

# EXHIBIT 2

**Orange County Register**                                              Tax rate:        8.00%

**Tax Period:**   January through March 2016
**Account #**    24-086069-3

| | | | | |
|---|---|---|---|---|
| Gross Subscription Revenue | | | 8,300,310 | |
| Estimated Value of Assets Sold in Bankruptcy | | | 1,999,245 | 10,299,555 |
| Taxable Purchases | | | | 12,870 |
| | | | | 10,312,425 |
| Exempt Sales (Online Subscriptions) | | | (5,095,007) | |
| Transportation Charges | | | (3,205,303) | (8,300,310) |
| Taxable transactions | | | | 2,012,115 |
| | State Tax | 6.25% | 125,757 | |
| | County Tax | 0.25% | 5,030 | |
| | Local Tax | 1.00% | 20,121 | |
| | District Tax | 0.50% | 10,061 | |
| Total sales and use tax due | | | | 160,969 |
| Tax previously paid | | | | |
| | 1st prepayment | | (153,261) | |
| | 2nd prepayment | | (117,883) | |
| | paid w/return / transferred to 102-50186: | | 10,732 | |
| | Total prepayments | | | (260,412) |
| Refund due | | | | (99,443) |

Estimated Value of Equipment Sold:

| | | |
|---|---|---|
| Anaheim | 301,817 | 3,018 |
| Santa Ana | 1,710,298 | 17,103 |
| Total | 2,012,115 | 20,121 |

**Orange County Register**
**Tax Period:   January through March 2016**
**Account #    24-086069-3**

We make reference to the BOE's letter dated May 9, 2016 (copy attached). That letter comunicates the BOE's rejection of the original return filed for Q1 of 2016 on the grounds that the deductions claimed exceeded total gross sales.  This return corrects this calculation error.

Note, the return also includes our best estimate for the value of the personal property sold in bankruptcy on March 31.  We will not know the exact value of those assets until we receive the purchase price allocation (PPA) from the buyer which is due to us within 120 days of the date of the sale.  We will therefore file a return for Q3 which will reflect the difference of the value we reported and the value per the PPA if it is higher. Otherwise, we will file an amended return for Q1 requesting an additional refund.

Note, the return filed for Q1 furthermore reflects that the Company sold a lot of subscriptions for a price that didn't even recover the delivery charges.  The company did this to increase advertising revenue and somit overall revenues.

STATE OF CALIFORNIA

**STATE BOARD OF EQUALIZATION**
RETURN ANALYSIS UNIT
450 N STREET, SACRAMENTO, CALIFORNIA
P.O. BOX 942879, SACRAMENTO, CALIFORNIA 94279-0035
1-916-445-7732 • FAX: 1-916-323-0478
www.boe.ca.gov

SEN. GEORGE RUNNER (RET.)
First District, Lancaster

FIONA MA, CPA
Second District, San Francisco

JEROME E. HORTON
Third District, Los Angeles County

May 20, 2016

DIANE L. HARKEY
Fourth District, Orange County

BETTY T. YEE
State Controller

FREEDOM COMMUNICATIONS INC
ORANGE COUNTY REGISTER
PO BOX 11626
SANTA ANA, CA 92711-1626

DAVID J. GAU
Executive Director

IN REPLY REFER TO:
SR Y EA 024-086069
Period: 1st Quarter 2016
Doc ID: 42685883

Dear Taxpayer:

Thank you for your return for the above period. The State Board of Equalization (BOE) appreciates your efforts to ensure the return is correctly completed. During the review process, the following was noted and requires clarification.

The quarterly return filed for the above period appears to reflect only one month's transactions. As a result, your return resulted in a credit. The return must include the transactions for the entire quarter. Please complete the enclosed work copy return to provide correcting figures. If you are due a refund, please reply to this letter with an explanation of the credit amount.

When completing the return, transactions for the entire quarter must be reported on lines 1 through 10(f) and credit taken for each prepayment made on line 22. Until the return is completed in this manner, the BOE cannot determine that your quarterly return is correct. Please check your payment records. If you made the prepayment indicated above, you need to provide correcting information on the enclosed work copy. If the prepayment indicated above does not belong to you, please reply to this letter so we can research the payment further.

In order to complete the processing of the return, please reply within 30 days and include a copy of this letter with the requested work copy. Upon approval of your corrected return, the appropriate adjustment will be made to your account and you will be notified of our action.

If there are any questions relating to this letter, Melissa Thavenet at 1- 916-445-4538 is available to assist you. Your cooperation is appreciated in resolving this matter. You may also visit our website at "www.boe.ca.gov" to obtain copies of regulations, forms, publications and other information.

BOARD OF EQUALIZATION

Return Analysis Unit

LAC-7
Enclosure:
    Work Copy

BOE-1648-RAS REV. 17 (4-15)

**Press Enterprise**                                                    Tax rate:          8.00%
**Tax Period:**     January through March 2016
**Account #**      102-501862

| | | | | |
|---|---|---|---|---|
| Gross Subscription Revenue | | | 3,074,261 | |
| Estimated Value of Assets Sold in Bankruptcy | | | 970,628 | 4,044,889 |
| Taxable Purchases | | | | 571 |
| | | | | 4,045,460 |
| Exempt Sales (Online Subscriptions) | | | (1,641,613) | |
| Transportation Charges | | | (1,432,649) | (3,074,261) |
| Taxable transactions | | | | 971,199 |
| | State Tax | 6.25% | 60,700 | |
| | County Tax | 0.25% | 2,428 | |
| | Local Tax | 1.00% | 9,712 | |
| | District Tax | 0.50% | 4,856 | |
| Total sales and use tax due | | | | 77,696 |
| Tax previously paid | | | | |
| | 1st prepayment | | (42,812) | |
| | 2nd prepayment | | (24,152) | |
| | paid w/return / transferred from acct 24-08606 | | (10,732) | |
| | Total prepayments | | | (77,696) |
| Refund due | | | | (0) |

| | | | |
|---|---|---|---|
| Estimated Value of Equipment Sold: | | | |
| | Riverside | 970,628 | 9,706 |
| | | | - |
| | Total | 970,628 | 9,706 |

**Press Enterprise**
**Tax Period:** **January through March 2016**
**Account #** **102-501862**

We make reference to the BOE's letter dated May 20, 2016 (copy attached). That letter comunicates the BOE's rejection of the original return filed for Q1 of 2016 on the grounds that the BOE suspects that the return as filed reflects activity for one month only.

Note, the return correctly reflects three months of activity. It also includes our best estimate for the value of the personal property sold in bankruptcy on March 31. We will not know the exact value of those assets until we receive the purchase price allocation (PPA) from the buyer which is due to us within 120 days of the date of the sale. We will therefore file a return for Q3 which will reflect the difference of the value we reported and the value per the PPA if it is higher. Otherwise, we will file an amended return for Q1 requesting an additional refund.

Note, the return filed for Q1 furthermore reflects that the Company sold a lot of subscriptions for a price that didn't even recover the delivery charges. The company did this to increase advertising revenue and somit overall revenues.

STATE OF CALIFORNIA

**STATE BOARD OF EQUALIZATION**
RETURN ANALYSIS UNIT
450 N STREET, SACRAMENTO, CALIFORNIA
P.O. BOX 942879, SACRAMENTO, CALIFORNIA 94279-0035
1-916.324-6012 • FAX: 1-916.323-0478
www.boe.ca.gov

SEN. GEORGE RUNNER (RET.)
First District, Lancaster

FIONA MA, CPA
Second District, San Francisco

JEROME E. HORTON
Third District, Los Angeles County

May 9, 2016

DIANE L. HARKEY
Fourth District, Orange County

BETTY T. YEE
State Controller

FREEDOM COMMUNICATIONS HOLDINGS, INC
PRESS-ENTERPRISE
625 N GRAND AVE
SANTA ANA, CA 92701-4347

DAVID J. GAU
Executive Director

IN REPLY REFER TO:
SR  EH 102-501862
Period(s): 1st Quarter 2016
Doc ID: 42521076
KDE Code: 2116

Dear Taxpayer:

Thank you for your return for the above period. The State Board of Equalization (BOE) appreciates your efforts to ensure the return is correctly completed. During the review process, the following was noted and requires clarification.

Total deductions in the amount of $3,292,459.00 were claimed for the above period.

The deduction(s) claimed on your return exceed total gross sales. Please send correcting figures or a complete explanation.

If the return information was incorrectly reported, please provide a corrected return. Schedule A should also be corrected, if applicable.

In order to complete the processing of the return, please reply within 30 days and include a copy of this letter. If you do not provide a timely written response, a billing may need to be issued based on the amount in question. The billing will include other periods, if applicable.

In the space below, provide the name and telephone number of the person who you want contacted if we have any additional questions.

Name _TINA  BACH_ Telephone _(9 14) 796 -2381_

If there are any questions relating to this letter, Fernando Ibarra at 916.324-6012 is available to assist you. Your cooperation is appreciated in resolving this matter. You may also visit our website at "www.boe.ca.gov" to obtain copies of regulations, forms, publications and other information.

BOARD OF EQUALIZATION

Return Analysis Unit

F1.6

BOE-1641-RAS REV. 21 (9-14)



Tine Bach
Interim Senior Director, Tax
625 N GRAND AVE * SANTA ANA, CA 92701
E-mail: tbach@Freedom.com
(714) 796-2381 * Fax (714) 796-3577

Fax to:   **Board of Equalization**
          **Attn. Dave Richards**
          **1.916.324.2371**

Fax from: **Freedom Communications, Inc. and Freedom Communications Holdings, Inc.**
          **Tina Bach, Interim Sr. Tax Director**
          **1.714.796.2381**

Faxed on: **June 2, 2016**

Re:       **Revised Q1 2016 Sales and Use Tax Return for Acct. 24-086069**
          **Orange County Register**

          **Revised Q1 2016 Sales and Use Tax Return for Acct. 102-501862**
          **Press Enterprise**

Number of Pages:   **19**

Comments:

The original returns filed have been corrected to properly limit deductions from taxable subscription revenues to the amount of subscription revenues received. Please refer to the supporting statement attached for additional detail.

Each return reflects three months worth of activity.

As previously discussed on the phone, we request that $10,732 be transferred from our account for the Orange County Register, 24-086069, to our account for the Press Enterprise, 102-501862, as the calculation error caused an underpayment of tax in that account while we have overpaid the combined liability from both accounts. As a result, there is no tax or refund due relating to account 102-501862. Account 24-086069's overpayment stands at $99,443 after the transfer of $10,732 which we request to have refunded.

# EXHIBIT 3

BOE-101 (FRONT) REV. 10 (12-15)
**CLAIM FOR REFUND OR CREDIT**

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

*(Instructions on back)*

| NAME OF TAXPAYER(S) OR FEEPAYER(S) | BOE ACCOUNT NUMBER |
|---|---|
| Orange County Register | 24-086069 |

| SOCIAL SECURITY NUMBER(S)* OR FEDERAL EMPLOYER IDENTIFICATION NUMBER | GENERAL PARTNER(S) *(if applicable)* |
|---|---|
| 95-1140750 | |

| BUSINESS NAME *(if applicable)* | BUSINESS LOCATION ADDRESS *(if applicable)* |
|---|---|
| Freedom Communications, Inc. | c/o Lobel Weiland Golden Friedman LLP |

MAILING ADDRESS
650 Town center Drive, Suite 950, Costa Mesa, CA 92626

Please select the Tax or Fee Program that pertains to your claim for refund or credit.

☑ Sales and Use Tax
☐ Lumber Assessment
☐ Prepaid Mobile Telephony Services (MTS) Surcharge

For overpayments of use tax by a purchaser of a vehicle or undocumented vessel to the Department of Motor Vehicles (DMV), please complete BOE-101-DMV.

☐ Alcoholic Beverage Tax
☐ California Tire Fee
☐ Childhood Lead Fee
☐ Cigarette and Tobacco Products Tax
☐ Electronic Waste Recycling Fee
☐ Diesel Fuel Tax
☐ Emergency Telephone Surcharge
☐ Energy Resources Surcharge
☐ Fire Prevention Fee
☐ Hazardous Substances Tax

☐ Integrated Waste Management Fee
☐ Marine Invasive Species Fee
☐ Motor Vehicle & Jet Fuel Taxes
☐ Natural Gas Surcharge
☐ Occupational Lead Fee
☐ Oil Spill Response Fees
☐ Tax on Insurers
☐ Underground Storage Tank Fee
☐ Use Fuel Tax
☐ Water Rights Fee

**For the above tax/fee programs, mail your completed form to:**
State Board of Equalization
Audit Determination and
Refund Section, MIC:39
PO BOX 942879
Sacramento, CA 94279-0039

**For the above tax/fee programs, mail your completed form to:**
State Board of Equalization
Appeals and Data Analysis Branch, MIC:33
PO BOX 942879
Sacramento, CA 94279-0033
**Or email to:** adab@boe.ca.gov

The undersigned hereby makes claim for refund or credit of $ 788,754 , or such other amounts as may be established, in tax, interest and penalty in connection with:

☑ Return(s) filed for the period October 2012 _____ through March 2013 _____.
☐ Determination(s)/Billing(s) dated _____ and paid _____.
☐ Other *(describe fully)*:

Basis for refund *(required)*:

The returns as filed did not allocate the Taxpayer's mixed sale subscription revenues between subscriptions to tangible (taxable) and intangible (non-taxable) product. The amended returns correctly allocate those mixed sales between the taxable and non-taxable categories. This refund claim was prepared in accordance and pursuant with the ruling in the Appeals Court decision in DELL, INC., et al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO; DIANE MOHAN et al., Real Parties in Interest and with guidance being provided in publication 1590 (currently in revision).

Supporting Documentation: ☐ is attached ☑ will be provided upon request

| SIGNATURE | DATE SIGNED |
|---|---|
| | April 19, 2016 |

| PRINT NAME | CONTACT PERSON *(if other than signatory)* |
|---|---|
| Richard E. Mirman | Tina Bach |

| TITLE OR POSITION | TELEPHONE NUMBER | TITLE OR POSITION OF CONTACT PERSON | TELEPHONE NUMBER |
|---|---|---|---|
| CEO | ( 714 ) 796-2381 | Interim Sr Tax Director | ( 714 ) 796-2381 |

| EMAIL | EMAIL |
|---|---|
| | tbach@freedom.com |

*See BOE-324-GEN, *Privacy Notice*, regarding disclosure of the applicable social security number.

**Orange County Register**

**Tax Period:** October through December 2012

**Account #** 24-086069-3

Tax rate: 7.75%

| | | As Amended | As originally filed | Change |
|---|---|---|---|---|
| Gross subscription revenue | | 9,826,438 | 6,057,287 | 3,769,151 |
| Taxable purchases | | 45,995 | 45,995 | - |
| | | 9,872,433 | 6,103,282 | 3,769,151 |
| Sales for resale | (26,262) | | | (26,262) |
| Exempt sales (online subscriptions) | (5,194,093) | | - | (5,194,093) |
| Transportation Charges | (3,759,782) | (8,980,137) | | (3,759,782) |
| Taxable transactions | | 892,296 | 6,103,282 | (5,210,986) |
| Total sales and use tax due | | 69,153 | 473,004 | (403,851) |
| Tax previously paid | | | | |
| 1st prepayment | | (149,840) | (149,840) | |
| 2nd prepayment | | (160,647) | (160,647) | |
| paid w/return | | (162,517) | 162,517 | |
| Total prepayments | | (473,004) | | |
| Refund due | | (403,851) | | |

**Explanation of Changes:**

The return as originally filed reported net taxable sales on line 1 rather than gross sales. The amended return reports Gross Sales including the transportation exclusion, online only sales and sales for resale.

The return as originally filed did not allocate subscription revenue to the Company's online product. The amended return correctly reflects this allocation.

G:\TAX\2016\2016 Tax Return Support\Sales Tax\2016 Amended Return Project\ 2012 Q4 WPs - as amended 2016.04.18.xlsx
4/19/2016 11:20 AM

Statement att'd to Refund Claim

**Orange County Register**
**Tax Period:** January through March 2013      Tax rate:  8.00%
**Account #** 24-086069-3

|  |  | As Amended | As originally filed | Change |
|---|---|---|---|---|
| Gross subscription revenue |  | 9,072,169 | 5,335,447 | 3,736,722 |
| Taxable purchases |  | 56,339 | 56,339 | - |
|  |  | 9,128,508 | 5,391,786 | 3,736,722 |
| Sales for resale | (22,929) |  |  | (22,929) |
| Exempt sales (online subscripti | (4,796,097) |  | - | (4,796,097) |
| Transportation Charges | (3,728,986) | (8,548,012) |  | (3,728,986) |
| Taxable transactions |  | 580,495 | 5,391,786 | (4,811,291) |
| Total sales and use tax due |  | 46,440 | 431,343 | (384,903) |
| Tax previously paid |  |  |  |  |
|   1st prepayment |  | (149,840) | (149,840) |  |
|   2nd prepayment |  | (160,647) | (160,647) |  |
|   paid w/return |  | (120,856) | 120,856 |  |
|   Total prepayments |  | (431,343) |  |  |
| Refund due |  | (384,903) |  |  |
|  |  | - |  |  |

**Explanation of Changes:**

The return as originally filed reported net taxable sales on line 1 rather than gross sales. The amended return reports Gross Sales including the transportation exclusion, online only sales and sales for resale.

The return as originally filed did not allocate subscription revenue to the Company's online product. The amended return correctly reflects this allocation.

Orange County Register                                              Tax rate:        8.00%
Tax Period:      April through June 2013
Account #        24-086069

|  | | As amended | As originally filed | Change |
|---|---|---|---|---|
| Gross subscription revenue | | 10,193,357 | 6,403,442 | 3,789,915 |
| Taxable purchases | | 51,827 | 51,827 | - |
| | | 10,245,184 | 6,455,269 | 3,789,915 |
| Bad Debt | | (14,637) | - | (14,637) |
| Exempt sales (online subscriptions) | | (5,389,205) | - | (5,389,205) |
| Transportation Charges | | (3,779,506) | - | (3,779,506) |
| Taxable transactions | | 1,061,836 | 6,455,269 | (5,393,433) |
| Total sales and use tax due | | 84,947 | 516,421 | (431,475) |
| | | | | 1 |
| Tax previously paid | | | | |
| | 1st prepayment | (163,148) | (163,148) | |
| | 2nd prepayment | (176,120) | (176,120) | |
| | paid w/return | (177,153) | 177,153 | |
| | Total prepayments | (516,421) | | |
| Refund due | | (431,474) | | |

| | | | | |
|---|---|---|---|---|
| | State Tax | 6.25% | 66,365 | 403,454 |
| | County Tax | 0.25% | 2,655 | 16,138 |
| | Local Tax | 1.00% | 10,618 | 64,553 |
| | District Tax | 0.50% | 5,309 | 32,276 |
| | Total | 8.00% | 84,947 | 516,421 |

Orange County Register                                          Tax rate:        8.00%
Tax Period:     July through September 2013
Account #      24-086069

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 10,671,958 | 6,293,711 | 4,378,247 |
| Taxable purchases | 44,046 | 44,046 | - |
| | 10,716,004 | 6,337,757 | 4,378,247 |
| Bad Debt | (12,360) | - | (12,360) |
| Transportation Charges (exempt) | (4,365,140) | - | (4,365,140) |
| Exempt sales (online subscriptions) | (5,642,640) | - | (5,642,640) |
| Taxable transactions | 695,864 | 6,337,757 | (5,641,893) |
| | | | |
| Total sales and use tax due | 55,669 | 507,021 | (451,352) |
| | | | 0 |

Tax previously paid

|  | | | |
|---|---|---|---|
| 1st prepayment | (181,251) | (181,251) | |
| 2nd prepayment | (188,899) | (188,899) | |
| paid w/return | (136,871) | 136,871 | |
| Total prepayments | (507,021) | | |

| Refund due | (451,352) | | |
|---|---|---|---|
| | (0) | | |

| | | | As amended | As originally filed |
|---|---|---|---|---|
| State Tax | 6.25% | | 43,492 | 396,110 |
| County Tax | 0.25% | | 1,740 | 15,844 |
| Local Tax | 1.00% | | 6,958 | 63,378 |
| District Tax | 0.50% | | 3,479 | 31,689 |
| Total | 8.00% | | 55,669 | 507,021 |

Orange County Register                Tax rate:     8.00%

Tax Period:    October through December 2013

Account #     24-086069

|  | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 11,039,242 | 7,235,113 | 3,804,129 |
| Taxable purchases | 30,898 | 30,898 | - |
|  | 11,070,140 | 7,266,011 | 3,804,129 |
| **Deductions:** |  |  |  |
| 4 Sales to other Retailes for Resale |  |  | - |
| 10(a)(12) Bad Debts | 54,976 |  | (54,976) |
| 10(f) Delivery Fees | 3,749,925 | - | (3,749,925) |
| Exempt sales (online subscriptions) | 6,606,814 |  | (6,606,814) |
| Taxable transactions | 658,425 | 7,266,011 | (6,607,586) |
| Total sales and use tax due | 52,674 | 581,281 | (528,607) |

| Tax previously paid |  |  |  |
|---|---|---|---|
| 1st prepayment | (192,252) | (192,252) |  |
| 2nd prepayment | (185,722) | (185,722) |  |
| paid w/return | (203,307) | 203,307 |  |
| Total prepayments | (581,281) |  |  |
| Refund due | (528,607) |  |  |

|  |  | Taxable Measu | Tax Liability | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|
| State Tax | 6.25% | 658,425 | 41,152 | 7,266,011 | 454,126 |
| County Tax | 0.25% | 658,425 | 1,646 | 7,266,011 | 18,165 |
| Local Tax | 1.00% | 658,425 | 6,584 | 7,266,011 | 72,660 |
| District Tax | 0.50% | 658,425 | 3,292 | 7,266,011 | 36,330 |
| Total | 8.00% |  | 52,674 |  | 581,281 |

Orange County Register
Tax Period:    January through March 2014
Account #    24-086069

Tax rate:    8.00%

|  | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 10,792,201 | 6,344,442 | 4,447,760 |
| Taxable purchases | 52,578 | 52,578 | - |
|  | 10,844,779 | 6,397,020 | 4,447,760 |
| Deductions: |  |  |  |
| 4 Sales to other Retailes for Resale |  |  | - |
| 10(a)(12) Bad Debts | - |  | - |
| 10(f) Delivery Fees | 4,388,334 | - | (4,388,334) |
| Exempt sales (online subscriptions) | 6,391,942 |  | (6,391,942) |
| Taxable transactions | 64,503 | 6,397,020 | (6,332,517) |
| Total sales and use tax due | 5,160 | 511,762 | (506,602) |
| Tax previously paid |  |  |  |
| 1st prepayment | (194,875) | (194,875) |  |
| 2nd prepayment | (168,958) | (168,958) |  |
| paid w/return | (148,883) | 147,929 |  |
| Total prepayments | (512,716) |  |  |
| Refund due | (507,556) |  |  |

|  |  | Taxable Measu | Tax Liability |  | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 64,503 | 4,031 |  | 6,397,020 | 399,814 |
| County Tax | 0.25% | 64,503 | 161 |  | 6,397,020 | 15,993 |
| Local Tax | 1.00% | 64,503 | 645 |  | 6,397,020 | 63,970 |
| District Tax | 0.50% | 64,503 | 323 |  | 6,397,020 | 31,985 |
| Total | 8.00% |  | 5,160 |  |  | 511,762 |

Orange County Register                                          Tax rate:        8.00%
Tax Period:    April through June 2014
Account #      24-086069

|  | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 10,822,807 | 7,018,602 | 3,804,205 |
| Mactive revenues | 16,057 | 16,057 |  |
| Taxable purchases | 23,797 | 23,797 | - |
|  | 10,862,661 | 7,058,456 | 3,804,205 |

Deductions:

| | | | |
|---|---|---|---|
| 4 Sales to other Retailes for Resale | | | - |
| 10(a)(12) Bad Debts | - | | - |
| 10(f) Delivery Fees | 3,751,148 | - | (3,751,148) |
| Exempt sales (online subscriptions) | 6,800,249 | | (6,800,249) |
| Taxable transactions | 311,265 | 7,058,456 | (6,747,191) |

| | | | |
|---|---|---|---|
| Total sales and use tax due | 24,901 | 564,676 | (539,776) |
| | | | 1 |

Tax previously paid

| | | | |
|---|---|---|---|
| 1st prepayment | (183,430) | (183,430) | |
| 2nd prepayment | (193,679) | (193,679) | |
| paid w/return | (187,567) | 187,567 | |
| Total prepayments | (564,676) | | |

Refund due                                    (539,775)

| | | Taxable Measu | Tax Liability | | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 311,265 | 19,454 | | 7,058,456 | 441,154 |
| County Tax | 0.25% | 311,265 | 778 | | 7,058,456 | 17,646 |
| Local Tax | 1.00% | 311,265 | 3,113 | | 7,058,456 | 70,584 |
| District Tax | 0.50% | 311,265 | 1,556 | | 7,058,456 | 35,292 |
| Total | 8.00% | | 24,901 | | | 564,676 |

Orange County Register

Tax rate:    8.00%

Tax Period:    July through September 2014

Account #    24-086069

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 10,043,825 | 5,661,286 | 4,382,539 |
| Mactive revenues | 4,132 | 4,132 | - |
| Taxable purchases | 11,518 | 11,518 | - |
| | 10,059,475 | 5,676,936 | 4,382,539 |
| Deductions: | | | |
| 4 Sales to other Retailes for Resale | | | - |
| 10(a)(12) Bad Debts | | | - |
| 10(f) Delivery Fees | 4,338,342 | - | (4,338,342) |
| Exempt sales (online subscriptions) | 5,705,483 | | (5,705,483) |
| Taxable transactions | 15,650 | 5,676,936 | (5,661,286) |
| Total sales and use tax due | 1,252 | 454,155 | (452,903) |
| | | | - |

Tax previously paid

| | | | |
|---|---|---|---|
| | 1st prepayment | (190,909) | (190,909) |
| | 2nd prepayment | (85,673) | (85,673) |
| | paid w/return | (177,573) | 177,573 |
| | Total prepayments | (454,155) | |
| Refund due | | (452,903) | |

| | | Taxable Measu | Tax Liability | | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 15,650 | 978 | | 5,676,936 | 354,809 |
| County Tax | 0.25% | 15,650 | 39 | | 5,676,936 | 14,192 |
| Local Tax | 1.00% | 15,650 | 157 | | 5,676,936 | 56,769 |
| District Tax | 0.50% | 15,650 | 78 | | 5,676,936 | 28,385 |
| Total | 8.00% | | 1,252 | | | 454,155 |

Orange County Register                                      Tax rate:        8.00%
Tax Period:    October through December 2014
Account #      24-086069

|  | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 9,632,003 | 6,550,258 | 3,081,746 |
| Mactive revenues | 13,991 | 13,991 |  |
| Taxable purchases | 10,567 | 10,567 | - |
|  | 9,656,562 | 6,574,816 | 3,081,746 |
| Deductions: |  |  |  |
| 4 Sales to other Retailes for Resale |  |  | - |
| 10(a)(12) Bad Debts | - |  | - |
| 10(f) Delivery Fees | 3,030,590 | - | (3,030,590) |
| Exempt sales (online subscriptions) | 6,153,532 |  | (6,153,532) |
| Taxable transactions | 472,439 | 6,574,816 | (6,102,377) |
| Total sales and use tax due | 37,795 | 525,985 | (488,191) |
|  |  |  | 1 |

Tax previously paid

|  | | As amended | As originally filed |
|---|---|---|---|
| | 1st prepayment | - | - |
| | 2nd prepayment | - |  |
| | paid w/return | (525,985) | 525,985 |
| | Total prepayments | (525,985) |  |
| Refund due | | (488,190) | |

|  |  | Taxable Measu | Tax Liability |  | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 472,439 | 29,527 |  | 6,574,816 | 410,926 |
| County Tax | 0.25% | 472,439 | 1,182 |  | 6,574,816 | 16,437 |
| Local Tax | 1.00% | 472,439 | 4,724 |  | 6,574,816 | 65,748 |
| District Tax | 0.50% | 472,439 | 2,362 |  | 6,574,816 | 32,874 |
| Total | 8.00% |  | 37,795 |  |  | 525,985 |

Orange County Register  
Tax Period:   January through March 2015  
Account #   24-086069

Tax rate:   8.00%

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 8,911,151 | 5,559,754 | 3,351,397 |
| Mactive revenues | 25,381 | 25,381 | |
| Taxable purchases | 4,923 | 4,923 | - |
| | 8,941,455 | 5,590,058 | 3,351,397 |
| | | | |
| Deductions: | | | |
| 4 Sales to other Retailes for Resale | | | - |
| 10(a)(12) Bad Debts | | | - |
| 10(f) Delivery Fees | 3,330,753 | - | (3,330,753) |
| Exempt sales (online subscriptions) | 5,580,398 | | (5,580,398) |
| Taxable transactions | 30,304 | 5,590,058 | (5,559,754) |
| | | | |
| Total sales and use tax due | 2,424 | 447,205 | (444,781) |
| | | | |
| Tax previously paid | | | |
| 1st prepayment | - | - | |
| 2nd prepayment | - | - | |
| paid w/return | (447,205) | 447,205 | |
| Total prepayments | (447,205) | | |
| | | | |
| Refund due | (444,781) | | |

| | | Taxable Measu | Tax Liability | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|
| State Tax | 6.25% | 30,304 | 1,894 | 5,590,058 | 349,379 |
| County Tax | 0.25% | 30,304 | 75 | 5,590,058 | 13,975 |
| Local Tax | 1.00% | 30,304 | 303 | 5,590,058 | 55,901 |
| District Tax | 0.50% | 30,304 | 152 | 5,590,058 | 27,950 |
| | | | | | |
| Total | 8.00% | | 2,424 | | 447,205 |

Orange County Register
Tax Period:    April through June 2015
Account #    24-086069

Tax rate:    8.00%

|  | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 9,307,861 | 6,694,232 | 2,613,630 |
| Mactive revenues | 64,302 | 64,302 |  |
| Taxable purchases | 24,043 | 24,043 | - |
|  | 9,396,206 | 6,782,576 | 2,613,630 |
| Deductions: |  |  |  |
| 4 Sales to other Retailes for Resale |  |  | - |
| 10(a)(12) Bad Debts |  |  | - |
| 10(f) Delivery Fees | 2,562,969 | - | (2,562,969) |
| Exempt sales (online subscriptions) | 5,892,914 |  | (5,892,914) |
| Taxable transactions | 940,323 | 6,782,576 | (5,842,253) |
| Total sales and use tax due | 75,226 | 542,606 | (467,381) |
|  |  |  | 1 |

| Tax previously paid |  |  |
|---|---|---|
| 1st prepayment | (170,265) | (170,265) |
| 2nd prepayment | (184,608) | (184,608) |
| paid w/return | (187,733) | 187,733 |
| Total prepayments | (542,606) |  |

| Refund due | (467,380) |
|---|---|

|  |  | Taxable Measu | Tax Liability |  | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 940,323 | 58,770 |  | 6,782,576 | 423,911 |
| County Tax | 0.25% | 940,323 | 2,351 |  | 6,782,576 | 16,956 |
| Local Tax | 1.00% | 940,323 | 9,403 |  | 6,782,576 | 67,826 |
| District Tax | 0.50% | 940,323 | 4,702 |  | 6,782,576 | 33,913 |
| Total | 8.00% |  | 75,226 |  |  | 542,606 |

Orange County Register

Tax rate:    8.00%

Tax Period:    July through September 2015

Account #    24-086069

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 9,348,950 | 6,156,494 | 3,192,456 |
| Mactive revenues | (134,729) | (134,729) | |
| Taxable purchases | 3,533 | 3,533 | - |
| | 9,217,754 | 6,025,298 | 3,192,456 |
| | | | |
| Deductions: | | | |
| 4 Sales to other Retailes for Resale | | | - |
| 10(a)(12) Bad Debts | - | | - |
| 10(f) Delivery Fees | 3,166,784 | - | (3,166,784) |
| Exempt sales (online subscriptions) | 5,832,469 | | (5,832,469) |
| Taxable transactions | 218,502 | 6,025,298 | (5,806,796) |
| | | | |
| Total sales and use tax due | 17,480 | 482,024 | (464,544) |
| | | | - |
| Tax previously paid | | | |
| 1st prepayment | (179,895) | (179,895) | |
| 2nd prepayment | (147,169) | (147,169) | |
| paid w/return | (154,960) | 154,960 | |
| Total prepayments | (482,024) | | |
| | | | |
| Refund due | (464,544) | | |

| | | Taxable Measu | Tax Liability | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|
| State Tax | 6.25% | 218,502 | 13,656 | 6,025,298 | 376,581 |
| County Tax | 0.25% | 218,502 | 546 | 6,025,298 | 15,064 |
| Local Tax | 1.00% | 218,502 | 2,185 | 6,025,298 | 60,253 |
| District Tax | 0.50% | 218,502 | 1,093 | 6,025,298 | 30,126 |
| | | | | | |
| Total | 8.00% | | 17,480 | | 482,024 |

G:\TAX\2016\2016 Tax Return Support\Sales Tax\2016 Amended Return Project\ 2015 Q3 WPs SANT&PE - 2016.07.22.xlsx    Stmt att'd to Refund Claim OCR

7/22/2016 2:58 PM

Orange County Register

Tax Period:  July through September 2015
Account #    24-086069

Tax rate:    8.00%

|  | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 9,348,950 | 6,156,494 | 3,192,456 |
| Mactive revenues | (134,729) | (134,729) | |
| Taxable purchases | 3,533 | 3,533 | - |
| | 9,217,754 | 6,025,298 | 3,192,456 |
| | | | |
| **Deductions:** | | | |
| 4 Sales to other Retailes for Resale | | | - |
| 10(a)(12) Bad Debts | | | - |
| 10(f) Delivery Fees | 3,166,784 | - | (3,166,784) |
| Exempt sales (online subscriptions) | 5,832,469 | | (5,832,469) |
| Taxable transactions | 218,502 | 6,025,298 | (5,806,796) |
| | | | |
| Total sales and use tax due | 17,480 | 482,024 | (464,544) |

Tax previously paid

|  |  |  |  |
|---|---|---|---|
| | 1st prepayment | (179,895) | (179,895) |
| | 2nd prepayment | (147,169) | (147,169) |
| | paid w/return | (154,960) | 154,960 |
| | Total prepayments | (482,024) | |

Refund due                              (464,544)

|  |  | Taxable Measu | Tax Liability | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|
| State Tax | 6.25% | 218,502 | 13,656 | 6,025,298 | 376,581 |
| County Tax | 0.25% | 218,502 | 546 | 6,025,298 | 15,064 |
| Local Tax | 1.00% | 218,502 | 2,185 | 6,025,298 | 60,253 |
| District Tax | 0.50% | 218,502 | 1,093 | 6,025,298 | 30,126 |
| | | | | | |
| Total | 8.00% | | 17,480 | | 482,024 |

BOE-101 (FRONT) REV. 10 (12-15)
**CLAIM FOR REFUND OR CREDIT**

*(Instructions on back)*

STATE OF CALIFORNIA
**BOARD OF EQUALIZATION**

974252

| | |
|---|---|
| NAME OF TAXPAYER(S) OR FEEPAYER(S)<br>Press Enterprise | BOE ACCOUNT NUMBER<br>102-501862 |
| SOCIAL SECURITY NUMBER(S)* OR FEDERAL EMPLOYER IDENTIFICATION NUMBER<br>95-1140750 | GENERAL PARTNER(S) (if applicable) |
| BUSINESS NAME (if applicable)<br>Freedom Communications, Inc. | BUSINESS LOCATION ADDRESS (if applicable)<br>c/o Lobel Weiland Golden Friedman LLP |
| MAILING ADDRESS<br>650 Town center Drive, Suite 950, Costa Mesa, CA 92626 | |

Please select the Tax or Fee Program that pertains to your claim for refund or credit.

☑ Sales and Use Tax
☐ Lumber Assessment
☐ Prepaid Mobile Telephony Services
   (MTS) Surcharge

For overpayments of use tax by a
purchaser of a vehicle or undocumented
vessel to the Department of Motor
Vehicles (DMV), please complete
BOE-101-DMV.

☐ Alcoholic Beverage Tax
☐ California Tire Fee
☐ Childhood Lead Fee
☐ Cigarette and Tobacco Products Tax
☐ Electronic Waste Recycling Fee
☐ Diesel Fuel Tax
☐ Emergency Telephone Surcharge
☐ Energy Resources Surcharge
☐ Fire Prevention Fee
☐ Hazardous Substances Tax

☐ Integrated Waste Management Fee
☐ Marine Invasive Species Fee
☐ Motor Vehicle & Jet Fuel Taxes
☐ Natural Gas Surcharge
☐ Occupational Lead Fee
☐ Oil Spill Response Fees
☐ Tax on Insurers
☐ Underground Storage Tank Fee
☐ Use Fuel Tax
☐ Water Rights Fee

**For the above tax/fee programs, mail
your completed form to:**
State Board of Equalization
Audit Determination and
Refund Section, MIC:39
PO BOX 942879
Sacramento, CA 94279-0039

**For the above tax/fee programs, mail your completed form to:**
State Board of Equalization
Appeals and Data Analysis Branch, MIC:33
PO BOX 942879
Sacramento, CA 94279-0033
**Or email to:** adab@boe.ca.gov

The undersigned hereby makes claim for refund or credit of $ 47,889_____, or such other amounts as may be established, in
tax, interest and penalty in connection with:

☑ Return(s) filed for the period November 2013_____ through December 2013_____
☐ Determination(s)/Billing(s) dated _____ and paid _____
☐ Other *(describe fully):*

Basis for refund *(required)*:

The returns as filed did not allocate the Taxpayer's mixed sale subscription revenues between subscriptions to tangible (taxable) and
intangible (non-taxable) product. The amended returns correctly allocate those mixed sales between the taxable and non-taxable
categories. This refund claim was prepared in accordance and pursuant with the ruling in the Appeals Court decision in DELL, INC., et
al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO; DIANE MOHAN et al., Real Parties
in Interest and with guidance being provided in publication 1590 (as finalized on July 6, 2016).

Supporting Documentation:  ☑ is attached   ☐ will be provided upon request

| | |
|---|---|
| SIGNATURE<br>*[signature]* | DATE SIGNED<br>July 19, 2016 |
| PRINT NAME<br>Brad Smith | CONTACT PERSON (if other than signatory)<br>Tina Bach |
| TITLE OR POSITION<br>CRO | TELEPHONE NUMBER<br>( 714  ) 796-2381 | TITLE OR POSITION OF CONTACT PERSON<br>Interim Sr Tax Director | TELEPHONE NUMBER<br>( 714  ) 796-2381 |
| EMAIL | EMAIL |

*See BOE-324-GEN, *Privacy Notice*, regarding disclosure of the applicable social security number.

Press Enterprise
Tax Period:       October through December 2013
Account#          102-501862

Tax rate:    8.00%

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 1,357,980 | 1,356,497 | 1,483 |
| Taxable purchases | - | - | - |
| | 1,357,980 | 1,356,497 | 1,483 |
| Deductions: | | | |
| 4 Sales to other Retailes for Resale | 132,393 | 132,393 | - |
| 10(a)(12) Bad Debts | 32,465 | 32,465 | - |
| 10(f) Delivery Fees | 593,292 | 593,292 | - |
| Exempt sales (online subscriptions) | 599,830 | - | 599,830 |
| Taxable transactions | - | 598,347 | (598,347) |
| Total sales and use tax due | - | 47,889 | (47,889) |
| | | | - |
| Tax previously paid | | | |
| 1st prepayment | - | - | |
| 2nd prepayment | - | - | |
| paid w/return | (47,889) | 47,889 | |
| Total prepayments | (47,889) | | |
| Refund due | (47,889) | | |
| | - | | |

| | | As Amended | | As Originally Filed | | Change in Taxable Measure | Change in Tax |
|---|---|---|---|---|---|---|---|
| | | Taxable Measure | Tax Liability | Taxable Measure | Tax Liability | | |
| 5tate Tax (1) | 6.25% | - | - | 598,347 | 44,876 | (598,347) | (44,876) |
| SB County | 0.50% | - | - | 32,865 | 164 | (32,865) | (164) |
| Riverside County (2 | 0.50% | - | - | 556,695 | 2,783 | (556,695) | (2,783) |
| City of SB | 0.75% | - | - | 8,787 | 66 | (8,787) | (66) |
| Total | 8.00% | | - | | 47,889 | | (47,889) |

Press Enterprise                      Tax rate:      8.00%
Tax Period:    January through March 2014
Account#    102-501862

|  | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 3,004,941 | 2,993,583 | 11,358 |
| Taxable purchases | 2,198 | 2,198 | - |
|  | 3,007,139 | 2,995,781 | 11,358 |
| Deductions: |  |  |  |
| 4 Sales to other Retailes for Resale | 241,353 | 241,353 | - |
| 10(a)(12) Bad Debts | 14,143 | 14,143 | - |
| 10(f) Delivery Fees | 1,373,096 | 1,373,096 | - |
| Exempt sales (online subscriptions) | 1,376,348 | - | 1,376,348 |
| Taxable transactions | 2,198 | 1,367,188 | (1,364,990) |
| Total sales and use tax due | 175 | 109,422 | - |

Tax previously paid
|  |  | As amended | As originally filed |
|---|---|---|---|
| | 1st prepayment | - | - |
| | 2nd prepayment | - | - |
| | paid w/return | (109,422) | 109,422 |
| | Total prepayments | (109,422) | |
| Refund due | | (109,247) | |
| | | (109,247) | |

| | | Taxable Measu | Tax Liability | | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 2,198 | 137 | | 1,367,188 | 85,449 |
| County Tax | 0.25% | 2,198 | 5 | | 1,367,188 | 3,418 |
| Local Tax | 1.00% | 2,198 | 22 | | 1,367,188 | 13,672 |
| District Tax | 0.50% | 2,198 | 11 | | 1,367,188 | 6,836 |
| City of SB | | | | | | 47 |
| Total | 8.00% | | 175 | | | 109,422 |

Press Enterprise                                                     Tax rate:         8.00%
Tax Period:        April through June 2014
Account#           102-501862

|                                        | As amended   | As originally filed | Change      |
|----------------------------------------|-------------:|--------------------:|------------:|
| Gross subscription revenue             | 3,009,593    | 2,998,235           | 11,358      |
| Taxable purchases                      | 5,488        | 5,488               | -           |
|                                        | 3,015,081    | 3,003,723           | 11,358      |
| Deductions:                            |              |                     |             |
| 4 Sales to other Retailes for Resale   | 253,180      | 253,180             | -           |
| 10(a)(12) Bad Debts                    | 37,366       | 37,366              | -           |
| 10(f) Delivery Fees                    | 1,264,374    | 1,264,374           | -           |
| Exempt sales (online subscriptions)    | 1,454,673    | -                   | 1,454,673   |
|                                        |              |                     |             |
| Taxable transactions                   | 5,488        | 1,448,803           | (1,443,315) |
|                                        |              |                     |             |
| Total sales and use tax due            | 439          | 115,951             | -           |
| Tax previously paid                    |              |                     |             |
|    1st prepayment                      | -            | -                   |             |
|    2nd prepayment                      | -            | -                   |             |
|    paid w/return                       | (115,951)    | 115,951             |             |
|    Total prepayments                   | (115,951)    |                     |             |
|                                        |              |                     |             |
| Refund due                             | (115,512)    |                     |             |

|                        |       | Taxable Measu | Tax Liability | Taxable Measu | Tax Liability |
|------------------------|-------|--------------:|--------------:|--------------:|--------------:|
| State Tax              | 6.25% | 5,488         | 343           | 1,448,803     | 90,550        |
| County Tax             | 0.25% | 5,488         | 14            | 1,448,803     | 3,622         |
| Local Tax              | 1.00% | 5,488         | 55            | 1,448,803     | 14,488        |
| District Tax           | 0.50% | 5,488         | 27            | 1,448,803     | 7,244         |
| City of SB incremental |       |               |               |               | 47            |
| Total                  | 8.00% |               | 439           |               | 115,951       |

Press Enterprise

Tax Period: July through September 2014

Account# 102-501862

Tax rate: 8.00%

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 3,205,701 | 3,194,343 | 11,358 |
| Taxable purchases | 2,000 | 2,000 | - |
| | 3,207,701 | 3,196,343 | 11,358 |
| Deductions: | | | |
| 4 Sales to other Retailes for Resale | 257,539 | 257,539 | - |
| 10(a)(12) Bad Debts | 15,092 | 15,092 | - |
| 10(f) Delivery Fees | 1,198,074 | 1,198,074 | - |
| Exempt sales (online subscriptions) | 1,734,996 | - | 1,734,996 |
| Taxable transactions | 2,000 | 1,725,638 | (1,723,638) |
| Total sales and use tax due | 160 | 138,107 | - |

Tax previously paid

| | | As amended | As originally filed |
|---|---|---|---|
| | 1st prepayment | - | - |
| | 2nd prepayment | - | - |
| | paid w/return | (138,107) | 138,107 |
| | Total prepayments | (138,107) | |
| Refund due | | (137,947) | |

| | | Taxable Measu | Tax Liability | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|
| State Tax | 6.25% | 2,000 | 125 | 1,725,638 | 107,852 |
| County Tax | 0.25% | 2,000 | 5 | 1,725,638 | 4,314 |
| Local Tax | 1.00% | 2,000 | 20 | 1,725,638 | 17,256 |
| District Tax | 0.50% | 2,000 | 10 | 1,725,638 | 8,628 |
| City of SB incremental | | | | | 57 |
| Total | 8.00% | | 160 | | 138,107 |

Press Enterprise                                                  Tax rate:       8.00%

Tax Period:     October through December 2014

Account#     102-501862

|  | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 2,935,814 | 1,732,726 | 1,203,088 |
| Taxable purchases | 550 | 550 | - |
|  | 2,936,364 | 1,733,276 | 1,203,088 |
| Deductions: |  |  |  |
| 4 Sales to other Retailes for Resale | - | - | - |
| 10(a)(12) Bad Debts | - | - | - |
| 10(f) Delivery Fees | 1,191,730 | 1,191,730 | - |
| Exempt sales (online subscriptions) | 1,672,625 | - | 1,672,625 |
| Taxable transactions | 72,009 | 541,546 | (469,537) |
| Total sales and use tax due | 5,761 | 138,812 | - |
| Tax previously paid |  |  |  |
|      1st prepayment | - | - |  |
|      2nd prepayment | - | - |  |
|      paid w/return | (138,812) | 138,812 |  |
|      Total prepayments | (138,812) |  |  |
| Refund due | (133,051) |  |  |

|  |  | Taxable Measu | Tax Liability | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|
| State Tax | 6.25% | 72,009 | 4,501 | 541,546 | 33,847 |
| County Tax | 0.25% | 72,009 | 180 | 541,546 | 1,354 |
| Local Tax | 1.00% | 72,009 | 720 | 541,546 | 5,415 |
| District Tax | 0.50% | 72,009 | 360 | 541,546 | 2,708 |
| City of SB incremental |  |  |  |  | 95,488 |
| Total | 8.00% |  | 5,761 |  | 138,812 |

G:\TAX\2016\2016 Tax Return Support\Sales Tax\2016 Amended Return Project\ 2014 Q4 WPs SANT&PE - 2016.07.21.xlsx      Stmt att'd to Refund Claim PE

7/22/2016 2:52 PM

Press Enterprise  
Tax Period:  January through March 2015  
Account#  102-501862

Tax rate:  8.00%

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 3,091,097 | 1,721,187 | 1,369,910 |
| Taxable purchases | 823 | 823 | - |
| | 3,091,920 | 1,722,010 | 1,369,910 |
| **Deductions:** | | | |
| 4 Sales to other Retailes for Resale | - | - | - |
| 10(a)(12) Bad Debts | - | - | - |
| 10(f) Delivery Fees | 1,358,552 | - | 1,358,552 |
| Exempt sales (online subscriptions) | 1,732,545 | - | 1,732,545 |
| **Taxable transactions** | 823 | 1,722,010 | (1,721,187) |
| **Total sales and use tax due** | 66 | 137,915 | - |
| **Tax previously paid** | | | |
| 1st prepayment | - | - | |
| 2nd prepayment | - | - | |
| paid w/return | (137,915) | 137,915 | |
| Total prepayments | (137,915) | | |
| **Refund due** | (137,849) | | |

| | | Taxable Measu | Tax Liability | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|
| State Tax | 6.25% | 823 | 52 | 1,722,010 | 107,626 |
| County Tax | 0.25% | 823 | 2 | 1,722,010 | 4,305 |
| Local Tax | 1.00% | 823 | 8 | 1,722,010 | 17,220 |
| District Tax | 0.50% | 823 | 4 | 1,722,010 | 8,610 |
| City of SB incremental | | | | | 154 |
| Total | 8.00% | | 66 | | 137,915 |

Press Enterprise

Tax rate: 8.00%

Tax Period: April through June 2015

Account# 102-501862

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 3,163,922 | 2,020,303 | 1,143,619 |
| Taxable purchases | 785 | 785 | - |
| | 3,164,707 | 2,021,088 | 1,143,619 |
| Deductions: | | | |
| 4 Sales to other Retailes for Resale | - | - | - |
| 10(a)(12) Bad Debts | - | - | - |
| 10(f) Delivery Fees | 1,132,261 | - | 1,132,261 |
| Exempt sales (online subscriptions) | 1,852,310 | - | 1,852,310 |
| Taxable transactions | 180,136 | 2,021,088 | (1,840,952) |
| Total sales and use tax due | 14,411 | 161,851 | - |
| Tax previously paid | | | |
| 1st prepayment | - | - | |
| 2nd prepayment | - | - | |
| paid w/return | (161,851) | 161,851 | |
| Total prepayments | (161,851) | | |
| Refund due | (147,440) | | |

| | | Taxable Measu | Tax Liability | | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 180,136 | 11,259 | | 2,021,088 | 126,318 |
| County Tax | 0.25% | 180,136 | 450 | | 2,021,088 | 5,053 |
| Local Tax | 1.00% | 180,136 | 1,801 | | 2,021,088 | 20,211 |
| District Tax | 0.50% | 180,136 | 901 | | 2,021,088 | 10,105 |
| City of SB incremental | | | | | | 164 |
| Total | 8.00% | | 14,411 | | | 161,851 |

Press Enterprise  
Tax Period: July through September 2015  
Account# 102-501862

Tax rate: 8.00%

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 3,335,581 | 1,947,656 | 1,387,925 |
| Taxable purchases | 1,161 | 1,161 | - |
| | 3,336,742 | 1,948,817 | 1,387,925 |
| Deductions: | | | |
| 4 Sales to other Retailes for Resale | - | - | - |
| 10(a)(12) Bad Debts | - | - | - |
| 10(f) Delivery Fees | 1,376,567 | - | 1,376,567 |
| Exempt sales (online subscriptions) | 1,949,126 | - | 1,949,126 |
| Taxable transactions | 11,049 | 1,948,817 | (1,937,768) |
| Total sales and use tax due | 884 | 156,085 | - |
| Tax previously paid | | | |
| 1st prepayment | - | - | |
| 2nd prepayment | - | - | |
| paid w/return | (156,085) | 156,085 | |
| Total prepayments | (156,085) | | |
| Refund due | (155,201) | | |

| | | Taxable Measu | Tax Liability | | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 11,049 | 691 | | 1,948,817 | 121,801 |
| County Tax | 0.25% | 11,049 | 28 | | 1,948,817 | 4,872 |
| Local Tax | 1.00% | 11,049 | 110 | | 1,948,817 | 19,488 |
| District Tax | 0.50% | 11,049 | 55 | | 1,948,817 | 9,744 |
| City of SB incremental | | | | | | 180 |
| Total | 8.00% | | 884 | | | 156,085 |

Press Enterprise

Tax rate: 8.00%

Tax Period: October through December 2015
Account# 102-501862

| | As amended | As originally filed | Change |
|---|---|---|---|
| Gross subscription revenue | 3,073,364 | 1,840,661 | 1,232,703 |
| Taxable purchases | 1,225 | 1,225 | - |
| | 3,074,589 | 1,841,886 | 1,232,703 |
| Deductions: | | | |
| 4 Sales to other Retailes for Resale | - | - | - |
| 10(a)(12) Bad Debts | - | - | - |
| 10(f) Delivery Fees | 1,221,345 | - | 1,221,345 |
| Exempt sales (online subscriptions) | 1,852,019 | - | 1,852,019 |
| Taxable transactions | 1,225 | 1,841,886 | (1,840,661) |
| Total sales and use tax due | 98 | 147,496 | - |
| Tax previously paid | | | |
| 1st prepayment | - | - | |
| 2nd prepayment | - | - | |
| paid w/return | (147,496) | 147,496 | |
| Total prepayments | (147,496) | | |
| Refund due | (147,398) | | |

| | | Taxable Measu | Tax Liability | | Taxable Measu | Tax Liability |
|---|---|---|---|---|---|---|
| State Tax | 6.25% | 1,225 | 77 | | 1,841,886 | 115,118 |
| County Tax | 0.25% | 1,225 | 3 | | 1,841,886 | 4,605 |
| Local Tax | 1.00% | 1,225 | 12 | | 1,841,886 | 18,419 |
| District Tax | 0.50% | 1,225 | 6 | | 1,841,886 | 9,209 |
| City of SB incremental | | | | | | 145 |
| Total | 8.00% | | 98 | | | 147,496 |

# EXHIBIT 4

**ASSIGNMENT ACTIVITY HISTORY**                                   CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| | Kassem, Hatem | Held a meeting with Ms. Tina Bach, representative discussed in detail the audit findings up to date provided on 09/08/0/2017. Ms. Bach agreed with all adjustments related to re-audit findings. Taxpayer requested two additional two weeks review the classification of recorded revenue and included in the computation of taxable sales | |
| 08/25/2016 | Kassem, Hatem | Received additional records from Ms. Tina Bach, Representative for our review.<br><br>Ms. Bach, indicated that she will be in vacation for few weeks in September and expected to be back on late September / early October. | |
| 08/29/2016 | Bernetich, D'Nese | Assignment assigned on 8/29/2016 was Assigned from Irvine District to Irvine District crew 7 auditor Kassem | |
| 08/29/2016 | Bernetich, D'Nese | Assignment assigned on 8/29/2016 was Assigned from Irvine District crew 7 auditor Kassem to Irvine District crew 4 auditor Barrera | |
| 08/30/2016 | Kassem, Hatem | Taxpayer filed a claim for refund covering the period of Jan. 1, 2016 to 03/31/2016. for tax amount of $ 135,021. | |
| 08/30/2016 | Kassem, Hatem | Met with Mr. Damian Barrera, Senior Tax Auditor, who indicated that Ms. Tina Bach, taxpayer's representative is out of the County in vacation for five weeks through end of September. | |
| 09/22/2016 | Kassem, Hatem | Reviewed the additional records presented by the taxpayer. Adjustments are warranted in regarding to recorded and reported taxable measure and unreported misc. taxable income. However, the documentation presented to support the debit entries to the sales tax payable GL accounts found to be incomplete and did not provide adequate audit trial to support such large debit entries posted. Additionally, the requested adjustment regarding the unreported taxable other income appeared to be not included in the audit findings (taxpayer used transactions reference numbers not in the audit working papers) | |
| 09/28/2016 | Kassem, Hatem | Met with audit team member, Damian Barrera, Associate Tax Auditor, discussed in detail the taxpayer's contentions and the warranted adjustment based on the additional records provided.<br><br>Mr. Barrera and I agreed to contact Ms. Tina Bach, Representative to schedule a meeting to discuss the other requested adjustments which appeared not to have adequate adjustments.<br><br>Additionally, we need to verify the taxpayer final position regarding the unreported ex- tax cost of consumed supplies included in the original audit . | |
| 10/13/2016 | Kassem, Hatem | During a meeting with Ms. Tina Bach, outside representative, required and updated Boe-82 and Boe-392 since the one on file will expire on 12/31/2016 Taxpayer claimed that the download provided for the audit purpose earlier is complete download and not AP only and should be used for validation purpose. I contact Mr. V. Harper, CAS and required to review the original data download to verify the taxpayer's claim and if correct to provide summary of entire account of interest. | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF CALIFORNIA

**ASSIGNMENT ACTIVITY HISTORY**    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| SR  EA  024-086069 | | **Freedom Communications, Inc.** | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 10/13/2016 | Kassem, Hatem | Meeting Status with Mr. Tina Bach, outside representative at Irvine District office. Additionally, Ms. Rebecca Clark, with Squar Milner , new representative attended the meeting. Requested form Boe-82 and Boe-392 for Ms. Rebecca Clark to include her in all further communications. In the meeting, I discussed the warranted adjustment to the original audit and requested other records to support other requested adjustment. I will prepare a detail letter to the taxpayer next week to document what discussed in the meeting. Ms. Bach, requested to get more information regarding Settlement programs Ms. Bach, mentioned that she filed serval other claims for refund, covering the entire audit period through 1Q16. It should be noted that the only claim for refund received by our office is for 3Q16. As initial records, I requested a detail trail balance covering the period of 10/01/2015 and 03/31/2016 and complete copy of the asset sale agreement and the close out date of 03/31/2016 | |
| 10/17/2016 | Kassem, Hatem | I forwarded to Ms. Bach, form Boe-393, Settlement Review Request, per her request. Received updated Boe-392, which is valid through 12/31/2017 and revised Boe-82 for Ms. Bach's new email address Tina Bach <mmounties@gmail.com> | |
| 10/18/2016 | Kassem, Hatem | Sent status letter to the taxpayer documenting, what discussed in the last meeting on 10/13/2016. Additionally, the letter listed the records required to verify remaining adjustments to the original audit findings. | |
| 10/25/2016 | Kassem, Hatem | Attempted to reconcile GL download provided to examine consumable supplies and fixed assets. Summary download provided by Ms. V. Harper, CAS found to be higher than total amount posted to General Ledger Accounts per trial balance. We can't proceed with the summary download, as it did not reconcile with GL balances. I sent an email to Mr. Harper to discuss the download summary. | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF California  Page 63
**ASSIGNMENT ACTIVITY HISTORY**                     CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 10/26/2016 | Kassem, Hatem | Discussed the download summaries with Veronica Harper, CAS and sent the below follow up email to Ms. Tina Bach, taxpayer's representative<br><br>From: Kassem, Hatem<br>Sent: Wednesday, October 26, 2016 12:20 PM<br>To: 'Tina Bach'<br>Cc: Barrera, Damian A<br>Subject: Press Enterprise Petitioned Liability Period of November 21, 2013 through September 30, 2015<br><br>Ref. Schedule <12F>, ex-tax cost of consumable supplies per prior error ratio<br><br>Tina:<br><br>Pursuant to our letter emailed on October 18, 2016., Ms. Veronica Harper, Computer Audit Specialist and I processed the download provided and prepared the attached summary files for your review:<br>1.    Copy of the Press Initial summary of download provided, please review<br>2.    Press Enterprise  DL validation, please review<br>3.    Press Blanks, please review<br><br>We attempted to reconcile and validate the provided download totals for few accounts of interest, however the download summaries found to be higher than net activities showed per trial balance. Which indicates that the population provided for testing purpose is overstated. (please see DL validation file attached for details). Please reconcile the difference or provide a revised download.<br><br>Secondly, while reviewing the download provided, we noted large number of transactions without vendor's name. (see Press Blanks file attached), Please review these type of transactions and ensure that you will be able to trace it to source document (such as vendor invoice.)<br><br>It should be noted that the test will examine only the transactions posted to the accounts of interest.<br><br>Should you have any questions, please feel free to contact Mr. Barrera or I.<br><br>Thank you | |
| 11/03/2016 | Kassem, Hatem | Completed my review of the additional records submitted by the taxpayer and adjusted the re-audit working schedules <12A>, <12D>, <12E>.<br>I requested a conference call with Mr. Tina Bach next week to provide an update and discuss her response explaining the discrepancies noted in the download provided to examine consumable supplies. | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT... California  Page 64

**ASSIGNMENT ACTIVITY HISTORY**    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | ACCOUNT NAME | | |
|---|---|---|---|
| SR EA 024-086069 | Freedom Communications, Inc. | | |
| CASE ID NUMBER | AUDIT PERIOD | AUDITOR | |
| 985050 | 10/01/2012 - 09/30/2015 | Kassem, Hatem | |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 11/07/2016 | Kassem, Hatem | Taxpayer provided files to support the filed claim for refund for our review | |
| 11/08/2016 | Kassem, Hatem | Taxpayer filed several claims for refund and amended returns covering the period of April 1, 2013 through September 30, 2015, total tax refund requested $ 4,776,537. The claims for refunds indicated that the exempt transportation, online subscriptions and bad debts were not claimed correctly in the original return filed. I populated the requested refund and provided the Ms. T. Bach, representative a summary to review and determine if the total requested refunds total of $4,776,537 | |
| 11/09/2016 | Kassem, Hatem | Review of the files provided by the taxpayer disclosed that the export files has N extension which is (Cygwin man file), this file is not supported by the BOE. Thus, I sent the below email<br><br>From: Kassem, Hatem<br>Sent: Wednesday, November 09, 2016 3:01 PM<br>To: 'Tina Bach'<br>Cc: Bernetich, D' Nese; Guillen, Victor; Barrera, Damian A<br>Subject: N Files<br>Ms. Bach:<br>Thank you for your email, which included export files with N. extension.  Please be advised that this type of files, we can't open or process. Due to the large size of  data involved in the cases, a Computer Audit Specialist will be involved, who will discuss with you the files format, we will need for our verification . I'm currently reviewing the other Excel files you provided and I will contact you upon my review is completed.<br>Should you have any questions, please let me know. | |
| 11/09/2016 | Kassem, Hatem | In response to an email from Ms. Bach, who requested not to engage the computer audit specialist, I sent the following email:<br>From: Kassem, Hatem<br>Sent: Wednesday, November 09, 2016 3:41 PM<br>To: 'Tina Bach'<br>Cc: Bernetich, D' Nese; Guillen, Victor; Barrera, Damian A<br>Subject: RE: N Files<br>Ms. Bach:<br>You provided more than150 download compressed files, which is not feasible for us to process, thus, utilizing a Computer Audit Specialist is mandatory. Additionally, the Computer Audit Specialist will be assisting is choosing the representative test / sample approach to verify the filed claims for refunds<br><br>Thank you | |
| 11/30/2016 | Kassem, Hatem | Prepared detailed email to Melinda Garcia, Business Taxes Compliance Specialist at Special Operations Branch - Bankruptcy Team, to provide her with an update regarding the status of the petitioned liability and the claims for refund filed by the taxpayer. | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF CALIFORNIA

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR | |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem | |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 12/01/2016 | Kassem, Hatem | Tried to export the N files provided by the taxpayer to support claimed transportation charges, however could not export the files to any database software.<br><br>I notified Ms. Tina Bach, Representative and sent the file to Ms. Veronica Harper, CAS to check if she can process these type of files.<br><br>Additionally, I noticed that all the file provided by the taxpayer are on summary basis and did not include any reference to the source documents (customer's Billing)<br>Furthermore, the worksheet provided by the taxpayer showed tax collected deduction for sales tax collected which sustainably is higher than sales tax per the amended sales and use tax returns filed by the taxpayer. | |
| 12/07/2016 | Kassem, Hatem | Completed my review of the additional records submitted by the taxpayer and adjusted the re-audit working schedules <12A>, <12D>, <12E>.<br>I requested a conference call with Mr. Tina Bach next week to provide an update and discuss her response explaining the discrepancies noted in the download provided to examine consumable supplies. | |
| 12/08/2016 | Kassem, Hatem | Reviewed trail balance provided by the taxpayer for the extended audit period of 10/01/2015 through 03/31/2016, which found to be on summary basis. I requested from Mr. Tina Bach and detail trail balance with beginning balance, total debits, ending balance. Since materiality of the activities posted to each GL account can't be determined based on the summary trial balances provided by the taxpayer. | |
| 12/12/2016 | Kassem, Hatem | Completed reconciling sale tax payable GL account of the extended audit period of 10/01/2015 through 03/31/2016, material difference noted. I requested from Ms. Tina Bach, complete audit trial related to large two adjustments posted to the sales tax payable GL account | |
| 12/14/2016 | Kassem, Hatem | I scheduled a status audit meeting with Mr. Damian Barrera, Senior Tax Audit, Audit team member to go over the preliminary results disclosed after I reviewed the supporting worksheet provide by the taxpayer for 4Q12 | |
| 12/16/2016 | Kassem, Hatem | Status conference call scheduled with Ms. Tina Bach on Wednesday 12/21/2016 at 10am | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT    Page 66

**ASSIGNMENT ACTIVITY HISTORY**    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 12/21/2016 | Kassem, Hatem | Held a conference call with Ms. Tina Bach, (POA), Mr. Damian Barrera, ATA was present as well. Tina, indicated that she was out sick during last two weeks, thus, she did not respond to the auditors emails.<br><br>I discussed and explained the pending test areas regarding the petitioned liability October 1, 2012 through September 30, 2016 as follow:<br>1- Schedule <12A>, line 12, $1.00 rounding. adjustment accepted<br>2- Schedule <12A-1>, transaction in line 70 amount of $30,000, adjustment accepted.<br>3- Transactions in lines 23 and 490 amounts of $39 and 352.75, respectively, adjustments are pending for    taxpayer to provide the supporting documents requested in our letter dated October 17, 2016<br>4- Schedule <12D-1>, Lines 1 through 4, amounts of $15,000, $25,000, $10,000 and $15,000, respectively,    adjustments accepted, Remaining transactions, auditor still unable to cross reference the questioned    transitions lines with the taxpayer requested adjustments<br>5-Schedule <12E-1>, all questioned transactions in this schedule adjusted to zero.<br>6- Auditor still unable to validate the download provided to examine consumable supplies and fixed assets due to large posting dated end of each year under balance forward entities.<br><br>Furthermore, auditors reminded Ms. Bach, that the fixed assets sale agreement and price allocation still not provided, which was requested in our letter dated October 17, 2016 | |
| 12/28/2016 | Kassem, Hatem | Based on additional information provided by Ms. Bach and explained in our call on 12/21/2016, auditor was able to validate download provided for expense accounts through 12/31/2015. However, audit trail provided regarding validation of fixed accounts appeared to be incomplete. Taxpayer has closing entries posted after the month end. Auditor need to discuss these entries with Ms. Bach to understand the source of these entries and purpose of the posting with such large dollar amounts.<br><br>It appears that may represent assets transferred from other related legal entities, as the posting closing entries showed many Intercompany. | |

DECLARATION OF WILLIAM P. KIMSEY   CPA   IN SUPPORT OF THE CALIFORNIA DEPARTMENT

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 12/29/2016 | Kassem, Hatem | I reviewed the worksheet and additional documentation provided by Ms. Tina Bach (POA) related to support the questioned transactions in schedule 12D-1. The schedule included many transactions claimed to be taxable sales of company store, thus, I sent Ms. Bach an email requesting additional information regarding company store as follow:<br><br>From: Kassem, Hatem<br>Sent: Thursday, December 29, 2016 11:08 AM<br>To: 'Tina Bach'<br>Cc: Barrera, Damian A<br>Subject: RE: Schedule 12D-1<br><br>Ms. Bach:<br>I'm currently reviewing the documentation you submitted to support the transactions questioned in schedule <12D-1>, in your response you indicated that some revenue posted from company store were tax accrued in the sales tax payable account. Please explain, what is the company store?, types of items sold ?, GL accounts use to record revenue and COG ?, posting codes used to record the tax into the sales tax payable GL account.<br>Should you have any questions, please let me know. | |
| 01/13/2017 | Kassem, Hatem | Received strata breakdown and sample transactions from CAS as follow:<br>1- Transactions with known vendors' names<br>2- Transactions without vendors' names<br>3-Transactions with description as balance brought forward. | |
| 01/17/2017 | Kassem, Hatem | Per Mr. Tina Bach request, I provided her with the proposed stratum breakdown proposed by CAS for review and approval.<br><br>From: Kassem, Hatem<br>Sent: Tuesday, January 17, 2017 10:04 AM<br>To: 'Tina Bach'<br>Cc: Barrera, Damian A<br>Subject: O. C. Register Petitioned Period, schedule <12I><br>Tina:<br>Attached are the following files:<br><br>1.Actual listing of all transactions included in the download with description "balance brought forward", these transactions will not be included in the statistical sample test, we will review them separately.<br>2.Proposed stratum breakdown for transactions with known vendors names by Computer Audit Specialist. Statistical test will be performed.<br>3.Proposed stratum breakdown for transactions without known vendors names by Computer Audit Specialist. Statistical test will be performed.<br><br>The above population will cover transactions thorough 12/31/2015. If you agree with the proposed stratum breakdown for items 2 and 3 above, I will provide you with the selected sample transactions. | |

**DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF...**

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| SR  EA  024-086069 | | **Freedom Communications, Inc.** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 01/19/2017 | Kassem, Hatem | Received an email from Ms. Bach, who requested a population file that used to pull the sample from. I notified Ms. Bach, that the detail file is with CAS who is currently out of the office, I notified the taxpayer that I will full fill her request upon the CAS return from vacation. | |
| 01/23/2017 | Kassem, Hatem | Completed my review of the records presented by the taxpayer in regards to taxable measure reconciliation. Finalized schedule <R1-12A> | |
| 02/02/2017 | Kassem, Hatem | Completed my review of the records presented by the taxpayer in regards to disallowed debit entries to sales tax payable GL account. Finalized schedule <R1-12AC> | |
| 02/08/2017 | Kassem, Hatem | Conference call with Ms. T. Bach and Ms. V. Harper, CAS, who explained in detail the designed statistical sample test . | |
| 02/09/2017 | Kassem, Hatem | Veronica Harper, CAS provided the taxpayer with Proof file and the Sampling Populations, per her request | |
| 02/13/2017 | Kassem, Hatem | Provided Ms. Tina Bach, Representative with the sample transactions selected as pilot test to examine consumable supplies and fixed assets in the statistical sample additionally, I provided Ms. Bach with Boe-472 related to two population being tested (transactions with known vendors and without known vendors) | 03/30/2017 |
| 03/08/2017 | Kassem, Hatem | Completed my review of the records presented by the taxpayer in regards to questioned misc. income posted to GL accounts 73000, 73030 and 73060. Finalized schedule <R1-12D>, <R1-12E>, <R1-12F>, | |
| 03/31/2017 | Kassem, Hatem | Taxpayer provided AP records for known vendors, for the auditor's review. | |
| 03/31/2017 | Kassem, Hatem | Taxpayer provided AP records to examine consumable supplies and fixed assets originally billed in sch. 12I | |
| 04/05/2017 | Kassem, Hatem | Provided Ms. Tina Bach, representative a complete copy of the re-audit working papers, which included recommended re-audit adjustment up to date. I answered all Ms. Bach's questions. Ms. Bach was pleased of the professional and detailed re-audit working papers presented by the auditor. | |
| 04/07/2017 | Kassem, Hatem | Responded for an email from Tina Bach, representative, who requested to resend her the list of sample transactions for consumable supplies and fixed assets test that was sent to her on Feb. 13, 2017. The list of sample transactions resent to the taxpayer. | |
| 04/21/2017 | Kassem, Hatem | Met with Tina Bach, and discussed the revenue analysis we preformed based on the trial balances. In the meeting, we explained that the  claims for refund appeared to be overstated and we inquired about several types of recorded revenue. Additionally, we requested complete audit trial regarding delivery charges and delivery cost. Furthermore, we discussed that our revenue analysis disclosed several types of revenue that will require further verification and testing | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT...    Page 69

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 05/02/2017 | Kassem, Hatem | Completed my review of the records provided for the statistical sample test of consumable supplies and fixed assets.<br><br>My review disclsoe missing transactions and the need to expande my review of other few vendors.<br><br>Therefore I sent Ms. T. Bach, representative the below email.<br><br>From: Kassem, Hatem<br>Sent: Tuesday, May 02, 2017 2:49 PM<br>To: 'Tina Bach'<br>Cc: Barrera, Damian A<br>Subject: O. C. Register Petitioned Period Sch. 12I Re_audit<br><br>Tina:<br><br>I reviewed the records you provided for the statistical sample test of consumable supplies and fixed assets. I noted two missing invoices (in yellow) and I need to expand my review for few specific vendors.<br><br>The attached list includes 65 transactions (2 were missing and 63 additionally required), please provide the source documents for my review in the same order referenced.<br><br>Should you have any questions, please let me know. | |
| 05/30/2017 | Barrera, Damian | Auditors Hatem Kassem and Damian Barrera discussed the status of the audit with my Tina Bach over the telephone. Auditors received Orange County Register's support of A/P test. As discussed with Tina, she has been unable to work on all other items discussed in the prior meeting. Ms. Tina Bach has been working on the support for the Register's A/P test. Tina has asked for a month's extensions on providing the other items discussed in the prior meeting is she will be working on the financials for OCR. Tina has requested a meeting to discuss items in mid-June. | |
| 06/12/2017 | Barrera, Damian | As discussed with Ms. Tina Bach, Tax Director, in our last telephone conversation. Ms. Bach requested a month extension to gather requested documentation and pending items. Auditor has sent Ms. Bach an email to schedule a telephone conversation as the month follow-up is due this week. | |

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 06/16/2017 | Kassem, Hatem | Ms. Bach declined our request to schedule a follow up call to determine the status of the pending test areas.<br>Thus, the below email to her to provide her with an up to date progress report and advise her about the requested pending records needed to complete our examination.<br>The below email sent out<br><br>From: Barrera, Damian A<br>Sent: Friday, June 16, 2017 1:45 PM<br>To: Tina Bach (mmounties@gmail.com)<br>Cc: Kassem, Hatem<br>Subject: Orange County Register Status<br><br>Hi Tina,<br>Petitioned liability covered the period of 10/01/2012 through 09/30/2015<br>On April 5, 2017, we provided you an updated re-audit working papers, which included the re-audit schedules , , , and . The only pending adjustment in this section is related to the estimated ex-tax cost of consumable supplies subject to tax . After we reviewed of the records provided to conduct statistical sample test, we noted missing records and the need to expand our review for few vendors.<br>On May 2, 2017, we sent a list of the additional accounts payable invoices required. Upon providing the requested records, we will conclude this area and provide you with the related re-audit schedules.<br>Extended audit period 10/01/2015 - 03/31/2016<br>The pending items are as follow:<br>1.       Taxable sale of fixed assets sales at close out date, please provide the requested price allocation to enable us to complete our analysis and provide you with the result.<br>2.       Paid bills test, an error factor will be developed and projected after an error the will be disclosed in.<br>Claim for refund period 10/01/20102 through 03/31/2016<br>On April 21, 2017, we met and discussed the revenue analysis we preformed based on the trial balances. In the meeting, we explained that your claims for refund appeared to be overstated and we inquired about several types of recorded revenue. Additionally, we requested complete audit trial regarding delivery charges and delivery cost. Furthermore, we discussed that our revenue analysis disclosed several types of revenue that will require further verification and testing. For details, please refer to our email dated April 21, 2017.<br><br>Please note that that time allowed for us to complete our verification of the claims for refund is limited and is running out. Thus, we appreciate, if you let us know the status of your review of the presented revenue analysis to start verifying the requested refund.<br><br>Should you have any questions, please let us know. | |
| 07/17/2017 | Kassem, Hatem | Provided Mr. Victor Guillen, STAII a copy of revenue analysis which disclosed material taxable sales understatements | 07/17/2017 |

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| SR EA 024-086069 | | Freedom Communications, Inc. | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 07/26/2017 | Kassem, Hatem | Met with Mr. Victor Guillen, CPA discussed the revenue analysis, test approach and potential sales understatement  noted.<br><br>Mr. Guillen agreed with the audit recommendation to proceed as proposed based on the available records to date. | |
| 07/27/2017 | Kassem, Hatem | Statistical sample test of known vendors population, disclosed two errors in Strat 2, sent a request to CAS to pull them on actual basis to test them | |
| 08/03/2017 | Kassem, Hatem | Received from CAS, list of vendors will be tested on actual basis that noted in strata 2 | |
| 08/09/2017 | Kassem, Hatem | Conference call with Melinda Garcia  in BK Section, updated her in regards to the potential tax liability noted. | |
| 08/21/2017 | Kassem, Hatem | Received an email from Mr. Victor Guillen, STAII, who recommended completing the case based on the proposed audit approach based on the available records to date | |
| 08/23/2017 | Kassem, Hatem | Received a list of errors from testing of blank vendors from team auditor, Mr. D. Barrera | |
| 08/31/2017 | Kassem, Hatem | A conference call scheduled with Ms. Tina Bach, on 09/08/2017 to discuss the recommended audit findings and to answer all questions related to the audit. | |

DECLARATION OF WILLIAM P. KIMSEY   CPA   IN SUPPORT OF THE CALIFORNIA DEPARTMENT

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | |
| CASE ID NUMBER | AUDIT PERIOD | | AUDITOR |
| 985050 | 10/01/2012 - 09/30/2015 | | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 09/08/2017 | Kassem, Hatem | 08/09/2017<br>Emailed Ms. Tina Bach complete copies of the AWP and sch.12 to be discussed in our meeting.<br><br>From: Kassem, Hatem<br>Sent: Friday, September 08, 2017 8:09 AM<br>To: 'Tina Bach'<br>Cc: Barrera, Damian A<br>Subject: Orange County Register , SR Y EA 24-086069<br>Ms. Bach:<br>Damian and I completed the three below audit cases for the referenced above taxpayer as follow:<br>1.      Re-audit case R1_985050, covered the period of 10/01/2012 through 09/30/2015 (pre-petition period). The re-audit findings incorporated warranted adjustments for this period. Attached:<br>a)       Case 985050 working schedules.<br>b)       Schedule 12, summary of the findings.<br>2.      Field billing order (FBO) case 1031165, covered the period of 10/01/2015 through 10/31/20105 (pre-petition period). The findings incorporated warranted adjustments for this period. Attached:<br>a)       Case 1031165 working schedules.<br>b)       Schedule 12, summary of the findings.<br>3.      Field billing order (FBO) 1031592, covered the period of 11/01/2015 through 03/31/2016 (post-petition period). The findings incorporated warranted adjustments for this period. Attached:<br>a)       Case 1031592 working schedules.<br>b)       Schedule 12, summary of the findings.<br>During the conference call scheduled today, Damian and I will explain in details the recommended findings for each case and will answer any question you may have.<br>Please note that the audit's recommendation are based on the best available information to date. We anticipate that you and your client will disagree with the re-audit and the field billing orders' recommendations. Thus, we are planning to submit these cases as non-concur, which will allow you to exercise your appeal rights and pursue these matters through the Department's appeals process. The next level in appeal process will be a discussion with Mr. Victor Guillen, CPA, Supervising Tax Auditor II<br>Below is the link for the Sales and Use Tax publication 17, Appeals Procedures for your review.<br>https://www.boe.ca.gov/pdf/pub17.pdf<br>Below is the link for form CDTFA 393, Settlement Review Request for your consideration<br>http://www.cdtfa.ca.gov/formspubs/cdtfa393.pdf<br>Below is the link for the Sales and Use Tax publication 490, Offer In Compromise for your consideration<br>https://www.boe.ca.gov/pdf/boe490.pdf<br>Should you have questions, feel free to contact Damian and I<br>Thank you | |

**ASSIGNMENT ACTIVITY HISTORY**          CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| **985050** | | **10/01/2012 - 09/30/2015** | | **Kassem, Hatem** |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 09/08/2017 | Kassem, Hatem | Ms. Bach, canceled our meeting as soon as she received the audit working papers. Auditor D. Barrera and I sent several emails to Ms. Bach to convince her to reschedule a meeting in person early next week. A meeting is scheduled with Ms. Bach on Tuesday September 12, 2017 at 2pm in Irvine office. | |
| 09/08/2017 | Kassem, Hatem | Complete copy of the audit working papers sent to the taxpayer | |
| 09/11/2017 | Kassem, Hatem | Met with Ms. Tina Bach, Representative in present of Mr. Damian, Senior Tax Audit, audit team member, I provided complete explanation of the audit recommendations and all related schedules, and answered her questions pertained to the audit findings and Appeal Process. Ms. Bach, requested two weeks to review the AWP and provide any additional that would change the audit findings. | |
| 09/11/2017 | Kassem, Hatem | Provided Mr. Victor Guillen, STAII with an update regarding the status of this case. | |
| 09/26/2017 | Kassem, Hatem | Follow up meeting with Ms. Tina Bach, Representative in present of Mr. Damian, Senior Tax Audit, audit team member. Ms. Bach agreed with audit recommendations related to adjustments of liability originally billed. Ms. Bach continues to disagree with the audit recommendations related to additional taxable sales, estimate taxable sales of F&E at close out date. Furthermore, Ms. indicated that she has no further records that she wishes to present at this point and agrees with the auditor recommendation to submit the case as non-concur for the next appeal level. | |
| 09/26/2017 | Kassem, Hatem | Ms. Bach indicated during a meeting that she has no contentions in regards to the re-audit findings in schedules <R1-12A>, <R1-12C>, <R1-12E>, <R1-12F>, <12G> and <R1-12I>. However she disagrees with the findings in schedule <R1-12M> | |
| 09/27/2017 | Kassem, Hatem | Follow up conference call with Ms. Tina Bach, representative, explained to detail the basis for the audit recommendations and all related schedules and answered her questions. | |
| 10/05/2017 | Kassem, Hatem | Audit submitted as non-concurred for further review and processing. | |
| 11/02/2017 | Kassem, Hatem | Supervisory meeting with Brad Smith, CRO, Tina Bach, Representative and Mr. Victor Guillen, STAII, discussed the audit recommendation in detail and the taxpayer' contentions. Taxpayer is allowed two week to provide any additional records the would change the audit findings related to commercial sales, single copy sales, and digital subscriptions | |
| 11/02/2017 | Kassem, Hatem | Supervisory meeting with Brad Smith, CRO, Tina Bach, Representative and Mr. Victor Guillen, STAII, discussed the audit recommendation in detail and the taxpayer' contentions. Taxpayer is allowed two week to provide any additional records the would change the audit findings related to commercial sales, single copy sales, and digital subscriptions | |
| 01/08/2018 | Kassem, Hatem | Yet, no contact from the taxpayer, a follow up email sent to Ms. Tina Bach, representative and requested to provide the status of the requested records. | |

**ASSIGNMENT ACTIVITY HISTORY**                  CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| SR EA 024-086069 | | Freedom Communications, Inc. | | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR | |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem | |
| Date | NAME OF COMMENTER | Person Contacted / Method / Result | | Follow-Up Date |
| 04/10/2018 | Kassem, Hatem | As instructed by Mr. Victor Guillen , STAII, contacted Mr. Brad Smith, CRO at (310) 936-3745t to check to see if he has any update or records he would like to submit for our review and consideration.<br>Additionally, to verify if Ms. Tina Bach, still representing the taxpayer since her POA expired on 12/31/2017.<br>Mr. Smith was not available, a voice message left to call back.<br>Another email sent out, to Mr. Smith emails address : BSMITH@GLASSRATNER.COM<br>Regarding the same matters. | | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF California

**ASSIGNMENT ACTIVITY HISTORY**                CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 04/10/2018 | Kassem, Hatem | Received the below directive email from Mr. Victor Guillen, STAII<br><br>From: Guillen, Victor<br>Sent: Tuesday, April 10, 2018 11:37 AM<br>To: Kassem, Hatem<br>Cc: Guzman, Crystal<br>Subject: RE: OC Register (24-086069) (Reedit ID 985050) & Press-Enterprise (102-501862) (Reedit ID 979665)<br><br>Hatem:<br><br>Contact Mr. Brad Smith directly for 82 and request for 392 update or direction on who will be handling this matter moving forward. We need to shut these cases down since I see no progress from the representative Tina Bach (expired POA) nor Mr. Brad Smith, CRO. These cases clearly have credits at issue but they will likely not exceed the related liabilities given the lack of documentation we have not received. I believe we should move for a final meeting with Mr. Brad Smith to discuss the conclusions we have reached. This summary will include the issues previously discussed allowing exemptions for Online content, a % of commercial printing, bad debts related to taxable activity, and a % for single copy resales. We will allocate sales price of F&E based upon net book values after extracting real property (Land and Building). Mr. Brad Smith can pursue the matter through appeals. Also, look into the successor liability issue regarding the Buyer since their lack of cooperation has also contributed to these delays according to Mr. Brad Smith. Determine if the successor liability comments need to be added to our report if applicable.<br><br>I will see you soon to discuss applicable % to use regarding commercial printing and single copy sales. Please consider this issue for our discussion meeting. I want to be fair and reasonable on this point since there is clearly appropriate exemptions here.<br><br>Please copy these emails to 414Z.<br>Thanks,<br>Victor<br><br>From: Kassem, Hatem<br>Sent: Tuesday, April 03, 2018 10:04 AM<br>To: Guillen, Victor<br>Subject: FW: OC Register (24-086069) (Reedit ID 985050) & Press-Enterprise (102-501862) (Reedit ID 979665)<br>Hi Victor:<br>Below is another follow up from the BK Section regarding the referenced above taxpayer. The taxpayer continues to file status reports in the BK court that references a substantial tax refunds from the State Board of Equalization (SBE) and stated that they continue to respond to request made by SBE for additional information related to an audit commence by SBE.<br>As you know, since we met with the taxpayer on Nov 2, 2017, none of the records requested have been provided.  Last email received from Tina was on 12/13/2017, who stated that she will follow up with us by the end of the same week | |

**ASSIGNMENT ACTIVITY HISTORY**          CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| **985050** | | **10/01/2012 - 09/30/2015** | | **Kassem, Hatem** |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| | | They have not responded to your last follow up email sent on 01/02/2018<br>Additionally, Tina Bach (POA), expired on 12/31/2017. Thus, the only contact we have is Mr. Brad Smith, CRO.<br>BSMITH@GLASSRATNER.COM (no cdtfa-82 on file)<br>Please let me know, when you are available to discuss.<br>Thank you<br>Hatem<br><br>From: Garcia, Melinda V.<br>Sent: Tuesday, April 03, 2018 9:07 AM<br>To: Kassem, Hatem<br>Cc: Huh, Joan (Legal)<br>Subject: RE: OC Register (24-086069) (Reaudit ID 985050) & Press-Enterprise (102-501862) (Reaudit ID 979665)<br><br>Hi Hatem,<br>They did file a status report on 04/02/2018. Report states "The Debtors continue to actively pursue the recovery of substantial tax refunds from the State Board of Equalization (SBE). The debtors are continuing to respond to request made by SBE for additional information related to an audit commence by SBE. It is unclear at the present time what impact, if any, the audit will have on the refunds begin sought by the Debtors. This process may ultimately include Bankruptcy intervention." But then again, they have been stating this on all their status report.  Status conference hearing is scheduled for 04/09/18. | |
| 04/11/2018 | Kassem, Hatem | Second supervisory meeting is set on April 30, 2018 | |
| 04/30/2018 | Kassem, Hatem | Second supervisor meeting with Mr. Brad Smith, CRO and Mr. Victor Guillen, STAII,<br>We provided detail discussion of the audit finding and our position in regards to all of the taxpayer's contentions. Complete copy is provide electronically to Mr. Brad Smith, CRO for his review. Mr. Brad agreed to follow up with Mr. Victor Guillen, STAII on Friday May 4, 2018.<br>It should be noted that Mr. Brad Smith, confirmed that Ms. Tina Bach, is no longer assisting in this audit. | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF CALIFORNIA

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| SR EA 024-086069 | | **Freedom Communications, Inc.** | | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR | |
| 985050 | | 10/01/2012 - 09/30/2015 | Kassem, Hatem | |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 05/10/2018 | Kassem, Hatem | An email received from Mr. Brad Smith, CRO who requested until end of June 2018 to review the audit working papers discussed on 04/30/2018 and provide additional records.<br>Upon approval of Crystal Guzman, PA, additional time allowed to the taxpayer per his request.<br>From: Guillen, Victor<br>Sent: Thursday, May 10, 2018 9:17 AM<br>To: 'Brad Smith'<br>Cc: Guzman, Crystal; Kassem, Hatem<br>Subject: RE: Freedom Communications<br>Brad:<br>Thank you for your email and update. I have discussed your request for additional time to obtain further documentation and support with Crystal Guzman, Irvine Office Audit Principal. We agree that further time is needed and hope that you will be able to provide the information requested to fully resolve the issues at hand. You were provided with a complete summary of where we stand at this point and copies of related work papers were discussed at our April 30, 2018 meeting. I trust you will make good use of this last delay and I look forward in discussing and resolving the open issues.<br>I will contact you the first week of July 2018 to schedule a date for our final meeting at our Irvine Office. In the interim, I will continue to review the work papers and make any appropriate adjustments that new information warrant. Please forward Hatem and I any new information that results in your inquiries and review of documents and records. I will do the same and update you on any adjustments made before our final meeting.<br>Please contact Hatem or I regarding any questions you may have.<br>Victor<br>Victor P. Guillen, CPA, MST | |

**ASSIGNMENT ACTIVITY HISTORY**    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | ACCOUNT NAME | |
|---|---|---|
| EH 102-501862 | **Freedom Communications Holdings** | |
| CASE ID NUMBER | AUDIT PERIOD | AUDITOR |
| 979665 | 11/21/2013 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 08/30/2016 | Kassem, Hatem | Met with Mr. Damian Barrera, Senior Tax Auditor, who indicated that Ms. Tina Bach, taxpayer's representative is out of the County in vacation for five weeks through end of September. | |
| 09/20/2016 | Guillen, Victor | Assignment assigned on 09/20/2016 was Assigned from Irvine District crew 7 to Irvine District crew 7 auditor Kassem | |
| 09/28/2016 | Kassem, Hatem | Met with audit team member, Damian Barrera, Associate Tax Auditor, discussed in detail the taxpayer's contentions and the warranted adjustment based on the additional records provided.

Mr. Barrera and I agreed to contact Ms. Tina Bach, Representative to schedule a meeting to discuss the other requested adjustments which appeared not to have adequate adjustments.

Additionally, we need to verify the taxpayer final position regarding the unreported ex- tax cost of consumed supplies included in the original audit . | |
| 09/29/2016 | Kassem, Hatem | Taxpayer filed a timely petition for the tax liability covering the period of 1/21/2013 to 09/30/2015.

Reviewed the additional records presented by the taxpayer. Adjustments are warranted in regarding to recorded and reported taxable measure and unreported misc. taxable income. However, the documentation presented to support the debit entries to the sales tax payable GL accounts found to be incomplete and did not provide adequate audit trial to support such large debit entries posted.

Thus, I sent  a request to Mr. Victor Guillen, STAII to create re-audit case to adjust the original audit findings. | |
| 10/13/2016 | Kassem, Hatem | During a meeting with Ms. Tina Bach, outside representative, required and updated Boe-82 and Boe-392 since the one on file will expire on 12/31/2016
Taxpayer claimed that the download provided for the audit purpose earlier is complete download and not AP only and should be used for validation purpose.
I contact Mr. V. Harper, CAS and required to review the original data download to verify the taxpayer's claim and if correct to provide summary of entire account of interest. | |

**ASSIGNMENT ACTIVITY HISTORY**    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| EH 102-501862 | | **Freedom Communications Holdings** | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| 979665 | | 11/21/2013 - 09/30/2015 | | Kassem, Hatem |
| Date | NAME OF COMMENTER | Person Contacted / Method / Result | | Follow-Up Date |
| 10/13/2016 | Kassem, Hatem | Meeting Status with Mr. Tina Bach, outside representative at Irvine District office. Additionally, Ms. Rebecca Clark, with Squar Milner , new representative attended the meeting. Requested form Boe-82 and Boe-392 for Ms. Rebecca Clark to include her in all further communications. In the meeting, I discussed the warranted adjustment to the original audit and requested other records to support other requested adjustment. I will prepare a detail letter to the taxpayer next week to document what discussed in the meeting. Ms. Bach, requested to get more information regarding Settlement programs Ms. Bach, mentioned that she filed serval other claims for refund, covering the entire audit period through 1Q16. It should be noted that the only claim for refund received by our office is for 3Q16. As initial records, I requested a detail trail balance covering the period of 10/01/2015 and 03/31/2016 and complete copy of the asset sale agreement and the close out date of 03/31/2016 | | |
| 10/17/2016 | Kassem, Hatem | I forwarded to Ms. Bach, form Boe-393, Settlement Review Request, per her request. Received updated Boe-392, which is valid through 12/31/2017 and revised Boe-82 for Ms. Bach's new email address Tina Bach <mmounties@gmail.com> | | |
| 10/25/2016 | Kassem, Hatem | Additionally, the letter listed the records required to verify remaining adjustments to the original audit findings. | | |
| 10/25/2016 | Kassem, Hatem | Attempted to reconcile GL download provided to examine consumable supplies and fixed assets. Summary download provided by Ms. V. Harper, CAS found to be higher than total amount posted to General Ledger Accounts per trial balance. We can't proceed with the summary download, as it did not reconcile with GL balances. I sent an email to Mr. Harper to discuss the download summary. | | |

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| EH 102-501862 | | **Freedom Communications Holdings** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 979665 | | 11/21/2013 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 10/26/2016 | Kassem, Hatem | Discussed the download summaries with Veronica Harper, CAS and sent the below follow up email to Ms. Tina Bach, taxpayer's representative<br><br>From: Kassem, Hatem<br>Sent: Wednesday, October 26, 2016 12:18 PM<br>To: Tina Bach (mmounties@gmail.com)<br>Cc: Barrera, Damian A<br>Subject: O. C. Register Petitioned liability period of April 1, 2012 through September 30, 2015, Ref. Schedule <12F>, ex-tax cost of consumable supplies per prior error ratio<br><br>Ref. Schedule <12F>, ex-tax cost of consumable supplies per prior error ratio<br><br>Tina:<br><br>Pursuant to our letter emailed on October 18, 2016., Ms. Veronica Harper, Computer Audit Specialist and I  processed the download provided and prepared the attached summary files for your review:<br>1.        Copy of the O. C. Initial summary of download provided, please review<br>2.        O.C. Register DL validation, please review<br>3.        TRANSVENDBLANK O. C. Register, please review<br><br>We attempted to reconcile and validate the provided download totals for few accounts of interest, however the download summaries found to be higher than net activities showed per trail balance. Which indicates that the population provided for testing purpose is overstated. (please see DL validation file attached for details). Please reconcile the difference or provide a revised download.<br><br>Secondly, while reviewing the download provided, we noted large number of transactions without vendor's name. (please see trans vendor blank file attached), Please review these type of transactions and ensure that you will be able to trace it to source document (such as vendor invoice.)<br><br>It should be noted that the test will examine only the transactions posted to the accounts of interest.<br><br>Should you have any questions, please feel free to contact Mr. Barrera or I.<br><br>Thank you | |
| 11/07/2016 | Kassem, Hatem | Taxpayer provided files to support the filed claim for refund for our review. | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT o...

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| EH  102-501862 | | **Freedom Communications Holdings** | | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR | |
| 979665 | | **11/21/2013 - 09/30/2015** | **Kassem, Hatem** | |
| Date | NAME OF COMMENTER | Person Contacted / Method / Result | | Follow-Up Date |
| 11/07/2016 | Kassem, Hatem | Taxpayer filed several claims for refund and amended returns covering the period of Nov. 11, 2013 through September 30, 2015, total tax refund requested $ 984,134. The claims for refunds indicated that the exempt transportation, online subscriptions and bad debts were not claimed correctly in the original return filed. I populated the requested refund and provided the Ms. T. Bach, representative a summary to review and determine if the total requested refunds total of $984134 | | |
| 11/09/2016 | Kassem, Hatem | Review of the files provided by the taxpayer disclosed that the export files has N extension which is (Cygwin man file), this file is not supported by the BOE. Thus, I sent the below email<br><br>From: Kassem, Hatem<br>Sent: Wednesday, November 09, 2016 3:01 PM<br>To: 'Tina Bach'<br>Cc: Bernetich, D' Nese; Guillen, Victor; Barrera, Damian A<br>Subject: N Files<br>Ms. Bach:<br>Thank you for your email, which included export files with N. extension.  Please be advised that this type of files, we can't open or process. Due to the large size of  data involved in the cases, a Computer Audit Specialist will be involved, who will discuss with you the files format, we will need for our verification . I'm currently reviewing the other Excel files you provided and I will contact you upon my review is completed.<br>Should you have any questions, please let me know. | | |
| 11/09/2016 | Kassem, Hatem | In response to an email from Ms. Bach, who requested not to engage the computer audit specialist, I sent the following email:<br>From: Kassem, Hatem<br>Sent: Wednesday, November 09, 2016 3:41 PM<br>To: 'Tina Bach'<br>Cc: Bernetich, D' Nese; Guillen, Victor; Barrera, Damian A<br>Subject: RE: N Files<br>Ms. Bach:<br>You provided more than150 download compressed files, which is not feasible for us to process, thus, utilizing a Computer Audit Specialist is mandatory. Additionally, the Computer Audit Specialist will be assisting is choosing the representative test / sample approach to verify the filed claims for refunds<br><br>Thank you | | |
| 11/30/2016 | Kassem, Hatem | Prepared detailed email to Melinda Garcia, Business Taxes Compliance Specialist at Special Operations Branch - Bankruptcy Team, to provide her with an update regarding the status of the petitioned liability and the claims for refund filed by the taxpayer. | | |
| 12/02/2016 | Kassem, Hatem | Reviewed the business acquisition on November 2013, according to the agreement provided by Ms. Tina Bach. Representative, this taxpayer, Press-Enterprise assumed all the liability on the books at the sale date including sales tax liability | | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT...

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| EH 102-501862 | | **Freedom Communications Holdings** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 979665 | | 11/21/2013 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 01/04/2017 | Kassem, Hatem | Phone call with Tina Bach, representative, Mr. Damian Barrera, audit team member attended as well. Discussed in detail the following: Requested adjustments for schedules 12A, 12C, 12D, and 12E. Ms. Back agreed to provide additional supporting records to support the material adjustment posted to sales tax payable GL account included in schedule 12C. Moreover, to explain how sales tax recorded for the delivered subscription in 4Q13. Additionally, I notified Ms. Bach, that the AP download for consumable supplies and fixed assets is accepted and will be used to develop a statistical sample test. | |
| 01/13/2017 | Kassem, Hatem | Population to test consumable supplies and fixed assets provided by CAS | |
| 01/16/2017 | Kassem, Hatem | Received additional records from the taxpayer to support the questioned adjustments posted to the sales tax payable GL account for my review. | |
| 01/27/2017 | Kassem, Hatem | Provided Ms. Tina Bach, Representative with a listing of sample transactions to examine consumable supplies and fixed assets purchases. Due to the limited number in the population, CAS recommended to examine the population on actual basis. Provided two listing to the taxpayer, 1st with known vendor names, 2nd with unknown vendor names. Taxpayer did not provide estimate time needed to provide the source documents required. | |
| 02/01/2017 | Kassem, Hatem | Completed my review of the requested adjustments in schedule <R1-12A> | |
| 02/09/2017 | Kassem, Hatem | Completed my review of the requested adjustments in schedule <R1-12E> and <R1-12D> | |
| 02/22/2017 | Bernetich, D'Nese | Assignment assigned on 9/20/2016 12:00:00 AM was Assigned from EA Irvine District crew 7 auditor Hatem Kassem to EA Irvine District crew 4 auditor Damian Barrera | |
| 02/27/2017 | Kassem, Hatem | Completed my review of the requested adjustments in schedule <R1-12C> | |
| 03/01/2017 | Kassem, Hatem | Examination of AP records provided by the taxpayer, disclosed questionable transactions. Further investigation warranted. | |
| 03/28/2017 | Kassem, Hatem | Received an email from Ms. Tina Bach, representative, who indicated that she still working to gather the required records to verify AP test with unknown vendor names. | |
| 04/05/2017 | Kassem, Hatem | Provided Ms. Tina Bach, representative a complete copy of the re-audit working papers, which included recommended re-audit adjustment up to date. I answered all Ms. Bach's questions. Ms. Bach was pleased of the professional and detailed re-audit working papers presented by the auditor. | |
| 04/25/2017 | Barrera, Damian | Auditor received the supporitng documentation for the Blank Vendors from, Tina Bach <mmounties@gmail.com>, Tax Director. Auditor received the support via e-mai. The auditor will examine the support for any errors. | |
| 04/26/2017 | Barrera, Damian | Auditor completed review of blank vendors section of the A/P test. Errors were noted in the examination. Please supporting audit schedule for more details. Auditor will discuss with Tina during next telephone conference on 5/19/17. | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF CALIFORNIA
**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| EH 102-501862 | | **Freedom Communications Holdings** | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| 979665 | | 11/21/2013 - 09/30/2015 | | Kassem, Hatem |
| Date | NAME OF COMMENTER | Person Contacted / Method / Result | | Follow-Up Date |
| 05/19/2017 | Barrera, Damian | Auditors Hatem Kassem and Damian Barrera discussed the status of the audit with my Tina Bach over the telephone. Auditors received Orange County Register's support of A/P test. As discussed with Tina, she has been unable to work on all other items discussed in the prior meeting. Ms. Tina Bach has been working on the support for the Register's A/P test. Tina has asked for a month's extensions on providing the other items discussed in the prior meeting is she will be working on the financials for OCR. Tina has requested a meeting to discuss items in mid-June. | | |
| 06/12/2017 | Barrera, Damian | As discussed with Ms. Tina Bach, Tax Director, in our last telephone conversation. Ms. Bach requested a month extension to gather requested documentation and pending items. Auditor has sent Ms. Bach an email to schedule a telephone conversation as the month follow-up is due this week. | | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF CALIFORNIA

**ASSIGNMENT ACTIVITY HISTORY**    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| EH  102-501862 | | **Freedom Communications Holdings** | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| 979665 | | 11/21/2013 - 09/30/2015 | | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 06/16/2017 | Kassem, Hatem | Ms. Bach declined our request to schedule a follow up call to determine the status of the pending test areas. Thus, the below email to her to provide her with an up to date progress report and advise her about the requested pending records needed to complete our examination.<br><br>The below email sent out<br><br>From: Barrera, Damian A<br>Sent: Friday, June 16, 2017 1:42 PM<br>To: Tina Bach (mmounties@gmail.com)<br>Cc: Kassem, Hatem<br>Subject: Press Enterprise Status<br><br>Hi Tina,<br><br>Below are the three (3) areas of the audit that we are currently reviewing:<br><br>Petitioned liability covered the period of November 21, 2013 through September 30, 2015<br><br>On April 5, 2017, we provided you an updated re-audit working papers, which included the re-audit schedules , , and .<br><br>The only pending adjustment in this section is related to the estimated ex-tax cost of consumable supplies subject to tax . Reviewed of the accounts payable records provided, required tax researches and reaching out to the vendors. Hatem and I are planning to conclude this item by Friday June 23, 2017. You will receive copy of the re-audit schedule pertains to this are by June 27, 2017.<br><br>Extended audit period 10/01/2015 - 03/31/2016<br><br>The pending items are as follow:<br><br>1.        Taxable sale of fixed assets sales at close out date, please provide the requested price allocation to enable us to complete our analysis and provide you with the result.<br>2.        Paid bills test, an error factor will be developed and projected after an error the will be disclosed in .<br><br>Claim for refund<br><br>On April 6, 2017, we emailed you to inquire about seven (7) GL accounts (Revenue); we requested an explanation of the types of revenue recorded in these accounts.<br><br>On April 21, 2017, we met and discussed the revenue analysis we preformed based on the trial balances. In the meeting, we explained that your claims for refund appeared to be overstated and we inquired about several types of recorded revenue.<br><br>Additionally, we requested complete audit trial regarding delivery charges and delivery cost. Furthermore, we discussed that our revenue analysis disclosed several types of revenue that will require further verification and testing. For details, please refer to | |

**DECLARATION OF WILLIAM P. KIMSEY, CPA**
**ASSIGNMENT ACTIVITY HISTORY**

CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| EH 102-501862 | | **Freedom Communications Holdings** | | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR | |
| 979665 | | 11/21/2013 - 09/30/2015 | Kassem, Hatem | |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| | | our email dated April 21, 2017.<br><br>Please note, that the time allowed for us to complete our verification of the claims for refund is limited and is running out. Thus, I appreciate, if you let us know the status of your review of the presented revenue analysis to start verifying the requested refund.<br><br>Should you have any questions, please let us know | |
| 08/09/2017 | Kassem, Hatem | Conference call with Melinda Garcia in BK Section, updated her in regards to the potential tax liability noted. | |
| 09/08/2017 | Kassem, Hatem | Complete copy of the audit working papers sent to the taxpayer | |
| 09/12/2017 | Kassem, Hatem | Held a meeting with Ms. Tina Bach, representative discussed in detail the audit findings up to date provided on 09/08/0/2017. Ms. Bach agreed with all adjustments related to re-audit findings. Taxpayer requested two additional two weeks review the classification of recorded revenue | |
| 09/26/2017 | Kassem, Hatem | Follow up meeting with Ms. Tina Bach, Representative in present of Mr. Damian, Senior Tax Audit, audit team member. Ms. Bach agreed with audit recommendations related to adjustments of liability originally billed. Ms. Bach continues to disagree with the audit recommendations related to additional taxable sales, estimate taxable sales of F&E at close out date. Furthermore, Ms. indicated that she has no further records that she wishes to present at this point and agrees with the auditor recommendation to submit the case as non-concur for the next appeal level. | |
| 09/27/2017 | Kassem, Hatem | Follow up conference call with Ms. Tina Bach, representative, explained to detail the basis for the audit recommendations and all related schedules and answered her questions. | |
| 09/27/2017 | Kassem, Hatem | Follow up conference call with Ms. Tina Bach, representative, explained to detail the basis for the audit recommendations and all related schedules and answered her questions. | |
| 10/02/2017 | Kassem, Hatem | Another follow up conference call with Ms. Tina Bach, representative, explained to detail the basis for the audit recommendations and all related schedules and answered her questions. | |
| 10/10/2017 | Kassem, Hatem | Audit submitted as non-concur for further review and processing | |
| 11/02/2017 | Kassem, Hatem | Supervisory meeting with Brad Smith, CRO, Tina Bach, Representative and Mr. Victor Guillen, STAII, discussed the audit recommendation in detail and the taxpayer' contentions. Taxpayer is allowed two week to provide any additional records the would change the audit findings related to commercial sales, single copy sales, and digital subscriptions | |
| 01/08/2018 | Kassem, Hatem | Yet, no contact from the taxpayer, a follow up email sent to Ms. Tina Bach, representative and requested to provide the status of the requested records. | |

DECLARATION OF WILLIAM P. KIMSEY   CPA   IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF THE STATE OF CALIFORNIA

**ASSIGNMENT ACTIVITY HISTORY**          CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| EH  102-501862 | | **Freedom Communications Holdings** | | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR | |
| 979665 | | 11/21/2013 - 09/30/2015 | Kassem, Hatem | |
| Date | NAME OF COMMENTER | Person Contacted / Method / Result | | Follow-Up Date |
| 04/10/2018 | Kassem, Hatem | As instructed by Mr. Victor Guillen , STAII, contacted Mr. Brad Smith, CRO at (310) 936-3745t to check to see if he has any update or records he would like to submit for our review and consideration.<br>Additionally, to verify if Ms. Tina Bach, still representing the taxpayer since her POA expired on 12/31/2017.<br>Mr. Smith was not available, a voice message left to call back.<br>Another email sent out, to Mr. Smith emails address : BSMITH@GLASSRATNER.COM<br>Regarding the same matters. | | |

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF

**ASSIGNMENT ACTIVITY HISTORY**                CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | ACCOUNT NAME | |
|---|---|---|
| EH 102-501862 | **Freedom Communications Holdings** | |
| CASE ID NUMBER | AUDIT PERIOD | AUDITOR |
| 979665 | **11/21/2013 - 09/30/2015** | **Kassem, Hatem** |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 04/10/2018 | Kassem, Hatem | Received the below directive email from Mr. Victor Guillen, STAII<br><br>From: Guillen, Victor<br>Sent: Tuesday, April 10, 2018 11:37 AM<br>To: Kassem, Hatem<br>Cc: Guzman, Crystal<br>Subject: RE: OC Register (24-086069) (Reedit ID 985050) & Press-Enterprise (102-501862) (Reedit ID 979665)<br><br>Hatem:<br><br>Contact Mr. Brad Smith directly for 82 and request for 392 update or direction on who will be handling this matter moving forward. We need to shut these cases down since I see no progress from the representative Tina Bach (expired POA) nor Mr. Brad Smith, CRO. These cases clearly have credits at issue but they will likely not exceed the related liabilities given the lack of documentation we have not received. I believe we should move for a final meeting with Mr. Brad Smith to discuss the conclusions we have reached. This summary will include the issues previously discussed allowing exemptions for Online content, a % of commercial printing, bad debts related to taxable activity, and a % for single copy resales. We will allocate sales price of F&E based upon net book values after extracting real property (Land and Building). Mr. Brad Smith can pursue the matter through appeals. Also, look into the successor liability issue regarding the Buyer since their lack of cooperation has also contributed to these delays according to Mr. Brad Smith. Determine if the successor liability comments need to be added to our report if applicable.<br><br>I will see you soon to discuss applicable % to use regarding commercial printing and single copy sales. Please consider this issue for our discussion meeting. I want to be fair and reasonable on this point since there is clearly appropriate exemptions here.<br><br>Please copy these emails to 414Z.<br>Thanks,<br>Victor<br><br>From: Kassem, Hatem<br>Sent: Tuesday, April 03, 2018 10:04 AM<br>To: Guillen, Victor<br>Subject: FW: OC Register (24-086069) (Reedit ID 985050) & Press-Enterprise (102-501862) (Reedit ID 979665)<br>Hi Victor:<br>Below is another follow up from the BK Section regarding the referenced above taxpayer. The taxpayer continues to file status reports in the BK court that references a substantial tax refunds from the State Board of Equalization (SBE) and stated that they continue to respond to request made by SBE for additional information related to an audit commence by SBE.<br>As you know, since we met with the taxpayer on Nov 2, 2017, none of the records requested have been provided.  Last email received from Tina was on 12/13/2017, who stated that she will follow up with us by the end of the same week<br>They have not responded to your last follow up email sent on | |

Case 8:15-bk-15311-MW    Doc 1732-2    Filed 03/01/21    Entered 03/01/21 15:35:02

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT    Page 88
ASSIGNMENT ACTIVITY HISTORY                CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | |
|---|---|---|---|
| EH 102-501862 | | **Freedom Communications Holdings** | |
| CASE ID NUMBER | | AUDIT PERIOD | AUDITOR |
| 979665 | | 11/21/2013 - 09/30/2015 | Kassem, Hatem |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| | | 01/02/2018<br>Additionally, Tina Bach (POA), expired on 12/31/2017. Thus, the only contact we have is Mr. Brad Smith, CRO.<br>BSMITH@GLASSRATNER.COM (no cdtfa-82 on file)<br>Please let me know, when you are available to discuss.<br>Thank you<br>Hatem<br><br>From: Garcia, Melinda V.<br>Sent: Tuesday, April 03, 2018 9:07 AM<br>To: Kassem, Hatem<br>Cc: Huh, Joan (Legal)<br>Subject: RE: OC Register (24-086069) (Reaudit ID 985050) & Press-Enterprise (102-501862) (Reaudit ID 979665)<br><br>Hi Hatem,<br>They did file a status report on 04/02/018. Report states "The Debtors continue to actively pursue the recovery of substantial tax refunds from the State Board of Equalization (SBE). The debtors are continuing to respond to request made by SBE for additional information related to an audit commence by SBE. It is unclear at the present time what impact, if any, the audit will have on the refunds begin sought by the Debtors. This process may ultimately include Bankruptcy intervention." But then again, they have been stating this on all their status report.  Status conference hearing is scheduled for 04/09/18. | |
| 04/11/2018 | Kassem, Hatem | Second supervisory meeting is set on April 30, 2018 | |
| 04/30/2018 | Kassem, Hatem | Second supervisory meeting with Mr. Brad Smith, CRO and Mr. Victor Guillen, STAII,<br>We provided detail discussion of the audit finding and our position in regards to all of the taxpayer's contentions. Complete copy is provide electronically to Mr. Brad Smith, CRO for his review. Mr. Brad agreed to follow up with Mr. Victor Guillen, STAII on Friday May 4, 2018.<br>It should be noted that Mr. Brad Smith, confirmed that Ms. Tina Bach, is no longer assisting in this audit. | |
| 05/08/2018 | Kassem, Hatem | An email received from Mr. Brad Smith, CRO who requested until end of June 2018 to review the audit working papers discussed on 04/30/2018 and provide additional records. | |

**DECLARATION OF WILLIAM P. KIMSEY   CPA   IN SUPPORT OF THE CALIFORNIA**

**ASSIGNMENT ACTIVITY HISTORY**                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION

| ACCOUNT NUMBER | | ACCOUNT NAME | | |
|---|---|---|---|---|
| EH 102-501862 | | **Freedom Communications Holdings** | | |
| CASE ID NUMBER | | AUDIT PERIOD | | AUDITOR |
| 979665 | | **11/21/2013 - 09/30/2015** | | **Kassem, Hatem** |

| Date | NAME OF COMMENTER | Person Contacted / Method / Result | Follow-Up Date |
|---|---|---|---|
| 05/10/2018 | Kassem, Hatem | Upon approval of Crystal Guzman, PA, additional time allowed to the taxpayer per his request.<br>From: Guillen, Victor<br>Sent: Thursday, May 10, 2018 9:17 AM<br>To: 'Brad Smith'<br>Cc: Guzman, Crystal; Kassem, Hatem<br>Subject: RE: Freedom Communications<br>Brad:<br>Thank you for your email and update. I have discussed your request for additional time to obtain further documentation and support with Crystal Guzman, Irvine Office Audit Principal. We agree that further time is needed and hope that you will be able to provide the information requested to fully resolve the issues at hand. You were provided with a complete summary of where we stand at this point and copies of related work papers were discussed at our April 30, 2018 meeting. I trust you will make good use of this last delay and I look forward in discussing and resolving the open issues.<br>I will contact you the first week of July 2018 to schedule a date for our final meeting at our Irvine Office. In the interim, I will continue to review the work papers and make any appropriate adjustments that new information warrant. Please forward Hatem and I any new information that results in your inquiries and review of documents and records. I will do the same and update you on any adjustments made before our final meeting.<br>Please contact Hatem or I regarding any questions you may have.<br>Victor<br>Victor P. Guillen, CPA, MST | |

# EXHIBIT 5

CDTFA-836-A REV. 7 (7-17)
**REPORT OF DISCUSSION OF AUDIT FINDINGS**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF
TAX AND FEE ADMINISTRATION

| OWNER | | ACCOUNT NUMBER | DATE OF REPORT |
|---|---|---|---|
| *FREEDOM COMMUNICATIONS INC* | | 024086069 | 09/30/2020 |
| DBA | | CASE ID | |
| ORANGE COUNTY REGISTER | | A125509 | |
| REPRESENTED BY | Randy Ing & Jonathan Amitrano | | |
| CDTFA REPRESENTED BY | | AUDITOR | DISCUSSION DATE |
| Crystal Guzman | | Hatem Kassem | 07/27/2020 |
| AUDIT PERIOD | PRIOR AUDIT THROUGH | STARTING DATE | SUPERVISOR |
| 12/31/2012-9/30/2015 | | 01/01/1952 | Victor Guillen |
| AUDIT STATUS | Petition on File | | |

GENERAL INFORMATION

 Taxpayer was a publisher of newspaper and magazine
Taxpayer filed timely petition for the liability determined on 04/16/2016. Additionally, taxpayer filed amended sales and
use tax returns and claims for refunds covered the period of 10/01/2012 through 09/30/2015. The petition and the claims
for refunds were forwarded to Irvine office for review and consideration.

Re-audit Case A125509, covers the period of 10/01/2012 - 09/30/2015, Pre-Petition period

| AUDIT TYPE | Audit | | | | |
|---|---|---|---|---|---|
| PROTESTED MEASURE OF TAX | AGREE | DISAGREE | NON-COMMITTAL | AMOUNT | |
| Over-Reported Taxable Sales From PBS System-Subscription Sales / 1St Re-Audit | | X | | -$16,163,473.00 | |
| UNREPORTED REVENUE FROM FIXED ASSETS SALES- ACTUAL BASIS | X | | | $10,085.00 | |
| Disallowed Recorded Exempt Single Copy Sales Per Regulations 1590(b)(6) and 1699(d) | | X | | $1,631,632.00 | |
| Total Disallowed Recorded Exempt Commercial Sales | | X | | $5,432,788.00 | |
| UNSUPPORTED MISCELLANEOUS INCOME POSTED TO GL 73060 - R2 | X | | | $0.00 | |
| UNREPORTED TAXABLE MEASURE FROM DISALLOWED DEBITS ENTRIES POSTED TO SALES TAX PAYABLE GL ACCOUNT 25120 - R2 | X | | | $143,892.00 | |
| UNSUPPORTED MISCELLANEOUS INCOME POSTED TO GL 73030 - R2 | X | | | $0.00 | |
| ESTIMATED EX-TAX COST OF CONSUMABLE SUPPLIES SUBJECT TO TAX PER PRIOR AUDIT RATIO - R2 | X | | | $646,171.00 | |
| UNSUPPORTED MISCELLANEOUS INCOME POSTED TO GL 73000 - R2 | X | | | $13,967.00 | |

CDTFA-836-A REV. 7 (7-17)
mL0309-4

| | | | |
|---|---|---|---|
| RECORDED AND REPORTED TAXABLE MEASURE RECONCILIATION EXAMINED ON AN ACTUAL BASIS - R2 | X | | $0.00 |
| Allowed Taxable Bad Debts Subscription Sales / 1St Re-Audit | | X | -$1,215,345.00 |
| Unreported Taxable Sales From Single Copy Sales Markup Sold through Concessionaires and Newspaper's Carriers Per Regulations 1590(b)(6) and 1699(d) | | X | $1,333,204.00 |

## TAXPAYER'S CONTENTIONS

The taxpayer presented his contentions in five separate statements, that are attached to this report. The taxpayer's five separate contentions may be summarized as follow:
1.  Taxpayer disagrees with the allowed ratio in the audit for exempt transportation changes under Sales and Use Tax Regulation 1628
2.  Taxpayer disagrees with the disallowed recorded exempt single copy sales
3.  Taxpayer disagrees with the disallowed recorded exempt commercial printing
4.  Taxpayer disagrees with the tax application of Register in Education (NIE) sales
5.  Taxpayer disagrees with the prorated ratio of digital subscription utilized in the audit under Sales and Use Tax Regulation
    1590

## STAFF'S POSITION

1.Taxpayer did not maintain financial records or general ledger account to record separately itemized transportation charges pertained to newspaper delivered.
Sales and use tax Regulation 1628 states in part:
"...Transportation charges will be regarded as "separately stated" only if they are separately set forth in the contract for sale or in a document reflecting that contract, issued contemporaneously with the sale, such as the retailer's invoice..."
Taxpayer provided a worksheet that demonstrated the transportation charges of 30% of the total recorded subscription charges. Review of the taxpayer's worksheet disclosed major fluctuation (21%-59%) of the transportation charges as a ratio of total subscription. Additionally, the worksheet is based on establishing exempt freight out charges based on total payments made to the delivery vendors not on the separately stated freight charges on the customer billings as instructed per sales and use tax Regulation 1628. Furthermore, worksheets provided found to be confusing and captured other irrelevant factors such as recorded tax, single copy sales, sales made by related entity (Press-Enterprise) and did not provide a complete audit trail to the customer's billings.
Thus, auditor attempted to perform a statistical sample test to compute the transportation charges included in the subscription revenue. However, the provided renewal notices by the taxpayer, found to be incomplete, not representative, and unreliable to perform a representative test. In order to perform a representative test, it is important to establish a clearly defined test base and the test base should be representative of the total population of the item being tested and it is important that a firm sample be established so that a percentage can be computed which is representative of the entire audit period, which was not available in this audit. In consideration of the taxpayer's available records, auditor reviewed the first fifty billings on December 12, 2012, October 8, 2013 and April 16, 2015 and emphasized the test to include 7-days and one-day subscribers since they represented 89% of the total subscribers during the test. An estimated weighted separately stated transportation ratio of 25.78% developed for the period through 03/31/2013 and ratio of 21.43% developed for the period after 03/31/2013. Both developed ratio(s) utilized in the audit to estimate exempt transportation charges under Regulation 1628.
2.Taxpayer netted the recorded single copy sales off the sales and use tax returns for the audit period and did not maintain valid resale cards to support the recorded exempt sales of single copy newspaper as required by the Sales and Use Tax Regulation 1668.
Sales and Use Tax Regulation1668 (a) states in part:
"...The burden of proving that a sale of tangible personal property is not at retail is upon the seller unless the seller timely takes in good faith a certificate from the purchaser that the property is purchased for resale..."
In consideration of the condition of the available records, auditor utilized all the available
resources to verify the resale status of the questioned sales. Remained unsupported sales in the audit were made to unverified newspapers retailers. Thus, no further adjustment is warranted.  It should be noted that this taxpayer owned, maintained and operated 1,175 (unverified) newspapers coin dispensing machines through concessionaires and

STAFF'S POSITION

newspaper's carriers (Per Mr. Randy Ings's (POA) email on 06/19/2019)
3.Taxpayer netted the recorded commercial printing sales off the sales and use tax returns for the audit period. Examination of recorded exempt commercial printing sales disclosed unsupported exempt sales due to the lack of the required timely supporting documents to verify the exemption under Sales and Use Tax provisions.
Sales and Use Regulation 1667 (a) states in part:
"..The law provides that for the purpose of proper administration of the sales and use tax and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established..."
In consideration of the condition of the available records, auditor utilized all the available resources to verify the exemption of the questioned sales. Remained unsupported sales were included in the audit. Thus, no further adjustment is warranted.
4.Recorded RIE revenue (Register in Education), taxpayer contented that the entire revenue was related digital subscription only. Taxpayer provided a PowerPoint and few screen shots. Upon review, auditor was unable to verify the actual dates of such materials and it appeared to be recently re-constructed for the audit purpose. Additionally, taxpayer provided few emails pertaining to customer's login assistance. Review of such emails revealed that the teachers had access to digital subscription for educations purposes.
Further review of the additional documentation provided by the taxpayer such as detail PBS report for the month of August 2015, found to include several comments indicated that such subscription included paper subscription donated by the subscribers for different reasons (see RIE Exhibit page 1). Additionally, page 12 of the PowerPoint provided by the taxpayer stated that printed editions were limited only to certain delivery days of the week in the past (see RIE Exhibit page 2). Furthermore, online research of the Newspaper in Education disclosed that both of the taxpayer's entities (Orange County Register and Press-Enterprise) participated in the RIE program (see RIE Exhibit page 3) and the participation in the electronic subscription was along with the print edition of the newspaper through the school year. (See RIE Exhibit page 4).
On 06/11/2019, Mr. Randy Ings (POA), stated that it will most likely takes him considerably more time to obtain additional detail from the PBS system, however, he did not believe it would provide any additional relevant information.
5.Auditor attempted to conduct a statistical sample test to determine the newspaper digital subscription in the total newspaper subscription revenue. However, the provided renewal notices by the taxpayer, found to be incomplete, not representative, and unreliable to perform a representative test. In order to perform a representative test, it is important to establish a clearly defined test base and the test base should be representative of the total population of the item being tested and it is important that a firm sample be established so that a percentage can be computed which is representative of the entire audit period, which was not available in this audit.
Additionally, auditor reviewed large volume of renewal notices provided by the taxpayer, which found to be silent regarding digital subscription.
The taxpayer's contention related to exempt digital subscription (mixed) sales was discussed in detail with Mr. Victor Guillen, CPA, STAII, who recommended the following adjustments:
Based on the Wikipedia history of online content and the taxpayer's website snapshots:
Period of October 1, 2012 through March 31, 2013, no adjustment allowed for digital subscriptions. Sales deemed to be entirely taxable.Period of April 1, 2013 through September 30, 2015, an estimate of 41% exemption for digital subscription is allowed per an audit of a competitor taxpayer case A46651
Period of October 1, 2015 through March 31, 2016, an estimate of 41% exemption for digital subscription is allowed per an audit of a competitor taxpayer case A46651 This recommendation represents an estimate based on the best available information to date. No further adjustment is warranted. The taxpayer's contention is based on the amended Sales and Use Tax Regulation 1590 with proposed allocating 53% of the total mixed subscription sales as digital for the periods after 10/01/2016. Since this case covered the period of 10/01/2012 through 09/30/2015 (before the effective date of the amended regulation 1590), further examination was warranted to establish the newspaper digital subscription ratio in the total newspaper subscription revenue. The provided renewal notices by the taxpayer found to be incomplete, not representative, and unreliable to perform a representative test, however an estimated of 41% as digital subscription ratio was allowed for the periods after 03/31/2013. This recommendation represents an estimate based on the best available information to date. No further adjustment is warranted

Audit Supervisor's Comments:
This account (024-086069) includes three related audit cases. The audit assignments started with a routine audit case on Orange County Register. During the audit assignment the taxpayer filed for bankruptcy (@10-31-15). At this time the auditor was directed by the BK Section to complete the audit assignment immediately using the best available information to date. This directive was issued to establish a tentative tax liability for BK filing claim purposes. The auditor followed this instruction and completed his audit case through 9-30-15 using estimates from partial records received. This audit was completed and billed as non-concurred.

STAFF'S POSITION

The taxpayer then filed a timely petition for redetermination based upon these estimated audit findings. The petition case established this Reaudit case under account 024-086069.

Shortly, after filing the petition for redetermination the taxpayer filed amended tax returns for all previously filed tax returns subject to the open statute period. HQ did not accept the amended tax returns but were in fact treated as claims for refunds for the Reaudit period and post Reaudit period.

In addition, during the Reaudit process it was disclosed that the taxpayer had sold their assets in a bulk sales transaction including many related companies and closed this permit @3-31-16.

Therefore, at this point the auditor had three related audit cases under this permit (024-086069).

Reaudit case A125509 10-1-12 to 9-30-15

FBO Pre-Petition BK case A109125 10-1-15 to 10-31-15

FBO Post-Petition BK case A72261 11-1-15 to 3-31-16

This Audit Disagreement Case relates to A1481539

All three audit cases have similar audit findings and are driven from the Reaudit report where the auditor has recalculated the taxpayer's taxable measure using accounting data that can be traced to the taxpayer's financial records.

The claim for refunds related to the exemption available for digital online content via mixed newspaper subscriptions under Regulation 1590 (citing Dell Court Case). Here the taxpayer provided worksheets claiming a refund for most of tax previously paid on their tax returns. These worksheets were unsupported and not tied to the financial records that disclosed the taxpayer had netted significant amounts of sales activity from their sales tax returns. The auditor did not accept the taxpayer's worksheets on their claim for refund. Instead, he requested that if all the previously filed tax returns were to be recomputed they should be done using the financial accounting records.

The auditor's reports have recomputed the taxpayer's taxable measure using the financial records made available. An exemption for digital online content was allowed using a nontaxable ratio from a similar business. Regulation 1590 provided a nontaxable ratio effective 10-1-16 that was not used as disclosed above (Staff's Position). The auditor also allowed bad debt credits not previously claimed. In addition, unreported single copy sales were found, and unsupported exempt commercial printing sales were also disclosed in the audit findings. These two additional audit adjustments were previously netted from the taxpayer's sales tax returns.

The auditor's report also resolved all the previous audit findings from the original audit. Here the taxpayer provided records and support for audit adjustments that were previously estimated.

The audit supervisor has worked with Mr. Brad Smith, Chief Financial officer and several tax representatives during these audit cases. Mr. Brad Smith is adamant that a net tax refund is due. The current POA Mr. Randy Ings is also adamant that adjustments are still warranted. However, after numerous meetings and years in process it is time to move these audit cases forward for further internal review and appeal. Mr. Randy Ings, POA has requested a meeting with Crystal Guzman, our Irvine Office Audit Principal (79A).

Please note there is also a related account under Press-Enterprise account 102-501862. This account also has three similar audit cases with similar audit findings. Both accounts should be reviewed and processed together.

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

Transportation Charges

The taxpayer's position statement included two main contentions. First, the taxpayer is of the opinion that 32.02% / 40.36% should be allowed as exempt transportation charges. Second, the taxpayer believes that the transportation ratio allowed in the audit resulted from an unrepresentative sample.

Review of the several files and worksheets presented by the taxpayer disclosed that the taxpayer's first contention is based on a comparison between the total recorded cost of delivery paid to the carriers and the proposed exempt transportation charges. I find it inadequate since it ignored affecting factors, such as noted paid carriers' tips and deliveries of free subscriptions, etc., which should be excluded. Additionally, the taxpayer's newspapers were delivered to subscribers in various cities in southern California. Consequently, it is expected for the actual cost of transporting the newspaper to vary among each distinct delivery areas.

Sales and use tax Regulation 1628 (a) states in part:

"...The amount of transportation charges excluded from the measure of tax shall not exceed the cost of the transportation to the retailer..."

In the worksheets presented by the taxpayer, flat rates of $0.25 or $.027 per newspaper delivery used to compute the proposed exempt transportation charges. I find this computation inadequate, since it will allow deliveries with lower cost (positive markup) to offset deliveries with higher cost (negative markup), which should not be allowed. Moreover, the taxpayer emphasized his analysis on mainly one carrier, where the flat rate of $0.25 was obtained. However, during an early stage of the audit, taxpayer's prior representative provided an invoice from Advertising Consultants, Inc (carrier) dated 12/23/2013, which showed a rate of $0.075 per delivery ($75 for each 1,000), which found to be not in line with the taxpayer's computation. (See exhibit #1)

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

Further, review of the taxpayer's Trial Balance for the audit period, disclosed that the taxpayer provided delivery services for several publications published by others, such as LA Times and TV Weekly (See exhibit #2). In addition, the taxpayer produced and published many free populations (See exhibit #3).

The taxpayer recorded the recognized delivery revenue and associated cost in several General Ledger accounts (See exhibit #3). Therefore, it is reasonable to presume that the such publications were delivered by the same carriers if it were delivered within the same route, where the taxpayer delivered his own newspapers.

The provided worksheets by the taxpayer demonstrated the transportation charges of 32.02% / 40.36% of the total recorded subscription charges. However, worksheets showed major fluctuation (21%-59%) (19.05%-55.16%) of the transportation charges as a ratio of total subscription. Such unexplained major fluctuations questioned the accuracy of the taxpayer's proposal. In addition, the worksheets captured amounts, figures, estimates and unreconciled differences that found to be confusing and captured other irrelevant factors such as recorded tax. Furthermore, the proposed exempt transportation charges are based on estimated subscription revenue net of estimated bad debts, which is a different base from what was computed in the audit.

Sales and use tax Regulation 1628 (a) states in part:

"...Transportation charges will be regarded as "separately stated" only if they are separately set forth in the contract for sale or in a document reflecting that contract, issued contemporaneously with the sale, such as the retailer's invoice..."

Sales and use tax Regulation 1698(c)(1)(A) states in part:

"...Electronic records used to establish tax compliance shall contain sufficient source document (transaction-level) information so that the details underlying the electronic records can be identified and made available to the Board upon request. A taxpayer has discretion to discard duplicated records and redundant information provided the integrity of the audit trail is preserved and the responsibilities under this regulation are met..."

After review of the taxpayer's files and worksheet, it is my opinion that the provided records are missing the required audit trail to the customer's billing, which is mandated by Sales and Use tax Regulation 1628 to support proposed exempt transportation charges.

Regarding the representation of the performed test and the allowed exempt transportation charges ratio, I agree that the Department's fundamental goal is to perform a representative sampling to the ensure that the developed results reflect the entire population. However, in order to perform such representative test, it is important to establish a clearly defined test base and the test base should be representative of the total population of the item being tested and it is essential that a firm sample be established so that a percentage can be computed which is representative of the entire audit period.

Based on the review of the taxpayer's trial balance, the taxpayer did not keep a separate General Ledger account to record transportation charges, which would represent the population to be tested. In addition, the taxpayer was unable to provide an electronic workable download file for the recorded subscription sales in order to perform a stratified statistical sample. In early stage of the audit and due to the complete absence of the renewal notices, the auditor obtained 20 renewals notices from third parties, where an average transportation charge of 19.32% was developed.

Subsequently, the taxpayer provided a batch of 2,003 renewal notices scattered through the entire the period being tested. Consequently, the test was expanded, and a block test of the available first fifty billings on December 12, 2012, October 8, 2013 and April 16, 2015 was performed as a batch sample. The expanded test included 396 transactions, which resulted weighted ratio of 23.71% for exempt transportation charges.

It is my opinion, that the utilized ratio of 23.71% based on the performed batch test is reasonable based on the records made available. If the taxpayer at any time can provide valid and acceptable subscription electronic data download that could be traced to the customer's renewal notices, a stratified statistical sample may be performed.

I recommend no adjustment to the allowed exempt transportation charges in the audit.

Single Copy Sales

Per the taxpayer's position statement, the taxpayer is of the opinion that single copy sales disallowed in the audit should be accepted as valid exempt sales for resale, since the buyers were the retailers of purchased newspaper. In the taxpayer's submission, the taxpayer limited his contentions to the disallowed exempt sales made to:

1.  ACI SC, total of $28,254,
2.  Barrientos, Juan, total of $427,824,
3.  Oleta Distribution, total of $25,413
4.  Orange Coast Distribution, total of $587,309
5.  Pryor Daniel, total of $202,848
6.  Sarti's Distribution, total of $869,074
7.  Venegas Distribution, Inc., total of $42,693

Note: for Sarti's Distribution, the captured name in the audit working papers was as shown in the sales data download provided for the audit purpose.

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

For support, taxpayer provided:  XYZ letter from ACI and contracts for Juan Barrientos, Orange Coast Distribution and Venegas Distribution, Inc
Consequently, my review is emphasized on the sales made to the customers included in the taxpayer's contention.

Review:
1.    Review of the original and amended Sales and Use Tax returns, disclosed that that the taxpayer netted single copy sales off all returns during the audit period.
2.    Taxpayer netted a total of $7,055,639 single copy sales off sales and use tax returns.
3.    A total of $2,216,761 was questioned in the audit. The remaining sales were accepted exempt sales based on the auditor's research.
4.    Review of the provided contracts with Juan Barrientos, Orange Coast Distribution and Venegas Distribution, Inc, found to cover the period of 10/04/2014 through 10/05/2015, which did not cover the entire period under audit.
5.    Contracts found to include many previsions that are normally not to be found in the usual trade contracts (See exhibit # 7, pages 1 through 11), for examples:
a)    Buyer was required to provide the taxpayer a commercial bond, amounts varied by contract
b)    Buyer was required to provide the taxpayer with an evidence of vehicle insurance
c)    Buyer was required to provide the taxpayer (as a Holder) with a comprehensive general commercial liability insurance, with minimum coverage of $1,000,000 in some cases
d)    Final sales price per newspaper was pre-set by the taxpayer
e)    Buyer delivered the newspaper to specific assigned route, where the buyer replaced the newspaper in racks and dispensing machines provided and owned by the taxpayer
Note: taxpayer owned, maintained and operated 1,175 (unverified) newspapers coin dispensing machines through concessionaires and newspaper's carriers (Per Mr. Randy Ings's (POA) email on 06/19/2019)
f)    Buyer was obligated to set of rules mandated by the taxpayer pertaining to picking up, handling, delivery, etc. of the newspaper.
g)    Buyer consented that the taxpayer may but not obligated to bill and collect from outlets for newspapers sold and delivered by the buyer.
Law References.
    California imposes a sales tax on a retailer's retail sales in this state of tangible personal property, measured by the retailer's gross receipts, unless the sale is specifically exempt or excluded from taxation by statute. (R&TC, § 6051.) All of a retailer's gross receipts are presumed subject to tax, unless the retailer can prove otherwise. (R&TC, § 6091.)

Sales and Use Tax Regulation 1667 (a) states in part:
"…IN GENERAL. The law provides that for the purpose of the proper administration of the sales and use tax and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established.
This presumption may be rebutted by the seller as to any sale by establishing to the satisfaction of the Board that the gross receipts from the sale are not subject to the tax or by timely taking a resale certificate as provided in Regulation 1668 or by taking a certificate as provided in this regulation…"

Sales and Use Tax Regulation 1590(a)(6) defines newspaper carrier as:
"…Any person who acquires newspapers from a publisher or distributor to deliver to consumers. The term includes a hawker. A "hawker" is an individual who sells single copies of newspapers to passersby on a street corner or other trafficked area. "Newspaper carrier" does not include persons selling newspapers or periodicals from a fixed place of business..."

Sales and Use Law Section States in par 6015 (c) states in part:
"…(c) Notwithstanding subdivision (b), a newspaper carrier is not a retailer and the retailer is the publisher or distributor for whom the carrier delivers the newspapers. The publisher or distributor is responsible for the tax measured by the price charged to the customer by the carrier…"

Sales and Use Tax Regulation 1590 (b)(6) states in part:
"…NEWSPAPER CARRIERS. A newspaper carrier is not a retailer. The publisher or distributor for whom the carrier delivers is the retailer of the newspapers delivered. The publisher or distributor shall report and pay tax measured by the price charged to the customer by the carrier..."

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

Sales and Use Tax Regulation 1699 (d) defines concessionaries as:

'…For the purposes of this regulation, the term concessionaire is defined as an independent retailer who is authorized, through contract with, or permission of, another retail business enterprise (the prime retailer), to operate within the perimeter of the prime retailer's own retail business premises, which to all intents and purposes appear to be wholly under the control of that prime retailer, and to make retail sales that to the general public might reasonably be believed to be the transactions of the prime retailer. Some indicators that a retailer is not operating as a concessionaire are that he or she:

a)   Appears to the public to be a business separate and autonomous from the prime retailer. Examples of businesses that may appear to be separate and autonomous, while operating within the prime retailer's premises, are those with signs posted on the premises naming each of such businesses, those with separate cash registers, and those with their own receipts or invoices printed with their business name.

b)   Maintains separate business records, particularly with respect to sales.

c)   Establishes his or her own selling prices.

d)   Makes business decisions independently, such as hiring employees or purchasing inventory and supplies.

e)   Registers as a separate business with other regulatory agencies, such as an agency issuing business licenses, the Employment Development Department, and/or the Secretary of State.

f)   Deposits funds into a separate account.

Sales and Use Tax Regulation 1699 (d) states in part:

"…In cases where a retailer is not operating as a concessionaire, the prime retailer is not liable for any tax liabilities of the retailer operating on his or her premises. However, if a retailer is deemed to be operating as a concessionaire, the prime retailer may be held jointly and severally liable for any sales and use taxes imposed on unreported retail sales made by the concessionaire while operating as a concessionaire. Such a prime retailer will be relieved of his or her obligation for sales and use tax liabilities incurred by such a concessionaire for the period in which the concessionaire holds a seller's permit for the location of the prime retailer or in cases where the prime retailer obtains and retains a written statement that is taken in good faith in which the concessionaire affirms that he or she holds a seller's permit for that location with the Board…"

Sales and Use Tax Regulation 1668 (a) states in part:

"…The burden of proving that a sale of tangible personal property is not at retail is upon the seller unless the seller timely takes in good faith a certificate from the purchaser that the property is purchased for resale..."

Based on my review of the provided contracts, it appeared that the disallowed exempt sales to the specific customers were made in part to newspaper's carriers, since the buyer made deliveries to racks and dispensing machines owner by the prime retailer (taxpayer), which are expected to provide newspapers to consumers. In other part, sales were made to concessionaries, since the buyer was not allowed to establish his or her own selling prices, unable to make business decisions independently and did not appear to the public to be a business separate from the prime retailer, since buyer appeared to fulfill pre-established and negotiated sales plans by the prime retailer. Finally, in some cases the buyer allowed the prime retailer to bill and collect from outlets for newspapers sold and delivered by the buyer.  Thus, the requirements in a, c, d and F above were not met. Furthermore, the contracts provided strong indications of the association relationship between the taxpayer and the customers as evidenced by the requirements to provide commercial bonds, proof of vehicle insurance,  proof of comprehensive general commercial liability insurance and consent to bill and collect from outlets for newspapers sold and delivered by the buyer.

1-Questioned exempt sales to ACI amount of $28,254 (Exhibit 8, pages 1and 2)

I researched ACI online, according to the website, ACI provides reliable, predictable, safe, early delivery services every single day of the year. Additionally, I reviewed the XYZ letter signed by ACI Last Mile California, LLC, which stated that they provide publication distribution services, which is consistent with the reviewed website. The XYZ letter deemed to be invalid, since it did not include the required seller's permit number. Upon the auditor's research of the available resources, a seller's permit of the buyer was located, which was active through 09/30/2015 (business closed out). Consequently, the taxpayer was given the benefit of doubt and the questioned sales through 09/30/2015 was accepted as sales for resale. However, questioned sales in 4Q16 and 4Q16, remained unsupported. Based on the available records, it is my opinion that the questioned exempt sales to ACI in 4Q15 and 1Q16 are not supported, since the buyer did not maintain an active seller's permit as prescribed in Regulations 1699 and 1590, and the buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

2-Questioned exempt sales to Juan Barrientos amount of $427,824

I researched the available resources and the Department's system; no record was located to show that Juan Barrientos was a newspaper retailer at any time within the audit period. Additionally, I reviewed the provided contract, which covered

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

the period of 10/04/2014 through 10/05/2015; however, the questioned sales covered the period of 4Q14 though 1Q16. Based on the available records, it is my opinion, the questioned exempt sales to Juan Barrientos are not supported, since the buyer did not maintain an active seller's permit as prescribed in Regulations 1699 and 1590, and the buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

3- Questioned exempt sales to Orange Coast Distribution amount of $587,309
I researched the available resources and the Department's system for Luis Rodas, Orange Coast Distribution and Orange Coast Distribution, Inc., a seller permit was located under Luis Ovidio Rodas, DBA: Orange Coast Distribution; however, the permit was closed out as of 12/31/2012. Upon review of the audit working papers, the questioned exempt sales covered the period of 4Q15 to 1Q16. Based on the available records, it is my opinion, the questioned exempt sales to Orange Coast Distribution are not supported, since the buyer did not maintain an active seller's permit as prescribed in Regulations 1699 and 1590, and the buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

4- Questioned exempt sales to Pryor, Danial, amount of $202,848
I researched the available resources and the Department's system; no record was located to show that Pryor, Daniel was a newspaper retailer at any time within the audit period. Based on the available records, it is my opinion, that the questioned exempt sales to Pryor, Daniel,are not supported, since the buyer did not maintain an active seller's permit as prescribed in Regulations 1699 and 1590, and the buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

5- Questioned exempt sales to Venegas Distribution, Inc., amount of $869,071
I researched the available resources and the Department's system; no record was located to show that Venegas Distribution, Inc was a newspaper retailer at any time within the audit period. Review of the provided contacts found to cover the period of 10/04/2014 through 10/05/2015; however, the questioned exempt sales covered the period of 1Q13 through 1Q16. Based on the available records, it is my opinion, that the questioned exempt sales to Pryor, Danial are not supported, since the buyer did not maintain an active seller's permit as prescribed in Regulations 1699 and 1590, and the buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

6-Questioned exempt sales to Sarti's Distribution
OC Register, amount of $42,693
Press-Enterprise, amount of $244,430
First, as stated in above notes, the spelling of the buyer's name is exactly what was provided in the sales data download provided for the audit. Thus, I am not ordering a change to the customer's name included in the audit working paper. I searched the available resources and the Department system for Sarti, Sarti's Distribution, Inc. and Kenneth Sarti. No record was located to show that Sarti, Sarti's Distribution, Inc. and Kenneth Sarti was a newspaper retailer at any time within the audit period. Based on the available records, it is my opinion, the questioned exempt sales to Sarti's Distribution are not supported, since the buyer did not maintain an active seller's permit as prescribed in Regulations 1699 and 1590, and the buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

7- Questioned exempt sales to Oleta Distribution, amount of $25,413
I researched Oleta Distribution online, which appeared to be a distribution service provider and not a retailer of newspaper in City of San Bernardino. Additionally, I researched the Department system, a seller's permit was located under Isaias Oleta, Oleta' Distribution (097-XXXXXX), which was closed out as of 09/30/215 as business discontinued. Upon review of the questioned exempt sales found to be $5,224, $4,4275, $3,750, $3,977, $3,347 and $4,839 in 4Q14, 1Q15, 2Q15, 3Q15, 4Q15 and 1Q16, respectfully. Since the buyer had a valid seller' permit through 09/30/2015, the taxpayer should be given the benefit of doubt and the questioned exempt sales through 09/30/2015 should be allowed as exempt sales. Questioned exempt sales in 4Q15 and 1Q16 after the close out of the seller's permit remains as unsupported, since buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

I recommend an adjustment to the disallowed exempt sales to Oleta Distribution, by $17,226 in the period of 4Q14 through 3Q15 and adjust the finding related to taxable markup included in the audit accordingly.

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

Commercial Printing

Review of the original and amended Sales and Use Tax returns, disclosed that that the taxpayer netted commercial printing sales off all returns during the audit period, total of $90,640,515:
$ 78,039,736 in the period of 4Q12 through 3Q15
$ 6,239,495 in the period of 4Q15
$ 6,321,432 in the period of 1Q16
Based on the auditor's review, a total of $70,596,203 was accepted as exempt sales as follows:
$ 61,878,517 in the period of 4Q12 through 3Q15
$ 4,536,864 in the period of 4Q15
$ 4,180,802 in the period of 1Q16
The remaining netted off exempt sales were examined through a representative stratified sampling through three categories: customers tested on actual basis, transactions 20K or more, were tested on actual basis and transactions below 20K, were tested through random electronic generator selection.

I reviewed the audit working papers and noted that most of the questioned transactions were related to unsupported exempt sales under Sales and Use Tax Regulations 1541.5, 1590 and 1668.

California imposes a sales tax on a retailer's retail sales in this state of tangible personal property, measured by the retailer's gross receipts, unless the sale is specifically exempted or excluded from taxation by statute. (R&TC, § 6051.) All of a retailer's gross receipts are presumed subject to tax, unless the retailer can prove otherwise. (R&TC, § 6091.)

Sales and Use Tax Regulation 1667 (a) states in part:
"…IN GENERAL. The law provides that for the purpose of the proper administration of the sales and use tax and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established.
This presumption may be rebutted by the seller as to any sale by establishing to the satisfaction of the Board that the gross receipts from the sale are not subject to the tax or by timely taking a resale certificate as provided in Regulation 1668 or by taking a certificate as provided in this regulation…"

Sales and Use Tax Regulation 1668 (a) states in part:
"…The burden of proving that a sale of tangible personal property is not at retail is upon
  the seller unless the seller timely takes in good faith a certificate from the purchaser
  that the property is purchased for resale…"

Sales and Use Tax Regulation 1541.5(c) states in part
"…(c) SUPPORTING DOCUMENTATION. Any seller claiming an exemption for the
  sale of printed sales messages must obtain and retain supporting evidence of the
  delivery of the property.
 (1) Delivery by the Seller. A seller who mails exempt printed sales messages through the
United States Postal Service or by common carrier, should obtain and retain U.S. Postal receipts or bills of lading and obtain and retain a timely exemption certificate, taken in good faith, from the purchaser.
 (2) Delivery by Mailing House as Agent for Purchaser. When the seller of printed sales
    messages delivers the property to a mailing house acting as agent for the purchaser,
    the contract of sale should specify to whom the property was delivered, and the seller
    should obtain and retain a timely exemption certificate, taken in good faith from the
    purchaser.
 (3) A copy of the exemption certificate described in subdivision (c)(1) or (c)(2), accepted
    in good faith, shall relieve the seller from liability for the sales tax for the sale of
    printed sales messages delivered in accordance with subdivisions (b)(2), (b)(3), and
    (b)(10) of this regulation. If the seller fails to deliver the printed sales messages in
    such a manner, the seller will not be relieved from liability for the sales tax, on the
    ground that an exemption certificate was obtained with respect to the transaction.

Sales and Use Tax Regulation 1590(c) states in part:
"…(c) EXEMPTION CERTIFICATES. Any seller claiming a transaction as exempt from sales tax pursuant to Revenue

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

and Taxation Code sections 6362.7 or 6362.8 should timely obtain an exemption certificate in writing from the purchaser. The exemption certificate will be considered timely if obtained by the seller at any time before the seller bills the purchaser for the property, or any time within the seller's normal billing and payment…"

Furthermore, I reviewed the auditor's comments, exhibits attached to the audit in CROS, and the records including within the taxpayer's submission. My review disclosed that the disallowed exempt printed sales messages transactions were items excluded from the printing sales message definition or the taxpayer did not maintain the required supporting evidence of the delivery of the property per Sales and Use Tax Regulation 1541.5. Further, in other transactions, the provided records found to be invalid to support the exemption under Sales and Use Tax Regulations 1590 and 1668. For example (See exhibit 5, pages 1 through 8):
Schedule 12Q-2R2
1. Exemption certificate under regulation 1590 dated 01/07/2019, issued from Christian Business & Professional Directory Inc. to SCNG, taxpayer's successor (Page 1)
2. Resale certificate under regulation 1668, dated 04/18/2019 (after close out date), issued from EMPI, Inc. to Freedom Printing (Page 2)
Schedule 12Q-7R2
3. Self-serving notes regarding questioned exempt sales to South Bay Digs, lines 94 and 95 (Page 3)
Incomplete / blank packing slips regarding questioned exempt sales to Fine Community Phone Books, Inc. (Note: only disallowed 50% taxable for estimated white pages (Annotation 432.0161) (Page 4 and 5)
Schedule 12Q-5R2
4. Invalid resale certificate dated 10/23/2018 issued by Paladin Multi-Media Group, Inc. (not the buyer) to SCNG, taxpayer's successor (Page 6)
5. Invalid exemption certificate (B) under regulation 1590 dated 11/11/2018 issued by Student Traveler to SCNG, taxpayer's successor (Page 7)
6. Invalid exemption certificate (B) under regulation 1590 dated 11/01/2018 issued by Eric Neff to SCNG, taxpayer's successor (Not: account listed started on 01/05/2017) (Page 8)
In the taxpayer's submission, it is indicated that they are working to gather additional supporting documents that may support the presented contentions.
Based on the available records, it is my opinion that the audit's recommendation is based on the best available records to date; no adjustment is warranted at this point. If any additional records become available on a later date, it may be presented for our review and consideration through the appeal process.

Newspaper in Education

Review of the original and amended Sales and Use Tax returns, disclosed that the taxpayer netted newspaper in education sales off all returns during the audit period. The audit recommendation kept the recorded newspaper in education subscription in the subscription sales, which were taxed at prorated ratio. I reviewed the taxpayer's submission along with the exhibits, which included several screenshots of the taxpayer's archived website. These screenshots demonstrated that newspapers in education included only online access to the enrolled students. Additionally, I reviewed the records presented to the auditor during the audit, which included a PowerPoint and few screenshots. The auditor was unable to verify the actual dates of such materials and it appeared to be recently re-constructed for the audit purpose. Additionally, the taxpayer provided detail PBS report (subscription revenue report) for the month of August 2015, which was found to include several comments indicated that such subscription included paper subscription donated by the subscribers for different reasons. Additionally, the provided PowerPoint stated that printed editions were limited only to certain delivery days of the week in the past. Further, in response to the auditor's request to provide a complete audit trail that could be traced to the transaction level, Mr. Randy Ings (POA), stated that it will most likely take him considerably more time to obtain additional detail from the PBS system; however, he did not believe it would provide any additional relevant information. Based on the available records, it is my opinion that the newspapers in education include both printed and digital subscriptions. Since the taxpayer is unable to provide a detail audit trail required for the recorded newspaper in education, (See exhibit #4).
I recommend including the recorded newspaper in education sales with the other recorded subscription sales for the audit purpose.

Allowance of Digital Subscription

The taxpayer's submission included several disagreements to the audit's recommendation, which can be itemized as

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

follow:

1. Taxpayer requested the allowed digital subscription ratio to be computed of total subscription ex-tax not on ex-tax and transportation as recommended in the audit

2. Taxpayer requested to use 53% to develop digital subscription ratio instead of 41% allowed in the audit

3. Taxpayer requested to use 53% to develop digital subscription ratio in 4Q16 and 1Q13

4. Taxpayer disagrees with the allowed exempt transportation ratio in the audit

5. Taxpayer will be likely to argue at later date that the taxpayer is entitled to an allocation in excess of 53% of sales revenue to digital sales

6. Taxpayer contends, the Department computation did not include warranted adjustment for bad debts

7. Taxpayer contends, the Department failed to exclude the Newspaper in Education as being entirely digital from its computation

In the below section, I will discuss the taxpayer's contentions

1. The taxpayer requested the allowed digital subscription ratio to be computed of total subscription ex-tax, not on ex-tax, and transportation as recommended in the audit. The taxpayer's submission included documentation indicated that the Department Tax Policy Division is currently working with the California Newspaper Publishers Association to propose an amendment to the Sales and Use Tax Regulation 1590. Consequently, the proposed amendment to the Regulation does not provide legal basis for an adjustment at this time until the regulation revision is adopted by California State Legislature.

2. The taxpayer requested to use 53% to develop digital subscription ratio instead of 41% allowed in the audit. The taxpayer's request is based on the suggested ratio per the amended Sales and Use Tax Regulation 1590

Sales and Use Tax Regulation 1590(b)(3(B)(1) states in part:

"…For sales of mixed newspaper subscriptions made on and after October 1, 2016,
 forty-seven (47) percent of the charge for the mixed newspaper subscription is presumed
 to be the taxable measure from the sale of tangible personal property and tax applies to
 that amount; the remaining fifty-three (53) percent is presumed to be the nontaxable sale
 of the right to access the digital content…"

Since the periods under audit are prior to the Regulation effective date, I believe the Regulation may not rely upon to develop the digital newspaper subscription ratio to total sale.

I reviewed a considerable number of the renewal notices over the audit periods, which should have provided a direct evidence of the taxpayer's argument. However, all the reviewed renewal notices were silent regarding the digital subscription as being mixed with hard copy subscription. The only exception to that was two renewal notices included in the taxpayer' submission.

California imposes a sales tax on a retailer's retail sales in this state of tangible personal property, measured by the retailer's gross receipts, unless the sale is specifically exempt or excluded from taxation by statute. (R&TC, § 6051.) All of a retailer's gross receipts are presumed subject to tax, unless the retailer can prove otherwise. (R&TC, § 6091.)

Per the auditor's notes, I see that the auditor made several attempted to perform  representative testing to determine the digital newspaper subscription ratio to total sale, however, the provided records (renewal notices) were incomplete, not representative, and unreliable to perform a representative test.

I noted that the taxpayer filed several claims for refund related to allocation of the digital newspaper subscription in the amount of $6,039,095 in tax for the period of 4Q12 through 1Q16 ($1,132,532 in tax for the period of 4Q13 through 1Q16). At this point, it is my opinion that the taxpayer is unable to provide a complete audit trail that could be traced to source document at transaction level to substantiate such large tax refund.

It is reasonably expected that the number of people who have used a digital subscription have gradually increased through the period under audit to reach the 53% ratio per the regulation after 10/01/2016. Due to the condition and the availability of the taxpayer's books and records, it is my opinion that the estimated 41% allocated to exempt digital subscriptions based on an actual detail audit of a southern California newspaper publisher as a competitor is reasonable. I recommend no further adjustment to the audit's recommendation.

3. Based on the records made available to date, the taxpayer did not provide a complete audit trail that could be traced to the source document at the transaction level to enable the Department to validate the taxpayer contention. I agree with staff's recommendation regarding subscription sales in 4Q12 and 1Q13

4. For the disagreement related to allowed exempt transportation ratio, I recommend no adjustment to the allowed exempt transportation charges in the audit. For details, see transportation charges section above.

5. Regarding the taxpayer potential future argument that the taxpayer is entitled to an allocation in excess of 53% of sales revenue to digital sales, a review and consideration will be given upon presented.

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

6. For subscription bad debts, I noticed the computation of taxable subscription sales did not include an adjustment for bad debts. However, the audit recommendation included a separate adjustment as allowed taxable bad debts of subscription sales. Thus, I do not recommend further adjustment to allowed bad debts in the audit.
7. Regarding the recorded newspapers in education, I recommend including the recorded newspapers in education sales with the other recorded subscription sales for the audit purpose. For detail, see newspaper in education section above.

Summary of recommended adjustments:
Single copy sales:
I recommend an adjustment to the disallowed exempt sales to Oleta Distribution, by $17,226 in the period of 4Q14 through 3Q15 and adjust the finding related to taxable markup included in the audit accordingly.

This case includes multiple legal arguments and with the potential revision of Sales and Use Tax Regulation 1590, taxpayer is encouraged to pursue his contentions before the next level of appeal. The complete package of the taxpayer's submission along with all exhibits are uploaded in the system for consideration at the next level of appeal.

---

DECISION

Return Audit to Field
Taxpayer does not concur.  Basis for objection to disputed item(s) is Listed above.

| AUDIT PRINCIPAL *(name)* | DATE |
|---|---|
| Crystal Guzman | 09/30/2020 |

AUDIT PRINCIPAL SIGNATURE *(required on copy to taxpayer)*

CDTFA-836-A REV. 7 (7-17)
**REPORT OF DISCUSSION OF AUDIT FINDINGS**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF
TAX AND FEE ADMINISTRATION

| OWNER | ACCOUNT NUMBER | DATE OF REPORT |
|---|---|---|
| *FREEDOM COMMUNICATIONS HOLDINGS, INC* | 102501862 | 09/29/2020 |

| DBA | CASE ID |
|---|---|
| PRESS-ENTERPRISE | A63522 |

| REPRESENTED BY | Randy Ing & Jonathan Amitrano, POA |
|---|---|

| CDTFA REPRESENTED BY | AUDITOR | DISCUSSION DATE |
|---|---|---|
| Crystal Guzman | Hatem Kassem | 07/27/2020 |

| AUDIT PERIOD | PRIOR AUDIT THROUGH | STARTING DATE | SUPERVISOR |
|---|---|---|---|
| 12/31/2013-9/30/2015 | | 11/21/2013 | Victor Guillen |

| AUDIT STATUS | Petition on File |
|---|---|

GENERAL INFORMATION

Taxpayer filed timely petition for the liability determined on 04/15/2016. Additionally, taxpayer filed amended sales and use tax returns and claim for refunds covering the period of 11/21/2013 through 09/30/2015. The petition and the claim for refunds were forwarded to Irvine office for review and consideration.

This Re-audit case A63522,  covers the period of 11/21/2013 - 09/30/2015

| AUDIT TYPE | Audit |
|---|---|

| PROTESTED MEASURE OF TAX | AGREE | DISAGREE | NON-COMMITTAL | AMOUNT |
|---|---|---|---|---|
| UNREPORTED TAXABLE MEASURE FROM DISALLOWED RECORDED DEBITS ADJUSTMENT ENTRIES - AUDIT PERIOD - R2 | X | | | $0.00 |
| Over-Recorded Taxable Sales From PBS System-Subscription Sales / 1St Re-Audit Based on a Percentage | | X | | -$2,260,473.00 |
| UNREPORTED TAXABLE SALES FROM DISALLOWED RECORDED DEBITS ADJUSTMENT ENTRIES - AUDIT PERIOD - R2 | X | | | $0.00 |
| Unreported Photo Reprint Revenue Actual Basis | X | | | $4,611.00 |
| Total Allowed Taxable Bad Debts Subscription Sales / 1St Re-Audit Based on Test Period Percentages | | X | | -$345,506.00 |
| UNSUPPORTED MISCELLANEOUS INCOME POSTED TO General Ledger 17000 - R2 Actual Basis | X | | | $5,693.00 |
| Total Disallowed Recorded Exempt Single Copy Sales Based on Data Download and General Ledger Amounts - Actual Basis | | X | | $1,165,797.00 |
| Unreported Taxable Sales From Single Copy | | X | | $937,678.00 |

CDTFA-836-A REV. 7 (7-17)
mL0309-4

| | | |
|---|---|---|
| Sales Markup Sold through Concessionaires / Newspaper's Carriers Per Regulations 1590(b)(6) and 1699(d) Based on a Weighted Markup Factor | | |
| RECORDED AND REPORTED TAXABLE MEASURE - R2 Actual Basis | X | $0.00 |
| Ex-Tax Cost Of Consumable Supplies Subject To Tax Per 1St Re-audit - R2 | X | $99,931.00 |

---

## TAXPAYER'S CONTENTIONS

The taxpayer presented his contentions in four separate statements, that are attached to this report. The taxpayer's four separate contentions may be summarized as follow:

1. Taxpayer disagrees with the allowed ratio in the audit for exempt transportation changes under Sales and Use Tax Regulation 1628
2. Taxpayer disagrees with the disallowed recorded exempt single copy sales
3. Taxpayer disagrees with the tax application of Register in Education (NIE) sales
4. Taxpayer disagrees with the prorated ratio of digital subscription utilized in the audit under Sales and Use Tax Regulation 1590

---

## STAFF'S POSITION

1. Taxpayer did not maintain financial records or general ledger account to record separately itemized transportat

STAFF'S POSITION

ion charges pertained to newspaper delivered.

Sales and use tax Regulation 1628 states in part:

"...Transportation charges will be regarded as "separately stated" only if they are separately set forth in the contract for sale or in a document reflecting that contract, issued contemporaneously with the sale, such as the retailer's invoice..."

Taxpayer provided a worksheet that demonstrated the transportation charges of 30% of the total recorded subscription charges. Review of the taxpayer's worksheet disclosed major fluctuation (21%-59%) of the transportation charges as a ratio of total subscription. Additionally, the worksheet is based on establishing exempt freight out charges based on total payments made to the delivery vendors not on the separately stated freight charges on the customer billings as instructed per sales and use tax Regulation 1628. Furthermore, worksheets provided found to be confusing and captured other irrelevant factors such as recorded tax, single copy sales, sales made by related entity (Press-Enterprise) and did not provide a complete audit trail to the customer's billings.

Thus, auditor attempted to perform a statistical sample test to compute the transportation charges included in the subscription revenue. However, the provided renewal notices by the taxpayer, found to be incomplete, not representative, and unreliable to perform a representative test. In order to perform a representative test, it is important to establish a clearly defined test base and the test base should be representative of the total population of the item being tested and it is important that a firm sample be established so that a percentage can be computed which is representative of the entire audit period, which was not available in this audit. In consideration of the taxpayer's available records, auditor reviewed the first fifty billings on December 12, 2012, October 8, 2013 and April 16, 2015 and emphasized the test to include 7-days and one-day subscribers since they represented 89% of the total subscribers during the test. An estimated weighted separately stated transportation ratio of 25.78% developed for the period through 03/31/2013 and ratio of 21.43% developed for the period after 03/31/2013. Both developed ratio(s) utilized in the audit to estimate exempt transportation charges under Regulation 1628.

2.   Taxpayer netted the recorded single copy sales off the sales and use tax returns for the audit period and did not maintain valid resale cards to support the recorded exempt sales of single copy newspaper as required by the Sales and Use Tax Regulation 1668.

Sales and Use Tax Regulation1668 (a) states in part:

"…The burden of proving that a sale of tangible personal property is not at retail is upon the seller unless the seller timely takes in good faith a certificate from the purchaser that the property is purchased for resale..."

In consideration of the condition of the available records, auditor utilized all the available resources to verify the resale status of the questioned sales. Remained unsupported sales in the audit were made to unverified newspapers retailers. Thus, no further adjustment is warranted.  It should be noted that this taxpayer owned, maintained and operated 1,175 (unverified) newspapers coin dispensing machines through concessionaires and newspaper's carriers (Per Mr. Randy Ings's (POA) email on 06/19/2019)

3.   Recorded RIE revenue (Register in Education), taxpayer contented that the entire revenue was related digital subscription only. Taxpayer provided a PowerPoint and few screen shots. Upon review, auditor was unable to verify the actual dates of such materials and it appeared to be recently re-constructed for the audit purpose. Additionally, taxpayer provided few emails pertaining to customer's login assistance. Review of such emails revealed that the teachers had access to digital subscription for educations purposes.

Further review of the additional documentation provided by the taxpayer such as detail PBS report for the month of August 2015, found to include several comments indicated that such subscription included paper subscription donated by the subscribers for different reasons (see RIE Exhibit page 1). Additionally, page 12 of the PowerPoint provided by the taxpayer stated that printed editions were limited only to certain delivery days of the week in the past (see RIE Exhibit page 2). Furthermore, online research of the Newspaper in Education disclosed that both of the taxpayer's entities (Orange County Register and Press-Enterprise) participated in the RIE program (see RIE Exhibit page 3) and the participation in the electronic subscription was along with the print edition of the newspaper through the school year. (See RIE Exhibit page 4).

On 06/11/2019, Mr. Randy Ings (POA), stated that it will most likely takes him considerably more time to obtain additional detail from the PBS system, however, he did not believe it would provide any additional relevant information.

4.   Auditor attempted to conduct a statistical sample test to determine the newspaper digital subscription in the total newspaper subscription revenue. However, the provided renewal notices by the taxpayer, found to be incomplete, not representative, and unreliable to perform a representative test. In order to perform a representative test, it is important to establish a clearly defined test base and the test base should be representative of the total population of the item being tested and it is important that a firm sample be established so that a percentage can be computed which is representative of the entire audit period, which was not available in this audit.

Additionally, auditor reviewed large volume of renewal notices provided by the taxpayer, which found to be silent regarding digital subscription.

The taxpayer's contention related to exempt digital subscription (mixed) sales was discussed in detail with Mr. Victor

STAFF'S POSITION

Guillen, CPA, STAII, who recommended the following adjustments:
Based on the Wikipedia history of online content and the taxpayer's website snapshots:
Period of October 1, 2012 through March 31, 2013, no adjustment allowed for digital subscriptions. Sales deemed to be entirely taxable.
Period of April 1, 2013 through September 30, 2015, an estimate of 41% exemption for digital subscription is allowed per an audit of a competitor taxpayer case A46651
Period of October 1, 2015 through March 31, 2016, an estimate of 41% exemption for digital subscription is allowed per an audit of a competitor taxpayer case A46651
This recommendation represents an estimate based on the best available information to date. No further adjustment is warranted.
The taxpayer's contention is based on the amended Sales and Use Tax Regulation 1590 with proposed allocating 53% of the total mixed subscription sales as digital for the periods after 10/01/2016. Since this case covered the period of 11/21/2013 through 09/30/2015 (before the effective date of the amended regulation 1590), further examination was warranted to establish the newspaper digital subscription ratio in the total newspaper subscription revenue. The provided renewal notices by the taxpayer found to be incomplete, not representative, and unreliable to perform a representative test, however an estimated of 41% as digital subscription ratio was allowed for the periods after 03/31/2013. This recommendation represents an estimate based on the best available information to date. No further adjustment is warranted


Audit Supervisor Comments:
This account (102-501862) includes three related audit cases. The audit assignments started with a routine audit case on Press-Enterprise. During the audit assignment the taxpayer filed for bankruptcy (@10-31-15). At this time the auditor was directed by the BK Section to complete the audit assignment immediately using the best available information to date. This directive was issued to establish a tentative tax liability for BK filing claim purposes. The auditor followed this instruction and completed his audit case through 9-30-15 using estimates from partial records received. This audit was completed and billed as non-concurred.
The taxpayer then filed a timely petition for redetermination based upon these estimated audit findings. The petition case established this Reaudit case under account 102-501862.
Shortly, after filing the petition for redetermination the taxpayer filed amended tax returns for all previously filed tax returns subject to the open statute period. HQ did not accept the amended tax returns but were in fact treated as claims for refunds for the Reaudit period and post Reaudit period.
In addition, during the Reaudit process it was disclosed that the taxpayer had sold their assets in a bulk sales transaction including many related companies and closed this permit @3-31-16.
Therefore, at this point the auditor had three related audit cases under this permit (102-501862).
Reaudit case A63522 11-21-13 to 9-30-15
FBO Pre-Petition BK case A47138 10-1-15 to 10-31-15
FBO Post-Petition BK case A1058 11-1-15 to 3-31-16
This Audit Disagreement Case relates to 1673780
All three audit cases have similar audit findings and are driven from the Reaudit report where the auditor has recalculated the taxpayer's taxable measure using accounting data that can be traced to the taxpayer's financial records.
The claim for refunds related to the exemption available for digital online content via mixed newspaper subscriptions under Regulation 1590 (citing Dell Court Case). Here the taxpayer provided worksheets claiming a refund for most of tax previously paid on their tax returns. These worksheets were unsupported and not tied to the financial records that disclosed the taxpayer had netted significant amounts of sales activity from their sales tax returns. The auditor did not accept the taxpayer's worksheets on their claim for refund. Instead, he requested that if all the previously filed tax returns were to be recomputed they should be done using the financial accounting records.
The auditor's reports have recomputed the taxpayer's taxable measure using the financial records made available. An exemption for digital online content was allowed using a nontaxable ratio from a similar business. Regulation 1590 provided a nontaxable ratio effective 10-1-16 that was not used as disclosed above (Staff's Position). The auditor also allowed bad debt credits not previously claimed. In addition, unreported single copy sales were found that were previously netted from the taxpayer's sales tax returns.
The auditor's report also resolved all the previous audit findings from the original audit. Here the taxpayer provided records and support for audit adjustments that were previously estimated.
The audit supervisor has worked with Mr. Brad Smith, Chief Financial officer and several tax representatives during these audit cases. Mr. Brad Smith is adamant that a net tax refund is due. The current POA Mr. Randy Ings is also adamant that adjustments are still warranted. However, after numerous meetings and years in process it is time to move these

STAFF'S POSITION

audit cases forward for further internal review and appeal. Mr. Randy Ings, POA has requested a meeting with Crystal Guzman, our Irvine Office Audit Principal (79A).

Please note there is also a related account under Orange County Register account 024-086069. This account also has three similar audit cases with similar audit findings. Both accounts should be reviewed and processed together.

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

Transportation Charges

The taxpayer's position statement included two main contentions. First, the taxpayer is of the opinion that 32.02% / 40.36% should be allowed as exempt transportation charges. Second, the taxpayer believes that the transportation ratio allowed in the audit resulted from an unrepresentative sample.

Review of the several files and worksheets presented by the taxpayer disclosed that the taxpayer's first contention is based on a comparison between the total recorded cost of delivery paid to the carriers and the proposed exempt transportation charges. I find it inadequate since it ignored affecting factors, such as noted paid carriers' tips and deliveries of free subscriptions, etc., which should be excluded. Additionally, the taxpayer's newspapers were delivered to subscribers in various cities in southern California. Consequently, it is expected for the actual cost of transporting the newspaper to vary among each distinct delivery areas.

Sales and use tax Regulation 1628 (a) states in part:

"...The amount of transportation charges excluded from the measure of tax shall not exceed the cost of the transportation to the retailer..."

In the worksheets presented by the taxpayer, flat rates of $0.25 or $.027 per newspaper delivery used to compute the proposed exempt transportation changes. I find this computation inadequate, since it will allow deliveries with lower cost (positive markup) to offset deliveries with higher cost (negative markup), which should not be allowed. Moreover, the taxpayer emphasized his analysis on mainly one carrier, where the flat rate of $0.25 was obtained. However, during an early stage of the audit, taxpayer's prior representative provided an invoice from Advertising Consultants, Inc (carrier) dated 12/23/2013, which showed a rate of $0.075 per delivery ($75 for each 1,000), which found to be not in line with the taxpayer's computation. (See exhibit #1)

Further, review of the taxpayer's Trial Balance for the audit period, disclosed that the taxpayer provided delivery services for several publications published by others, such as LA Times and TV Weekly (See exhibit #2). In addition, the taxpayer produced and published many free populations (See exhibit #3).

The taxpayer recorded the recognized delivery revenue and associated cost in several General Ledger accounts (See exhibit #3). Therefore, it is reasonable to presume that the such publications were delivered by the same carriers if it were delivered within the same route, where the taxpayer delivered his own newspapers.

The provided worksheets by the taxpayer demonstrated the transportation charges of 32.02% / 40.36% of the total recorded subscription charges. However, worksheets showed major fluctuation (21%-59%) (19.05%-55.16%) of the transportation charges as a ratio of total subscription. Such unexplained major fluctuations questioned the accuracy of the taxpayer's proposal. In addition, the worksheets captured amounts, figures, estimates and unreconciled differences that found to be confusing and captured other irrelevant factors such as recorded tax. Furthermore, the proposed exempt transportation charges are based on estimated subscription revenue net of estimated bad debts, which is a different base from what was computed in the audit.

Sales and use tax Regulation 1628 (a) states in part:

"...Transportation charges will be regarded as "separately stated" only if they are separately set forth in the contract for sale or in a document reflecting that contract, issued contemporaneously with the sale, such as the retailer's invoice..."

Sales and use tax Regulation 1698(c)(1)(A) states in part:

"...Electronic records used to establish tax compliance shall contain sufficient source document (transaction-level) information so that the details underlying the electronic records can be identified and made available to the Board upon request. A taxpayer has discretion to discard duplicated records and redundant information provided the integrity of the audit trail is preserved and the responsibilities under this regulation are met..."

After review of the taxpayer's files and worksheet, it is my opinion that the provided records are missing the required audit trail to the customer's billing, which is mandated by Sales and Use tax Regulation 1628 to support proposed exempt transportation charges.

Regarding the representation of the performed test and the allowed exempt transportation charges ratio, I agree that the Department's fundamental goal is to perform a representative sampling to the ensure that the developed results reflect the entire population. However, in order to perform such representative test, it is important to establish a clearly defined test base and the test base should be representative of the total population of the item being tested and it is essential that a firm sample be established so that a percentage can be computed which is representative of the entire audit period. Based on the review of the taxpayer's trial balance, the taxpayer did not keep a separate General Ledger account to record transportation charges, which would represent the population to be tested. In addition, the taxpayer was unable to

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

provide an electronic workable download file for the recorded subscription sales in order to perform a stratified statistical sample. In early stage of the audit and due to the complete absence of the renewal notices, the auditor obtained 20 renewals notices from third parties, where an average transportation charge of 19.32% was developed.

Subsequently, the taxpayer provided a batch of 2,003 renewal notices scattered through the entire the period being tested. Consequently, the test was expanded, and a block test of the available first fifty billings on December 12, 2012, October 8, 2013 and April 16, 2015 was performed as a batch sample. The expanded test included 396 transactions, which resulted weighted ratio of 23.71% for exempt transportation charges.

It is my opinion, that the utilized ratio of 23.71% based on the performed batch test is reasonable based on the records made available. If the taxpayer at any time can provide valid and acceptable subscription electronic data download that could be traced to the customer's renewal notices, a stratified statistical sample may be performed.

I recommend no adjustment to the allowed exempt transportation charges in the audit.

Single Copy Sales

Per the taxpayer's position statement, the taxpayer is of the opinion that single copy sales disallowed in the audit should be accepted as valid exempt sales for resale, since the buyers were the retailers of purchased newspaper. In the taxpayer's submission, the taxpayer limited his contentions to the disallowed exempt sales made to:
1.   Sarti's Distribution, total of $869,074
2.   Isaias Oleta, total of $76,371
3.   CIPS Marketing Group, Inc., total of $65,639
Note: for Sarti's Distribution and Isaias Oleta, the captured names in the audit working papers were as shown in the sales data download provided for the audit purpose.
For support, the taxpayer provided contracts for: Carla Adamson, Gregory (Ray) Harrison and Isaias Oleta.
Consequently, my review is emphasized on the sales made to the customers included in the taxpayer's contention.

Review:
The contract with Carla Adamson, expired on 09/28/2011, prior to the audit period and appeared to be with the taxpayer's predecessor
Contract with Gregory (Ray) Harrison, contract expired on 04/04/2011, prior to the audit period and appeared to be with the taxpayer's predecessor
John Lopez, contract covered period of 05/11/2011 through 05/31/2014; the contract did not cover the entire audit period and appeared to be with the taxpayer's predecessor.

Law reference.
    California imposes a sales tax on a retailer's retail sales in this state of tangible personal property, measured by the retailer's gross receipts, unless the sale is specifically exempt or excluded from taxation by statute. (R&TC, § 6051.) All of a retailer's gross receipts are presumed subject to tax, unless the retailer can prove otherwise. (R&TC, § 6091.)

Sales and Use Tax Regulation 1667 (a) states in part:
"…IN GENERAL. The law provides that for the purpose of the proper administration of the sales and use tax and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established.
This presumption may be rebutted by the seller as to any sale by establishing to the satisfaction of the Board that the gross receipts from the sale are not subject to the tax or by timely taking a resale certificate as provided in Regulation 1668 or by taking a certificate as provided in this regulation…"

Sales and Use Tax Regulation 1590(a)(6) defines newspaper carrier as:
"…Any person who acquires newspapers from a publisher or distributor to deliver to consumers. The term includes a hawker. A "hawker" is an individual who sells single copies of newspapers to passersby on a street corner or other trafficked area. "Newspaper carrier" does not include persons selling newspapers or periodicals from a fixed place of business..."

Sales and Use Law Section States in par 6015 (c) states in part:
"…(c) Notwithstanding subdivision (b), a newspaper carrier is not a retailer and the retailer is the publisher or distributor for whom the carrier delivers the newspapers. The publisher or distributor is responsible for the tax measured by the price charged to the customer by the carrier…"

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

Sales and Use Tax Regulation 1590 (b)(6) states in part:
"…NEWSPAPER CARRIERS. A newspaper carrier is not a retailer. The publisher or distributor for whom the carrier delivers is the retailer of the newspapers delivered. The publisher or distributor shall report and pay tax measured by the price charged to the customer by the carrier..."

Sales and Use Tax Regulation 1699 (d) defines concessionaries as:
'…For the purposes of this regulation, the term concessionaire is defined as an independent retailer who is authorized, through contract with, or permission of, another retail business enterprise (the prime retailer), to operate within the perimeter of the prime retailer's own retail business premises, which to all intents and purposes appear to be wholly under the control of that prime retailer, and to make retail sales that to the general public might reasonably be believed to be the transactions of the prime retailer. Some indicators that a retailer is not operating as a concessionaire are that he or she:
g)    Appears to the public to be a business separate and autonomous from the prime retailer. Examples of businesses that may appear to be separate and autonomous, while operating within the prime retailer's premises, are those with signs posted on the premises naming each of such businesses, those with separate cash registers, and those with their own receipts or invoices printed with their business name.
h)    Maintains separate business records, particularly with respect to sales.
i)    Establishes his or her own selling prices.
j)    Makes business decisions independently, such as hiring employees or purchasing inventory and supplies.
k)    Registers as a separate business with other regulatory agencies, such as an agency issuing business licenses, the Employment Development Department, and/or the Secretary of State.
l)    Deposits funds into a separate account.

Sales and Use Tax Regulation 1699 (d) states in part:
"…In cases where a retailer is not operating as a concessionaire, the prime retailer is not liable for any tax liabilities of the retailer operating on his or her premises. However, if a retailer is deemed to be operating as a concessionaire, the prime retailer may be held jointly and severally liable for any sales and use taxes imposed on unreported retail sales made by the concessionaire while operating as a concessionaire. Such a prime retailer will be relieved of his or her obligation for sales and use tax liabilities incurred by such a concessionaire for the period in which the concessionaire holds a seller's permit for the location of the prime retailer or in cases where the prime retailer obtains and retains a written statement that is taken in good faith in which the concessionaire affirms that he or she holds a seller's permit for that location with the Board…"

Sales and Use Tax Regulation 1668 (a) states in part:
"…The burden of proving that a sale of tangible personal property is not at retail is upon the seller unless the seller timely takes in good faith a certificate from the purchaser that the property is purchased for resale..."

Based on my review of the provided contracts, it appeared that the disallowed exempt sales to the specific customers were made in part to newspaper's carriers, since the buyer made deliveries to racks and dispensing machines owner by the prime retailer (taxpayer), which are expected to provide newspapers to consumers. In other part, sales were made to concessionaries, since the buyer was not allowed to establish his or her own selling prices, unable to make business decisions independently and did not appear to the public to be a business separate from the prime retailer, since buyer appeared to fulfill pre-established and negotiated sales plans by the prime retailer. Finally, in some cases the buyer allowed the prime retailer to bill and collect from outlets for newspapers sold and delivered by the buyer.  Thus, the requirements in a, c, d and F above were not met. Furthermore, the contracts provided strong indications of the association relationship between the taxpayer and the customers as evidenced by the requirements to provide commercial bonds, proof of vehicle insurance,  proof of comprehensive general commercial liability insurance and consent to bill and collect from outlets for newspapers sold and delivered by the buyer. (See exhibit 7, pages 1 through 11)

1-Questioned exempt sales to Sarti's Distribution, amount of $244,430
First, as stated in above notes, the spelling of the buyer's name is exactly what was provided in the sales data download for the audit. Thus, I am not ordering a change to the customer's name included in the audit working paper. I searched the available resources and the Department system for Sarti, Sarti's Distribution, Inc. and Kenneth Sarti. No record was located to show that Sarti, Sarti's Distribution, Inc. and Kenneth Sarti was a newspaper retailer at any time within the audit period. Based on the available records, it is my opinion, the questioned exempt sales to Sarti's Distribution are not supported, since the buyer did not maintain an active seller's permit as prescribed in Regulations 1699 and 1590, and the

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

2- Questioned exempt sales to Isaias Oleta, amount of $76,371

I researched Oleta Distribution and Isaias Oleta online, which appeared to be a distribution service provider and not a retailer of newspaper in City of San Bernardino. Additionally, I researched the Department's system, a seller's permit was located under Isaias Oleta, Oleta's Distribution (97-XXXXX), which was closed out as of 09/30/215 as business discontinued. Upon review of the questioned exempt sales, the audit findings included only the transactions after the close out date of 09/30/2015. Questioned exempt sales in 4Q15 and 1Q16 after the close out of the seller's permit remains as unsupported, since buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699.

3- Questioned exempt sales to CIP Marketing, amount of $65,639

I researched CIP Marketing Group online; no record located to show that CIP Marketing was a newspaper retailer at any time during the audit. Additionally, I searched the Department's system, a consumer use tax account was located, however, it was closed as of 12/31/2010. Additionally, I reviewed exhibits 12 and 13 in the Representative submission, which indicated the ACI Last Mile acquired CIP Marketing Group on 07/17/2017, which was after the audit period. Thus, the XYZ letter signed by ACI Last Mile is not valid to support the questioned exempt sales prior the acquisition date. Based on the available records, it is my opinion that the questioned exempt sales to CIP Marketing Group are not supported, since the buyer did not maintain an active seller's permit as prescribed in Regulations 1699 and 1590, and the buyer deemed to be a newspaper's carrier under Regulation 1590 and or concessionaire of the taxpayer (prime retailer) under Regulation 1699. (See exhibit 8, pages 1&2)


Newspaper in Education


Review of the original and amended Sales and Use Tax returns, disclosed that the taxpayer netted newspaper in education sales off all returns during the audit period. The audit recommendation kept the recorded newspaper in education subscription in the subscription sales, which were taxed at prorated ratio. I reviewed the taxpayer's submission along with the exhibits, which included several screenshots of the taxpayer's archived website. These screenshots demonstrated that newspapers in education included only online access to the enrolled students. Additionally, I reviewed the records presented to the auditor during the audit, which included a PowerPoint and few screenshots. The auditor was unable to verify the actual dates of such materials and it appeared to be recently re-constructed for the audit purpose. Additionally, the taxpayer provided detail PBS report (subscription revenue report) for the month of August 2015, which was found to include several comments indicated that such subscription included paper subscription donated by the subscribers for different reasons. Additionally, the provided PowerPoint stated that printed editions were limited only to certain delivery days of the week in the past. Further, in response to the auditor's request to provide a complete audit trail that could be traced to the transaction level, Mr. Randy ings (POA),  stated that it will most likely take him considerably more time to obtain additional detail from the PBS system; however, he did not believe it would provide any additional relevant information. Based on the available records, it is my opinion that the newspapers in education include both printed and digital subscriptions. Since the taxpayer is unable to provide a detail audit trail required for the recorded newspaper in education, (See exhibit #4).

I recommend including the recorded newspaper in education sales with the other recorded subscription sales for the audit purpose.


Allowance of Digital Subscription


The taxpayer's submission included several disagreements to the audit's recommendation, which can be itemized as follow:

1. Taxpayer requested the allowed digital subscription ratio to be computed of total subscription ex-tax not on ex-tax and transportation as recommended in the audit

2. Taxpayer requested to use 53% to develop digital subscription ratio instead of 41% allowed in the audit

3. Taxpayer requested to use 53% to develop digital subscription ratio in 4Q16 and 1Q13

4. Taxpayer disagrees with the allowed exempt transportation ratio in the audit

5. Taxpayer will be likely to argue at later date that the taxpayer is entitled to an allocation in excess of 53% of sales revenue to digital sales

6. Taxpayer contends, the Department computation did not include warranted adjustment for bad debts

7. Taxpayer contends, the Department failed to exclude the Newspaper in Education as being entirely digital from its

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

computation

In the below section, I will discuss the taxpayer's contentions

1.The taxpayer requested the allowed digital subscription ratio to be computed of total subscription ex-tax, not on ex-tax, and transportation as recommended in the audit. The taxpayer's submission included documentation indicated that the Department Tax Policy Division is currently working with the California Newspaper Publishers Association to propose an amendment to the Sales and Use Tax Regulation 1590. Consequently, the proposed amendment to the Regulation does not provide legal basis for an adjustment at this time until the regulation revision is adopted by California State Legislature.

2.The taxpayer requested to use 53% to develop digital subscription ratio instead of 41% allowed in the audit. The taxpayer's request is based on the suggested ratio per the amended Sales and Use Tax Regulation 1590

Sales and Use Tax Regulation 1590(b)(3(B)(1) states in part:

"…For sales of mixed newspaper subscriptions made on and after October 1, 2016,
 forty-seven (47) percent of the charge for the mixed newspaper subscription is presumed
 to be the taxable measure from the sale of tangible personal property and tax applies to
 that amount; the remaining fifty-three (53) percent is presumed to be the nontaxable sale
 of the right to access the digital content…"

Since the periods under audit are prior to the Regulation effective date, I believe the Regulation may not rely upon to develop the digital newspaper subscription ratio to total sale.

I reviewed a considerable number of the renewal notices over the audit periods, which should have provided a direct evidence of the taxpayer's argument. However, all the reviewed renewal notices were silent regarding the digital subscription as being mixed with hard copy subscription. The only exception to that was two renewal notices included in the taxpayer' submission.

California imposes a sales tax on a retailer's retail sales in this state of tangible personal property, measured by the retailer's gross receipts, unless the sale is specifically exempt or excluded from taxation by statute. (R&TC, § 6051.) All of a retailer's gross receipts are presumed subject to tax, unless the retailer can prove otherwise. (R&TC, § 6091.)

Per the auditor's notes, I see that the auditor made several attempted to perform  representative testing to determine the digital newspaper subscription ratio to total sale, however, the provided records (renewal notices) were incomplete, not representative, and unreliable to perform a representative test.

I noted that the taxpayer filed several claims for refund related to allocation of the digital newspaper subscription in the amount of $6,039,095 in tax for the period of 4Q12 through 1Q16 ($1,132,532 in tax for the period of 4Q13 through 1Q16). At this point, it is my opinion that the taxpayer is unable to provide a complete audit trail that could be traced to source document at transaction level to substantiate such large tax refund.

It is reasonably expected that the number of people who have used a digital subscription have gradually increased through the period under audit to reach the 53% ratio per the regulation after 10/01/2016. Due to the condition and the availability of the taxpayer's books and records, it is my opinion that the estimated 41% allocated to exempt digital subscriptions based on an actual detail audit of a southern California newspaper publisher as a competitor is reasonable. I recommend no further adjustment to the audit's recommendation.

3.Based on the records made available to date, the taxpayer did not provide a complete audit trail that could be traced to the source document at the transaction level to enable the Department to validate the taxpayer contention. I agree with staff's recommendation regarding subscription sales in 4Q12 and 1Q13

4.For the disagreement related to allowed exempt transportation ratio, I recommend no adjustment to the allowed exempt transportation charges in the audit. For details, see transportation charges section above.

5.Regarding the taxpayer potential future argument that the taxpayer is entitled to an allocation in excess of 53% of sales revenue to digital sales, a review and consideration will be given upon presented.

6.For subscription bad debts, I noticed the computation of taxable subscription sales did not include an adjustment for bad debts. However, the audit recommendation included a separate adjustment as allowed taxable bad debts of subscription sales. Thus, I do not recommend further adjustment to allowed bad debts in the audit.

7.Regarding the recorded newspapers in education, I recommend including the recorded newspapers in education sales with the other recorded subscription sales for the audit purpose. For detail, see newspaper in education section above.

Summary of recommended adjustments: None

This case includes multiple legal arguments and with the potential revision of Sales and Use Tax Regulation 1590, taxpayer is encouraged to pursue his contentions before the next level of appeal. The complete package of the taxpayer's

RECOMMENDATIONS, INSTRUCTIONS AND/OR DISPOSITION

submission along with all exhibits are uploaded in the system for consideration at the next level of appeal.

---

DECISION
Post and Bill Without Change
Taxpayer does not concur.  Basis for objection to disputed item(s) is Listed above.

| AUDIT PRINCIPAL *(name)* | DATE |
|---|---|
| Crystal Guzman | 09/29/2020 |

AUDIT PRINCIPAL SIGNATURE *(required on copy to taxpayer)*

# EXHIBIT 6

A. LAVAR TAYLOR*
LISA O. NELSON
JONATHAN T. AMITRANO
ALEXANDER SCHINDLER
RAMI M. KHOURY
CHARLES F. ROSEN
LYNDA B. TAYLOR**

LAW OFFICES OF
**A. LAVAR TAYLOR** LLP
A TAX CONTROVERSY LAW FIRM

3 Hutton Centre Drive
Suite 500
Santa Ana, CA 92707

TELEPHONE: 714-546-0445
FACSIMILE: 714-546-2604

JOYCE E. CHENG, E.A./C.P.
ENROLLED AGENT/CERTIFIED PARALEGAL

MAGGIE ALLEN-REIMERS, AACP
LEGAL ASSISTANT/CERTIFIED PARALEGAL

FIRM WEBSITE: WWW.TAYLORLAW.COM

JAMES M. KAMMAN
OF COUNSEL

ALSO ADMITTED:
*DISTRICT OF COLUMBIA
**NEW YORK AND MASSACHUSETTS

November 5, 2020

**_Via Certified Mail & Facsimile_**
Petitions Section, MIC:38
California Department of Tax and Fee Administration
PO Box 942879
Sacramento, CA 94279-0038
Fax: (916) 324-0678

RE:    Petition for Redetermination
       Freedom Communications, Inc.
       Account Number 024-086069
       Determination Issued October 6, 2020
       Period: November 1, 2015 through March 31, 2016
       Amount: $864,840.42

Dear Sir/Madame,

Our office is filing this Petition for Redetermination on behalf of our client, Freedom Communications, Inc., (hereinafter "FCI") in response to the Notice of Determination dated October 6, 2020, which was served on October 7, 2020. A copy of our power of attorney is attached hereto as **Exhibit A**. This Notice of Determination covers November 1, 2015 through March 31, 2016, and seeks to impose additional tax of $724,975, interest of $199,578.42, payments/credits totaling $59,713, and a total proposed net tax liability of $864,840.42. A copy of the Notice of Determination for this audit period at issue is attached as **Exhibit B**.

The taxpayer submitted refund claims for the periods covering October 1, 2012 through March 31, 2016 (the periods covering October 1, 2012 through October 31, 2015 are not addressed in this letter). In response, the CDTFA initiated an examination of all tax periods for which refund claims were requested. The examination was broken down into three separate audits. Below is a list of each audit ID, the periods covered by each audit, and the net proposed result of the CDTFA examination:

Thursday, November 05, 2020

2 | P a g e

| Audit ID | Audit Period | Amount Owed/Refund Owed |
|----------|--------------|-------------------------|
| A125509 | 10/1/2012 – 9/30/2015 | $(635,137.07) |
| A109125 | 10/1/2015 – 10/31/2015 | $(35,137.20) |
| A72261 | 11/1/2015 – 3/31/2016 | $660,494.36 |

The examination of the taxpayer's books and records took many years. The undersigned counsel was retained in early 2020 to assist the taxpayer with its pending CDTFA examination. During the pending examination, the undersigned counsel submitted to the CDTFA various position letters which laid out all of the issues raised by the taxpayer. Each of these submissions was done using the dropbox technology employed by the Department – Box.com. These position letters layout all of the taxpayer's legal arguments in great detail, and include various exhibits and underlying data. To the extent that the reviewer of this letter did not receive these positions letters with exhibits and underlying data, this information can be obtained by gaining access to the Department's Box.com folder. In the alternative, the undersigned counsel stands ready and willing to provide such information if requested to do so.

At this time the taxpayer disagrees with the Notice of Determination for the following reasons:

1) The CDTFA erred in only allowing a 41% digital to 59% print allocation, when it should have allowed, at a minimum, a 53% digital to 47% print allocation;
2) The CDTFA erred when it refused to allow transportation costs equal to the transportation costs actually incurred;
3) The CDTFA erred in the methodology used to calculate the portion of the subscription revenue that is subject to sales tax. The CDTFA applied the mixed newspaper allocation percentage against sales ex-tax and ex-transportation costs, when it should have applied the mixed newspaper allocation percentage against sales ex-tax, and removed the transportation costs from the portion allocated to print sales to determine total taxable subscription sales;
4) The CDTFA erred in determining that subscription sales that were donated to local schools are subject to taxation when all of the donated subscriptions consisted of donated digital subscriptions for which no tax applies;
5) The CDTFA erred in determining that a portion of the sales to distributors are subject to taxation; and
6) The CDTFA erred in determining that additional tax was owed upon the sale of assets.

Because of the errors made by the Department, the entire liability proposed in the Notice of Determination should be abandoned, and instead the taxpayer should be granted a refund for the

period at issue. Note that the taxpayer is filing an appeal to the partially denied refund claim on or about the same week as the taxpayer is filing this petition for redetermination.

Below we will outline each of the issues mentioned above.

## 1. The CDTFA Erred When it Asserted a 41% Digital to 59% Print Allocation

The Department computed taxable subscription sales by taking the gross subscription sales ex-tax, reducing this amount by the allowable transportation expense, and allocating the remaining amount to online sales (non-taxable) and print sales (taxable).

This Petition for Redetermination covers November 1, 2015 through March 31, 2016. For this period, the Department took the gross subscription revenue ex-tax and reduced it by the allowable transportation expense of 21.43%, to come up with gross subscription revenue ex-tax and ex-transportation. The Department allocated this resulting amount 59% to print sales and 41% to digital sales.

In computing the taxable subscription sales for this audit period, the Department allowed a transportation expense of only 21.43%. Note that FCI does not agree with this percentage – see the next section of this letter which explains why the proper percentage as it relates to FCI is 32.02%.

In determining the appropriate allocation percentage, the Department held that the subscription sales for all of the FCI audit periods should be allocated 59% to print sales and 41% to digital sales. FCI does not agree with these allocation percentages.

In September of 2015, the BOE proposed to change Regulation 1590. The proposed changes were to make clear that only the portion of gross subscription revenue allocable to print sales is subject to sales tax, while portions allocable to digital subscription revenue were not subject to taxation.

Ultimately, the proposed changes to Regulation 1590 were adopted on June 14, 2016. The amended Regulation provides for a bright-line presumption that all mixed newspaper subscriptions are 53% digital and 47% print. FCI asserts that an allocation percentage of no less than 53% digital to 47% print should be allowed for all audit periods. The CDTFA disagrees and has indicated that it is relying on data from an audit of a similarly situated taxpayer. The CDTFA has refused to provide FCI with any identifying information relating to the similarly situated taxpayer.

Because the CDTFA is using the incorrect allocation percentage, the Notice of Determination is incorrect.

{00150243.DOCX}

Thursday, November 05, 2020

**4 | P a g e**

## 2. **The CDTFA Erred by Not Allowing the Actual Transportation Costs Incurred by FCI**

During the period at issue, the taxpayer recorded and removed from taxable sales the applicable amount of transportation costs. These are the costs incurred in delivering papers to print subscribers.

The taxpayer used very sophisticated software developed for leading U.S. newspapers to track sales and associated expenses. This software was developed to allow print media companies like FCI to track all relevant transportation costs.

As part of the audit at issue, the Department has computed the taxable subscription sales. Included in this calculation is a necessary reduction of taxable measure based on the associated transportation costs. As it relates to FCI, for the period at issue in this appeal the Department determined that subscription revenue should be reduced by a weighted transportation ratio of 21.43%.

The weighted transportation ratio computed by the Department stems from a sample conducted by the Department. The sample size used by the Department consisted of only a few hundred invoices out of millions of data points. Because the sample size is miniscule compared to the overall data points, the sample size does not accurately reflect the total transportation costs. Further, this sample size does not comply with the CDTFA Audit Manual Chapter 13, section 1303.05 which provides, among other things, the sample size must be large enough to provide *meaningful* results (emphasis added). In such a large population of data, a few hundred items would not even approach .1% of the population and therefore does not statistically represent meaningful results. Section 1303.25 further identifies additional factors that affect sample size which we don't believe have been appropriately applied. Finally, according to NIST/Sematech's Engineering and Statistics Handbook, Section 3.3.3.3, sample size determination is based on several steps which include determining how precise the estimate should be; finding a connection between desired precision of the estimate and sample size; unknown properties of the population (or variance); if stratification is used, size determination for each stratum, and the sample size should be scrutinized for practicality. The sample used by the Department does not meet these requirements.

To prove the correct transportation ratio, FCI provided information to the Department which showed the total amount as recorded by their tracking software each and every month. To prove that the software properly recorded transportation costs, Mr. Ings provided the Department underlying data for a single sample month, August 2015, to show the testing methodology that should be used. This data consists of hundreds of thousands of different data points. Mr. Ings provided an overview sheet which tracked these data points, and Mr. Ings is able to show the underlying proof for any specific data point for August 2015. As noted at the outset, FCI used very

{00150243.DOCX}

Thursday, November 05, 2020

5 | P a g e

sophisticated software to track the appropriate transportation costs. Based on the records of FCI, the total weighted transportation ratio was 32.02%.

Because the underlying data is available, we do not believe that a sample of only a couple hundred invoices is statistically meaningful. Instead we believe that the Department should review the overall data, and sample certain data points to confirm whether the amounts recorded by FCI's software are correct as recorded. Explained differently, rather than picking a random number of samples and determining the percentage based on those samples, we believe the Department should use our recorded data, and pick a statistically proper sample within our data to confirm our data is correct as recorded.

### 3. The CDTFA Applied the Incorrect Methodology in Determining Taxable Subscription Revenue

On July 16, 2020, the CDTFA announced proposed amendments to Regulation 1590. These proposed amendments make clear how the allocation percentage should be applied. At issue in the present case is whether the allocation percentage should be applied against either: (1) gross subscription sales ex-tax; or (2) gross subscription sales ex-tax and ex-transportation costs. As stated in the discussion paper, the CDTFA seeks to clarify this issue:

"In California, many newspaper publishers sell their newspaper subscriptions for a price that includes delivery charges and sales tax reimbursement. Subdivision (b)(3)(B)1. states "for sales of mixed newspaper subscriptions made on and after October 1, 2016, forty-seven (47) percent of the charge for the mixed newspaper subscription is presumed to be the taxable measure from the sale of tangible personal property and tax applies to that amount." From this provision alone, it may not be clear as to whether the taxable allocation percentage should be applied to the gross subscription price, including delivery charges and sales tax reimbursement or whether the nontaxable amounts should be removed prior to applying the taxable allocation percentage. In review of the regulation, we note that subdivision (b)(3)(B) specifies that tax is applied to the tangible personal property portion of the transaction unless otherwise exempt or excluded. Yet, the phrase "unless otherwise exempt or excluded" is not referenced in (b)(3)(B)1. We propose to amend subdivision (b)(3)(B)1. to add the phrase "unless otherwise exempt or excluded" to make it consistent with (b)(3)(B) and clarify that exempt or excluded charges are removed after applying the taxable allocation percentage.

We also determined that the taxable allocation percentage should be applied to the mixed subscription price, after adjusting for any sales tax reimbursement. Therefore, we propose amending subdivision (b)(3)(B)1. to specify that forty-seven percent of the charge for the mixed newspaper subscription, excluding any sales tax reimbursement, is presumed to be the measure from the sale of tangible personal property and tax applies to that amount, unless otherwise exempt or excluded.

{00150243.DOCX}

We also propose adding subdivision (b)(3)(B)3. to specify that in order to determine the taxable measure of a mixed newspaper subscription, the percentage that is either presumed or demonstrated to be the measure of the sale of tangible personal property (the taxable allocation percentage) applies to the mixed subscription price, excluding any sales tax reimbursement, prior to deducting exempt or excluded charges, such as nontaxable delivery charges. A formula and an example to illustrate the calculation for determining the taxable measure of a mixed newspaper subscription when the subscription includes nontaxable delivery charges and sales tax reimbursement have also been included."

The Department also made clear that these proposed changes are to be applied retroactively:

"Under Revenue and Taxation Code section 7051, "[t]he [Department] may prescribe the extent to which any ruling or regulation shall be applied without retroactive effect." In other words, when the Department wishes to limit the retroactive effect of a regulation, or amendments thereto, it is authorized to do so, and would accomplish it by taking affirmative action in the regulatory process by means of specifying an operative date for the amendments. Since the proposed amendments are clarifying in nature and are not providing a new methodology to determine the application of tax, we do not recommend a prospective basis for the amendments. For this reason, the proposed amendments would apply retroactively."

In issuing this discussion paper, the CDTFA is indicating that they always intended for the allocation percentage to be applied against the gross subscription revenue ex-tax, and that after determining the amount allocated to the sale of tangible personal property (i.e. print), the Department should further reduce the amount by the transportation costs.

The Department audit workpapers reflect that the Department is applying the allocation percentage against the gross subscription sales, ex-tax and ex-transportation costs. This is incorrect. As pointed out by the Department in the discussion paper dated July 16, 2020:

"In review of the regulation, we note that subdivision (b)(3)(B) specifies that tax is applied to the tangible personal property portion of the transaction unless otherwise exempt or excluded. Yet, the phrase "unless otherwise exempt or excluded" is not referenced in (b)(3)(B)1. We propose to amend subdivision (b)(3)(B)1. to add the phrase "unless otherwise exempt or excluded" to make it consistent with (b)(3)(B) and clarify that exempt or excluded charges are removed after applying the taxable allocation percentage."

To be clear, the proposed change cannot be viewed as applying only prospectively given that the discussion paper seeks to clarify the current Regulation language, and given that the discussion paper makes clear that the proposed changes to the Regulation are to apply retroactively. Explained differently, it is clear by the proposed language that the Department always sought to apply the allocation percentage against gross subscription sales ex-tax only.

Case 8:15-bk-15311-MW    Doc 1732-2    Filed 03/01/21    Entered 03/01/21 15:35:02
DECLARATION OF WILLIAM P. KIMSEY, CPA   IN SUPPORT OF THE CALIFORNIA DEPARTMENT    Page 120
Thursday, November 05, 2020

7 | P a g e

As such, the Department should update their calculations to accurately compute the allocation percentage. **In updating the calculations, it is not appropriate to apply the transportation percentage that was previously calculated against the allocated print sales. Instead, the Department must take the total transportation expense in dollars, and offset the allocated print sales by the amount of transportation expense dollars. Explained differently, and as an example, for the audit of FCI, the Department has computed that the allowable transportation expenses for the three audit periods combined totals $25,653,174. The Department must offset the subscription sales allocated to print sales by the actual transportation dollars, which as computed by the Department totals $25,653,174.**

To reiterate, to determine taxable subscription sales the calculation should be as follows:

(1) Total subscriptions sales ex-tax;
(2) Multiplied by 47% (allocation to print);
(3) Minus total transportation costs (in dollars);
(4) Equals total taxable subscription sales.

The methodology currently being applied by the CDTFA is both illogical and inconsistent with the intent of Regulation 1590 – why should transportation costs be deduced prior to applying the allocation percentage given that the transportation costs relate to only print sales, and not to digital sales.

### 4. The CDTFA Erred in Determining that Subscription Sales Which Were Donated to Local Schools are Subject to Taxation

For the audit periods at issue, FCI allowed newspaper subscribers the option of donating their subscription to local schools through a program titled Register in Education ("RIE"), which is an international program that promotes and increases school literacy by using the newspaper as a teaching tool. When subscribers called FCI to stop their paper when traveling out of town, the subscribers were given the option of donating their subscriptions through this program.

Because for the periods at issue these programs allowed local schools to access the donated subscriptions via the internet, and not in print, all of the amounts which were donated through this program are exempt from taxation since they represent digital subscriptions.

Over the course of the three audit periods, FCI claimed that $1,981,817 of subscription sales which were donated to local schools were exempt from taxation. The Department is taking the position that all of these amounts are subject to the allocation percentage, and whatever amount is allocable to print is subject to taxation.

{00150243.DOCX}

The taxpayer submitted a position paper on this issue which with exhibits totaled 64 pages. Included with the taxpayer's position letter were various documents which evidence the fact that the donated paper was the digital version only, and not the print version. Because FCI has demonstrated that the donated subscriptions were for online access to the paper only, the Department should acknowledge that the $1,981,817 of subscription sales which were donated to local schools are exempt from taxation.

## 5. The CDTFA Erred in Determining That a Portion of the Sales to Distributors are Subject to Taxation

During the audit periods, FCI reported exempt single copy sales of $7,006,586. The Department has determined that $2,216,761 of the reported exempt copy sales should be disallowed, and that this disallowed amount should be marked up by $1,814,236. The audit workpapers found in EA_844036_R2 page 12o-1-R2 shows the amounts for all three audit periods combined.

During the audit, FCI provided contracts, sellers permits, XYZ letters, and other evidence to the Department. The Department allowed a large amount of the claimed exempt sales. Of the amount disallowed, seven distributors of FCI make up the majority of the disallowed amounts.

For purposes of our review of this item, we are ignoring all exempt single copy sales of $25,000 or less. We are doing this in an effort to save both the time and energy of the taxpayer and the Department. As such, the following exempt single copy sales are at issue:

1) ACI SC - $28,254
2) Barrientos, Juan - $427,824
3) Oleta Distribution - $25,413
4) Orange Coast Distribution - $587,309
5) Pryor, Daniel - $202,848
6) Venegas Distribution, Inc. - $869,071
7) Sarti's Distribution - $42,693

Total: $2,183,412

Note that the total sales to these seven distributors is $2,183,412, which accounts for 98.5% of the proposed adjustment of $2,216,761. Assuming that the Department agrees that the sales to the seven distributors above are exempt from taxation, we humbly request that the Department decrease the proposed adjustment to zero.

None of the sales to distributors are subject to taxation. This is because each and every distributor purchased newspapers for resale. Further, none of the distributors are concessionaries. During the course of the audit the undersigned counsel submitted a 125 page position paper (including exhibits) which outlined all of the issues relating to this item. Specifically, the Department erred as it relates to the seven distributors listed above, for the reasons listed below.

### A. ACI SC

During the periods under examination, FCI received a total of $45,202 from ACI SC that was recorded as exempt single copy sales. These resales occurred during the period covering 4Q 2014 through 1Q 2016, a period of 18 months. The Department has acknowledged that the sales made during 4Q 2014 and 1Q 2015, sales totaling $16,948, are exempt from tax. Per the auditor's comments on worksheet "12O-1-R2" in workbook "EA_844036_R2_OC...Sch. 12O-R2", ACI stands for American Circulation Innovations. ACI was using permit #102-382464, however, the permit was closed out as of March 31, 2015. As such, the Department is not recognizing the exempt nature of the sales occurring after March 31, 2015. Therefore, the Department is treating the sales made in 4Q 2014 and 1Q 2015 as exempt ($16,948), while taking the position that the sales made between 2Q 2015 and 1Q 2016 are not exempt ($28,254).

The Department is taking the position that the sales made to ACI SC for the periods covering 2Q 2015 through 1Q 2016 are not exempt from taxation despite the fact that an XYZ letter was received by the Department. The Department has disregarded this XYZ letter because it was provided by ACI Last Mile Network, and not by ACI SC.

ACI stands for American Circulation Innovations. Note that when you google "American Circulation Innovations" the first result is for a company titled "ACI Last Mile Network", the company that filled out the XYZ letter. ACI Last Mile Network's website address is www.acilastmile.com. On the "distribution print media" tab of their website they advertise the Orange County Register as one of the products they sell.

We believe that the amount disallowed as exempt by the Department, an amount that totals $28,254, should be allowed because: (1) ACI SC had a seller's permit during two of the six quarters for which they purchased papers and as such it is clear that ACI SC was in the business of reselling papers; and (2) ACI Last Mile Network, a company that likely acquired ACI SC or served as a parent company of ACI SC, executed the XYZ letter in which they stated that they purchased $45,200 worth of papers, an amount that is $2 less than the amount of sales recorded by FCI to ACI SC.

Given these facts, we would ask that the Department acknowledge that all of the sales to ACI SC are exempt from tax.

### B. Barrientos, Juan

During the periods covering 4Q 2014 through 1Q 2016, FCI received a total of $427,824 from Juan Barrientos. All of these amounts were recorded as single copy exempt sales.

During the examination, FCI provided the auditor with a copy of the "Single Copy Distribution Agreement" between FCI and Mr. Barrientos. Counsel for FCI ran a LexisNexis public records search for Mr. Barrientos using his address and SSN as provided in the contract. The public records request shows that Mr. Barrientos has a number of liens against him, with a co-debtor named "JB Distributing". This includes multiple liens filed against both Mr. Barrientos and JB Distributing by the EDD. Separate tax liens were also filed against both names by the Franchise Tax Board. Given that these liens are in both Mr. Barrientos' name and JB Distributing's name, it appears that JB Distributing is Mr. Barrientos' sole proprietorship.

The public records show that Mr. Barrientos is also associated with additional business names. As reflected in the public records search, Mr. Barrientos has recorded four fictitious business names a total of thirteen (13) times. These include the following four fictitious business names: (1) JB Distributing; (2) Emerald Vending; (3) Noba Vending; and (4) JB Vending. We would humbly request that your office check to see if a seller's permit under any of these business names were in existence during the audit periods.

Because Mr. Barrientos was not a concessionaire, and because he clearly resold the papers that he paid $427,824 for, the Department should acknowledge that the sales to Mr. Barrientos are exempt from taxation.

### C. Orange Coast Distribution

During the periods covering 4Q 2014 through 1Q 2016, FCI received a total of $587,309 from Orange Coast Distribution. All of these amounts were recorded as single copy exempt sales.

The Department is taking the position that all of these sales are subject to taxation. A "Single Copy Distribution Agreement" signed by FCI and Orange Coast Distribution was provided to the Department. Pursuant to the contract, Orange Coast Distribution's address was 15868 Main St., Chino, CA 91708. The EIN reflected on the contract is 46-2508508. According to LexisNexis, EIN 46-2508508 is associated with Orange Coast Distribution, Inc. This entity was registered with the California Secretary of State on February 8, 2013. Note that an attachment to the contract also indicates that Orange Coast Distribution is a DBA of Luis Rodas. We humbly request that the Department double check to see whether a seller's permit was in force during the audit periods under: (1) Luis Rodas; (2) Orange Coast Distribution; and/or (3) Orange Coast Distribution, Inc.

Given that the EIN is associated with a corporation, and assuming it is a subchapter S corporation, the entity was required to pay a "reasonable salary" to the shareholders, which would mean the entity had to be registered with the EDD. We have no way of verifying how this entity was organized, or whether they were in fact registered with the EDD, however clearly this entity was registered with the California Secretary of State.

Because Orange Coast Distribution is not a concessionaire, and because it clearly resold the $587,309 worth of papers that it purchased, the Department should acknowledge that the sales to Orange Coast Distribution are exempt from taxation.

### D. **Pryor, Daniel**

During the periods covering 3Q 2013 through 3Q 2014, FCI received a total of $202,848 from Daniel Pryor. All of these amounts were recorded as single copy exempt sales.

Counsel for FCI searched for "Daniel Pryor" on LinkedIn, and located an individual in Cypress California who was the prior owner of "Pryor Distribution". Mr. Pryor's LinkedIn profile shows that he was a prior "retail sales manager" for the "Press Telegram" and the "Los Angeles Times". Given his history in newspaper sales, we believe that the attached LinkedIn page is for the Mr. Pryor at issue in this case.

According to a LexisNexis public records search, the Mr. Pryor referenced in the paragraph above previously owned an LLC called "Pryor Distributing, LLC". This entity was registered with the California Secretary of State (Entity #201209510174). We humbly request that the Department double check to see whether a seller's permit for Pryor Distributing, LLC was in force during the periods at issue.

Because Daniel Pryor and Pryor Distributing, LLC are not concessionaires, and because anyone who purchases $587,309 worth of papers clearly buys the papers for resale, the Department should acknowledge that the sales to Daniel Pryor are exempt from taxation.

### E. **Venegas Distribution, Inc.**

During the periods covering 1Q 2013 through 1Q 2016, FCI received a total of $869,071 from Venegas Distribution, Inc. All of these amounts were recorded as single copy exempt sales.

A copy of the contract between FCI and Venegas Distribution, Inc., was previously provided to the Department. Attached to the contract is a Form W-9 which reflects an EIN of 45-2541907. Presumably the Department has already checked to see if this entity had a seller's permit; we humbly request that the Department check for the permit one more time.

Venegas Distribution, Inc., is registered with the California Secretary of State (Entity #C3385286). Given that the EIN is associated with a corporation, and assuming it is a subchapter S corporation, the entity was required to pay a "reasonable salary" to the shareholders, which would mean the entity had to be registered with the EDD. We have no way of verifying how this entity was organized, or whether they were in fact registered with the EDD, however clearly this entity was registered with the California Secretary of State.

Because Venegas Distribution, Inc. is not a concessionaire, and because anyone who purchases $869,071 worth of papers clearly buys the papers for resale, the Department should acknowledge that the sales to Venegas Distribution, Inc. are exempt from taxation.

### F. Sarti's Distribution - $42,693

As noted above, the correct spelling of this distributor is "Sarti's". As it relates to FCI, during the periods covering 3Q 2014 through 1Q 2016, FCI received a total of $42,693 from Sarti's Distribution.

The auditor in both audit workbooks notes that there was no resale card on file, and that there was no response to the XYZ letter. The XYZ letter was sent to 11557 Reche Canyon Road, Colton, CA 92324. A public records search for Sarti's Distribution shows that there is an entity named Sarti's Distribution, Inc. (Entity # C3632004) that is currently suspended by the FTB. This entity is owned by Kenneth Sarti.

It is unfortunate that this company did not respond to the XYZ letter given that this company is clearly in the business of "distribution", and given that it purchased a high volume of newspapers and therefore it is clearly in the newspaper distribution business. We would humbly request that the Department confirm that no sellers permit was held by: (1) Sarti's Distribution (using the proper spelling of "Sarti"); (2) Sarti's Distribution, Inc.; and/or (3) Kenneth Sarti.

Because Sarti's Distribution is not a concessionaire, and because anyone who purchases $287,123 worth of papers clearly buys the papers for resale, the Department should acknowledge that the sales to Sarti's Distribution are exempt from taxation.

### G. Oleta Distribution/Isaias Oleta

During the periods covering 4Q 2014 through 1Q 2016, FCI received a total of $25,413 from Oleta Distribution. FCI reported these sales as exempt from taxation. The Department initially took the position that all of these amounts are subject to taxation. At the end of the audit, during the conference with the principal auditor, the Department changed positions and held that because a seller's permit was located under the name Isaias Oleta/Oleta Distribution, and because

this seller's permit was active through 3Q 2015, the Department is now only proposing adjustments to sales made after 3Q 2015, which total $8,186.

It is clear that Oleta Distribution/Isaias Oleta was in the business of buying and reselling newspapers. Why else would this company have a sellers permit. The fact that the permit was cancelled effective September 30, 2015, does not negate the fact that this business resold the papers it purchased from FCI. Because Oleta Distribution/Isaias Oleta are not concessionaires, and because anyone who purchases $101,784 worth of papers clearly buys the papers for resale, the Department should acknowledge that the sales to Oleta Distribution and/or Mr. Oleta are exempt from taxation.

## 6.  The CDTFA Erred in Determining the Tax Owed Upon the Sale of Assets

The Department's position as it relates to this issue can be found in the FCI workbook titled EA_1031592_OC Register_WP", workpapers "12G" through "Memo-2". Pursuant to the auditor's workpapers, the Department has computed a total asset gross sales price (which includes both cash received and the assumption of liabilities) of $58,966,047.85 for both FCI & FCHI combined. We agree with this amount.

The Department took the gross sales price of $58,966,047.85 and allocated this remaining amount to the remaining asset classes that were transferred to Digital First Media ("DFM") based on book value. From there the Department seeks to tax FCI for the purchase price amounts allocable to: (1) Assets-Inventory Plates; and (2) Tangible Personal Properties. While we agree that these two asset classes are subject to taxation, we disagree with the methodology used in determining the purchase price allocation to these two asset classes. Applying this methodology the Department determined the computed taxable sale of fixed assets for FCI totals $5,581,700.

The Department erred in determining the tax that was owed on the sale of assets to DFM. The errors made are as follows:

-  In determining the allocation of the sales price to the different assets classes, the Department erred by not assigning a value to the sold accounts receivable ("AR") equal to the amounts received for AR. Explained differently, FCI received a specific amount of money just for the sold AR, and as such the department should allocate the price received for the AR to the AR, as opposed to applying a percentage based off of book value;

-  In determining the allocation of the sales price to the different assets classes, the Department erred by not assigning a value to the sold real property equal to the amounts agreed to by the buyer and seller. Explained differently, FCI received a specific amount of money just for the sold real property, and as such the department should allocate the

price received for the real property to the real property, as opposed to applying a percentage based off of book value;

- In determining the total book value of the assets sold of $90,938,408, the Department erred by failing to include the book value of the following assets which were also sold: (1) Trade Assets; (2) Prepaids; and (3) Other Non-Current Assets; and

- Because the book value of certain asset classes is equal to the fair market value, the Department should <u>not</u> ratably apply the proceeds based on the book value of the assets but rather the Department should apply the proceeds equal to the fair market value of the assets. These items include: (1) Inventory; (2) Trade Assets; (3) Prepaids; and (4) Other Non-Current Assets. Explained differently, if the book value of inventory is $100, because the book value of inventory is the same as the fair market value of the inventory, the Department should allocate $100 of the sales proceed to inventory as opposed to applying the sale proceeds ratably based on book value.

## 7.  <u>Conclusion</u>

For the reasons stated in this letter, coupled with the more thorough analysis contained in the various position papers that were submitted by the taxpayer, the Department erred in asserting that an additional tax liability of $724,975 is owed.

Thank you for your time and consideration.

Respectfully Submitted,

**Law Offices of A. Lavar Taylor** [LLP]

Jonathan Amitrano

# Exhibit A

CDTFA-392 (FRONT) REV. 11 (1-18)                                                                STATE OF CALIFORNIA
**POWER OF ATTORNEY**                                    CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION
                                                                    EMPLOYMENT DEVELOPMENT DEPARTMENT

*Check below to indicate the appropriate agency. Please note that a separate form must be completed and provided to each agency checked.*

| ☒ CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION PO BOX 942879 SACRAMENTO, CA 94279-0001 1-800-400-7115 (TTY:711) | ☐ EMPLOYMENT DEVELOPMENT DEPARTMENT PO BOX 826880 MIC 28 SACRAMENTO CA 94280-0001 1-916-654-7263 • FAX 1-916-654-9211 |
|---|---|

| TAXPAYER'S OR FEEPAYER'S NAME | BUSINESS OR CORPORATION NAME Freedom Communications, Inc. | TELEPHONE NUMBER | FAX NUMBER |
|---|---|---|---|

| SOCIAL SECURITY NUMBER | FEDERAL EMPLOYER IDENTIFICATION NUMBER | CALIFORNIA SECRETARY OF STATE NUMBER(S) |
|---|---|---|

| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION ACCOUNT/PERMIT(S) 024-086069 | EDD EMPLOYER ACCOUNT NUMBER |
|---|---|

MAILING ADDRESS *(Number and Street, City, State, ZIP Code)*
555 W 5th Street, Ste. 3725, Los Angeles  CA  90013-2670

| ☐ INDIVIDUAL | ☐ PARTNERSHIP | ☒ CORPORATION | ☐ LIMITED LIABILITY COMPANY |
|---|---|---|---|
| ☐ OTHER | | | |

**As owner, officer, receiver, administrator, or trustee for the taxpayer or feepayer, or as a party to the tax or fee matter before the:**

☒ California Department of Tax and Fee Administration          ☐ Employment Development Department

**I hereby appoint:** *[enter below the individual appointee(s) name(s), address(es) (including ZIP code), telephone number(s) and fax number(s) - do not enter names of accounting or law firms, partnerships, corporations, etc., as the appointee name]*

| APPOINTEE NAME Jonathan T. Amitrano | APPOINTEE NAME A. Lavar Taylor |
|---|---|
| APPOINTEE BUSINESS NAME *(if applicable)* Law Offices of A. Lavar Taylor, LLP | APPOINTEE BUSINESS NAME *(if applicable)* Law Offices of A. Lavar Taylor, LLP |
| APPOINTEE ADDRESS *(Number and Street)* 3 Hutton Centre Drive, Suite 500 | APPOINTEE ADDRESS *(Number and Street)* 3 Hutton Centre Drive, Suite 500 |
| *(City)* Santa Ana, *(State)* CA *(ZIP Code)* 92707 | *(City)* Santa Ana, *(State)* CA *(ZIP Code)* 92707 |
| TELEPHONE NUMBER (714) 546-0445 | FAX NUMBER (714) 546-2604 | TELEPHONE NUMBER (714) 546-0445 | FAX NUMBER (714) 546-2604 |

**As attorney(s)-in-fact to represent the taxpayer(s) or feepayer(s) for the following tax or fee matters:** *[specify type(s) of tax]*

| ☒ Tax and Fee Programs Administered by CDTFA | ☐ Benefit Reporting |
|---|---|
| ☐ Payroll Tax Law | ☐ Other: |

SPECIFY THE TAX OR FEE YEAR(S) OR PERIOD(S)
October 1, 2012 through March 31, 2016

**The attorney(s)-in-fact (or any of them) are authorized, subject to revocation, to receive confidential tax information and to perform on behalf of the taxpayer(s) the following acts for the tax or fee matters described above:** *[check the box(es) for the powers granted]*

☒ General Authorization (including all acts described below).
☐ Specific Authorization (selected acts described below).

☐ To confer and resolve any assessment, claim or collection of a deficiency or other tax or fee matter pending before the identified agency and attend any meetings or hearings thereto for the specified law identified above.

☐ To receive, but not to endorse and collect, checks in payment of any refund of taxes, penalties or interest.

☐ To execute petitions, claims for refund and/or amendments thereto.

☐ To execute consents extending the statutory period for assessment or determination of taxes.

☐ To represent the taxpayer for changes to their mailing address for any and all Payroll Tax Law, Benefit Reporting, both Payroll Tax Law and Benefit Reporting.

*(The back of this form must be completed)*

CFS

Freedom Communications, Inc.

CDTFA-392 (BACK) REV. 11 (1-18)

☐ To execute settlement agreements under section 1236 of the California Unemployment Insurance Code.

☐ To delegate authority or to substitute another representative.

☐ To Other acts (specify):

**This Power of Attorney revokes all earlier Power(s) of Attorney on file with the California Department of Tax and Fee Administration or the Employment Development Department as identified above for the same matters and years or periods covered by this form, except for the following:** *[specify to whom granted, date and address, or refer to attached copies of earlier power(s)]*

| NAME | DATE POWER OF ATTORNEY GRANTED |
|---|---|
| Randall Ings | |

ADDRESS *(Number and Street, City, State, ZIP Code)*

18601 Newland Street No. 62, Huntington Beach, CA 92646

**Unless limited, this Power of Attorney will remain in effect until the final resolution of all tax or fee matters specified herein.**
*[specify expiration date if limited term]*

TIME LIMIT/EXPIRATION DATE (for California Department of Tax and Fee Administration purposes)

**Signature of Taxpayer(s) or Feepayer(s) -** If a tax or fee matter concerns a joint return, **both** spouses must sign if joint representation is requested. If you are a corporate officer, partner, guardian, tax or fee matters partner/person, executor, receiver, registered domestic partner, administrator, or trustee on behalf of the taxpayer or feepayer, by signing this Power of Attorney you are certifying that you have the authority to execute this form on behalf of the taxpayer or feepayer.

▶  **IF THIS POWER OF ATTORNEY IS NOT SIGNED AND DATED BY AN AUTHORIZED INDIVIDUAL, IT WILL BE RETURNED AS INVALID.**

| SIGNATURE | TITLE *(if applicable)* | DATE |
|---|---|---|
| | Chief Restructuring Officer | 6/22/20 |
| PRINT NAME | | TELEPHONE |
| Brad Smith | | 310-936-3745 |
| SIGNATURE | TITLE *(if applicable)* | DATE |
| | | |
| PRINT NAME | | TELEPHONE |
| | | |

CFS

# Exhibit B

STATE OF CALIFORNIA

**CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION**
P.O. BOX 942879, SACRAMENTO, CA 94279-0001
1-800-400-7115 • FAX 1-916-928-8241
*www.cdtfa.ca.gov*

GAVIN NEWSOM
Governor

YOLANDA RICHARDSON
Secretary, Government Operations Agency

NICOLAS MADUROS
Director

BRAD SMITH
FREEDOM COMMUNICATIONS INC
555 W 5TH ST STE 3725
LOS ANGELES CA  90013-2670

| | |
|---|---|
| Letter Date: | October 6, 2020 |
| Letter ID: | L0008349120 |
| Account Type: | Sales and Use Tax |
| Account Number: | 024-086069 |
| Audit ID: | A72261 |
| Audit Period From: | November 1, 2015 |
| Audit Period To: | March 31, 2016 |

| | |
|---|---|
| Notice Service Date: | October 7, 2020 |
| Finality Date: | November 6, 2020 |

# NOTICE OF DETERMINATION

**Why we are contacting you:**
The California Department of Tax and Fee Administration (CDTFA) has determined that you are liable for tax, interest, and penalties. The balance below reflects the amount you owe.

| | |
|---|---|
| **Tax** | $724,975.00 |
| **Interest** | 199,578.42 |
| **Penalty** | 0.00 |
| **Other** | 0.00 |
| **Payments/Credits** | (59,713.00) |
| **Total** | $864,840.42 |



**What you must do:**
You must pay in full unless you are in a payment plan for the amounts listed. Payment is due in full by the finality date.

**What will happen if you do not comply:**
Failure to pay this notice may result in additional penalties and/or interest. If you disagree with the assessment, you have the right to file a petition for redetermination within 30 days after the notice service date shown above.

**PAYMENT OPTIONS**
To make a payment online, go to our website at *www.cdtfa.ca.gov* and select *Make a Payment*. If you are paying by check, please write your Account Number and Letter ID (shown above) on your check and include the attached *Statement of Account* payment voucher. Keep the original notice for your records. Make your check payable to the California Department of Tax and Fee Administration and mail to P.O. Box 942879, Sacramento, CA 94279-3535. If you need additional help, please call the telephone number shown above.

**INTEREST**
Additional interest will accrue on the unpaid tax each month at the rate of 8 percent annually. Interest of $4,435.08 will accrue if the tax is not paid on or before October 31, 2020.

**PENALTY FOR FAILURE TO PAY WHEN DUE**
Generally, a penalty of 10 percent attaches to the unpaid amount of tax due if this determination is not paid on or before the finality date.

0008349120   01

CDTFA-1210-DET REV. 2 (9-20)
tL0002-25
Front

**PETITION FOR REDETERMINATION**

This determination becomes final 30 days after the notice service date, unless a petition for redetermination is filed. Any person against whom a determination is made may petition for redetermination. The petition must be in writing and state the specific grounds upon which it is founded. If an appeals conference is desired, it should be requested in the petition. To file your petition online, log in with your username and password at *onlineservices.cdtfa.ca.gov*.

Prompt payment of the undisputed portion(s) of the liability should be made. This will prevent the accrual of additional interest and will not in any way affect the protested portion(s).

A petition may not be filed prior to the notice service date. Any action taken prior to that date does not constitute a petition for redetermination.

For more information about filing a petition for redetermination and where to file your petition, please visit our website at *www.cdtfa.ca.gov*.



A. LAVAR TAYLOR*
LISA O. NELSON
JONATHAN T. AMITRANO
ALEXANDER SCHINDLER
RAMI M. KHOURY
CHARLES F. ROSEN
LYNDA B. TAYLOR**

JAMES M. KAMMAN
OF COUNSEL

ALSO ADMITTED:
*DISTRICT OF COLUMBIA
**NEW YORK AND MASSACHUSETTS

**LAW OFFICES OF**
**A. LAVAR TAYLOR** LLP
A TAX CONTROVERSY LAW FIRM

3 Hutton Centre Drive
Suite 500
Santa Ana, CA 92707

TELEPHONE: 714-546-0445
FACSIMILE: 714-546-2604

JOYCE E. CHENG, E.A./C.P.
ENROLLED AGENT/CERTIFIED PARALEGAL

MAGGIE ALLEN-REIMERS, AACP
LEGAL ASSISTANT/CERTIFIED PARALEGAL

FIRM WEBSITE: WWW.TAYLORLAW.COM

November 5, 2020

**_Via Certified Mail & Facsimile_**
Petitions Section, MIC:38
California Department of Tax and Fee Administration
PO Box 942879
Sacramento, CA 94279-0038
Fax: (916) 324-0678

RE:   Petition for Redetermination
      Freedom Communications Holdings, Inc.
      Account Number 102-501862
      Determination Issued October 7, 2020
      Period: November 1, 2015 through March 31, 2016
      Amount: $337,627

Dear Sir/Madame,

Our office is filing this Petition for Redetermination on behalf of our client, Freedom Communications Holdings, Inc., (hereinafter "FCHI" or "taxpayer") in response to the Notice of Determination dated October 7, 2020, which was served on October 8, 2020. A copy of our power of attorney is attached hereto as **Exhibit A**. This Notice of Determination covers November 1, 2015 through March 31, 2016, and seeks to impose additional tax of $337,627, interest of $100,176.08, payments/credits totaling $3,706, and a total proposed net tax liability of $434,097.08. A copy of the Notice of Determination for this audit period at issue is attached as **Exhibit B**.

The taxpayer submitted refund claims for the periods covering November 21, 2013 through March 31, 2016 (the period covering November 21, 2013 through October 31, 2015 is not addressed in this letter). In response, the CDTFA initiated an examination of all tax periods for which refund claims were requested. The examination was broken down into three separate audits,

{00150248.DOCX}

Thursday, November 05, 2020

2 | P a g e

Below is a list of each audit ID, the periods covered by each audit, and the net proposed result of the CDTFA examination:

| Audit ID | Audit Period | Amount Owed/Refund Owed |
|----------|--------------|--------------------------|
| A63522   | 11/21/2013 – 9/30/2015 | $(25,302.31) |
| A47138   | 10/1/2015 – 10/31/2015 | $(2,507.17) |
| A1058    | 11/1/2015 – 3/31/2016  | $434,097.08 |

The examination of the taxpayer's books and records took many years. The undersigned counsel was retained in early 2020 to assist the taxpayer with its pending CDTFA examination. During the pending examination, the undersigned counsel submitted to the CDTFA various position letters which laid out all of the issues raised by the taxpayer. Each of these submissions was done using the dropbox technology employed by the Department – Box.com. These position letters layout all of the taxpayer's legal arguments in great detail, and include various exhibits and underlying data. To the extent that the reviewer of this letter did not receive these positions letters with exhibits and underlying data, this information can be obtained by gaining access to the Department's Box.com folder. In the alternative, the undersigned counsel stands ready and willing to provide such information if requested to do so.

At this time the taxpayer disagrees with the Notice of Determination for the following reasons:

1) The CDTFA erred in only allowing a 41% digital to 59% print allocation, when it should have allowed, at a minimum, a 53% digital to 47% print allocation;

2) The CDTFA erred when it refused to allow transportation costs equal to the transportation costs actually incurred;

3) The CDTFA erred in the methodology used to calculate the portion of the subscription revenue that is subject to sales tax. The CDTFA applied the mixed newspaper allocation percentage against sales ex-tax and ex-transportation costs, when it should have applied the mixed newspaper allocation percentage against sales ex-tax, and removed the transportation costs from the portion allocated to print sales to determine total taxable subscription sales;

4) The CDTFA erred in determining that subscription sales that were donated to local schools are subject to taxation when all of the donated subscriptions consisted of donated digital subscriptions for which no tax applies;

5) The CDTFA erred in determining that a portion of the sales to distributors are subject to taxation; and

6) The CDTFA erred in determining that additional tax was owed upon the sale of assets.

{00150248.DOCX}

Thursday, November 05, 2020
3 | P a g e

In the next section we will outline each of these six issues.

## 1.  The CDTFA Erred When it Asserted a 41% Digital to 59% Print Allocation

As it relates to FCHI, the workpapers for the three audit periods are all contained in workbook "EA_93578_R2_Press_WP", workpapers "12I_R2" through "12I_2 R2". These workpapers provide that the Department took the total gross subscription revenue ex-tax of $29,657,766, and reduced this amount by the allowable transportation expense of 21.43%, to come up with gross subscription revenue ex-tax and ex-transportation costs of $23,302,107. The Department allocated this resulting amount 59% to print sales and 41% to digital sales. Applying this methodology, the Department determined that total taxable subscription sales for all three audit periods totaled $13,748,243.

In computing the taxable subscription sales for this audit period, the Department allowed a transportation expense of only 21.43%. Note that FCHI does not agree with this percentage – see the next section of this letter which explains why the proper percentage as it relates to FCHI is 40.36%.

In determining the appropriate allocation percentage, the Department held that the subscription sales for all of the FCHI audit periods should be allocated 59% to print sales and 41% to digital sales. FCHI does not agree with these allocation percentages.

In September of 2015, the BOE proposed to change Regulation 1590. The proposed changes were to make clear that only the portion of gross subscription revenue allocable to print sales is subject to sales tax, while portions allocable to digital subscription revenue were not subject to taxation.

Ultimately, the proposed changes to Regulation 1590 were adopted on June 14, 2016. The amended Regulation provides for a bright-line presumption that all mixed newspaper subscriptions are 53% digital and 47% print. FCHI asserts that an allocation percentage of no less than 53% digital to 47% print should be allowed for all audit periods. The CDTFA disagrees and has indicated that it is relying on data from an audit of a similarly situated taxpayer. The CDTFA has refused to provide FCHI with any identifying information relating to the similarly situated taxpayer.

Because the CDTFA is using the incorrect allocation percentage, the Notice of Determination is incorrect.

## 2. The CDTFA Erred by Not Allowing the Actual Transportation Costs Incurred by FCHI

During the years at issue, the taxpayer recorded and removed from taxable sales the applicable amount of transportation costs. These are the costs incurred in delivering papers to print subscribers.

The taxpayer used very sophisticated software developed for leading U.S. newspapers to track sales and associated expenses. This software was developed to allow print media companies like FCHI to track all relevant transportation costs.

As part of the audit at issue, the Department has computed the taxable subscription sales by quarter. Included in this calculation is a necessary reduction of taxable measure based on the associated transportation costs. As it relates to FCHI, for all of the periods under examination the Department determined that subscription revenue should be reduced by a weighted transportation ratio of 21.43%.

The weighted transportation ratio computed by the Department stems from a sample conducted by the Department. The sample size used by the Department consisted of only a few hundred invoices out of millions of data points. Because the sample size is miniscule compared to the overall data points, the sample size does not accurately reflect the total transportation costs. Further, this sample size does not comply with the CDTFA Audit Manual Chapter 13, section 1303.05 which provides, among other things, the sample size must be large enough to provide *meaningful* results (emphasis added). In such a large population of data, a few hundred items would not even approach .1% of the population and therefore does not statistically represent meaningful results. Section 1303.25 further identifies additional factors that affect sample size which we don't believe have been appropriately applied. Finally, according to NIST/Sematech's Engineering and Statistics Handbook, Section 3.3.3.3, sample size determination is based on several steps which include determining how precise the estimate should be; finding a connection between desired precision of the estimate and sample size; unknown properties of the population (or variance); if stratification is used, size determination for each stratum, and the sample size should be scrutinized for practicality. The sample used by the Department does not meet these requirements.

To prove the correct transportation ratio, FCHI provided information to the Department which showed the total amount as recorded by their tracking software each and every month. To prove that the software properly recorded transportation costs, Mr. Ings provided the Department underlying data for a single sample month, August 2015, to show the testing methodology that should be used. This data consists of hundreds of thousands of different data points. Mr. Ings

Thursday, November 05, 2020
5 | P a g e

provided an overview sheet which tracked these data points, and Mr. Ings is able to show the underlying proof for any specific data point for August 2015. As noted at the outset, FCHI used very sophisticated software to track the appropriate transportation costs. Based on the records of FCHI, the total weighted transportation ratio was 40.36%.

Because the underlying data is available, we do not believe that a sample of only a couple hundred invoices is statistically meaningful. Instead we believe that the Department should review the overall data, and sample certain data points to confirm whether the amounts recorded by FCHI's software are correct as recorded. Explained differently, rather than picking a random number of samples and determining the percentage based on those samples, we believe the Department should use our recorded data, and pick a statistically proper sample within our data to confirm our data is correct as recorded.

## 3. The CDTFA Applied the Incorrect Methodology in Determining Taxable Subscription Revenue

On July 16, 2020, the CDTFA announced proposed amendments to Regulation 1590. These proposed amendments make clear how the allocation percentage should be applied. At issue in the present case is whether the allocation percentage should be applied against either: (1) gross subscription sales ex-tax; or (2) gross subscription sales ex-tax and ex-transportation costs. As stated in the discussion paper, the CDTFA seeks to clarify this issue:

"In California, many newspaper publishers sell their newspaper subscriptions for a price that includes delivery charges and sales tax reimbursement. Subdivision (b)(3)(B)1. states "for sales of mixed newspaper subscriptions made on and after October 1, 2016, forty-seven (47) percent of the charge for the mixed newspaper subscription is presumed to be the taxable measure from the sale of tangible personal property and tax applies to that amount." From this provision alone, it may not be clear as to whether the taxable allocation percentage should be applied to the gross subscription price, including delivery charges and sales tax reimbursement or whether the nontaxable amounts should be removed prior to applying the taxable allocation percentage. In review of the regulation, we note that subdivision (b)(3)(B) specifies that tax is applied to the tangible personal property portion of the transaction unless otherwise exempt or excluded. Yet, the phrase "unless otherwise exempt or excluded" is not referenced in (b)(3)(B)1. We propose to amend subdivision (b)(3)(B)1. to add the phrase "unless otherwise exempt or excluded" to make it consistent with (b)(3)(B) and clarify that exempt or excluded charges are removed after applying the taxable allocation percentage.

We also determined that the taxable allocation percentage should be applied to the mixed subscription price, after adjusting for any sales tax reimbursement. Therefore, we propose amending subdivision (b)(3)(B)1. to specify that forty-seven percent of the charge for the mixed newspaper subscription, excluding any sales tax reimbursement, is presumed to be

Thursday, November 05, 2020
6 | P a g e

the measure from the sale of tangible personal property and tax applies to that amount, unless otherwise exempt or excluded.

We also propose adding subdivision (b)(3)(B)3. to specify that in order to determine the taxable measure of a mixed newspaper subscription, the percentage that is either presumed or demonstrated to be the measure of the sale of tangible personal property (the taxable allocation percentage) applies to the mixed subscription price, excluding any sales tax reimbursement, prior to deducting exempt or excluded charges, such as nontaxable delivery charges. A formula and an example to illustrate the calculation for determining the taxable measure of a mixed newspaper subscription when the subscription includes nontaxable delivery charges and sales tax reimbursement have also been included."

The Department also made clear that these proposed changes are to be applied retroactively:

"Under Revenue and Taxation Code section 7051, "[t]he [Department] may prescribe the extent to which any ruling or regulation shall be applied without retroactive effect." In other words, when the Department wishes to limit the retroactive effect of a regulation, or amendments thereto, it is authorized to do so, and would accomplish it by taking affirmative action in the regulatory process by means of specifying an operative date for the amendments. Since the proposed amendments are clarifying in nature and are not providing a new methodology to determine the application of tax, we do not recommend a prospective basis for the amendments. For this reason, the proposed amendments would apply retroactively."

In issuing this discussion paper, the CDTFA is indicating that they always intended for the allocation percentage to be applied against the gross subscription revenue ex-tax, and that after determining the amount allocated to the sale of tangible personal property (i.e. print), the Department should further reduce the amount by the transportation costs.

The Department audit workpapers reflect that the Department is applying the allocation percentage against the gross subscription sales, ex-tax and ex-transportation costs. This is incorrect. As pointed out by the Department in the discussion paper dated July 16, 2020:

"In review of the regulation, we note that subdivision (b)(3)(B) specifies that tax is applied to the tangible personal property portion of the transaction unless otherwise exempt or excluded. Yet, the phrase "unless otherwise exempt or excluded" is not referenced in (b)(3)(B)1. We propose to amend subdivision (b)(3)(B)1. to add the phrase "unless otherwise exempt or excluded" to make it consistent with (b)(3)(B) and clarify that exempt or excluded charges are removed after applying the taxable allocation percentage."

To be clear, the proposed change cannot be viewed as applying only prospectively given that the discussion paper seeks to clarify the current Regulation language, and given that the discussion paper makes clear that the proposed changes to the Regulation are to apply retroactively.

Thursday, November 05, 2020

7 | P a g e

Explained differently, it is clear by the proposed language that the Department always sought to apply the allocation percentage against gross subscription sales ex-tax only.

As such, the Department should update their calculations to accurately compute the allocation percentage. **In updating the calculations, it is not appropriate to apply the transportation percentage that was previously calculated against the allocated print sales. Instead, the Department must take the total transportation expense in dollars, and offset the allocated print sales by the amount of transportation expense dollars. Explained differently, and as an example, for the audit of FCHI, the Department has computed that the allowable transportation expenses for the three audit periods combined totals $6,355,659. The Department must offset the subscription sales allocated to print sales by the actual transportation dollars, which as computed by the Department totals $6,355,659.**

To reiterate, to determine taxable subscription sales the calculation should be as follows:

(1) Total subscriptions sales ex-tax;
(2) Multiplied by 47% (allocation to print);
(3) Minus total transportation costs (in dollars);
(4) Equals total taxable subscription sales.

The methodology currently being applied by the CDTFA is both illogical and inconsistent with the intent of Regulation 1590 – why should transportation costs be deduced prior to applying the allocation percentage given that the transportation costs relate to only print sales, and not to digital sales.

## 4. The CDTFA Erred in Determining that Subscription Sales Which Were Donated to Local Schools are Subject to Taxation

For the audit periods at issue, FCHI allowed newspaper subscribers the option of donating their subscription to local schools through a program titled Newspapers in Education ("NIE"), which is an international program that promotes and increases school literacy by using the newspaper as a teaching tool. When subscribers called FCHI to stop their paper when traveling out of town, the subscribers were given the option of donating their subscriptions through this program.

Because for the periods at issue these programs allowed local schools to access the donated subscriptions via the internet, and not in print, all of the amounts which were donated through this program are exempt from taxation since they represent digital subscriptions.

Thursday, November 05, 2020
8 | P a g e

Over the course of the three audit periods, FCHI claimed that $209,951 of subscription sales which were donated to local schools were exempt from taxation. The Department is taking the position that all of these amounts are subject to the allocation percentage, and whatever amount is allocable to print is subject to taxation.

The taxpayer submitted a position paper on this issue which with exhibits totaled 64 pages. Based on the undersigned counsel's discussion with Mr. Kassem of the CDTFA, this position paper has already been forwarded to the Appeals Bureau.

Included with the taxpayer's position letter were various documents which evidence the fact that the donated paper was the digital version only, and not the print version. Because FCHI has demonstrated that the donated subscriptions were for online access to the paper only, the Department should acknowledge that the $209,951 of subscription sales which were donated to local schools are exempt from taxation.

### 5. The CDTFA Erred in Determining That a Portion of the Sales to Distributors are Subject to Taxation

During the audit periods, FCHI reported exempt single copy sales of $2,183,217. The Department has preliminarily determined that $1,342,163 of the reported exempt copy sales should be disallowed.

During the audit, FCHI provided contracts, sellers permits, XYZ letters, and other evidence to the Department. The Department allowed a large amount of the claimed exempt sales. Of the amount disallowed, three distributors of FCHI make up the majority of the disallowed amounts.

The sum of the disallowed FCHI single copy sales listed above totals $1,342,163, and the markup of this amount totals $1,069,014. Of the disallowed single copy sales of $1,342,163, $873,330 stems from sales to unknown customers, while the remaining amount of $468,833 stems from sales to known distributors.

The audit workpapers found in EA_932578_R2 worksheet 12K-R2 shows the amounts for all three audit periods combined. It reflects total disallowed exempt single copy sales of $1,342,163, which ties out to the amounts listed above.

For purposes of our review of this item, we are ignoring all exempt single copy sales of $25,000 or less. We are doing this in an effort to save both the time and energy of the taxpayer and the Department. As such, the following exempt single copy sales are at issue:

    1)  Sarti's Distribution - $244,430

{00150248.DOCX}

Thursday, November 05, 2020

**9 | P a g e**

    2) CIPS Marketing Group, Inc - $65,639

    3) Isaias Oleta - $76,371

             Total: $386,440

Note that the total of these three disallowed distributors is $386,440, which accounts for 82.4% of the proposed adjustment to known distributors of $468,833. Assuming that the Department agrees that the sales to these three distributors above are exempt from taxation, we humbly request that the Department decrease the proposed adjustment to known distributors to zero.

None of the sales to distributors are subject to taxation. This is because each and every distributor purchased newspapers for resale. Further, none of the distributor are concessionaries. During the course of the audit the undersigned counsel submitted a 125 page position paper (including exhibits) which outlined all of the issues relating to this item. Specifically, the Department erred as it relates to the three distributors listed above, for the reasons listed below.

### A. Sarti's Distribution - $42,693

As it relates to FCHI, during the period covering 3Q 2014 through 1Q 2016, FCHI received a total of $244,430 from Sarti's Distribution.

The auditor in both audit workbooks notes that there was no resale card on file, and that there was no response to the XYZ letter. The XYZ letter was sent to 11557 Reche Canyon Road, Colton, CA 92324. A public records search for Sarti's Distribution shows that there is an entity named Sarti's Distribution, Inc. (Entity # C3632004) that is currently suspended by the FTB. This entity is owned by Kenneth Sarti.

It is unfortunate that this company did not respond to the XYZ letter given that this company is clearly in the business of "distribution", and given that it purchased a high volume of newspapers and therefore it is clearly in the newspaper distribution business. We would humbly request that the Department confirm that no sellers permit was held by: (1) Sarti's Distribution (using the proper spelling of "Sarti"); (2) Sarti's Distribution, Inc.; and/or (3) Kenneth Sarti.

Because Sarti's Distribution is not a concessionaire, and because anyone who purchases $287,123 worth of papers clearly buys the papers for resale, the Department should acknowledge that the sales to Sarti's Distribution are exempt from taxation.

### B. Oleta Distribution/Isaias Oleta

As it relates to FCHI, during the periods 4Q 2015 & 1Q 2016, FCHI received a total of $76,371 from Isaias Oleta. It is important to note that the taxpayer sold papers to this distributor

{00150248.DOCX}

Thursday, November 05, 2020
10 | P a g e

during all of the quarters under examination. Because a seller's permit was located under the name Isaias Oleta/Oleta Distribution, and because this seller's permit was active through 3Q 2015, the Department is only proposing adjustments to sales made after 3Q 2015, which total $76,371.

It is clear that Oleta Distribution/Isaias Oleta was in the business of buying and reselling newspapers. Why else would this company have a sellers permit. The fact that the permit was cancelled effective September 30, 2015, does not negate the fact that this business resold the papers it purchased from FCHI. Because Oleta Distribution/Isaias Oleta are not concessionaires, and because anyone who purchases $101,784 worth of papers clearly buys the papers for resale, the Department should acknowledge that the sales to Oleta Distribution and/or Mr. Oleta are exempt from taxation.

### C. CIPS Marketing Group, Inc.

During the period covering 4Q 2014 through 1Q 2016, FCHI received a total of $65,639 from CIPS Marketing Group, Inc. All of these amounts were recorded as single copy exempt sales.

The Department is taking the position that the sales made to CIPS Marketing Group, Inc. are not exempt from taxation despite the fact that an XYZ letter was received by the Department. The Department has disregarded this XYZ letter because it was provided by ACI Last Mile Network, and not by CIPS Marketing Group, Inc.

According to an article published in the LA Business Journal, CIPS Marketing Group, Inc., was acquired by "ACI Last Mile Network" in 2017. ACI Last Mile Network is the same entity as is referenced above under ACI SC. Their website address is www.acilastmile.com. As noted above, this company appears to be based out of Los Angeles, and on their website they advertise that they distribute a number of Southern California newspapers.

Because the department received an XYZ letter from a company that acquired CIPS Marketing Group, Inc., and because the XYZ letter references purchases of $65,639, which is the exact same amount as the sales recorded by FCHI to CIPS Marketing Group, Inc., the Department should acknowledge that the sales to CIPS Marketing Group, Inc. are exempt from taxation.

### 6. The CDTFA Erred in Determining the Tax Owed Upon the Sale of Assets

The Department's position as it relates to this issue can be found in the FCHI workbook titled "EA_A1058_Press Enter_WP", workpapers "12H" through "Memo-6". Pursuant to the auditor's workpapers, the Department has computed a total asset gross sales price (which includes both cash received and the assumption of liabilities) of $58,966,047.85 for both FCI & FCHI combined. We agree with this amount.

{00150248.DOCX}

11/05/2020 THU 14:31 FAX 17145462604 Taylorlaw    Case 8:15-bk-15311-MW    Doc 1732-2    Filed 03/01/21    Entered 03/01/21 15:35:02    011/018

DECLARATION OF WILLIAM P. KIMSEY    CPA    IN SUPPORT OF THE CALIFORNIA DEPARTMENT    Page 144

Thursday, November 05, 2020
11 | P a g e

The Department took the gross sales price of $58,966,047.85 and allocated this remaining amount to the remaining asset classes that were transferred to Digital First Media ("DFM") based on book value. From there the Department seeks to tax FCHI for the purchase price amounts allocable to: (1) Assets-Inventory Plates; and (2) Tangible Personal Properties. While we agree that these two asset classes are subject to taxation, we disagree with the methodology used in determining the purchase price allocation to these two asset classes. Applying this methodology the Department determined the computed taxable sale of fixed assets for FCHI totals $2,434,846.

The Department erred in determining the tax that was owed on the sale of assets to DFM. The errors made are as follows:

- In determining the allocation of the sales price to the different assets classes, the Department erred by not assigning a value to the sold accounts receivable ("AR") equal to the amounts received for AR. Explained differently, FCHI received a specific amount of money just for the sold AR, and as such the department should allocate the price received for the AR to the AR, as opposed to applying a percentage based off of book value;

- In determining the allocation of the sales price to the different assets classes, the Department erred by not assigning a value to the sold real property equal to the amounts agreed to by the buyer and seller. Explained differently, FCHI received a specific amount of money just for the sold real property, and as such the department should allocate the price received for the real property to the real property, as opposed to applying a percentage based off of book value;

- In determining the total book value of the assets sold of $90,938,408, the Department erred by failing to include the book value of the following assets which were also sold: (1) Trade Assets; (2) Prepaids; and (3) Other Non-Current Assets; and

- Because the book value of certain asset classes is equal to the fair market value, the Department should not ratably apply the proceeds based on the book value of the assets but rather the Department should apply the proceeds equal to the fair market value of the assets. These items include: (1) Inventory; (2) Trade Assets; (3) Prepaids; and (4) Other Non-Current Assets. Explained differently, if the book value of inventory is $100, because the book value of inventory is the same as the fair market value of the inventory, the Department should allocate $100 of the sales proceed to inventory as opposed to applying the sale proceeds ratably based on book value.

7. **Conclusion**

{00150248.DOCX}

Thursday, November 05, 2020
12 | P a g e

For the reasons stated in this letter, coupled with the more thorough analysis contained in the various position papers that were submitted by the taxpayer, the Department erred in asserting that an additional tax liability of $1,173 is owed.

Thank you for your time and consideration.

Respectfully Submitted,

**Law Offices of A. Lavar Taylor** LLP

Jonathan Amitrano

# Exhibit A

CDTFA-392 (FRONT) REV. 11 (1-18)
**POWER OF ATTORNEY**

STATE OF CALIFORNIA
CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION
EMPLOYMENT DEVELOPMENT DEPARTMENT

*Check below to indicate the appropriate agency. Please note that a separate form must be completed and provided to each agency checked.*

☒ **CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION**
PO BOX 942879
SACRAMENTO, CA 94279-0001
1-800-400-7115 (TTY:711)

☐ **EMPLOYMENT DEVELOPMENT DEPARTMENT**
PO BOX 826880 MIC 28
SACRAMENTO CA 94280-0001
1-916-654-7263 • FAX 1-916-654-9211

| TAXPAYER'S OR FEEPAYER'S NAME | BUSINESS OR CORPORATION NAME | TELEPHONE NUMBER | FAX NUMBER |
|---|---|---|---|
| | Freedom Communications Holdings, Inc. | | |

| SOCIAL SECURITY NUMBER | FEDERAL EMPLOYER IDENTIFICATION NUMBER | CALIFORNIA SECRETARY OF STATE NUMBER(S) |
|---|---|---|
| | | C0168406 |

| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION ACCOUNT/PERMIT(S) | EDD EMPLOYER ACCOUNT NUMBER |
|---|---|
| 102-501862 | |

MAILING ADDRESS *(Number and Street, City, State, ZIP Code)*
555 W 5th Street, Ste. 3725, Los Angeles CA 90013-2670

☐ **INDIVIDUAL**   ☐ **PARTNERSHIP**   ☒ **CORPORATION**   ☐ **LIMITED LIABILITY COMPANY**
☐ **OTHER**

As owner, officer, receiver, administrator, or trustee for the taxpayer or feepayer, or as a party to the tax or fee matter before the:

☒ California Department of Tax and Fee Administration     ☐ Employment Development Department

**I hereby appoint:** *[enter below the individual appointee(s) name(s), address(es) (including ZIP code), telephone number(s) and fax number(s) - do not enter names of accounting or law firms, partnerships, corporations, etc., as the appointee name]*

| APPOINTEE NAME | | | APPOINTEE NAME | | |
|---|---|---|---|---|---|
| Jonathan T. Amitrano | | | A. Lavar Taylor | | |
| APPOINTEE BUSINESS NAME *(if applicable)* | | | APPOINTEE BUSINESS NAME *(if applicable)* | | |
| Law Offices of A. Lavar Taylor, LLP | | | Law Offices of A. Lavar Taylor, LLP | | |
| APPOINTEE ADDRESS *(Number and Street)* | | | APPOINTEE ADDRESS *(Number and Street)* | | |
| 3 Hutton Centre Drive, Suite 500 | | | 3 Hutton Centre Drive, Suite 500 | | |
| (City) | (State) | (ZIP Code) | (City) | (State) | (ZIP Code) |
| Santa Ana, CA 92707 | | | Santa Ana, CA 92707 | | |
| TELEPHONE NUMBER | FAX NUMBER | | TELEPHONE NUMBER | FAX NUMBER | |
| (714) 546-0445 | (714) 546-2604 | | (714) 546-0445 | (714) 546-2604 | |

As attorney(s)-in-fact to represent the taxpayer(s) or feepayer(s) for the following tax or fee matters: *[specify type(s) of tax]*

☒ Tax and Fee Programs Administered by CDTFA     ☐ Benefit Reporting
☐ Payroll Tax Law     ☐ Other:

SPECIFY THE TAX OR FEE YEAR(S) OR PERIOD(S)
October 1, 2012 through March 31, 2016

**The attorney(s)-in-fact (or any of them) are authorized, subject to revocation, to receive confidential tax information and to perform on behalf of the taxpayer(s) the following acts for the tax or fee matters described above:** *[check the box(es) for the powers granted]*

☒ General Authorization (including all acts described below).
☐ Specific Authorization (selected acts described below).

   ☐ To confer and resolve any assessment, claim or collection of a deficiency or other tax or fee matter pending before the identified agency and attend any meetings or hearings thereto for the specified law identified above.

   ☐ To receive, but not to endorse and collect, checks in payment of any refund of taxes, penalties or interest.

   ☐ To execute petitions, claims for refund and/or amendments thereto.

   ☐ To execute consents extending the statutory period for assessment or determination of taxes.

   ☐ To represent the taxpayer for changes to their mailing address for any and all Payroll Tax Law, Benefit Reporting, both Payroll Tax Law and Benefit Reporting.

*(The back of this form must be completed)*

CFS

Freedom Communications Holdings, Inc.

CDTFA-392 (BACK) REV. 11 (1-18)

☐ To execute settlement agreements under section 1236 of the California Unemployment Insurance Code.

☐ To delegate authority or to substitute another representative.

☐ To Other acts (specify):

**This Power of Attorney revokes all earlier Power(s) of Attorney on file with the California Department of Tax and Fee Administration or the Employment Development Department as identified above for the same matters and years or periods covered by this form, except for the following:** *[specify to whom granted, date and address, or refer to attached copies of earlier power(s)]*

| NAME | DATE POWER OF ATTORNEY GRANTED |
|---|---|
| Randall Ings | |

ADDRESS *(Number and Street, City, State, ZIP Code)*

18601 Newland Street No. 62, Huntington Beach, CA 92646

**Unless limited, this Power of Attorney will remain in effect until the final resolution of all tax or fee matters specified herein.**
*[specify expiration date if limited term]*

TIME LIMIT/EXPIRATION DATE (for California Department of Tax and Fee Administration purposes)

**Signature of Taxpayer(s) or Feepayer(s)** - If a tax or fee matter concerns a joint return, both spouses must sign if joint representation is requested. If you are a corporate officer, partner, guardian, tax or fee matters partner/person, executor, receiver, registered domestic partner, administrator, or trustee on behalf of the taxpayer or feepayer, by signing this Power of Attorney you are certifying that you have the authority to execute this form on behalf of the taxpayer or feepayer.

▶ **IF THIS POWER OF ATTORNEY IS NOT SIGNED AND DATED BY AN AUTHORIZED INDIVIDUAL, IT WILL BE RETURNED AS INVALID.**

| SIGNATURE | TITLE *(if applicable)* | DATE |
|---|---|---|
| | Chief Restructuring Officer | 6/22/20 |
| PRINT NAME | | TELEPHONE |
| Brad Smith | | 310-936-3745 |
| SIGNATURE | TITLE *(if applicable)* | DATE |
| PRINT NAME | | TELEPHONE |

CFS

# Exhibit B

STATE OF CALIFORNIA

**CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION**
P.O. BOX 942879, SACRAMENTO, CA 94279-0001
1-800-400-7115 • FAX 1-916-928-6241
www.cdtfa.ca.gov

GAVIN NEWSOM
Governor

YOLANDA RICHARDSON
Secretary, Government Operations Agency

NICOLAS MADUROS
Director

BRAD SMITH
FREEDOM COMMUNICATIONS HOLDINGS, INC
555 W 5TH ST STE 3725
LOS ANGELES CA  90013-2670

| | |
|---|---|
| Letter Date: | October 7, 2020 |
| Letter ID: | L0008084092 |
| Account Type: | Sales and Use Tax |
| Account Number: | 102-501862 |
| Audit ID: | A1058 |
| Audit Period From: | November 1, 2015 |
| Audit Period To: | March 31, 2016 |

| | |
|---|---|
| Notice Service Date: | October 8, 2020 |
| Finality Date: | November 9, 2020 |

# NOTICE OF DETERMINATION

**Why we are contacting you:**
The California Department of Tax and Fee Administration (CDTFA) has determined that you are liable for tax, interest, and penalties. The balance below reflects the amount you owe.

| | |
|---|---:|
| Tax | $337,627.00 |
| Interest | 100,176.08 |
| Penalty | 0.00 |
| Other | 0.00 |
| Payments/Credits | (3,706.00) |
| Total | $434,097.08 |

**What you must do:**
You must pay in full unless you are in a payment plan for the amounts listed. Payment is due in full by the finality date.

**What will happen if you do not comply:**
Failure to pay this notice may result in additional penalties and/or interest. If you disagree with the assessment, you have the right to file a petition for redetermination within 30 days after the notice service date shown above.

**PAYMENT OPTIONS**
To make a payment online, go to our website at www.cdtfa.ca.gov and select *Make a Payment*. If you are paying by check, please write your Account Number and Letter ID (shown above) on your check and include the attached *Statement of Account* payment voucher. Keep the original notice for your records. Make your check payable to the California Department of Tax and Fee Administration and mail to P.O. Box 942879, Sacramento, CA 94279-3535. If you need additional help, please call the telephone number shown above.

**INTEREST**
Additional interest will accrue on the unpaid tax each month at the rate of 8 percent annually. Interest of $2,226.14 will accrue if the tax is not paid on or before October 31, 2020.

**PENALTY FOR FAILURE TO PAY WHEN DUE**
Generally, a penalty of 10 percent attaches to the unpaid amount of tax due if this determination is not paid on or before the finality date.



0008084092  01

CDTFA-1210-DET REV. 2 (9-20)
IL0002-25
Print

**PETITION FOR REDETERMINATION**

This determination becomes final 30 days after the notice service date, unless a petition for redetermination is filed. Any person against whom a determination is made may petition for redetermination. The petition must be in writing and state the specific grounds upon which it is founded. If an appeals conference is desired, it should be requested in the petition. To file your petition online, log in with your username and password at *onlineservices.cdtfa.ca.gov.*

Prompt payment of the undisputed portion(s) of the liability should be made. This will prevent the accrual of additional interest and will not in any way affect the protested portion(s).

A petition may not be filed prior to the notice service date. Any action taken prior to that date does not constitute a petition for redetermination.

For more information about filing a petition for redetermination and where to file your petition, please visit our website at *www.cdtfa.ca.gov.*

# EXHIBIT 7

**FREEDOM COMMUNICATIONS INC**

**ORANGE COUNTY REGISTER**

024-086069

| A Ref. | B Des. | C | D 4012 | E 1Q13-1Q16 | F (D+E) | Taxable Measure Per Audit | Department Summary | Taxpayer Summary | Diff. |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Total Subscription Revenue Freight Included | | 9,389,614 | 124,780,169 | 134,169,783 | | | | |
| 2 | | | 0 | 0 | 0 | | | | |
| 3 | Less:RIE Revenue Deductible | | | | | | | | |
| 4 | | | 0 | 0 | 0 | | | | |
| 5 | Less: Transportation Deduction | | 2,420,332 | 27,174,500 | 29,594,832 | | | | |
| 6 | | | | | | | | | |
| 7 | Adjusted Subscription Revenue for Transportation | (1.1+1.5) | 6,969,282 | 97,605,669 | 104,574,951 | | | | |
| 8 | | | 0 | | | | | | |
| 9 | Adjustment of Subscription Revenue for Digital Portion | | | 36,995,891 | 36,995,891 | | | | |
| 10 | | | | | | | | | |
| 11 | Adjustment of Subscription Revenue for Taxable Bad Debts (GL12610) | | 99,722 | 1,460,229 | 1,559,951 | | | | |
| 12 | Audited Taxable Subscription Sales Excluding (Transportation per test, Digital Subscription on ratio basis and Taxable Bad Debts) (Taxable) | (I.7-I.9+I.11) | 6,869,560 | 59,149,549 | 66,019,109 | Taxable | 66,019,109 | 30,910,681 | 35,108,428 |
| 13 | | | | | | | | | |
| 14 | Total Unreported Commercial Printing Revenue (Net of Discounts and Refunds) | | 6,753,622 | 83,886,893 | 90,640,515 | | | | |
| 15 | Allowed Unreported Commercial Printing Revenue Per Audit | | | | | | | | |
| 16 | Disallowed Unreported Commercial Printing Revenue Per Audit / Actual 20K and over | | 213,771 | 1,206,227 | 1,419,998 | Taxable | 6,611,592 | 1,946,806 | 4,664,786 |
| 17 | Disallowed Unreported Commercial Printing Revenue Per Audit / Below 50K (Test Basis) | | 118,501 | 2,294,090 | 2,412,591 | Taxable | | | |
| 18 | Disallowed Unreported Commercial Printing Revenue Per Audit / Selected Customers / Actual | | 110,469 | 2,668,534 | 2,779,003 | Taxable | | | |
| 19 | | | | | | | | | |
| 20 | Total Unreported Single Copies Sales (Net of Discounts and Refunds) | | 415,852 | 6,589,787 | 7,005,639 | | | | |
| 21 | Disallowed Unreported Single Copies Sales Per Audit / Actual | | 998 | 2,198,596 | 2,199,534 | Taxable | 2,199,534 | 33,350 | 2,166,184 |
| 22 | | | | | | | | | |
| 23 | Unreported Taxable Sales From Single Copy Sales Markup Sold through Concessionaires and Newspaper's Carriers Per Regulations 1590(b)(6) and 1699(d) | | 0 | 1,799,968 | 1,799,968 | Taxable | 1,799,968 | 0 | 1,799,968 |
| 24 | | | | | | | | | |
| 25 | Unreported Taxable Revenue from Sales of Fixed Assets | | 0 | 10,085 | 10,085 | Taxable | | | |
| 26 | | | | | | | | | |
| 27 | Unsupported Miscellaneous Income Posted To GI 73000 | | 322 | 13,645 | 13,967 | Taxable | | | |
| 28 | | | | | | | | | |
| 29 | Unreported Taxable Measure From Disallowed Debit Entries Posted To Sales Tax Payable GI Account 25120 Per 15t Re-Audit | | 0 | 143,892 | 143,892 | Taxable | | | |
| 30 | | | | | | | | | |
| 31 | Unreported Taxable Sales of Fixed Assets at Close Out Date | | 0 | 5,581,700 | 5,581,700 | Taxable | 5,581,700 | 3,025,267 | 2,556,433 |
| 32 | | | | | | | | | |
| 33 | Recorded Mactive Taxable Sales Based on Recorded Tax | | 16,522 | 447,661 | 464,183 | Taxable | 464,183 | 286,978 | 177,205 |
| 34 | | | | | | | | | |
| 35 | Total Taxable Sales Per Audit All Cases | (I.12+I.16+I.17+I.) | 7,330,083 | 75,513,947 | 82,844,030 | Taxable | | | 46,473,004 |
| 36 | | | | | | | | | |
| 37 | Reported Taxable SALES Per Sales and Use Tax Returns | | 6,057,287 | 77,656,328 | 83,713,615 | | | | |
| 38 | Over-Reported Taxable Sales per Audits | (I.33-I.35) | 1,272,796 | (2,142,381) | (869,585) | | | | |
| 39 | | | | | | | | | |
| 40 | Ex-Tax Cost Of Consumable Supplies Subject To Tax Per Statistical Sample Test | | 12,466 | 633,705 | 646,171 | Taxable | | | |

Total Recommended Taxable Measure per All Audits

Total Reported Tax Per Returns      1,285,262      (1,508,676)      (223,414)

Total Reported Tax Per Returns                                        6,711,841.00

Tax      6,711,841      7,055,745      (343,904)      **4,298,800**   Diff in Measure

**Total Difference in Taxable Measure**      **50,771,804**   Tax

**Total Difference in Tax**      4,061,744.30

8% Diff in Measure

FREEDOM COMMUNICATIONS HOLDINGS, IN          PRESS-ENTERPRISE          102-501862

| Ref. | Desc. | C | 11/01/2013-03/31/2016 | Taxable Measure Per Audit | Department Summary | Taxpayer Summary | Diff. |
|---|---|---|---|---|---|---|---|
| 1 | **Total Subscription Revenue Freight Included** | | 29,657,766 | | | | |
| 2 | | | | | | | |
| 3 | Less:RIE Revenue Deductible | | 0 | | | | |
| 4 | | | | | | | |
| 5 | Less: Transportation Deduction | | 6,355,659 | | | | |
| 6 | | | | | | | |
| 7 | Adjusted Subscription Revenue for Transportation | (l1-l5) | 23,302,107 | | | | |
| 8 | | | | | | | |
| 9 | Adjustment of Subscription Revenue for Digital Portion | | 9,553,864 | | | | |
| 10 | | | | | | | |
| 11 | Adjustment of Subscription Revenue for Taxable Bad Debts (GL12610) | | 561,477 | | | | |
| 12 | Audited Taxable Subscription Sales Excluding (Transportation per rett, Digital Subscription on ratio basis and Taxable Bad Debts) (Taxable) | (l7-l9-l11) | 13,186,766 | Taxable | 13,186,766 | 2,978,924 | 10,207,842 |
| 13 | | | | | | | |
| 14 | **Total Unreported Commercial Printing Revenue (Net of Discounts and Refunds)** | | 1,059,315 | | | | |
| 15 | Allowed Unreported Commercial Printing Revenue Per Audit | | 1,059,315 | | | | |
| 16 | Disallowed Unreported Commercial Printing Revenue Per Audit | | 0 | Taxable | | | |
| 17 | | | | | | | |
| 18 | **Total Unreported Single Copies Sales (Net of Discounts and Refunds)** | | 2,183,217 | | | | |
| 19 | Disallowed Unreported Single Copies Sales Per Audit / Actual | | 1,342,163 | Taxable | 1,342,163 | 873,330 | 468,833 |
| 20 | | | | | | | |
| 21 | Unreported Taxable Sales From Single Copy Sales Markup Sold through Concessionaires and Newspaper's Carriers Per Regulations 1590(b)(6) and 1699(d) | | 1,069,015 | Taxable | 1,069,015 | 0 | 1,069,015 |
| 22 | | | | | | | |
| 23 | Unsupported Miscellaneous Income Posted To GI 17000 | | 6,698 | Taxable | 6,698 | 6,698 | 0 |
| 24 | | | | | | | |
| 25 | Unreported Taxable Sales of Fixed Assets at Close Out Date | | 3,405,471 | Taxable | 3,405,471 | 1,835,777 | 1,569,694 |
| 26 | | | | | | | |
| 27 | Unreported Taxable Photo Reprint Revenue | | 6,698 | Taxable | 6,698 | 6,698 | 0 |
| 28 | | | | | | | |
| 29 | Recorded Mactive Taxable Sales | | 1,319 | Taxable | 1,319 | 1,319 | 0 |
| 30 | | | | | | | |
| 31 | **Total Taxable Sales Per Audit All Cases** | (l12+l16+l19+l21+l23+l25+l27+l29) | 19,018,130 | Taxable | 19,018,130 | 5,702,746 | 13,315,384 Diff in Measure |
| 32 | | | | | | | |
| 33 | Reported Taxable **SALES** Per Sales and Use Tax Returns | | 15,363,451 | | | | |
| 34 | Under-Reported **Taxable Sales** per Audits | (l29-l31) | 3,654,679 | | | | |
| 35 | | | | | | | |
| 36 | Ex-Tax Cost Of Consumable Supplies Subject To Tax Per Test | | 99,931 | Taxable | | | |
| 37 | | | | | | | |
| 38 | Total Recommended Taxable Measure per All Audits | | 3,754,610 | | | | |
| 39 | | | | | | | |
| 40 | Total Reported Tax Per Returns | | 1,231,217 | | 1,231,217 | 1,253,423 | (22,206) Diff in Measure 277,575 |

Tax    Tax    Tax

**Total Difference in Taxable Measure** 13,592,959    8%
**Total Difference in Tax** 1,087,436.71

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**300 S. Spring Street, Suite 1702, Los Angeles, CA 90033.**

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF WILLIAM P. KIMSEY, CPA, IN SUPPORT OF THE CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION'S (CDTFA) OPPOSITION TO MOTION OF DEBTORS AND DEBTORS-IN POSSESSION UNDER BANKRUPTCY CODE 502(C) TO ESTIMATE CLAIMS OF THE CDTFA AND TO DETERMINE THAT CDTFA OWES DEBTORS REFUNDS IN EXCESS OF THE CLAIMS OF CDTFA** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 1, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

March 1, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy** kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **David M Banker** dbanker@lowenstein.com, dbanker@lowenstein.com
- **Richard L Barnett** rick@barnettrubin.com, kelly@barnettrubin.com
- **James Cornell Behrens** jbehrens@milbank.com, gbray@milbank.com; mshinderman@milbank.com; dodonnell@milbank.com; jbrewster@milbank.com; JWeber@milbank.com
- **Shraddha Bharatia** notices@becket-lee.com
- **Matthew Bouslog** MBouslog@gibsondunn.com, jsprecher@gibsondunn.com
- **J Scott Bovitz** bovitz@bovitz-spitzer.com
- **Larry Butler** notices@becket-lee.com
- **Frank Cadigan** frank.cadigan@usdoj.gov
- **Andrew W Caine** acaine@pszjlaw.com
- **David Cantrell** dcantrell@lc-law-llp.com
- **Jeffrey D Cawdrey** jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com
- **Conrad K Chiu** cchiu@pryorcashman.com
- **Shawn M Christianson** cmcintire@buchalter.com, schristianson@buchalter.com
- **Theodore A Cohen** tcohen@sheppardmullin.com, amontoya@sheppardmullin.com
- **Erinn M Contreras** econtreras@sheppardmullin.com, nsaucedo@sheppardmullin.com
- **Joseph Corrigan** Bankruptcy2@ironmountain.com
- **Raphael Cung** rcung@callahan-law.com, jeggleston@callahan-law.com; deisenbrey@callahan-law.com; mmartinez@callahan-law.com
- **Michael T Delaney** mdelaney@bakerlaw.com
- **Jessica DiFrancesco** notices@becket-lee.com
- **Caroline Djang** caroline.djang@bbklaw.com, sansanee.wells@bbklaw.com;wilma.escalante@bbklaw.com
- **Jeffrey W Dulberg** jdulberg@pszjlaw.com
- **Robert J Feinstein** rfeinstein@pszjlaw.com
- **Scott D Fink** colcaecf@weltman.com
- **Marc C Forsythe** kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com
- **Alan J Friedman** afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- **Matthew T Furton** mfurton@lockelord.com, cpaul@lockelord.com;chicagodocket@lockelord.com
- **Thomas M Gaa** tgaa@bbslaw.com
- **Beth Gaschen** bgaschen@wgllp.com, kadele@wgllp.com; vrosales@wgllp.com; cbmeeker@gmail.com; cyoshonis@wgllp.com; lbracken@wgllp.com
- **Nancy S Goldenberg** nancy.goldenberg@usdoj.gov
- **David B Golubchik** dbg@lnbyb.com, stephanie@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**

- **Christopher J Green** chrisgreen@ucla.edu, chrisgreen@ucla.edu;christopher-green-2815@ecf.pacerpro.com
- **Justin D Harris** jdh@harrislawfirm.net, felicia@harrislawfirm.net
- **Michael J Hauser**  michael.hauser@usdoj.gov
- **Eric M Heller** eric.m.heller@irscounsel.treas.gov

- **Lydia A Hewett**  lydia.hewett@cpa.state.tx.us
- **Joan Huh**  joan.huh@cdtfa.ca.gov
- **Lillian Jordan** enotices@donlinrecano.com, rmapa@donlinrecano.com
- **Samuel M Kidder** skidder@bhfs.com
- **Jeannie Kim** jkim@buchalter.com, lsemeraro@sheppardmullin.com
- **Alan M Kindred** akindred@leechtishman.com, alankindred@hotmail.com;
dtomko@leechtishman.com; challer@leechtishman.com
- **Armand R. Kizirian** armand@boyamianlaw.com, michael@boyamianlaw.com;
brett@boyamianlaw.com; jessica@boyamianlaw.com; jennifer@boyamianlaw.com
- **Stuart I Koenig** Skoenig@leechtishman.com, sfrey@leechtishman.com;jabrams@leechtishman.com
- **Alan J Kornfeld** akornfeld@pszjlaw.com, mdj@pszjlaw.com
- **Matthew J Kraus** mkraus@lc-lawyers.com, mbuchheit@lc-lawyers.com
- **Jeffrey C Krause** jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
- **Yochun Katie Lee** kylee@akingump.com, tsouthwell@akingump.com;westdocketing@akingump.com
- **Elan S Levey** elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov
- **William N Lobel** wlobel@pszjlaw.com, nlockwood@pszjlaw.com;jokeefe@pszjlaw.com;banavim@pszjlaw.com
- **Aaron J Malo** amalo@sheppardmullin.com, jsummers@sheppardmullin.com
- **Robert S Marticello** Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;
lgarrett@swelawfirm.com; jchung@swelawfirm.com
- **Ashley M McDow** amcdow@foley.com, sgaeta@foley.com; mhebbeln@foley.com;
swilson@foley.com; jsimon@foley.com
- **David W. Meadows**  david@davidwmeadowslaw.com
- **Reed M Mercado** rmercado@sheppardmullin.com
- **Harlene Miller** harlene@harlenemillerlaw.com, harlenejd@gmail.com
- **Raymond F Moats**  colcaecf@weltman.com
- **Elizabeth L Musser** emusser@londonfischer.com
- **Jeffrey P Nolan**  jnolan@pszjlaw.com
- **Courtney E Norton** cnorton@greenbergglusker.com,
kwoodson@greenbergglusker.com; jking@greenbergglusker.com;
calendar@greenbergglusker.com
- **Ryan D O'Dea** rodea@shulmanbastian.com, LGauthier@shulmanbastian.com
- **John M O'Donnell** john.o'donnell@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov
- **Ernie Zachary Park**  ernie.park@bewleylaw.com
- **Ronak N Patel** rpatel@rivco.org, dresparza@rivco.org;mdominguez@rivco.org
- **Mary A Petrovic** petrovic.mary@pbgc.gov, efile@pbgc.gov
- **Marc S Pfeuffer** pfeuffer.marc@pbgc.gov, efile@pbgc.gov
- **Kathy Bazoian Phelps** kphelps@diamondmccarthy.com, ericka.clarke@diamondmccarthy.com
- **Christopher E Prince** , jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- **Amelia Puertas-Samara** itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov
- **Christopher B Queally** cqueally@callahan-law.com, jluirette@callahan-law.com
- **Michael B Reynolds** mreynolds@swlaw.com, kcollins@swlaw.com
- **Todd C. Ringstad** becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Christopher O Rivas** crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Jeremy E Rosenthal** jrosenthal@sidley.com
- **Joel W Ruderman** ruderman.joel@pbgc.gov, email@pbgc.gov
- **Peter J Rudinskas**  pjr.legal@gmail.com
- **James M Sabovich** jsabovich@callahan-law.com, ksalour@callahan-law.com;jkirwin@callahan-law.com;
rcung@callahan-law.com; bmccormack@callahan-law.com; erichards@callahan-law.com; SRobinson@callahan-
law.com
- **Jonathan C Sandler** jsandler@bhfs.com, pherron@bhfs.com;sgrisham@bhfs.com
- **Scott A Schiff**  sas@soukup-schiff.com
- **Daren M Schlecter** daren@schlecterlaw.com, assistant@schlecterlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                **F 9013-3.1.PROOF.SERVICE**

- **George E Schulman** GSchulman@DanningGill.Com, danninggill@gmail.com;gschulman@ecf.inforuptcy.com
- **Leonard M Shulman** lshulman@shulmanbastian.com
- **Donald W Sieveke** , dws4law@pacbell.net
- **Donald W Sieveke** ibmoola@yahoo.com, dws4law@pacbell.net
- **David A Smyth** smythlaw@gmail.com, dsmyth2_@hotmail.com
- **Alex E Spjute** spjute@hugheshubbard.com, gaurav.reddy@hugheshubbard.com
- **Sarah Stuppi** Sarah@stuppilaw.com
- **Charles Tsai** charles.tsai@doj.ca.gov
- **Helena Tseregounis** htseregounis@sidley.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
- **Daniel Uribe** duribe@gmail.com
- **Elissa A Wagner** ewagner@pszjlaw.com
- **Michael A Wallin** mwallin@wallinrussell.com
- **Michael J. Weiland** mweiland@wgllp.com, kadele@wgllp.com; vrosales@wgllp.com; cbmeeker@gmail.com; lbracken@wgllp.com
- **Scott S Weltman** colcaecf@weltman.com
- **Johnny White** JWhite@wrslawyers.com, aparisi@wrslawyers.com; eweiman@wrslawyers.com; chamilton@wrslawyers.com
- **Brandon J Witkow**
- **Steven D Zansberg**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**NO PAPER COPIES**

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 1, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Mark S. Wallace 411 West
Fourth Street
Santa Ana, CA 92701
 (*Via Overnight Courier*)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 1, 2021 | Yesenia Palomarez | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.