Alan J. Friedman - Bar No. 132580
Rika M. Kido - Bar No. 273780
SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email:    AFriedman@shulmanbastian.com
          RKido@shulmanbastian.com

*Counsel for Debtors and Co-Plan Proponents*

Robert J. Feinstein (Pro Hac Vice)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    rfeinstein@pszjlaw.com
          jdulberg@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*
*Co-Plan Proponents*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>FREEDOM COMMUNICATIONS, INC., a Delaware corporation et al.,<br><br>       Debtors and Debtors-in-Possession.<br><br>Affects:<br><br>☒  All Debtors<br><br>☐  Freedom Communications, Inc., a Delaware corporation, ONLY<br><br>☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY<br><br>☐  Freedom Services, Inc., a Delaware corporation, ONLY<br><br>☐  2100 Freedom, Inc., a Delaware corporation, ONLY<br><br>☐  OCR Community Publications, Inc., a California corporation, ONLY<br><br>☐  Daily Press, LLC, a California limited liability company, ONLY<br><br>☐  Freedom California Mary Publishing, Inc., a California corporation, ONLY<br><br>☐  Freedom California Ville Publishing Company LP, a California limited partnership, ONLY | Case No. 8:15-bk-15311-MW<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8:15-bk-15337-MW; 8:15-bk-15339-MW; 8:15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW)<br><br>**SUBMISSION OF CONFIRMED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS MODIFIED**<br><br>**Confirmation Hearing:**<br>Date:    July 7, 2021<br>Time:    2:00 p.m.<br>Place:   Courtroom 6C<br>        United States Bankruptcy Court<br>        Ronald Reagan Federal Building<br>        411 W. Fourth Street<br>        Santa Ana, CA 92701 |

☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

☐ Freedom Newspapers, a Texas general partnership, ONLY

☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

☐ OCR Information Marketing, Inc., a California corporation, ONLY

☐ Odessa American, a Texas general partnership, ONLY

☐ Orange County Register Communications, Inc., a California corporation, ONLY

☐ Victor Valley Publishing Company, a California corporation, ONLY

☐ Victorville Publishing Company, a California limited partnership, ONLY

☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

☐ Freedom SPV I, LLC, a Delaware limited liability company, ONLY

☐ Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

☐ Freedom SPV V, LLC, a Delaware limited liability company, ONLY

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

1    Attached is a copy of the *Second Amended Joint Chapter 11 Plan of Liquidation Proposed*

2 *by Debtors and Official Committee of Unsecured Creditors, as Modified* ("Plan") which was

3 confirmed by the Court and approved at the confirmation hearing held on July 7, 2021.  No changes

4 to the Plan were made, the Plan being the same as that filed with the Court on May 6, 2021 [Docket

5 No. 1760].

6

7                          Respectfully submitted,

8                          **SHULMAN BASTIAN FRIEDMAN & BUI LLP**

9

10   DATED:  July 12, 2021          By:  _____/s/ Alan J. Friedman_____

11                                Alan J. Friedman
                                   Rika M. Kido
12                                 Attorneys for Debtors and Co-Plan Proponents

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Alan J. Friedman (Bar No. 132580)
SHULMAN BASTIAN FRIEDMAN & BUI
LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

*Counsel for the Debtors
Co-Plan Proponents*

Robert J. Feinstein (Pro Hac Vice)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    rfeinstein@pszjlaw.com
          jdulberg@pszjlaw.com

*Counsel for the Official Committee of
Unsecured Creditors
Co-Plan Proponents*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:15-bk-15311-MW |
| FREEDOM COMMUNICATIONS, INC., a Delaware corporation, et al.,[1] | Chapter 11 |
| Debtors and Debtors-in-Possession. | (Jointly Administered with Case Nos. 8:15-bk-15312-MW; 8:15-bk-15313-MW; 8:15-bk-15315-MW; 8:15-bk-15316-MW; 8:15-bk-15317-MW; 8:15-bk-15318-MW; 8:15-bk-15319-MW; 8:15-bk-15320-MW; 8:15-bk-15321-MW; 8:15-bk-15322-MW; 8:15-bk-15323-MW; 8:15-bk-15324-MW; 8:15-bk-15325-MW; 8:15-bk-15326-MW; 8:15-bk-15327-MW; 8:15-bk-15328-MW; 8:15-bk-15329-MW; 8:15-bk-15330-MW; 8:15-bk-15332-MW; 8-15-bk-15337-MW; 8:15-bk-15339-MW; 8-15-bk-15340-MW; 8:15-bk-15342-MW; 8:15-bk-15343-MW) |
| Affects: | |
| ☒  All Debtors | |
| ☐  Freedom Communications, Inc., a Delaware corporation, ONLY | |
| ☐  Freedom Communications Holdings, Inc., a Delaware corporation, ONLY | |
| ☐  Freedom Services, Inc., a Delaware corporation, ONLY | |

---

[1] The last four digits of the Debtors' federal tax identification numbers are as follows: Freedom Communications, Inc. (0750); Freedom Communications Holdings, Inc. (2814); Freedom Services, Inc. (3125); 2100 Freedom, Inc. (7300); OCR Community Publications, Inc. (9752); Daily Press, LLC (3610); Freedom California Mary Publishing, Inc. (4121); Freedom California Ville Publishing Company LP (7735); Freedom Colorado Information, Inc. (7806); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Newspaper Acquisitions, Inc. (4322); Freedom Newspapers, Inc. (7766); Freedom Newspapers, Inc. (3240); Freedom Newspapers of Southwestern Arizona, Inc. (5797); OCR Information Marketing, Inc. (7983); Odessa American (7714); Orange County Register Communications, Inc. (7980); Victor Valley Publishing Company (6082); Victorville Publishing Company (7617); Freedom SPV II, LLC (8253); Freedom SPV VI, LLC (8434); Freedom SPV I, LLC (3293); Freedom SPV IV, LLC (8500); and Freedom SPV V, LLC (9036). The Debtors' mailing address is 625 N. Grand Avenue, Santa Ana, California 92701.

1 ☐ 2100 Freedom, Inc., a Delaware corporation, ONLY

2 ☐ OCR Community Publications, Inc., a California corporation, ONLY

3 ☐ Daily Press, LLC, a California limited liability company, ONLY

4

5 ☐ Freedom California Mary Publishing, Inc., a California corporation, ONLY

6 ☐ Freedom California Ville Publishing Company LP, a California limited partnership, ONLY

7

8

9 ☐ Freedom Colorado Information, Inc., a Delaware corporation, ONLY

10 ☐ Freedom Interactive Newspapers, Inc., a California corporation, ONLY

11

12 ☐ Freedom Interactive Newspapers of Texas, Inc., a Delaware corporation, ONLY

13 ☐ Freedom Newspaper Acquisitions, Inc., a Delaware corporation, ONLY

14

15 ☐ Freedom Newspapers, a Texas general partnership, ONLY

16

17 ☐ Freedom Newspapers, Inc., a Delaware corporation, ONLY

18 ☐ Freedom Newspapers of Southwestern Arizona, Inc., a California corporation, ONLY

19

20 ☐ OCR Information Marketing, Inc., a California corporation, ONLY

21 ☐ Odessa American, a Texas general partnership, ONLY

22 ☐ Orange County Register Communications, Inc., a California corporation, ONLY

23

24 ☐ Victor Valley Publishing Company, a California corporation, ONLY

25 ☐ Victorville Publishing Company, a California limited partnership, ONLY

26

27 ☐ Freedom SPV II, LLC, a Delaware limited liability company, ONLY

28 ☐ Freedom SPV VI, LLC, a Delaware limited liability company, ONLY

---

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS MODIFIED**

**Disclosure Statement Approval Hearing**:
Date:       April 28, 2021
Time:       2:00 p.m.
Place:      Courtroom 6C
            411 West Fourth Street
            Santa Ana, CA 92701
Judge:      Honorable Mark S. Wallace


**Confirmation Hearing**:
Date:       July 7, 2021
Time:       2:00 p.m.
Place:      Courtroom 6C
            411 West Fourth Street
            Santa Ana, CA 92701
Judge:      Honorable Mark S. Wallace

2

☐   Freedom SPV I, LLC, a Delaware limited liability company, ONLY

☐   Freedom SPV IV, LLC, a Delaware limited liability company, ONLY

☐   Freedom SPV V, LLC, a Delaware limited liability company, ONLY

# INTRODUCTION[2]

The Debtors and the Committee hereby propose this Plan, which provides for the distribution of the remaining assets of the Debtors' estates, consisting primarily of net cash proceeds from certain litigation settlements.  Reference is made to the Disclosure Statement for (i) a discussion of the Debtors' history, businesses, assets and liabilities, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan.  The Debtors and the Committee are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for the liquidation, collection, disposition and distribution of the remaining assets of the Debtors' Estates and winding-up the Debtors' affairs and the Chapter 11 Cases. Substantially all of the Debtors' commercial assets were sold to a third party buyer and remaining material causes of action of the Debtors were addressed and resolved under certain settlements including with the Pension Benefit Guaranty Corporation.  The Plan proposes to fairly and efficiently allocate the Debtors' remaining Distributable Assets in a manner that is supported by the principal constituencies in the Chapter 11 Cases and will allow such cases to be promptly resolved.

This Plan will be implemented through the substantive consolidation of the Debtors' Estate for the purposes of voting and Distributions under the Plan, the re-vesting of the Estates' assets in Liquidating Debtor Freedom Communications, Inc., and the utilization of the current CRO as the Plan Administrator to liquidate or otherwise dispose of the Estates' remaining assets, if and to the extent such assets were not previously monetized or otherwise transferred by the Debtors prior to the Effective Date.  All Intercompany Claims will be waived and eliminated.  The Plan Administrator will act for the Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under this Plan, subject to the provisions hereof, and shall, among other powers, wind up the affairs of the Liquidating Debtors; use, manage, sell, abandon and/or otherwise dispose of the remaining property of the Estates; prosecute objections to Claims and any litigation on behalf of the Liquidating Debtors; cause distributions to be made to Creditors pursuant to this Plan; and take such other actions required under or consistent with this Plan.

Under the Plan, all assets will be distributed in accordance with the priorities established in the Bankruptcy Code, including payment in full on the Effective Date of Allowed Administrative Expenses, unless otherwise agreed with the Holders of such Claims.

The Holders of Allowed Miscellaneous Secured Claims will either:  (a) be paid in cash up to the value of their collateral, or (b) have their obligations assumed or otherwise addressed as provided for herein, including pursuant to agreements with such Holders.  As discussed in the Disclosure Statement, the Secured Claims of the Debtors' prepetition secured lenders, the debtor-in-possession financing lenders, and the PBGC were paid in full or otherwise addressed and resolved prior to the

---

[2] Capitalized terms used in this Introduction have the meanings ascribed to those terms in Article I below.

filing of this Plan.

Holders of Allowed General Unsecured Claims in Class 3 will receive any remaining Net Distributable Estate Assets after the payment of (or reserves for) Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims, and Plan Expenses; provided that in the event that the aggregate Cash recovery for Holders of Allowed General Unsecured Claims (other than the PBGC) exceeds $1,000,000, then any excess Cash proceeds will be shared ratably by the Holders of Allowed General Unsecured Claims and the Holder of the PBGC Unsecured Claims in Class 4. The PBGC (or other Holder of the PBGC Unsecured Claims) will receive the treatment provided for the PBGC Unsecured Claims set forth in the PBGC Settlement, including, as noted, the PBGC sharing ratably with Holders of Allowed Class 3 General Unsecured Claims any excess Cash proceeds over $1,000,000 in the aggregate.

Lastly, all Interests in the Debtors will be canceled, and any associated management rights held by Holders of Interests will be void and of no force and effect as of the Effective Date. Holders of Interests will not receive any Distribution or other property pursuant to the Plan.

The Disclosure Statement distributed with this Plan contains a discussion of, among other things, the Debtors' history, a summary of the Debtors' assets and liabilities, a summary of what Holders of Claims and Interests will receive under this Plan, a discussion of certain alternatives to this Plan, and a summary of the procedures and voting requirements necessary for Confirmation of this Plan. The Disclosure Statement is intended to provide Holders of Claims with information sufficient to enable such Holders to vote on this Plan.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims to the extent required by section 1125 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

# **ARTICLE I**

## **DEFINED TERMS AND RULES OF INTERPRETATION**

For purposes of "this Plan" or "the Plan" as used herein:

(a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender;

(b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented;

(d) unless otherwise specified, all references in the Plan to sections and exhibits are references to sections and exhibits of or to the Plan;

(e) the words "herein," "hereof," "hereto," "hereunder," "herewith," and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan;

(f) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

(g) any term used in capitalized form in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and

(h) the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document other than the Confirmation Order.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

The following capitalized terms used in the Plan shall have following meanings:

**1.1** **Administrative Expense:** An unpaid administrative expense of the kind described in sections 365, 503(b) and 507(a)(2) of the Bankruptcy Code against any of the Debtors, including, without limitation, (a) the actual, necessary costs and expenses of preserving the Estates of the Debtors, (b) compensation and reimbursement of expenses of professionals and reimbursement of expenses of Committee members, in each case, to the extent allowable under sections 327, 328, 330(a), 331, 503(b) and/or 1103 of the Bankruptcy Code and Allowed or otherwise payable pursuant to orders of the Bankruptcy Court, and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930, including U.S. Trustee Fees.

**1.2** **Allowed**, **Allowed Claim**, or **Allowed [    ] Claim:** With respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim that has been scheduled by any of the Debtors in their Schedules as other than disputed, contingent or unliquidated which has not been superseded by a filed proof of claim and which scheduled Claim has not been amended; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed by the Liquidating Debtors on or after the Effective Date and, to the extent necessary, approved by the Bankruptcy Court; (d) a Claim that has been timely filed by the Bar Date for which no objection has been filed by the Objection Deadline; or (e) a Claim that is allowed pursuant to the terms of this Plan. For the avoidance of doubt: (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder solely by virtue of being allowed for voting purposes, and (ii) except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been Filed shall not be considered Allowed under this Plan.

**1.3** **Avoidance Claims:** Any Rights of Action arising under chapter 5 of the Bankruptcy Code or applicable federal or state law and the proceeds thereof. As discussed in the Disclosure Statement, the Debtors and Liquidating Debtors prosecuted or otherwise pursued numerous Avoidance Claims prior to the filing of the Plan, and do not anticipate prosecuting any Avoidance Claims after the Effective Date.

**1.4** **Ballot:** The form approved by the Bankruptcy Court and distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which is to be indicated, among other things, acceptance or rejection of the Plan.

**1.5** **Bankruptcy Code:** Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as may be amended).

**1.6** **Bankruptcy Court:** The United States Bankruptcy Court for the Central District of California, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the Central District of California.

**1.7** **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the Local Rules of the Bankruptcy Court.

**1.8** **Bar Date:** The applicable deadlines in the Chapter 11 Cases for filing any and all Claims (including Administrative Expenses).

**1.9** **Bar Date Order:** The order or orders of the Bankruptcy Court setting the Bar Date, including the *Order Granting Motion for Order Establishing a Bar Date for Filing Proofs of Claim and Approving Form and Manner of Notice of Bar Date* [Docket No. 355].

**1.10** **Business Day:** Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.11** **Cash:** Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

**1.12** **Chapter 11 Cases:** (a) When used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under case number 15-bk-15311-MW.

**1.13** **Claim:** Any claim against any of the Debtors or any property of the Debtors within the meaning of section 101(5) of the Bankruptcy Code including, without limitation, claims of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**1.14** **Class:** Each category of Claims or Interests classified in Article III of the Plan pursuant to section 1122 of the Bankruptcy Code.

**1.15** **Class 3 Distribution Date(s):** This term has the meaning set forth in Section 3.2.3 of this Plan.

**1.16** **Committee:** The Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these Chapter 11 Cases, as it may be reconstituted from time to time.

**1.17** **Committee Retained Professionals**: The Committee's attorneys and other professionals (solely in their respective capacity as professionals of the Committee).

**1.18** **Confirmation:** The approval by the Bankruptcy Court of this Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

**1.19** **Confirmation Date:** The date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**1.20** **Confirmation Hearing:** The hearing(s) on Confirmation of the Plan, to be held on the date or dates established by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

**1.21** **Confirmation Order:** The order entered by the Bankruptcy Court confirming the Plan.

**1.22    Consummation:** Substantial consummation of the Plan as that term is used in section 1127(b) of the Bankruptcy Code.

**1.23    Creditor:** Any Person who is the Holder of a Claim.

**1.24    Debtor Retained Professionals:** The Debtors' attorneys and other professionals (solely in their respective capacity as attorneys or other professionals of the Debtors).

**1.25    Debtors:** The debtors and debtors in possession in the Chapter 11 Cases.

**1.26    Disallowed** or **Disallowed Claim:** With respect to any Claim, except as otherwise provided herein, a Claim or any portion thereof that (a) has been disallowed by agreement with the creditor, (b) has been disallowed by Final Order, (c) is listed in the Schedules in an unknown amount, as zero, as contingent, disputed, or unliquidated, or is not listed in the Schedules, and as to which no proof of Claim or Administrative Expense has been Filed, or (iv) has been withdrawn by the applicable creditor.

**1.27    Disclosure Statement:** The *Second Amended Disclosure Statement in Respect of Second Amended Joint Chapter 11 Plan of Liquidation Proposed By Debtors and Official Committee of Unsecured Creditors*, as it may be amended, modified or supplemented from time to time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Plan.

**1.28    Disputed:** With respect to any Claim or Interest, any Claim or Interest that is: (a) disputed under the Plan, or subject to a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (b) a Claim, on account of which a proof of Claim was filed or which has been otherwise asserted and in respect of which Claim the Objection Deadline has not expired, (i) for which a corresponding Claim has not been listed in the Debtors' Schedules or for which the corresponding Claim is listed in the Debtors' Schedules with a lower amount, with a differing classification, or as disputed, contingent, or unliquidated, (ii) which has not been allowed either by a Final Order, by the Plan, or under a stipulation or settlement with the Debtors or the Liquidating Debtors, and (iii) which Claim the Plan Administrator has not determined will not be subject to an objection or request for estimation; (c) contingent or unliquidated; (d) improperly asserted, by the untimely or otherwise improper filing of proof of such Claim as required by order of the Bankruptcy Court; or (e) any other Claim that is not Allowed.  A Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of distribution until it is no longer Disputed.

**1.29    Distributable Assets:** Except as otherwise noted below, any and all real or personal property of any of the Debtors of any nature, including, without limitation, any Claims, Retained Rights of Action, books and records, any other general intangibles of any of the Debtors, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the applicable Estate within the scope of section 541 of the Bankruptcy Code.  Notwithstanding the foregoing, the term "Distributable Assets" does not include any property that has been abandoned by any Estate pursuant to a Final Order of the Bankruptcy Court.

**1.30    Distributable Estate Assets**: Collectively, (i) the Cash on hand of the Debtors from and after the Effective Date (which was approximately $2,215,140.08 in Cash as of June 2, 2020); (ii) Retained Rights of Action; and (iii) any other remaining property or assets of the Debtors immediately prior to the Effective Date.

**1.31    Distribution:** The transfer of Cash or other property by the Plan Administrator to the Holders of Allowed Claims.

**1.32    Effective Date:**  The first Business Day immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

**1.33    Equity Security:**  Any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

**1.34    Estates:**  The estates created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**1.35    Excess Net Distributable Assets:**  This term has the meaning set forth in Section 3.2.3 of this Plan.

**1.36    Exculpated Parties:**  Each in their capacities as such, (a) the Debtors, (b) the present and former officers, directors, managers, and employees of the Debtors who served in such capacities at any point from and after the Petition Date, (c) the Debtor Retained Professionals, (d) the Committee and its present and former members (solely in their respective capacity as members of the Committee), (e) the Committee Retained Professionals, and (f) the respective successors or assigns of the foregoing parties.

**1.37    FCI:**  Debtor Freedom Communications, Inc., either in its capacity as debtor and debtor in possession under chapter 11 of the Bankruptcy Code in the Chapter 11 Cases or otherwise from and after the Effective Date.

**1.38    Fee Applications:** Applications of Professional Persons for allowance of compensation and reimbursement of expenses incurred in the Chapter 11 Cases

**1.39    File** or **Filed:**  Filed of record and entered on the docket in the Chapter 11 Cases.

**1.40    Final Decree:**  The order entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing a Chapter 11 Case.

**1.41    Final Order:**  A judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which judgment, order, ruling or other decree has not been reversed, stayed, revoked, modified, supplemented or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.  For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be or has been filed with respect to such order.

**1.42    Final Resolution Date:** The date on which all Disputed Claims of Creditors shall have been resolved by Final Order or otherwise finally determined.

**1.43    General Unsecured Claim:**  A Claim, other than (a) an Administrative Expense, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, (d) an Intercompany Claim, (e) a Miscellaneous Secured Claim, and (f) a PBGC Unsecured Claim.

**1.44    Governmental Unit:** This term shall have the meaning set forth in section 101(27) of the Bankruptcy Code

**1.45    Holder:**  The beneficial owner of record of any Claim or Interest.

**1.46    Impaired:** This term shall have the meaning set forth in section 1124 of the Bankruptcy Code.

**1.47    Insider:** This term shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

**1.48    Insured Claim:** Any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage) that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**1.49    Intercompany Claim:** Any Claim asserted by one of the Debtors against any of the other Debtors.

**1.50    Interest:** (a) Any Equity Security, including all membership interests, shares or similar securities, whether or not transferable or denominated "stock" and whether issued, unissued, authorized or outstanding; (b) any warrant, option, or contractual right to purchase, sell, subscribe or acquire such Equity Securities at any time and all rights arising with respect thereto; and (c) any similar interest in any of the Debtors.

**1.51    IRS:** The Internal Revenue Service.

**1.52    Lien:** Any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

**1.53    Liquidating Debtors:** The Debtors on and after the Effective Date.

**1.54    Miscellaneous Secured Claim:** Any Secured Claim that has not been fully paid or otherwise satisfied or resolved pursuant to order(s) of the Bankruptcy Court prior to the entry of an order approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.  For the avoidance of doubt, this term does not include any Secured Claims of the PBGC, which claims shall be entitled to the treatment set forth in the PBGC Settlement and PBGC Settlement Order.

**1.55    Net Distributable Estate Assets:** The Distributable Estate Assets from and after the Effective Date, once such assets have been reduced to Cash, net of amounts paid in respect of Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims, and Plan Expenses and/or reserves established for any of the foregoing, and excluding those Distributable Estate Assets that are subject to any Liens until such time that such Liens are satisfied or otherwise addressed in full.

**1.56    Objection Deadline:** The deadline to object to Claims and/or Interests specified in Section 8.2 of the Plan, as may be extended pursuant thereto.

**1.57    PBGC:** Pension Benefit Guaranty Corporation or its successor or assign.

**1.58    PBGC Settlement**: That certain *Settlement Agreement* dated November 22, 2019, between and among the Committee, the PBGC, and the Debtors, as amended, modified and/or supplemented from time to time, and as approved by the Bankruptcy Court and subject to the PBGC Settlement Order.

**1.59    PBGC Settlement Order**: The order of the Bankruptcy Court entered January 13, 2020 [Docket No. 1609] approving the PBGC Settlement, subject to the terms and conditions of the PBGC Settlement Order.

**1.60    PBGC Unsecured Claim(s)**: The general unsecured claims of the PBGC against the Debtors as described in the PBGC Settlement.

**1.61    Person:** Any person or organization created or recognized by law, including any association,

9

company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.62** **Petition Date:** November 1, 2015 or November 2, 2015, the date, as applicable, on which each of the Debtors filed its petition for relief under chapter 11 of the Bankruptcy Code.

**1.63** **Plan:** This *Second Amended Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors*, as it may be amended or modified from time to time.

**1.64** **Plan Administrator:** Brad Smith, or any duly selected successor.

**1.65** **Plan Expenses:** The expenses incurred or payable by the Liquidating Debtors following the Effective Date (including the reasonable fees and costs of attorneys and other professionals) relating to implementation of the Plan, for the purpose of (a) resolving Claims and effectuating Distributions to Creditors under the Plan, (b) otherwise implementing the Plan and closing the Chapter 11 Cases, or (c) undertaking any other matter relating to the Plan.

**1.66** **Plan Proponents:** Together, the Debtors and the Committee.

**1.67** **Plan Supplement:** The supplement to the Plan to be Filed by the Plan Proponents with the Bankruptcy Court, which supplement shall contain forms of certain substantially final documents (if any) required for the implementation of the Plan, no later than ten (10) calendar days prior to the deadline for voting on the Plan. The Plan Proponents shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**1.68** **Post-Effective Date Service List:** Collectively, (i) the Plan Administrator; (ii) the U.S. Trustee; (iii) PBGC; and (iv) any other party specifically requesting service of all documents in these Bankruptcy Cases from and after the Effective Date.

**1.69** **Priority Non-Tax Claim:** Any Claim, other than an Administrative Expense and a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

**1.70** **Priority Tax Claim:** A Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.71** **Pro Rata:** This term means, at any time, the proportion that the face amount of a Claim in a particular Class (or particular Classes, if applicable) bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class(es); and "face amount," as used herein, means (a) when used in reference to a Disputed Claim, the full stated liquidated amount claimed by the Holder of the Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicably bankruptcy law; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**1.72** **Pro Rata Class 3 / Class 4 Distribution Trigger Event:** This term has the meaning set forth in Section 3.2.3 of this Plan.

**1.73** **Professional Fee Claim:** An Administrative Expense of a Professional Person for compensation for services rendered and reimbursement of costs, expenses or other charges incurred on or after the Petition Date and on or before the Effective Date.

**1.74** **Professional Person:** Persons retained or to be compensated by the Debtors or their Estates pursuant to sections 326, 327, 328, 330, 363, 503(b), and/or 1103 of the Bankruptcy Code.

**1.75** **Record Date:**  The Effective Date or such other date that may be approved by the Bankruptcy Court.

**1.76** **Released Debtor/Committee Parties:**  Collectively, (i) the Debtors, (ii) the Estates, (iii) the Debtors' directors, officers, managers, and employees (as applicable) who served in such capacities during the Chapter 11 Cases or a portion thereof, (iv) the Debtor Retained Professionals, (v) the Committee and its members (solely in their respective capacity as members of the Committee), (vi) the Committee Retained Professionals, and (viii) the respective successors or assigns of the foregoing parties.

**1.77** **Released Parties:**  Collectively, (i) the Debtors' directors, officers, managers, and employees (as applicable) who served in such capacities during the Chapter 11 Cases or a portion thereof, (ii) the Debtor Retained Professionals, (iii) the Committee and its members (solely in their respective capacity as members of the Committee), (iv) the Committee Retained Professionals, and (vi) the respective successors or assigns of the foregoing parties.

**1.78** **Releasing Creditor:**  Each Holder of a Claim that votes to accept, or is deemed to accept, the Plan, other than any Holder of a Class 3 Claim that affirmatively elects on its Ballot to opt out of being a Releasing Creditor.

**1.79** **Retained Rights of Action:**  All Rights of Action belonging to any of the Debtors or the Estates as of the Effective Date, including, without limitation and as applicable, Avoidance Claims (including those disclosed in the Schedules), but excluding those Rights of Action specifically released under the Plan or the Confirmation Order.  The Retained Rights of Action include, without limitation, (x) any and all rights of the Debtors or the Estates to pursue any Rights of Action against any third parties, whether or not pending and whether or not disclosed or referenced in the Schedules or in the Disclosure Statement; and (y) potential claims for tax refunds.  As discussed in the Disclosure Statement, the Debtors and Liquidating Debtors do not anticipate prosecuting or otherwise pursuing any Avoidance Claims after the Effective Date.

**1.80** **Rights of Action:**  Any and all claims, demands, rights, defenses, actions, causes of action (including, without limitation and as applicable, Avoidance Claims), suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges, to the extent not otherwise previously waived, released, assigned, transferred or disposed of, of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, held by any Person against any other Person, and any proceeds thereof, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to Claims or Interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all claims or rights under Bankruptcy Code sections 502, 509, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553, and 558, all fraudulent-conveyance, fraudulent-transfer, and voidable-transactions laws, all non-bankruptcy laws vesting in creditors' rights to avoid, rescind, or recover on account of transfers or obligations, all preference laws, the Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction), the Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction), the Uniform Voidable Transactions Act (as it may have been codified in any particular jurisdiction), and all similar laws and statutes; (6) claims for tax refunds; and (7) any other claims which may be asserted against any of the Debtors' affiliates, insiders and/or any other third parties.

**1.81** **Schedules:**  The schedules of assets and liabilities and statement of financial affairs filed by each Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended from time to time.

**1.82** **Secured Claim:**  Any Claim of any Person (a) that is secured by a Lien on property in which

any of the Debtors or their Estates has an interest, which Lien is valid, perfected and enforceable and not subject to avoidance under applicable law or by reason of a Final Order but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of any of the Estates securing such Claim or (b) to the extent that such Person has a valid and enforceable right of setoff under applicable non-bankruptcy law and section 553 of the Bankruptcy Code.

**1.83    Tax:**  Any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

**1.84    Timely Filed:**  With respect to a Claim, that a proof of such Claim was filed within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (including the Bar Date Order), or has otherwise been deemed timely filed by a Final Order of the Bankruptcy Court.

**1.85    Unclaimed Property:**  All Cash deemed to be "Unclaimed Property" pursuant to Article VII of the Plan.

**1.86    Unimpaired:**  With respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.87    U.S. Trustee:** The Office of the United States Trustee.

**1.88    U.S. Trustee Fees:** Fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930.

## ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**2.1    Introduction**.    As required by the Bankruptcy Code, Administrative Expenses and Priority Tax Claims are not placed into voting Classes.  Instead, they are left unclassified, are not considered Impaired, do not vote on the Plan, and receive treatment specified by statute, order of the Bankruptcy Court or agreement of the parties.  All postpetition payments or credits by or on behalf of the Debtors in respect of an Administrative Expense or Priority Tax Claim shall reduce the Allowed amount thereof.

**2.2    Administrative Expenses**.  Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which an Administrative Expense becomes an Allowed Administrative Expense, the Holder of such Allowed Administrative Expense shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Expense, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense or (b) such other less favorable treatment as to which such Holder and the Debtors or Liquidating Debtors shall have agreed upon in writing; *provided, however*, that Allowed Administrative Expenses with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements related thereto.  Unless otherwise agreed by the Liquidating Debtors, (a) requests for payment of all Administrative Expenses must be Filed and served as described in Section 11.2 of the Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses of Professional Persons as set forth in Section 11.3 of the Plan.  No interest or penalties of any nature shall be paid in respect of an Allowed Administrative Expense.

**2.3     Professional Fee Claims**.  Professional Fee Claims shall be paid as set forth in Section 11.3 of the Plan.

**2.4     Priority Tax Claims**.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Priority Tax Claims are not classified.  Thus, Holders of Priority Tax Claims are not entitled to vote to accept or reject the Plan.  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, at the option of the Liquidating Debtors, one of the following treatments: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (2) such other treatment as may be agreed upon by such Holder and the Debtors or Liquidating Debtors or otherwise determined upon an order of the Bankruptcy Court.  Any Allowed Priority Tax Claim (or portion thereof) not yet due and payable as of the Effective Date will be paid by the Liquidating Debtors no later than when due and payable under applicable non-bankruptcy law without regard to the commencement of the Chapter 11 Cases; provided that upon request of the Liquidating Debtors, the Bankruptcy Court shall determine the amount of any Disputed Priority Tax Claim.  Any Holder of a Priority Tax Claim may agree to accept different treatment as to which the Liquidating Debtors and such Holder have agreed upon in writing.

**2.5     Statutory Fees**.  All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date or as soon as practicable thereafter.  From and after the Effective Date, the Liquidating Debtors shall pay the fees assessed against their respective Estates only until such time as the particular Chapter 11 Cases are closed, dismissed or converted.  In addition, the Liquidating Debtors shall file post-confirmation quarterly reports in conformity with the U.S. Trustee guidelines until entry of an order closing or converting the Chapter 11 Cases.

**ARTICLE III**

**CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

**3.1     Summary.**  The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest (or a portion thereof) is classified in a particular Class only to the extent that the Claim or Interest (or a portion thereof) qualifies within the description of that Class.  A Claim or Interest (or a portion thereof) is also classified in a particular Class only to the extent that such Claim or Interest (or a portion thereof) is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.  Any postpetition payment by or on behalf of the Estates in respect of a Claim shall reduce the Allowed amount thereof.

**3.2     Classification and Treatment of Claims and Interests.**

**3.2.1     Class 1 – Priority Non-Tax Claims**.

          (a)     Classification: Class 1 consists of all Priority Non-Tax Claims.

          (b)     Treatment: At the election of the Liquidating Debtors, each Holder of a Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, on or as soon as practicable after the later of (i) the Effective Date, or (ii) thirty (30) calendar days following the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, (a) a Cash payment from the Liquidating Debtors equal to the Allowed amount of

13

such Claim, or (b) such other treatment as otherwise agreed by the Holder of such Claim and the Debtors or the Liquidating Debtors.

(c)    Impairment/Voting: Class 1 Priority Non-Tax Claims are Unimpaired by the Plan, and Holders of such Class 1 Priority Non-Tax Claims are therefore conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, Holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

**3.2.2    Class 2 – Miscellaneous Secured Claims**.

(a)    Classification: Class 2 consists of any Miscellaneous Secured Claims.  Although all Miscellaneous Secured Claims have been placed in one Class for the purposes of nomenclature, each Miscellaneous Secured Claim, to the extent secured by a Lien on any property or interest in property of any of the Debtors different from that securing any other Miscellaneous Secured Claim, shall be treated as being in a separate sub-Class for purposes of voting and receiving distributions under the Plan.

(b)    Treatment: Except to the extent that a Holder of an Allowed Miscellaneous Secured Claim has been paid by the Debtors, in whole or in part, prior to the Effective Date, on the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, at the option of the Liquidating Debtors, in full and final satisfaction of such Miscellaneous Secured Claim, (i) each Allowed Miscellaneous Secured Claim shall be reinstated and Unimpaired in accordance with section 1124 of the Bankruptcy Code,  or (ii) each Holder of an Allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Miscellaneous Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Miscellaneous Secured Claim, (y) the collateral securing such Allowed Miscellaneous Secured Claim, or (z) such other treatment as may be agreed to by the Holder of such Claim and the Debtors or the Liquidating Debtors.

(c)    Impairment/Voting: Class 2 Miscellaneous Secured Claims are Unimpaired by the Plan, and Holders of such Class 2 Miscellaneous Secured Claims are therefore conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, Holders of Class 2 Miscellaneous Secured Claims are not entitled to vote to accept or reject the Plan.

**3.2.3    Class 3 – General Unsecured Claims**.

(a)    Classification: Class 3 consists of all General Unsecured Claims.

(b)    Treatment: Except to the extent that a Holder of an Allowed Class 3 General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement and release of the each Allowed Class 3 General Unsecured Claim, each Holder of an Allowed Class 3 General Unsecured Claim shall receive a Cash payment equal to its Pro Rata share of the Net Distributable Estate Assets on one or more dates (the "Class 3 Distribution Date(s|)") as soon as reasonably practicable after (i) all General Unsecured Claims have been Allowed, Disallowed or otherwise resolved and (ii) the payment of (or reserves for) all Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims and Plan Expenses (unless the holder of the applicable claim agrees to other less favorable treatment); provided, however, in the event that an aggregate of at least $1,000,000 in Cash in Net Distributable Assets is or will be distributed, as Distributions under the Plan, to the Holders of Allowed Class 3 General Unsecured Claims on account of such Claims (the "Pro Rata Class 3 / Class 4 Distribution Trigger Event"), any and all Net Distributable Assets in excess of such $1,000,000 Cash threshold (the "Excess Net Distributable Assets") shall be distributed by the Liquidating Debtors to the Holders of Allowed Class 3 Claims and the PBGC (or other Holder of the Class 4 Claims), on account of their Class 3 and Class 4 Claims, respectively, on a Pro Rata basis as soon as reasonably practicable on the Class 3 Distribution Date(s); provided further that in the discretion of the Plan

14

Administrator, Allowed Class 3 General Unsecured Claims may receive Distributions before the reconciliation of all Disputed Class 3 General Unsecured Claims provided that (x) reserves are maintained for any Class 3 General Unsecured Claim that is Disputed at the time of such Distribution and (y) the Plan Administrator shall make a corrective Distribution following the resolution of any Disputed Claim within thirty (30) days of such resolution.

(c)  Impairment/Voting: Class 3 General Unsecured Claims are Impaired under the Plan. Therefore, Holders of such Class 3 General Unsecured Claims are entitled to vote to accept or reject the Plan.

**3.2.4  Class 4 – PBGC Unsecured Claims**.

(a)  Classification: Class 4 consists of all PBGC Unsecured Claims.

(b)  Treatment: The Holder of the PBGC Unsecured Claims shall receive the treatment provided for the PBGC on account of the PBGC Unsecured Claims set forth in the PBGC Settlement. Specifically, pursuant to the PBGC Settlement, the PBGC has agreed to waive any right to receive Distributions under the Plan, on account of the PBGC Unsecured Claims, unless and until the Pro Rata Class 3 / Class 4 Distribution Trigger Event occurs or is otherwise satisfied; upon the occurrence of the Pro Rata Class 3 / Class 4 Distribution Trigger Event, the PBGC shall be entitled to share on a Pro Rata basis with the Holders of Allowed Class 3 Claims any Excess Net Distributable Assets. Nothing in the Plan is intended to or will modify the PBGC Settlement, and in the event of any discrepancy between the treatment noted above and the treatment provided for the PBGC under the PBGC Settlement, the terms of the PBGC Settlement govern.

(c)  Impairment/Voting: Class 4 PBGC Unsecured Claims are Impaired under the Plan. Therefore, Holders of such Class 4 PBGC Unsecured Claims are entitled to vote to accept or reject the Plan.

**3.2.5  Class 5 – Interests in the Debtors**.

(a)  Classification: Class 5 consists of all Interests.

(b)  Treatment: Holders of Interests shall receive no distributions under the Plan, and on the Effective Date, all Interests shall be deemed void and of no force and effect.

(c)  Impairment/Voting: Class 5 Interests are Impaired and Holders of such Class 5 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 5 Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1  Identification of Unimpaired Classes**. The following Classes of Claims are Unimpaired under the Plan:

(a)  Class 1 – Priority Non-Tax Claims

(b)  Class 2 – Miscellaneous Secured Claims

**4.2  Identification of Impaired Classes**. The following Classes of Claims and Interests are Impaired under the Plan:

(a)  Class 3 – General Unsecured Claims

15

(b)    Class 4 – PBGC Unsecured Claims

(c)    Class 5 – Interests in the Debtors

**4.3**    **Classes Permitted and Not Permitted to Vote.**  Classes 1 and 2 are Unimpaired.  Holders of Claims in these Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall not be entitled to vote to accept or reject the Plan.  Classes 3, 4 and 5 are Impaired.  Holders of Claims in Class 3 and 4 are permitted to vote to accept or reject the Plan.  Holders of Interests in Class 5 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Plan Proponents reserve all rights with respect to all Claims and Interests classified by the Plan.  An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.

**4.4**    **Effect of Non-Voting**.  If no Holder of a Claim eligible to vote in a particular Class timely votes to accept or reject the Plan, the Plan Proponents may seek to have the Plan deemed **accepted** by the Holders of such Claims in such Class for purposes of section 1129 of the Bankruptcy Code.

**4.5**    **Nonconsensual Confirmation**.  In the event any Class of Claims votes to reject the Plan and given the deemed rejection of the Plan by the Holders of Interests in Class 5, the Plan Proponents request that the Bankruptcy Court confirm the Plan notwithstanding such rejection pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

**4.6**    **Postpetition Interest**.  Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Claim to receive postpetition interest on account of such Claim, except to the extent that the Holder of a Claim has the benefit of a Lien on assets the value of which exceeds the amount of such Claim or the Plan expressly provides for postpetition interest on account of such Claim.

**4.7**    **Elimination of Vacant Classes**.  Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**4.8**    **Special Provisions Regarding Insured Claims**.

(a)    With respect to any Insured Claim, any party with rights against or under the applicable insurance policy may pursue such rights.  Nothing herein shall constitute a waiver of any causes of action the Debtors or the Liquidating Debtors may hold against any Person, including the Debtors' insurance carriers; and nothing herein is intended to, shall, or shall be deemed to preclude any Holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided, however*, that the Debtors and the Liquidating Debtors do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

(b)    The Plan shall not modify the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all rights, claims and defenses to liability and/or coverage that such insurers may have, including the right to contest and/or litigate with any party the existence, primacy and/or scope of liability and/or

available coverage under any alleged applicable policy. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any proof of claim, including, without limitation, any rights or defenses arising out of, or in the nature of, setoff or recoupment, or the Debtors' rights and defenses to such proofs of claim.

## **ARTICLE V**

## **MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1**  **Settlement of Intercompany Claims.**  Upon the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Debtor and their successors and assigns hereby waive and release each other and all of their respective successors from any and all Intercompany Claims and Rights of Action among and between any or all of the Debtors, which waiver and release shall be effective as a bar to all actions, causes of action, suits, Claims, Liens, or demands of any kind with respect to any Intercompany Claim or Right of Action among or between any or all of the Debtors.

**5.2**  **Partial Substantive Consolidation.**

(a)  In furtherance of the settlements contained in the Plan, the entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, as of the Effective Date, of the substantive consolidation of the Debtors and their respective Estates into the Estate of Debtor FCI, solely for purposes of voting and distributions under the Plan.  Pursuant to the Confirmation Order, on and after the Effective Date, (i) all Distributable Assets to be used for distributions to Creditors of any of the Debtors will be treated as though they were merged into Liquidating Debtor FCI; and (ii) any obligation of any Debtor and all guarantees thereof executed by, or joint liability of, any of the Debtors will be treated as one obligation of Liquidating Debtor FCI for distribution purposes pursuant to this Plan.

(b)  Notwithstanding the foregoing, the substantive consolidation of the Debtors for voting and distribution purposes shall not affect or impair (i) any rights, Claims, remedies or defenses of (or between) the separate Debtors as of the Petition Date, including with respect to any Retained Rights of Action; (ii) the legal and organizational structure of the Debtors; (iii) any Liens that are maintained, recognized, or preserved under the Plan; and (iv) claims under or with respect to any insurance policy of any Debtor (or any right to the proceeds of any such policy or policies).

(c)  The Disclosure Statement and the Plan shall be deemed to be a motion by the Plan Proponents for substantive consolidation.  Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation and shall be determined by the Bankruptcy Court in the context of considering Confirmation of the Plan.

(d)  If the Bankruptcy Court determines that substantive consolidation of any given Debtor(s) is not appropriate, then the Plan Proponents may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis.  Furthermore, the Plan Proponents reserve their rights to seek Confirmation of the Plan without implementing substantive consolidation of any given Debtor, and, in the Plan Proponents' discretion, to request that the Bankruptcy Court approve the treatment of and distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis.

(e)  Notwithstanding the substantive consolidation called for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930 until its particular case is closed; provided, however, the Debtors or some of them may apply to close the cases of those Debtors following Confirmation.

**5.3**    **Continued Corporate Existence and Vesting of Assets.**

(a)    On and after the Effective Date, subject to the requirements of the Plan, the Liquidating Debtors will continue to exist as separate corporations or limited liability companies (as applicable) and shall retain all of the powers of corporations or limited liability companies (as applicable) under applicable non-bankruptcy law, and without prejudice to any right to amend their respective operating agreement, dissolve, merge or convert into another form of business entity, or to alter or terminate their existence.  The existing stock, membership and/or other equity interests (as applicable) of the Debtors shall be deemed to be held through the Plan Administrator.  Further, the Debtors' bylaws, operating agreements, and/or other corporate governance documents (as applicable) shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

(b)    Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtors and their Estates, including any interests in subsidiaries and affiliates and any Retained Rights of Action of the Debtors, will vest in Liquidating Debtor FCI free and clear of all Claims, Liens, charges, other encumbrances and Interests.  Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtors, which shall be continued as corporations or limited liability companies (as applicable) following the Effective Date subject to the terms of the Plan.

(c)    On and after the Effective Date, subject to the requirements of the Plan, the Liquidating Debtors shall be permitted to conduct their business (to the extent permitted by the Plan), reconcile Claims, use and dispose of assets, prosecute litigation, make required tax filings, and otherwise take any and all actions as may be appropriate to implement the Plan without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.  The Liquidating Debtors shall be authorized, without limitation, to use and dispose of the Distributable Assets of the Debtors and their Estates, to investigate and pursue any Retained Rights of Action as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to acquire and dispose of other property, and to otherwise administer their affairs.

**5.4**    **Corporate Action; Winding Up of Affairs.**

(a)    On the Effective Date, the matters under the Plan involving or requiring, as applicable, corporate or limited liability company action of the members, managers, directors, or officers of the Debtors, including but not limited to actions requiring a vote or other approval of, as applicable, the board of managers or board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date, without any further action by the Bankruptcy Court or the members, managers, directors, or officers of the Debtors.

(b)    Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing director, manager and officer of the Debtors will be deemed to have resigned on the Effective Date without any further corporate action, (ii) the Plan Administrator shall be deemed the sole manager, director, officer and representative of the Liquidating Debtors to exercise the rights, power and authority of the Liquidating Debtors under applicable provisions of this Plan and bankruptcy and non-bankruptcy law, and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Confirmation Order shall modify the Debtors' operating agreements, bylaws and any other corporate governance documents such that the provisions of this Plan can be effectuated.  The Plan shall be administered by the Plan Administrator, and all actions taken thereunder in the name of the Liquidating Debtors shall be taken through the Plan Administrator.  All corporate governance activities of the Liquidating Debtors shall be exercised by the Plan Administrator in his or

her discretion, subject to the terms of this Plan.

(c)    Following the Confirmation Date, the Liquidating Debtors shall not engage in any business activities or take any actions, except those necessary or appropriate to (i) effectuate the Plan and (ii) dispose of their assets and wind up the affairs of the Debtors and their Estates as soon as reasonably practicable.  On and after the Effective Date, the Plan Administrator may, in the name of the Liquidating Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Plan Administrator may, without application to or approval of the Bankruptcy Court, pay, from the proceeds of Distributable Assets, the charges that he or she incurs after the Effective Date for professional fees and expenses that, but for the occurrence of the Effective Date, would constitute Allowed Administrative Expenses.

(d)    From and after the Effective Date, (i) the Debtors, for all purposes, shall be deemed to have withdrawn their business operations from any state or territory in which they were previously conducting or are registered or licensed to conduct their business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtors shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

(e)    Pursuant to section 1146(c) of the Bankruptcy Code, any transfers effected pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.

**5.5    <u>Plan Administrator</u>.**

(a)    On the Effective Date, the Plan Administrator shall begin acting for the Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under this Plan, subject to the provisions hereof.  The Plan Administrator shall serve in such capacity through the earlier of the date that all of the Debtors are dissolved in accordance with this Plan and the date such Plan Administrator resigns, is terminated or otherwise unable to serve; *provided, however,* that any successor Plan Administrator appointed pursuant to the Plan shall serve in such capacity after the effective date of such person's appointment as Plan Administrator.

(b)    The qualifications and proposed compensation of and other disclosures regarding the Plan Administrator shall be set forth as part of the Plan Supplement; such compensation may be paid from the Liquidating Debtors' Cash on hand, without further notice or order of the Bankruptcy Court. Further, the Plan Administrator shall be entitled to reimbursement, from the Liquidating Debtors' Cash on hand, for his or her actual, reasonable, and necessary expenses incurred in connection with the performance of his or her duties, without the need for further notice or Bankruptcy Court approval. All distributions to be made to Creditors under the Plan shall be made by the Plan Administrator (or his or her designated agent).  The Plan Administrator shall deposit and hold all Cash in trust for the benefit of Creditors (including Professional Persons) receiving distributions under the Plan.  The duties and powers of the Plan Administrator shall include, without limitation, the following (without need of further Court approval):

(i)    To exercise all power and authority that may be exercised, to commence all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, or manager of the Liquidating Debtors with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and managers, including consummating the Plan and all transfers thereunder on

behalf of the Liquidating Debtors;

(ii) To wind up the affairs of the Liquidating Debtors and any or all of their subsidiaries and affiliates and their Estates to the extent appropriate as expeditiously as reasonably possible;

(iii) To maintain all accounts, make distributions, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Liquidating Debtors;

(iv) To use, manage, sell, abandon, convert to Cash and/or otherwise dispose of the Distributable Assets for the purpose of liquidating or otherwise disposing of all remaining property of the Estates, making distributions and fully consummating this Plan;

(v) To take all steps necessary or appropriate to terminate the corporate existence of the Debtors consistent with this Plan;

(vi) To prosecute objections to Claims and Interests, and to compromise or settle any Claims or Interests (Disputed or otherwise);

(vii) To prosecute any and all Retained Rights of Action and compromise or settle any Retained Rights of Action; provided, however, the Plan Administrator will not, on behalf of the Debtors and Liquidating Debtors, prosecute or otherwise pursue any Avoidance Claims after the Effective Date;

(viii) To prepare and file tax returns to the extent required by law;

(ix) To employ and compensate any and all such professionals and agents as the Plan Administrator, in his or her sole discretion, deems appropriate to perform his or her duties under the Plan without further order of the Bankruptcy Court; and

(x) To take all other actions not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan, including, without limitation, filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

(c)    The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown.  In the event of the resignation, removal, death, or incapacity of the Plan Administrator, the Bankruptcy Court shall, upon motion or *sua sponte*, appoint another Person to become Plan Administrator, with notice thereof provided to the Post-Effective Date Service List.  Any successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

**5.6    <u>Source of Funding</u>**.  The source of all distributions and payments under this Plan will be the Distributable Assets and the proceeds thereof, including, without limitation, the Debtors' Cash on hand and proceeds from any sale or other disposition of the Debtors' remaining assets and prosecution of Retained Rights of Action.

**5.7    <u>Retained Rights of Action</u>.**

(a)    In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Rights of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Liquidating Debtors' rights to commence, prosecute, or settle such Retained Rights of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Plan Administrator may pursue such Retained Rights of Action, as appropriate,

in accordance with the best interests of the Liquidating Debtors; provided, however, the Plan Administrator will not, on behalf of the Debtors and Liquidating Debtors, prosecute or otherwise pursue any Avoidance Claims after the Effective Date. **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Right of Action against it as any indication that the Debtors or Liquidating Debtors, as applicable, will not pursue any and all available Retained Rights of Action against it. The Debtors or Liquidating Debtors, as applicable, expressly reserve all rights to prosecute any and all Retained Rights of Action against any Person, except as otherwise expressly provided in the Plan.** Unless any Right of Action is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors and the Liquidating Debtors expressly reserve all Rights of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Rights of Action upon, after, or as a consequence of Confirmation or Consummation of the Plan.

(b)    In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Rights of Action shall vest in the Liquidating Debtors. The Liquidating Debtors shall have standing as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue, the Retained Rights of Action and objections to Claims, as appropriate, in the business judgment of the Plan Administrator. The Liquidating Debtors, acting through the Plan Administrator, may settle, release, sell, assign, otherwise transfer, or compromise Retained Rights of Action and/or objections to Claims without need for notice or order of the Bankruptcy Court.

**5.8**    **Interests in Non-Debtors Affiliates and Subsidiaries.** As of the Effective Date, except as expressly provided in the Plan or by separate order of the Bankruptcy Court, the Liquidating Debtors shall retain any stock or interests that they may hold in any non-Debtor affiliates or subsidiaries and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests. After the Effective Date, the Liquidating Debtors may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

**5.9**    **Payment of Plan Expenses**. The Liquidating Debtors may pay all reasonable Plan Expenses without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court.

**5.10**    **Dissolution of Debtors; Final Decree**. Once the Plan Administrator determines that the Final Resolution Date has occurred as to any of the Liquidating Debtors, such Liquidating Debtors shall be dissolved for all purposes by the Plan Administrator without the necessity for any other or further actions to be taken by or on behalf of any Liquidating Debtors or payments to be made in connection therewith; *provided, however*, that, without the need of any further approval, the Plan Administrator in his or her discretion may execute and file documents and take all other actions as he or she deems appropriate relating to the dissolution of the Liquidating Debtors under the laws of Delaware and/or any other applicable states, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Liquidating Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of certificates. At any time following the Effective Date, the Plan Administrator, on behalf of the Liquidating Debtors, shall be authorized to move for the entry of a final decree closing any or all of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.

**5.11**    **Records**. The Liquidating Debtors and Plan Administrator shall maintain reasonably good and sufficient books and records of accounting relating to the Distributable Assets, the Liquidating Debtors' Cash, the management thereof, all transactions undertaken by such parties, all expenses incurred by or on behalf of the Liquidating Debtors and Plan Administrator, and all distributions contemplated or effectuated under this Plan. Upon the entry of a final decree closing the Chapter 11 Cases, unless otherwise ordered by the Bankruptcy Court, the Liquidating Debtors and Plan Administrator may destroy or otherwise dispose of all records maintained by the Liquidating Debtors and/or Plan Administrator. Notwithstanding anything to the contrary, the Plan Administrator may,

upon notice to the Post-Effective Date Service List and without Bankruptcy Court approval, destroy any documents that he or she believes are no longer required to effectuate the terms and conditions of this Plan.

## ARTICLE VI

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1    Rejection of Executory Contracts and Unexpired Leases.**  Except for any executory contracts or unexpired leases:  (i) that previously were assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) that are listed for assumption by the Debtors as of the Effective Date in a Plan Supplement to be filed and served on affected non-Debtor counterparties; (iii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to the Effective Date; (iv) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates; or (v) that were previously sold, conveyed or otherwise assigned pursuant to Final Order, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Without limiting the foregoing, the indemnification obligations in favor of the Debtors' current directors, officers, managers, and representatives, to the extent not previously rejected, shall be assumed as of the Effective Date, and all other pre-Effective Date indemnification obligations of the Debtors shall be deemed rejected as of the Effective Date to the extent that such obligations are contained in executory contracts within the meaning of section 365 of the Bankruptcy Code, but only to the extent not inconsistent with any existing insurance obligations. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions or rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

**6.2    Bar Date for Rejection Claims.**  If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors or their Estates unless a proof of Claim is Filed and served on the Plan Administrator and its counsel within thirty (30) calendar days after the earlier of (a) the Effective Date and (b) service of a notice that the executory contract or unexpired lease has been rejected.  All such Claims for which proofs of Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured Claims, subject to the provisions of the Plan.

## ARTICLE VII

### DISTRIBUTIONS AND RELATED MATTERS

**7.1    Dates of Distribution.**  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, by the Liquidating Debtors (or their agent) on the immediately following Business Day.

**7.2    Cash Distributions.**  Distributions of Cash may be made either by check drawn on a domestic bank or wire or ACH transfer from a domestic bank, at the option of the Liquidating Debtors, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**7.3    Rounding of Payments.**  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

**7.4    Disputed Claims.**  Notwithstanding all references in the Plan to Claims that are Allowed,

solely for the purpose of calculating (but not distributing) the amount or number of distributions to be made on account of Allowed Class 3 General Unsecured Claims under the Plan, such calculations may be made, in the Plan Administrator's sole discretion, as if each Disputed Claim were an Allowed Claim, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or authorized or otherwise determines the amount or number which would constitute a sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by the Liquidating Debtors), such amount or number as determined by the Bankruptcy Court may be used for calculations as to such Disputed Claim instead.

**7.5    Undeliverable and Unclaimed Distributions.**  In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Plan Administrator has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however*, that such distributions shall be deemed Unclaimed Property at the expiration of ninety (90) calendar days from the date of such attempted distribution. After such date, all Unclaimed Property shall revert to the Liquidating Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be forever barred. The Plan Administrator may implement reasonable attempts to reach any recipient of an undeliverable distribution prior to reverting such property to the Liquidating Debtors.

**7.6    Minimum Distributions.**  Notwithstanding any other provision of the Plan, in the Plan Administrator's sole discretion, the Plan Administrator will not be required to make distributions of Cash less than $25 in value, and each such Claim to which this limitation applies shall be deemed fully and finally satisfied and not entitled to any further payment or consideration  pursuant to Article IX and its Holder is forever barred pursuant to Article IX from asserting that Claim or Claims against the Debtors, the Liquidating Debtors, their Estates, or their property.

**7.7    Compliance With Tax Requirements**.

(a) The Liquidating Debtors shall comply with all withholding and reporting requirements imposed by federal, state, or local taxing authorities in connection with making distributions pursuant to the Plan.

(b) In connection with each distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Liquidating Debtors shall file such information return with the IRS and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received, the Liquidating Debtors may, in their sole option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

**7.8    Record Date in Respect to Distributions.**  Except as set forth below, the record date and time for the purpose of determining which Persons are entitled to receive any and all distributions on account of any Allowed Claims or Interests, irrespective of the date of or number of distributions, shall be the Record Date.

## ARTICLE VIII

## LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES

**8.1    Litigation.**  Except as may be expressly provided otherwise in the Plan, the Liquidating

Debtors, through the Plan Administrator, shall be responsible for pursuing Retained Rights of Action, any objection to the allowance of any Claim, and the determination of tax issues and liabilities.

**8.2    Objections to Claims; Objection Deadline.**  As of the Effective Date, the Liquidating Debtors shall be authorized to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims.  Any objection to a Claim shall be filed with the Bankruptcy Court and served on the Person holding such Claim within one hundred eighty (180) calendar days after the Effective Date (as may be extended pursuant to this section, the "Objection Deadline"), provided that the Liquidating Debtors may seek one or more extensions thereof subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002.

**8.3    Tax Determinations**.  In addition to any other available remedies or procedures with respect to Tax issues or liabilities or rights to tax refunds, the Liquidating Debtors, at any time, may utilize (and receive the benefits of) section 505 of the Bankruptcy Code with respect to: (1) any tax issue or liability or right to a tax refund relating to an act or event occurring prior to the Effective Date; or (2) any tax liability or right to a tax refund arising prior to the Effective Date.  If the Liquidating Debtors utilize section 505(b) of the Bankruptcy Code: (1) the Bankruptcy Court shall determine the amount of the subject Tax liability or right to a Tax refund in the event that the appropriate Governmental Unit timely determines a Tax to be due in excess of the amount indicated on the subject return; and (2) if the prerequisites are met for obtaining a discharge of Tax liability in accordance with section 505(b) of the Bankruptcy Code, the Liquidating Debtors shall be entitled to such discharge which shall apply to any and all Taxes relating to the period covered by such return.

**8.4    Temporary or Permanent Resolution of Disputed Claims**.  The Liquidating Debtors may request that the Bankruptcy Court estimate any contingent or unliquidated Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether any Person has previously objected to such Disputed Claim.  The Bankruptcy Court will retain jurisdiction and power to estimate any contingent or unliquidated Disputed Claim at any time.  If the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount will constitute either the Allowed amount of such Disputed Claim or a maximum limitation on such Disputed Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Disputed Claim, then the Liquidating Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Disputed Claim.  In addition, the Liquidating Debtors may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim or Interest and the rights of the Holder of such Claim or Interest would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

**8.5    Setoffs**.  The Liquidating Debtors may, but shall not be required to, setoff against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim may be setoff against claims of any nature whatsoever that the Debtors or the Estates may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Debtors of any such claim that the Liquidating Debtors may have against such Holder, unless otherwise agreed to in writing by such Holder and the Liquidating Debtors.

## ARTICLE IX

### INJUNCTIONS, EXCULPATION, RELEASES AND RELATED PROVISIONS

**9.1    Injunctions.**

**9.1.1    Generally**.  Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the

24

Effective Date. From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, seeking to hold (i) the Liquidating Debtors or their Estates, or (ii) the property of the Debtors or their Estates, liable for any Claim, obligation, right, interest, debt or liability that has been released pursuant to the Plan.

**9.1.2   Non-Discharge of Debtors; Injunction.   In accordance with section 1141(d)(3) of the Bankruptcy Code, this Plan does not discharge the Debtors.  Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  As such, no Person may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under the Plan.  As of the Effective Date, all parties are precluded from asserting against any property to be distributed under this Plan any Claims, rights, causes of action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in this Plan or the Confirmation Order.**

**9.2   Exculpation.   As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act taken or omitted to be taken, on or after the Petition Date, in connection with, or related to, the formulation, preparation, dissemination, implementation, administration, Confirmation or Consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Cases or the Debtors up to and including the Effective Date; *provided, however*, that the foregoing provisions of this subsection shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.  For the avoidance of doubt, the scope of the exculpation provided under this Section 9.2 does not include any of the current or former members of the Debtors or any of the former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.  Notwithstanding anything in the Plan to the contrary, no Person serving as Plan Administrator shall have or incur any personal liability as the manager, member, director or officer of the Debtors or Liquidating Debtors for any act taken or omission made in connection with the wind-up or dissolution of the Liquidating Debtors or any nondebtor subsidiary or affiliate; *provided, however*, that the foregoing shall have no effect on the liability of the Plan Administrator that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.**

**9.3   Debtor Release.   As of and subject to the occurrence of the Effective Date, for good and valuable consideration, the Debtors, for themselves and the Estates, hereby irrevocably, unconditionally and generally release the Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, which the Debtors or their Estates ever had, now have or hereafter can, shall or may have against any of the Released Parties from the beginning of time to the Effective Date that in any way relate to the Debtors, their direct or indirect non-Debtor subsidiaries, the Estates, or the Chapter 11 Cases; *provided, however*, that the foregoing provisions of this subsection shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud.  For the avoidance of doubt, the scope of the release provided under this Section 9.3 does not include any of the current or former members of the Debtors or any of the former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.**

**9.4** **Consenting Creditor Release.** **As of and subject to the occurrence of the Effective Date and except for the treatment provided in the Plan, for good and valuable consideration each Releasing Creditor, for itself and its respective present or former officers, directors, managers, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, attorneys, accountants, professionals, and successors or assigns, in each case solely in their capacity as such, shall be deemed to have completely, conclusively, unconditionally and irrevocably released the Released Debtor/Committee Parties from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, which the Releasing Creditor, the Debtors or their Estates ever had, now have or hereafter can, shall or may have against any of the Released Debtor/Committee Parties from the beginning of time to the Effective Date that in any way relate to the Debtors, their direct or indirect non-Debtor subsidiaries, the Estates, or the Chapter 11 Cases, *provided, however*, that the foregoing release does not affect or impair any obligations under any intercreditor agreements or any other agreements or arrangements between and among non-Debtor parties. For the avoidance of doubt, the Released Debtor/Committee Parties do not include any of the current or former non-Debtor members of the Debtors or any former directors, officers, managers and representatives of the Debtors who did not serve in such capacities during the Chapter 11 Cases or a portion thereof.**

<u>**ARTICLE X**</u>

**RETENTION OF JURISDICTION AND POWER**

**10.1** <u>**Retention of Jurisdiction.**</u>    Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and power over the Chapter 11 Cases and any of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by applicable law, including, without limitation, such jurisdiction and power as appropriate to ensure that the purpose and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction and power for the following purposes:

(a) establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code), resolve any objections to the allowance, priority, or secured or unsecured status of Claims or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim or Interest pursuant to the Plan, including but not limited to determining whether any Creditor has a valid lien against any of the Debtors' assets;

(b) grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c) resolve any matters related to the rejection of any executory contract or unexpired lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d) ensure that distributions to Holders of Allowed Claims are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

(e) decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any of the Debtors that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

(f) enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason reversed, stayed, revoked, modified, supplemented or amended;

(g) resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h) subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(i) issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan or the Confirmation Order;

(j) consider and act on the compromise and settlement of any Claim or Retained Right of Action;

(k) decide or resolve any Retained Rights of Action;

(l) enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Liquidating Debtors wherever located;

(m) hear and decide any objections to Claims brought by the Liquidating Debtors or any other party in interest, to the extent authorized by the Plan;

(n) hear and decide any litigation, as applicable, brought by the Liquidating Debtors;

(o) hear and determine any motions or contested matters involving Priority Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Chapter 11 Cases, including, without limitation (i) matters involving federal, state, and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of any of the Debtors;

(p) determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(q) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings issued or entered in connection with the Chapter 11 Cases or the Plan, including any order approving any stipulation or settlement in the Chapter 11 Cases;

(r) remand to state court any claim, cause of action, or proceeding involving the Debtors that

was removed to federal court, in whole or in part in reliance upon 28 U.S.C. § 1334;

(s)  determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(t)  determine any other matter not inconsistent with the Bankruptcy Code; and

(u) enter an order or final decree concluding the Chapter 11 Cases.

**10.2    Failure of the Bankruptcy Court to Exercise Jurisdiction.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth immediately above, the provisions of this Article X shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

## ARTICLE XI

### MISCELLANEOUS PROVISIONS

**11.1    Headings.**  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**11.2    Bar Date for Administrative Expenses**.  **Requests for payment of all Administrative Expenses, other than for which a request and/or proof of Claim has previously been filed, must be Filed and served on the Liquidating Debtors and the U.S. Trustee by no later than thirty (30) calendar days after the Effective Date.  The Liquidating Debtors shall have until the Objection Deadline to object to a Timely Filed request for payment of an Administrative Expense (as may be extended),** *provided, that*, **the Liquidating Debtors may seek extension(s) thereof subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002.  Nothing in the Plan shall prohibit the Liquidating Debtors from paying Administrative Expenses in the ordinary course in accordance with applicable law during or after the Chapter 11 Cases.**

**11.3    Professional Fee Claims**.  **Notwithstanding the foregoing provisions of this Article XI, but except as may be expressly provided in other sections of the Plan, Professional Persons requesting compensation or reimbursement of expenses incurred after the Petition Date and prior to the Effective Date must file and serve, on all parties entitled to notice thereof, a Fee Application for final allowance of compensation and reimbursement of expenses no later than thirty (30) calendar days after the Effective Date and any objections to such applications must be made in accordance with applicable rules of the Bankruptcy Court.  Professional Fee Claims shall be paid in accordance with the terms of the order(s) authorizing such payments as promptly as possible on the Effective Date for any outstanding amounts due as of the Effective Date, and as soon as practicable thereafter as such obligation to pay becomes due unless otherwise agreed upon by the applicable Professional.  From and after the Effective Date, the Liquidating Debtors shall in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professionals thereafter incurred by the Liquidating Debtors.**

**11.4    Non-Voting Equity Securities**.  If and to the extent applicable, the Debtors shall comply with the provisions of section 1123(a)(6) of the Bankruptcy Code.

**11.5    Subordination Agreements**.  Pursuant to section 510(a) of the Bankruptcy Code, to the extent

28

there is any subordination agreement in place between creditors that is enforceable under non-bankruptcy law, the Liquidating Debtors shall honor such subordination agreement and turn over any distributions required to be turned over pursuant to the terms of such agreements.

**11.6** **Notices**.  All notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by mail, e-mail, or facsimile addressed to.

> Plan Administrator:
> mailto:Brad Smith
> Glass Ratner
> 555 W. 5th Street, Suite 3725
> Los Angeles, CA 90013
> Email:  bsmith@glassratner.com
>
> Debtors' Counsel:
> SHULMAN  BASTIAN FRIEDMAN & BUI LLP
> Attn: Alan J. Friedman
> 100 Spectrum Center Drive, Suite 600
> Irvine, California 92618
> Telephone: (949) 340-3400
> Facsimile: (949) 340-3000
> Email: afriedman@shulmanbastian.com
>
> Committee Counsel:
> PACHULSKI STANG ZIEHL & JONES LLP
> Attn: Jeffrey W. Dulberg
> 10100 Santa Monica Blvd., 13th Floor
> Los Angeles, CA  90067
> Telephone: (310) 277-6910
> Facsimile:  (310) 201-0760
> Email: jdulberg@pszjlaw.com

All notices and requests to any Person of record holding any Claim or Interest shall be sent to such Person at the Person's last known address or to the last known address of the Person's attorney of record.  Any such Person may designate in writing any other address for purposes of this section of the Plan, which designation will be effective on receipt.

**11.7** **Successors and Assigns.**  The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**11.8** **Severability of Plan Provisions**.  If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

29

**11.9** __No Waiver__.  Neither the failure of the Debtors to list a Claim in the Debtors' Schedules, the failure of the Debtors to object to any Claim or Interest for purposes of voting, the failure of the Debtors to object to a Claim or Interest prior to Confirmation or the Effective Date, the failure of the Debtors to assert a Retained Right of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been filed with respect to a Claim, nor any action or inaction of the Debtors or any other Person with respect to a Claim, Interest or Retained Right of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Liquidating Debtors or their successors, before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date, to (a) object to or examine such Claim or Interest, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Rights of Action.

**11.10** __Inconsistencies__.  In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

**11.11** __Plan Supplement.__  No later than ten (10) calendar days prior to the deadline to vote on this Plan, the Plan Proponents shall File with the Bankruptcy Court the Plan Supplement, which shall contain such substantially final agreements, other documents and information as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtors or the Committee.

**11.12** __Preservation of Insurance__.  The Debtors' release from and payment of Claims as provided in the Plan shall not diminish or impair the enforceability of any insurance policy that may cover or otherwise apply to or regarding any Claims, including, without limitation, any Claims on account of the Debtors' officers or managers.

**11.13** __Waiver of Stay__.  The Plan Proponents request as part of the Confirmation Order a waiver of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

**11.14** __Choice of Law.__  Except to the extent a rule of law or procedures is supplied by federal law (including but not limited to the Bankruptcy Code and the Bankruptcy Rules), this Plan shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that State.  Any applicable non-bankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the appointment of the Plan Administrator, (iii) the wind down of the Debtors, or (iv) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

**11.15** __Modification or Withdrawal of Plan.__

    (a)    The Plan Proponents may jointly seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein, the Plan Proponents reserve the right to jointly amend the terms of the Plan or waive any conditions to its Confirmation, effectiveness or consummation, if the Plan Proponents jointly determine that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

    (b)    After Confirmation of the Plan, but prior to the Effective Date, the Plan Proponents may, pursuant to section 1127 of the Bankruptcy Code, seek to jointly modify the Plan.  After the

Effective Date, the Liquidating Debtors may apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

(c)    The Debtors and the Committee each reserve the right to revoke and withdraw the Plan at any time prior to the Effective Date, in which case the Plan will be deemed to be null and void.  If either the Debtors or the Committee revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests or Rights of Action of the Debtors or the Estates against any other Person; (b) prejudice in any manner the rights of the Debtors, the Estates, the Committee, or any other Person; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, the Estates, the Committee, or any other Person.

**ARTICLE XII**
**CONDITIONS TO EFFECTIVENESS**

**12.1    Conditions to Effectiveness.**  The Plan will not be consummated and the Effective Date will not occur unless and until (A) the Confirmation Order is entered in a form acceptable to the Debtors and the Committee; (B) all documents to be provided in the Plan Supplement are in form and substance acceptable to the Debtors and the Committee; (C) the Confirmation Order shall be a Final Order; (D) the Debtors and the Committee determine in their respective reasonable business judgment that the Estates have sufficient Cash to pay all Allowed Administrative Expenses, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims, as of the Effective Date, to the extent the Holders thereof are entitled to payment as of such date under the Plan and unless otherwise agreed by such Holders, (E) the Debtors and the Committee determine in their respective reasonable business judgment that the Estates have sufficient Cash to pay all asserted, accrued, and estimated Administrative Expenses that have not yet been Allowed or are otherwise not yet payable as of the Effective Date but which such Administrative Expenses are anticipated to be later Allowed or otherwise payable and the Holders of any such Administrative Expenses have not agreed to alternative treatment; and (F) a reserve has been established for Professional Fee Claims reasonably estimated by Professional Persons to become due and owing on account of services provided on or before the Effective Date.  Any of the foregoing conditions may be jointly waived by the Debtors and the Committee and such waiver shall not require any notice, Bankruptcy Court order, or any further action. In the event the foregoing conditions are not either satisfied or waived as provided herein, the Plan Proponents will seek to convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

**ARTICLE XIII**
**EFFECT OF CONFIRMATION**

**13.1    Binding Effect of Confirmation.**  Confirmation will bind the Debtors, the Committee, all Holders of Claims or Interests and other parties in interest to the provisions of the Plan whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim or Interest has accepted the Plan.

**13.2    Good Faith.**  Confirmation of the Plan shall constitute a conclusive determination that:  (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code and, in each case, that the Plan Proponents and their respective representatives have acted in good faith in connection therewith.

**13.3    No Limitations on Effect of Confirmation.**  Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

# ARTICLE XIV

## CONFIRMATION REQUEST AND RECOMMENDATION

**14.1**    **Request for Confirmation.**    The Plan Proponents jointly request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

**14.2**    **Recommendation for Confirmation.**    The Plan Proponents believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support Confirmation of the Plan.

May  5 , 2021

_____

Brad Smith
CRO of Debtors and Debtors in Possession

May ____, 2021

_____

Authorized Representative of
Official Committee of Unsecured Creditors

Submitted by:

*Debtors' Counsel*

Alan J. Friedman (Bar No. 132580)
SHULMAN  BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

        -and-

*Committee Counsel*

Robert J. Feinstein (Pro Hac Vice)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    rfeinstein@pszjlaw.com
               jdulberg@pszjlaw.com

# ARTICLE XIV

## CONFIRMATION REQUEST AND RECOMMENDATION

**14.1** **Request for Confirmation.**  The Plan Proponents jointly request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

**14.2** **Recommendation for Confirmation.**  The Plan Proponents believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support Confirmation of the Plan.

May ___, 2021

_____
Brad Smith
CRO of Debtors and Debtors in Possession

May __4__, 2021

_____
Authorized Representative of
Official Committee of Unsecured Creditors

Submitted by:

*Debtors' Counsel*

Alan J. Friedman (Bar No. 132580)
SHULMAN  BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
Email: afriedman@shulmanbastian.com

        -and-

*Committee Counsel*

Robert J. Feinstein (Pro Hac Vice)
Jeffrey W. Dulberg (Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:    rfeinstein@pszjlaw.com
               jdulberg@pszjlaw.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*): **SUBMISSION OF CONFIRMED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AS MODIFIED** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 12, 2021  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 12, 2021 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

**ADDITIONAL SERVICE INFORMATION (if needed):**

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- **Jonathan T Amitrano**    jamitrano@taylorlaw.com, ltaylor@taylorlaw.com,ecf@taylorlaw.com
- **Kyra E Andrassy**    kandrassy@swelawfirm.com,
  lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **David M Banker**    dbanker@lowenstein.com, dbanker@lowenstein.com
- **Richard L Barnett**    rick@barnettrubin.com, kelly@barnettrubin.com
- **James Cornell Behrens**    jbehrens@milbank.com,
  gbray@milbank.com;mshinderman@milbank.com;dodonnell@milbank.com;jbrewster@milbank.com;JWeber@milbank.com
- **Shraddha Bharatia**    notices@becket-lee.com
- **Matthew Bouslog**    MBouslog@gibsondunn.com, jsprecher@gibsondunn.com
- **J Scott Bovitz**    bovitz@bovitz-spitzer.com
- **Larry Butler**    notices@becket-lee.com
- **Frank Cadigan**    frank.cadigan@usdoj.gov
- **Andrew W Caine**    acaine@pszjlaw.com
- **David Cantrell**    dcantrell@lc-law-llp.com
- **Jeffrey D Cawdrey**    jcawdrey@grsm.com, madeyemo@gordonrees.com;sdurazo@grsm.com
- **Conrad K Chiu**    cchiu@pryorcashman.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Theodore A Cohen**    tcohen@sheppardmullin.com, amontoya@sheppardmullin.com
- **Erinn M Contreras**    econtreras@sheppardmullin.com, nsaucedo@sheppardmullin.com
- **Joseph Corrigan**    Bankruptcy2@ironmountain.com
- **Raphael Cung**    rcung@callahan-law.com, jeggleston@callahan-law.com;deisenbrey@callahan-law.com;mmartinez@callahan-law.com
- **J.D. Cuzzolina**    info@cuzzlaw.com, jp@cuzzlaw.com
- **Michael T Delaney**    mdelaney@bakerlaw.com, TBreeden@bakerlaw.com
- **Jessica DiFrancesco**    notices@becket-lee.com
- **Caroline Djang**    caroline.djang@bbklaw.com,
  laurie.verstegen@bbklaw.com;wilma.escalante@bbklaw.com
- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Robert J Feinstein**    rfeinstein@pszjlaw.com
- **Scott D Fink**    colcaecf@weltman.com
- **Marc C Forsythe**    kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com
- **Alan J Friedman**    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
- **Matthew T Furton**    mfurton@lockelord.com,
  Donna.Mathis@lockelord.com;autodocket@lockelord.com
- **Thomas M Gaa**    tgaa@bbslaw.com
- **Beth Gaschen**    bgaschen@wgllp.com,
  kadele@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com;lbracken@wgllp.com;bgaschen@ecf.courtdrive.com
- **Nancy S Goldenberg**    nancy.goldenberg@usdoj.gov
- **David B Golubchik**    dbg@lnbyb.com, stephanie@lnbyb.com
- **Christopher J Green**    chrisgreen@ucla.edu, chrisgreen@ucla.edu;christopher-green-2815@ecf.pacerpro.com
- **Justin D Harris**    jdh@harrislawfirm.net, felicia@harrislawfirm.net
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Eric M Heller**    eric.m.heller@irscounsel.treas.gov
- **Lydia A Hewett**    lydia.hewett@cpa.state.tx.us

- **Joan Huh**    joan.huh@cdtfa.ca.gov
- **Lillian Jordan**    ENOTICES@DONLINRECANO.COM, RMAPA@DONLINRECANO.COM
- **Samuel M Kidder**    skidder@ktbslaw.com
- **Rika Kido**    rkido@shulmanbastian.com, avernon@shulmanbastian.com
- **Jeannie Kim**    jkim@buchalter.com, dgatmen@sheppardmullin.com
- **Alan M Kindred**    akindred@leechtishman.com,
  alankindred@hotmail.com;dtomko@leechtishman.com;challer@leechtishman.com
- **Armand R. Kizirian**    armand@kizirianlaw.com,
  armand@boyamianlaw.com;michael@boyamianlaw.com;narine@boyamianlaw.com
- **Stuart I Koenig**    Skoenig@leechtishman.com,
  sfrey@leechtishman.com;jabrams@leechtishman.com
- **Alan J Kornfeld**    akornfeld@pszjlaw.com, mdj@pszjlaw.com
- **Matthew J Kraus**    mkraus@lc-lawyers.com, mbuchheit@lc-lawyers.com
- **Jeffrey C Krause**    jkrause@gibsondunn.com,
  dtrujillo@gibsondunn.com;jstern@gibsondunn.com
- **Donny P Le**    Donny.Le@doj.ca.gov
- **Yochun Katie Lee**    kylee@akingump.com,
  tsouthwell@akingump.com;westdocketing@akingump.com
- **Elan S Levey**    elan.levey@usdoj.gov, tiffany.davenport@usdoj.gov
- **William N Lobel**    wlobel@tocounsel.com, jokeefe@tocounsel.com;sschuster@tocounsel.com
- **Aaron J Malo**    amalo@sheppardmullin.com,
  jsummers@sheppardmullin.com;bespinoza@sheppardmullin.com;abilly@sheppardmullin.com
- **Robert S Marticello**    Rmarticello@swelawfirm.com,
  gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- **Ashley M McDow**    amcdow@foley.com, sgaeta@foley.com;smoses@foley.com;ashley-mcdow-
  8850@ecf.pacerpro.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Reed M Mercado**    rmercado@sheppardmullin.com
- **Harlene Miller**    harlene@harlenemillerlaw.com, harlenejd@gmail.com
- **Raymond F Moats**    colcaecf@weltman.com
- **Elizabeth L Musser**    elizabeth.musser@clydeco.us
- **Jeffrey P Nolan**    jnolan@pszjlaw.com
- **Courtney E Norton**    cnorton@greenbergglusker.com,
  kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- **Ryan D O'Dea**    rodea@shulmanbastian.com, LGauthier@shulmanbastian.com
- **John M O'Donnell**    john.o'donnell@ftb.ca.gov, Martha.Gehrig@ftb.ca.gov
- **Ernie Zachary Park**    ernie.park@bewleylaw.com
- **Ronak N Patel**    rpatel@rivco.org, dresparza@rivco.org;mdominguez@rivco.org
- **Mary A Petrovic**    petrovic.mary@pbgc.gov, efile@pbgc.gov
- **Marc S Pfeuffer**    pfeuffer.marc@pbgc.gov, efile@pbgc.gov
- **Kathy Bazoian Phelps**    kphelps@raineslaw.com, hchoi@raineslaw.com;bclark@raineslaw.com
- **Christopher E Prince**    ,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- **Amelia Puertas-Samara**    itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov
- **Christopher B Queally**    cqueally@callahan-law.com, jluirette@callahan-law.com
- **Michael B Reynolds**    mreynolds@swlaw.com, kcollins@swlaw.com
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Christopher O Rivas**    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **Jeremy E Rosenthal**    jrosenthal@sidley.com
- **Joel W Ruderman**    ruderman.joel@pbgc.gov, email@pbgc.gov
- **Peter J Rudinskas**    pjr.legal@gmail.com

- **James M Sabovich**    jsabovich@callahan-law.com, ksalour@callahan-law.com;jkirwin@callahan-law.com;rcung@callahan-law.com;bmccormack@callahan-law.com;erichards@callahan-law.com;SRobinson@callahan-law.com
- **Jonathan C Sandler**    jsandler@bhfs.com, pherron@bhfs.com;sgrisham@bhfs.com
- **Scott A Schiff**    sas@soukup-schiff.com
- **Daren M Schlecter**    daren@schlecterlaw.com, assistant@schlecterlaw.com
- **George E Schulman**    GSchulman@DanningGill.Com, danninggill@gmail.com;gschulman@ecf.inforuptcy.com
- **Leonard M Shulman**    lshulman@shulmanbastian.com
- **Donald W Sieveke**    , dws4law@pacbell.net
- **Donald W Sieveke**    ibmoola@yahoo.com, dws4law@pacbell.net
- **David A Smyth**    smythlaw@gmail.com, dsmyth2_@hotmail.com
- **Alex E Spjute**    spjute@hugheshubbard.com, gaurav.reddy@hugheshubbard.com
- **Sarah Stuppi**    Sarah@stuppilaw.com
- **Charles Tsai**    CHARLES.TSAI@DOJ.CA.GOV
- **Helena Tseregounis**    helena.tseregounis@lw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Daniel Uribe**    duribe@gmail.com
- **Elissa A Wagner**    ewagner@pszjlaw.com
- **Michael A Wallin**    mwallin@wallinrussell.com
- **Michael J. Weiland**    mweiland@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;lbracken@wgllp.com
- **Scott S Weltman**    colcaecf@weltman.com
- **Johnny White**    JWhite@wrslawyers.com, aparisi@wrslawyers.com;eweiman@wrslawyers.com;chamilton@wrslawyers.com
- **Brandon J Witkow**    bw@witkowlaw.com, tg@witkowlaw.com
- **Steven D Zansberg**    zansbergs@ballardspahr.com, DocketClerk_Denver@ballardspahr.com

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618